1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2

3      ---------------------------------------X
                                              :
4      WINDSOR SECURITIES, LLC,               :   16-CV-01533 (GBD)
                                              :
5                          Plaintiff,         :
                    v.                        :
6                                             :   500 Pearl Street
       ARENT FOX LLP, et al.,                 :   New York, New York
7                                             :
                           Defendants.        :   February 28, 2017
8      ---------------------------------------X

9
             TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
10         BEFORE THE HONORABLE GABRIEL W. GORENSTEIN
                 UNITED STATES MAGISTRATE JUDGE
11

12     APPEARANCES:

13     For the Plaintiff:        SAMANTHA A. MILLROOD, ESQ.
                                 Alan L. Frank Law Associates, PC
14                               135 Old York Road
                                 Jenkintown, Pennsylvania 19046
15

16     For Arent Fox and        DOUGLAS S. HEFFER, ESQ.
        Julius Rousseau:        Foley & Lardner, LLP
17                              90 Park Avenue
                                New York, New York 10016
18

       For Herrick Feinstein:   ALAN D. KAPLAN, ESQ.
19                              Herrick Feinstein, LLP
                                2 Park Avenue
20                              New York, New York 10016

21

       Court Transcriber:       MARY GRECO
22                              TypeWrite Word Processing Service
                                211 N. Milton Road
23                              Saratoga Springs, New York 12866

24

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service

2

1          THE CLERK:  The case of <u>Windsor Securities v. Arent</u>
2  <u>Fox</u>, docket 16-CV-1533.

3          Counsel, please state your name for the record.

4          MS. MILLROOD:  Yes.  Good morning, Your Honor.
5  Samantha Millrood on behalf of the plaintiff, Windsor
6  Securities, LLC.

7          MR. KAPLAN:  Alan D. Kaplan on behalf of the
8  nonparty Herrick Weinstein.

9          MR. HEFFER:  And Douglas Heffer on behalf of
10  defendants Arent Fox and Julius Rousseau.

11          THE COURT:  All right.  Welcome everyone.  You can
12  be seated if you're not speaking.

13          So we're here based upon an application from Windsor
14  Securities regarding nonparty Herrick Feinstein.  I guess
15  we'll hear from you, Ms. -- is it Millrod?

16          MS. MILLROOD:  It's Millrood.  It's two O's but I
17  can only blame my husband.  I get it from marriage.

18          THE COURT:  Okay.  You probably spend a lot of time
19  explaining that to people.

20          MS. MILLROOD:  I do, I do.

21          THE COURT:  Okay.  So I mean I'm frankly surprised
22  the parties couldn't work this out but Herrick Feinstein's a
23  third party and I don't want to do anything that's going to be
24  burdensome to them.  So why don't you tell me what it is that
25  you would need in deposition form that you haven't gotten in

3

1 writing and I assume they put it under oath if that would be

2 of any help to you.

3        MS. MILLROOD:  Your Honor, we would like the ability

4 to test the position taken by Herrick Feinstein.  We

5 specifically -- in the original notice we outline 30 different

6 topics for the corporate designee to respond to.  And in

7 response to a letter that Herrick Feinstein provided in

8 response to our notice and the 30 topics we outlined, and it's

9 all in the letter to Your Honor, the different topics that we

10 would like Herrick Feinstein to specifically respond to.

11 Topic one, the scope and duration of the legal representation

12 by Herrick of Windsor --

13        THE COURT:  I've ready your letter twice.

14        MS. MILLROOD:  Yes.

15        THE COURT:  So if you could focus on my question.

16        MS. MILLROOD:  Okay.  I'm sorry.

17        THE COURT:  They have given you in writing, and I

18 can refer you to it if you like, there was a February 6th

19 letter.

20        MS. MILLROOD:  Yes, Your Honor.

21        THE COURT:  And obviously it was a letter in

22 response to this letter.  I mean you need to step back and

23 look at this from an outside perspective.  What is it that

24 they haven't already told you by documents were in that letter

25 that you're going to get out of a deposition?  If you want to

4

1   do it topic by topic, that's fine.

2        MS. MILLROOD:  I will do it whatever way you'd like,

3   Your Honor.  I can do it broadly or we could do it topic by

4   topic which is what I was going to do.

5        THE COURT:  Okay.

6        MS. MILLROOD:  Which is why I was referring -- I

7   know you've read my --

8        THE COURT:  So tell me why you need someone under

9   oath at a deposition --

10        MS. MILLROOD:  We would like to be able --

11        THE COURT:  Hold on.  Let me finish my sentence.

12        MS. MILLROOD:  I'm sorry.

13        THE COURT:  To talk about the scope and duration of

14   the legal representation by Herrick of Windsor.  Because

15   they've said to you this guy who worked for us years ago did

16   it.  We've given you time records about that.  That's all we

17   got.  Why should I force someone to be deposed about that?

18        MS. MILLROOD:  Well, I think we're entitled based on

19   the case law and Rule 30(b)(6).  Their whole position was that

20   -- and I'm happy to go topic by topic and speak directly to

21   that.  But the position that Herrick has taken is that we have

22   no one with personal knowledge to answer any of these

23   questions but 30(b)(6), and I have specific case law, says a

24   30(b)(6) --

25        THE COURT:  You know what?  I completely agree with

5

1   you.  That was a very unfortunate statement that they made.

2   Okay?  That we don't have anyone with personal knowledge as if

3   that was the be all and end all.  But that was not the

4   substance of their position.  The substance of their position

5   is that whatever knowledge the firm does have resides in these

6   records.  No one else has knowledge, and therefore, in

7   preparing someone, all we'll be doing is relying on these

8   records.  So let's not focus on that term.  Let's focus on the

9   substance of the response.

10          MS. MILLROOD:  Yes.  But in addition to those

11  records, there's nuances and factual underpinnings of those

12  records that someone from a corporate designee could take a

13  position with.  And if --

14          THE COURT:  Well, I think you need to tell me what

15  those are because right now --

16          MS. MILLROOD:  Well --

17          THE COURT:  Hold on.  Counsel, if I'm speaking, you

18  can't interrupt me.  We're being recorded here.  If someone

19  orders a transcript, the person transcribing it can only take

20  down one person talking at a time.  So make sure you wait till

21  I finish whatever I'm saying before you speak.  Can I ask you

22  that?

23          MS. MILLROOD:  Yes, Your Honor.

24          THE COURT:  Okay.  So you need to now focus me on

25  what specific nuances you could possibly be talking about and

6

1   if we have to do it topic by topic, we'll do it.  Go ahead.

2           MS. MILLROOD:  I think specifically topic two, the

3   subject of the matters of representation by Herrick and

4   Windsor.  I think that that's specifically outlined in the

5   documents that have been provided and we would like someone to

6   specifically address that.

7           THE COURT:  Stop, stop, stop.  I don't want you to

8   go on to anything -- I mean we're doing one topic at a time

9   and we're going to deal it out here and it's going to be over.

10  So you think there's someone who can talk about what Rousseau

11  was representing Windsor on during the time he was doing that

12  work, you think there's someone now at Herrick who knows

13  anything about that beyond what's in the documents?

14          MS. MILLROOD:  Your Honor, respectfully, I think the

15  law requires, and I can cite you case law, that requires that

16  there is no -- a person does not have to have personal

17  knowledge to be a 30(b)(6) corporate designee.  And in fact,

18  they have an obligation --

19          THE COURT:  No, I understand that.

20          MS. MILLROOD:  -- Herrick has an obligation --

21          THE COURT:  I understand that.

22          MS. MILLROOD:  -- to go back and speak to past

23  employees.

24          THE COURT:  You're misunderstanding me.

25          MS. MILLROOD:  I'm sorry.

7

1          THE COURT:  I agree with you the 30(b)(6) witness

2    does not have to have personal knowledge.  But for a

3    corporation to have knowledge of something, they must rely on

4    something. And the most obvious thing I can think of is

5    documents again if there's no one with personal knowledge.  In

6    order to prepare a 30(b)(6) witness they could go to documents

7    or they could go to people with personal knowledge.  What else

8    can they go to though?  Is there anything else that they could

9    go to other than documents or people with personal knowledge

10   in order to satisfy their obligations under 30(b)(6)?

11          MS. MILLROOD:  They have an obligation to speak to

12   past employees, Your Honor, not just people that are currently

13   employed by the corporation.  And I can give you multiple

14   cites --

15          THE COURT:  So you want them to go to Rousseau?

16          MS. MILLROOD:  Rousseau or David Fox.  There's

17   multiple attorneys that --

18          THE COURT:  Okay.  If that's the basis, I'm

19   rejecting that because you have access to Rousseau through

20   depositions or whatever else.  So other than Rousseau, tell me

21   what else.

22          MS. MILLROOD:  Well, there's other attorneys besides

23   Rousseau that are not parties to this action who also worked

24   on this case file, multiple attorneys.

25          THE COURT:  People at the firm?

8

1          MS. MILLROOD:  Yes, people at the firm.

2          THE COURT:  Okay.  That's what I -- I already went

3    over that.  I said people -- I agree with you.  If there's

4    people with personal knowledge at the firm, that's fine.  So I

5    said to you there's two topic areas, two areas that they could

6    use to prepare a 30(b)(6) witness.  One is documents and one

7    is people in their control with personal knowledge.  And I

8    asked you is there anything else.  And maybe the answer is no

9    or maybe it's yes, but if it's yes, tell me what is it.

10          MS. MILLROOD:  I don't know what other sources they

11    have available to them without being at Herrick myself to be

12    able to speak to that but --

13          THE COURT:  Okay.  Well, do you have any basis to

14    believe that there could be another source other than someone

15    with personal knowledge or documents?

16          MS. MILLROOD:  Not standing here today, Your Honor.

17    I don't know of any other source.

18          THE COURT:  Okay.  So this is their point.  Now

19    let's go back to this.  I mean we're going to be here a long

20    time if we keep going over these same issues.  You said that

21    they should be doing something more on Topic 2, the subject

22    matters of representation by Herrick, meaning Rousseau, of

23    Windsor.  And they say they have no one with personal

24    knowledge of that, what was going on there other than the

25    documents.  So to me that seems to be the end of it.  Tell me

9

1   why it isn't.

2          MS. MILLROOD:  But respectfully, Your Honor, I don't

3   because the representation by Herrick was not limited to

4   Rousseau.  There was other individuals who also worked on the

5   file besides Rousseau, multiple other attorneys that worked on

6   the file besides Rousseau who are past employees who Herrick

7   has an obligation to go and to speak to.  It shouldn't just be

8   limited to Rousseau.

9          THE COURT:  Okay.  So there are other employees that

10  have knowledge of the representation.  Not current but past

11  employees?

12         MS. MILLROOD:  Yes.  And I can give you multiple

13  case citations, Your Honor, to the obligation of a responding

14  party to go to speak to past employees in order to comply with

15  its obligations under Rule 30(b)(6).  And if you'd like those,

16  I can give those to Your Honor.

17         THE COURT:  No, I will accept that as a premise

18  though there's also a concept that if you have equal access to

19  those past employees I might require you to go to them.  But

20  let me ask Herrick what they know about past employees who

21  know about the representation.

22         MR. KAPLAN:  Good morning, Your Honor.  Your Honor,

23  the only two lawyers that we know who actually worked for the

24  plaintiff in the litigation that's the subject of the instant

25  lawsuit were Mr. Rousseau and a Mr. Fox.  And I'm advised that

1  both of them are scheduled to be deposed in this southern

2  district matter in the upcoming month.  In fact, I think Mr.

3  Rousseau is going to be deposed within the next couple of

4  weeks.

5          MR. HEFFER:  Next week.

6          MR. KAPLAN:  And I know Mr. Fox, they've been

7  discussing dates with him at the end of March.  Those are the

8  only two lawyers who represented Windsor at Herrick.  And once

9  Mr. Rousseau left -- and just to give a little background,

10 Your Honor, Mr. Rousseau was in an insurance practice group at

11 Herrick.  It was a few lawyers.  I can't remember exactly how

12 many.  They all left in May, June of 2010 and they took their

13 case load with them.  They took their support people with

14 them.  They took paralegals with them.  And that's why we

15 responded the way we did to the subpoena.  In fact, we even

16 offered to give them an affidavit.  We said look, what do you

17 want us to put in affidavit form?  We'll put it in affidavit

18 form.  We gave them 8,800 pages of documents, anything we

19 could find up, having to do -- we could find, having to do

20 with the broad topic areas that were requested in the letter.

21 We take our obligation very seriously.  But we said look, we

22 know of no people at our firm who can offer anything beyond

23 what the documents say.  The documents say when Mr. Rousseau

24 began at Herrick, when he left at Herrick.  They have his time

25 sheets.

11

1          THE COURT:  I'm doing this topic by topic, so let's

2   --

3          MR. KAPLAN:  Well, scope and duration.  Obviously,

4   that's in the -- we've given them those records.

5          THE COURT:  Well no, right now I'm just on topic

6   two.

7          MR. KAPLAN:  Oh, that's the --

8          THE COURT:  Subject matters of the representation.

9          MR. KAPLAN:  Well, we gave them all of the

10  documents.

11          THE COURT:  Okay.  That's fine.  And I had a very

12  simple question for you which is are there any people there

13  who know anything about that and you gave me an answer.  So

14  you're good.  Have a seat.  I'll get back to you if I need

15  you.  So I'm happy to get an affidavit that says what -- if

16  that helps you, that says that you just said, but I expect you

17  to go to Fox and Rousseau, not to have Herrick talk to Fox and

18  Rousseau and then take a position on what they say.  Now,

19  knowing the road we're going down, I'm happy to do this topic

20  by topic.  But if you think there's something else --

21          MS. MILLROOD:  I --

22          THE COURT:  Hold on.  Let me finish.  If you think

23  there's something else that is not governed by what I've

24  already said here, I'm happy to hear from you on it.  If you

25  want a minute to look through this list, that's fine.

1  Whatever you'd like to do.  Go ahead.

2        MS. MILLROOD:  I think I'm pretty familiar with it.

3  I will do my best.  I think Topic 3, other clients in the life

4  settlement industry that Herrick was representing, they had

5  held themselves out as experts in the life settlement and

6  premium finance counsel for.  That's at least one.

7        THE COURT:  Okay.  So I'm just curious now what

8  relevance -- if it doesn't involve Rousseau or Fox, what does

9  the representation of other clients have to do with anything

10 here?  Any of the claims in your case against Arent Fox and

11 Julius Rousseau?

12        MS. MILLROOD:  Well, it's relevant to the fact that

13 Mr. Rousseau while at Herrick and also while at Arent Fox held

14 himself out to the plaintiff as having specialized expertise

15 skill and knowledge and that Herrick and Arent Fox had

16 specialized skill and knowledge and are held to a higher

17 standard with respect to legal malpractice claims when they're

18 holding themselves out as having specialized expertise, not

19 just that of the ordinary attorney.  And I think that that's

20 how that's relevant, Your Honor.

21        THE COURT:  Okay.  So the idea would be, just so I

22 understand, that if you could show -- okay, again, I'm looking

23 at the topic.  It's a little bit vague.  If you got

24 information that they had represented certain clients in the

25 life settlement business and/or with premium finance

1  structures used in the purchase of, it says list insurance,

2  then knowing that there was a certain kind of representation

3  by Herrick at the time apart from Rousseau's and Fox's

4  representation would show what in your case?  Try me again.

5         MS. MILLROOD:  Which show that from the outset of

6  the relationship between Windsor and Rousseau that Rousseau

7  held himself out, and the Herrick firm, and the Arent Fox firm

8  as having this specialized skill and expertise which would

9  afford the plaintiffs better representation and expertise in

10  this industry and representing other clients in this same

11  industry which is a niche industry.

12         THE COURT:  Mr. Kaplan?

13         MR. KAPLAN:  Your Honor, even putting aside

14  relevance for the moment, this is something that can be asked

15  at Mr. Rousseau's deposition plain and simple.  It appears

16  that the expertise that's involved here belongs to Mr.

17  Rousseau while he was at Arent.

18         THE COURT:  Well, I don't know that.  Maybe there

19  are other lawyers in this business at your firm.

20         MR. KAPLAN:  I can put that in a -- first of all, I

21  don't know what the relevance is that there are other lawyers

22  at Herrick --

23         THE COURT:  Well, you're the one who wanted to skip

24  relevance.  So if you want to do relevance --

25         MR. KAPLAN:  Well, I said let's put it on the --

1          THE COURT:  Mr. Kaplan, if I'm speaking, you can't

2     speak.  Both of you, please.  This is not a conversation.

3     This is a court proceeding.  If you want to go down the

4     relevancy road, we can go down that.  If you want to go down

5     the lack of knowledge route we can go down that, but I can't

6     switch from one to the other.  Or you can do both, but we need

7     to do one at a time.  So tell me what you'd like to do.

8          MR. KAPLAN:  Okay.  Let's go down relevance then --

9          THE COURT:  Okay.

10         MR. KAPLAN:  -- since you suggested that.  Herrick

11    is not a party to this lawsuit.  Whatever Mr. Rousseau held

12    himself out as being is something that the plaintiff can

13    determine when they deposed Mr. Rousseau.  Further, we advised

14    plaintiff already --

15         THE COURT:  Hold on.  If you're done with relevance,

16    their point is that apart from Rousseau other attorneys may

17    have been holding themselves out as expertise on behalf of the

18    firm and that that would show something about how Rousseau I

19    guess was holding himself out.

20         MR. KAPLAN:  Well, I think the way Your Honor just

21    phrased it begs the question how is that relevant to this

22    litigation.  And we've already advised the plaintiff that we

23    had no other lawyers at that time who were involved in the

24    life settlement practice.

25         THE COURT:  Okay.  Well, that's very significant.

1  The way it was being framed was that there were other lawyers.

2  It was just Rousseau and Fox?

3         MR. KAPLAN:  Correct.

4         THE COURT:  Okay.  Did you have another point to

5  make?

6         MR. KAPLAN:  No, Your Honor.

7         THE COURT:  Okay.  Anything else you want to add on

8  that point?

9         MS. MILLROOD:  I would just say that Mr. Kaplan two

10  seconds before, I should say two minutes before, said that

11  there's a whole insurance practice group at Herrick consisting

12  of I think he said five or six lawyers.  So --

13         THE COURT:  Is that correct?

14         MR. KAPLAN:  No.  What I was Mr. Rousseau's group

15  was five or six lawyers and that they all left in 2010 with

16  Mr. Rousseau including the paralegals and every support --

17         THE COURT:  So Rousseau, Fox, plus some other

18  lawyers?

19         MR. KAPLAN:  Well, Fox had already retired at that

20  time.

21         THE COURT:  There were other lawyers?

22         MR. KAPLAN:  There was an Eliot Kroll who's at Arent

23  Fox.  There was another lawyer who went to a completely

24  different firm.  But they all left back then in approximately

25  June of 2010.

16

1            THE COURT:  Okay.  I'm sorry, anything else you

2   wanted to say on that topic?

3            MS. MILLROOD:  On that particular topic just the

4   fact that there were other lawyers besides Mr. Fox and Mr.

5   Rousseau that specifically dealt with the insurance practice

6   group under Mr. Rousseau.

7            THE COURT:  Okay.  My ruling on that is the same as

8   the other one.  The way to get this is not to have Arent Fox

9   reach out to these lawyers who left years ago but to have the

10  plaintiff in this case depose these lawyers, some of whom are

11  already being deposed and that's the best way to get at this

12  information.

13           What other topic would you like to raise with me?

14           MS. MILLROOD:  I would like to raise, Your Honor,

15  specifically Topic A, the discontinuation of Mr. Rousseau's

16  employment and/or affiliation with Herrick.  Not just the date

17  that he left, Your Honor, but the circumstances surrounding

18  his departure.  None of that is within the documents that have

19  been provided to us, nor do we have any source information.

20  And Mr. Rousseau's account of why he left may be very

21  different of Herrick's assessment of why he separated and/or

22  left.

23           THE COURT:  Mr. Kaplan?

24           MR. KAPLAN:  Yes, Your Honor.  On the second page of

25  our February 6 letter that we sent to plaintiff's counsel's

17

1   office, third paragraph, we say specifically that Mr. Rousseau

2   left Herrick on a voluntary basis.  So I'm not sure what else

3   they're looking for.  I'm sure Mr. Rousseau will say the same

4   thing and they could find out that at a deposition.  So I

5   don't know what they anticipate is going to be said that would

6   warrant any further information from Herrick.

7           THE COURT:  When you say Herrick is not able to

8   disclose any additional information, what did you mean by is

9   not able?

10          MR. KAPLAN:  Meaning that in terms of the

11  discontinuation of his employment, that's all that we know.

12  We know the date that the group left and we know that it was

13  voluntary the way practice groups move around all the time

14  from law firm to law firm.

15          THE COURT:  And how were you able to find out that

16  information that it was voluntary?

17          MR. KAPLAN:  Probably from the documents that we

18  provided to plaintiff's counsel.  And I think some of us may

19  remember that they just left, they just got a better deal,

20  whatever it was, whatever their reasons were.  If they're

21  looking for some nefarious reason that they were terminated or

22  thrown out for cause, it's not there.  It doesn't exist.

23  We're willing to put that in an affidavit for them, Judge.

24          THE COURT:  Ms. Millrood?

25          MS. MILLROOD:  Yes, Your Honor.  We're not looking -

1  -

2          THE COURT:  Anything you want to add?

3          MS. MILLROOD:  -- for a nefarious motive.  We're not

4  looking for any kind of bad faith.  We want to understand the

5  circumstances of Mr. Rousseau's departure from Herrick and

6  what he took with him, what he did not take with him, what

7  life settlement or insurance practice group clients went along

8  with him, what was told to the clients of Herrick who were

9  leaving with Mr. Rousseau.  There are several specific nuance

10 questions within that general topic that's provided at Topic

11 Number 8 which I think we are entitled to probe.  And there

12 are people at Herrick I'm sure that were there at the time,

13 not that there has to be personal knowledge, but at the time

14 that Mr. Rousseau and that mass departure occurred.

15         THE COURT:  Okay.  So we have two new things.  One

16 is what clients left with him and what clients were told.  Mr.

17 Kaplan, thoughts on that?

18         MR. KAPLAN:  Judge, frankly, I don't know what

19 clients left with him.  Mr. Rousseau can answer that because

20 he would know what clients he serviced once he got to Arent

21 Fox.  He can testify as to what he told those clients.  I

22 think you need to depose Mr. Rousseau first and if counsel

23 still thinks that there are nuances that need to be explored,

24 she can then make an application after that.

25         THE COURT:  What's the relevance of what clients

19

1  other than you went with him?

2         MS. MILLROOD:  The relevance is just to see and

3  understand what the I should say the nature was of this

4  departure and what was represented to the clients.  I mean

5  this is not just limited to Mr. Rousseau but there was a whole

6  mass exodus of this insurance practice group that left.  And

7  we would like to understand the circumstances of that

8  departure.

9         THE COURT:  Okay.  Same ruling as before.  This is

10 plainly an area that Rousseau is going to have the best

11 knowledge.  If there's some reason to -- and I question the

12 relevance of this given the burden that it's going to put on

13 Herrick and the fact that they don't seem to know anything

14 about it anyway.  So I'm not going to say it's impossible that

15 after you depose Rousseau and other lawyers there may not be

16 some role for Herrick.  I doubt it.  But right now based on

17 this record I don't find it appropriate to burden Herrick with

18 this.

19        MS. MILLROOD:  Okay.

20        THE COURT:  Any other topics?

21        MS. MILLROOD:  Yes, Your Honor.  Topics 20 and 21

22 which relates to the attorneys fees and costs incurred by

23 Windsor and paid to Herrick.

24        THE COURT:  Yes.

25        MS. MILLROOD:  I mean I think we're entitled to have

20

1  someone from Herrick speak to the time and billing entries and

2  monies paid --

3        THE COURT:  What do you need beyond the time and

4  billing entries?

5        MS. MILLROOD:  Well, there's some specifics in the

6  billing entries and time entries that I think we're entitled

7  to probe representative --

8        THE COURT:  Probe with Rousseau but why did --

9        MS. MILLROOD:  But it's not just Rousseau --

10        THE COURT:  Hold on, hold on.  Gosh.

11        MS. MILLROOD:  Sorry.

12        THE COURT:  I'm not used to being treated like this,

13  Ms. Millrood.  You'll have to excuse me.  I understand why you

14  need to probe things with Rousseau about the time entries but

15  why is it that there would be someone at Herrick who would

16  know anything about it?

17        MS. MILLROOD:  May I speak, Your Honor?  I apologize

18  --

19        THE COURT:  When I ask you a question -- if you

20  can't tell the difference between when I'm in the middle of a

21  sentence and asking you a question, then we're going to be

22  here a long time.  But that was a question and you can answer

23  it.

24        MS. MILLROOD:  The time entries aren't limited to

25  Mr. Rousseau, Your Honor.  They include other attorneys.  And

1    the fees that were paid are not just for Mr. Rousseau's time

2    but include other attorney time that was charged to Windsor.

3            THE COURT:  Okay.  And are any of those attorneys

4    still at Herrick?

5            MS. MILLROOD:  Based on Mr. Kaplan's representation

6    I guess not.  But not all of them are at Arent Fox either,

7    Your Honor.

8            THE COURT:  Okay.  Well once again, my ruling on

9    that is go to the attorneys and if some of them are with third

10   party firms you should go to them instead of going to Herrick.

11   That's having Herrick do something, sort of gather information

12   that's just as easily gathered by the plaintiff.  Next topic.

13           MS. MILLROOD:  Other than -- these are very general.

14   The rest are general.  Documents contained in the files

15   maintained by Herrick that were provided to our firm, having

16   someone speak to the authenticity, the specifics contained

17   within -- at least take a position with the specifics

18   contained within the documents that were produced by Herrick.

19           THE COURT:  Well, authenticity, I'm happy to get an

20   affidavit if you would like that says that the documents they

21   provided to you are authentic.  Would you like that?

22           MS. MILLROOD:  If that's what we are limited to,

23   Your Honor.

24           THE COURT:  Right now that's all you're limited to.

25   So if you want, I'll get it for you.  Okay.  So we need an

22

1    affidavit on the authenticity of the documents.  I think we

2    also talked about an affidavit that there's no information

3    about the circumstances of the departure and that there's no

4    information regarding the circumstances other than the

5    announcement that this individual was leaving.  Anything else

6    that you need an affidavit on?

7             MS. MILLROOD:  Your Honor, at least I ask that the

8    Court reserve ruling after Mr. Rousseau's deposition is taken

9    to the extent that any -- we couldn't get certain information

10   from Mr. Rousseau regarding his affiliation with Herrick and

11   his employment with Herrick and some of the topics outlined

12   herein, that we at least be given the opportunity to address

13   those topics again at that time.

14            THE COURT:  Well yes, as I said, if something comes

15   up in Rousseau's deposition that makes you believe that there

16   would be information that would be in the possession of

17   Herrick, I'm certainly happy to hear from you.  Obviously, you

18   should go to Herrick first.

19            MS. MILLROOD:  Your Honor, Topic 26 was the

20   communications between Herrick and Arent Fox and/or Mr.

21   Rousseau relevant to this litigation.

22            THE COURT:  You want an affidavit on that?

23            MS. MILLROOD:  We would like to question a Herrick

24   corporate designee on that topic, Your Honor.

25            THE COURT:  But if it says hasn't had any, that's --

23

1   you're sticking with that, right Mr. Kaplan?

2           MR. KAPLAN:  We haven't spoken to Mr. Rousseau.

3   I'll make a representation to the Court --

4           THE COURT:  No, no, we need an affidavit.

5           MR. KAPLAN:  Okay.  I'll do that.  But just for

6   counsel's purposes, we spoke when we received the subpoena.

7   We told them that we had been served with a subpoena and --

8           THE COURT:  I view Arent Fox and Rousseau as meaning

9   them --

10          MR. KAPLAN:  Correct.

11          THE COURT:  -- personally, not their lawyer.

12          MR. KAPLAN:  Their lawyer.  I'm sorry.  In fact, I

13  spoke to counsel who's sitting here at the table with me from

14  Foley --

15          THE COURT:  But they're not pro se.  You're the

16  lawyer for Arent Fox, right?

17          MR. HEFFER:  I am, Your Honor.

18          MR. KAPLAN:  Right.

19          THE COURT:  Because the inquiry is not as to whether

20  you've spoken to the lawyer -- let me finish my sentences,

21  everyone.  The inquiry is not as to whether you spoke to the

22  lawyer for Arent Fox or Rousseau, but whether you spoke to

23  them directly or anyone from the firm.  Obviously you have to

24  do some canvassing to figure that out.  She needs an affidavit

25  on that.

24

1        MR. KAPLAN:  Okay.  That's fine, Your Honor.

2        THE COURT:  Ms. Millrood, anything else?

3        MS. MILLROOD:  I think Topic 29 we already

4   addressed.  Excuse me, Topic 28 the experience and supposed

5   expertise in the life settlement industry.  That was one of

6   the -- that was encompassed within our previous discussion,

7   Your Honor, so I won't re-raise that.  And then I think that

8   we've addressed the different topics.  Topic 29, again, it's

9   the same -- it's similar communications between Rousseau

10  and/or Herrick and/or Windsor relevant to this litigation

11  which was encompassed within the previous Topic 26 that we

12  already discussed.

13        THE COURT:  Okay.  Can you get the affidavit in the

14  next week or two?

15        MR. KAPLAN:  Yes, Your Honor.

16        THE COURT:  Okay.  Anything else, Ms. Millrood?

17        MS. MILLROOD:  No, Your Honor.  Thank you.

18        THE COURT:  Mr. Kaplan, anything?

19        MR. KAPLAN:  No, thank you, Your Honor.

20        THE COURT:  Mr. Heffer, anything?

21        MR. HEFFER:  No, Your Honor.

22        THE COURT:  All right.  Thank you everyone.

23                    *  *  *  *  *  *

24

25

25

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4                                          *Mary Greco*

5                            _____

6                                          Mary Greco

7   Dated:  March 1, 2017