UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDSOR SECURITIES, LLC,

      Plaintiff,

-against-

ARENT FOX, LLP and JULIUS ROUSSEAU, III,

      Defendants.

Case No. 1:16-cv-01533 (GBD) (GWG)

## DECLARATION OF DOUGLAS S. HEFFER
## IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

I, Douglas S. Heffer, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, state and declare as follows:

1. I am a member of the Bar of this Court and a partner at Foley & Lardner LLP, attorneys for Defendants Arent Fox LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau," and, collectively, with Arent Fox, "Defendants").

2. I submit this declaration in support of Defendants' motion to compel (the "Motion"). I know the statements made herein to be true based upon personal knowledge; based upon a review of the relevant documents, papers and/or pleadings in this action; and/or based upon non-privileged information I have received from my client.

3. On February 29, 2016, Windsor commenced this action against Defendants by filing a summons and complaint (the "Complaint"). A true and correct copy of the Complaint, without exhibits, is attached hereto as Exhibit 1.[1]

---

[1] Capitalized terms have the meaning ascribed to them in Defendants' Memorandum of Law.

4.      In the course of discovery in this case, Windsor has produced settlement agreements related to the five underlying litigations at issue here.  These agreements were produced pursuant to a Stipulation and Protective Order (the "Protective Order") and have been tagged as "Confidential."  My office downloaded from PACER stipulated court orders in these five actions (referencing dismissal of the cases) that document the settlement dates.  For two of the actions – involving Stamatov and Coppock – the settlements were executed after the final stipulated orders were filed.  True and correct copies of these five downloaded stipulated orders and the redacted signature pages for the Stamatov and Coppock settlement agreements have been attached hereto, collectively, as Exhibit 2.

## The Current Dispute

5.      On June 10, 2016, my office served on opposing counsel document requests and interrogatories.  Attached hereto as Exhibit 3 is a true and correct copy of Defendants' First Set of Requests for Production of Documents and Tangible Things.

6.      On July 11, 2016, Windsor's counsel served responses to both discovery requests.  Attached hereto as Exhibits 4 and 5, respectively, are Plaintiff's Response to Defendants' First Set of Requests for Production of Documents and Tangible Things and Plaintiff's Response to Defendants' First Set of Interrogatories.

7.      Windsor produced documents and a short, initial privilege log on that same date.

8.      On March 6, 2017, Peter Wang, from my office, deposed Windsor's principal, Steven Prusky.  At the deposition, Mr. Prusky testified that he had consulted other attorneys before hiring Mr. Rousseau in 2008.  That deposition remains open.

9. After reviewing the extensive production and deposing Prusky, my office served a deficiency letter on Windsor's counsel on March 15, 2017. A true and correct copy of this letter is attached hereto as Exhibit 6.

10. Windsor's counsel responded on April 10, 2017 with a supplemental production of 1,280 documents and a new privilege log – broken into two parts – that included entries for nearly 3,000 documents. Windsor did not revise or supplement its original log. A true and correct copy of the response letter is attached hereto as Exhibit 7.

11. My office served a follow-up deficiency letter on April 17, 2017. A true and correct copy of this response is attached hereto as Exhibit 8. Defendants, in this letter, raised the fact that Windsor could not withhold certain documents because of the "at issue" waiver doctrine.

12. Windsor's counsel responded on April 24, 2017. A true and correct copy of this response is attached hereto as Exhibit 9.

13. Counsel for both parties met and conferred regarding this issue on April 25, 2017 and May 8, 2017, as described more fully below. At the April 25, 2017 conference, Windsor's counsel admitted that Windsor had failed to log nearly 50,000 supposedly privileged documents and renewed an earlier request to provide a categorized log. Counsel also promised to review the privilege logs, revising where appropriate and producing any improperly withheld materials or re-producing, with fewer redactions, any documents that were too heavily redacted.

14. Windsor's counsel denied that any "at issue" waiver had occurred and reiterated the arguments raised in Windsor's April 24, 2017 letter. Defendants' counsel explained that these arguments were directly contradicted by various pleadings and papers in the case, including

3

but not limited to the following: the multiple privilege logs, Windsor's April 24 letter, the documents already produced, and the allegations in the Complaint.

15. Windsor has now revised its privilege logs multiple times and created a third privilege log for attachments (previously, Windsor had wholly failed to log any attachments for the hundreds of e-mails in the privilege logs). These privilege logs were produced as Excel spreadsheets. Attached hereto, respectively, as Exhibits 10-12, are copies of the most recent versions of the three privilege logs proffered by Windsor: a log of redacted documents, a log of withheld documents (which comprises two Excel worksheets), and a log of attachments.

16. In the course of revising the privilege log, Windsor included an extra column explaining what date the entry was revised or if a document was produced (in lieu of removing the log entry). In order to provide this Court with a readable PDF version of the privilege logs, my office has filtered out the entries for documents that Windsor claimed it produced and removed the explanatory column.

17. Windsor's counsel has informed my office that it has still not logged the purported 50,000 additional withheld documents but continues to demand the right to provide a categorized log. Defendants have reserved all rights in this regard because they remain skeptical that Windsor will provide a thorough, complete privilege log.

18. After corresponding extensively with Windsor's counsel on the 50,000 unlogged documents, I believe that this corpus of documents includes materials that Defendants are seeking to compel with this Motion.

19. From April 17 to the end of May, Windsor produced over 2,000 additional documents, a significant portion of which included materials Windsor had improperly withheld until Defendants challenged the assertions of privilege.

4

**Meet and Confer Certification**

20.     On April 25, 2017 at 1:00 p.m., counsel for both parties attended a telephonic meet and confer conference that lasted approximately 35 minutes.  The participating attorneys included Adam Pence and me from Foley & Lardner LLP, counsel for Defendants, and Samantha Millrood and Christopher King from Alan L. Frank Law Associates, P.C., counsel for Windsor.

21.     Counsel for the parties were able to resolve some disputes but could not come to an agreement with regard to the "at issue" waiver dispute, which is the subject of this Motion. The substance of the discussion involving this dispute is outlined above. At the same time, counsel agreed to meet and confer again before seeking court intervention.

22.     On May 8, 2017 at 10:00 a.m., counsel attended a second telephonic meet and confer conference that lasted approximately 20 minutes.  The same counsel (along with Jaclyn Frank on behalf of Windsor) participated, and Windsor maintained its same position.  We then informed Windsor's counsel that the parties appeared to be at an impasse and that Defendants would be seeking leave to file this Motion.

23.     On May 15, 2017, my office filed a pre-motion letter seeking leave to file this Motion.  The Court then waived the pre-motion conference requirement and directed Defendants to proceed with their Motion.  A true and correct copy of Defendants' May 15, 2017 pre-motion letter is attached hereto as Exhibit 13.

**Sealed Exhibits**

24.     Included in Windsor's recent productions of documents was an e-mail chain that is relevant to this Motion.  Despite the fact that Windsor failed to stamp this document individually as "Confidential," as required by the Protective Order, Defendants believe that

5

Windsor produced the material with the understanding that it would be protected as a confidential document. As such, Defendants will be filing a redacted placeholder and seeking leave from the Court to file this document under seal and to redact any substantive references to the document in the accompanying memorandum of law.

25. The e-mail chain, from October 14, 2014, is a discussion between Steven Prusky, Windsor's principal, and Joseph Darracq, a life insurance agent and friend of Prusky's, regarding Windsor's legal strategy in the Acker and Collins litigations. Attached hereto as Exhibit 14 is a true and correct copy of this produced e-mail chain.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 30th day of May, 2017

> */s/ Douglas S. Heffer*
> Douglas S. Heffer