Peter N. Wang
Douglas S. Heffer
Adam G. Pence
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

WINDSOR SECURITIES, LLC,

           Plaintiff,

    -against-

ARENT FOX, LLP and JULIUS
ROUSSEAU, III,

          Defendants.

Case No.  1:16-cv-01533 (GBD) (GWG)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

1.  Windsor Mischaracterizes its Own Malpractice Claims.................................................. 2

2.  Windsor Received Concurrent Legal Advice From Other Attorneys................................ 3

3.  Windsor's Allegations Have Placed its Subsequent Legal Work "At Issue" .................... 7

4.  Windsor Fails to Distinguish Defendants' Case Law And Offers Only Inapposite
    Cases To Oppose The Motion to Compel....................................................................... 10

CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Aurora Loan Servs. v. Posner, Posner & Assocs., P.C.*,
   499 F. Supp. 2d 475 (S.D.N.Y. 2007)..........................................................................4, 10, 11

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
   210 F.R.D. 506 (S.D.N.Y. 2002) ...............................................................................3, 7, 10

*Bolton v. Weil, Gotshal & Manges, LLP*,
   4 Misc. 3d 1029(A), (Sup. Ct. New York Cty. Sept. 10, 2004)................................3, 7, 10, 11

*In re County of Erie*,
   546 F.3d 222 (2d Cir. 2008)....................................................................................8

*Deutsche Bank Tr. Co. of Ams. v. Tri-Links Inv. Tr.*,
   43 A.D.3d 56, 837 N.Y.S.2d 15 (1st Dep't 2007) .................................................7-8

*Diversified Grp., Inc. v. Daugerdas*,
   304 F. Supp. 2d 507 (S.D.N.Y. 2003).......................................................................4

*Goldberg v. Hirschberg*,
   806 N.Y.S.2d 333 (Sup. Ct. New York Cty. 2005) .........................................3, 7, 11

*IMO Indus., Inc. v. Anderson Kill & Olick, P.C.*,
   746 N.Y.S.2d 572 (Sup. Ct. New York Cty. 2002) .........................................10, 11

*Jakobleff v. Cerrato, Sweeney & Cohn*,
   97 A.D.2d 834 (2d Dep't 1983) ...............................................................................11

*Koch v. Sheresky, Aronson & Mayefsky LLP*,
   No. 112337/07, 2011 WL 6015688 (Sup. Ct. New York Cty. Nov. 21, 2011) ................ 11-12

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
   No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010)..................8, 12

*Raphael v. Clune White & Nelson*,
   146 A.D.2d 762 (2d Dep't 1989) ..............................................................................12

*Soussis v. Lazer, Aptheker, Rosella & Yedid, P.C.*,
   No. 17936/05, 2010 N.Y. Misc. LEXIS 5191 (Sup. Ct. Nassau Cty. Oct. 15,
   2010) ......................................................................................................................12

*TIG Ins. Co. v. Yules & Yules*,
   No. 99 Civ. 3378(KMW)(MHD), 1999 WL 1029712 (S.D.N.Y. Nov. 12,
   1999) ..................................................................................................................................12

*United Nat'l Ins. Co. v. Granoff, Walker & Forlenza, P.C.*,
   No. 06 Civ. 3999(DC), 2007 WL 1686684 (S.D.N.Y. June 11, 2007)....................................12

## PRELIMINARY STATEMENT

Defendants Arent Fox LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau," and, collectively with Arent Fox, "Defendants"), by and through their attorneys, Foley & Lardner LLP, respectfully submit this reply memorandum of law in further support of their motion to compel Plaintiff Windsor Securities, LLC ("Windsor") to produce certain withheld documents relating to Windsor's representation by counsel contemporaneous with and subsequent to Defendants' representation of Windsor (the "Motion").

Windsor's Opposition Brief is a jumble of misleading factual assertions and flawed legal analysis.  This Motion is very simple: Windsor is blocking access to a broad assortment of documents that go to the heart of issues presented here, namely, whether or not Windsor received legal advice from other attorneys that completely undercuts its claims against Defendants.  If it did – and it appears that was plainly the case – Windsor cannot claim privilege for those documents.

The materials Defendants seek primarily fall into two categories: 1) relevant legal advice and work provided by other counsel until September 9, 2014, when Windsor terminated Defendants; and 2) any related subsequent legal advice and work performed in the five underlying lawsuits, for which Windsor is seeking damages, including massive legal fees incurred to collect substantially inferior settlements to what Defendants already had (or could have) negotiated.[1]  Windsor provides no valid basis – in law or in fact – to deny Defendants' reasonable requests.

---

[1] Capitalized terms have the meaning ascribed to them in Defendants' opening memorandum of law.

1.    Windsor Mischaracterizes its Own Malpractice Claims

Windsor claims in its opposition papers that its malpractice allegations are limited to Defendants' "transactional legal advice" regarding the Loans, provided in 2010 and 2011, and that other attorneys, Darin Judd and Lauren Antonino, in particular, never provided such "transactional" advice. *See, e.g.*, Opposition Brief ("Opp. Br.") at 13-17. But that position is squarely contradicted by the Complaint, which explicitly alleges that Defendants' purported malpractice included work performed during the Bitter Litigation, which was active until 2015, and Defendants' legal advice regarding the other four Loans in the months following the adverse Bitter arbitration decision on April 8, 2014.[2]

Windsor repeatedly alleges in the Complaint that Defendants' malpractice is the proximate cause all of its injuries, including unfavorable settlements Windsor entered into years after terminating Defendants, and the substantial legal fees incurred after Defendants were terminated. *See, e.g.*, Heffer Decl. Ex. 1 ¶ 184 ("Had the Defendants acted in conformity with the reasonable standard of care … Windsor would have avoided the onslaught of litigation and been unequivocally and absolutely entitled to the entire death benefits under each of the Premium Finance Policies and thus would have avoided the Bitter, Acker, Collins, Coppock and

---

[2] *See, e.g.*, Declaration of Douglas S. Heffer, dated May 30, 2017 (the "Heffer Decl."), Ex. 1 (Complaint) ¶ 182, which alleges Defendants breached their professional duty of care by the following:

G.  Failing to correctly recognize and evaluate the issues and claims raised by the Bitter Trustee in the Bitter Action, and the same issues and claims raised thereafter by the Trustees in the Acker, Collins, Coppock and Stamatov Actions regarding default sale rights, voluntary transfer requirements and entitlement to the death benefits under each of the Premium Finance Policies and California law ; and

H.  Failing sufficiently to advise Windsor as to how to protect its ownership and entitlement to the Premium Finance Policy death benefits under the Acker, Collins, Coppock and Stamatov Premium Finance Policies subsequent to the Interim Panel Award in the Bitter Arbitration, but before the deaths of Acker and Collins.

Stamatov Actions and the legal fees and costs associated therewith"); *see also id.* Ex. 5 (Interrogatory Responses outlining asserted damages).

As such, Windsor's malpractice allegations, and its related damages theories, extend far beyond the initial advice Defendants provided in 2009 and 2010, and, to the extent Windsor received other advice during that later period, any privilege attached to those activities is deemed waived as a matter of law. *Goldberg v. Hirschberg*, 806 N.Y.S.2d 333, 337 (Sup. Ct. New York Cty. 2005) (because plaintiff was claiming reliance on defendant's legal advice on a certain issue to its detriment, advice received from and work product performed by any other lawyers on the issue was discoverable and not subject to privilege); *Bolton v. Weil, Gotshal & Manges, LLP*, 4 Misc. 3d 1029(A), at *4-6 (Sup. Ct. New York Cty. Sept. 10, 2004) (same with regard to communications with plaintiff's contemporaneous personal attorneys); *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 510 (S.D.N.Y. 2002) (third-party malpractice defendant law firm entitled to otherwise privileged communications and work product related to underlying matter, particularly those communications analyzing defendant's advice).

2.    Windsor Received Concurrent Legal Advice From Other Attorneys

Windsor's entire opposition to this Motion rests on the assertion that there was no contemporaneous representation because the attorneys listed on the privilege logs either did not provide advice about the Loans and Bitter Litigation, or were not "officially" engaged by Windsor to provide this specific advice (or both).  These arguments are meritless and easily refuted.

First, Steven Prusky, Windsor's principal, repeatedly admitted at his deposition that, starting in April 2014, he consulted other attorneys (including Darin Judd) about the Bitter Litigation, and what to do after the adverse arbitration award was issued.  In fact, Prusky conceded that he consulted numerous attorneys about the award, and Windsor's own opposition

papers admit this fact.  Opp. Br. at 13-16; Declaration of Darin Judd, dated June 6, 2017 (the

"Judd Decl."), ¶ 5; Affidavit of Lauren S. Antonino, dated June 8, 2017 (the "Antonino Aff."), ¶¶

2, 5-9.[3]

Second, Windsor cannot withhold the materials on the basis of attorney-client or work

product privilege and then attempt to escape the "at issue" waiver by claiming these attorneys

were not "official" counsel for this specific legal advice.   Windsor's after-the-fact

characterizations of the circumstances surrounding these engagements do not dictate whether

privilege attaches or whether that same privilege is waived.  *See Diversified Grp., Inc. v.*

*Daugerdas*, 304 F. Supp. 2d 507, 513 (S.D.N.Y. 2003) (explaining formal retention of attorney

not determinative because issue of whether communication is privileged involves specific

circumstances of communication in question – i.e., is the client approaching the attorney "in a

professional capacity with the intent to secure legal advice") (quoting *Bennett Silvershein*

*Assocs. v. Furman*, 776 F. Supp. 800, 803 (S.D.N.Y. 1991)).

Third, Windsor's assertion that these attorneys did not perform legal work involving the

Loans and Bitter Litigation (also called the "Barnes litigation") is directly contradicted by

Windsor's own privilege logs, which demonstrate that, at least from April 2014 to September

2014, Windsor sought such concurrent legal advice from many different attorneys.[4]

---

[3] Prusky also admitted at his deposition to seeking initial advice about the Loans prior to hiring Mr. Rousseau and the Herrick Firm.  Defendants intend to ask Mr. Prusky about all these communications at his continued deposition.

[4] If the privilege log entries are inaccurate or flawed, Windsor has otherwise waived privilege for these documents.  *See Aurora Loan Servs. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege" and amending a log "is essentially a concession that the initial privilege log was inadequate").

Darin Judd: Windsor's privilege log contains numerous entries (excerpted below) documenting such legal advice provided by Darin Judd.

| Date | Bate | Document | Sender (if applicable) | Recipient (if applicable) | Basis for Redaction | Description |
|------|------|----------|------------------------|---------------------------|---------------------|-------------|
| 4/15/2014 | Plaintiff 42058 - 42068 | Email | Darin Judd, Esq. | Steven Prusky | Attorney client privilege | Legal advice regarding applicable law and arguments. |
| 4/15/2014 | Plaintiff9353 | Email | Prusky | Darin Judd, Esq. | Attorney-Client Privilege and Work Product Doctrine | Discussion regardign [sic] arbitration. |
| 6/13/2014 | Plaintiff 41768 | Email | Darin Judd, Esq. | Steven Prusky | Attorney-client privilege | Legal advice relating to Barnes litigation. |
| 6/13/2014 | Plaintiff 41383 - 41385 | Email | Steven Prusky | Darin Judd, Esq. | Attorney-client privilege | Legal advice regarding strategy and arguments. |
| 6/13/2014 | Plaintiff 41666 - 41669 | Email | Steven Prusky | Darin Judd, Esq. | Attorney-client privilege | Legal advice regarding next steps in underlying suit. |
| 6/13/2014 | Plaintiff9533 | Email | Darin Judd, Esq. | Prusky | Attorney-Client privilege and Work Product Doctrine | Email strategy in underlying cases. |
| 8/20/2014 | Plaintiff 41772 | Email | Darin Judd, Esq. | Steven Prusky | Attorney-client privilege | Legal advice regarding outstanding legal issues in Acker and Bitter. |
| 8/20/2014 | Plaintiff9637 | Email | Darin Judd, Esq. | Prusky | Attorney-Client Privilege and Work Product Doctrine | Email regarding strategy in underlying litigation. |
| 8/29/2014 | Plaintiff 41315 | Email | Steven Prusky | Darin Judd, Esq. | Attorney-client privilege | Legal advice regarding settlement. |

Heffer Decl. Ex. 10.

Lauren Antonino: The privilege log also contains numerous similar entries (excerpted below) for Lauren Antonino. Ms. Antonino may have been providing advice about potential claims against the insurance broker, Eugene Houchins, III, but the logs show that she was providing other legal advice as well.[5]

| Date | Bate | Document | Sender (if applicable) | Recipient (if applicable) | Basis for Redaction | Description |
|------|------|----------|------------------------|---------------------------|---------------------|-------------|
| 8/19/2014 | Plaintiff 41303 - 41308 | Email | Steven Prusky | Lauren Antonino, Esq. and Darin Judd, Esq. | Attorney-client privilege | Discussion regarding the Barnes litigation. |
| 8/20/2014 | Plaintiff 41773 - 41796 | Email | Steven Prusky | Lauren Antonino, Esq. and Darin Judd, Esq. | Attorney-client privilege | Legal advice regarding outstanding legal issues in Acker and Bitter. |

---

[5] Defendants have recently learned that – despite the repeated statements by Prusky that Houchins was untrustworthy and that Windsor intended to sue him for his role in procuring the COOs for the Loans – Windsor has now settled with Houchins in exchange for his potential testimony in this action. Therefore, Defendants reserve the right to compel any privileged communications regarding Windsor's potential claims against Houchins, particularly those communications regarding his character and role in the underlying matter because Windsor previously took the position at the Bitter arbitration that Houchins was lying, but now appears to rely on this same testimony.

| 8/27/2014 | Plaintiff41626 – [sic] | Email | Steven Prusky | Lauren Antonino, Esq. and Darin Judd, Esq. | Attorney-client privilege | Legal advice regarding settlement. |
| 8/29/2014 | Plaintiff9483 | Email | Lauren Antonino, Esq. | Prusky and Darin Judd, Esq. | Attorney-Client Privilege and Work Product Doctrine | Settlement and strategy in underlying cases. |

Heffer Decl. Ex. 10.

There are similar privilege log entries (excerpted below) for many other attorneys that Windsor has repeatedly maintained were never engaged to provide advice about the Loans or the Bitter Litigation (or were not engaged at all), including, among others, Herbert Fineburg, Joseph Armstrong, Wayne Gilbert, and William Gwire.[6]  The log entries demonstrate otherwise.

| Date | Bate | Document | Sender (if applicable) | Recipient (if applicable) | Basis for Redaction | Description |
|---|---|---|---|---|---|---|
| 3/21/2013 | Plaintiff 42047 – 42055 | Email | Wayne Gilbert, Esq. | Steven Prusky | Attorney client Privilege | Discussing facts of underlying case and arguments. |
| 4/15/2014 | Plaintiff 41997 – 42000 | Email | Joe Armstrong, Esq. | Steven Prusky and Herbert Fineburg, Esq. | Attorney-client Privilege | Legal advice regarding applicable law and strategy. |
| 4/15/2014 and 6/6/2014 | Plaintiff9143-9144 | Email String | Prusky and Wayne Gilbert, Esq. and Darin Judd, Esq. | | Attorney-Client Privilege and Work Product Doctrine | Discussion regarding potential malpractice action and Motion for Reconsideration and arbitration. |
| 4/22/2014 | Plaintiff 41413 | Email | Steven Prusky | Joe Armstrong, Esq. | Attorney-client Privilege | Legal advice regarding strategy and arguments. |
| 5/1/2014 and 6/6/2014 | Plaintiff9269-9270 | Email String | Wayne Gilbert, Esq., Prusky, and Darin Judd, Esq. | | Attorney-Client Privilege and Work Product Doctrine | Email regarding Motion for Reconsideration and potential malpractice case. |
| 6/4/2014 | Plaintiff 41285 | Email | Steven Prusky | Herbert Fineburg, Esq. | Attorney-client Privilege | Discussing order on motion for reconsideration. |
| 6/9/2014 | Plaintiff 41479 – 41482 | Email | Steven Prusky | Suzan Kramer and Herbert Fineburg, Esq. | Attorney-client Privilege | Legal advice regarding underlying cases. |
| 6/16/2014 | Plaintiff 41393 – 41399 | Email | Steven Prusky | Suzan Kramer and Herbert Fineburg, Esq. | Attorney-client Privilege | Legal advice regarding strategy and arguments. |

---

[6] Windsor claims 1) Fineberg "was not involved with ANY of the policies, or the concept of buying them, managing them, or perfecting entitled to ownership of the benefits thereunder, or litigation of any of the underlying matters (including Bitter, Collins, Acker, Coppock or Stamtov [sic]).  His first and only involvement was in or around April 2014, when Windsor provided him a copy of the AAA opinion in the Bitter Arbitration and he made a verbal recommendation of another attorney"; 2) Armstrong, a colleague of Fineburg's, "sole involvement, beginning in November of 2015, had to do with the advice regarding arrangement of a public sale for certain policies"; 3) Suzan Kramer, an assistant to Fineburg, had "no involvement whatsoever with Windsor's premium financing or any of the policies at issue in this action"; 4) Wayne Gilbert provided only "personal estate planning advice to Steven Prusky"; and 5) William Gwire was only consulted as a potential malpractice attorney in this action.  Heffer Decl. Ex. 9.

| 6/22/2014 | Plaintiff 41494 - 41503 | Email | Steven Prusky | Darin Judd, Esq. and Herbert Fineburg, Esq. | Attorney-client Privilege | Legal advice regarding underlying suit. |
| 6/22/2014 | Plaintiff9364 | Email | Prusky | Herb Fineburg, Esq. and Darin Judd, Esq. | Attorney-Client Privilege and Work Product Doctrine | Discussion regarding Bitter. |
| 6/25/2014 | Plaintiff 41700 - 41701 | Email string | Suzan Kramer | Steven Prusky and Herbert Fineburg, Esq. | Attorney-client Privilege | Email to discuss the status of Bitter and various other Windsor matters. |
| 6/25/2014 | Plaintiff9565-9566 | Email String | Prusky and Herb Fineberg [sic], Esq. and Suzan Kramer | | Attorney-Client Privilege and Work Product Doctrine | Email regarding meeting to discuss underlying litigation. |
| 8/20/2014 | Plaintiff 41268 - 41269 | Email | Steven Prusky | William Gwire, Esq. | Attorney-client Privilege | Email regarding letter to Joseph Wood. |
| 8/20/2014 | Plaintiff9819 | Email | Prusky | William Gwire, Esq. | Attorney-Client Privilege and Work Product Doctrine | Email regarding underlying litigation. |

Heffer Decl. Ex. 10.

Windsor repeatedly has represented that its various attorneys were not "officially" engaged by the company to provide such legal advice, but the privilege logs document such communications and work product. *See* Heffer Decl. Exs. 10-12.

Because Windsor clearly had contemporaneous legal representation, Windsor has presented this Court no basis to deny Defendants' Motion with regard to these related documents.   In fact, Windsor essentially concedes the fact that any privilege over such concurrent, related legal advice is waived. *See, e.g.*, Opp. Br. 28-29; *see also supra* at 2-3; *Goldberg*, 806 N.Y.S.2d at 337; *Bolton*, 4 Misc. 3d 1029(A), at *4-6; *Bank Brussels Lambert*, 210 F.R.D. at 510.

3.   <u>Windsor's Allegations Have Placed its Subsequent Legal Work "At Issue"</u>

As Defendants' Motion explains, the attorney-client and work product privileges are waived when, as here, the subject matter of the documents in question have been placed "at issue" in the litigation.   That waiver extends to advice given by subsequent counsel. *See* Memorandum of Law in Support of Motion at 9-12; *see also Deutsche Bank Tr. Co. of Ams. v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 63-64, 837 N.Y.S.2d 15, 23 (1st Dep't 2007) (a party cannot deny an adversary access to information vital to a claim or defense or engage in "selective

7

disclosure" by relying on the protection for damaging materials while disclosing other self-serving ones) (internal citations and quotation marks omitted).

In the Complaint, Windsor alleges that Defendants were negligent in their representation of Windsor from 2009 through the award in the Bitter Litigation in 2014 (and beyond), and that their negligence was the proximate cause of all Windsor's purported damages, many of which were not suffered until long after Defendants were terminated. Defendants, therefore, are certainly entitled to examine subsequent legal work performed on Windsor's behalf, which forms the basis for a substantial portion of those damages. Windsor should not be allowed to rely on the outcomes of the five underlying litigations as proof of malpractice (or damages) but then use privilege to conceal documents that are central to elements of Windsor's malpractice claim, like causation and damages. *See In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008); *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010).

The circumstances surrounding Windsor's utilization of successor counsel are curious, to say the least. Darin Judd admits in his declaration that the Bitter settlement was nearly done in September 2014 – "with only the last details to be worked out" – but Windsor did not finalize the agreement until January 29, 2015 and incurred over $60,000 in additional attorneys' fees from Judd and Antonino on that matter. Judd Decl. ¶ 9; Heffer Decl. Exs. 2, 5. Similarly, Lauren Antonino, a Georgia attorney, states in her affidavit that she was brought on to assess Windsor's claims against Houchins (who resided in Georgia), not to serve as additional counsel in various federal actions in California. Yet, Antonino admits her role expanded significantly afterward, and neither she nor Windsor provides any explanation as to why Windsor needed a second law firm to litigate Acker and Collins (other than a vague reference to her assisting in discovery), or

why Windsor is seeking hundreds of thousands of dollars in legal fees for her work alone. Antonino Aff. ¶ 2; Heffer Decl. Ex. 5.[7]

The record establishes that Defendants, repeatedly, advised Windsor to ███████ ████████████████ - █████████████████████████ █████████████ - █████████████████████ ████████████ Declaration of Julius Rousseau, dated May 30, 2017, ¶¶ 4-6. ███████ ████████████████████████ ████████████████████ ████████████████████████████████████ Heffer Decl. Ex. 14.   Even after Windsor failed to prevail on its early summary judgment motions in these cases, it chose to continue litigating for over six months. *See* N.D. Cal. dockets 14-cv-04651(Acker); 14-cv-03713(Collins); Heffer Decl. Ex. 2.   Now, Windsor claims Defendants are responsible for the eventual settlements in these cases (specifically, the difference between the settlement amount and the full death benefit), along with $226,380.16 in legal fees for the Acker case and $200,579.05 in legal fees for the Collins case. *Id.* Ex. 5.

In addition, Windsor chose to commence actions against Coppock and Stamatov, litigating for years before settling for $12,000 each. *Id.*  Despite the fact that Windsor ignored Defendants' clear (and correct) legal advice, Windsor now seeks over $151,416.44 in legal fees for the Coppock litigation and $36,915.59 in legal fees for the Stamatov litigation. *Id.*

Defendants are entitled to investigate why Windsor failed to take their advice to settle these four actions, opting instead to litigate all four matters aggressively.  Defendants are also

---

[7] There is an additional, independent reason why discovery is appropriate.  Judd and Antonino have now submitted sworn statements regarding their purported roles in these litigations.  At a minimum, Defendants are entitled to depose both attorneys to question them regarding their factual assertions and their roles in the underlying litigations.

entitled to investigate Windsor's evaluations of subsequent counsel's performance and the circumstances surrounding the decisions to settle these matters. These matters are fundamentally critical to assessing Windsor's damages claims against Defendants, which include the fees paid to those counsel. Defendants have no other way to obtain this information. These materials are solely within Windsor's possession and directly concern elements of Windsor's malpractice claim. This information is vital to Defendants' ability to defend themselves. *See IMO Indus., Inc. v. Anderson Kill & Olick, P.C.*, 746 N.Y.S.2d 572, 573-77 (Sup. Ct. New York Cty. 2002) (defendant entitled to communications with concurrent firm that continued representing plaintiff because they were central to whether injury was causally related to the alleged malpractice <u>and</u> because defendant was entitled to discovery regarding whether malpractice was only possible cause of purported loss); *Aurora Loan Servs.*, 499 F. Supp. 2d at 477 (same with regard to subsequent counsel who litigated several foreclosure actions for years after defendants' termination); *Bolton*, 4 Misc. 3d 1029(A), at *4-6; *Bank Brussels Lambert*, 210 F.R.D. at 508-10.

Windsor misses the point when it argues that Defendants are not entitled to these materials because they have not asserted claims for contribution against Judd or Antonino. Defendants have asserted in their Answer, Affirmative Defenses, and Counterclaims (ECF No. 19, hereinafter, the "Answer") various relevant defenses, including, *inter alia*, that they were not the proximate cause of some or all of Windsor's harm, and that Windsor failed to mitigate damages (Affirmative Defenses 2, 4-5, 7).

4.    <u>Windsor Fails to Distinguish Defendants' Case Law And Offers Only Inapposite Cases To Oppose The Motion to Compel</u>

Windsor claims Defendants' case law is distinguishable from this matter because the cited cases all involve concurrent representation and alleged negligence and damages that

implicated the advice of successor counsel.  Opp. Br. 37-40.[8]  Its arguments are meritless.  As demonstrated above, Windsor sought contemporaneous legal advice about the Loans and Bitter Litigation from numerous other attorneys, and the allegations in the Complaint and Windsor's damages theory clearly implicate the legal work performed by Darin Judd and Lauren Antonino, among others.  *See supra* at 3-7.

Contrary to Windsor's assertions, Defendants have cited to cases involving successor counsel.  *See, e.g.*, *Aurora Loan Servs.*, 499 F. Supp. 2d at 477 (successor counsel litigated actions for years after defendants' termination); *Goldberg*, 806 N.Y.S.2d at 337 (plaintiff claimed subsequent counsel was not contemporaneous with defendants but court held defendants were entitled to withheld materials regardless); *see also IMO Indus., Inc.*, 746 N.Y.S.2d at 573-77 (concurrent firm continued representing plaintiff after terminating defendant); *Bolton*, 4 Misc. 3d 1029(A), at *4-6 (same).

Finally, Windsor spends many pages of its 42-page memorandum of law laboriously quoting from off-point cases that provide no support whatsoever for its opposition on this Motion.  Windsor's cases, many of which involve matrimonial actions, are fundamentally different from this matter because, often, the alleged malpractice at issue was very straightforward (like a missed deadline that did not involve plaintiff's reliance on or understanding of any legal advice), there was no overlapping counsel with defendant(s), or the defendant(s) sought disclosure from present counsel in the malpractice action.[9]

---

[8] Windsor's also claims this Court in *Aurora* only affirmed the magistrate's waiver decision because of problems with plaintiff's privilege log.  Opp. Br. 40.  This argument is clearly contradicted by the decision itself.  *Aurora Loan Servs.*, 499 F. Supp. 2d at 478 (affirming decision because there is "support for the position that plaintiff's claim of damages has put communications with its successor counsel 'at issue'").

[9] *See, e.g.*, *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 834-35 (2d Dep't 1983) (defendants not entitled to communications from plaintiff's current counsel related in malpractice action involving failure to include key contract provision that was in prior version of agreement in current settlement agreement); *Koch v. Sheresky*,

## CONCLUSION

As explained in their opening motion papers and herein, Defendants are entitled to a Court order compelling Windsor to produce all communications with other counsel and related work product concerning the subject matter of this legal malpractice action, which includes the Loans and the subsequent litigations involving them.

Defendants are also entitled to a Court order requiring Windsor to pay the reasonable expenses incurred in making this Motion, including attorneys' fees.

Dated: New York, New York
June 20, 2017

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ Peter N. Wang
    Peter N. Wang (PW 9216)
    Douglas S. Heffer (DH 6082)
    Adam G. Pence (AP 8621)
    90 Park Avenue
    New York, New York 10016
    Tel: (212) 682-7474
    Fax: (212) 687-2329

*Attorneys for Defendants*
*Arent Fox, LLP and Julius Rousseau, III*

---

*Aronson & Mayefsky LLP*, No. 112337/07, 2011 WL 6015688, at *5-6 (Sup. Ct. New York Cty. Nov. 21, 2011) (defendants not entitled to privileged materials from plaintiff, most of which they already had because there was no overlapping counsel—defendants abandoned plaintiff, forcing her to represent herself for a time); *Raphael v. Clune White & Nelson*, 146 A.D.2d 762, 762-63 (2d Dep't 1989) (defendant not entitled to privileged communications in English action commenced after underlying case brought by defendant in New York dismissed on forum non conveniens grounds); *Leviton Mfg. Co.*, 2010 WL 4983183, at *5 (defendant not entitled to communications with subsequent counsel because alleged malpractice was "straightforward" – the failure to file timely patent applications – so plaintiff's state of mind or the advice of defendant was not "at issue"); *TIG Ins. Co. v. Yules & Yules*, No. 99 Civ. 3378(KMW)(MHD), 1999 WL 1029712, at *1-2 (S.D.N.Y. Nov. 12, 1999) (discovery sought from current malpractice counsel, and the alleged malpractice involved a blown statute of limitations that occurred before subsequent counsel joined); *Soussis v. Lazer, Aptheker, Rosella & Yedid, P.C.*, No. 17936/05, 2010 N.Y. Misc. LEXIS 5191, at *9 (Sup. Ct. Nassau Cty. Oct. 15, 2010) (malpractice allegations involved blown statute of limitations for employment discrimination claim and, after *in camera* review of the remaining documents, the court determined they did not contain "facts determinative of the plaintiff's [remaining] legal claims"); *United Nat'l Ins. Co. v. Granoff, Walker & Forlenza, P.C.*, No. 06 Civ. 3999(DC), 2007 WL 1686684, at *1-2 (S.D.N.Y. June 11, 2007) (plaintiff insurer was not suing for malpractice but to rescind malpractice insurance; further, the court granted in part the motion to compel for any communications with one attorney when he was co-counsel with firm accused of malpractice and, for another attorney, for any communications "involving" the accused firm).