

**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
WWW.FOLEY.COM

September 26, 2017

<u>Via ECF</u>

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

   Re: *Windsor Securities, LLC v. Arent Fox, et al.*,
      <u>Case No. 16-cv-01533 (GBD) (GWG)</u>

Dear Magistrate Judge Gorenstein:

  We represent Defendants Arent Fox and Julius Rousseau, III (together, "Defendants") in this action. Although we regret needing to seek your intervention regarding another discovery dispute, certain matters have come to our recent attention which compel this application for a Pre-Motion Conference. In a nutshell, and as we briefly will outline in this letter, the Plaintiff Windsor Securities, LLC ("Windsor") has so badly (and repeatedly) botched its discovery obligations that we respectfully urge Your Honor to award two separate forms of relief: (1) an Order directing that Windsor's production of certain purportedly privileged documents be deemed not "inadvertent" (as that term is used in the parties' stipulation governing document production), and that whatever "privilege" might apply has been waived; and (2) reimbursement of the substantial costs incurred by Defendants caused directly by Windsor's discovery defaults.

## Factual Background

  Your Honor is generally familiar with the background of this case, as a result of your prior involvement with other discovery disputes. As here relevant – and these facts are not in dispute – it is clear that Windsor has struggled for over a year to produce documents in an acceptable, manageable format. The history of that struggle (all of which we will be prepared to demonstrate in detail, if necessary, at our Pre-Motion Conference or in any subsequent motion) demonstrates that Windsor dribbled out documents on at least <u>15</u> separate occasions over a period of <u>14</u> months, but more to the point, did it in a way that made our review of the documents impossible. Among other things, Windsor did the following:

- Produced an initial collection of documents without the agreed-upon metadata and produced 500-600 e-mails without attachments
- In early Fall 2016, failed to cure deficiencies when reproducing the initial production
- In early December 2016, still failed to cure deficiencies in its "third" initial production
- In late December 2016, produced nearly 165,000 pages of additional materials without the proper metadata load files, making the documents virtually unusable
- In early January 2017, despite failing to cure any of the above issues, demanding that depositions take place immediately
- By the end of January 2017, through its repeated failures, forced Defendants to accept native e-mail files for the majority of the initial production to process at their own expense

BOSTON JACKSONVILLE MILWAUKEE SAN DIEGO TALLAHASSEE
BRUSSELS LOS ANGELES NEW YORK SAN FRANCISCO TAMPA
CHICAGO MADISON ORLANDO SHANGHAI TOKYO
DETROIT MIAMI SACRAMENTO SILICON VALLEY WASHINGTON, D.C.

The most recent discovery default was the final straw. After repeated complaints by us, promises to remedy, and subsequent additional production, on August 10, 2017, Windsor made what it represented to be a "final," corrected production of over 90,000 additional pages of documents. In response to our initial questions regarding the adequacy of the production, Windsor explicitly represented, in writing, that there were "no deficiencies" in the production, and that it was now complete. As we soon discovered during our review of the documents (in preparation for a series of upcoming depositions), it was not.

As we began our review of the documents, we discovered materials that appeared to be similar in nature to documents Windsor previously had withheld as privileged (and which were the subject of the prior motion to compel before Your Honor). In light of the long and tortured history of Windsor's discovery delays and defaults, and in light of Windsor's express assurances that there were "no deficiencies" after the multiple problems noted above, we did not expect that the production of such documents could possibly be considered inadvertent; however, in an abundance of caution, we stopped our review to alert Windsor. To that end, on September 15, 2017, we informed Windsor's counsel (and provided examples of these documents), asking for confirmation that we could proceed with our review. Windsor's counsel wrote back saying:

> We have no problem with you continuing your review of the documents we produced and for your continued preparation for Mr. Prusky's deposition … We simply reserve our clawback rights and and [sic] continue to preserve all privileges asserted. We will review these documents and get back to you early next week with any clawback requests for inadvertently produced privileged documents, to the extent there are any.

Around 30 minutes later (a true and correct copy of this e-mail exchange is attached hereto as Exhibit A), Windsor's counsel e-mailed our office again saying:

> Please disregard my previous email and cease your continued review of the documents. We have confirmed that at least one privileged email was inadvertently produced and there may be more. We will be in touch early next week with a list of documents to clawback per the terms of the parties [sic] stipulation and protective order entered in this case.

On September 19, 2017, Windsor's counsel provided a clawback list, which included not one, but 113 documents, and demanded their return or destruction. Attached hereto as Exhibit B is a true and correct copy of this correspondence. For those several days, we had to suspend entirely our document review of a production that was, once again, useless when originally made. The list of Bates ranges of the documents contained several errors (e.g., listing only one page of a two page e-mail) and included only portions of larger documents (e.g., identifying a few pages to remove in a larger 300-page collection of e-mails, produced as a single PDF). Our office has already had to expend significant resources deciphering Windsor's errors and reloading these larger PDF files after deleting a few pages from them. More to the point, Windsor was now claiming the protection of the parties' stipulation, which provided it with a safe harbor to seek the return of "inadvertently" produced documents – which could not possibly be the case under the facts and circumstances of the case here.

Meet and Confer Certification: On September 20, 2017, at 10:30 a.m., counsel for Windsor and Defendants attended a telephonic meet and confer regarding whether Windsor had waived the protection of the parties' stipulation with respect to these 113 documents (or any others that might be discovered at a later date). The conference lasted for roughly 25 minutes. Alan Frank and Samantha Millrood participated on behalf of Windsor, and Douglas Heffer, Adam Pence, and I participated on

September 26, 2017
Page 3

behalf of Defendants. We stated our position that, under the circumstances present here, Windsor's production of the supposedly privileged materials could not qualify as "inadvertent production" under the law. Given (i) the running dispute between the parties concerning these types of documents, (ii) the fact that Windsor was on notice of the fact that any materials from its counsel likely might contain privileged materials, and (iii) that Windsor was in the position of correcting a series of prior erroneous productions, we argued that Windsor could not possibly demonstrate that it was entitled to clawback these documents. Windsor disagreed, maintaining that it was entitled to "clawback" and withhold these materials as privileged but providing no explanation as to how or why the materials had still been produced. As a result of these developments, the parties agreed to postpone Steven Prusky's deposition (which had been scheduled for today) to October 4, 2017. During the course of the meet and confer, we informed Windsor's counsel that we intended to raise all of these issues with the Court.

### Windsor Has Waived Privilege

In its clawback letter, Windsor claims that the Protective Order in this case allows it to avoid any waiver and to assert privilege over the relevant materials after the fact (citing Paragraph 12 of the Order (Dkt. No. 28)). The Protective Order, however, provides the parties this right only for the "inadvertent" production of privileged documents. To determine whether the release of such documents is an "inadvertent" disclosure, and, therefore, does not constitute a waiver of attorney-client privilege or work product immunity, this Court considers four factors: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery in proportion to the extent of the particular disclosure at issue, and (4) overarching issues of fairness." *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, 03 Civ. 1818 (PKL) (JCF), 2005 U.S. Dist. LEXIS 34171, at *3-4 (S.D.N.Y. Dec. 7, 2005) (internal quotation marks omitted) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985)). All of these factors favor a finding of waiver here.

First factor (Precautions): Windsor took few, if any, precautions here, even though it was acutely aware that materials from its subsequent counsel (Darin Judd and Lauren Antonino) likely were privileged. *S.E.C. v. Cassano*, 189 F.R.D. 83, 85 n.4 (S.D.N.Y. 1999) (the appropriate question is "whether the party producing privileged material has been so careless as to surrender any claim that it has taken reasonable steps to ensure confidentiality."). First, the fact that Antonino's office appears to have provided Windsor with large PDFs, including hundreds of documents in each file, meant that a careful, extensive page by page review was necessary. For example, one supposedly privileged document was the first page of a large PDF; presumably, Windsor had to have reviewed the remainder of the file. And if it failed to do that, knowing that it had to do so and do so carefully, its gross negligence could not possibly equal "inadvertence." Second, Windsor produced multiple versions of the materials over which it now claims privilege. *See de Espana v. Am. Bureau of Shipping*, 03 Civ. 3573 (LTS) (RLE), 2005 WL 3455782, at *4 (S.D.N.Y. Dec. 14, 2005) (finding privilege was waived, despite large number of documents involved, because, *inter alia*, producing party failed to take reasonable precautions to protect the privilege and produced duplicate copies of the inadvertently disclosed documents). These documents simply could not be said to have escaped Windsor's attention in the review.

Second factor (Time to Rectify): Opposing counsel, upon first receiving notice of the privilege issue, instructed our office to continue its review, regardless of privilege. Soon thereafter, it reversed course. On top of that, opposing counsel then took four days to provide an incomplete clawback list and, at no point, offered to take any other affirmative steps to correct Windsor's negligence, such as

September 26, 2017
Page 4

reproducing the large 300-page PDFs without the relevant clawed-back materials. *See LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, 04 Civ. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007) (delay of more than few days to rectify disclosure weighs in favor of waiver).

Third factor (Proportionality of Disclosure): Windsor is clawing back at least 113 documents (and perhaps more) from this recent production, primarily from Antonino's and Judd's files. Windsor has produced thousands of other documents from these attorney files involving other legal work performed for Windsor, work that is entirely irrelevant to this litigation. *See de Espana*, 2005 WL 3455782, at *4 (vast number of documents reviewed does not preclude waiver when adequate precautions not taken). Further, Windsor's earlier document production should not be included in this Court's proportionality analysis because these documents were produced long ago (and were produced multiple times because of Windsor's inefficiency). Finally, the nature of these materials should weigh against Windsor because it was plainly aware that many if not most of the documents from Antonino and Judd likely were privileged.

Fourth factor (Fairness): Windsor had many months to review these materials and withhold any privileged documents, while providing Defendants only a very short period to conduct a similar review. *See id.* (courts analyzing waiver should not only consider the number of documents involved but the time frame in which the production took place) (citing *United States v. Rigas*, 281 F. Supp. 2d 733, 738 (S.D.N.Y. 2003)). Windsor's conduct from the very beginning of discovery and its repeated refusal to correct its deficiencies, or even review Defendants' numerous correspondence regarding these deficiencies, should also weigh against Windsor. More importantly, the production of privileged documents here occurs just as the parties are disputing the applicability of privilege for documents relating to simultaneous and subsequent counsel. Even when our office notified opposing counsel of the privilege issue, the immediate response was to ignore the e-mail and demand that we continue the review (and only later did Windsor demand that we suspend the review). When Windsor demanded clawback, four days later, it provided insufficient instructions and did not offer to take any of the other necessary steps to facilitate the deletion of these documents.

### Defendants Should Be Compensated For Costs Caused By Windsor's Delays and Defaults

Windsor's baffling and abject failures to fulfill its discovery obligations – from the very beginning of this case through the end of discovery – have significantly delayed this litigation and prejudiced Defendants by causing them to incur unnecessary costs. Of course in litigation, one must expect that production issues will arise in the ordinary course and require correction, but this is a very different case where the abuses exceed anything reasonable, and have occurred repeatedly over an extended period of time. Numerous attorney hours and resources have been devoted to addressing Windsor's inability to produce a complete set of responsive materials in an acceptable format. The initial e-mail production had to be redone multiple times (always with a different number of documents, always with format issues). Eventually, Defendants were forced to produce Windsor's documents back to Windsor (from the native files provided). Finally, after repeated attempts to produce this final set of materials, Windsor is further delaying Defendants' review (and preparation for a deposition that is now scheduled to go forward on October 4) with this latest privilege issue. Court intervention is required where, as here, there is a demonstrated pattern of prejudicial abuse of the discovery process that causes the other party prejudice in case preparation and magnifies costs. Whether such conduct can be construed as deliberate or grossly negligent, it must be deterred and its effects ameliorated.

### Conclusion

Defendants respectfully request that this Court (1) find that Windsor has waived any privilege with respect to the supposedly privileged documents recently produced; and (2) award Defendants all costs and attorneys' fees associated with Windsor's repeated discovery failures, in an amount to be determined upon submission of a declaration from Defendants' counsel.

Sincerely,
/s/ Peter N. Wang
Peter N. Wang

# EXHIBIT A

| | |
|---|---|
| **From:** | Samantha Millrood <SMillrood@alflaw.net> |
| **Sent:** | Friday, September 15, 2017 2:02 PM |
| **To:** | Heffer, Douglas S. |
| **Cc:** | Pence, Adam G.; Alan L. Frank; Wang, Peter N. |
| **Subject:** | Re: Windsor Securities v. Arent Fox, et.al. |

Counsel,
Please disregard my previous email and cease your continued review of the documents. We have confirmed that at least one privileged email was inadvertently produced and there may be more. We will be in touch early next week with a list of documents to clawback per the terms of the parties stipulation and protective order entered in this case.

Samantha Millrood

Sent from my iPhone

On Sep 15, 2017, at 1:28 PM, "DHeffer@foley.com" <DHeffer@foley.com> wrote:

> Mr. Prusky's deposition is scheduled for 9/26, not 10/4.
>
>> **From:** Samantha Millrood [mailto:SMillrood@alflaw.net]
>> **Sent:** Friday, September 15, 2017 1:23 PM
>> **To:** Pence, Adam G.
>> **Cc:** Alan L. Frank; Wang, Peter N.; Heffer, Douglas S.
>> **Subject:** Re: Windsor Securities v. Arent Fox, et.al.
>>
>> Adam,
>> We have no problem with you continuing your review of the documents we produced and for your continued preparation for Mr. Prusky's deposition on October 4th. We simply reserve our clawback rights and and continue to preserve all privileges asserted. We will review these documents and get back to you early next week with any clawback requests for inadvertently produced privileged documents, to the extent there are any.
>> Samantha Millrood
>>
>> Sent from my iPhone
>>
>> On Sep 15, 2017, at 12:50 PM, "APence@foley.com" <APence@foley.com> wrote:
>>
>>> Samantha:
>>>
>>> We can only identify certain documents at this time because we have avoided sections of the production that appear to contain such materials and are obviously still in the process of reviewing. As an example only, we would suggest you start by reviewing the two large PDFs with the Bates range ANTONINO 022066-022611. To avoid any confusion, however, we will not be going through page by page of this latest 90,000 page production and identifying every document for which Windsor may claim privilege. To the extent that you feel it is necessary to re-review the remainder of the production, we will be significantly prejudiced by what is yet another delay related to Windsor's document productions. This issue,

1

to the extent it is not resolved today, will invariably impact our ability to move forward with, at a minimum, Steven Prusky's deposition on the scheduled date. If we do move forward with our review today, we expect to able to do so unimpeded by any further potential privilege issues.

Adam

**From:** Samantha Millrood [mailto:SMillrood@alflaw.net]
**Sent:** Friday, September 15, 2017 11:48 AM
**To:** Pence, Adam G.; Alan L. Frank
**Cc:** Wang, Peter N.; Heffer, Douglas S.
**Subject:** RE: Windsor Securities v. Arent Fox, et.al.

Adam,

Can you please identify the bate stamp numbers and/or bates stamp range for the communications you are referring to in your email so that we can assess whether they were inadvertently produced.

Please be advised that we do not, and did not intend to, waive any privilege through the production of these documents.

While we are looking into this issue, please be advised that we reserve all rights regarding clawback of inadvertently produced privileged information as provided at paragraph 12 of the Parties' Stipulation and Protective Order in this matter.


Samantha Millrood, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
Phone: (215) 935-1000
Fax: (215) 935-1110
smillrood@alflaw.net

ATTENTION:

IRS CIRCULAR 230 DISCLOSURE:
Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein.
---------------------------------------------
This e-mail contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Individual(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at (215)935-1000 or notify us by e-mail at dmcguckin@alflaw.net.


**From:** APence@foley.com [mailto:APence@foley.com]
**Sent:** Friday, September 15, 2017 11:29 AM

2

**To:** Alan L. Frank <afrank@alflaw.net>
**Cc:** Samantha Millrood <SMillrood@alflaw.net>; PWang@foley.com; DHeffer@foley.com
**Subject:** RE: Windsor Securities v. Arent Fox, et.al.

Alan:

In reviewing Windsor's recent production of documents, we have come across multiple e-mails between and among Windsor and Herbert Fineburg, Darin Judd, Lauren Antonino and other attorneys, which appear similar in nature to documents Windsor has previously withheld on the basis of privilege, including documents that are at the center of Defendants' motion to compel. Given all the disputes regarding these materials – and the numerous assurances by your office that the recent document production is final and complete – we cannot imagine that these disclosures were inadvertent. Nevertheless, out of an abundance of caution, we are raising this issue with you. Unless we hear, otherwise, by the end of the day today, we will continue our review of the documents and our preparations for the upcoming depositions.

Adam

---

**From:** Alan L. Frank [mailto:afrank@alflaw.net]
**Sent:** Friday, September 01, 2017 1:45 PM
**To:** Pence, Adam G.
**Cc:** Samantha Millrood; Wang, Peter N.; Heffer, Douglas S.
**Subject:** Re: Windsor Securities v. Arent Fox, et.al.

There are no deficiencies. Please conclude this. Thank you.

Sent from my iPhone

On Sep 1, 2017, at 12:52 PM, "APence@foley.com" <APence@foley.com> wrote:

> Samantha:
>
> We have now been able to run diagnostics on Windsor's most recent production(s) and discovered the following gaps in the documents produced:
>
> ANTONINO 007424- ANTONINO 008503
> ANTONINO 011276- ANTONINO 011747
> ANTONINO 018865- ANTONINO 018865
> ANTONINO 019920 -ANTONINO 019922
> ANTONINO 019936 -ANTONINO 019939
> ANTONINO 019957- ANTONINO 019965
> ANTONINO 019970- ANTONINO 019971
> ANTONINO 083492 -ANTONINO 083511
>
> JUDD 169084-JUDD 169803
>
> Given Windsor's previous issues with discovery, this latest problem is not a surprise. Since the first production, we have

3

discovered numerous issues that have caused unnecessary delays and significant costs that our side should not have to bear.  In the first production, a large number of e-mails were missing attachments and the entire production of electronic files was provided to our office in an unusable format.  After multiple attempts to correct these issues, with no success, our office actually had to accept native files and produce documents back to Windsor (this had to be a litigation first).

With the most recent production, despite your repeated assurances that there would be no issues, the documents were, again, produced in an unusable format (and were missing multiple load files), requiring our litigation support and IT departments to spend countless hours trying to fix or even just to assess the problems with your production.  We even accepted PDF versions of certain documents to make things easier for your office and to expedite the process.  Now, we find that there are multiple, huge gaps in the production.

These numerous problems, particularly with regard to the most recent production, have caused significant delays and prejudiced our clients.  We request that you cure these deficiencies by next week.

Finally, we reserve the right to seek all of our costs – which are significant – associated with these numerous production deficiencies.

Adam

Adam Pence, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, NY  10016
Direct: 212-338-3575
Office: 212-682-7474
Fax: 212-687-2329

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

The preceding email message may be confidential or protected by the attorney-

client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

# EXHIBIT B

ALAN L. FRANK ●*+▫
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+
EVAN L. FRANK *+♫△
CHRISTOPHER R. KING*+
SUSAN B. PLINER*+
ROBERT E. BROOKMAN*+▫
ROBERT E. GORDON *+△
DAVID M. D'ORLANDO *+
JORDAN E. FRANK *+
JACLYN H. FRANK *+♫

   PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH
LISBETH LOZADA

● Certified by the NJ Supreme Court
   as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
▫ MEMBER NY BAR
♫ MEMBER FL BAR
△ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
### Attorneys at Law

**135 OLD YORK ROAD**
**JENKINTOWN, PA 19046**
**(215) 935-1000**
**FAX NO. (215) 935-1110**

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043
(856) 321-1120
FAX NO. (856) 321-1233

CENTER CITY PHILADELPHIA OFFICE

1515 MARKET STREET
SUITE 1200
PHILADELPHIA, PA 19102
(215) 496-9661
FAX NO. (215) 935-1110

E-MAIL ADDRESS:
afrank@alflaw.net

September 19, 2017

**VIA EMAIL and REGULAR MAIL**
Peter N. Wang, Esquire (pwang@foley.com)
Douglas Heffer, Esquire (dheffer@foley.com)
Adam Pence, Esquire (apence@foley.com)
FOLEY & LARDNER, LLP
90 Park Avenue
New York, NY 10016-1314

> *RE:  Windsor Securities LLC v. Arent Fox, LLP and Julius Rousseau, III, Esquire,  Case No. 16-cv-1533-GBD*

Dear Messrs. Wang, Heffer and Pence:

   As a follow-up to your September 15, 2017 email concerning our production of possibly privileged communications, and my September 15, 2017 email confirming that privileged documents had been inadvertently produced, we have now identified the privileged documents that were inadvertently produced, identified herein below.

   As you are aware Paragraph 12 of the Parties Stipulation and Protective Order dated June 1, 2016 and entered by the Court on June 6, 2016  [ECF No. 28] provides:

> **12.     Inadvertent Production of Privileged Discovery Materials/Clawback. Due to the large volume of electronic and hard copy data in the possession, custody, or control of the Parties and the numerous concerns regarding attorney-client privilege and work product protection, the Parties agree to the following "Clawback Provision":**
>
> > **a) The inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including but not limited to information or documents that may be considered Confidential Information under this**

Messrs. Wang, Heffer and Pence
September 19, 2017
-Page 2-

> **Stipulation and Protective Order,** *will not be deemed to waive a Party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work product doctrine at a later date.*
>
> **b)** *Any party receiving any such information or document shall return it upon request from the Producing Party, and destroy all copies thereof.* **Upon receiving such a request as to specific information or documents,** *the receiving party shall return the information or documents to the producing party withing five (5) business days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection*. **The receiving party treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). Disclosure of the information or document by the other party prior to such later designation shall not be deemed a violation of the provisions of this Order. This Order and Clawback Provision shall be governed by Federal Rule of Evidence 502(d) and is entered pursuant to Federal Rule of Civil Procedure 26(c)**(1 )**.**

[ECF No. 28] (emphasis added)

We now formally request your compliance with the Claw Back Provision, at Paragraph 12, of the Parties' Stipulation and Protective Order [ECF No. 28] and F.R.C.P. 26(b)(5)(B) regarding the following inadvertently produced privileged documents:

|  | **Bate Stamp** |
|---|---|
| 1. | ANTONIO 000142 |
| 2. | ANTONIO 000368 |
| 3. | ANTONIO 006502-006504 |
| 4. | ANTONIO 019936 |
| 5. | ANTONIO 019938 |
| 6. | ANTONIO 022074-022076 |
| 7. | ANTONIO 022080 |
| 8. | ANTONIO 022170-022179 |
| 9. | ANTONIO 022342-022359 |
| 10. | ANTONIO 022363-022364 |
| 11. | ANTONIO 022366-022386 |
| 12. | ANTONIO 022390 |
| 13. | ANTONIO 022416 |
| 14. | ANTONIO 022419 |
| 15. | ANTONIO 022434-022436 |
| 16. | ANTONIO 022556 |
| 17. | ANTONIO 022580 |
| 18. | ANTONIO 022607 |
| 19. | ANTONIO 023120-023121 |

20. ANTONIO 023129
21. ANTONIO 023165-023168
22. ANTONIO 023171-023173
23. ANTONIO 023207-023215
24. ANTONIO 023242
25. ANTONIO 023318-023319
26. ANTONIO 023326
27. ANTONIO 023454-023455
28. ANTONIO 023597
29. ANTONIO 023653-023654
30. ANTONIO 024536-024544
31. ANTONIO 024910-024918
32. ANTONIO 025077-025086
33. ANTONIO 025090-025091
34. ANTONIO 025324
35. ANTONIO 027457-027459
36. ANTONIO 027510-027515
37. ANTONIO 027735-027736
38. ANTONIO 027808-027815
39. ANTONIO 027833
40. ANTONIO 027839
41. ANTONIO 027993-027997
42. ANTONIO 028037
43. ANTONIO 028724
44. ANTONIO 028768
45. ANTONIO 028770
46. ANTONIO 029014-029015
47. ANTONIO 029022
48. ANTONIO 029200-029201
49. ANTONIO 029213-029214
50. ANTONIO 029221-029222
51. ANTONIO 029229-029230
52. ANTONIO 029250
53. ANTONIO 029263
54. ANTONIO 029276
55. ANTONIO 029356
56. ANTONIO 029363
57. ANTONIO 029944-029946
58. ANTONIO 030108-030109
59. ANTONIO 031167-031181
60. ANTONIO 031185
61. ANTONIO 031189
62. ANTONIO 031193
63. ANTONIO 031197-031199
64. ANTONIO 031510
65. ANTONIO 031536
66. ANTONIO 031681

67. ANTONIO 031695
68. ANTONIO 031712
69. ANTONIO 031853-031854
70. ANTONIO 031864-031866
71. ANTONIO 031871
72. ANTONIO 031918-031923
73. ANTONIO 031928-031930
74. ANTONIO 031968-031971
75. ANTONIO 031973-031976
76. ANTONIO 031985
77. ANTONIO 031991-032043
78. ANTONIO 032068-032088
79. ANTONIO 032340-032343
80. ANTONIO 032346-032364
81. ANTONIO 032417-032420
82. ANTONIO 032461-032462
83. ANTONIO 032480-032495
84. ANTONIO 032509
85. ANTONIO 032529-032530
86. ANTONIO 032733-032780
87. ANTONIO 032799-032810
88. ANTONIO 032904
89. ANTONIO 033210-033214
90. ANTONIO 033451
91. ANTONIO 033561-033562
92. ANTONIO 033618
93. ANTONIO 033620
94. ANTONIO 033684
95. ANTONIO 033686-033701
96. ANTONIO 033734
97. ANTONIO 033845
98. ANTONIO 033858
99. ANTONIO 034159
100. ANTONIO 034405
101. ANTONIO 034522
102. ANTONIO 034545-034548
103. ANTONIO 034553-034554
104. ANTONIO 034557
105. ANTONIO 034560
106. ANTONIO 034569
107. ANTONIO 034575-034576
108. ANTONIO 034578-034645
109. ANTONIO 034666-034672
110. ANTONIO 034678-034690
111. ANTONIO 034693-034694
112. ANTONIO 034701-034707
113. ANTONIO 034723

Messrs. Wang, Heffer and Pence
September 19, 2017
-Page 5-

    We previously provided a categorical privilege log for the documents produced by Ms. Antonino and Mr. Judd, but for clarity, are preparing and will be producing a detailed privilege log corresponding to the privileged documents inadvertently produced and identified above.

    Also, we believe that many of the inadvertently produced privileged documents, identified above, are duplicates, meaning, for example, that the same privileged email appears at several bates stamp numbers. We have begun the process of identifying such duplicates and will provide a listing of the duplicates once completed.

    Finally, in accordance with the Stipulation and Protective Order, we specifically reserve the right to clawback any other privileged documents that we might find in our continuing review.

    Please feel free to contact me with any questions.

                                       Very truly yours,
                                            /s/
                                       SAMANTHA A. MILLROOD

SAM/dem
cc: Alan L. Frank. Esquire