UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINDSOR SECURITIES, LLC | : |
| **Plaintiff** | : Civil Action No. 16-cv-01533 (GBD) |
| v. | : |
| ARENT FOX, LLP | : |
| and | : |
| JULIUS ROUSSEAU, III, ESQUIRE | : |
| **Defendants** | : |

## PLAINTIFF WINDSOR SECURITIES, LLC'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY

Alan L. Frank, Esquire
Samantha A. Millrood, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046

1601 Gravesend Neck Rd
Suite 903, 2nd Fl.
Brooklyn, NY 11229

Tel: (215) 935-1000
Fax: (215) 935-1110
afrank@alflaw.net
smillrood@alflaw.net
Attorneys for Plaintiff Windsor Securities, LLC

Dated: October 17, 2017

## TABLE OF CONTENTS

<u>page</u>

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS RELEVANT TO THE INSTANT MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.     The Protective Order Stipulated to By the Parties and Entered As an
          Order of Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.     Windsor Makes Several Productions During the Course of Discovery Where
          Privilege Was Absolutely Maintained and No Privileged Documents Were
          Inadvertently Produced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.     Windsor's August 10, 2017 Production of Documents Received From
          Darin Judd, Esquire and Lauren Antonino, Esquire . . . . . . . . . . . . . . . . . . . . . . 6

    4.     Windsor's Notification And Clawback of Inadvertently Produced Privileged
          Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.     There Has Been No Waiver of Privilege As a Result of Windsor's Inadvertent
          Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          1.     The Protective Order Specifically Provides that Inadvertent Production
                   of Privileged Documents Is Not a Waiver , Windsor's "Claw Back" Was
                   In Accordance with the Terms of the Protective Order, and Defendants
                   Completely Ignore the Legal Applicable Standards . . . . . . . . . . . . . . . . . 15

          2.     Windsor's Inadvertent Production Was Not Reckless and Windsor Took
                   Significant Precautions to Preserve Privilege . . . . . . . . . . . . . . . . . . . . . 20

          3.     Windsor Timely Sought to Rectify the Inadvertent Production . . . . . . . . 23

          4.     The Proportionality of the Inadvertent Disclosure Supports A Finding
                   of No Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

          5.     Overarching Issues of Fairness Mandate Protection of the Inadvertently
                   Produced Privileged Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    II.    Defendants Have Not Offered a Basis for Their Request for Reimbursement of
          Costs and There Are None . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

AIG Global Asset Mgmt. Holdings v. Branch,
    2005 U.S. Dist. LEXIS 2728, 2005 WL 425494 (S.D.N.Y. Feb. 18, 2005) .......... 41

Aramony v. United Way of Am.,
    969 F. Supp. 226 (S.D.N.Y. 1997) ...................................... 12, 35

Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.,
    232 F.R.D. 160 (E.D.N.Y. Mar. 14, 2005) ....... ......................... 24

BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,
    2013 U.S. Dist. LEXIS 75402, 2013 WL 2322678 (S.D.N.Y. March 7. 2013) .... 32, 34

Board of Trustees, Sheet Metal Workers' National Pension Fund v. Palladium Equity Partners,
LLC,
    722 F. Supp. 2d 845 (E.D. Mich. 2010) ..................................... 28

Brookfield Asset Mgmt., Inc. v. AIG Fin. Products Corp.,
    2013 U.S. Dist. LEXIS 29543, 2013 WL 142603 (S.D.N.Y. Jan. 7, 2013) ........... 18

Capital Records, Inc. v. MP3tunes, LLC,
    261 F.R.D. 44 (S.D.N.Y. 2009) .......................................... 34

Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,
    2001 WL 699850 (S.D. Ind. May 29, 2001) ................................. 18

Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures,
    602 F.2d 1062 (2d Cir. 1979) ............................................ 38

Cipriani v. Buffardi,
    2008 WL 656742 (N.D.N.Y. Mar. 6, 2008) ................................. 42

Design Strategy, Inc. v. Davis,
    469 F.3d 284 (2d Cir. 2006) ............................................. 38

Dover v. British Airways,
    2014 U.S. Dist. LEXIS 114121, 2014 WL 4065084, (E.D.N.Y. Aug. 15, 2014) ...... 17

Ebewo v. Martinez,
    309 F. Supp. 2d 600 (S.D.N.Y. 2004) ..................................... 40

Fleisher v. Phoenix Life Ins. Co.,
    2012 U.S. Dist. LEXIS 182698, 2012 WL 6732905 (S.D.N.Y. Dec. 27, 2012) . . . . . . . 33

Flores v. Mamma Lombardi's of Holbrook, Inc.,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fowler v. New York Transit Auth.,
    2001 U.S. Dist. LEXIS 762, 2001 WL 83228 (S.D.N.Y. Jan. 31, 2001) . . . . . . . . . . . . 41

Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.,
    1995 U.S. Dist. LEXIS 3338, 1995 WL 11787 (S.D.N.Y. Mar. 20, 1995) . . . . . . . . . . . 21

HSH Nordbank AG N.Y. Branch v. Swerdlow,
    259 F.R.D. 64 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

In re Sept. 11th Liab. Ins. Coverage Cases,
    243 F.R.D. 114 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

In re Copper Market Antitrust Litig.,
    200 F.R.D. 213 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Natural Gas Commodity Litig.,
    229 F.R.D. 82 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

JMC Rest. Holding, LLC v. Pevida,
    2016 U.S. Dist. LEXIS 77635, 2016 WL 3351007 (E.D.N.Y. June 14, 2016) . . . . . . . . 36

Jockey Int'l, Inc. v. M/V "Leverkusen Express",
    217 F. Supp. 2d 447 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,
    77 F. Supp. 2d 446 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Kara Holding Corp. v. Getty Petroleum Mktg,
    2004 U.S. Dist. LEXIS 15864, 2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004) . . . . . . . . 40

Learning Care Grp., Inc. v. Armetta,
    2015 U.S. Dist. LEXIS 116827, 2015 WL 5194082 (D. Conn. Sept. 2, 2015) . . . . . . . . 37

Lloyds Bank PLC v. Republic of Ecuador,
    1997 U.S. Dist. LEXIS 2416, 1997 WL 96591 (S.D.N.Y. Mar. 4, 1997) . . . . . . . . . 21, 30

Lois Sportswear USA v. Levi Strauss & Co.,
    104 F.R.D. 103 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 23

Medina v. E. Commc'n, Inc.,
 2016 U.S. Dist. LEXIS 179252, 2016 WL 7377269 (S.D.N.Y. Dec. 13, 2016) . . . . . . . 42

Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.,
 2007 U.S. Dist. LEXIS 98274, 2007 WL 2667992 (E.D.N.Y. Sept. 6, 2007) . . . . . . 12, 24

MSF Holding Ltd v. Fiduciary Tr. Co. Int'l,
 2005 U.S. Dist. LEXIS 34171, 2005 WL 3338510 (S.D.N.Y. Dec. 7, 2005) . . . . . . . . . 15

New York State Ass'n for Retarded Children, Inc. v. Carey,
 711 F.2d 1136 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Penta v. Costco Wholesale Corp.,
 2016 U.S. Dist. LEXIS 39584, 2016 WL 1171612 (E.D.N.Y. Mar. 25, 2016) . . . . . . . . 36

Penthouse Int'l, Ltd. v. Playboy Enters.,
 663 F.2d 371 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,
 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726,
 (S.D.N.Y. Nov. 26, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 21, 24, 29, 32, 34

Quinby v. Westlb AG,
 2007 U.S. Dist. LEXIS 51628, 2007 WL 2068349 (S.D.N.Y. July 18, 2007) . . . . . . . . 29

Quinio v. Aala,
 2016 U.S. Dist. LEXIS 59639 (E.D.N.Y. May 4, 2016) . . . . . . . . . . . . . . . . . . . . . . . . 36

Reilly v. Natwest Mkts. Grp. Inc.,
 181 F.3d 253 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Residential Funding Corp. v. DeGeorge Fin. Corp.,
 306 F.3d 99 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

SEC v. Cassano,
 189 F.R.D. 83 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

SEC v.Yorkville Advisors, LLC,
 2015 U.S. Dist. LEXIS 24578, 2015 WL 855796 (S.D.N.Y. Feb. 27, 2015) . . . . . . . . 37

Singer v. Covista, Inc.,
 2013 U.S. Dist. LEXIS 44474, 2013 WL 1314593 (D.N.J. Mar. 28, 2013) . . . . . . . . . 40

Stoner v. N.Y. City Ballet Co.,
    2002 U.S. Dist. LEXIS 24644,  2002 WL 31875404 (S.D. N.Y. Dec. 24, 2002) ...... 30

Stratagem Development Corp. v. Heron Int'l N.V.,
    153 F.R.D. 535 (S.D.N.Y. 1994) ........................................... 22

TufAmerica Inc. v. Diamond,
    2016 U.S. Dist. LEXIS 30645, 2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) ........ 36

Tylena M. v. Heartshare Human Servs.,
    2004 U.S. Dist. LEXIS 10398, 2004 WL 1252945 (S.D.N.Y. June 7, 2004) ........ 36

U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.,
    2000 U.S. Dist. LEXIS 7939, 2000 WL 744369 (S.D.N.Y. June 8, 2000) ..... 16, 17, 24

U.S. Commodity Futures Comm'n v. Parnon Energy,
    2014 U.S. Dist. LEXIS 67175, 2014 WL 2116147 (S.D.N.Y. May 14, 2014) ........ 17

U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.,
    2012 U.S. Dist. LEXIS 158448, 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ....... 34

United States v. Wells Fargo Bank, N.A.,
    2015 U.S. Dist. LEXIS 113546,  2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015) ...... 29

United States CFTC v. Parnon Energy, Inc.,
    2014 U.S. Dist. LEXIS 67175, 2014 WL 2116147 (S.D.N.Y. May 14, 2014) ........ 16

United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,
    2000 U.S. Dist. LEXIS 7939, 2000 WL 744369 (S.D.N.Y. June 8, 2000) ..... 16, 17, 24

United States v. Rigas,
    281 F. Supp. 2d 733 (S.D.N.Y. 2003) ................................... 12, 34

Update Art, Inc. v. Modiin Publishing Ltd.,
    843 F.2d 67 (2d Cir. 1988) ............................................. 39

Valentin v. Bank of N.Y. Mellon Corp.,
    2011 U.S. Dist. LEXIS 60284, 2011 WL 2437644 (S.D.N.Y. May 27, 2011) ........ 19

Williams v. Cty. of Orange,
    2005 U.S. Dist. LEXIS 46051, 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ........ 41

Winner v. Etkin & Co.,
    2008 U.S. Dist. LEXIS 105419, 2008 WL 5429623 (W.D. PA. Dec. 31, 2008) ....... 41

Zappala v. Albicelli,
    954 F.Supp. 538 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Zino Davidoff SA v. Selective Distrib. Int'l Inc.,
    2013 U.S. Dist. LEXIS 47457, 2013 WL 1245974 (S.D.N.Y. Mar. 8, 2013) . . . . . . . . . 39

Zivali v. AT&T Mobility LLC,
    2010 U.S. Dist. LEXIS 130467, 2010 WL 5065963
    (S.D.N.Y. Dec. 6, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 23, 29

Zubulake v. UBS Warburg, LLC,
    216 F.R.D. 280 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## RULES & STATUTES

Am. Bar Ass'n Standing Comm. On Ethics & Prof. Resp., Formal Op. 92-368 (1992) . . . . . . 12

Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 9, 29, 36, 38, 40, 41

Federal Rule of Civil Procedure 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38, 41

Federal Rule of Civil Procedure 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38, 39, 40, 41, 42

Federal Rule of Evidence 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 18, 19, 23, 24, 31, 33

Plaintiff Windsor Securities, LLC ("Windsor" or "Plaintiff") respectfully submits this Memorandum of Law, and the attached Declarations of Alan L. Frank, Esquire, Samantha Millrood, Esquire, Christopher King, Esquire and Jaclyn Frank, Esquire, in Response to Defendants Arent Fox LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau") (collectively "Defendants") Motion for Discovery [ECF No. 88] (which relies on the Declaration of Adam G. Pence, and all the exhibits thereto [ECF Nos. 89 through 89-35], and the September 26, 2017 Request for Pre-Motion Conference Letter Brief of Peter N. Wang [ECF. No. 81]), wherein Defendants request two (2) separate forms of relief: (1) an Order directing that Windsor's recent production of privileged information be deemed not "inadvertent" and that any privilege that might apply was waived; and (2) reimbursement of costs incurred by the Defendants allegedly caused by Windsor alleged discovery deficiencies (hereinafter "Defendants' Motion"). For the reasons described more fully herein, Defendants' argument that Windsor has waived privilege based on inadvertent production is yet another contrived attempt to obtain Windsor's privileged documents after their first Motion based on "at issue" waiver was denied, is contrary to the terms of the Parties' Stipulation and Protective Order in this case, it ignores prevailing case law with respect thereto and the "recklessness" that must be established, and is otherwise without merit. Further, Defendants have not identified a legal basis for their request for reimbursement of their costs, much less demonstrated that they satisfy the governing standards. Finally, Defendants' Counsel's affirmative refusal to identify additional documents that counsel believed may be covered by privilege is contrary to Defendants' Counsel's ethical obligations and further supports the denial of Defendants' Motion.

1

## PRELIMINARY STATEMENT

Defendants do not dispute the privileged nature of the documents clawed back by Windsor. The sole basis of Defendants' Motion and their challenge to the Windsor's claw back is that Windsor has waived any privilege associated with those documents through Windsor's inadvertent production. That argument, however, is barred by the express terms of the Stipulation agreed to by the parties and entered as a Protective Order by this Court in this litigation [ECF No. 28], which specifically memorialized the affirmative agreement of the Parties that inadvertent production of privileged documents in this litigation does not waive privilege and that the producing party has the right to claw back any inadvertently produced privileged documents. Defendants' complete disregard of the Protective Order and their application of law and standards which apply where no protective order was agreed to and/or entered by the Court is disingenuous at best. Further, the relief Defendants are requesting that Windsor's recent production of privileged information be deemed not "inadvertent" and that any privilege asserted was waived would nullify the terms of the Protective Order in this action and eviscerate the principles underlying Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26 (f)(3)(D).

Also, Defendants offer no legal basis for their request for reimbursement of their costs, because none exist, and offer no documentary support for the costs requested. There has been no bad faith, no violation of any court Order, no submission of a false discovery certification, and Windsor's alleged discovery deficiencies, all of which were corrected to Defendants' satisfaction, simply do not come within the reach of any of the Rules of Civil Procedure that Defendants cite as the basis for their reimbursement request. The relevant documents in this matter are

2

voluminous, and Windsor has gone above and beyond, and has borne the significant costs, to gather, review and produce documents, not only in the possession of the Windsor, but also from its counsel it the underlying actions that replaced the Defendants, many of which were already in Defendants' possession. Further, each and every time a deficiency was raised by the Defendants regarding a production, the deficiency was immediately investigated, and remedied, and the discovery deadlines were extended, so as not to cause any delay or prejudice to the Defendants. Simply put there has been no bad faith by Windsor and there is no basis to grant Defendants a reimbursement of their costs.

For these, and the reasons outlined more fully below, Defendants Motion must be denied.

## FACTS RELEVANT TO THE INSTANT MOTION

1.     **The Protective Order Stipulated to By the Parties and Entered As an Order of Court**

Prior to engaging in discovery in this case, the parties negotiated and entered into a Stipulation and Protective Order, which was so-ordered by the Court on June 6, 2016. [ECF No. 28] ("Protective Order"). The Protective Order "govern[s] the handling of documents, depositions, deposition transcripts, deposition exhibits, interrogatory responses, admissions, and any other information produced, given, or exchanged by and among all Parties and non-parties to the Litigation". Id. at pgs. 1-2. The Protective Order specifically includes a paragraph entitled "Inadvertent Production of Privileged Discovery Materials/Clawback" (the "Clawback Provision"), which specifically provides:

12.     **Inadvertent Production of Privileged Discovery Materials/Clawback. Due to the large volume of electronic and hard copy data in the possession, custody, or control of the Parties and the numerous concerns regarding attorney-client privilege and work product protection, the Parties agree to the following "Clawback**

3

Provision":

    a)     The inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including but not limited to information or documents that may be considered Confidential Information under this Stipulation and Protective Order, *will not be deemed to waive a Party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work product doctrine at a later date*.

    b)     Any party receiving any such information or document shall return it upon request from the Producing Party, and destroy all copies thereof. Upon receiving such a request as to specific information or documents, the receiving party shall return the information or documents to the Producing Party within five (5) business days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection. The receiving party treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). Disclosure of the information or document by the other party prior to such later designation shall not be deemed a violation of the provisions of this Order. *This Order and Clawback Provision shall be governed by Federal Rule of Evidence 502(d)* and is entered pursuant to Federal Rule of Civil Procedure 26(c)(1).

Protective Order pgs ¶ 12 (emphasis added){ECF No. 28].

    **2.**     **Windsor Makes Several Productions During the Course of Discovery Where Privilege Was Absolutely Maintained and No Privileged Documents Were Inadvertently Produced**

    As explained more fully in the Declarations of Jaclyn Frank, Esquire ("J.Frank Dec.") and Christopher King, Esquire ("King Dec.") submitted herewith, during discovery in this action, the documents produced by Windsor were voluminous (as the were gathered from Windsor and two separate law firms), there were multiple productions of documents and provisions of corresponding privilege logs by Windsor (prior to the August 10, 2017 production at issue in Defendants' Motion), none of which included any inadvertently produced privileged documents. Specifically Windsor made the following productions prior to August 10, 2017 during discovery

in this action:

- July 11, 2016 -production of documents bates stamped PLAINTIFF 00001-019071, voice recordings (which could not be bates stamped), and Privilege Log;

- August 25, 2016- production of documents bates stamped PLAINTIFF 019072-019076;

- October 19, 2016- production of documents bates stamped PLAINTIFF 019077-3158;

- December 7, 2017 -production of documents bates stamped PLAINTIFF 031590-041268;

- December 29, 2016 -production of documents bates stamped JUDD 000001-JUDD 164721;

- January 20, 2017- production of documents bates stamped PLAINTIFF 041268-068272;

- April 10, 2017- production of documents bates stamped PLAINTIFF 06287-72811 and Privilege Log;

- April 26, 2017- production of documents bates stamped PLAINTIFF 072812-073668;

- April 28, 2017- production of documents bates stamped PLAINTIFF 073670 – 074026 and Privilege Log;

- May 5, 2017- production of documents bates stamped PLAINTIFF 074027-084541 and Privilege Log;

- May 10, 2017- production of documents bates stamped PLAINTIFF 084542-084967 and Privilege Log;

- May 23, 2017- production of documents bates stamped PLAINTIFF 084968-086810 and Privilege Log; and

- May 25, 2017- production of documents bates stamped PLAINTIFF 086811-087014.

_**Not one privileged document was inadvertently produced in any of the foregoing**_

_**productions**_. Despite receiving voluminous privileged documents from Windsor, and its counsel

that replaced Defendants in the underlying actions, Darin Judd, Esquire ("Judd") and Lauren Antonino, Esquire ("Antonino"), the inadvertently produced privileged documents were limited to 86 privileged documents all contained within Windsor's production of Antonino's documents, which were provided as part of Windsor's August 10, 2017 production, more fully described below.

### 3.    Windsor's August 10, 2017 Production of Documents Received From Darin Judd, Esquire and Lauren Antonino, Esquire

Windsor had requested from its counsel who replaced Defendants in the underlying actions, Antonino and Judd (and their respective firms) all documents that were responsive to Defendants' discovery requests and that were relevant to the instant matter. Due to the breadth of Defendants' document requests, and subpoenas issued by Defendants to Judd, and his firm Thompson Welch Soroko & Gilbert, LLP and Antonino, and her firm, the Antonino Firm, LLC, Antonino and Judd produced to Windsor over 300,000 pages. *See*, J. Frank Dec. and King Dec. Windsor then undertook the onerous task of reviewing for privilege, categorizing, and then producing the documents and providing a privilege log for documents withheld on the basis of privilege. See, J Frank Dec., attached hereto. With this undertaking, Windsor encountered many problems because of the formatting of Antonino's documents. *See*, King Dec.

On August 10, 2010 Windsor produced to Defendants, on a thumb drive, 91,124 pages of documents, which were bates stamped JUDD 164722-170017[1] and ANTONINO 00001-85829,

---

[1]On December 29, 2016 Windsor had previously produced non-privileged documents bates stamped JUDD 00001-164721, which Judd had also provided to Windsor.

along with a Categorical Privilege Log[2], for those documents produced by Judd and Antonino

that were withheld on the basis of privilege. See, King Dec. and J. Frank Dec.

> **4.     Windsor's Notification And Clawback of Inadvertently Produced Privileged Documents**

In and email dated Friday, September 15, 2017, at 11:47 am, Defendants' counsel, Adam

Pence, notified the undersigned of its belief that Windsor had produced documents that it had

previously withheld on the basis of privilege, stating in relevant part as follows:

> **In reviewing Windsor's recent production of documents, we have come across multiple e-mails between and among Windsor and Herbert Fineburg, Darin Judd, Lauren Antonino and other attorneys, which appear similar in nature to documents Windsor has previously withheld on the basis of privilege, including documents that are at the center of Defendants' motion to compel.  Given all the disputes regarding these materials – and the numerous assurances by your office that the recent document production is final and complete – we cannot imagine that these disclosures were inadvertent.  Nevertheless, out of an abundance of caution, we are raising this issue with you. Unless we hear, otherwise, by the end of the day today, we will continue our review of the documents and our preparations for the upcoming depositions.**

*See*, Declaration of Samantha Millrood, Esquire ("Millrood Dec."), attached hereto.  A true and

correct copy of Defendants' counsel's September 15, 2017 email is attached to the Millrood Dec.

as Exhibit "1".

One minute later, at 11:48 am on Friday, September 15, 2017, Windsor's counsel,

Samantha Millrood responded stating:

> **Can you please identify the bate stamp numbers and/or bates stamp range for the communications you are referring to in your email so that we can assess whether they were inadvertently produced.**
>
> **Please be advised that we do not, and did not intend to, waive any privilege through**

---

[2]The Parties had agreed that Windsor could produce a categorical privilege log for these
voluminous attorney produced documents.

the production of these documents.

**While we are looking into this issue, please be advised that we reserve all rights regarding clawback of inadvertently produced privileged information as provided at paragraph 12 of the Parties' Stipulation and Protective Order in this matter.**

*See*, Millrood Dec. A true and correct copy of Samantha Millrood's 11:48 am September 15,

2017 email is attached to the Millrood Dec. as Exhibit "2".

In response, at 12:50 p.m. on Friday, September 15, 2017, Defendants' counsel Adam

Pence emailed stating:

**We can only identify certain documents at this time because we have avoided sections of the production that appear to contain such materials and are obviously still in the process of reviewing. As an example only, we would suggest you start by reviewing the two large PDFs with the Bates range ANTONINO 022066-022611. To avoid any confusion, however, we will not be going through page by page of this latest 90,000 page production and identifying every document for which Windsor may claim privilege. To the extent that you feel it is necessary to re-review the remainder of the production, we will be significantly prejudiced by what is yet another delay related to Windsor's document productions. This issue, to the extent it is not resolved today, will invariably impact our ability to move forward with, at a minimum, Steven Prusky's deposition on the scheduled date. If we do move forward with our review today, we expect to able to do so unimpeded by any further potential privilege issues.**

*See*, Millrood Dec. A true and correct copy of Adam Pence's September 15, 2017, 12:50 pm,

email is attached to the Millrood Dec. as Exhibit "3".

At 1:23 p.m. on Friday, September 15, 2017 counsel for Windsor emailed Defendants

counsel stating:

**We have no problem with you continuing your review of the documents we produced and for your continued preparation for Mr. Prusky's deposition on October 4th. We simply reserve our clawback rights and continue to preserve all privileges asserted. We will review these documents and get back to you early next week with any clawback requests for inadvertently produced privileged documents, to the extent there are any.**

*See*, Millrood Dec. A true and correct copy of Samantha Millrood's September 15, 2017 1:23

p.m. email is attached to the Millrood Dec. as Exhibit "4".

Immediately thereafter, Windsor's counsel began reviewing the bates stamp range

identified by Defendants' counsel and determined that in fact privileged documents had been

inadvertently produced. *See,* J Frank Dec. The same day, at 2:02 p.m. on Friday September 15,

2017, Windsor's counsel emailed Defendants' counsel stating:

> **Please disregard my previous email and cease your continued review of the**
> **documents. We have confirmed that at least one privileged email was inadvertently**
> **produced and there may be more. We will be in touch early next week with a list of**
> **documents to clawback per the terms of the parties stipulation and protective order**
> **entered in this case.**

*See*, Millrood Dec. A true and correct copy of Windsor's counsel's September 15, 2017, 2:02

p.m. email is attached to the Millrood Dec. as Exhibit "5".

Windsor's counsel then began a re-review of the August 10, 2017 production for

inadvertently produced privileged documents. *See,* J. Frank Dec. Three (3) business days later,

on Wednesday, September 19, 2017, Windsor's counsel sent Defendants' counsel

correspondence wherein it identified 113 bates stamp ranges where inadvertently produced

privileged documents appeared, and requested Defendants' "compliance with the Claw Back

Provision, at Paragraph 12, of the Parties' Stipulation and Protective Order [ECF No. 28] and

F.R.C.P. 26(b)(5)(B)". *See*, Millrood Dec. A true and correct copy of Windsor's counsel's

September 19, 2017 correspondence is attached to the Millrood Dec. as Exhibit "6". In said

September 19, 2017 Correspondence, Windsor's counsel further stated "in accordance with the

Stipulation and Protective Order, we specifically reserve the right to clawback any other

privileged documents that we might find in our continuing review." Id.

The next day, September 20, 2017 by correspondence, Windsor's counsel provided

Defendants a Privilege Log for the inadvertently produced privileged documents identified in the

September 19, 2017 correspondence. See, Millrood Dec. A true and correct copy of the

September 20, 2017 Correspondence enclosing the Privilege Log is attached to the Millrood Dec.

as Exhibit "7".

In accordance with Windsor's counsel request for compliance with the Protective Order,

on September 27, 2017 Defendants' counsel returned by overnight delivery the thumb drive

containing the August 10, 2017 production, and by email of the same date renewed their request

for a new copy of this production (without the clawed back documents). See, Millrood Dec. A

true and correct copy of Defendants Counsel's September 27, 2017 correspondence enclosing the

thumb drive containing the August 10, 2017 production is attached to the Millrood Dec. as

Exhibit "8"; and Defendants' counsel's September 27, 2017 email request for re-production of

the August 10, 2017 production (without the clawed back documents) is attached to the Millrood

Dec. as Exhibit "9". On September 28, 2017 Christopher King, an associate attorney with Alan

L. Frank Law Associates, PC. emailed Defendants' counsel requesting which format Defendants

would like re-production to be provided, and Defendants counsel responded that PDF format was

acceptable, but reserved all rights. *See*, Millrood Dec. The September 28 email chain between

Christopher King and Adam Pence is attached to the Millrood Dec. as Exhibit "10".

On October 3, 2017 Windsor's counsel uploaded onto Defendants' counsel FTP site a re-

production of the August 10, 2017 documents, which it intended to and believed omitted all the

clawed back documents identified in the September 19, 2017 correspondence. Unfortunately,

during the upload process certain PDF Documents which were included in the September 19,

2017 clawback request and also included on the Privilege Log provided on September 20, 2017

for the clawed back documents, were inadvertently re-produced. Specifically, the following

clawed back privileged documents were inadvertently re-produced in October 3, 2017 upload:

ANTONINO 022176; ANTONINO 023242; ANTONINO 023318-023319; ANTONIO 033691-

033701; and ANTONINO 034702-034707. The same day Windsor's counsel notified

Defendants' counsel of the issue with the re-production. See Millrood Dec. Christopher King's

October 3, 2017 email notifying counsel of the reproduction is attached to the Millrood Dec. as

Exhibit "11".

On October 4, 2017, Defendants deposed Judd and completed the deposition of Steven

Prusky, Windsor's principal. During these depositions, Defendants' counsel sought to use

Antonino documents which were clearly privileged and also had been inadvertently produced,

but not included in the September 19, 2017 claw back correspondence, including specifically

ANTONINO 022548-022555; ANTONINO 055104-055107; ANTONINO 055113-055124; and

ANTONINO 055032-055036. See the Declaration of Ala L. Frank, Esquire (" A. Frank Dec."),

attached hereto. During the deposition and on the record, as soon these documents were

introduced, Windsor's counsel, Alan Frank, confirmed that these documents were privileged, had

been inadvertently produced, formally requested their clawback pursuant to the Protective Order,

and objected to and refused Defendants' counsel attempts to question the witnesses with respect

to these documents. See, A. Frank Dec., and Deposition Transcript (rough), cited therein, of the

colloquy between counsel. Also, during the deposition of Darin Judd, Defendants counsel Mr.

Wang stated that he was aware of additional documents that appeared to be privileged that were

produced by Windsor (not previously clawed back), but refused to identify those documents.

11

*See*, A. Frank Dec.; and Deposition Transcript (Rough) cited therein. Such refusal is contrary to an attorney's ethical obligations[3].

On the day following, October 5, 2017, counsel for Windsor sent correspondence specifically identifying the Antonino documents which had previously been clawed back per the September 19, 2017 correspondence and inadvertently re-produced on October 3rd, and re-identified for claw back per the Protective Order the Antonino documents (not identified in the September 19, 2017 correspondence) that were privileged and inadvertently produced, which Defendants' counsel sought to use in the Prusky and Judd depositions, which Windsor's counsel immediately sought to claw back on the record of the deposition and objected to and refused to allow any questioning on. See A Frank Dec. and Millrood Dec. The October 5, 2017 correspondence is attached to the Millrood Dec. as Exhibit "12". Said October 5, 2017 correspondence again noted Mr. Wang's refusal to identify the other inadvertently produced

---

[3] *See* N.Y. Rule of Prof'l Conduct 4.4(b); ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 05-437 (2005)(discusses professional responsibility concerns when a lawyer receives a document from opposing parties or their lawyers and knows or reasonably should know that the document was inadvertently sent); NYCLA Committee on Prof'l Ethics, Formal Op. No. 2003-04 "Obligations upon Receiving a Communication Containing Confidences or Secrets Not Intended for the Recipient" ("it is essential as an ethical matter that the receiving attorney promptly notify the sending attorney of the disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary."); United States v. Rigas, 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003) (quoting Am. Bar Ass'n Standing Comm. On Ethics & Prof. Resp., Formal Op. 92-368 (1992) ("A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them."); Metso Minerals Inc., 2007 U.S. Dist. LEXIS 98274, 2007 WL 2667992 at *8 (E.D.N.Y. Sept. 6, 2007) (setting forth same standard and finding that "disputes such as these are troubling given the ethical standards all attorneys are expected to adhere to").

privileged documents that he was aware of and further requested that Defendants' counsel simply

delete the foregoing clawed back and inadvertently re-produced documents from their FTP site

and server and destroy any copies made thereof, in accordance with paragraph 12 of the Parties

Stipulation and Protective Order. Id.

Windsor proceeded with its re-review of the August 10, 2017 production. On October

12, 2017, Defendants' Counsel emailed in response to Plaintiffs' Counsel's October 5, 2017

letter stating:

> **This e-mail is in response to your October 5, 2017 letter, asserting claw back of four documents used as exhibits during the depositions of Darin Judd and Steven Prusky. Until the Court rules on Defendants' pending motion or directs otherwise, our office will avoid further review of these materials or using them in the course of this litigation. Further, because of the confusion surrounding Windsor's re-production of certain purportedly privileged documents on October 3, 2017, we will not download any of these October 3rd files sent via FTP. Instead, we will confer with your office about a new re-production of documents after the Court directs the parties regarding what documents are actually privileged.**

See, Millrood, Dec.  A true and correct copy of Defendants' Counsel's October 12, 2017 email is

attached to the Millrood Dec. as Exhibit "13".

During its continued re-review of the more than 85,000 pages of Antonino documents,

produced on August 10,2 017, Windsor found additional inadvertently produced privileged

documents.  On October 14, 2017, Windsor's counsel sent Defendants a letter further identifying

these additional inadvertently produced privileged documents, not previously identified in the

September 19, 2017 and October 5, 2017 letters. Specifically, Windsor identified 17 new

inadvertently produced privileged email threads, and identified the 67 bate stamp ranges where

these same 17 privileged documents appeared. *See*, Millrood Dec.  A copy of Windsor's

counsel's October 14, 2017 letter identifying additional inadvertently produced privileged

documents is attached to the Millrood Dec. as Exhibit "14". Further, in accordance with the

Stipulation and Protective Order, the October 14, 2017 letter reiterated that Windsor specifically

reserved the right to clawback any other privileged documents that Windsor might find in our

continuing review and again requested that Defendants "immediately notify [Windsor] of any

other inadvertently produced privileged documents that [they] have identified in [their] review"

See, Id.

Since the outset of discover, Windsor's counsel spent over 250 hours and reviewed over

354,300 pages and separately over 10,900 documents (with multiple pages) for privilege. See J.

Frank Dec. Upon learning of the inadvertent production, Windsor promptly re-reviewed large

portions of same pages and documents multiple times for privilege. Id. In total, 85 documents

protected by the attorney-client privilege or work product doctrine were inadvertently produced,

but these 85 documents appeared 233 times in the August 10, 2017 production, as many of these

privileged documents were emails that appeared in multiple email chains, all of which was

specifically explained to Defendants. *See*, J. Frank Dec. and Millrood Dec. As a result,

Windsor initially clawed back 1,062 pages; however, out of the 1,062 pages initially clawed

back, only 657 pages were completely withheld, the remaining 405 pages which contained both

privileged and non-privileged information, were produced in redacted form, and only 172 pages

out of those 405 pages actually contained privileged material. Id. Thus, out of the 1,062 pages

that were initially clawed back, only 829 pages contained privileged material[4] and were thereafter

either withheld or produced in redacted form. This amounts to less than 0.227% of the total

---

[4] Total number of pages containing privileged material = 657 pages of documents withheld on the basis of privilege + 172 redacted pages of documents produced in redacted form.

number of pages reviewed and less than 0.234% of the total number of pages produced.  See, J.

Frank Dec.

Windsor did not intend to waive privilege as to the documents at issue in Defendant's

Motion or with respect to any other communication protected by the attorney-client privilege or

work product doctrine, and they all were inadvertently produced.  Windsor clawed back the

relatively few privileged documents it inadvertently produced to Defendants, in accordance with

the Parties' Protective Order, as soon as it discovered such inadvertent production, and provided

Defendants with updated Privilege Logs with respect thereto and provided redacted documents,

where a bates stamp range included both privileged and non-privileged information.  See J. Frank

Dec. and Millrood Dec.   Here, the production of privileged documents was completely

inadvertent, and per the terms of the Parties' Protective Order, such inadvertent production

should not be deemed a waiver of privilege.

## ARGUMENT

### I.   There Has Been No Waiver of Privilege As a Result of Windsor's Inadvertent Production

#### 1.   The Protective Order Specifically Provides that Inadvertent Production of Privileged Documents Is Not a Waiver , Windsor's "Claw Back" Was In Accordance with the Terms of the Protective Order, and Defendants Completely Ignore the Legal Applicable Standards

Defendants' Motion relies on their September 26, 2017 Request for Pre-Motion

Conference Letter [ECF No. 81], wherein they cite to case law that apply four (4) factors to

determine whether a release of documents during discovery was a knowing waiver of privilege or

an inadvertent disclosure.  However, the cases on which Defendants rely, including specifically

MSF Holding Ltd v. Fiduciary Tr. Co. Int'l, 2005 U.S. Dist. LEXIS 34171 (S.D.N.Y. Dec. 7,

2005) (*citing* <u>Lois Sportswear USA v. Levi Strauss & Co.</u>, 104 F.R.D. 103 (S.D.N.Y. 1985) share the notable characteristic that they do not involve situations where the parties had entered into a protective order for discovery that contained an express "claw back" provision, as is the case here. That, however, is a critical distinction that changes the applicable legal standard, and Courts in this Circuit have specifically held that the four (4) factor analysis Defendants argue apply, in fact, do not.

More specifically, Courts in this Circuit have held that "[i]nadvertent disclosure provisions in stipulated protective orders are generally construed, to provide heightened protection to producing parties." <u>United States CFTC v. Parnon Energy, Inc.</u>, 2014 U.S. Dist. LEXIS 67175, at *4-5 (S.D.N.Y. May 14, 2014) (*citing* <u>U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.</u>, 2000 U.S. Dist. LEXIS 7939, 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000); <u>Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.</u>, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997)). As Magistrate Judge Francis explained in <u>Prescient Partners</u>, "[t]he parties draft[] th[ese] provision[s] to provide for the out-of-court resolution of inadvertent production issues and to avoid litigating these issues. If the provision[s] applied only to documents deemed inadvertently produced under governing caselaw, then the parties would have to brief that law for the court to determine even whether the provision applied to a particular situation. This would contravene the provision's purpose of protecting the parties from having to litigate inadvertent production issues." <u>Prescient Partners</u>, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *4.

Although Defendants completely ignore it in their Motion, Courts in this Circuit clearly hold that where the parties execute a stipulated protective order with an inadvertent waiver

provision, as the parties herein have, "waiver is appropriate only if production of the privileged material was 'completely reckless'." Braspetro Oil Servs. Co., 2000 U.S. Dist. LEXIS 7939, 2000 WL 744369, at *4; *See also*, Dover v. British Airways, 2014 U.S. Dist. LEXIS 114121, 2014 WL 4065084, at *3-4 (E.D.N.Y. Aug. 15, 2014) (applying the "completely reckless" standard and citing cases); HSH Nordbank AG N.Y. Branch v. Swerdlow, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (same); Prescient Partners, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) (same). For a producing party's actions to be deemed completely reckless, the party "must have shown no regard for preserving the confidentiality of the privileged documents." HSH Nordbank, 259 F.R.D. at 75. Such "complete reckless[ness]" is exhibited only in instances where the producing party "does not appear to have conducted *any* privilege review. . . ." U.S. Commodity Futures Comm'n v. Parnon Energy, 2014 WL 2116147, at *5 (S.D.N.Y. May 14, 2014) (emphasis added). Under the "completely reckless" standard, "inadvertent production will not waive the privilege unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the asserted privilege." In re Copper Market Antitrust Litig., 200 F.R.D. 213, 221-22 (S.D.N.Y. 2001). Courts in this Circuit have held that the recklessness standard is appropriate because "merely incorporat[ing] caselaw standards governing inadvertent disclosure" would nullify inadvertent waiver provisions in a stipulated agreements. *See*, Prescient Partners, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *4 (citation omitted).

The Protective Order, at paragraph 12(a), expressly states "[t]he inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection...will not be deemed to waive a Party's claim

to its privileged or protected nature or estop that party or the privilege holder from designating

the information or document as attorney-client privileged or subject to the work product doctrine

at a later date." *See* Protective Order [ECF No. 28, ¶12(a)]. Courts in this Circuit have

recognized that such an order provides a party "the right to claw back [documents], no matter

what the circumstances giving rise to their production were." Brookfield Asset Mgmt., Inc. v.

AIG Fin. Products Corp., 2013 WL 142603, at *1 (S.D.N.Y. Jan. 7, 2013). Windsor's ability to

claw back privileged documents in this litigation is governed by the terms of the Protective

Order—terms that the Defendants proposed, the Parties agreed to, and the Court entered as an

Order. *See, e.g.,* Zivali v. AT&T Mobility LLC, 2010 WL 5065963 at *1 (S.D.N.Y. Dec. 6,

2010) ("[T]he issue of production in this case is governed, not by Rule 502, but by the applicable

provisions of the Court's . . . Protective Order, to which the parties consensually agreed. . . .");

HSH Nordbank AG NY Branch v. Swerdlow, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) ("[I]t is

unnecessary to rely on . . . case law because the parties in this dispute executed a protective order

in which they expressly agreed that the inadvertent production of a document subject to the

attorney-client privilege would be 'without prejudice . . .' and would not effect a waiver of the

producing party's rights. . .."). Windsor should be entitled to rely on the agreed-upon protections

of the Protective Order and Defendants cannot be permitted to unilaterally nullify them. *See,*

Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 2001 WL 699850, at *3 (S.D. Ind. May 29,

2001) (recognizing that finding of waiver "would effectively turn into a nullity the carefully

negotiated non-waiver provision")

   Defendants attempt to side-step the Protective Order's express bar on waiver based on the

circumstances of the production of the documents, arguing that the Protective Order only applies

to "inadvertent" productions, that Windsor's production of the privileged documents was not "inadvertent", and therefore, the court should consider the Federal Rule of Evidence 502(b) "inadvertent disclosure" factors.  However, attempts to incorporate such factors into the analysis when there is a protective order in place have been expressly rejected by courts in this district. *See, e.g.*, Zivali, 2010 WL 5065963, at *1 (recognizing that the protective order "overrides the reasonableness analysis of Rule 502(b)").  For example, in BNP Paribas Mortgage Corp. v. Bank of America, N.A., the Court rejected the receiving party's argument that the Court should apply the test for waiver of privilege under 502(b) because of the use of the term "inadvertent" in the claw back provision. 2013 WL 2322678, at *9 (S.D.N.Y. May 21, 2013); *see also* U.S. Fid. & Guaranty Co., 2000 WL 744369, at *3 (rejecting argument that the use of the "term 'inadvertent' in the confidentiality agreement should be construed as having the same meaning that it has been given by courts where documents were not produced pursuant to a confidentiality agreement").

As explained more fully below, Windsor's actions were not reckless, and even if Rule 502's factors were applicable (which they are not)[5], they do not favor a finding of waiver here.

---

[5]*See*, Valentin v. Bank of N.Y. Mellon Corp., 2011 U.S. Dist. LEXIS 60284, 2011 WL 2437644 (S.D.N.Y. May 27, 2011), wherein Judge Daniels upheld Magistrate Judge Francis' ruling that granted defendants' letter application to assert privilege over documents that were inadvertently produced. Therein, the plaintiff argued that the Magistrate Judge only considered one of the *Lois* factors and that a balancing of the considerations set forth by the Advisory Committee on Rule 502 weighed heavily in favor a finding of a waiver. Judge Daniels rejected that argument and upheld the magistrates ruling of non-waiver stating:

**the Magistrate Judge was not required to consider the multifactor test set out in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y. 1985), or any other factors in assessing Defendants' response to the improper disclosure. The Advisory Committee's notes, which provide guidance on the application of the rule but do not have the effect of law, do not support Plaintiff's position. See Fed. R. Evid. 502(b) (mentioning Lois factors in a general note not specific to Fed. R. Evid. 502(b)(3)); id. ("The rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible**

19

### 2.    Windsor's Inadvertent Production Was Not Reckless and Windsor Took Significant Precautions to Preserve Privilege

Clearly, Windsor's actions cannot be deemed completely reckless, as is evidenced by: (1) the painstaking page by page review for privilege of more than 500,000 pages, the segregation of privileged documents, and instruction that they not be produced, and the re-review of the Antonino documents after notification of the inadvertent production, which amounted to over 220 hours of Windsor's counsel time; (2)  Windsor's numerous privilege logs for documents withheld on the basis of privilege; (3) the August 10, 2017 production was the first and only production that ever contained inadvertently-produced privileged materials, despite multiple previous productions of documents and privilege logs during the course of discovery; (4) Windsor's extensive briefing in opposition to Defendants' Motion to Compel based on "at issue" privilege waiver, wherein Windsor emphatically argued, and the Court agreed, that there was not "at issue" waiver of privilege for the documents inadvertently produced; (5) Windsor's counsel's immediate notification, one minute after learning of the inadvertent production, that Windsor "do[es] not, and did not intend to, waive any privilege through the production of these documents... [and[ advised that [WIndsor] reserve[d] all rights regarding clawback of inadvertently produced privileged information as provided at paragraph 12 of the Parties' Stipulation and Protective Order in this matter"; (5) Windsor's identification and production of a Privilege Log for the inadvertently produced documentswithin three (3) business days of learning about the inadvertent production, and within one (1) day after learning of 5 other inadvertently

---

enough to accommodate any of those limited factors."). Plaintiff has also not identified any controlling case law or well-established rule in this district requiring those specific considerations.

Id. at *7.

produced documents during the depositions of Steven Prusky and Darin Judd; and (6) Windsor's strenuous objection and refusal to allow Defendants' counsel to question these deponents on privileged documents inadvertently produced.   *See* J Frank Dec., (describing Windsor's review for privilege and provision of multiple privilege logs); Millrood Dec., and Exhibits attached thereto (describing timely notification of reservation of rights under Protective Order and identification of inadvertently produced privileged documents); and A Frank Dec. (describing claw back of inadvertetnly produced documents introduced at the Judd and Prusky depositions and refusal to allow question thereon).

Where attorneys employ fairly "extensive and rigorous procedures", such as those identified above and in the Jaclyn Frank Declaration, when reviewing and producing documents, privilege is generally found not to have been waived and the production of any privileged documents is deemed inadvertent. Aramony v. United Way of Am., 969 F. Supp. 226, 236 (S.D.N.Y. 1997) (holding that there was no waiver of privilege where attorneys and paralegals initially reviewed documents and segregated potentially privileged documents for review by senior associates, even though the law firm did not re-review the documents selected for copying); Prescient Partners, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997) (finding precautions taken to be reasonable where attorney personally reviewed documents, marked privileged documents and instructed paralegal to remove privileged documents prior to production); Lloyds Bank PLC v. Republic of Equador, 1997 U.S. Dist. LEXIS 2416, 1997 WL 96591, at *4 (S.D.N.Y. Mar. 5, 1997) (holding that there was no waiver where attorneys spent fifty hours reviewing documents for responsiveness and privilege and segregated documents prior to production); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.,

1995 U.S. Dist. LEXIS 3338, 1995 WL 11787, at *2 (S.D.N.Y. Mar. 20, 1995) (finding no

waiver where the attorney spent 145 hours reviewing documents for production, the attorney

segregated privileged documents, and only by inadvertence, a small number of privileged

documents were produced); Stratagem Development Corp. v. Heron Int'l N.V., 153 F.R.D. 535,

544 (S.D.N.Y. 1994) (finding precautions reasonable where attorneys conducted an initial

document review, and an additional review after the inadvertent disclosure was discovered).

As explained in the Declaration of Jaclyn Frank, attached hereto, Windsor's counsel

adhered to a specific document review and production protocol which included a page by page

review for identification of privileged documents, the flagging and segregation of any documents

protected by the attorney client and/or work product privileges from the documents Windsor

intended to produce, the bates stamping of documents, the creation of Privilege Log for any

documents withheld on the basis of privilege, and then production of non-privileged documents

and privilege log for documents withheld on the basis of privilege. *See*, J Frank Dec. Windsor's

counsel spent hundreds of hours on this review and production protocol, Windsor made several

productions without producing any privileged documents, and the privileged documents

produced were contained only within the Antonino August 10, 2017 production (which suffered

from extensive formatting issues described in the Declaration of Chris King) and occurred only

by inadvertence. *See*, J Frank Dec. and King Dec. Further, upon notification by Defendants of

the inadvertent production, Windsor's counsel undertook a re-review of the Antonino documents

for privilege, and upon finding inadvertently produced privileged documents, it identified the

documents and produced privilege logs therefor. *See*, J. Frank Dec. and Millrood Dec. Since it is

clear that Windsor's actions were not reckless, the Court's analysis should stop here with a

determination that there has been no waiver based on the inadvertent production.

Notwithstanding, and even if this Court were to apply the remaining Rule 502 factors (which should only be applied where the parties *__have not__* stipulated to a Protective Order) to assess the issue of waiver, including: (1) the time taken to rectify the error; (2) the scope of the discovery and the extent of the disclosure; and (3) overarching issues of fairness, the Court must still conclude that there was no waiver of privilege based on Windsor's inadvertent production. *See*, BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 2013 U.S. Dist. LEXIS 75402 (S.D.N.Y. March 7. 2013) (*citing* Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company, 104 F.R.D. 103, 105 (S.D.N.Y. 1985); SEC v. Cassano, 189 F.R.D. 83, 85 (S.D.N.Y. 1999).

### 3.      Windsor Timely Sought to Rectify the Inadvertent Production

Defendants assert that Windsor waived its claw back rights by instructing Defendants to continue its review when first being notified of the privilege issue, and then reversing its course, by taking "four (4) days to provide an incomplete claw back list", and by failing to "take any other affirmative steps to correct the inadvertent production. [ECF No. 81, pg. 3] These arguments not only omit Windsor's counsel's immediate response upon notification of the inadvertent production and the terms of the Protective Order, but they are contrary to prevailing law and the precise reasons that parties enter into Protective Orders, such as the one the Parties stipulated to in this case.

As an initial matter, the Protective Order does not contain any timing provisions limiting the parties' ability to claw back documents.  As courts have recognized, such agreements give the producing party "the right to claw back *at any time*, without waiver. . . ." Zivali, 2010 WL 5065963, at *1 (emphasis added) (rejecting, *inter alia*, argument that producing party's alleged

failure to "rectify the error promptly constitutes a waiver" because the terms of the protective

order, not Rule 502(b), control the analysis); *see also,* Prescient Partners, 1997 WL 736726, at

\*4-6 (analyzing the "time to rectify disclosure" as a factor that would apply only if "defendants

were correct and [the claw back provision] applied only where the privilege was not waived

under governing case law."). Further, "[i]nadvertent disclosure has been held to be remedied

when the privilege was asserted immediately upon discovery of the disclosure and a prompt

request is made for the return of the privileged documents." Metso Minerals Inc. v. Powerscreen

Int'l Distrib. Ltd., 2007 U.S. Dist. LEXIS 98274, at \*; 2007 WL 2667992 (E.D.N.Y. Sept. 6,

2007) (*quoting* Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc., 232 F.R.D. 160, 165

(E.D.N.Y. Mar. 14, 2005)) The length of delay is measured "from the time the producing party

learns of the disclosure, not from the time of the disclosure itself." Id. at \*13 (*quoting* Atronic; at

165; United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 2000 U.S. Dist. LEXIS 7939,

2000 WL 744369, at \*6 (S.D.N.Y. June 8, 2000); Prescient Partners, 1997 U.S. Dist. LEXIS

18818, 1997 WL 736726, at \*6 (citing cases).

   Upon notification by Defendants' Counsel of inadvertently produced privileged

documents, Windsor acted promptly to apprise Defendants of their intent to preserve the

privilege, to identify and claw back inadvertently produced documents[6], request their return,

---

[6]It should be noted that Defendants try to fault Windsor for initially instructing
Defendants, upon notice by Defendants of the production of potentially privileged documents, to
continue to review the August 10, 2017 production and to prepare for the upcoming depositions.
However, in making this argument Defendants simply ignore that in the same email wherein said
instruction was provided, that Windsor's counsel specifically **"reserved our clawback rights
and continue to preserve all privileges asserted."** See Millrod Dec., and Exhibit "4" thereto.
   Defendants also ignore that within a half hour, after Windsor's counsel began reviewing
the bates stamp range identified by Defendants' counsel and determined that in fact privileged
documents had been inadvertently produced, at 2:02 p.m., Windsor's counsel emailed

provided a Privilege Log for the documents it timely clawed back, and attempted to immediately

reproduce to Defendants the August 10, 2017 production without the clawed back documents,

and repeatedly advised the Defendants that Windsor's re-review for inadvertently produced

documents was ongoing and that Windsor reserved all rights under the Protective Order to

further clawback any additional inadvertently produced privileged documents found to be

included in the August 10, 2017 production. *See*, Millrood Dec. and Exhibits attached thereto.

      More specifically, and as detailed above and in the Millrood Declaration, on the same day

that Defendants counsel notified Windsor's counsel that the August 10, 2017 production

included documents "which appear similar in nature to documents Windsor has previously

withheld on the basis of privilege", Windsor's counsel "advised that [Windsor ] does not, and did

not intend to, waive any privilege through the production of these documents" and "reserved all

rights regarding clawback of inadvertently produced privileged information as provided at

paragraph 12 of the Parties' Stipulation and Protective Order in this matter". Millrood Dec. and

Exhibit "2" attached thereto. Immediately thereafter, Windsor's counsel began reviewing the

bates stamp range identified by Defendants' counsel as an exemplar, and determined that in fact

privileged documents had been inadvertently produced. At 2:02 p.m. on the same day of

Defendants counsel's notification, Windsor's counsel again emailed Defendants' counsel

---

Defendants' counsel requesting that they **"disregard the previous email and cease your
continued review of the documents. We have confirmed that at least one privileged email
was inadvertently produced and there may be more. We will be in touch early next week
with a list of documents to clawback per the terms of the parties stipulation and protective
order entered in this case." "** See Millrood Dec. and Exhibit "5" thereto. Windsor's counsel
provided the initial instruction, relying on the unequivocal terms of the Protective Order, and
recanted said instruction on the same day, within minutes, once it confirmed that privileged
documents had been inadvertently produced.

"confirming that at least one privileged email was inadvertently produced and there may be more" and explaining that it would be providing "early next week a list of documents to clawback per the terms of the parties stipulation and protective order entered in this case." Exhibit "5" to Millrood Dec. Three (3) business days later, on Wednesday, September 19, 2017, 20, 2017, Windsor's counsel sent Defendants' counsel correspondence wherein it identified documents, appearing at 113 identified bates stamp ranges, that had been inadvertently produced, and requested Defendants' compliance with the Claw Back Provision, at Paragraph 12, of the Parties' Stipulation and Protective Order and F.R.C.P. 26(b)(5)(B)". Millrood Dec. and Exhibit "7" attached thereto. In said September 19, 2017 Correspondence, Windsor's counsel also stated "in accordance with the Stipulation and Protective Order, we specifically reserve the right to clawback any other privileged documents that we might find in our continuing review." Id. The next day, September 20, 2017 by correspondence, Windsor's counsel provided Defendants a Privilege Log for the inadvertently produced documents identified in the September 19, 2017 correspondence. Millrood Dec. and Exhibit "8" attached thereto.

In accordance with Windsor's counsel request for compliance with the Protective Order, on September 27, 2017 Defendants' counsel returned by overnight delivery the thumbdrive containing the August 10, 2017 production, and by email of the same date renewed their request for a new copy of this production (without the clawed back documents). Millrood Dec. and Exhibits "8" and "9" attached thereto. On September 28, 2017 Christopher King, an attorney with Alan L. Frank Law Associates, PC. emailed Windsor's counsel requesting which format Defendants would like re-production to be provided, and Defendants counsel responded that PDF format was acceptable, but reserved all rights. See Millrood Dec. and Exhibit "10" attached

26

thereto.

On October 3, 2017 Windsor's counsel uploaded onto Defendants' counsel FTP site a re-production of the August 10, 2017 documents, which it intended to and believed omitted all the clawed back documents identified in the September 19, 2017 correspondence. Unfortunately, during the upload process certain PDF Documents which were included in the September 19, 2017 clawback request and also included on the Privilege Log provided on September 20, 2017 for the Clawed back documents, were inadvertently re-produced. Specifically, the following clawed back privileged documents were inadvertently re-produced in October 3, 2017 upload: ANTONINO 022176; ANTONINO 023242; ANTONINO 023318-023319; ANTONIO 033691-033701; and ANTONINO 034702-034707. The same day Windsor's counsel notified Defendants' counsel of the issue with the re-production, and inadvertent inclusion of the clawed back documents. See Millrood Dec. and Exhibit "11" attached thereto.

On October 4, 2017, Defendants deposed Judd and completed the deposition of Steven Prusky, Windsor's principal. During these depositions, Defendants' counsel sought to use Antonino documents which were clearly privileged and also had been inadvertently produced, but not included in the September 19, 2017 correspondence, included specifically ANTONINO 022548-022555; ANTONINO 055104-055107; ANTONINO 055113-055124; and ANTONINO 055032-055036. During the deposition and on the record, as soon these documents were introduced, Windsor's counsel confirmed that these documents were privileged, had been inadvertently produced, formally requested their clawback pursuant to the Protective Order, and objected to and refused Defendants' counsel attempts to question the witnesses with respect to these documents. See A. Frank Dec. attached hereto.

27

On the day following, October 5, 2017, counsel for Windsor sent correspondence specifically identifying the Antonino documents which had previously been clawed back per the September 19, 2017 correspondence and inadvertently re-produced on October 3rd, and re-identified for claw back per the Protective Order, by bate stamp number, the Antonino documents (not identified in the September 19, 2017 correspondence) that were privileged and inadvertently produced, which Defendants' counsel sought to use in the Prusky and Judd depositions, but Windsor's counsel objected to and refused to allow any questioning on. See Millrood Dec. And Exhibit "12" attached thereto and A. Frank Dec. Said October 5, 2017 correspondence requested that Defendants' counsel simply delete the foregoing clawed back and inadvertently re-produced documents from their FTP site and server and destroy any copies made thereof, in accordance with paragraph 12 of the Parties Stipulation and Protective Order. Id.

On October 14, 2017 Windsor notified Defendants of the identification of 17 additional inadvertently produced documents found during the re-review of the August 10, 2017 production, identified at which bates stamp numbers they appeared, and provided a revised privilege log for the documents included therein on October 16, 2017.  See, Millrood Dec and Exhibit "13" and "14" thereto.

Indeed, courts have held that clawback under similar time frames and similar circumstance were timely and did not amount to waiver. In Board of Trustees, Sheet Metal Workers' National Pension Fund v. Palladium Equity Partners, LLC, the Court found that a piecemeal claw back during which defendants submitted four privilege logs over a four (4) month period, from March to June, identifying 184 documents that had been produced the

previous year was not a waiver of privilege because the "defendants took prompt steps to recall the documents once they realized that they had been disclosed." 722 F. Supp. 2d 845, 848-851 (E.D. Mich. 2010). In United States v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 113546, 2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015) this Court held that the Government did not waive its right to request the return or destruction of inadvertently produced documents under a protective order by failing to promptly assert privilege, where the Government began clawing back documents on a rolling basis 4 days after the initial notification, but did not complete its identification of inadvertently produced documents until more than 6 weeks later. In Zivali v. At&T Mobility LLC, 2010 U.S. Dist. LEXIS 130467, 2010 WL 5065963, at *1 (S.D.N.Y. Dec. 6, 2010) this Court found no waiver where the defendant clawed back 189 documents on two separate occasions months apart pursuant to a protective order consenually agreed to by the parties. In Prescient Partners, this Court found, in a case involving a 12,000 page document production that a producing party had not "inordinate[ly] delayed" when one month after learning that it had inadvertently produced privileged documents it provided what it believed to be a complete claw back list and then sometime later discovered that additional documents needed to be clawed back. 1997 WL 736726, at *6. In Quinby v. Westlb AG,, 2007 WL 2068349, at *1-2 (S.D.N.Y. July 18, 2007), which was a case *without* a claw back order, this Court held that the defendant acted promptly when it was alerted to mistakenly produced documents on December 2, began review of its 650,000 page production to compile a log of inadvertently produced documents on December 7, and served its clawback request on December 30.

Furthermore, Courts have specifically held that even where an initial inadvertent production was discovered and identified, and sometime after an additional quantity of privileged

documents were revealed to have been included in the production and later identified does not

constitute inordinate delay.  In <u>Stoner v. N.Y. City Ballet Co.</u>, 2002 U.S. Dist. LEXIS 24644,

2002 WL 31875404 (S.D. N.Y. Dec. 24, 2002) the Court found that the defendant's counsel acted

reasonably promptly where she learned of an inadvertent production on October 7, sent plaintiff a

letter on October 9, by overnight delivery, requesting the return of those documents that she had

been able to identify as having been erroneously produced, and then later discovered that

additional documents produced to plaintiff appeared to involve privileged materials.  The Court

stated that "[t]he time period between defendant's attorney first learning of the problem and

acting to remedy it is consistent with the conclusion that the error was both inadvertent and not

attributable to indifference or a lack of a serious intent to protect privileged materials. Moreover,

the fact that after the initial error was discovered, an additional quantity of privileged documents

were revealed to have been included in the production does not change this conclusion." Id. at

*8-*9.  In <u>Lloyds Bank PLC v. Republic of Ecuador</u>, 1997 U.S. Dist. LEXIS 2416, 1997 WL

96591(S.D.N.Y. Mar. 4, 1997) the defendant first learned that it had inadvertently produced

privileged documents on August 29, and within 20 minutes notified opposing counsel of the

inadvertent production and requested the return of the documents.  Defendants' counsel

conducted a further review and determined (incorrectly, as it later turned out) that no other

documents had been inadvertently produced.  Approximately a month later, on September 27,

defendant moved for a protective order seeking the return and protection of the disputed

documents. In its memorandum in opposition to defendant's motion for a protective order, BDP

attached defendant's privileged documents that had not been previously identified by the

defendant as inadvertently produced.  The defendant promptly in its reply papers stated that these

documents were privileged and were inadvertently produced, and requested the same relief with respect to those documents as with respect to the documents previously identified. The Court held that the production of the initially identified and later identified documents was inadvertent, the defendant acted promptly to rectify the errors, and no waiver of any privilege or protection was effected by such production or by the failure to fully identify all inadvertently produced documents initially. Id.

Consistent with the foregoing cases, Federal Rule of Evidence 502(b) provides that an inadvertent disclosure in a federal proceeding or to a federal agency is not a waiver if the producing party took "reasonable steps" to prevent disclosure and "promptly" took reasonable steps to rectify the error. *Fed.R.Evid.* 502(b). It is also important to note, the explanatory note to Federal Rule of Evidence 502(b) provides that a producing party need not engage in post-production review to determine whether a protected communication or information has been accidentally produced. The note continues, to explain that a producing party is required "to follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Explanatory Note on Evidence Rule 502.* This is exactly what Windsor did here based on Defendants' exemplar notification. See, J Frank Dec. And Millrood Dec. As explained above, Defendants Counsel refused to identify any privileged documents other than those provided as an exemplar in Mr. Pence's September 15, 2017 email, and Defendants Counsel Mr. Wang, at the October 4, 2017 depositions stated that he believed that additional privileged documents, other than those identified in the Plaintiff's September 19, 2017 letter were included in the August 10, 2017 production, but refused to identify the bates stamp numbers for those documents. *See,* Millrood Dec. and Exhibit "1" thereto, and A. Frank Dec. As a result,

31

Windsor continued its re-review the August 10, 2017 production and identified additional

inadvertently produced documents on a rolling bases, as they were found.  Based on the analysis

in these cases, it is clear that Windsor's clawback requests were timely, it immediately sought to

rectify the disclosures, and therefore, waiver cannot be deemed to have occurred.

> ### 4.    The Proportionality of the Inadvertent Disclosure Supports A Finding of No Waiver

Further, the sheer size of Windsor's production of documents in this case, as compared to

the number of clawed back privileged documents, counsels in favor of a finding that Windsor's

production of privileged material was merely inadvertent, as opposed to "completely reckless."

Windsor's inadvertent production of 85 documents, re-produced at 233 bates stamped pages,

amounting to 829 pages containing privileged material, out of the over 354,300 pages ultimately

produced (and over an additional 10,900 documents with multiple pages, ultimately withheld on

the basis of privilege) represents less than 0.227% of the total number of pages reviewed and less

than 0.234% of the total number of pages produced.  See, J. Frank Dec.  Courts in the Circuit

have held that similar proportionality of inadvertently produced privileged documents has not

been deemed a waiver of privilege. *See, e.g.,* Prescient Partners, 1997 WL 736726, at *7 (no

waiver where claw back was "was less than one percent of the overall document production");

U.S. Fid. & Guar. Co., 2000 WL 744369, at *6 (finding that production of 40 privileged

documents in approximately 400,000 pages of documents "[i]n light of the voluminous document

production, this disclosure, while not insignificant, is relatively small and suggests inadvertence,

rather than recklessness in protection of the privilege."); BNP Paribas, 2013 WL 2322678, at *6

(no waiver where the clawed back documents represented "less than one-tenth of one percent" of

produced documents).

As explained above, and in the J Frank and King Declarations, Windsor made multiple

productions of documents and revisions of corresponding privilege logs. There was not one

inadvertently produced privileged document in any production prior to August 10, 2017, and the

privileged documents were all contained within Antonino's documents. Defendants suggest that

this Court should ignore Windsor's earlier document productions in any proportionality analysis

"because these documents were produced long ago". [ECF No. 81, at pg. 4] Notably, Defendants

offer no case to support this suggestion, and in any event ignoring Windsor's earlier productions

would defeat the entire purpose of a proportionality analysis. Defendants' suggestion is simply

baseless and contrary to holdings in the Circuit and around the country.

### 5.   Overarching Issues of Fairness Mandate Protection of the Inadvertently Produced Privileged Documents

Finally, fundamental fairness mandates that a waiver has not occurred here. The relief

Defendants seek by way of their Motion would defeat the very purpose of promoting efficiency

that prompt parties to enter into claw back agreements and courts to recognize their validity. *See*

Fed. R. Evid. 502(d) Advisory Committee Notes, Explanatory Note (Revised 11/28/2007)

("[T]he court order may provide for return of documents without waiver irrespective of the care

taken by the disclosing party; the rule contemplates enforcement of 'claw-back' and 'quick peek'

arrangements as a way to avoid excessive costs of pre-production review for privilege and work

product."). The reason that "parties to document-intensive litigation enter into so-called 'claw-

back' agreements [is to] to allow the parties to forego privilege review altogether in favor of an

agreement to return inadvertently produced privileged documents." Zubulake v. UBS Warburg,

LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003). *See also,* Fleisher v. Phoenix Life Ins. Co., 2012

WL 6732905, at *4 (S.D.N.Y. Dec. 27, 2012) (recognizing that "entry of a Rule 502(d) order will

33

protect against waiver if it opts to conduct a more economical [privilege] analysis"); U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012) (same); Capital Records, Inc. v. MP3tunes, *LLC*, 261 F.R.D. 44, 51 n.6 (S.D.N.Y. 2009).

When addressing the fairness factor "[c]ourts generally weigh the prejudices to each party." In re Natural Gas Commodity Litig., 229 F.R.D. 82, 89 (S.D.N.Y. 2005). "The prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." BNP Paribas Mortg. Corp. v. Bank of America, N.A., 2013 U.S. Dist. LEXIS 75402, 2013 WL 2322678, at *8 (S.D.N.Y. May 21, 2013). On the one hand there is the degree to which the contents of the disclosure have been disseminated and relied upon, *see* Rigas, 281 F. Supp. 2d at 741 ("[g]enerally, courts hold that fairness dictates a finding of waiver in cases where the privileged information at issue has been widely disseminated"), and, on the other hand, is the harm to the client who suffers a waiver of privilege due to an inadvertent error. *See* Prescient Partners, 1997 U.S. Dist. LEXIS 18818, 1997 WL 736726, at *7 ("Absent any prejudice to the defendants caused by restoring immunity to the documents, '[i]t would be inappropriate for the client of producing counsel to suffer the waiver of privilege . . . due to an isolated, inadvertent error'.")

Defendants argue regarding the fairness factor that "importantly, the production of privileged documents here occurs just as the parties are disputing the applicability of the privilege for documents relating to simultaneous and subsequent counsel"; but this actually supports Windsor's position, as Windsor has been vehemently opposing Defendants efforts to obtain these very same privileged documents under the "at issue" waiver doctrine. Here, the

Parties litigated at length whether there was an "at issue" waiver with respect to Antonino's privileged documents, and this Court held there was not. If privilege were now denied because of the inadvertent production, Windsor will suffer a great disadvantage, and there has been no showing of prejudice to Defendants if plaintiff's assertion of privilege is recognized as to the documents at issue. *See*, Aramony, 969 F. Supp. at 237 ("[i]t would be inappropriate for [plaintiff] to suffer the waiver of privilege . . . due to an isolated, inadvertent error.") In light of the extensive briefing on "at issue" waiver, it is truly unfathomable that there would be an argument based on fairness and that the production of these documents was anything but inadvertent.

Further, when considering fairness, it should be noted that after Windsor initially identified the bates stamp ranges for inadvertently produced privileged documents, in its September 19, 2017 letter, Defendants' Counsel stated a the depositions of Judd and Prusky that it believed that other privileged documents were produced, but refused to identify where these additional privileged documents were included in the August 10, 2017 production. See, A. Frank Dec.

Based on the foregoing, this Court should find that Windsor''s inadvertent production was not reckless, and in any event, a balance of the factors outlined above weigh in favor of finding that the privileged documents produced to the Defendants were the result of an inadvertent disclosure, and therefore, that Windsor has not waived any privilege with respect to those documents.

35

## II.   Defendants Have Not Offered a Basis for Their Request for Reimbursement of Costs and There Are None

Defendants state in their Motion that they move under Federal Rules of Civil Procedure

26, 34 and 37 for reimbursement of Defendants' "substantial costs caused directly by Windsor's

numerous discovery defaults". [Defendants' Motion ECF No. 88]. However, none of these rules

provide for reimbursement of costs under the circumstances of Windsor's discovery production

in this case[7].

_____

[7]It is noted that Defendants did not support their request for cost reimbursement with legal analysis or any detailed supporting documents of the costs and/or attorneys fees Defendants are seeking in addressing Windsor's alleged discovery deficiencies, and instead, in the Adam Pence Declaration provided in support of the Motion, repeatedly provide an "approximate" number of hours of time and an "approximate" dollar amount associated with each alleged discovery deficiency without any documentary support. See Adam Pence Declaration, at ¶12 ("two attorneys and three litigation support professionals from my office dedicated approximately 7.1 hours of time at a cost of approximately $1,900 to diagnose Windsor's production deficiencies and to confer with Windsor's counsel to attempt to facilitate possible remediation"), 15, 17, 20, 23, 29, 32, and 46 (all similar) [ECF No. 89]. On this basis alone Defendants' request for cost reimbursement should be denied. *See*, JMC Rest. Holding, LLC v. Pevida, 2016 U.S. Dist. LEXIS 77635, 2016 WL 3351007 (E.D.N.Y. June 14, 2016) ("plaintiffs' failure to engage in legal analysis in their moving brief, alone, merits denial of their motion [for sanctions]"); Quinio v. Aala, 2016 U.S. Dist. LEXIS 59639, at *6-7 (E.D.N.Y. May 4, 2016) (noting that moving party's failure to engage in legal analysis or set forth case law authorizing the imposition of the sanctions sought "alone merits denial of plaintiff's motion"); Tylena M. v. Heartshare Human Servs., 2004 U.S. Dist. LEXIS 10398, at *9 (S.D.N.Y. June 7, 2004) (denying motion for sanctions because the moving party failed to cite any legal authority in support of its application).; TufAmerica Inc. v. Diamond, 2016 U.S. Dist. LEXIS 30645, 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016) ("To receive attorneys' fees, a party 'must document [its] application with contemporaneous time records . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'" (*quoting* New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983))); Penta v. Costco Wholesale Corp., 2016 U.S. Dist. LEXIS 39584, 2016 WL 1171612 (E.D.N.Y. Mar. 25, 2016) ("the Court will not award Defendants attorneys' fees for the fees sought under Rule 37(c), or for the entire amount requested for the other discovery delays. Although Plaintiff did not provide the Court with any substantially justifiable reason for the discovery delays.... the Court is unable to deduce, from the invoices Defendants provided, which fees were directly incurred because of Plaintiff's delay."(*citing* Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 310 (E.D.N.Y. 2015) ("[i]n addition to eliminating unnecessary hours, courts may reduce the number

As is a common occurrence in complex commercial litigation such as this matter, and as detailed fully in the King Declaration attached hereto, although production issues arose during discovery, the result of three primary factors: (1)Windsor's use during the ordinary course of its business of a 3rd party computer program to reduce the amount of storage used by Windsor's email server which separated emails from their original attachments and provided non-functional outdated links to those attachments; (2) internal errors present within the native files supplied by Antonino which caused problems with document conversion; and (3) the Defendants' insistence that Windsor produce documents in a TIFF format, which it knew to be more problematic to produce than the PDF productions originally offered by the Plaintiff (Defendants later requested and accepted Windsor's production in PDF format), Windsor worked tirelessly to accommodate the Defendants and ensure that the Defendants had documents that were produced in a useable format. *See*, King Dec. Windsor's counsel further worked with Defendants to promptly resolve any issues which Defendants raised, always complied with the deadlines the parties agreed upon, and at all times acted in good faith and in accordance with their obligations under the discovery

---

of hours when presented with time entries that lack sufficient specificity to permit reasoned review").

  Additionally, Courts have held that attorneys' fees and costs that would have been incurred in the normal course of discovery, such as the fees associated with obtaining Plaintiff's medical records or fees associated with reviewing other discovery and strategizing about the case, are not reimbursable. *See*, Learning Care Grp., Inc. v. Armetta, 2015 U.S. Dist. LEXIS 116827, 2015 WL 5194082, at *3 (D. Conn. Sept. 2, 2015) (awarding only those attorneys' fees sought in connection with the motion to compel and not other requested amounts); SEC v. Yorkville Advisors, LLC, 2015 U.S. Dist. LEXIS 24578, 2015 WL 855796, at *11 (S.D.N.Y. Feb. 27, 2015) (declining to award fees connected with hours spent reviewing discovery responses, deficient privilege logs, and participating in meet and confers and discovery conferences, as those costs would have been incurred regardless of the deficiencies in the discovery response); Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc., 212 F.R.D. 94, 104 (E.D.N.Y. 2002) (plaintiff was not reimbursed for fees that "would have been incurred in the course of normal discovery")

rules. *See*, King Dec. (outlining the specific efforts undertaken to resolve and the accepted resolution of each and every discovery deficiency raised by the Defendants).

A district court has wide discretion in sanctioning a party for discovery abuses. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999); Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006). However, the imposition of sanctions relating to discovery must be weighed in light of the full record. *See*, Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures, 602 F.2d 1062, 1068 (2d Cir. 1979). Here, Defendants are seeking their costs reimbursement under Federal Rules of Civil Procedure 26, 34, and 37, but do not provide any citation to, or detail, as to which sections of either Rule 26, 34 or 37 would support such a reimbursement. In fact, none of these Rules support the cost reimbursement Defendants seek in their Motion.

First, the only parts of Rule 26 that even discuss awards of expenses are at 26(c)(3), where a party has moved for a protective order with respect to certain discovery sought, and 26(g)(3) which addresses sanctions for improper certification of discovery disclosures, requests, response and objections, neither of which apply to the circumstances Defendants have raised in their Motion regarding Windsor's alleged discovery deficiencies. *See*, Fed.R.Civ.P. 26. Defendants are not and have not moved for a Protective Order (other than the one consensually agreed to by the Parties [ECF No. 28] and Windsor's counsel did sign discovery responses and requests, but these did not violate Rule 26 and Defendants did not present evidence, nor did they argue, that they were improper, frivolous, or unreasonable. Further, Rule 34 doesn't even speak to expenses, sanctions, and/or reimbursement of costs. *See*, Fed. R. Civ. P. 34.

The only remaining basis Defendants cite for their requests for reimbursement of costs is

Rule 37, which provides: at (a)(5) for expenses and/or sanctions where a Motion for Protective Order has been granted; at (b) for sanctions where a party has failed to comply with a Court Order; at (c) for sanctions when a party has failed to disclose or supplement its disclosures; at (d) for sanctions where a party has failed to attend its own deposition or serve answers to interrogatories or respond to a request for inspection; at (e) sanctions for failure to preserve electronically stored information; and (f) sanctions for failure to participate in framing a discovery plan. *See*, Fed. R. Civ. P. 37. In Zino Davidoff SA v. Selective Distrib. Int'l Inc., 2013 U.S. Dist. LEXIS 47457, 2013 WL 1245974 at *12 (S.D.N.Y. Mar. 8, 2013), adopted at, 2013 U.S. Dist. LEXIS 43539, 2013 WL 1234816 (S.D.N.Y. Mar. 27, 2013), the Court noted that each provision of Rule 37 provides for different types of sanctions and stated "while the discovery rules lay out a broad array of potential sanctions to be utilized at the court's discretion, they specify some predicates for their exercise". Again, none of these sections apply to the circumstances raised by the Defendants in their Motion, which is prejudicial delay as a result of corrected discovery deficiencies.

Moreover, Courts in this Circuit have specifically held that sanctions under Rule 37 are intended to serve three purposes, none of which would be served if Defendants were reimbursed their costs under the circumstances herein. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with a particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault. Update Art, Inc. v. Modiin Publishing Ltd., 843 F.2d 67, 71 (2d Cir. 1988); see also, King Harvest Development, Ltd. v. Li, 2010 U.S. Dist. LEXIS 132758, 2010 WL 5174326,

at *3 (S.D.N.Y. Dec. 10, 2010); Penthouse Int'l, Ltd. v. Playboy Enters., 663 F.2d 371, 386 (2d Cir. 1981) (Rule 37 sanctions may be applied both to penalize conduct that warrants sanctions and to deter those who might be tempted to use such conduct in the absence of such a deterrent).

The only arguably applicable section of Rule 37 is section (c), which has been held to provide sanctions for the "untimely production of documents and information required to be produced." In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (*citing* Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002)). In this regard, courts have found that, for a party to demonstrate that the untimely production of documents is sanctionable under Rule 37(c), it must show: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a **'culpable state of mind'**; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Id. at 125 (emphasis added) (*quoting* Residential Funding, 306 F.3d at 107). The purpose of Rule 37(c) is to prevent the practice of "sandbagging" an adversary with new evidence. Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004); Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 77 F. Supp. 2d 446, 458-59 (S.D.N.Y. 1999).

Further, courts may not impose sanctions under Rule 37(c) where a party's failure to comply was "substantially justified" or where the conduct was "harmless." See Fed. R. Civ. P. 37(c)(1); Kara Holding Corp. v. Getty Petroleum Mktg, 2004 U.S. Dist. LEXIS 15864, 2004 WL 1811427, at *24 (S.D.N.Y. Aug. 12, 2004)(noting that Rule 37(c)(1) and 26(g)(3) "both . . . excuse harmless discovery failures"); *accord* Singer v. Covista, Inc., 2013 U.S. Dist. LEXIS 44474, 2013 WL 1314593, at *9 (D.N.J. Mar. 28, 2013)("[L]ike Rule 37, the Court cannot

40

impose sanctions pursuant to Rule 26(g) if it finds that the non-compliant party's failure was

substantially justified or harmless.") (*citing* Winner v. Etkin & Co., 2008 U.S. Dist. LEXIS

105419, 2008 WL 5429623, at *5 (W.D. PA. Dec. 31, 2008) ("The imposition of sanctions under

Rule 26(g) and/or Rule 37 is phrased in mandatory language unless the Court finds that the

failure was substantially justified or harmless.")). "Substantial justification" may be demonstrated

where "there is 'justification to a degree that could satisfy a reasonable person that parties could

differ as to whether the party was required to comply with the disclosure request,' or 'if there

exists a genuine dispute concerning compliance.'" AIG Global Asset Mgmt. Holdings v. Branch,

2005 U.S. Dist. LEXIS 2728, 2005 WL 425494, at*1 (S.D.N.Y. Feb. 18, 2005) (*quoting* Jockey

Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002)).

"Harmless[ness]" means an absence of prejudice to the defendant. *See*, Williams v. Cty. of

Orange, 2005 U.S. Dist. LEXIS 46051, 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005).

    Here, Windsor is not at fault for the discovery deficiencies, as the delays were

substantially justified and caused in great part by the formatting errors contained in the

documents produced by Windsor (which were originally produced in the format that they were

maintained in the ordinary course of Windsor's and Antonino's businesses, as required under

F.R.C.P. 34), and at all times Windsor acted in good faith and sought to, and promptly did

correct any deficiency raised by the Defendants to the Defendants' satisfaction.  There was never

any culpable state of mind or intent to sandbag the Defendants or a violation of this Court's

Orders, and there is no conduct on Windsor's part that should be penalized or warrants the

sanction requested by Defendants of cost reimbursement. *See*, King Dec.; *See also*, *e.g.*, Fowler

v. New York Transit Auth., 2001 U.S. Dist. LEXIS 762 (S.D.N.Y. Jan. 22, 2001) ("the motion

41

for sanctions is denied because the plaintiff's trial counsel did not act in bad faith. The motion for

sanctions is also denied in the exercise of the Court's discretion because sanctions are a severe

penalty and the plaintiff's trial counsel did not intentionally attempt to violate the Court's Order.);

Zappala v. Albicelli, 954 F.Supp. 538, 548 (2d Cir. 1997)(denying discovery sanctions under

Rule 37(d) where despite defendant's four-month delay responding to interrogatories, record

indicated defendants made good faith effort to comply with plaintiff's voluminous discovery

requests and did not completely fail to answer interrogatories but, rather, such answers were

timely under the pretrial case management order); Medina v. E. Commc'n, Inc., 2016 U.S. Dist.

LEXIS 179252, 2016 WL 7377269, at *1 (S.D.N.Y. Dec. 13, 2016) ("Plaintiff has not identified

any specific harms resulting from Defendant's delayed responses to its discovery requests, and

therefore monetary sanctions are inappropriate."); Cipriani v. Buffardi, 2008 WL 656742, at *1

(N.D.N.Y. Mar. 6, 2008) ("[I]t does not appear that defendant's delay in responding to the

discovery requests, while not condoned, is attributable to bad faith, nor does it appear that

plaintiff was materially prejudiced thereby. Plaintiff's request for an award of monetary sanctions

is therefore denied.").

## CONCLUSION

For the reasons outlined more fully above and based on the Declarations attached hereto,

and case law cited herein, Defendants' Motion must be denied. There has been no waiver of

privilege with respect to the inadvertently produced documents and no conduct which warrants

the reimbursement of Defendants cost.

Respectfully submitted,

Alan L. Frank, Esquire
Samantha A. Millrood, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046

1601 Gravesend Neck Rd
Suite 903, 2nd Fl.
Brooklyn, NY 11229

Tel: (215) 935-1000
Fax: (215) 935-1110
afrank@alflaw.net
smillrood@alflaw.net
Attorneys for Plaintiff

Dated: October 17, 2017

43