UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDSOR SECURITIES, LLC,

        Plaintiff,

    -against-

ARENT FOX, LLP and JULIUS
ROUSSEAU, III,

        Defendants.

Case No.  16-cv-01533 (GBD)(GWG)

## DECLARATION OF CHRISTOPHER R. KING
## IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION

    I Christopher R. King, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, state
and declare as follows:

1. I am a member of the Pennsylvania and New Jersey Bars, and I am an attorney at
   Alan L. Frank Law Associates, P.C., attorneys for the Plaintiff Windsor Securities,
   LLC ("Windsor").

2. Alan L. Frank Law Associates, P.C. has been counsel to Windsor since the inception
   of this litigation, and I have been actively involved in the production of documents
   responsive to Defendants' discovery requests and addressing issues raised by the
   Defendants to that production since June of 2016. As a result, I am fully familiar
   with the facts and circumstances related below.

3. I submit this Declaration in support of Plaintiff's Opposition to Defendant's motion
   for a court order directing that Windsor's production of certain purportedly privileged
   documents be deemed not inadvertent and that privilege has been waived and
   directing Windsor to reimburse Defendants for certain costs.

1

4. The purpose of this Declaration is to Supplement Plaintiff's response to the Defendants' Motion and provide a factual basis for the defenses set forth therein. I know the statements made herein to be true based upon personal knowledge; based upon a review of the relevant documents, papers and/or pleadings in this action; and/or based upon non-privileged information received from our client.

## Size and Scope of the Windsor Production

5. Over the past sixteen months, at the behest of the Defendants, the Plaintiff has produced in excess of 350,000 pages of responsive documents in the instant litigation. A large portion of this document production was duplicative in nature, a fact which the Defendants were aware at the time they chose to make such requests.

6. The Defendants' four overlapping document requests included requests for production to the Plaintiff, and three separate subpoenas to the lawyers that represented Plaintiff in the underlying matters after the Defendants were terminated, including subpoenas to each Lauren Antonino and Darin Judd, and a separate subpoena to Darin Judd's respective law firm, Thompson Welch Soroko & Gilbert, LLP. A copy of the Defendants' respective discovery requests and subpoena to Thompson Welch Soroko & Gilbert, LLP are attached hereto as Exhibits "A", "B", "C" and "D" and are incorporated herein.

7. As set forth therein, these document requests demanded the production of the same categories of documents from each of the three separate parties. Moreover, the Defendants already had access to a large number of these documents as they were either: (a) public filings in the matter which they represented the Plaintiff; (b) public

2

filings available through PACER; or (c) communications wherein the Defendants were carbon copied.

### The Document Production Process

8.  Although production issues arose, as in most complex commercial litigation, throughout the discovery process, Plaintiff worked tirelessly to accommodate the Defendants and ensure that the Defendants had documents that were produced in a useable format. Plaintiff further worked to resolve any issues which arose in an expedited fashion.

9.  Overall, the formatting issues identified by the Defendants were the result of three primary factors: (1) the Plaintiff's use of a 3rd party program to reduce the amount of storage used by the Plaintiff's email server which separated emails from their original attachments and provided non-functional outdated links to those attachments; (2) internal errors present within the native files supplied in the Antonino Production which cause problems with document conversion; and (3) the Defendants' insistence that Plaintiff produce documents in a TIFF format, which it knew to be more problematic to produce than the PDF productions originally offered by the Plaintiff—the same format which the Defendants later requested the Plaintiff to provide their production. Moreover, the third issue was exacerbated by issues one and two.

### A. Defendants Initial Discovery Requests

10. On June 10, 2016, the Defendants served their First Request for Production of Documents and Tangible Things ("RFPDs") on the Plaintiff. Defendants' RFPDs included the following instruction:

Pursuant to Fed. R. Civ. P. 34(b)(2), electronically stored documents should be produced in *native format,* TIFF format, or a format agreed upon by the parties,

and accompanied by a Concordance/Opticon or similar load file, with document level text files for the extracted text or OCR, and the following metadata fields, as applicable should be produced. . .

11. However discovery requests are still subject to the limitations put in place by Fed. R.

Civ. P. 34(b)(2)(E). Rule 34(b)(2)(E) states in pertinent part:

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

12. Contrary to Defendants' Counsel's assertions, the Plaintiff did not originally agree or consent to make its production in "TIFF Format with Metadata".

13. Despite the Defendants' assertion that there was an agreement or expectation that documents would be produced in a TIFF format, on June 23, 2016, the Defendants themselves provided their first discovery production to the Plaintiff in a PDF format consisting of a single pdf file bate stamped AF 000001 -000029. No metadata, no TIFF images, and no load files were supplied.

14. On July 11, 2016, the Plaintiff provided responses and objections to the Defendants' RFPDs and produced 19,071 pages of responsive documents. A significant portion of these documents were scanned copies of paper files (with no inherent metadata) or electronic documents which were provided in their native pdf format with their original file names that were produced with bate stamps for organizational purposes

4

(bate stamped nos. Plaintiff 000001 – 003949, and 017207 – 019071). A copy of Plaintiff's Enclosure letter is attached hereto as Exhibit "E" and is incorporated herein.

15. The remainder of the files produced were emails in the possession of the Plaintiff. These files were produced in PDF format wherein the file name reflected the bates range of the documents. The purpose of providing this production in a PDF format was to accommodate the large amount of redactions which had to be applied to the privileged portion of Windsor's communications.

16. In all respects, Plaintiff's production mirrored the format of the Defendants' original production.

17. Similar to the Defendants' first document production, the Defendants produced a second set of documents, bate stamped AF 000030 – AF 007485, which again consisted of only PDF documents which were provided without any load files.

18. Despite producing their own initial productions in a PDF format, the Defendants thereafter raised the issue of the production's format with the Plaintiff, insisting that the parties had agreed to produce discovery in a TIFF format and demanding that Plaintiff's entire production, even those documents produced natively in PDF, be reproduced in the TIFF format (the "Formatting Issue").

19. Contemporaneously, with the identification of the TIFF formatting issue, the Defendant notified the Plaintiff that certain of the emails in the Plaintiff's initial production did not contain the attachments which were originally included in those emails (the "Attachment Issue").

5

20. Upon receiving notice of these issues, the Plaintiff immediately began the process of identifying the underlying issues and developing a solution that was acceptable to the Defendants with regard to both the Attachment Issue and the Formatting issue.

21. After consulting with the Plaintiff, counsel for the Plaintiff informed the Defendants that the Attachment Issue was a result of a third-party program, Weight Diet ("WD"), used by the Plaintiff to reduce the amount of storage used on the Plaintiff's email server. Using WD, the email file's size was reduced by storing the attachment separately from the email on the Plaintiff's server. This resulted in the attachments to the Plaintiff's emails being produced as a non-functional links to the originally attached files.

22. At approximately the same time as the Defendants formally objected to the format of Plaintiffs' discovery productions, the Defendants, on August 24, 2016, delivered their third production of documents--a production which for the first time was provided in a TIFF format with load files. A copy of Defendants' August 24, 2016 correspondence enclosing their third production is attached hereto as Exhibit "F" and incorporated herein.

23. The Plaintiffs addressed both the Formatting Issue and the Attachment Issue with a series of meet and confer teleconferences with the Defendants' counsel in late August through October of 2016.

24. The Plaintiff first attempted to address this issue by providing the email production in native format so that the links to the WDA files could be utilized, however this did not rectify the issue and the parties continued to discuss other potential resolutions.

25. Plaintiff thereafter provided the Defendants with a native production of emails that did not have an Attachment Issue so that the Defendants could begin reviewing those documents.

26. During these meet and confers, Counsel for the Plaintiffs proposed to resolve the Attachment Issue and the Formatting Issue by (1) providing the requested email files that did not have missing attachments to the Defendants in their native format with the requested metadata fields; and that (2) the Plaintiff could similarly provide the emails that were missing attachments in their native format after the attachments were identified and manually re-attached to each email.

27. At this time the Defendants considered the Plaintiffs proposal and indicated that it would not agree to accept Plaintiff's native production of emails in lieu of a TIFF production, despite their recognition that any issues with a TIFF production could be very expensive to process. *See* Dec. of Adam Pence, Esq. at ¶ 9. The Defendants did agree to review a sample production of exemplars of emails wherein the missing attachments were re-attached manually.

28. After conducting a review of the exemplars provided, the Defendants indicated that the exemplar emails contained modified metadata because of the re-attachment process, but that they would accept such a production while reserving their rights to later object to the authenticity of the attachments. To allay any concern as to the authenticity of those attachments, the Plaintiff offered to provide the Defendants a certification indicating that the reproduced emails contained true and correct copies of the files attached to the original emails. The Defendants did not require such a

7

certification, and as of this date the Defendants have not raised any issues as to the authenticity of the provided attachments.

29. On October 19, 2016 Plaintiff delivered 570 documents in TIFF format to the Defendants. In November 2016, the Defendants indicated that they would accept this production as is. At that time, no indication was given that the production lacked the appropriate metadata. If this issue had been raised Plaintiff would have addressed it at that time.

30. On December 7, 2016 Plaintiff again delivered a production of documents to the Defendants in TIFF format containing the remaining documents which did not contain documents with missing attachments. Unfortunately, some of the documents previously produced in the October 19, 2016 production were reproduced in the December production. Thereafter, the Defendants objected to the review of these duplicative documents and requested a replacement production of these files. The Plaintiffs immediately agreed to revise its production to address the Defendants' concerns.

31. On December 29, 2016, in response to Defendants demand that the Plaintiff's attorney in the underlying actions that replaced the Defendants, Darrin Judd, Esquire ("Judd") provide a duplicative version of the Plaintiff's already produced discovery. In response, pursuant to the parties' stipulations, Plaintiff produced approximately 165,000 pages of documents to the Defendants (the "JUDD Production").

32. A substantial portion of the JUDD Production consisted of documents filed with the Courts in the various matters which the Defendants previously represented the

8

Plaintiffs, emails between the Plaintiff, Judd, and the Defendants, and other documents which were likely already within the possession of the Defendants.

33. Despite the duplicative nature of these documents, Plaintiff agreed to the production of the documents to continue to move the case forward. Although the Plaintiff reviewed the Judd documents as they were maintained in Judd's firm's normal course of business, pursuant to the Defendants' demands those files were produced to the Defendants in a TIFF format.

34. Out of an abundance of caution, the Plaintiff also produced these files in the format which they were normally kept by Judd's firm so that the Defendants would not be hindered in their review of the documents. *See* the December 29, 2016 Correspondence to the Defendants attached hereto as Exhibit "G" and incorporated herein.

35. Thereafter on January 5, 2017, counsel for the Defendants notified the Plaintiff of several perceived deficiencies with Plaintiffs delivery of the JUDD Production and Plaintiff's original production. Between January 5, 2017 and January 19, 2017 the parties exchanged correspondence regarding the perceived deficiencies and participated in a meet and confer teleconference.

36. In its correspondence, the Plaintiff offered to provide a comprehensive replacement of the Plaintiff's original production in TIFF format and offered to supply the missing load files for the JUDD Production within seven days. However, during the parties' January 19, 2017 meet and confer teleconference, the Defendants suggested an alternative solution which the parties thereafter discussed.

9

37. At the conclusion of the January 19, 2017 meet and confer teleconference concerning the Attachment Issue and Formatting Issue, the Plaintiff and Defendants agreed that the Defendant would (1) accept the native production of emails without an Attachment Issue and produce the same with bate stamp numbers for their own use in discovery; (2) that the Defendants would accept a production of the emails with Attachment Issues wherein the files were to be re-attached manually. Defendants requested that this portion of the production be produced in a TIFF format not as a native production; and (3) that the missing load files for the JUDD Production would be delivered to the Defendants within seven days.

38. The Plaintiff fully complied with these commitments and no further requests were received from the Defendants with regard to these productions.

39. On March 15, 2017 counsel for the Defendants served a deficiency letter on the Plaintiffs outlining several substantive deficiencies which the Defendants perceived had occurred in the Plaintiff's production, including a lack of documents produced for the post- September 1, 2014 period; a failure to produce recordings of telephone conversations responsive to Defendants' RFPDs; and several objections to the Plaintiff's assertion of privilege.

40. As Defendants' counsels' March 15, 2017 correspondence acknowledges, Windsor produced all relevant non-privileged documents in its possession through September, 2014, and all public filings in the underlying cases (including those submitted after September 2014), based on the date of Defendants' termination, September 9, 2014, and the fact that all malpractice had occurred by that date. Upon Defendants' March

15, 2017 request for post September, 2014 documents, on April 10, 2017, Windsor produced all non-privileged post September, 2014 documents in its possession.

41. As acknowledged by the Defendants, these productions were made on April 26, 2017, April 28, 2017, May 5, 2017, May 10, 2017, May 23, 2017, and May 25, 2017. These documents were provided in multiple productions in order to ensure that these documents would be delivered to the Defendants in the most expedient manner.

42. Upon receiving the Defendants' March 15th correspondence, Plaintiff also conducted a review of its prior productions and identified the audio recordings previously produced to the Defendants. In order to make the Defendants review more efficient, the Plaintiff re-produced certain audio recordings to ensure that all such recordings had been provided to the Defendants in an easily accessible portion of the Plaintiff production.

43. The last substantial production made by the Plaintiffs in this matter was the production of approximately 85,000 pages of the Plaintiff's attorney Lauren Antonino, Esquire's files concerning several litigation projects which are the subject of the instant malpractice action (the "Antonino Production") and a supplemental production by Darin Judd, Esquire which consisted of approximately 5,000 pages of responsive documents. This production was forwarded by the Plaintiff to the Defendants on August 10, 2017.

44. Similar to the JUDD Production, the Antonino Production contained public documents filed with the courts in the various litigation which are the subject matter of this legal malpractice action, emails between the Plaintiff, Antonino and the

Defendants, and other documents which were likely already within the possession of the Defendants.

45. Similar to the JUDD production the Antonino documents were produced to the Plaintiff in the format which they were normally kept. Plaintiff thereafter produced these documents in TIFF format as requested by the Defendants.

46. However, unlike the JUDD documents, the Antonino production consisted of multiple file types containing her email records and emails provided to her in the course of the underlying litigations. A significant number of these documents contained internal errors which made review of those documents for privileged material problematic. Specifically, the Antonino production contained a number of large PDF files containing archived emails. These files contained internal errors making it extremely difficult to review those files by any means other than a manual search.

47. After receiving the Antonino Production, the Defendants identified certain load files which were missing from the production. Plaintiff agreed to produce the missing load files within a reasonable time. The Plaintiff thereafter provided the missing load files as agreed on August 21, 2017. On August 23, 2017, the Plaintiff provided a revised production of bate stamped documents ANTONINO 034720 - 57202 and 085830-085832 to address several issues with the load files for this bate stamped range in the August 10, 2017 production.

48. However, on August 24, 2017, shortly after the missing load files and revised production were delivered to the Defendants, the Defendants indicated that they discovered a gap in bate stamp numbers in the Antonino Production and that several of the load files were still not useable.

12

49. In reviewing this issue, Plaintiff determined that the same internal errors which caused issues with the Plaintiff's review of these same documents caused certain load files and certain substantive files to be omitted from the Antonino Production. This in turn created the gaps in the bate stamp range that were identified in the Defendants' correspondence and Defendants' Motion. *See* Dec. of Adam Pence, Esq. at ¶ 41.

50. In its August 24, 2017 correspondence, Counsel for the Defendants requested that the Plaintiff provide the missing files in a PDF format wherein the name of the document reflected the beginning bate stamp number of each document--the format of Plaintiff's very first production. These files were delivered on August 28, 2017 and August 29, 2017.

51. On September 1, 2017, Defendants' counsel identified several other missing bate stamped ranges of documents. The Plaintiff immediately began researching this issue and agreed to produce the missing documents in the same PDF format as previously requested shortly thereafter.

52. On September 6, 201, the Plaintiff reproduced the following bate stamped ranges in PDF format:

      ANTONINO 007424- ANTONINO 008503
      ANTONINO 011276- ANTONINO 011747
      ANTONINO 018865- ANTONINO 018865
      ANTONINO 019920 -ANTONINO 019922
      ANTONINO 019936 -ANTONINO 019939
      ANTONINO 019957- ANTONINO 019965
      ANTONINO 019970- ANTONINO 019971
      ANTONINO 083492 -ANTONINO 083511

53. On September 6, 2017, Plaintiff produced a supplemental production of JUDD documents to the Defendants to ensure that all JUDD documents had been produced at that time.

54. On September 15, 2017, the Defendants identified several bate stamped documents in Plaintiff's Antonino Production which appeared to be privileged. After a brief exchange of emails between the parties, the Plaintiff indicated that these documents were inadvertently produced and should be clawed back pursuant to the terms of the Protective Order.

55. Plaintiff thereafter requested that the documents identified by the Defendants be clawed back. On September 19, 2017, the Plaintiff formalized its claw back request-- a request which indicated additional documents which should be clawed back.

56. In response to Plaintiff's request for a claw back, the Defendants requested that the Plaintiff reproduce the non-privileged portion of the production. The Plaintiff complied with this request and these documents were delivered on October 3, 2017.[1]

57. Shortly after forwarding the October 3, 2017 Production to the Defendants, I noted that one PDF file identified as privileged in Plaintiff's September 19, 2017 correspondence, ANTONINO 22176, was inadvertently included in the production. I immediately communicated this issue with counsel and requested that the document be deleted from the production pursuant to the protocols in place. I am also aware that on October 5, 2017 our office forwarded correspondence to the Defendants identifying four additional privileged documents which had been inadvertently reproduced and requesting that those documents be returned or destroyed pursuant to the Protective Order which governs this matter.

---

[1] To the extent that Defendants' counsel notes in his Declaration that 10 separate ftp uploads were used to deliver the October 3rd Production, this process was used to ensure the files were uploaded in a timely manner. Had the Plaintiff used a single FTP upload to deliver this massive production, the Defendants receipt of this production would have been further delayed.

14

58. In summary, the Plaintiff in this matter produced in excess of 350,000 pages of responsive materials. These materials were produced in the following productions:

- July 11, 2016 production of PLAINTIFF 000001-019071 in PDF format and native files containing voice mails (which could not be bates stamped).
- August 25, 2016 production of bate stamped documents PLAINTIFF 019072-019076 in PDF format.
- September 21, 2015 a disc containing native email files from the previous productions;
- October 5, 2016 production of a disc containing the native versions of the remaining emails from the previous productions.
- October 19, 2016 production of emails in single page TIFFs and text files with a load files, as well as the native files. This production was bate stamped PLAINTIFF 19077-31589;
- December 7, 2016 production of a disc of the remaining emails, which were previously produced natively and in PDF and which did not have an Attachment Issue. These documents were produced in TIFF format with the corresponding load files;
- December 29, 2016 JUDD Production including two thumb drives containing documents produced to Plaintiff by Darin Judd, Esq. These documents were converted to TIFF and bate stamped JUDD 000001 through JUDD164721. Additionally, the thumb drives contained the native documents in the exact format in which Mr. Judd produced the documents to the Plaintiff;
- January 20, 2017 production of PLAINTIFF 041268-068272 in TIFF format with load files;
- March 3, 2017 substitute production bate stamped numbers PLAINTIFF 041268-041276;
- April 10, 2017 production bate stamped PLAINTIFF 06287-72811;
- April 26, 2017 production bate stamped PLAINIFF 072812-073668;
- April 28, 2017 production bate stamped PLAINTIFF 073670 – 074026;
- May 5, 2017 production bate stamped PLAINTIFF 074027-084541;

- May 10, 2017 production bate stamped PLAINTIFF -084542-084967;
- May 23, 2017 production bate stamped PLAINTIFF 084968-086810;
- May 25, 2017 production bate stamped PLAINTIFF 086811-087014;
- August 10, 2017 production bate stamped ANTONINO 0000001 - 085829;
- August 10, 2017 production bate stamped JUDD 164722-170017;
- August 21, 2017 production of missing load files to Defendants;
- August 23, 2017 reproduction of ANTONINO 034720 - 57202 and 085830-085832;
- August 28, 2017 reproduction of ANTONINO 034726 - 036673 and 085830 - 085832 in PDF format;
- August 29, 2017 reproduction of ANTONINO 057203 - 071487 in PDF format;
- September 6, 2017 reproduction of the following bate stamped ranges in PDF format:

  ANTONINO 007424- ANTONINO 008503
  ANTONINO 011276- ANTONINO 011747
  ANTONINO 018865- ANTONINO 018865
  ANTONINO 019920 -ANTONINO 019922
  ANTONINO 019936 -ANTONINO 019939
  ANTONINO 019957- ANTONINO 019965
  ANTONINO 019970- ANTONINO 019971
  ANTONINO 083492 -ANTONINO 083511
- September 6, 2017 production of JUDD 170018 - 171709 in PDF format;
- October 3, 2017 claw back production of ANTONINO 000001 - 085832;
- October 3, 2017 reproduction of JUDD 164722 - 170017 in PDF format;
- October 5, 2017 production of redacted documents pursuant to claw back provisions of the parties' protective order.

59. As set forth above, in every instance wherein the Defendants identified an issue with the Plaintiff's discovery production, the Plaintiff immediately investigated the identified issue, discussed the issue with the Defendants, agreed on a plan to resolve that issue with Defendants' counsel, and delivered the promised fixes within the time

16

periods agreed upon by the parties. If secondary or tertiary issues were later identified the Plaintiff fully responded to such issues and provided the requested relief within a reasonable time.

60. During the period of time in question, between June 28, 2016 and September 29, 2017, I recorded approximately 222.8 hours in time to produce the Plaintiff's discovery productions, confer with counsel for the Defendants regarding issues raised with the various productions, and to resolve the various issues raised in a timely fashion.

61. In an effort to expedite all productions of discovery and the resolution of all issues raised concerning those productions, this matter was given the highest possible priority.

62. Despite the duplicative nature of many of the Defendants' discovery requests, Plaintiff's counsel in this matter made every effort to address the issues raised by the Defendants during this discovery period and continued to address those concerns until the Defendants were satisfied with the document productions that were produced.

63. Moreover, Plaintiff's counsel took the necessary precautions to protect documents subject to the attorney-client privilege. Despite the enormity of the Plaintiff's discovery production, more than 350,000 pages of responsive documents, the *only* inadvertent production occurred with respect to Antonino's documents produced on August 10, 2017 (which suffered from formatting issues as a result of programs and the production of electronic documents to Windsor's counsel), and the inadvertent production of Antonino's documents was small in comparison to the number of documents produced by Windsor during discovery in this matter.

17

64. As set forth more fully above, the formatting issues identified by the Defendants were caused by several factors, including the Plaintiff's use of a 3rd party program to reduce the amount of storage used by the Plaintiff's email server which separated emails from their original attachments and provided non-functional outdated links to those attachments; (2) internal errors present within the native files supplied in the Antonino Production which cause problems with document conversion; and (3) the Defendants' insistence that Plaintiff produce documents in a TIFF format, a format which it was specifically knew to be more problematic for the Plaintiff to produce than the PDF productions originally provided. The aggregation of these issues caused a majority of the discovery disputes relating to the Plaintiff's production.

65. However, at all times in this matter, Windsor acted in good faith in addressing its discovery obligations under the Federal Rules of Civil Procedure, including the timely cure of all issues identified by the Defendants. Accordingly, the Plaintiff respectfully requests that this Court deny the Defendants' motion for discovery costs.

CHRISTOPHER R. KING

Sworn to before me this
17th day of October, 2017

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LISBETH LOZADA, Notary Public
Abington Twp., Montgomery County
My Commission Expires November 10, 2019

18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WINDSOR SECURITIES, LLC,

        Plaintiff,

    -against-

ARENT FOX, LLP and JULIUS
ROUSSEAU, III,

        Defendants.

---

Case No.  16-cv-01533 (GBD)

## DEFENDANTS' FIRST SET OF REQUESTS FOR
## PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"),

Defendants Arent Fox LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau", and,

collectively, with Arent Fox, "Defendants"), by and through their attorneys Foley & Lardner

LLP, hereby request that Plaintiff Windsor Securities, LLC ("Windsor") produce the following

documents and tangible things for inspection and copying (or that it produce a copy set of the

documents) at the offices of Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016 no

later than thirty (30) days after service of this First Set of Requests for Production of Documents

and Tangible Things (the "Requests"). The following definitions and instructions shall apply.

### DEFINITIONS

    1.    All definitions and rules of construction set forth in Local Rule 26.3 of the

Civil Rules of this Court are incorporated herein.

    2.    The terms in the present tense include the past and future tenses. Terms in

the past tense include the present and future tenses. Terms in the future tense include the present

and past tenses.

# EXHIBIT "A"

3.      The "Complaint" means the complaint filed on February 29, 2016 in the above-captioned action (Dkt. No. 1).

4.      Capitalized terms used herein, but not defined, have the meanings ascribed to them in the Complaint.

5.      The "Answer" means the Answer and Counterclaims filed on May 6, 2016 in the above-captioned action (Dkt. No. 19).

6.      The term "You," or "Your" means Windsor Securities, LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Windsor Securities, LLC.

7.      The term "third party" refers to any individual or entity that is not a party to this lawsuit.

8.      "Prusky" means Steven Prusky, Principal of Windsor Securities, LLC.

9.      "E.E.H. Consulting" means E.E.H. Consulting, Inc, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by E.E.H. Consulting, Inc.

10.     "Houchins, III" means Eugene E. Houchins, III, the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, III.

11.     "Houchins, Jr." means Eugene E. Houchins, Jr., the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, Jr.

2

12.     "Thompson Welch" means Thompson Welch Soroko & Gilbert LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Thompson Welch Soroko & Gilbert LLP.

13.     "Hennefer Finley" means Hennefer Finley & Wood LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Hennefer Finley & Wood LLP.

14.     The "Bitter Trust" means the John L. Bitter Irrevocable Life Insurance Trust, as described in the Complaint.

15.     The "Acker Trust" means the Joe E. Acker Family Trust, as described in the Complaint.

16.     The "Collins Trust" means the Erwin A. Collins Family Life Insurance Trust, as described in the Complaint.

17.     The "Coppock Trust" means the Robert S. Coppock Irrevocable Life Insurance Trust, as described in the Complaint.

18.     The "Stamatov Trust" means the Jane Ann Stamatov Family Insurance Trust, as described in the Complaint.

## INSTRUCTIONS

1.     If in responding to any Request, the responding parties claim any ambiguity in interpreting either the Request, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but the response shall set forth the language deemed ambiguous and the construction or interpretation used in responding.

3

4833-4855-0194.1

2.     Unless otherwise indicated, all Requests call for the production of documents for the period beginning on January 1, 2007 until the present.

3.     In accordance with the provisions of Fed. R. Civ. P. 34(b), documents, electronically stored information – including any information stored on personal computers, mobile phones, tablets or other mobile computing devices, laptops, cloud data storage, or any social media – and tangible things responsive to these Requests shall be produced as they are kept in the usual course of business, or should be organized and labeled to correspond to categories set forth in these Requests. When produced as kept in the ordinary course of business or as organized and labeled to correspond with the categories set forth in these Requests, the documents and tangible things shall be produced with the folders (or copies thereof) kept by the Person who had the documents in his, her, or its possession, custody or control so that Defendants will know who had the documents or things in his, her, or its possession, custody or control. Please produce documents in such a manner as will facilitate their identification with the particular request or category of requests to which they are responsive. File folders with table or labels identifying documents must be produced intact with the documents. Documents attached to each other should not be separated.

4.     Pursuant to Fed. R. Civ. P. 34(b)(2), electronically stored documents should be produced in native format, TIFF format, or a format to be agreed upon by the parties, and accompanied by a Concordance/Opticon or similar load file, with document level text files for the extracted text or OCR, and the following metadata fields, as applicable, should be produced: Beg Number, End Number, Beg Attach, End Attach, Custodian, File Path, E-mail Subject, Conversation Index, From, To, CC, BCC, Author, Date Sent, Time Sent, Date Received, Time Received, Date Modified, MD5 hash, File Size, and File Extension.

4

5.     All electronically stored documents shall be produced in a searchable format.

6.     Partial Production.  Whenever a document is not produced in full please state with particularity the reason(s) it is not being produced in full and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not produced and the reasons therefore.  If a deposition transcript or other document cannot be produced because it is proprietary or believed to be proprietary, please produce an invoice thereof or otherwise provide information sufficient for Defendants to obtain such transcript or other documents.

7.     Whenever a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

8.     To the extent information is maintained in both hard copy and magnetic or electronic form, Defendants request production in both forms.

9.     If a document is in a language other than English, produce both the original and any translation thereof.

10.     Duty to Produce Continues.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are intended to be continuing in nature so as to require

5

supplemental or amended responses or answers, or production of additional documents, if any additional information or documents are obtained in the future. Such supplemental or amended responses or answers or such production of additional documents shall be furnished within ten (10) days of the date on which any additional information or document is obtained.

11. Inability to Produce. If any or all of the documents identified herein are no longer in the possession, custody, or control of the responding party because of destruction, loss, or any other reason, then please provide the following information for each such Document:

i. A description of the content of that Document;

ii. The location of all copies of the Document;

iii. A description of the reason why that Document no longer remains in the responding party's possession, custody or control;

iv. The date of, and the identity of the Person responsible for, its destruction, loss, transfer, or other action by which the Document left the responding party's possession, custody or control.

## REQUEST FOR PRODUCTION

1. All documents or communications, including with third parties, concerning the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust.

2. All documents or communications, including with third parties, concerning the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, or the Stamatov Policy.

3. All documents or communications, including with third parties, concerning Your financing of the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, or the Stamatov Policy, as described in the Complaint.

6

4.     All documents or communications, including with third parties, concerning the Herrick Firm's representation of You with regard to the Bitter Policy, the Bitter Trust, the Collins Policy, the Collins Trust, the Acker Policy, the Acker Trust, the Coppock Policy, the Coppock Trust, the Stamatov Policy, or the Stamatov Trust.

5.     All documents or communications, including with third parties, concerning Defendants' representation of You with regard to Bitter Policy, the Bitter Trust, the Collins Policy, the Collins Trust, the Acker Policy, the Acker Trust, the Coppock Policy, the Coppock Trust, the Stamatov Policy, the Stamatov Trust, the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, or the Stamatov Action.

6.     All documents or communications, including with third parties, concerning Thompson Welch's representation of You with regard to the Bitter Policy, the Bitter Trust, the Collins Policy, the Collins Trust, the Acker Policy, the Acker Trust, the Coppock Policy, the Coppock Trust, the Stamatov Policy, the Stamatov Trust, the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, or the Stamatov Action.

7.     All documents or communications, including with third parties, concerning any other attorney's representation of You with regard to the Bitter Policy, the Bitter Trust, the Collins Policy, the Collins Trust, the Acker Policy, the Acker Trust, the Coppock Policy, the Coppock Trust, the Stamatov Policy, the Stamatov Trust, the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, the Stamatov Action, or any other of Your financing of life insurance policies.

8.     All documents or communications, including with third parties, concerning Hennefer Finley's representation of any trust or trustee with regard to the Bitter Policy, the Bitter Trust, the Collins Policy, the Collins Trust, the Acker Policy, the Acker Trust,

7

the Coppock Policy, the Coppock Trust, the Stamatov Policy, the Stamatov Trust, the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, or the Stamatov Action.

9.      All communications between You and the trustee(s) for the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust.

10.     All communications between You and E.E.H. Consulting concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, or the Stamatov Policy.

11.     All communications between You and Houchins, III concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, or the Stamatov Policy.

12.     All communications between You and Houchins, Jr. concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, or the Stamatov Policy.

13.     All communications between You and the Pacific Life Insurance Company concerning the Bitter Policy, the Collins Policy, or the Coppock Policy.

14.     All communications between You and the John Hancock Insurance Company concerning the Acker Policy.

15.     All communications between You and the PHL Variable Insurance Company concerning the Stamatov Policy.

16.     All documents, including but not limited to pleadings, motion papers, communications, and court decisions, concerning the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, or the Stamatov Action.

8

17.     Sufficient documents or communications to demonstrate any settlements or other resolutions (including arbitration or court decisions) of the Bitter Action, the Bitter Arbitration, the Acker Action, the Collins Action, the Coppock Action, or the Stamatov Action.

18.     Sufficient documents or communications to establish Your alleged damages related to Defendants' purported legal malpractice.

19.     Any other documents or communications that You intend to use at trial.

Dated: New York, New York
June 10, 2016

FOLEY & LARDNER LLP

By: _/s/ Douglas S. Heffer_
    Peter N. Wang (PW 9216)
    Douglas S. Heffer (DH 6082)
    Adam G. Pence (AG 8621)
    90 Park Avenue
    New York, New York 10016
    Tel: (212) 682-7474
    Fax: (212) 687-2329
    pwang@foley.com
    dheffer@foley.com
    apence@foley.com

    *Attorneys for Defendants*
    *Arent Fox LLP and Julius Rousseau, III*

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS was served by e-mail on this 10th day of June, 2016, upon counsel for Plaintiff as follows:

> Alan L. Frank, Esquire
> Alan L. Frank Law Associates, P.C.
> 135 Old York Road
> Jenkintown, PA 19046
> Phone: (215) 935-1000
> Fax: (215) 935-1110
> afrank@alflaw.net

*/s/ Douglas S. Heffer*
Douglas S. Heffer

4833-4855-0194.1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| Windsor Securities, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| Arent Fox LLP and Julius Rousseau, III | ) |
| *Defendant* | ) |

Civil Action No.  16-cv-01533 (GBD) (GWG)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Lauren Antonino, The Antonino Firm, Six Concourse Parkway, Suite 2920, Atlanta, Georgia 30328

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place:<br>REGENCY-BRENTANO, INC. Certified Court Reporters<br>13 Corporate Square - Suite 140, Atlanta, GA 30329 | Date and Time:<br><br>08/10/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  07/10/2017

CLERK OF COURT

OR _____

_____          _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendants Arent Fox LLP and Julius Rousseau, III _____ , who issues or requests this subpoena, are:
Peter N. Wang, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016, pwang@foley.com, (212) 338-3401

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT "B"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 16-cv-01533 (GBD) (GWG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Subject to the Definitions and Instructions below, You must produce the following documents pursuant to the Document Requests below (the "Requests").

## DEFINITIONS

1.      All definitions and rules of construction set forth in Local Rule 26.3 of the Civil Rules of this Court are incorporated herein.

2.      A "document" includes all written, printed, typed, computerized, recorded or graphic matter of any type or description, and in any form, however and by whomever prepared, produced, reproduced, disseminated or made, including without limitation notes, time records, correspondence, diary and calendar entries, e-mails, tape and video recordings, summaries, corporate policy statements, minutes, memoranda, drafts, agreements, contracts, analyses, opinions, studies, reports, telegrams, telecopies, notebooks, calendars, transcripts, routing slips, computer print-outs, invoices, charts, photographs, checks, financial records, brochures, pamphlets, press releases, advertisements, computer-downloaded materials, articles, trade or industry announcements, text messages, instant messages (including conversations via "chat" software), and translations, and all copies of any of the above containing any comments, modifications, revisions, alterations or notations, and all metadata related thereto. For the avoidance of doubt, the term "document" shall have the broadest meaning accorded by Fed. R. Civ. P. 34 and includes, but is not limited to, all of the items defined in Fed. R. Evid. 1001.

3.      "Communication" means any transmission of information from one person or entity to another, including without limitation any of the following: (a) any letter, memorandum, or other document; (b) any electronic mail message; (c) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or

informal; and (d) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

4.    A "person" means any natural person or any business, legal, or governmental entity or association.

5.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.    "And" and "or" should be read inclusively, as "and/or."

7.    "Any," "each" and "all" should be read inclusively, to mean any, each, and all.

8.    References to the singular shall include the plural and references to the plural shall include the singular.

9.    "Third Person" means any Person other than Plaintiff or Defendant.

10.    "Thing" or "Things" means and includes, in the broadest sense allowed under FRCP 34(a)(1)(B), any tangible item other than a Document.

11.    The term "discussed" means communicated about, whether orally or in writing.

12.    The terms in the present tense include the past and future tenses. Terms in the past tense include the present and future tenses. Terms in the future tense include the present and past tenses.

13.    The "Complaint" means the complaint filed on February 29, 2016 in the above-captioned action (Dkt. No. 1), a copy of which, without exhibits, is attached as Exhibit 1.

14.    Capitalized terms used herein, but not defined, have the meanings ascribed to them in the Complaint.

15.     The "Answer" means the Answer and Counterclaims filed on May 6, 2016 in the above-captioned action (Dkt. No. 19).

16.     "You" means Lauren Antonino, Esquire, and any agent, attorney, employee, representative, and any other person or entity in privity with You.

17.     "Windsor" means Windsor Securities, LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Windsor Securities, LLC.

18.     The term "third party" refers to any individual or entity that is not a party to this lawsuit.

19.     "Prusky" means Steven Prusky, Principal of Windsor Securities, LLC.

20.     "E.E.H. Consulting" means E.E.H. Consulting, Inc, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by E.E.H. Consulting, Inc.

21.     "Houchins, III" means Eugene E. Houchins, III, the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, III.

22.     "Houchins, Jr." means Eugene E. Houchins, Jr., the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, Jr.

23.     "Hennefer Finley" means Hennefer Finley & Wood LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney,

3

employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Hennefer Finley & Wood LLP.

24.     "Wood" means Joseph Wood, Esquire, of Hennefer Finley, and any agent, attorney, employee, representative, and any other person or entity in privity with Joseph Wood.

25.     "Thompson Welch" means Thompson Welch Soroko & Gilbert LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Thompson Welch Soroko & Gilbert LLP.

26.     "Judd" means Darin Judd, Esquire, of Thompson Welch, and any agent, attorney, employee, representative, and any other person or entity in privity with Darin Judd.

27.     "Antonino Firm" means The Antonino Firm LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by The Antonino Firm LLC.

28.     The "Frank Firm" means Alan L. Frank Law Associates, P.C., and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Alan L. Frank Law Associates, P.C.

29.     "Frank" means Alan L. Frank, Esquire, of the Frank Firm, and any agent, attorney, employee, representative, and any other person or entity in privity with Alan L. Frank.

30.     The "Bitter Trust" means the John L. Bitter Irrevocable Life Insurance Trust, as described in the Complaint.

4

31.     The "Acker Trust" means the Joe E. Acker Family Trust, as described in the Complaint.

32.     The "Collins Trust" means the Erwin A. Collins Family Life Insurance Trust, as described in the Complaint.

33.     The "Coppock Trust" means the Robert S. Coppock Irrevocable Life Insurance Trust, as described in the Complaint.

34.     The "Stamatov Trust" means the Jane Ann Stamatov Family Insurance Trust, as described in the Complaint.

35.     The "Bitter Policy" means the life insurance policy for John L. Bitter, as described in the Complaint.

36.     The "Acker Policy" means the life insurance policy for Joe E. Acker, as described in the Complaint.

37.     The "Collins Policy" means the life insurance policy for Erwin A. Collins, as described in the Complaint.

38.     The "Coppock Policy" means the life insurance policy for Robert S. Coppock, as described in the Complaint.

39.     The "Stamatov Policy" means the life insurance policy for Jane Ann Stamatov, as described in the Complaint.

## INSTRUCTIONS

1.     If in responding to any Request, the responding parties claim any ambiguity in interpreting either the Request, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but the response shall set forth the language deemed ambiguous and the construction or interpretation used in responding.

5

2.     Unless otherwise indicated, all Requests call for the production of documents for the period beginning on January 1, 2007 until the present.

3.     In accordance with the provisions of Fed. R. Civ. P. 34(b), documents, electronically stored information – including any information stored on personal computers, mobile phones, tablets or other mobile computing devices, laptops, cloud data storage, or any social media – and tangible things responsive to these Requests shall be produced as they are kept in the usual course of business, or should be organized and labeled to correspond to categories set forth in these Requests. When produced as kept in the ordinary course of business or as organized and labeled to correspond with the categories set forth in these Requests, the documents and tangible things shall be produced with the folders (or copies thereof) kept by the Person who had the documents in his, her, or its possession, custody or control so that Defendants will know who had the documents or things in his, her, or its possession, custody or control. Please produce documents in such a manner as will facilitate their identification with the particular request or category of requests to which they are responsive. File folders with table or labels identifying documents must be produced intact with the documents. Documents attached to each other should not be separated.

4.     Pursuant to Fed. R. Civ. P. 34(b)(2), electronically stored documents should be produced in native format, TIFF format, or a format to be agreed upon by the parties, and accompanied by Concordance and Opticon load files with document level text files for the extracted text or OCR, and the following metadata fields, as applicable, should be produced: File Name, Record Type, Beg Number, End Number, Beg Attach, End Attach, Custodian, File Path, E-mail Subject, Conversation Index, From, To, CC, BCC, Author, Date Sent, Time Sent, Date Received, Time Received, Date Modified, MD5 hash, File Size, and File Extension.

6

5.      All electronically stored documents shall be produced in a searchable format.

6.      Partial Production. Whenever a document is not produced in full please state with particularity the reason(s) it is not being produced in full and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not produced and the reasons therefore. If a deposition transcript or other document cannot be produced because it is proprietary or believed to be proprietary, please produce an invoice thereof or otherwise provide information sufficient for Defendants to obtain such transcript or other documents.

7.      Whenever a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

8.      To the extent information is maintained in both hard copy and magnetic or electronic form, Defendants request production in both forms.

9.      If a document is in a language other than English, produce both the original and any translation thereof.

10.     Duty to Produce Continues. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are intended to be continuing in nature so as to require

7

supplemental or amended responses or answers, or production of additional documents, if any additional information or documents are obtained in the future. Such supplemental or amended responses or answers or such production of additional documents shall be furnished within ten (10) days of the date on which any additional information or document is obtained.

11.    Inability to Produce. If any or all of the documents identified herein are no longer in the possession, custody, or control of the responding party because of destruction, loss, or any other reason, then please provide the following information for each such Document:

i.     A description of the content of that Document;

ii.    The location of all copies of the Document;

iii.   A description of the reason why that Document no longer remains in the responding party's possession, custody or control;

iv.    The date of, and the identity of the Person responsible for, its destruction, loss, transfer, or other action by which the Document left the responding party's possession, custody or control.

## REQUEST FOR PRODUCTION

1.    All documents or communications, including with third parties, concerning the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

2.    All documents or communications, including with third parties, concerning the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, or the Stamatov Policy, or any related litigation, as described in the Complaint.

3.    All documents or communications, including with third parties, concerning Your representation of Windsor with regard to the Bitter Policy, the Collins Policy,

8

the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, as described in the Complaint.

4.  All documents or communications, including with third parties, concerning the Antonino Firm's representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, as described in the Complaint.

5.  All documents or communications, including with third parties, concerning the Defendants' representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

6.  All documents or communications, including with third parties, concerning the Herrick Firm's representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

7.  All communications between You and the trustee(s) for the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust.

8.  All communications between or among You and John L. Bitter, Joe E. Acker, Erwin A. Collins, Robert S. Coppock, or Jane Ann Stamatov, as well as all communications between or among You and their heirs, agents, attorneys, employees, representatives, or any other person or entity in privity with them.

9.      All communications between You and Windsor concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

10.     All communications between You and Prusky concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11.     All communications between You and Houchins, III concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

12.     All communications between You and Houchins, Jr. concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

13.     All communications between You and Hennefer Finley concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

14.     All communications between You and Wood concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the

Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

15.     All communications between You and Thompson Welch concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

16.     All communications between You and Judd concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

17.     All communications between You and the Frank Firm concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

18.     All communications between You and Frank concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

19.     All communications between You and E.E.H. Consulting concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11

20.     All communications between You and the Pacific Life Insurance Company concerning the Bitter Policy, the Collins Policy, or the Coppock Policy.

21.     All communications between You and the John Hancock Life Insurance Company concerning the Acker Policy.

22.     All communications between You and the PHL Variable Life Insurance Company concerning the Stamatov Policy.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Windsor Securities, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| Arent Fox LLP and Julius Rousseau, III | ) |
| *Defendant* | ) |

Civil Action No.  16-cv-01533 (GBD) (GWG)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Darin Judd, Thompson Welch Soroko & Gilbert, 3950 Civic Center Dr., Suite 300, San Rafael, California 94903

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Foley & Lardner LLP, 555 California Street, Suite 1700, San Francisco, California 94104 | Date and Time: 08/10/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/10/2017

CLERK OF COURT

OR  _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendants Arent Fox LLP and Julius Rousseau, III _____ , who issues or requests this subpoena, are:
Peter N. Wang, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016, pwang@foley.com, (212) 338-3401

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT "C"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 16-cv-01533 (GBD) (GWG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

◻ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

◻ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### SCHEDULE A

Subject to the Definitions and Instructions below, You must produce the following documents pursuant to the Document Requests below (the "Requests").

### DEFINITIONS

1.     All definitions and rules of construction set forth in Local Rule 26.3 of the Civil Rules of this Court are incorporated herein.

2.     A "document" includes all written, printed, typed, computerized, recorded or graphic matter of any type or description, and in any form, however and by whomever prepared, produced, reproduced, disseminated or made, including without limitation notes, time records, correspondence, diary and calendar entries, e-mails, tape and video recordings, summaries, corporate policy statements, minutes, memoranda, drafts, agreements, contracts, analyses, opinions, studies, reports, telegrams, telecopies, notebooks, calendars, transcripts, routing slips, computer print-outs, invoices, charts, photographs, checks, financial records, brochures, pamphlets, press releases, advertisements, computer-downloaded materials, articles, trade or industry announcements, text messages, instant messages (including conversations via "chat" software), and translations, and all copies of any of the above containing any comments, modifications, revisions, alterations or notations, and all metadata related thereto. For the avoidance of doubt, the term "document" shall have the broadest meaning accorded by Fed. R. Civ. P. 34 and includes, but is not limited to, all of the items defined in Fed. R. Evid. 1001.

3.     "Communication" means any transmission of information from one person or entity to another, including without limitation any of the following: (a) any letter, memorandum, or other document; (b) any electronic mail message; (c) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or

informal; and (d) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

4.    A "person" means any natural person or any business, legal, or governmental entity or association.

5.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.    "And" and "or" should be read inclusively, as "and/or."

7.    "Any," "each" and "all" should be read inclusively, to mean any, each, and all.

8.    References to the singular shall include the plural and references to the plural shall include the singular.

9.    "Third Person" means any Person other than Plaintiff or Defendant.

10.    "Thing" or "Things" means and includes, in the broadest sense allowed under FRCP 34(a)(1)(B), any tangible item other than a Document.

11.    The term "discussed" means communicated about, whether orally or in writing.

12.    The terms in the present tense include the past and future tenses. Terms in the past tense include the present and future tenses. Terms in the future tense include the present and past tenses.

13.    The "Complaint" means the complaint filed on February 29, 2016 in the above-captioned action (Dkt. No. 1), a copy of which, without exhibits, is attached as Exhibit 1.

14.    Capitalized terms used herein, but not defined, have the meanings ascribed to them in the Complaint.

2

15.     The "Answer" means the Answer and Counterclaims filed on May 6, 2016 in the above-captioned action (Dkt. No. 19).

16.     "You" means Darin Judd, Esquire, and any agent, attorney, employee, representative, and any other person or entity in privity with You.

17.     "Windsor" means Windsor Securities, LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Windsor Securities, LLC.

18.     The term "third party" refers to any individual or entity that is not a party to this lawsuit.

19.     "Prusky" means Steven Prusky, Principal of Windsor Securities, LLC.

20.     "E.E.H. Consulting" means E.E.H. Consulting, Inc, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by E.E.H. Consulting, Inc.

21.     "Houchins, III" means Eugene E. Houchins, III, the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, III.

22.     "Houchins, Jr." means Eugene E. Houchins, Jr., the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, Jr.

23.     "Hennefer Finley" means Hennefer Finley & Wood LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney,

3

employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Hennefer Finley & Wood LLP.

24.  "Wood" means Joseph Wood, Esquire, of Hennefer Finley, and any agent, attorney, employee, representative, and any other person or entity in privity with Joseph Wood.

25.  "Thompson Welch" means Thompson Welch Soroko & Gilbert LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Thompson Welch Soroko & Gilbert LLP.

26.  "Antonino Firm" means The Antonino Firm LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by The Antonino Firm LLC.

27.  "Antonino" means Lauren Antonino, Esquire, of the Antonino Firm, and any agent, attorney, employee, representative, and any other person or entity in privity with Lauren Antonino.

28.  The "Frank Firm" means Alan L. Frank Law Associates, P.C., and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Alan L. Frank Law Associates, P.C.

29.  "Frank" means Alan L. Frank, Esquire, of the Frank Firm, and any agent, attorney, employee, representative, and any other person or entity in privity with Alan L. Frank.

30.  The "Bitter Trust" means the John L. Bitter Irrevocable Life Insurance Trust, as described in the Complaint.

4

31.     The "Acker Trust" means the Joe E. Acker Family Trust, as described in the Complaint.

32.     The "Collins Trust" means the Erwin A. Collins Family Life Insurance Trust, as described in the Complaint.

33.     The "Coppock Trust" means the Robert S. Coppock Irrevocable Life Insurance Trust, as described in the Complaint.

34.     The "Stamatov Trust" means the Jane Ann Stamatov Family Insurance Trust, as described in the Complaint.

35.     The "Bitter Policy" means the life insurance policy for John L. Bitter, as described in the Complaint.

36.     The "Acker Policy" means the life insurance policy for Joe E. Acker, as described in the Complaint.

37.     The "Collins Policy" means the life insurance policy for Erwin A. Collins, as described in the Complaint.

38.     The "Coppock Policy" means the life insurance policy for Robert S. Coppock, as described in the Complaint.

39.     The "Stamatov Policy" means the life insurance policy for Jane Ann Stamatov, as described in the Complaint.

## **INSTRUCTIONS**

1.      If in responding to any Request, the responding parties claim any ambiguity in interpreting either the Request, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but the response shall set forth the language deemed ambiguous and the construction or interpretation used in responding.

5

2. Unless otherwise indicated, all Requests call for the production of documents for the period beginning on January 1, 2007 until the present.

3. In accordance with the provisions of Fed. R. Civ. P. 34(b), documents, electronically stored information – including any information stored on personal computers, mobile phones, tablets or other mobile computing devices, laptops, cloud data storage, or any social media – and tangible things responsive to these Requests shall be produced as they are kept in the usual course of business, or should be organized and labeled to correspond to categories set forth in these Requests. When produced as kept in the ordinary course of business or as organized and labeled to correspond with the categories set forth in these Requests, the documents and tangible things shall be produced with the folders (or copies thereof) kept by the Person who had the documents in his, her, or its possession, custody or control so that Defendants will know who had the documents or things in his, her, or its possession, custody or control. Please produce documents in such a manner as will facilitate their identification with the particular request or category of requests to which they are responsive. File folders with table or labels identifying documents must be produced intact with the documents. Documents attached to each other should not be separated.

4. Pursuant to Fed. R. Civ. P. 34(b)(2), electronically stored documents should be produced in native format, TIFF format, or a format to be agreed upon by the parties, and accompanied by Concordance and Opticon load files with document level text files for the extracted text or OCR, and the following metadata fields, as applicable, should be produced: File Name, Record Type, Beg Number, End Number, Beg Attach, End Attach, Custodian, File Path, E-mail Subject, Conversation Index, From, To, CC, BCC, Author, Date Sent, Time Sent, Date Received, Time Received, Date Modified, MD5 hash, File Size, and File Extension.

6

5.      All electronically stored documents shall be produced in a searchable format.

6.      Partial Production.  Whenever a document is not produced in full please state with particularity the reason(s) it is not being produced in full and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not produced and the reasons therefore.  If a deposition transcript or other document cannot be produced because it is proprietary or believed to be proprietary, please produce an invoice thereof or otherwise provide information sufficient for Defendants to obtain such transcript or other documents.

7.      Whenever a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

8.      To the extent information is maintained in both hard copy and magnetic or electronic form, Defendants request production in both forms.

9.      If a document is in a language other than English, produce both the original and any translation thereof.

10.      Duty to Produce Continues.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are intended to be continuing in nature so as to require

7

supplemental or amended responses or answers, or production of additional documents, if any additional information or documents are obtained in the future. Such supplemental or amended responses or answers or such production of additional documents shall be furnished within ten (10) days of the date on which any additional information or document is obtained.

        11.    Inability to Produce. If any or all of the documents identified herein are no longer in the possession, custody, or control of the responding party because of destruction, loss, or any other reason, then please provide the following information for each such Document:

        i.    A description of the content of that Document;

        ii.    The location of all copies of the Document;

        iii.    A description of the reason why that Document no longer remains in the responding party's possession, custody or control;

        iv.    The date of, and the identity of the Person responsible for, its destruction, loss, transfer, or other action by which the Document left the responding party's possession, custody or control.

## REQUEST FOR PRODUCTION

        1.    All documents or communications, including with third parties, concerning the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

        2.    All documents or communications, including with third parties, concerning the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, or the Stamatov Policy, or any related litigation, as described in the Complaint.

        3.    All documents or communications, including with third parties, concerning Your representation of Windsor with regard to the Bitter Policy, the Collins Policy,

the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, as described in the Complaint.

4.     All documents or communications, including with third parties, concerning Thompson Welch's representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, as described in the Complaint.

5.     All documents or communications, including with third parties, concerning the Defendants' representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

6.     All documents or communications, including with third parties, concerning the Herrick Firm's representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

7.     All communications between You and the trustee(s) for the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust.

8.     All communications between or among You and John L. Bitter, Joe E. Acker, Erwin A. Collins, Robert S. Coppock, or Jane Ann Stamatov, as well as all communications between or among You and their heirs, agents, attorneys, employees, representatives, or any other person or entity in privity with them.

9

9.      All communications between You and Windsor concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

10.     All communications between You and Prusky concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11.     All communications between You and Houchins, III concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

12.     All communications between You and Houchins, Jr. concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

13.     All communications between You and Wood concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

14.     All communications between You and Hennefer Finley concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker

10

Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

15.    All communications between You and the Antonino Firm concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

16.    All communications between You and Antonino concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

17.    All communications between You and the Frank Firm concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

18.    All communications between You and Frank concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

19.    All communications between You and E.E.H. Consulting concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11

20.     All communications between You and the Pacific Life Insurance Company concerning the Bitter Policy, the Collins Policy, or the Coppock Policy.

21.     All communications between You and the John Hancock Life Insurance Company concerning the Acker Policy.

22.     All communications between You and the PHL Variable Life Insurance Company concerning the Stamatov Policy.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Windsor Securities, LLC | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   16-cv-01533 (GBD) (GWG) |
| Arent Fox LLP and Julius Rousseau, III | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Thompson Welch Soroko & Gilbert, 3950 Civic Center Dr., Suite 300, San Rafael, California 94903

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Foley & Lardner LLP, 555 California Street, Suite 1700, San Francisco, California 94104 | Date and Time: 08/10/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/10/2017

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendants Arent Fox LLP and Julius Rousseau, III _____ , who issues or requests this subpoena, are:
Peter N. Wang, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016, pwang@foley.com, (212) 338-3401

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT "D"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 16-cv-01533 (GBD) (GWG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                        *Server's signature*

                                                   _____
                                                        *Printed name and title*

                                                   _____
                                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Subject to the Definitions and Instructions below, You must produce the following documents pursuant to the Document Requests below (the "Requests").

## DEFINITIONS

1.     All definitions and rules of construction set forth in Local Rule 26.3 of the Civil Rules of this Court are incorporated herein.

2.     A "document" includes all written, printed, typed, computerized, recorded or graphic matter of any type or description, and in any form, however and by whomever prepared, produced, reproduced, disseminated or made, including without limitation notes, time records, correspondence, diary and calendar entries, e-mails, tape and video recordings, summaries, corporate policy statements, minutes, memoranda, drafts, agreements, contracts, analyses, opinions, studies, reports, telegrams, telecopies, notebooks, calendars, transcripts, routing slips, computer print-outs, invoices, charts, photographs, checks, financial records, brochures, pamphlets, press releases, advertisements, computer-downloaded materials, articles, trade or industry announcements, text messages, instant messages (including conversations via "chat" software), and translations, and all copies of any of the above containing any comments, modifications, revisions, alterations or notations, and all metadata related thereto. For the avoidance of doubt, the term "document" shall have the broadest meaning accorded by Fed. R. Civ. P. 34 and includes, but is not limited to, all of the items defined in Fed. R. Evid. 1001.

3.     "Communication" means any transmission of information from one person or entity to another, including without limitation any of the following: (a) any letter, memorandum, or other document; (b) any electronic mail message; (c) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or

informal; and (d) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

4. A "person" means any natural person or any business, legal, or governmental entity or association.

5. "Concerning" means relating to, referring to, describing, evidencing or constituting.

6. "And" and "or" should be read inclusively, as "and/or."

7. "Any," "each" and "all" should be read inclusively, to mean any, each, and all.

8. References to the singular shall include the plural and references to the plural shall include the singular.

9. "Third Person" means any Person other than Plaintiff or Defendant.

10. "Thing" or "Things" means and includes, in the broadest sense allowed under FRCP 34(a)(1)(B), any tangible item other than a Document.

11. The term "discussed" means communicated about, whether orally or in writing.

12. The terms in the present tense include the past and future tenses. Terms in the past tense include the present and future tenses. Terms in the future tense include the present and past tenses.

13. The "Complaint" means the complaint filed on February 29, 2016 in the above-captioned action (Dkt. No. 1), a copy of which, without exhibits, is attached as Exhibit 1.

14. Capitalized terms used herein, but not defined, have the meanings ascribed to them in the Complaint.

2

15.   The "Answer" means the Answer and Counterclaims filed on May 6, 2016 in the above-captioned action (Dkt. No. 19).

16.   "You" or "Thompson Welch" means Thompson Welch Soroko & Gilbert LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Thompson Welch Soroko & Gilbert LLP.

17.   "Windsor" means Windsor Securities, LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Windsor Securities, LLC.

18.   The term "third party" refers to any individual or entity that is not a party to this lawsuit.

19.   "Prusky" means Steven Prusky, Principal of Windsor Securities, LLC.

20.   "E.E.H. Consulting" means E.E.H. Consulting, Inc, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by E.E.H. Consulting, Inc.

21.   "Houchins, III" means Eugene E. Houchins, III, the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, III.

4815-6355-3611.1

22.    "Houchins, Jr." means Eugene E. Houchins, Jr., the individual identified in the Complaint, and any agent, attorney, employee, representative, and any other person or entity in privity with Eugene E. Houchins, Jr.

23.    "Hennefer Finley" means Hennefer Finley & Wood LLP, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Hennefer Finley & Wood LLP.

24.    "Wood" means Joseph Wood, Esquire, of Hennefer Finley, and any agent, attorney, employee, representative, and any other person or entity in privity with Joseph Wood.

25.    "Judd" means Darin Judd, Esquire, of Thompson Welch, and any agent, attorney, employee, representative, and any other person or entity in privity with Darin Judd.

26.    "Antonino Firm" means The Antonino Firm LLC, and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by The Antonino Firm LLC.

27.    "Antonino" means Lauren Antonino, Esquire, of the Antonino Firm, and any agent, attorney, employee, representative, and any other person or entity in privity with Lauren Antonino.

28.    The "Frank Firm" means Alan L. Frank Law Associates, P.C., and any parent, affiliate, subsidiary (whether owned in whole or in part), agent, officer, director, attorney, employee, servant, representative, shareholder, and any predecessor company, and any other person or entity in privity with or controlled by Alan L. Frank Law Associates, P.C.

29.     "Frank" means Alan L. Frank, Esquire, of the Frank Firm, and any agent, attorney, employee, representative, and any other person or entity in privity with Alan L. Frank.

30.     The "Bitter Trust" means the John L. Bitter Irrevocable Life Insurance Trust, as described in the Complaint.

31.     The "Acker Trust" means the Joe E. Acker Family Trust, as described in the Complaint.

32.     The "Collins Trust" means the Erwin A. Collins Family Life Insurance Trust, as described in the Complaint.

33.     The "Coppock Trust" means the Robert S. Coppock Irrevocable Life Insurance Trust, as described in the Complaint.

34.     The "Stamatov Trust" means the Jane Ann Stamatov Family Insurance Trust, as described in the Complaint.

35.     The "Bitter Policy" means the life insurance policy for John L. Bitter, as described in the Complaint.

36.     The "Acker Policy" means the life insurance policy for Joe E. Acker, as described in the Complaint.

37.     The "Collins Policy" means the life insurance policy for Erwin A. Collins, as described in the Complaint.

38.     The "Coppock Policy" means the life insurance policy for Robert S. Coppock, as described in the Complaint.

39.     The "Stamatov Policy" means the life insurance policy for Jane Ann Stamatov, as described in the Complaint.

5

## INSTRUCTIONS

1.      If in responding to any Request, the responding parties claim any ambiguity in interpreting either the Request, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but the response shall set forth the language deemed ambiguous and the construction or interpretation used in responding.

2.      Unless otherwise indicated, all Requests call for the production of documents for the period beginning on January 1, 2007 until the present.

3.      In accordance with the provisions of Fed. R. Civ. P. 34(b), documents, electronically stored information – including any information stored on personal computers, mobile phones, tablets or other mobile computing devices, laptops, cloud data storage, or any social media – and tangible things responsive to these Requests shall be produced as they are kept in the usual course of business, or should be organized and labeled to correspond to categories set forth in these Requests.  When produced as kept in the ordinary course of business or as organized and labeled to correspond with the categories set forth in these Requests, the documents and tangible things shall be produced with the folders (or copies thereof) kept by the Person who had the documents in his, her, or its possession, custody or control so that Defendants will know who had the documents or things in his, her, or its possession, custody or control.  Please produce documents in such a manner as will facilitate their identification with the particular request or category of requests to which they are responsive.  File folders with table or labels identifying documents must be produced intact with the documents.  Documents attached to each other should not be separated.

4.      Pursuant to Fed. R. Civ. 34(b)(2), electronically stored documents should be produced in native format, TIFF format, or a format to be agreed upon by the parties,

6

and accompanied by Concordance and Opticon load files with document level text files for the extracted text or OCR, and the following metadata fields, as applicable, should be produced: File Name, Record Type, Beg Number, End Number, Beg Attach, End Attach, Custodian, File Path, E-mail Subject, Conversation Index, From, To, CC, BCC, Author, Date Sent, Time Sent, Date Received, Time Received, Date Modified, MD5 hash, File Size, and File Extension.

5.      All electronically stored documents shall be produced in a searchable format.

6.      Partial Production.  Whenever a document is not produced in full please state with particularity the reason(s) it is not being produced in full and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not produced and the reasons therefore.  If a deposition transcript or other document cannot be produced because it is proprietary or believed to be proprietary, please produce an invoice thereof or otherwise provide information sufficient for Defendants to obtain such transcript or other documents.

7.      Whenever a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

7

8.      To the extent information is maintained in both hard copy and magnetic or electronic form, Defendants request production in both forms.

9.      If a document is in a language other than English, produce both the original and any translation thereof.

10.     Duty to Produce Continues.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are intended to be continuing in nature so as to require supplemental or amended responses or answers, or production of additional documents, if any additional information or documents are obtained in the future.  Such supplemental or amended responses or answers or such production of additional documents shall be furnished within ten (10) days of the date on which any additional information or document is obtained.

11.     Inability to Produce.  If any or all of the documents identified herein are no longer in the possession, custody, or control of the responding party because of destruction, loss, or any other reason, then please provide the following information for each such Document:

i.      A description of the content of that Document;

ii.     The location of all copies of the Document;

iii.    A description of the reason why that Document no longer remains in the responding party's possession, custody or control;

iv.     The date of, and the identity of the Person responsible for, its destruction, loss, transfer, or other action by which the Document left the responding party's possession, custody or control.

## REQUEST FOR PRODUCTION

1.      All documents or communications, including with third parties, concerning the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

8

2.    All documents or communications, including with third parties, concerning the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, or the Stamatov Policy, or any related litigation, as described in the Complaint.

3.    All documents or communications, including with third parties, concerning Your representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, as described in the Complaint.

4.    All documents or communications, including with third parties, concerning the Defendants' representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

5.    All documents or communications, including with third parties, concerning the Herrick Firm's representation of Windsor with regard to the Bitter Policy, the Collins Policy, the Acker Policy, the Coppock Policy, the Stamatov Policy, the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust, or any related litigation, as described in the Complaint.

6.    All communications between You and the trustee(s) for the Bitter Trust, the Collins Trust, the Acker Trust, the Coppock Trust, or the Stamatov Trust.

7.    All communications between or among You and John L. Bitter, Joe E. Acker, Erwin A. Collins, Robert S. Coppock, or Jane Ann Stamatov, as well as all communications between or among You and their heirs, agents, attorneys, employees, representatives, or any other person or entity in privity with them.

9

8.      All communications between You and Windsor concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

9.      All communications between You and Prusky concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

10.     All communications between You and Houchins, III concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11.     All communications between You and Houchins, Jr. concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

12.     All communications between You and Hennefer Finley concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

13.     All communications between You and Wood concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the

10

Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

14.   All communications between You and the Antonino Firm concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

15.   All communications between You and Antonino concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

16.   All communications between You and the Frank Firm concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

17.   All communications between You and Frank concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

18.   All communications between You and E.E.H. Consulting concerning the Bitter Trust, the Bitter Policy, the Collins Trust, the Collins Policy, the Acker Trust, the Acker Policy, the Coppock Trust, the Coppock Policy, the Stamatov Trust, the Stamatov Policy, or any related litigation, including this action.

11

19.     All communications between You and the Pacific Life Insurance Company concerning the Bitter Policy, the Collins Policy, or the Coppock Policy.

20.     All communications between You and the John Hancock Life Insurance Company concerning the Acker Policy.

21.     All communications between You and the PHL Variable Life Insurance Company concerning the Stamatov Policy.

4815-6355-3611.1

ALAN L. FRANK •*•◦
KYLE M. KULZER*•
SAMANTHA A. MILLROOD*•
ALEXANDER J. PALAMARCHUK*
CHRISTOPHER BERNARD*•¶
EVAN L. FRANK *•♪△
CHRISTOPHER R. KING*•
SUSAN E. PLINER*•
ROBERT E. BROOKMAN*•◦
DAVID M. D'ORLANDO *•
ROBERT E. GORDON *•△
SEAN A. MELUNEY *‡
JORDAN E. FRANK *•

PARALEGALS
DEBRA E. MCGUCKIN
DEB A. WILK
DAWN M. WELSH
LISBETH LOZADA

• Certified by the NJ Supreme Court
   as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
∞ MEMBER NY BAR
♪ MEMBER FL BAR
‡ MEMBER DE BAR
¶ MEMBER CA BAR
△ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
## Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043
(856) 321-1120
FAX NO. (856) 321-1233

CENTER CITY PHILADELPHIA OFFICE

1600 MARKET STREET
SUITE 2600
PHILADELPHIA, PA 19103
(215) 496-9661
FAX NO. (215) 496-9664

DELAWARE OFFICE

ALAN L. FRANK LAW ASSOCIATES, P.A. (DE)
521 N. WEST STREET
WILMINGTON, DE 19801
(302) 502-2799

OF COUNSEL
RICHARD H. ELLIOTT •

E-MAIL ADDRESS:
afrank@alflaw.net

July 11, 2016

## VIA UPS OVERNIGHT DELIVERY & E-MAIL

Peter N. Wang, Esquire (pwang@foley.com)
Douglas Heffer, Esquire (dheffer@foley.com)
Adam Gregory Pence, Esquire (apence@foley.com)
FOLEY & LARDNER, LLP
90 Park Avenue
New York, NY 10016-1314

> RE: *Windsor Securities LLC v. Arent Fox, LLP and Julius Rousseau, III, Esquire, Case No. 16-cv-1533-GBD*

Dear Counsel:

Enclosed please find the following:

1. Plaintiff's Response to Defendants' First Request For Production of Documents with disc contained bates stamped documents PLAINTIFF 000001-019071 and voice mails (which could not be bates stamped). The disc will be sent via UPS only as it is too voluminous to be e-mailed;

2. Privilege Log;

3. Plaintiff's Response to Defendants' First Set of Interrogatories with attachments. Please be advised that Plaintiff's Responses to Defendants' First Set of Interrogatories with attachments thereto shall serve as a formal supplement to Plaintiff's Initial Disclosures; and

4. Verification.

# EXHIBIT "E"

*Please visit us at www.alflaw.net*

Peter N. Wang, Esquire
Douglas Heffer, Esquire
Adam Gregory Pence, Esquire
July 11, 2016
Page  - 2-

Very truly yours,

ALAN L. FRANK

ALF/dem
Enclosure
cc:      Samantha Millrood, Esquire (w/out enclosures)



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
212.338.3418
dheffer@foley.com EMAIL

CLIENT/MATTER NUMBER
078206-0109

August 24, 2016

**Via E-Mail**

Alan L. Frank, Esquire
Samantha Millrood, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
Phone: (215) 935-1000
Fax: (215) 935-1110
afrank@alflaw.net

Re:   *Windsor Securities, LLC v. Arent Fox, et al.,*
        Case No. 16-cv-01533 (GBD)

Dear Alan:

Enclosed please find Defendants' second production of documents, Bates numbered AF0007808 - AF0018443. Defendants reserve all rights with regard to these documents and with regard to their right to supplement all disclosures and productions in the future.

Sincerely,
*/s/ Douglas S. Heffer*
Douglas S. Heffer

Encl.

DSH:agp

# EXHIBIT "F"

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY

TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.

4825-0056-9143.1

ALAN L. FRANK ●*+□
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+
ALEXANDER J. PALAMARCHUK*
CHRISTOPHER BERNARD*+¶
EVAN L. FRANK *+♫♪
CHRISTOPHER R. KING*+
SUSAN B. PLINER*+
ROBERT E. BROOKMAN*+□
ROBERT E. GORDON *+♪
SEAN A. MELUNEY *‡
JORDAN E. FRANK *+
JACLYN H. FRANK *+

PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH
LISBETH LOZADA

● Certified by the NJ Supreme Court
  as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
□ MEMBER NY BAR
♫ MEMBER FL BAR
‡ MEMBER DE BAR
¶ MEMBER CA BAR
♪ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
## Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043
(856) 321-1120
FAX NO. (856) 321-1233

CENTER CITY PHILADELPHIA OFFICE

1600 MARKET STREET
SUITE 2500
PHILADELPHIA, PA 19103
(215) 496-9661
FAX NO. (215) 496-9664

DELAWARE OFFICE

ALAN L. FRANK LAW ASSOCIATES, P.A. (DE)
521 N. WEST STREET
WILMINGTON, DE 19801
(302) 502-2799

OF COUNSEL
RICHARD H. ELLIOTT *

E-MAIL ADDRESS:
afrank@alflaw.net

December 29, 2016

**VIA E-MAIL AND OVERNIGHT DELIVERY**
Douglas Heffer, Esquire
FOLEY & LARDNER, LLP
90 Park Avenue
New York, NY 10016-1314

  RE: *Windsor Securities LLC v. Arent Fox, LLP and Julius Rousseau, III, Esquire,*
    *Case No. 16-cv-1533-GBD*

Dear Doug:

  Please find enclosed herein two thumb drives containing documents produced to us by Darin Judd, Esq. These documents have been converted to TIFF and bate stamped JUDD000001 through JUDD164721. Additionally, the thumb drives contain the native documents in the exact format in which Mr. Judd produced the documents to Windsor Securities, LLC.

  At this time, I would also like to schedule a conference call in the first week of January to start scheduling the various depositions that need to be taken. I am available on January 3rd and 4th to discuss. Let me know if you available on either day and, if so, what time you can speak with me.

  If you have any questions or concerns, please let me know.

       Best regards,

       ALAN L. FRANK

ALF/SM
Enclosure
cc: Sean A. Meluney, Esq. (via Email)
  Samantha A. Millrood, Esq. (via e-mail)
  Adam Gregory Pence, Esquire (via e-mail)
  Peter N. Wang, Esquire (via e-mail)

*Please visit us at www.alflaw.net*

# EXHIBIT "G"