Peter N. Wang
Douglas S. Heffer
Adam G. Pence
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINDSOR SECURITIES, LLC,<br><br>       Plaintiff,<br><br>  -against-<br><br>ARENT FOX, LLP and JULIUS ROUSSEAU, III,<br><br>       Defendants. | Case No.  16-cv-01533 (GBD) (GWG)<br><br>**Oral Argument Requested** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER OF AUGUST 11, 2017**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    A.      Windsor Necessarily Will Rely On The Withheld Materials ............................................ 2

    B.      The Critical Nature Of The Withheld Materials ............................................................... 3

    C.      The Alleged Malpractice Clearly Cannot Be Separated From The Legal Advice
           And Work Product Of Other Counsel In The Underlying Proceedings ............................ 6

           1.      Windsor's Arguments Regarding the Timing of Engagement of Other
                   Counsel Actually Acknowledge Contemporaneous, Overlapping
                   Representation and Are Grounded in a Nonsensical Distinction............................ 6

           2.      Windsor's Arguments Regarding Defendants' Alleged Misconduct Ignore
                   the Inextricable Interrelationship between the Legal Advice and Work
                   Product of Defendants and Other Counsel............................................................. 7

    D.      Windsor's Argument Regarding *Erie* Misrepresents Defendants' Objection .................... 8

CONCLUSION............................................................................................................................... 9

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                  **Page(s)**

*Aurora Loan Servs. v. Posner, Posner & Assocs., P.C.,*
  99 F. Supp. 2d 475 (S.D.N.Y. 2007) ..................................................................................6

*John Doe v. United States*,
  350 F.3d 299 (2d Cir. 2003) ..............................................................................................5

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
  No. 09 Civ. 8083 (GBD) (THK), 2010 U.S. Dist. LEXIS 128849
  (S.D.N.Y. Dec. 6, 2010) ................................................................................................4, 8

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*,
  07 Civ. 7983 (DAB) (HBP), 2016 U.S. Dist. LEXIS 70051
  (S.D.N.Y. May 24, 2016) ..................................................................................................8

*Raphael v. Clune White & Nelson*,
  146 A.D.2d 762 (2d Dep't 1989) .......................................................................................4

*Shaub & Williams, L.L.P. v. Augme Techs., Inc.*,
  13 Civ. 1101 (GBD) (JCF), 2014 U.S. Dist. LEXIS 34438
  (S.D.N.Y. Mar. 17, 2014) ..................................................................................................8

*TIG Ins. Co. v. Yules & Yules*,
  No. 99 Civ. 3378 (KMW)(MHD), 1999 U.S. Dist. LEXIS 17607
  (S.D.N.Y. Nov. 12, 1999) ..................................................................................................4

*Verdi v. Jacoby & Meyers, LLP,*
  No. 10674/2007, 2009 N.Y. Misc. LEXIS 6038
  (Sup. Ct. Nassau Cty. June 30, 2009). ...............................................................................5

Defendants submit this reply memorandum of law in further support of their Objections to the August 11 Order (Dkt. No. 66).[1]  For the reasons set forth in the initial Objections and below, this Court should set aside the August 11 Order and compel production of the documents in dispute, on the ground that Windsor has waived, and therefore is not entitled to rely on, any privilege it had to withhold those documents from production.

## PRELIMINARY STATEMENT

In this action, Windsor seeks to hold Defendants responsible for settlements that it entered into while being advised by counsel other than Defendants.  It is clear that Windsor will attempt to do so, at least in part, by examining Defendants' analyses and judgment.  And it is equally clear that Defendants must have the ability to defend against Windsor's allegations based on the advice given to Windsor by the other, contemporaneous and successor, attorneys Darin Judd and Lauren Antonino, among others ("Other Counsel"), who handled the same or substantially similar issues.  Yet Windsor argues that it is entitled to hide behind privilege, withholding from production documents that would reveal the research, conclusions, arguments and advice of those successor law firms – and thereby prevent Defendants from accessing evidence critical to their defense.  Windsor cannot have it both ways.

Defendants explained in their initial Objection papers that (a) Windsor has refused to disclose to them discovery materials sufficient to allow them to explore the reasonableness of Other Counsel's litigation strategies and settlements, and to evaluate the massive legal fees of Other Counsel that Windsor seeks as damages putatively caused by Defendants; and (b) the August 11 Order, upholding Windsor's tactics, is clearly erroneous because it fails correctly to apply the "at issue" waiver doctrine, under which Windsor has waived its ability to rely on

---

[1] Capitalized terms have the same meaning ascribed to them in Defendants' initial objection papers.

1

privilege to withhold documents.  As demonstrated below, Windsor's opposition papers ("Opp. Br.") rely heavily on repetition of the findings in the August 11 Order and avoidance of the points made in Defendants' Objections.  As such, Windsor does not effectively address or rebut Defendants' application.

## ARGUMENT

Windsor's opposition, like the August 11 Order, relies on three wrong-headed assumptions:  there is no need for production of the withheld materials because (1) Windsor supposedly, at this time, does not intend to rely on any privileged advice or work product; (2) the withheld materials, in Windsor's estimation, are not critical to Defendants' defenses; and (3) the alleged malpractice supposedly occurred before Other Counsel performed any legal work for Windsor and is entirely unrelated to that legal work.  As Defendants demonstrated in their initial Objections, none of these assumptions has merit.  Nor can Windsor find solace in its attempted, but incorrect, refutation of Defendants' arguments regarding *Erie*.

**A.    Windsor Necessarily Will Rely On The Withheld Materials**

While Windsor claims that it does not intend to rely upon Other Counsel's advice to prove its case, that assertion is readily rebutted.  Windsor already has made clear that, at the very least, it will rely on various rulings in the underlying litigations handled by Other Counsel in its effort to establish causation, and on the settlement agreements negotiated and drafted, and the legal fees charged, by Other Counsel in its effort to establish its damages.  Thus, for example, Windsor supports its claims by arguing that it was reasonable and necessary to engage in aggressive and protracted litigation of the five underlying disputes, and then, years later, to settle these disputes on terms that appear no more favorable – albeit certainly more expensive to achieve – than Arent Fox earlier had proposed.  Further, Windsor's allegations invoke the "advice of counsel" doctrine, thereby implying Other Counsel studied the legal and factual

2

circumstances and agreed with Windsor's decision (contrary to Defendants' urging) not to settle in 2014, and with the subsequent strategy decisions implemented during the various litigations.

Windsor drafted the preliminary documents and secured the Change of Ownership forms through Eugene Houchins III, a man Windsor's principal, Steven Prusky, has admitted he did not trust (and later threatened to sue for fraud).  *See* Compl. ¶ 24; Defendants' Reply Memorandum of Law in Support of Motion to Compel (Dkt. No. 64), n.5.  Windsor and, ostensibly, Judd and Antonino, made strategic choices that may independently have caused Windsor's harm or at least exacerbated that harm.  When faced with the adverse arbitration decision in the Bitter Litigation, Windsor delayed settling until January 2015, many months after terminating Defendants and, for reasons that remain hidden behind assertions of privilege, expensively and aggressively litigated the other four cases for many years, notwithstanding its repeated assertion that Defendants' conduct foreclosed any chance to prevail.  *See* Compl. ¶¶ 93, 121, 152, 170; Heffer Decl. Ex. 2; Rousseau Decl. ¶¶ 5-6.

What emerges from the foregoing is crystal clear: the August 11 Order fails to recognize that truth about this case, that Windsor's malpractice allegations <u>and</u> its attorneys-fees damages claims depend on the thought processes and advice of Other Counsel and the decisions made in response thereto by Windsor.

**B.    The Critical Nature Of The Withheld Materials**

Even if, *arguendo*, Windsor (impossibly) does not rely to any extent on the contents of the withheld materials, that is beside the point.  Those materials are vital to several issues implicated in Windsor's malpractice claims, including causation and damages, and consequently, to Defendants' ability to defend against these claims.  With regard to causation, the disputed materials are the first-hand evidence of the analyses and judgment of Windsor and/or its Other Counsel.  Such evidence is central to Defendants' ability to challenge the assertions that they

3

were the proximate cause of <u>any</u> of the alleged damages in connection with <u>any</u> of the individual underlying litigations and settlements (let alone <u>all</u> of the alleged harm in connection with <u>all</u> related proceedings).[2]  With regard to damages, the withheld materials are first-hand evidence relevant to the reasonableness of the legal fees sought – specifically why the fees were so high, what decisions were made about how to litigate, and what drove up delays and expenses so much, including Windsor's own strategic decisions to litigate for years before settling for amounts that were less than or the same as the amounts obtainable when Arent Fox represented Windsor.

By accepting Windsor's flawed assertion that this case is a "simple" matter exclusively confined to the time period of Defendants' representation of Windsor, the Order effectively – and incorrectly – prevents Defendants from exploring these factors.[3]

Windsor spends five pages of its opposition exhaustively summarizing (and aggressively quoting) the same inapposite cases cited in its underlying motion papers.  Opp. Br. 14-18.  These cases involve claims in which the underlying alleged malpractice was clear-cut, and involve few if any questions regarding causation – that is, claims that differ dramatically from the allegations here.[4]  Windsor's cited cases may be simple, but they are in no way analogous to the

---

[2] Windsor seeks, as damages, the aggregate amount of the difference between each settlement and the full death benefit under the corresponding policy, plus related legal fees.

[3] The August 11 Order holds that "[t]here is <u>no scenario</u> under which defendants would be 'required' to learn the content of new counsel's advice in order for defendants to address the causation question … Whatever allegedly bad advice defendants gave was concluded by the time new counsel was engaged and represented Windsor.  Whether defendants' allegedly bad advice caused Windsor to incur damages – specifically, in the manner Windsor litigated or settled the claims against the other insureds – does not depend on the advice of new counsel." (Op. 13) (emphasis added).

[4] *See, e.g.*, *TIG Ins. Co. v. Yules & Yules*, No. 99 Civ. 3378 (KMW)(MHD), 1999 U.S. Dist. LEXIS 17607, at *3-4 (S.D.N.Y. Nov. 12, 1999) (alleged malpractice involved blown statute of limitations that expired before subsequent counsel was engaged); *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 U.S. Dist. LEXIS 128849, at *9-11, 13-14 (S.D.N.Y. Dec. 6, 2010) (alleged malpractice consisted of failure timely to file patent applications; plaintiff's state of mind or the advice of other counsel was not "at issue"); *Raphael v. Clune White & Nelson*, 146 A.D.2d 762, 762-63 (2d Dep't 1989) (defendant not entitled to privileged

4

circumstances at bar and cannot support the overly restrictive approach to discovery relating to Windsor's allegations adopted in the August 11 Order.

Windsor's burden is to prove that Defendants' conduct was the "but for" cause of all of Windsor's injuries in <u>all</u> of the underlying cases. Indeed, it is indisputable that legal advice from and decision-making of Other Counsel, at a minimum, were intervening causes of Windsor's alleged damages. Defendants' point is that, if these elements were <u>the</u> "proximate cause" of <u>any</u> of Windsor's losses, then Defendants cannot be held responsible for <u>all</u> the damages Windsor is claiming herein – because Other Counsel's actions interrupt the causal link necessary to establish those claims or at least portions of them.

Windsor's discussion of Defendants' defenses regarding mitigation and damage amounts equally misses the point: that is, Defendants' primary means of exploring these factual issues is to review the withheld communications,[5] and that, therefore, access to them is essential. *See John Doe v. United States*, 350 F.3d 299, 304 (2d Cir. 2003) (citing *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)) (disclosure is necessary when "the legal advice the [party] in fact received might well have demonstrated the falsity of his claim to the jury about his belief, he could not fairly both assert testimony that implicitly communicated his version of the legal advice he received and simultaneously withhold disclosure of the legal advice he actually received"). The cases cited by Windsor in this respect provide no valid defense of this aspect of the August 11 Order.[6]

---

communications in English action commenced after dismissal, on *forum non conveniens* grounds, of underlying case brought by defendant in New York).

[5] When Defendants' counsel attempted to explore these areas with Judd and Prusky at their recent depositions, they were directed not to answer, relying upon Magistrate Gorenstein's August 11 Order.

[6] In *Verdi v. Jacoby & Meyers, LLP*, the plaintiff alleged that the defendant law firm failed to assert a timely claim for personal injury against the owner of the vehicle. No. 10674/2007, 2009 N.Y. Misc. LEXIS 6038, at *3 (Sup. Ct. Nassau Cty. June 30, 2009). There, the court held that the defendant was not entitled to privileged communications involving the underlying litigation against the <u>driver</u> of the vehicle because those communications had nothing to do

5

C.  **The Alleged Malpractice Clearly Cannot Be Separated From The Legal Advice And Work Product Of Other Counsel In The Underlying Proceedings**

Windsor spends the bulk of its opposition insisting that Defendants' representation of Windsor in the underlying matter never overlapped with that of Judd and Antonino (to whom Windsor refers as "Replacement Counsel"), or the numerous other attorneys consulted by Windsor. *See, e.g.,* Opp. Br. 2, 10. However, such assertions are demonstrably false and even if they were true, should not prevent Defendants from accessing information that is critical for their case.

1. <u>Windsor's Arguments Regarding the Timing of Engagement of Other Counsel Actually Acknowledge Contemporaneous, Overlapping Representation and Are Grounded in a Nonsensical Distinction</u>

Although Windsor argues that Defendants did not represent it contemporaneously with any Other Counsel because Steven Prusky, Windsor's principal, did not <u>formally</u> engage other counsel to provide advice about the Bitter Litigation or the effect of the arbitration decision until August 2014 (Opp. Br. 5-7), Windsor effectively concedes that it sought legal advice from Other Counsel, about the Bitter Litigation and the disputes involving the other policies, as early as April 2014 and through the spring and summer of 2014 <u>while Defendants' engagement was ongoing</u>. *See, e.g.*, *id.* 5.[7] Windsor minimizes these consultations as nothing more than "informal" advice, whatever that means, but provides no legal authority (nor can it do so) to

---

with a malpractice claim involving a potential action against the <u>owner</u>, let alone any issues of mitigation. Windsor misleads the Court by conveniently cutting off its long quotation of this case prematurely, so as to obscure this distinction (Windsor omits the underlined text: "Proof of such a claim, however, is clearly not dependant [*sic*] upon those communications that occurred between the plaintiff and his counsel relative to settling the underlying action <u>as against Mr. Muntner</u>"). Windsor also mischaracterizes the holding in *Aurora Loan Servs. v. Posner, Posner & Assocs., P.C.*. Opp. Br. 21. The magistrate judge in *Aurora* did <u>not</u> adopt the holdings in *Jakobleff* and *TIG* in its analysis of "at issue" waiver but distinguished these cases, holding that privilege was waived because plaintiff's claim of damages placed communications with successor counsel "at issue." 499 F. Supp. 2d 475, 478 (S.D.N.Y. 2007). The deficient privilege log was a separate and independent basis for waiver. *Id.* at 478-479.

[7] As Defendants explained in their initial Objections (at 4, 6), the privilege log entries for Judd, among others, confirm this: during this time, Prusky sought and received legal advice from attorneys other than Defendants about the Bitter Litigation and the Acker and Collins policies.

6

support the far-fetched proposition that legal advice sought on a purportedly informal basis is both protected by attorney-client privilege and also so much more sacrosanct than "formal" engagements that it is immune to the rules of "at issue" waiver.

> 2. <u>Windsor's Arguments Regarding Defendants' Alleged Misconduct Ignore the Inextricable Interrelationship between the Legal Advice and Work Product of Defendants and Other Counsel</u>

In straining to escape its "at issue" waiver, Windsor attempts to fashion malpractice allegations that shy away from any period of time during which Windsor was represented by Other Counsel. Thus, Windsor claims that all "breaches" of the applicable standard of care occurred before Windsor sought advice from Other Counsel. Opp. Br. 5-10.

This is simply not so. Judd and Antonino commenced certain proceedings, and litigated and eventually settled all five underlying cases, including the Bitter Litigation, after racking up massive legal fees. Their work product, conclusions and advice – some of which was provided contemporaneously with Defendants' representation – goes directly to central questions of this case: whether related advice <u>by Defendants</u> fell below the standard of care, whether <u>Defendants'</u> work was the proximate cause of the alleged millions in damages, and whether the settlement agreements and massive legal fees were necessary and reasonable in light of <u>Defendants'</u> analyses, advice and results. Thus, Other Counsel certainly provided legal advice during time periods and on subject matters that overlapped, or were coextensive, with the time periods and subject matters of Defendants' involvement. Windsor's attempt to tease out Defendants' conduct separately from the larger context here is artificial and unconvincing.

Windsor's arguments highlight one of the most significant errors in the August 11 Order. Although the Order acknowledges that Windsor's allegations "include the conduct of the Bitter arbitration and <u>the subsequent negotiations to settle it</u>" (Op. 10) (emphasis added), it incorrectly adopts an oversimplification of Windsor's case in chief: "To reduce the problem to simple terms:

7

Windsor is alleging that defendants' actions created a mess that it tried to clean up. Windsor hired new counsel to advise it and assist in cleaning up that mess" (Op. 13). The Order improperly adopts a simplistic, inapplicable narrative – that Defendants, particularly with their initial "transactional" advice in 2010, created a "mess" that doomed Windsor, and that Other Counsel entered the picture only to help clean up this mess, which was impossible. The record evidence, however, clearly demonstrates that there was no such simple narrative or such a neat sequencing of counsel, as the "clean up the mess" characterization implies. As such, this case cannot properly be reduced to such simple terms, and Defendants must be permitted a fair opportunity to challenge Windsor's theories.

**D.  Windsor's Argument Regarding *Erie* Misrepresents Defendants' Objection**

Finally, contrary to Windsor's assertion, Defendants do not argue that the August 11 Order was clearly erroneous because it applied *Erie* to a legal malpractice case. The Order was clearly erroneous because it applied *Erie* without taking into account the specific circumstances of this particular case. Courts in this jurisdiction have applied *Erie* – and its strict requirement that the withholding party "relies" on the privileged communications – to simple cut-and-dried malpractice cases, not in cases where, as here, there were overlapping consultations with different counsel and significant issues regarding causation and the reasonableness and mitigation of the asserted "clean up" damages.[8] This case presents a factual and legal posture that is far different from these other post-*Erie* decisions.

---

[8] *See, e.g.*, *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, 07 Civ. 7983 (DAB) (HBP), 2016 U.S. Dist. LEXIS 70051, at *20-22 (S.D.N.Y. May 24, 2016) (alleged legal malpractice involved clear inaction, not supposedly erroneous advice); *Leviton Mfg. Co.*, 2010 U.S. Dist. LEXIS 128849, at *9-11, 13-14 (alleged malpractice related primarily to the untimely filing of patent applications); *Shaub & Williams, L.L.P. v. Augme Techs., Inc.*, 13 Civ. 1101 (GBD) (JCF), 2014 U.S. Dist. LEXIS 34438, at *12-15 (S.D.N.Y. Mar. 17, 2014) (malpractice claim already dismissed in case, so subsequent counsel's corrective efforts could not implicate causation or damages issues).

## **CONCLUSION**

The August 11 Order is clearly erroneous and an unwarranted extension of Second Circuit law. For all of the reasons set forth in Defendants' Objections and herein, the Order should be reversed, and the withheld documents produced.

Dated: New York, New York
October 24, 2017

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Peter N. Wang*
Peter N. Wang (PW 9216)
Douglas S. Heffer (DH 6082)
Adam G. Pence (AP 8621)
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329
pwang@foley.com
dheffer@foley.com
apence@foley.com

*Attorneys for Defendants
Arent Fox, LLP and Julius Rousseau, III*