Peter N. Wang
Douglas S. Heffer
Adam G. Pence
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINDSOR SECURITIES, LLC,<br><br>   Plaintiff,<br><br> -against-<br><br>ARENT FOX, LLP and JULIUS ROUSSEAU, III,<br><br>   Defendants. | Case No.  16-cv-01533 (GBD) (GWG)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
OCTOBER 6, 2017 DISCOVERY MOTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    A.    Windsor's Purported Privilege Review Efforts Actually Demonstrate Advertence ........... 2

    B.    Windsor's Excuses for Producing Privileged Documents Make No Sense ....................... 3

    C.    Windsor's Excuses for Failing to Claw Back Privileged Documents Make No Sense ................................................................................................................................. 4

    D.    The Protective Order Does Not Provide Windsor Unlimited Claw Back Rights and Does Not Even Apply Here ......................................................................................... 6

    E.    Defendants Are Entitled to Their Reasonable Costs and Fees .......................................... 8

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*In re Bank of N. Y. Mellon Corp. Forex Transactions Litig.*,
   No. 12 MD 2335 (LAK), 2014 WL 4827945 (S.D.N.Y. Sept. 22, 2014) .................................7

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   No. 09 Civ. 9783 (RWS), 2013 WL 2322678 (S.D.N.Y. May 21, 2013) ................................7

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*,
   No. 09 Civ. 8285 (PGG)(FM), 2013 WL 142503 (S.D.N.Y. Jan. 7, 2013)..............................6

*Carr v. Queens-Long Island Med. Grp., P.C.*,
   No. 02 Civ. 1676 (NRB)(JCF), 2003 WL 169793 (S.D.N.Y. Jan. 24, 2003)..........................9

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
   104 F.R.D. 103 (S.D.N.Y. 1985) .............................................................................................6

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002)......................................................................................................8

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*,
   No. 11 Civ. 3543 (WHP), 2014 WL 2116147 (S.D.N.Y. May 14, 2014) ...............................7

**Statutes**

28 U.S.C. § 1927................................................................................................................................8

**Other Authorities**

2 *Discovery Proceedings in Federal Court* § 22.1 (3d ed.).............................................................8

*Merriam-Webster.com*. Merriam-Webster, 2017. Web. 18 October 2017. ....................................3

Defendants respectfully submit this reply memorandum of law in further support of their October 6, 2017 Discovery Motion (the "Motion"). For the reasons set forth in Defendants' pre-motion letter to the Court (Dkt. No. 81), the Declaration of Adam G. Pence, dated October 6, 2017 (Dkt. No. 89) (the "Pence Decl."), the Reply Declaration of Adam G. Pence, dated October 24, 2017 (the "Pence Reply Decl."), and this memorandum of law, Defendants' Motion should be granted.[1]

## PRELIMINARY STATEMENT

Windsor submits over two hundred pages in opposition to Defendants' Motion, but nowhere in its massive, repetitive filing does Windsor express any compunction, remorse, or embarrassment for its numerous discovery defaults. Instead, Windsor defiantly maintains that it has done nothing wrong, despite the fact that it acknowledges the numerous discovery deficiencies outlined in Defendants' motion papers and admits that it has produced hundreds and hundreds of privileged documents.

Faced with waiving privilege for the hundreds of documents it has produced, Windsor outlines its review efforts but wholly fails to explain how the production of so many privileged documents could be anything other than advertent, given these efforts. The documents, therefore, should be produced and deemed not privileged, either because the review process was such that the production cannot be considered inadvertent – that is, privilege was not adequately preserved – or, alternatively, because it can be concluded on these facts, despite the recent characterizations, that the production of these documents was advertent.

Faced with sanctions for its discovery deficiencies, Windsor provides the same tired response it always does: there is "no deficiency," but, if there is, someone else is to blame or someone else should be responsible for fixing the problems. Regardless of Windsor's excuses,

---

[1] Capitalized terms have the same meaning ascribed to them in the Pence Decl.

however, Defendants continue to suffer expenses and delays because of these issues. In addition, Windsor now inexplicably demands that Defendants provide a list of all remaining privileged documents in the production, effectively "outsourcing" the privilege review.

## ARGUMENT

As Windsor fully admits, it failed timely to produce documents multiple times, and did not make its most recent 90,000-page production of Lauren Antonino's documents available to Defendants, in full, until the eve of the October depositions of Darin Judd and Steven Prusky. When it was finally available, Windsor halted discovery and began clawing back documents piecemeal and, then, prevented Defendants from completing these depositions by attempting to claw back additional documents during the proceedings. And, despite all these problems, Windsor's counsel refused to cooperate with Defendants to resolve the current discovery dispute or to schedule the remaining depositions, insisting that discovery could not be extended under any circumstances. Waiver of privilege and sanctions against Windsor are clearly warranted.

**A.      Windsor's Purported Privilege Review Efforts Actually Demonstrate Advertence**

In opposition to Defendants' Motion, Windsor's counsel submits four declarations that repeatedly attest – *ad nauseam ad infinitum* – that Windsor never intended to produce privileged documents and that each and every disclosure was "inadvertent." Everything else set forth in the declarations, however, belies this assertion.

Windsor's counsel, in attempting to explain the extensive efforts undertaken to protect Windsor's privilege, actually demonstrate that any production of privileged materials would have to be advertent. Attorney Jaclyn Frank, who reviewed the Antonino production, outlines in great detail in her declaration all the precautions Windsor supposedly took when reviewing for privilege. She claims – free from cross-examination to test the accuracy of the claim – that there was a "document review protocol" in place and that she adhered to the protocol at all times.

2

Declaration of Jaclyn H. Frank, dated October 17, 2017 (the "J. Frank Decl."), ¶ 10.  Frank declares that she "reviewed each and every page of the documents provided … identified documents as privileged, … flagged them as such," and even segregated them.  *Id.*  The remainder of her declaration details her extensive "page-by-page" review efforts – both for the initial production and for potential claw back.  *Id.* ¶¶ 30, 33-35.

If Windsor's counsel did review the Antonino production page by page twice, as Ms. Frank states, there is simply no way that Windsor can now take the position that the production of the privileged documents, or the failure to claw them back, was in any way inadvertent.  The actual dictionary definition of "advertent" supports this conclusion.  Merriam-Webster defines "advertent" as "giving attention: heedful," and that is exactly what Windsor's counsel claimed it did during its review.[2]

### B. Windsor's Excuses for Producing Privileged Documents Make No Sense

Despite the supposed "protocols" in place, Windsor claims that the disclosures were somehow a result of format or production issues with Antonino's documents.[3]  This explanation makes no sense.  If there were some format issue that prevented Windsor's counsel from reviewing certain documents, then counsel could not have conducted the page-by-page review outlined in Jaclyn Frank's declaration, and produced documents without looking at them.  If there were some other production issue, Windsor fails to explain how that could result in the

---

[2] https://www.merriam-webster.com/dictionary/advertent (accessed October 18, 2017).

[3] *See* J. Frank Decl. ¶ 4 ("The inadvertent disclosure resulted solely from an error in the production process, and does not reflect any intentional or unintentional action by the clients."); ¶ 29 ("Moreover, a significant portion of the documents produced by Antonino contained internal errors which prohibited me from initially accessing certain documents.  I had to separate any documents that I could not initially access and wait for those documents to be further processed and converted into an accessible format ….")

production of privileged materials, given the fact that Frank supposedly segregated them from the other Antonino documents.[4]

Windsor also produced 85 different privileged documents multiple times (Windsor admits there have been so far, in total, claw back demands for 184 BATES ranges, within which there are 233 separate documents). Opp. Br. 14; J. Frank Decl. ¶¶ 35, 42-43, 53. Was every one of these disclosures – of the same documents over and over – the result of an "error in the production process"? Windsor provides no explanation.

**C.    Windsor's Excuses for Failing to Claw Back Privileged Documents Make No Sense**

Windsor provides no valid explanation for why it failed to claw back all the privileged documents after receiving notice from Defendants on September 15, 2017. For example, Windsor does not even attempt to explain how it failed to claw back ANTONINO 022548-022555, a memorandum authored by Antonino that analyzed Windsor's potential claims in the underlying litigations. This document was not listed in Windsor's original claw back letter, but Windsor did claw back document ANTONINO 022556, the very next document in the production. Both documents were part of two large PDFs (totaling around 600 pages) that Defendants' counsel had originally identified as containing possible privileged materials. Yet, even focusing on this small number of pages, Windsor did not identify the analysis memorandum for claw back.

In truth, there is no sufficient explanation for this failure. Either Windsor conducted a full re-review and chose not to claw back further documents, or Windsor chose not to conduct a

---

[4] Windsor repeatedly asserts that the only privileged materials produced were from Antonino's documents. Defendants are in no position to determine what documents Windsor believes are privileged, but they are reasonably confident that this statement will eventually prove inaccurate.

full re-review and must live with the consequences.[5]  In a transparent attempt to avoid this paradox, Windsor claims that on September 19, 2017, Samantha Millrood informed Defendants' counsel that the "re-review was incomplete and ongoing." J. Frank Decl. ¶ 35.  But Millrood said no such thing.  Her letter conveyed the opposite message: she stated that Windsor "had now identified the privileged documents that were inadvertently produced, identified herein below" and said nothing about an ongoing review.  Pence Decl. Ex. CC.  In fact, Windsor demanded that the case proceed and renewed its position that discovery could not be extended.  Pence Reply Decl. ¶ 19.  Defendants even confirmed that the re-review was complete when Adam Pence e-mailed in reply to Millrood's letter, stating "we will continue preparing for the upcoming depositions with the understanding that Windsor has clawed back all documents from its productions that it deems privileged and inadvertently produced."  Pence Decl. Ex. DD.

In its opposition, Windsor asserts that it clawed back all privileged documents "as soon as it discovered such inadvertent production" (*see, e.g.*, Opp. Br. 15), but the record demonstrates otherwise.  Windsor has been on notice that it produced privileged materials since September 15, 2017 but only clawed back 113 documents on September 19, 2017.  Then, on September 22, 2017, Windsor actually withdrew privilege claims for five of those same documents when Defendants' counsel challenged privilege (there were only two documents, but they were produced, in total, five times).  J. Frank Decl. ¶¶ 36-37.  Windsor failed to claw back any further documents until after the October 4 deposition, and then only clawed back four

---

[5] N.B. Windsor's counsel is very careful in their declarations to avoid affirmatively stating that they engaged in a re-review of all of Windsor's production or even all of the Antonino documents.  *See, e.g.*, J. Frank Decl. ¶ 33 (after Defendants provided a non-exhaustive document range, Frank "immediately began re-reviewing the range of documents identified by Defendants …."); ¶ 34 (she then "spent a significant amount of time re-reviewing, page-by-page, as many documents as possible within and around the bate stamp range identified by Defendants ….") (emphases added).  Further, Samantha Millrood's declaration, which outlines the chronology of events surrounding the latest rounds of claw back letters, makes it clear that Jaclyn Frank, on behalf of Windsor, "proceeded with her continuing re-review" only after the October 4 depositions and October 5 claw back letter.  Samantha Millrood Declaration, dated October 17, 2017 (the "Millrood Decl."), ¶ 30.

documents identified at the proceeding.  Pence Decl. Ex. II.  Finally, on October 14, 2017, Windsor clawed back another 67 BATES ranges and reserved the right to continue its piecemeal claw back of privileged materials.  J. Frank. Decl. ¶ 43.

Most absurd of all, Windsor repeatedly has claimed that Defendants have an ethical duty to identify all additional documents that Windsor should claw back.  *See, e.g.*, Declaration of Alan Frank, dated October 17, 2017, ¶ 11.  Even if Defendants were able to determine what materials Windsor might want to claw back, which they cannot, Defendants do not have the obligation to re-review Windsor's entire production for these materials.  Windsor alone has that obligation.  By making such a demand, Windsor, effectively, is attempting to outsource its privilege review to Defendants.  There is simply no basis under the law for this burden-shifting.

**D.    The Protective Order Does Not Provide Windsor Unlimited Claw Back Rights and Does Not Even Apply Here**

Under Windsor's interpretation of the Protective Order, there are virtually no circumstances under which Windsor can actually waive privilege, and its claw back rights remain open indefinitely, even through trial.  This is a tortured misreading of the parties' agreement.  The Protective Order provides no such overbroad protection and, specifically, places a limitation on claw back: Windsor is entitled only to the protections afforded under the Order for its inadvertent production of documents.  *Cf. Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09 Civ. 8285 (PGG)(FM), 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding the parties entered into a broad claw back provision protecting the "production of any documents in this proceeding" so AIG had "the right to claw back the minutes, no matter what the circumstances giving rise to their production were") (emphasis added).  The Order's claw back provision, therefore, does not apply here because Windsor's production of the privileged documents was clearly advertent.

Windsor claims that the legal standard for "inadvertent disclosure," outlined in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), is inapplicable because parties who produce documents pursuant to a protective order are supposedly entitled to heightened protection whereby waiver will only be found when the producing party is "completely reckless." Opp. Br. 16-17. First, this argument wholly ignores Defendants' position that the Protective Order in this case does not apply to Windsor because its production was not inadvertent. Second, courts in this jurisdiction adjudicating similar claw back disputes involving a protective order often analyze waiver under both standards, depending on the circumstances surrounding the protective order and the production. *See, e.g.*, *In re Bank of N. Y. Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 (LAK), 2014 WL 4827945, at *1 (S.D.N.Y. Sept. 22, 2014); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783 (RWS), 2013 WL 2322678, at *10 (S.D.N.Y. May 21, 2013).

Even when a protective order provides "heightened protections" to a producing party, those protections still have limits. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 Civ. 3543 (WHP), 2014 WL 2116147, at *4-5 (S.D.N.Y. May 14, 2014) (despite protective order, finding of waiver because producing party was "completely reckless" by failing to review materials before producing them).[6] Windsor's conduct, whether one characterizes it as advertent or completely reckless, should find no protection under the Protective Order. Windsor essentially claims that it took every precaution possible not to produce privileged materials, which means that its production of privileged documents had to be advertent. At the same time, if Windsor did not in fact take such precautions when reviewing Antonino's documents, which would invariably include privileged materials, its conduct is

---

[6] In its opposition, Windsor mischaracterizes the holding in this case. Nowhere does this Court hold that a producing party under the heightened standard can waive privilege only when it does not appear to conduct any review of the documents at all. *Id.*

7

completely reckless.  Further, if Windsor chose not to re-review all of the produced Antonino documents after receiving notice on September 15, 2017, such conduct is also completely reckless.

Finally, it is worth noting that parties generally enter into protective orders "to provide for the out-of-court resolution of inadvertent production issues and to avoid litigating these issues." *U.S. Commodity Futures Trading Comm'n*, 2014 WL 2116147, at *4 (quoting *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997)). Windsor's discovery issues, however, have been pervasive and ongoing.  Defendants have diligently tried to resolve them outside of court, but Windsor continues to find new ways to disrupt this litigation.  The Protective Order contemplates parties conducting discovery in a reasonable, professional, straight-forward manner. Windsor has done anything but that, so it should not be allowed to abuse the claw back process outlined in the Order while refusing to honor the intent behind it.

### E.     Defendants Are Entitled to Their Reasonable Costs and Fees

As Windsor acknowledges, this Court has wide discretion to sanction a party for discovery abuses under the Federal Rules of Civil Procedure.  "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Reilly v. Natwest Markets Grp., Inc.,* 181 F.3d 253, 267 (2d Cir. 1999), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000)). Thus, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its

inherent power to manage its own affairs." *Id.* at 106–07; *see also* 2 *Discovery Proceedings in Federal Court* § 22.1 (3d ed.).[7]

Windsor has provided no factual basis for this Court to deny this portion of Defendants' Motion. As outlined in the two declarations of Adam G. Pence in support of Defendants' Motion, Windsor alone is responsible for its discovery defaults, including the most recent "format issues" involving the Antonino documents. Windsor chose to collect these materials, review them for responsiveness and privilege, and produce them. If there were format issues, Windsor should have taken affirmative steps to remediate these issues, perhaps by recollecting the documents or hiring a vendor to fix any outstanding problems (a suggestion Defendants have made several times in the course of this litigation).

Without any excuse, embarrassment or compunction, Windsor fully admits that it failed to produce complete sets of documents multiple times, that it remains in an "ongoing," never-ending project of clawing back documents, and that it envisions this privilege review continuing under Defendants' watch. Windsor also provides this Court no explanation as to why it then refused to provide Defendants any substantive professional courtesy, such as a modest extension, as they tried to take depositions and complete discovery in the face of these same issues. *See Carr v. Queens-Long Island Med. Grp., P.C.,* No. 02 Civ. 1676 (NRB)(JCF), 2003 WL 169793, at *4-5 (S.D.N.Y. Jan. 24, 2003) (assessing costs and fees against attorney because costs "could have been avoided by cooperation in the discovery process, including the simple expedient of communicating with counsel and requesting an extension").

As it stands, Windsor apparently plans to continue clawing back documents piecemeal until trial or until this Court intervenes. Sanctions, therefore, are an important component of

---

[7] Furthermore, pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

9

Defendants' requested relief.  To the extent this Court awards sanctions, Defendants will provide further documentation of their costs and legal fees in the form of redacted legal invoices and declaration testimony.  *See Carr*, 2003 WL 169793, at *5 (awarding sanctions and giving moving party 10 days to submit documentation supporting the asserted costs and fees).

## **CONCLUSION**

Based on the reasons outlined above and in their other Motion papers, Defendants respectfully request that this Court grant them the requested relief.

Dated: New York, New York
October 24, 2017

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Peter N. Wang*
Peter N. Wang (PW 9216)
Douglas S. Heffer (DH 6082)
Adam G. Pence (AP 8621)
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329
pwang@foley.com
dheffer@foley.com
apence@foley.com

*Attorneys for Defendants*
*Arent Fox, LLP and Julius Rousseau, III*