**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINDSOR SECURITIES, LLC,<br><br>        Plaintiff,<br><br>-against-<br><br>ARENT FOX, LLP and JULIUS ROUSSEAU, III,<br><br>        Defendants. | Case No. 16-cv-01533 (GBD) (GWG)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY DECLARATION OF ADAM G. PENCE**
**IN SUPPORT OF DEFENDANTS' MOTION**

    I, Adam G. Pence, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, state and declare as follows:

    1.    I am a member of the Bar of this Court and an attorney at Foley & Lardner LLP, attorneys for Defendants Arent Fox LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau," and, collectively with Arent Fox, "Defendants").

    2.    I submit this Declaration in further support of Defendants' October 6, 2017 Discovery Motion (hereinafter, the "Motion"). I know the statements made herein to be true based upon personal knowledge; based upon a review of the relevant documents, papers and/or pleadings in this action; and/or based upon non-privileged information I have received from our clients.

    3.    Windsor inexplicably argues that Defendants are somehow responsible for some of Windsor's initial discovery deficiencies, claiming that Defendants insisted on TIFF format when Windsor had already produced in PDF.

2

4. Windsor's initial PDF production <u>of e-mails</u> was improper under the agreed-upon format outlined in the discovery requests (the "Requests"). Instruction Number 4 specifically provided the following:

> Pursuant to Fed. R. Civ. P. 34(b)(2), electronically stored documents should be produced in native format, TIFF format, or a format to be agreed upon by the parties, and accompanied by a Concordance/Opticon or similar load file, with document level text files for the extracted text or OCR, and the following metadata fields, as applicable, should be produced: Beg Number, End Number, Beg Attach, End Attach, Custodian, File Path, E-mail Subject, Conversation Index, From, To, CC, BCC, Author, Date Sent, Time Sent, Date Received, Time Received, Date Modified, MD5 hash, File Size, and File Extension.

5. Windsor did not object to this Request but, nevertheless, produced e-mails in PDF format.

6. E-mail files normally are <u>not</u> maintained in the ordinary course of business as PDFs, nor does Windsor assert that its files were.

7. After Windsor produced its e-mails in PDF, I insisted that Windsor comply with the Requests and produce in a different format, with the required metadata load files, and specifically requested production in TIFF format.[1]

8. Our office was concerned about excessive duplication of documents, particularly e-mails, because Arent Fox had forwarded its files to Windsor's successor counsel. For example, an e-mail between Mr. Rousseau and Steven Prusky, Windsor's principal, could be produced at least four times in this litigation (from Mr. Rousseau's files, from Mr. Prusky's files,

---

[1] Windsor raises a red herring when it points out that Defendants produced certain files in PDF. *See* Christopher King Declaration ¶ 17. Defendants produced only their hard copy paper files in PDF, not any electronically stored documents. The Requests asked only for electronic documents, not scanned paper files, to be produced in the agreed-upon format with metadata.

from Darin Judd's files, and from Lauren Antonino's files).  If another Arent Fox attorney, or Judd or Antonino, were copied on this e-mail, the number of duplicates could be even higher.

9. As I stated before, in my October 6, 2017 Declaration, the metadata load files would allow our office to de-duplicate e-mails and other electronic files, thereby significantly streamlining the document review.

10. In addition, I insisted on Windsor producing metadata load files because, without these load files, our office would have been forced to process Windsor's documents, at great expense to our clients.  It was Defendants' position, and Windsor never disagreed, that the parties should be responsible for processing and producing their own documents.  Defendants were responsible for their own document production and never sought to pass on any such costs to Windsor.

11. At the beginning of October 2016, Windsor suggested that it produce its e-mails in native format, and I informed Windsor's counsel that Defendants would accept native files but only if Windsor could provide the necessary metadata load files, meaning Windsor could process these files properly and BATES number them for our review.  I was skeptical whether Windsor could do this, and, in fact, it never could.

12. Instead, Windsor produced unprocessed native files with no BATES numbers. On top of that, there were other significant issues with the e-mails.  Windsor had improperly re-attached certain e-mail attachments, which altered the metadata on the files (and would, among other things, prevent de-duplication).  Also, some e-mails were still missing attachments.

13. On October 14, 2016, I e-mailed Christopher King and outlined all these issues and, again, explained the problems with Windsor producing e-mails in PDF format or as unprocessed native files: "the PDF files you previously produced had no metadata and the native

3

files were not bates numbered." *See* Declaration of Adam G. Pence, dated October 6, 2017, Ex. J.

14. Over the course of several subsequent phone calls, I renewed Defendants' previous request that Windsor produce in TIFF format with the proper load files, and Windsor eventually agreed to do this.

15. Windsor now takes the curious position that Defendants have been unreasonable because, even though they insisted on metadata load files, they eventually accepted unprocessed native files (without load files) for certain portions of Windsor's initial e-mail production and PDFs for certain portions of Windsor's August 10, 2017 production of Lauren Antonino's documents (Opp. Br. 10).

16. On January 19, 2017, our office accepted unprocessed native files for the majority of Windsor's e-mail production because we saw no other way to proceed with the case, especially not without court intervention. At the time, it had been almost seven months since Windsor first produced documents, and it had never been able to produce a complete, acceptable set of e-mails.

17. After I consulted with our litigation support staff, I determined that it would be cheaper for our clients to have our office process Windsor's e-mail production rather than file a motion to compel or review duplicate versions of these same e-mails.

18. Similarly, on August 24, 2017, I agreed to accept PDFs for certain portions of the Antonino production because Windsor had been unable to provide us copies of these documents in any other format over the previous two weeks. Our office was trying to schedule several third party depositions before the close of discovery on October 27, 2017, and Steven Prusky's deposition was already scheduled for September 26, 2017. With over 90,000 pages of

documents to review, I felt that our office could not afford any further delays at Windsor's hands.

19. In addition, Alan Frank, Windsor's lead counsel, demanded that depositions continue immediately and threatened not to agree to any further extension of discovery.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 24th day of October, 2017

>*/s/ Adam G. Pence*
>Adam G. Pence