```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                               :
                                          Docket #16cv1533
 WINDSOR SECURITIES LLC,              :

                    Plaintiff,        :

   - against -                        :

 ARENT FOX LLP, et al.,               : New York, New York
                                        November 30, 2017
                    Defendants.       :

------------------------------------ :


                      PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:         ALAN L. FRANK LAW ASSOCIATES, P.C.
                       BY:  SAMANTHA MILLROOD, ESQ.
                            CHRISTOPHER KING, ESQ.
                       135 Old York Road
                       Jenkintown, Pennsylvania 19046

For the Defendants:    FOLEY & LARDNER, LLP
                       BY:  PETER WANG, ESQ.
                            ADAM PENCE, ESQ.
                            DOUG HEFFER, ESQ.
                       90 Park Avenue
                       New York, New York 10016




Transcription Service: Carole Ludwig, Transcription Services
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1                          PROCEEDINGS                    3

2              THE CLERK:  In the matter of Windsor Securities

3   v. Arent Fox, docket number 16cv1533.  Counsel, state your

4   name for the record.

5              MS. SAMANTHA MILLROOD:   Yes.  Good afternoon,

6   Your Honor, Samantha Millrood and Christopher King for

7   Windsor Securities, the plaintiff.

8              MR. PETER WANG:   Good afternoon, Your Honor,

9   Peter Wang, Adam Pence, and Doug Heffer of Foley & Lardner

10  for the defendants.

11             THE COURT:   Okay, welcome everyone.  You can be

12  seated if you're not speaking.  We're here based upon the

13  defendants' motion regarding certain documents and I guess

14  also for some fees.  Let's start with the documents.  And

15  I've certainly read your papers, but it might not hurt

16  just to go over the sequence of events regarding the

17  production, the efforts, the production, and the clawback,

18  each of the clawbacks.  I may be more interested in the

19  later clawbacks than the earlier ones, but let's just

20  start from the beginning.

21             Well, actually, I want to hear their version,

22  and then – I know it's your motion – I want to hear their

23  version, and then I'll certainly give you a chance.

24             MS. MILLROOD:   Would you like me to stand, Your

25  Honor?

```
 1                          PROCEEDINGS                    4

 2          THE COURT:   It's customary to stand when
 3  addressing the Court, but if you're not able to do so or
 4  it's inconvenient, that's fine.
 5          MS. MILLROOD:   No, no.
 6          THE COURT:   And you don't need to lean down to
 7  the microphone; you can just project.
 8          MS. MILLROOD:   Okay, thank you, Your Honor.
 9  Would you like me to start from the beginning when we
10  entered into the protective order which is at issue --
11          THE COURT:   No, let's – well, I'll put my cards
12  on the table.  The completely reckless standard is the
13  standard that I'm going to be applying.  So what you need
14  to do – and I've considered both sides' arguments.  I
15  don't think there's any point in going over that again.
16  So what I need you to do is describe the review process
17  for the Antinoni (phonetic) documents which were the first
18  documents for which there was the clawback request, and
19  then go through the processes, if it changed, I don't
20  know, after that.
21          MS. MILLROOD:   Okay, Your Honor.
22          THE COURT:   Is that sufficiently clear or you
23  want more guidance?
24          MS. MILLROOD:   No, no, I think that's clear.
25  Can I just take one step back just to say that prior to
```

2   the August 10 production, which included Antonino

3   (phonetic) and Judd's documents, that we had approximately

4   13 productions before that and we produced several

5   privilege logs before that.  And I only tell you that,

6   Your Honor, just to establish that well before this

7   production we did a review of hundreds of thousands of

8   pages of documents and produced several privilege logs for

9   that production.  We have always had in place a protocol

10  whereby we received documents, reviewed them for

11  privilege, segregate out the ones that are privilege and

12  are not privileged, and then produced them to opposing

13  counsel with a privilege log.

14          That's the same protocol we followed for the

15  August 10 production which included Antonino's documents,

16  except for with Antonino's documents and the August 10

17  production, there were some formatting issues as a result

18  of the way the documents were provided to us from

19  Antonino.  I have Mr. King here who can speak to that

20  specific – my husband calls me technology challenged – so

21  he is more involved with the issues regarding the

22  formatting and the way those documents were received from

23  Miss Antonino which caused some issues with the review.

24          But with each of the documents that we received

25  originally from our client Windsor, which we reviewed and

2   produced and provided privilege logs for the documents

3   that we withheld on the basis of privilege, we did the

4   same protocol for the documents we've received from both

5   Judd and Antonino being outlined in the declaration of

6   Jacqueline Frank that we provided to the Court,

7   specifically the documents were received, reviewed page by

8   page, flagged or segregated those that appeared to be

9   privileged.  And we had agreed with counsel in advance of

10  producing the document to produce a categorical privilege

11  log because we knew that these documents were documents

12  that we were receiving from both of Windsor's successor

13  counsel, Darren Judd and Lauren Antonino and their

14  respective firms, and that it would include a significant

15  amount of privileged information.

16          So we agreed and did, in fact, review,

17  segregate, produce, and provide a categorical privilege

18  log with the documents that we produced.  And as soon as

19  we were notified, I think it was on September 15 in an

20  email from Mr. Pence – in fact, Mr. Pence in his September

21  15 email said that we have come across multiple emails

22  between and among Windsor, Herbert Feinberg, Darren Judd,

23  Lauren Antonino and other attorneys which appear similar

24  in nature to documents Windsor has previously withheld on

25  the basis of privilege.  In fact, we did in the documents

1                           PROCEEDINGS                    7

2   that we received from our own client we clearly withheld

3   the same documents that were inadvertently produced

4   previously, those documents that were also included in

5   Windsor's own documents.  I hope I'm being clear.

6              THE COURT:   No, you're not.  Try it again.

7              MS. MILLROOD:   Okay.  So some of the documents

8   and emails that were inadvertently produced were

9   communications between Windsor and their attorneys.  We

10  have received those same emails from our own client and

11  had withheld them on the basis of privilege and provided a

12  privilege log when we produced the documents --

13             THE COURT:   Got it, got it, got it.

14             MS. MILLROOD:   -- directly from our client.

15             THE COURT:   Got it.

16             MS. MILLROOD:   So these documents that were

17  inadvertently produced also included documents that were

18  previously withheld on privilege that were contained

19  within our client's own documents.  I hope that makes

20  sense.

21             THE COURT:   Yeah.

22             MS. MILLROOD:   On September 15, when we

23  received that notification from defendants' counsel, Mr.

24  Pence, I personally immediately responded and asked him to

25  identify the Bates stamp numbers and our Bates stamp

1                        PROCEEDINGS                    8

2   ranges for the communications that he was referring to so

3   that we could assess whether, in fact, certain documents,

4   and I used the words inadvertently produced, and in that

5   response I said please be advised that we do not and did

6   not intend to waive any privilege through the production -

7   -

8              THE COURT:   Yeah, I know about the emails and

9   the first and the second email.  You can skip over that.

10  If you can now - you then got the documents back.

11             MS. MILLROOD:   No, got the documents --

12             THE COURT:   I'm sorry, after you - I'm sorry,

13  after they told you that there was a problem --

14             MS. MILLROOD:   Yes.

15             THE COURT:   Go ahead.

16             MS. MILLROOD:   So after that email where I said

17  we weren't waiving any privilege and we're relying on the

18  protective order and specifically the clawback provision

19  contained in paragraph 12 of the protective order, I then

20  called Jacqueline Frank and asked her to take a look.  We

21  received a response email, and the response email from

22  defendants' counsel is we can't identify all the

23  documents, but we can give you an exemplar, and they gave

24  us an exemplar of the Bate range I think of approximately

25  600 pages.

```
 1                         PROCEEDINGS                    9

 2            THE COURT:   They gave a Bates range, right?

 3            MS. MILLROOD:   I'm sorry?

 4            THE COURT:   They gave you a Bates range.

 5            MS. MILLROOD:   Yes, as an exemplar, but they

 6    said that this was not exhaustive.  It was just an

 7    example.  And immediately I called - I wasn't even in the

 8    office - I called our associate Jacqueline Frank who had

 9    been working on the privilege review, and I asked her to

10    immediately take a look at that Bate range.  She called me

11    back and said, yes, it appears that there are privileged

12    documents in the production, and I said, I immediately,

13    the same day, emailed counsel back and said - oh, I should

14    skip a step, I should step back, Your Honor.  I don't want

15    to leave out anything or omit something for the Court.

16            I sent an email to Mr. Pence saying you can

17    continue your review, and in the meantime I'm going to

18    look into the issue, but, again, I reserved our rights

19    under the clawback provision of the protective order.  I

20    then - once we determined that, in fact, at least one

21    privileged communication was included within the Bate

22    range that they identified, same day I wrote back to

23    counsel saying, please disregard my previous emails.

24    Cease your continued review.  There is privileged

25    documents included, that were inadvertently produced, and
```

1                              PROCEEDINGS                    10

2   we will be providing you a Bates stamp range for a

3   clawback.

4           Three business days later, Your Honor, we sent

5   correspondence --

6           THE COURT:   So it was three business days, what

7   happened?  You looked at the documents again --

8           MS. MILLROOD:   We looked at the 600 pages first

9   of the exemplar that they had identified within that three

10  business days and confirmed that there were.  We sent them

11  --

12          THE COURT:   And how did you do that, you looked

13  at each document again?

14          MS. MILLROOD:   Yes --

15          THE COURT:   I mean it seems like this was sort

16  of simple.  In other words, if it was from the lawyer to

17  your client and it wasn't shared with anyone else, you

18  were going to claim privilege, right?

19          MS. MILLROOD:   Well, no --

20          THE COURT:   What was the complication?

21          MS. MILLROOD:   I don't think it was that simple

22  because there was lots of communications between the

23  attorney and the client where legal advice wasn't being

24  offered.  They might've been talking about logistics on

25  where to go.  So it wasn't just, oh, it was between

1                              PROCEEDINGS                    11

2    attorney and client, and, therefore, we were withholding

3    it.

4              THE COURT:   So you were producing some

5    attorney-client communications?

6              MS. MILLROOD:   Oh, we had produced attorney-

7    client communications before but not attorney-client

8    communications where legal advice or opinions were being

9    offered or which contained work product.  You know, there

10   were communications clearly between the client and the

11   attorneys where no advice was being offered.  They

12   might've been chitchatting about something or discussing

13   logistics on what time they were going to meet for a

14   deposition or what planes they were going to take or what

15   mode of transportation, where they were staying --

16             THE COURT:   Okay, but anything substantive was

17   going to be privileged, right?

18             MS. MILLROOD:   Of course.

19             THE COURT:   So you were looking through to I

20   guess check that there was substantive advice and that

21   there wasn't some third part involved I guess.

22             MS. MILLROOD:   Yes, exactly.  And on Wednesday,

23   I think it was September 19, Your Honor, we provided

24   correspondence whereby we cited --

25             THE COURT:   So then you came up with 113

2    documents, right?

3              MS. MILLROOD:   I think that's the number, Your

4    Honor.  There was - yes, I believe that that's correct,

5    Your Honor.  I'm just looking - just so I can clarify the

6    number - yes, 113, eight ranges documents.  Yes.

7              THE COURT:   Okay, and at that point you were

8    done with re-reviewing the production.

9              MS. MILLROOD:   No, we were continuing our -

10   Your Honor, just so you know, it was 90,000 pages of

11   documents.  There was no way in three days, even if we had

12   everyone from our firm reviewing them --

13             THE COURT:   So when you did the 113, for you

14   that wasn't the end of it?

15             MS. MILLROOD:   No, no.

16             THE COURT:   They weren't supposed to do

17   anything until --

18             MS. MILLROOD:   No, in fact, in my

19   correspondence I said we're continuing our review, and

20   we'll let you know if there's any other documents --

21             THE COURT:   Okay.  But then --

22             MS. MILLROOD:   -- that we intend to claw back.

23             THE COURT:   -- eventually you finished on

24   October 3, is that right?

25             MS. MILLROOD:   No, Your Honor, we still, there

1                        PROCEEDINGS                    13

2  was still continuing review.  We have completed it now,

3  but there were still continuing review at that point.

4  October 3 – in the interim on October 3 there was a

5  deposition which occurred, two depositions --

6            THE COURT:   Well, hold on, hold on, hold on.  I

7  think – I thought on October 3 you said we're done --

8            MS. MILLROOD:   No.

9            THE COURT:   We've – what did you – you uploaded

10 something onto their – what does FTP stand for, I'm sorry?

11           MR. WANG:   File transfer protocol

12           THE COURT:   You uploaded the August 10

13 production onto their FTP site, right?

14           MS. MILLROOD:   Yes, with removing those things

15 that we had previously clawed back.

16           THE COURT:   Right, but were you still reviewing

17 the documents you had uploaded to that site on August 3?

18           MS. MILLROOD:   Yes, but that's because they

19 were asking us for – they were requesting forcefully a

20 clean copy of --

21           (interposing)

22           THE COURT:   Even though you weren't done?

23           MS. MILLROOD:   Yes, Your Honor.  Yes.

24           THE COURT:   So you had this production that you

25 know needs to be re-reviewed.

1                          PROCEEDINGS                    14

2           MS. MILLROOD:   In all --

3           THE COURT:   You found 113 documents, and then

4    you said, well, somehow we just got to give it back to

5    you?  I don't understand.

6           MS. MILLROOD:   Yes, we - I - we made it clear

7    and we said in our correspondence that we were continuing

8    our re-review, but they were - depositions were moving

9    forward.  We had a timeline for which discovery was

10   shortly about to close.  We were trying so as not to delay

11   anything.  They had already had the production anyway, so

12   it wasn't like it was something that they hadn't seen, and

13   --

14          THE COURT:   Did you inform them in writing that

15   there still could be privileged material in there?

16          MS. MILLROOD:   We said in each of our

17   correspondences that we were --

18          THE COURT:   No, on the October 3, did you make

19   clear the October 3 stuff --

20          MS. MILLROOD:   I --

21          THE COURT:   -- had privileged material in it?

22          MS. MILLROOD:   No.  We didn't, Your Honor.  I

23   mean I know we said that we were still continuing our

24   review, but I don't know that we said at that point that

25   we knew that there was still privileged material --

PROCEEDINGS                    15

1

2          THE COURT:   Did you say you were continuing

3   your review?  I mean that --

4          MS. MILLROOD:   Yes.  Yes.

5          THE COURT:   -- that is the same thing.  It's

6   basically saying we're not done but we're giving it to you

7   anyway.

8          MS. MILLROOD:   Yes.  We even specifically

9   reserve our right to clawback any other privileged

10  documents --

11         THE COURT:   Where --

12         MS. MILLROOD:   -- that we might find in our

13  continuing review.

14         THE COURT:   And that's – what're you quoting

15  from?

16         MS. MILLROOD:   That's the October 5

17  correspondence, Your Honor, and it's attached --

18         THE COURT:   Is there an exhibit number or

19  anything?

20         MS. MILLROOD:   Yes, it is exhibit, I'm sorry,

21  it's exhibit 12 to our memorandum of law, Your Honor.  And

22  it's on the third page.

23         THE COURT:   It's an exhibit to your --

24         MS. MILLROOD:   Would you like me to hand it up

25  to you?

| 1 | | PROCEEDINGS | 16 |

2      THE COURT:  No, I have it.

3      MS. MILLROOD:   It's the third page, the last

4  sentence.

5      THE COURT:   Okay, so when you uploaded it, you

6  mistakenly included some privileged documents that you

7  previously clawed back?

8      MS. MILLROOD:   Yes.

9      THE COURT:   Five of them.

10      MS. MILLROOD:   In the uploading process --

11      THE COURT:   So how did that happen?

12      MS. MILLROOD:   Can I ask Mr. King to explain

13  that to you, Your Honor?

14      THE COURT:   All right, normally I want one

15  attorney per issue, but go ahead.

16      MR. KING:   Good afternoon, Your Honor.  My name

17  is Christopher King.  Just for the record, I'm here for

18  technical purposes.  I have not been admitted to the

19  court, I just wanted to make that clear for Your Honor.

20      With the --

21      THE COURT:   There's a fact witness I guess.  Go

22  ahead.

23      MR. KING:   And, Your Honor, with regards to the

24  upload process, how everything was segregated, at this

25  point in time everything was contained within PDF files

1                          PROCEEDINGS                    17

2   with certain Bates ranges, and those files were moved over

3   in different batches, and some of those batches, through

4   a, we're not sure if it was a manual error or it was

5   something that was involved with the computer when they

6   were moved over, they moved over files that had been

7   previously segregated.

8           THE COURT:   Files that had been previously

9   segregated, as privileged you mean?  I'm sorry, what does

10  that mean, segregated?

11          MR. KING:   Yes, Your Honor.  So documents that

12  had been clawed back and segregated as privileged were –

13  if I may take one step back, Your Honor.  This may go into

14  a different area.  But the final production type went from

15  a (indiscernible) to where individual PDFs where a

16  document, if a document was four pages, the PDF would

17  contain all four of those pages and then it would be named

18  with the first Bates number that would relate to that

19  document.  And these were all segregated.  And in the

20  process of moving them from the privileged, the non-

21  privileged files to, that was to be uploaded, some of the

22  privileged documents were mixed into there.

23          THE COURT:   And you don't know how it happened?

24          MR. KING:   No, Your Honor, I do not.

25          THE COURT:   Okay, who did it, was it you?

1                          PROCEEDINGS                    18

2              MR. KING:   Your Honor, I was the one that was

3    moving the files between, that had been segregated by Miss

4    Frank.

5              THE COURT:   And you were - go ahead.

6              MR. KING:   And I was that was moving them over

7    onto the FTP site.

8              THE COURT:   And you don't know how it happened

9    that you included the segregated files.

10             MR. KING:   I do not know if they were - Your

11   Honor, I cannot tell you how they were, either they were

12   attached or if they were previously - I can't answer that,

13   unfortunately, Your Honor.

14             THE COURT:   Okay.  So let's keep going.  So

15   there were the five files.

16             MS. MILLROOD:   And then on October --

17             THE COURT:   But in your mind you're still going

18   over --

19             MS. MILLROOD:   Yes, we were reviewing --

20             THE COURT:   -- that thing you'd uploaded onto

21   their server to check, the same thing that had been

22   uploaded to their server to check if there were other

23   privileged documents.

24             MS. MILLROOD:   Yes, we were continuing our

25   review of the 90,000 pages that were produced on October,

on August 10, Your Honor.

          THE COURT:   Okay.

          MS. MILLROOD:   Which we had been notified may
have contained inadvertently produced documents on
September 15.

          THE COURT:   Sorry, just say what you said
again.

          MS. MILLROOD:   I was just saying it was an
August 10 production, but we were notified for the first
time on September 15 that this --

          THE COURT:   Yes, yes, I understand.

          MS. MILLROOD:   Yes.  I was just confirming
that.  And then on October 14, Your Honor, we followed up
with another clawback request of an additional 67
documents, and, again, we --

          THE COURT:   So what happened, what was going on
between October 3 and October 14 that caused the request
for the 67 documents?

          MS. MILLROOD:   A continued review of the 90,000
pages, Your Honor.

          THE COURT:   So, okay, I think somehow this
didn't come out in your briefing.  But in your mind – I
mean other people would have said, you know what, I found
out that there's privileged material in this August 10

1                              PROCEEDINGS                          20

2   production, stop looking at it, give it back, we're not

3   going to go through the whole thing, and when we're done,

4   we'll tell you what's being clawed back and we'll give it

5   to you with the segregable items out.  And you say you

6   didn't do that.  That would've been the normal thing to

7   do.

8              MS. MILLROOD:   Well, Your Honor, I think that

9   the best explanation I can give for that is that we were

10  on tight discovery timeframes.  There was depositions that

11  had been scheduled that people were coming in from

12  California.  We were doing our best.  We thought that they

13  had already seen these documents anyway and that, you

14  know, if they, you know, there would've been no prejudice.

15  They would just be seeing them again.  They had seen them,

16  so - they had told us about the inadvertent production,

17  and we were continuing our review.  We thought we were

18  protected by the protective order that we entered into

19  which allowed us to clawback anything at any time.  And

20  that's the guise we were working under, the agreement that

21  we entered into as a stipulation, and that was entered as

22  an order of court.  And that's where we were relying.

23             THE COURT:   Okay, so October 14 you come up

24  with another 67.

25             MS. MILLROOD:   Uh huh.

1                        PROCEEDINGS                    21

2          THE COURT:   And then you do what?

3          MS. MILLROOD:   Continuing to review.  We were

4    just doing it on a rolling basis because we wanted to, as

5    soon as we became aware of things, to give them in

6    groupings and do the clawbacks on a rolling basis.  And as

7    we had seen in case law, that had been permissible,

8    clawbacks on a rolling basis in courts, in this court

9    specifically and throughout the Second Circuit that people

10   had done clawbacks under protective orders on a rolling

11   basis as they had discovered additional documents, and we

12   were trying to be timely and when we discovered it, to let

13   them know and let them also know that we were continuing

14   our re-review.  And that's how, that's under the premise

15   that we were acting.

16         THE COURT:   And that was the last clawback, the

17   17?

18         MS. MILLROOD:   That was the clawback, October -

19   -

20         THE COURT:   I say 17, 67 pages, but I think 71

21   documents.

22         MS. MILLROOD:   Yes.  Seventeen additional

23   documents, and now we have completed our review.  There

24   are 27 additional documents that we have found.  They

25   appear several times --

1

2          THE COURT:   I'm sorry, 27?

3          MS. MILLROOD:   Twenty-seven additional.  Now we

4    have --

5          THE COURT:   Wait, when did the 27 happen?

6          MS. MILLROOD:   We have not put that in a

7    clawback, specific clawback request yet.

8          THE COURT:   They're about to get another one?

9          MS. MILLROOD:   Yes.

10         THE COURT:   I'm sorry, I thought you just told

11   me it was all done on October 14.

12         MS. MILLROOD:   No, if I said that, I'm sorry.

13   We were continuing - what I was saying is as we were

14   discovering them, we were identifying those on a rolling

15   basis so that they can know --

16         THE COURT:   So October 14 was not the - when

17   you asked for the 17, in your view that was not the end of

18   it.

19         MS. MILLROOD:   Yes, in our view --

20         THE COURT:   You were still doing work.

21         MS. MILLROOD:   We were still reviewing.

22         THE COURT:   I don't understand.  Were you going

23   through documents in a certain range?  What made you

24   decide on October 14 to claw back the 17 and not wait till

25   you were done?

1                        PROCEEDINGS                    23

2            MS. MILLROOD:   Because we just wanted to timely

3    notify them as soon as we could of what we had found.  We

4    were trying --

5            THE COURT:   Well, you didn't find all 17 at

6    once.  You I assume found them one at a time.  What made

7    you --

8            MS. MILLROOD:   I think --

9            THE COURT:   -- pick the 17?

10           MS. MILLROOD:   I think that she was looking

11   through them in blocks by Bate range and was doing it in

12   blocks, and as we would do it, we would put it down and

13   clawback on a rolling basis.  And what we thought we were

14   doing was being timely, and that was our intent.

15           THE COURT:   So --

16           MS. MILLROOD:   As soon as we --

17           THE COURT:   When are you going to finish this

18   review?

19           MS. MILLROOD:   (no response)

20           THE COURT:   When are you going to finish the

21   review?

22           MS. MILLROOD:   We have finished the review,

23   Your Honor.

24           THE COURT:   On what date did you finish the

25   review?

 1

 2          MS. MILLROOD:   Two days ago.

 3          THE COURT:   I didn't notice from your brief

 4   that you said that you were continuing to review.  Did you

 5   say that?

 6          MS. MILLROOD:   I'm not sure, Your Honor.  I can

 7   look.  I don't - I'm not sure.  But I do know that counsel

 8   had told us we have stopped reviewing them.  We didn't

 9   think that --

10          THE COURT:   Counsel had told us?

11          MS. MILLROOD:   Counsel had told us we

12   completely ceased our review.  We're going to wait for --

13          THE COURT:   They had ceased their review.

14          MS. MILLROOD:   Yes, that they had ceased

15   reviewing anything at all, that we were waiting for your

16   decision before we did anything else with discovery --

17          THE COURT:   Well, wait, wait, even after you

18   uploaded it back onto their server on October 3, they were

19   supposed to not look at it?  I don't understand.

20          MS. MILLROOD:   Yes, well, after October 3 we

21   provided an additional clawback and they --

22          THE COURT:   No, no, no, no, no.  You just said

23   to me that you believed that they were supposed to cease

24   their review and that they believed they were supposed to

25   cease their review.

2            MS. MILLROOD:   Yes --

3            THE COURT:   I'm trying to understand --

4            MS. MILLROOD:   Yes.

5            THE COURT:   Let me finish my question.   I'm

6   trying to understand whether that ceasing would've applied

7   once you re-uploaded all the documents on October 3.

8            MS. MILLROOD:   Yes, they had sent us an email

9   after that, after the October 3 upload saying this is

10  going to be a motion, and until we get a decision from the

11  judge, we're not doing anything further with what's been

12  uploaded, and we've deleted it from our upload system.   I

13  can tell you the date of that if you're like it.

14           THE COURT:   Okay.

15           MS. MILLROOD:   That's what was represented by

16  defendants' counsel to us in an email.

17           THE COURT:   Okay, again, I mean it's just hard

18  to understand – I mean let's assume for the moment – I

19  mean I might've been fine with your – and I still might be

20  fine, who knows – but it would've been very easy to say

21  once you realized there was inadvertently produced

22  material.  You said stop everything, let us do it.   And

23  then when you were done, you said, okay, now we're done,

24  here's the documents back, and we didn't, we clawed back,

25  you know, a hundred whatever of them.  That would've been

2  very understandable.

3            So what's less understandable is what happened

4  here because two things, one, you're giving them the

5  documents back and saying go ahead and use them.  It

6  doesn't seem clear to me that you said, maybe you should

7  point it out to me again – look at that letter, is it

8  exhibit 10?

9            MS. MILLROOD:  12 I think, Your Honor.  The

10 last page of 12, and that was on October 5.

11           THE COURT:  The last page of 12.  Where it sys

12 we reserve our right?

13           MS. MILLROOD:  We specifically reserve the

14 right --

15           THE COURT:  But that's not what I'm talking

16 about.  Everyone's always reserving their rights.

17           MS. MILLROOD:  No, that --

18           THE COURT:  I'm talking about the part where

19 you say -

20           MS. MILLROOD:  -- that we might find in our

21 continuing --

22           THE COURT:  Can I just finish my sentence

23 before you speak?  I'm talking about a part where you

24 might say we are still reviewing and our review is not

25 completed, and there may or may not be clawbacks in the

1                          PROCEEDINGS                    27

2   future.  Do you say anything like that?

3              MS. MILLROOD:    I think our continuing review.

4              THE COURT:    Where's continuing review?

5              MS. MILLROOD:    That's what I was reading, to

6   claw back --

7              THE COURT:    Oh, the last sentence.

8              MS. MILLROOD:    That we might find in our

9   continuing --

10             THE COURT:    That was the clue.

11             MS. MILLROOD:    Continuing review.

12             THE COURT:    Continuing review.  Okay, and the

13  continuing review ended two days ago.

14             MS. MILLROOD:    Yes, it has been completed --

15             THE COURT:    And they're about to get another

16  clawback letter.

17             MS. MILLROOD:    Twenty-seven additional new

18  documents that had not been previously clawed back, it

19  appears at several points in the production other than at

20  27 places because there's email chains where, you know,

21  the same email may be, you know, attached onto three more

22  emails that came after it.  So a lot of these documents

23  appear in several places in the document production even

24  though it's one document that's being withheld on the

25  basis of privilege.

```
 1                          PROCEEDINGS                    28

 2             Really, what we were trying to do, Your Honor,

 3    is be timely and give a rolling clawback request as we

 4    found them, to provide them to defendants so they knew

 5    exactly what we were clawing back rather than waiting --

 6             THE COURT:   But I --

 7             MS. MILLROOD:   -- two months to give one --

 8             THE COURT:   -- did you expect - where was the

 9    part we were just talking about you told me they weren't

10    going to be looking at it anymore?

11             MS. MILLROOD:   Yes, there is an email --

12             THE COURT:   That was their decision, not yours?

13             MS. MILLROOD:   Yes, that was an email that was

14    sent to us from defendants --

15             THE COURT:   What date?

16             MS. MILLROOD:   -- saying we're not going to --

17             THE COURT:   What date?  I'm sorry, you have it

18    as what exhibit?

19             MS. MILLROOD:   I have to find it, Your Honor.

20    I apologize.

21             THE COURT:   Take your time.

22             MS. MILLROOD:   It's in an email.  It might just

23    take me a minute to find.

24             THE COURT:   Take your time.

25             MS. MILLROOD:   I'm sorry, I don't know the
```

1                              PROCEEDINGS                    29

2   exhibit off the top of my head.  It was an email after

3   October 3 where the defendants won't --

4              THE COURT:  Wait, just find it, take your time.

5   Do you speak, find it, and then let me know what the

6   exhibit is.

7              (pause in proceeding)

8              MS. MILLROOD:  Here it is, Your Honor.  It's

9   exhibit 13.  I can read it to you --

10             THE COURT:  Hold on, hold on.

11             MS. MILLROOD:  It's also on October 5.

12             THE COURT:  Well, they seem to be talking about

13   the four documents used as exhibits in the depositions,

14   not the entire production that was uploaded.  Am I right?

15             MS. MILLROOD:  Our office will (indiscernible)

16   further review of these materials or using them in the

17   course of this litigation.

18             THE COURT:  You're talking about the – in the

19   first sentence, four documents used as exhibits.

20             MS. MILLROOD:  I thought, well, we understood

21   that to mean --

22             THE COURT:  Oh, wait, here we go.  "Further,

23   because of the confusion surrounding the reproduction, we

24   will not download any of these October 3 files."

25             MS. MILLROOD:  That was re-upload to their FTP

```
 1                           PROCEEDINGS                      30
 2  site.
 3            THE COURT:   You viewed that as being the entire
 4  October 3 files.
 5            MS. MILLROOD:   Yes.  That was clearly our
 6  understanding.  They didn't have the documents anyway,
 7  they weren't going to be re-reviewing them, we could do it
 8  on a rolling basis.  We were intending to be timely.
 9  We're trying to do in good faith what we thought was the
10  best way to do it and weren't intending to be reckless in
11  any manner.  If anything, we were trying to let them know
12  as soon as we found things in groupings that we found
13  additional inadvertently produced privileged documents.
14  Documents that we previously withheld in our client's
15  documents and provided --
16            THE COURT:   Well, are there some - I know that
17  wasn't true in the original group that you clawed back.
18  Was that true in later clawback groups?
19            MS. MILLROOD:   I believe, yes.  I cannot tell
20  you exactly how many for sure, but I am, I believe yes, in
21  the later clawback at least some of them were included in
22  our original privilege log from our client's documents.
23  Some were not, some were.  You know, some of the
24  attorney's work product were included in there that wasn't
25  provided to our clients or included in our client's
```

1                          PROCEEDINGS                    31

2  documents.  Or could've been communications between the

3  attorneys that did not involve my client that he wasn't --

4            THE COURT:   So when are they going to get the

5  letter on the last clawback?

6            MS. MILLROOD:   We could have it sent out today,

7  Your Honor, tomorrow.

8            THE COURT:   Why didn't you send it out before

9  if you had it done two days ago?

10            MS. MILLROOD:   I think that Jacqueline is in

11  the process of preparing it and putting the list together,

12  and she's also done her best to provide cross-references

13  to show where it appears in other places in the

14  production.  We were really trying to do our best to be as

15  forthcoming as possible, identify everywhere where it

16  appears and not just give the Bate stamp for those

17  documents cross-referenced to where it's included in the

18  privilege log, and provide a privilege log for it as well,

19  Your Honor.

20            THE COURT:   Okay, let me hear from the other

21  side.

22            MR. WANG:   Thank you, Your Honor.  There's a

23  lot but there's not a lot in terms of the confusion here

24  and in terms of the timing.  I'm going to try if I could

25  to try and give it some context.  I understand that Your

1                           PROCEEDINGS                    32

2  Honor, and I think properly so, is focusing on the

3  Antonino and Judd documents and that the production in

4  August of 2017, but we need also to go back a little bit

5  and look at it in context.  I think one way to help, and

6  we have prepared a timeline.  Unfortunately, I couldn't

7  put it on a smaller piece of paper, but I think it would

8  be helpful.  There's nothing here that's not in our

9  papers, but it's a timeline that I think might be helpful.

10              THE COURT:   Do you have a copy for the other

11  side?

12              MR. WANG:   Yes, of course, if I may hand it up.

13              THE COURT:   My clerk will bring it.

14              MR. WANG:   Sure.

15              (pause in proceeding)

16              MR. WANG:   Okay, so here's the point --

17              THE COURT:   Hope we're not going to go through

18  all of this.

19              MR. WANG:   No, no, by no means, and there's

20  something that's in red for a reason because I think

21  that's really the critical thing to focus on, and we'll

22  talk about it in a moment.

23              First of all, before the Antonino and Judd

24  productions, which was the 90,000 document production,

25  footnote, Mr. Pence, who sits next to me, reviewed the

1                          PROCEEDINGS                      33

2   entire 90,000 documents by itself in five days.  So it was

3   not a Herculean task to deal with it.  It's 90,000 pages.

4   It's not 90,000 documents.  It was not difficult to do.

5   But apart from that.  They had given us a privilege log

6   long before because, if you think about this, Judge, and,

7   of course, the irony that this is all in the context of a

8   plaintiff's malpractice case, doesn't escape me certainly,

9   but we're dealing with, by definition, attorney-client

10  documentation, and they had given us, dribbled out over a

11  long period of time, it's the subject of the second leg of

12  our motion, documents over a long period of time in

13  unusable formats and given us privilege log, and then

14  dribbled out of the privilege log that they had given us

15  on I think five or six separate occasions, they had given

16  us documents that we challenged as we were looking at

17  their privilege log.  So this was not some new concept,

18  the idea that we had, A, that we had privileged documents,

19  and, B, that we were trying to be very careful.

20          I'm putting aside our additional motion which

21  really has nothing whatsoever to do with this. That's kind

22  of an overarching point that Your Honor heard and ruled

23  on.

24          So they had retracted privilege for some of

25  those documents over time.

```
 1                        PROCEEDINGS                    34

 2            Ultimately then on August 10, they get documents

 3  from Antonino and Judd and produced them to us.  That's

 4  the 90,000 pages of documents.  Now, think about this for

 5  a moment, Judge, these are coming from a third party, a

 6  third-party attorney.  Anybody would understand that by

 7  definition these documents should be looked at before they

 8  are produced.  I mean it's just elementary.  Because what

 9  I'm trying to do, Judge, is talk to your invocation of the

10  completely reckless standard, and I'm going to pass over

11  the inadvertent versus not inadvertent point which we

12  believe is a separate ground.

13            So they know that these documents are from a

14  lawyer --

15            THE COURT:   I'm sorry, I'm intrigued by what

16  you just said.  There's a separate inadvertent/non-

17  inadvertent point?

18            MR. WANG:   Well, it's not separate, it's

19  related to it, but we'll --

20            THE COURT:   That's fine.

21            MR. WANG:   No, just for a second, Judge, the

22  reason I say that is because the main substance of their

23  defense is we've got a stipulation, it's done.  We can

24  outsource our privilege review to you, and anytime you use

25  something, this is just this endless loop of our being
```

2  able to claw documents back, and we know that that's not

3  the case and that's not what the stipulation provides.

4  But I'm putting that aside.  I want to focus, I hope, on

5  what Your Honor is focusing on.

6           So they know that they get these documents from

7  a lawyer, and what appears to be the case from the

8  affidavits we now have seen in response to our motion is

9  they really just turned those documents over willy nilly

10 in the first instance, the 90,000 documents.  I will tell

11 you, Judge, as a matter of law that's exactly what

12 happened in that CFT case when they say turning over a

13 third party's documents, you know, without that careful

14 review is itself the definition of completely reckless.

15           THE COURT:  But you're saying they didn't

16 withhold any documents as privileged in the August 10

17 production?

18           MR. WANG:  We got no privilege log.  So far as

19 I can tell from their, a point when they first gave those

20 to us on August 10, that was kind of a wholesale

21 production, and what I understand to be the case is they

22 say the problem was that the format that they got them

23 from Antonino was such that it made a difficult,

24 impossible, problematic to do the review at that time.  So

25 so far as we can tell, as far as we can tell, again, we

1                            PROCEEDINGS                    36

2   had a categorical log, but we didn't have a document by

3   document log at all.

4            MS. MILLROOD:   We agreed to a categorical log.

5            THE COURT:   No, but did you identify any

6   materials --

7            MS. MILLROOD:   Yes.

8            THE COURT:   -- in the August 10 production --

9            MS. MILLROOD:   Of course we did, Your Honor.

10           THE COURT:   -- as belonging on the categorical

11  log?

12           MS. MILLROOD:   Of course we did.

13           THE COURT:   Do you have anything here that

14  shows that?  There seems to be a dispute here.

15           MS. MILLROOD:   I don't know if - I'm sure Mr.

16  Pence, who reviewed the categorical privilege log, can

17  tell you that we provided an extensive categorical

18  privilege log --

19           THE COURT:   On that date?

20           MS. MILLROOD:   With the August 10 production,

21  yes.

22           MR. WANG:   Judge, I'm not disputing they did

23  that.  I'm trying --

24           THE COURT:   Well, that's my question to you.

25           MR. WANG:   No, no, what I'm trying to do is

1                         PROCEEDINGS                    37

2   deal with their affidavits when they explain what the

3   problem was with the August 10 production.  When they got

4   it from Antonino, they got it in a format --

5            THE COURT:   No, I asked you - Mr. Wang, it

6   would be better if you made a mistake to tell me because

7   otherwise I'll never trust anything you say.  I asked you

8   - I said are you saying that when they made the August 10

9   production, they didn't identify any documents as

10  privileged, and your answer was yes, and they said they

11  produced a categorical privilege log at that time.

12           MR. WANG:   I thought I said (inaudible); if I

13  didn't, I apologize for that.  But there was a categorical

14  log but not a document by document log.

15           THE COURT:   Okay, well --

16           MR. WANG:   They have not looked at it document

17  by document.  And the reason --

18           THE COURT:   No, but does the categorical log,

19  it doesn't give Bates numbers?  Does it give Bates

20  numbers?

21           MR. WANG:   Mr. Pence reviewed the log that we

22  got from them with the August 10 production.  I don't

23  believe that it did have Bates numbers.

24           THE COURT:   Then what did they say?  I don't

25  understand.

1                        PROCEEDINGS                    38

2              MR. PENCE:   Your Honor, the categorical

3    couldn't have Bates numbers because there were documents

4    withheld.  So there was no Bates number to correspond to a

5    withheld document.  They just included a log of ranges of

6    communications and dates and the people involved.

7              THE COURT:   Oh, but there was some

8    identification of it.

9              MS. MILLROOD:   Yes.

10             THE COURT:   All right, so, in other words, here

11   is the problem, Mr. Wang, is you implied that they – you

12   know, if you overstate this, it's going to be bad for you.

13   You implied that they handed over 90,000 documents without

14   having reviewed it for privilege, and that's demonstrated

15   by the, you know, by the fact that there was no privilege

16   log or whatever.  But, in fact, in their minds they had

17   not on that, they had withheld materials on that date.  So

18   don't overstate your case.

19             MR. WANG:   No, and I certainly don't mean to,

20   nor in my view do I have to.  What I was trying to respond

21   to in particular was their excuse that they proffered as

22   to why there was a problem with the first 90,000, and my

23   response to that is how could there have been a problem

24   since they should have done at that time before they gave

25   us those documents a document by document review.  Because

```
 1                          PROCEEDINGS                    39
```

 2   they knew they were coming from their counsel --

 3              THE COURT:   They claim they did.

 4              MS. MILLROOD:   We did.

 5              THE COURT:   They say they did it.

 6              MR. WANG:   Well, Your Honor, there are --

 7              THE COURT:   And they just messed up.

 8              MR. WANG:   -- hundreds, hundreds and hundreds

 9   of documents, thousands of pages --

10              THE COURT:   Well --

11              MR. WANG:   -- that were withheld, that were

12   turned over to us at that time.

13              THE COURT:   Okay, but --

14              MR. WANG:   So - and this is all against the

15   background, Your Honor, of their rushing to depositions.

16   We had a looming deadline, and we talked to them about

17   that and suggested that we move the deadline to allow us

18   to get our hands around it.  Because not only were we

19   having the privilege problems, but we were continuing to

20   have the problems of how they were producing documents in

21   manners that were not usable to us and not in conformance

22   with the agreed-upon protocols for how they would be

23   produced.  They refused to do that.  They said no, we're

24   not going to agree.  We're going to have these

25   depositions.

1                              PROCEEDINGS                    40

2              We asked for them to reproduce the documents.

3    Finally, finally, this is on the timeline, on September 1,

4    well, on August 24 we finally said, okay, we'll just take

5    PDF documents.  Just give us what we've got because we had

6    depositions now that were looming.  On September 1 when we

7    were continuing to have these discussions, Mr. Frank, the

8    lead lawyer, writes back an email with I think it had six

9    words on it essentially says there are no deficiencies.

10   So as of September 1 he is declaring there are no

11   deficiencies with our production; it is complete.

12             THE COURT:   Well, hold on.  Deficiencies refer

13   to privilege or to something else?

14             MR. WANG:   Good question.

15             THE COURT:   Okay, well, in your mind --

16             MR. WANG:   All he said was there were no --

17             THE COURT:   In your mind there may have been

18   privilege; in their mind there may have been something

19   else.  Go ahead.

20             MR. WANG:   So we have this, in any event, a

21   blanket statement there are no deficiencies, go forward,

22   and he's saying very, very clearly on multiple occasions

23   we're not going to extend time, we're going forward with

24   the depositions.

25             Then on September 15, because now we're

2   reviewing the documents that we have, on September 15 Mr.

3   Pence comes to me and says, look, there are documents,

4   they seem to be privileged.  So I said stop, we got to

5   stop, our ethical obligation is to stop our review.  He

6   immediately notifies them and says, look, we've come upon

7   some documents that appear to be privileged.  You should

8   take a look at your production – not just take a look at a

9   particular document – take a look at your production and

10  we're going to stop.  Tell us what – actually what it says

11  was tell us what you want us to do.  Can we continue our

12  review because we have a deposition that was coming up at

13  that point.  I think it was within the next weeks if not a

14  shorter period of time.  The response comes back, you can

15  continue your review, and then just a couple of moments

16  later, whoop, stop the review, we need to do this again.

17          And that's, by the way, what led to the first

18  letter request to Your Honor on September 26, and this is

19  fairly critical.  Because as far as we were concerned,

20  they had already blown it by what they had done.  Again,

21  apart from all the other deficiencies that we had from the

22  very beginning of this case, this was really the straw

23  that broke our camel's back.

24          So now we're at a dead stop and they are

25  continuing to refuse to move the depositions.  So we're

1                            PROCEEDINGS                    42

2   just waiting to see what can happen while they review.

3            Now, Judge, if there was any question, if there

4   was any question as to whether or not they were required

5   to do a full and complete review at that time when we said

6   to them, look, there are documents here that appear to be

7   privileged, and they then said stop, whatever question

8   there might have been, whatever obligation they might have

9   had was now at an end.  They clearly had the obligation at

10  that time, and then ultimately what they did was on

11  September 19 they clawed back 113 different documents

12  after we had told them about this.  We didn't think that

13  that was appropriate, and we then ultimately then on

14  September 26 I think it was we wrote our letter to Your

15  Honor seeking a pre-motion conference which led to this

16  motion.

17            But at that same time something else --

18            THE COURT:   I think your asso --

19            MR. WANG:   -- this is what we haven't --

20            THE COURT:   I think your associate, colleague

21  is pointing perhaps to the claim that says that Arendt Fox

22  conferred the clawback complete.

23            MR. WANG:   I'm going to come to that because

24  that's the September 25 letter.

25            THE COURT:   This is the big, I mean --

1                          PROCEEDINGS                    43

2              MR. WANG:   This is the critical letter in my

3    opinion.

4              THE COURT:   Exhibit what?

5              MR. WANG:   DD.

6              THE COURT:   Let me just read it before you go

7    on.  It's like an email.  Wait, this is from you guys.

8              MR. WANG:   This is from us to them, and then

9    there'll be a response.  This is our email of September 25

10   --

11             THE COURT:   Where's the response, just so I

12   know?

13             MR. WANG:   EE.

14             THE COURT:   Okay, give me a second to read them

15   both.

16             (pause in proceeding)

17             THE COURT:   Well, EE doesn't seem to address

18   the big – there's a big factual dispute between the

19   parties, and it was not raised in the briefs, and it seems

20   pretty simple, and you're welcome to address it, but we

21   got to deal with it, and it may be just miscommunication.

22             In their mind apparently, they were not doing

23   what normally would've happened, which is you find out

24   there's privileged documents, you take the whole thing

25   back, and you say I'll let you know when I'm ready, and

1                           PROCEEDINGS                    44

2  then I'll give it back to you without the privileged

3  documents.  In their view they were going to go through

4  that whole thing, it was going to take, they were going to

5  take whatever time they took for it.  Apparently, it took

6  two months.  And in the meantime, they were going to let

7  you work with the documents knowing that they might at any

8  time claw back some of them because of this review that

9  was going to take two months.  That's the big factual

10 dispute because they say that's – or maybe it's not even a

11 factual dispute.  Maybe they just failed to communicate it

12 to you.

13         But that's what's going on here.  That's their

14 defense to all this.  Their defense is we gave up that

15 production, we made a mistake, we understand that, we

16 weren't reckless, and we then did a heightened scrutiny

17 that took two months, and now we're done, and it's over.

18 In the meantime, they say we let you work with the

19 documents because we thought that would be prejudice us

20 and that we would at any time be able to claw things back

21 even though (indiscernible).

22         So I had – I raised this issue about the

23 September 25 correspondence because you characterize it as

24 saying you confirmed the clawback is complete, but they

25 don't engage you in that.  I mean I haven't thought about

1                          PROCEEDINGS                    45

2  your email to see if it's really confirming the clawback

3  is complete, but this response doesn't even address this,

4  the issue.  Go ahead.

5          MR. WANG:  Okay, so on the 25th, Judge, and,

6  again, keep in mind this is really, this was not part of

7  the letter that we wrote to you, the pre-motion letter the

8  next day.  We wrote, if you look under clawback, the

9  section under exhibit DD, first, the first paragraph under

10  clawback confirms what, how we had been properly dealing

11  with the documents that by that time, the 113 documents

12  which they said – and, again, just to go back, we told

13  them there were privileged documents.  They then take some

14  time.  Meanwhile, not delaying depositions, and they say

15  here are the documents to review.  Yes, they reserve

16  rights with respect to that.  They reserve rights.  But at

17  no time did they say what Your Honor said, which is, look,

18  we got depositions, you can keep using these.  As we find

19  things, we'll let you know.  There was no such

20  discussions.

21          THE COURT:  Well, they point to one sentence

22  they feel says that.  We read it earlier.

23          MR. WANG:  Actually, they point to one word --

24          THE COURT:  One word, right.

25          MR. WANG:  -- which is continuing.

1                            PROCEEDINGS                    46

2            THE COURT:   Continuing, review is continuing.

3            MR. WANG:   Yes.

4            THE COURT:    Right, that's their, that's how

5    they think they informed you of this.

6            MR. WANG:   Well, and I can tell you that in

7    addition to the emails Mr. Pence was talking to Miss

8    Millrood and I think others, but certainly Miss Millrood

9    on a very, very consistent basis, because part of what we

10   were trying to do was to say, hey, we need time, A, that

11   the documents are not in this usable format, but, B, we've

12   got to get our hands around this, and before we take

13   depositions, and they're right, somebody was coming in

14   from California.  They had made it clear we are not going

15   to bring anybody back for depositions.  You're going to

16   get one shot at it, that's it.  We had a discovery

17   deadline, and they would not move that, they would not

18   move that.  So we're trying to do the best we can --

19           THE COURT:   You know, in the future --

20           MR. WANG:    -- under those circumstances.

21           THE COURT:   In the future, if something like

22   this is happening, whether the other side agrees to extend

23   or not does not prevent you from going to the Court and

24   saying, you know what, there still may be clawbacks here.

25   This is very inefficient.  Can we get this resolved before

1                          PROCEEDINGS                    47

2   depositions continued?  I would've happily listened to

3   that and probably would've granted it.

4              MR. WANG:   Well, in fact, Your Honor, what

5   happened --

6              THE COURT:   Later it happened.

7              MR. WANG:   Well, that's right.

8              THE COURT:   But you could've done it on day

9   one.

10             MR. WANG:   You're right, and I don't want to

11  say no good deed goes unpunished, but we were trying to --

12             THE COURT:   They may say the same thing because

13  their view was why don't we just try to not delay

14  everything since we're willing to live with the

15  possibility that you might see a privileged document

16  again.

17             MR. WANG:   No.  Well, I think what happened at

18  the deposition suggests that's not at all what they were

19  doing.  I think that's something I think that Your Honor

20  is positing now which is a, if I may, a spin on it.  But

21  that's not what was happening --

22             THE COURT:   No, but that's what they say they

23  were doing.

24             MR. WANG:   That's what they're saying now, but

25  that's not what they were saying at the time we're doing

1                              PROCEEDINGS                    48

2    it at the time.  So what happens here?  We --

3              THE COURT:   If you want to point to something

4    that's inconsistent with the idea that they were doing a

5    continuing review, tell me.

6              MR. WANG:   Well, I think when we – a couple of

7    things.  Number one, when we say in this email, "Now that

8    we have deleted the clawed back documents pursuant to the

9    protective order, we will continue preparing for the

10   upcoming depositions with the understanding that Windsor

11   has clawed back all documents from its productions that it

12   deems privileged and inadvertently produced."  So that

13   couldn't be clearer.

14             THE COURT:   I understand.  You're saying it,

15   but she doesn't respond to that.  I guess your view, I

16   think --

17             MR. WANG:   Your Honor --

18             THE COURT:   Maybe your view is silence --

19             MR. WANG:   Now I'm looking – and we've seen in

20   all their emails, you've seen them, we have a little

21   mantra at the end, we reserve our right to continue – you

22   won't find it in exhibit, in EE.  There's nothing in EE

23   which says this is a response to Adam Pence's September 25

24   email, and it's response.  It goes over the various

25   things.  And there's not one thing, including no

1                        PROCEEDINGS                    49

2  reservation of rights or including – that would've been

3  the place to say --

4              THE COURT:   I agree.

5              MR. WANG:    -- what do you mean.  You're

6  incomplete.  We're not complete.  We're continuing to

7  review.  Because that's just not what was happening at

8  all, Judge.  They just goofed.  They just goofed with

9  respect to this.  And, again, we can argue as to whether,

10  at what level goofing becomes the equivalent of reckless,

11  but they just missed it.  And how do I know that?  Because

12  then when we took the deposition on October 4, in the

13  middle of the deposition where we now obviously feel,

14  what, we can use these other documents?  It's perfectly

15  okay for us to use these additional documents.

16              As soon as we start using the documents, what

17  happens?  Mr. Frank says, oh, he looks at, he – Mr. Frank

18  says, oh, I'm calling this back, with the first one.  And

19  I said what?  How can you do that in light of what we were

20  talking about?  To which he then says, this is at page 27

21  and 28 of the deposition, I said to him, "In the spirit of

22  being courtesy, Mr. Frank, I appreciate your comment.  You

23  can close that loop.  Just tell me whether or not you had

24  access to the privileged documents."  And then he says,

25  "Actually, I don't know the answer to that because I'm not

1                              PROCEEDINGS                    50

2   the person in my office that would've reviewed any of the

3   documents.  I actually don't know."  That didn't stop him

4   for a moment from, as a document, he'd look at it and say,

5   oh, I'm clawing that back, I'm clawing that back.

6              THE COURT:   Why is that inconsistent with --

7              MR. WANG:   Because he --

8              THE COURT:   Let me finish my sentence.  We're

9   on the record.

10             MR. WANG:   Oh, sorry.

11             THE COURT:   Why is that inconsistent with a

12  continuing review?

13             MR. WANG:   It's not inconsistent with a

14  continuing review.  It is inconsistent with the idea of

15  claiming inadvertence.  When you don't know one way or the

16  other --

17             THE COURT:   Oh, well, that's a different topic.

18  I didn't know we were talking about that.

19             MR. WANG:   No – yes, you're right, it is, but

20  it's --

21             THE COURT:   You're welcome to talk about it,

22  but that wasn't – I thought I had asked you a question

23  about whether something had happened at the deposition

24  that was inconsistent with their contention all along that

25  there was a continuing review going on which you, somehow

1                           PROCEEDINGS                    51

2  was not sufficiently communicated to you.

3            MR. WANG:   Because, Judge - I'm sorry if I

4  didn't make myself clear.  At the deposition, Mr. Frank

5  would have said what're you talking about?  We've having a

6  continuing review.  Perhaps he would've said we've told

7  you about that, which they hadn't.  But this is an ongoing

8  review.  Yes, you can - I'm not faulting you for using the

9  documents.  But that wasn't at all what happened.  He

10  said, no, no, this was inadvertently produced when he

11  didn't know one way or the other whether it was advertent,

12  inadvertent, or otherwise because he wasn't, he didn't, he

13  certainly didn't say in words, substance, hinting that it

14  was a continuing review.

15            And I can tell Your Honor that other than that

16  single word that they point to where it uses the word

17  continuing, there was no such indication.  There was no

18  such indication.  And, in fact, what happened - and now

19  what happened thereafter?

20            So I guess I can kind of put my head around the

21  113 documents that they first clawed back and to say okay,

22  we could have an argument as to whether it was

23  inadvertent, advertent, but I understand what they

24  purported to do.  But after that, this dribbling of

25  documents, as we find them, in other words, as we give

1                         PROCEEDINGS                    52

2  them to them, and say, oop, that one we have to take back.

3  They outsourced the entire process here --

4           THE COURT:  The problem, Mr. Wang, is that

5  would be a great argument if there had been a contention

6  that they had completed their re-review on October 3, but

7  that is apparently not the contention.  The contention is

8  there was a review going on, and it was only over two days

9  ago, and you haven't heard the last of it.

10          MR. WANG:  And how can that be Your - by the

11 way, that actually is consistent with what Mr. Frank has

12 said and what his papers before you say, which is this is

13 continuing ad infinitum.  This can continue --

14          THE COURT:  Well, no, it's now apparently over.

15          MR. WANG:  His argument - I heard that and I

16 took note of it, but he also has said this continues

17 through trial.  Anytime we see a document, we always have

18 the right to do it --

19          THE COURT:  Well, I'm not making any rulings

20 about future production, so don't worry about that.

21          MR. WANG:  But I guess my - and you're right, I

22 was being somewhat sarcastic in the way I was presenting

23 that, but the point, Your Honor, is that they certainly

24 didn't indicate that this was, A, this was continuing or,

25 B, that their whole point has been that they have this

1                          PROCEEDINGS                      53

2   unlimited right to pull these documents back, and to say -

3   -

4             THE COURT:   They're not saying - listen, I just

5   don't want to mischaracterize what's going on here.   I

6   don't think they're saying they have an unlimited right.

7   I think what they're saying is - see, the way it was

8   presented in the motion by you was the way you're arguing

9   it, which is they did a production, they clawed back 113

10  documents, and then - saying that was it, it's over,

11  here's the 113, and then discovered they messed up, and

12  then discovered they messed up.   But that's not the way

13  they're presenting it at all, and, you know, it makes a

14  big difference because I agree with you that if someone -

15  and this will now inure to your benefit should there be a

16  future clawback - if you realize that you failed to - I'm

17  sorry, strike that.   If you realized that you produced

18  privileged documents and then you claw, and then you say,

19  wait, I produced, I obviously did something wrong in my

20  August 19 production, you are certainly under — I'm sorry,

21  August 10 production - you're certainly under a duty to

22  then maybe do something beyond what you did at the August

23  10 production to make sure that you now get back

24  everything.   And if you then do that and say, okay, now

25  here's the remaining 200 documents I want clawed back,

1                           PROCEEDINGS                    54

2   thank you, good night, then if you discover a document at

3   that point, you might say, you know what, you were under

4   the heightened duty, I don't know that you get to do it

5   again.

6           But under their scenario, that's not what's

7   happened here at all.  Do you understand that under their

8   scenario that's not it?

9           MR. WANG:   I understand that, but my response

10  to that is that's a comfortable scenario that they've now

11  are putting forward as a justification.  That if you look

12  at the record as a whole of how this presented and what

13  was happening again against the backdrop A, backdrop A of

14  having a long period of time with other privileged

15  documents that were being dribbled out over time to which

16  we were objecting, B, they're giving back the documents

17  after we first alerted them to it on September 15.  C, the

18  fact that these were documents from a lawyer, so these

19  were, this was something they had, I would say, a

20  heightened duty in any event to be looking at.  You can't

21  now say, oh, no, I was always doing this in a continuing

22  way and you understood that.

23          They had a duty – Judge, I'll put it to you this

24  way, actions have consequences.  The actions and the

25  inactions that they took and didn't take with respect to

1                          PROCEEDINGS                    55

2  this cache of documents – I'm focusing now on the

3  Antonino-Judd documents.  I'm putting aside all the things

4  that have come before.  It is reckless.  What they did was

5  just reckless, and they're trying to fill the hole now --

6              THE COURT:   Wait, what was reckless, the

7  initial --

8              MR. WANG:   The way they deal – the way --

9              THE COURT:   Let me finish my sentences.

10             MR. WANG:   -- they dealt with it.

11             THE COURT:   What was reckless, the initial

12 August 10 production or something else?

13             MR. WANG:   Both.

14             THE COURT:   I mean --

15             MR. WANG:   The August --

16             THE COURT:   Well, here's what I think you

17 believe because you say it in your brief.  Let me find it.

18             (pause in proceeding)

19             THE COURT:   If they take every precaution

20 possible not to produce privilege materials and they get

21 through, it had to have been advertent, right, that's your

22 view?

23             MR. WANG:   Yes, or actually, to be more

24 precise, not inadvertent, because I'm not that advertent

25 is the same --

1                                PROCEEDINGS                          56

2           THE COURT:   No problem.   It's not inadvertent.

3    And if they do anything less than taking every precaution

4    possible, that by itself is completely reckless, that's

5    what you're saying.   Standing by it?

6           MR. WANG:   Yes, Your Honor.

7           THE COURT:   Okay, so there's no such thing as

8    inadvertent production then.   If you do everything and it

9    gets through, then it's not inadvertent, and if you don't

10   do everything you possibly can, that's reckless.   When do

11   you ever get to claw back?

12          MR. WANG:   I think Your Honor – that's a good

13   point.   I think, Your Honor, that in – and maybe this is

14   somewhat inconsistent with the way we phrased this in a

15   brief.   That if they had taken appropriate steps to review

16   the documents when they got them from Antonino and Judd,

17   and even looking at --

18          THE COURT:   Is it possible to take appropriate

19   steps and have privileged documents get through?

20          MR. WANG:   Yes.

21          THE COURT:   Okay, so maybe that happened on

22   August 10.   No?

23          MR. WANG:   That's what I was going to say, and

24   that would account for, when they didn't do it, we alerted

25   them to it when we saw it, and then they clawed back 113

1                        PROCEEDINGS                    57

2  documents.

3          THE COURT:   Right, okay.  Go ahead, keep going.

4          MR. WANG:   So, as I say, that I can get my head

5  around, that somebody could make an argument – they'd have

6  to show what they did, they have to show what they did --

7          THE COURT:   Well, they had affidavits.  Someone

8  says they went over it and looked at every page and so

9  forth.

10         MR. WANG:   Well, we certainly didn't know that

11 at the time.  All we knew is that we were getting now for

12 --

13         THE COURT:   I'm not blaming you for making the

14 motion, don't worry.

15         MR. WANG:   No, but that – and, again, I guess

16 that's my point which is at the time of the 113 documents

17 being clawed back, whatever you want to say about what

18 happened before, whatever, in our view, heightened duty

19 they might have had with respect to an attorney's

20 documents in this kind of a case, okay, the 113 documents

21 they clawed back, and now we see what they're presenting,

22 and if Your Honor determines that that's sufficiently

23 careful to fall under a category of inadvertent, I got

24 that.  I understand that.

25         THE COURT:   Or maybe not completely reckless --

```
 1                      PROCEEDINGS                    58

 2            MR. WANG:  Or --

 3            THE COURT:   -- as opposed to sufficiently

 4   careful.

 5            MR. WANG:  Yes, yes.

 6            THE COURT:  Go ahead.

 7            MR. WANG:  Not completely reckless.  So I can

 8   understand that.  Again, I can't speak to what they said

 9   they did or didn't do.  I saw it the same time Your Honor

10   saw it when it was in the papers.  But we've got so much

11   more here that happened afterwards, and that's really,

12   that's why this is in red.  What happened after the 113

13   documents is what really puts the punctuation point on

14   this, that we've got - and, by the way, Judge, we haven't

15   even mentioned the fact that these documents are wildly

16   relevant to our underlying claim, not because they're

17   privileged, but because of what they say, what they say

18   about --

19            THE COURT:  I assumed as much --

20            MR. WANG:  We're not talking about --

21            THE COURT:   -- that's often the case with

22   privileged documents.

23            MR. WANG:  This is not an academic matter what

24   we're talking about.  These are highly, highly relevant -

25   and, again, I could certainly invite Your Honor to do an t
```

1                        PROCEEDINGS                    59

2   in camera review, but I don't think that that's the issue

3   that's turning this one way or the other.  But we have a

4   situation here where after the 113 documents were clawed

5   back, whatever heightened duty they may have been under

6   beforehand, certainly as of September 15 they had that

7   duty to do a full and careful review.  There's no question

8   about that --

9           THE COURT:  Which they say they did.

10          MR. WANG:  And so --

11          THE COURT:  Which they say they did starting

12  then for the next two months.

13          MR. WANG:  And you know what, Judge, and what

14  your question to me really is is can that be inadvertent

15  or that can be, can that qualify as inadvertent after the

16  133?  Because Your Honor was talking about the 90,000

17  documents, 90,000 pages I should say, 90,000 pages of

18  documents, whether or not there could be an inadvertence

19  argument with respect to that, and I responded.  But once

20  that September 15, our letter to them saying we've seen

21  privileged documents, and once they say they've one a re-

22  review and here's out clawback of 113 documents, once that

23  happens, Judge, I say the answer is no.

24          And then cherry on top, when we write to them

25  and say look, you've taken back these 113 documents, we

1                              PROCEEDINGS                    60

2   don't agree with you that you could do that, but from this

3   point forward, everything else we've got we're going to

4   regard that that's advertent, not inadvertently produced,

5   and we're going to be reviewing it and using it, and they

6   say nothing.  Nothing.  They don't reserve their rights,

7   they don't say a word about it.

8            MS. MILLROOD:   That's not true.

9            MR. WANG:   Under those – in the letter that

10  they responded, they didn't say a word about that or have

11  any reservation of rights about a continuing review.

12  Under those circumstances, Judge, it is too late.  That is

13  a bridge too far, and that, I can't accept that as being

14  anything other than completely reckless under those

15  circumstances.

16           So if Your Honor were to ask me could there be a

17  way after the 113 documents to have some kind of a safe

18  harbor thereafter, only under the most extraordinary

19  circumstances, and there were no such extraordinary

20  circumstances here, and the reason I know that is, the

21  only thing they were doing as we were putting out a

22  document, they'd say, oh, that's privileged, that's

23  privileged.  And then they, again, sent a letter on

24  October, later in October, October 4 first, October 14

25  where there were 67 additional pages.  And now we hear for

1                          PROCEEDINGS                    61

2    the very first time today, they didn't tell us before we

3    came to court today, oh, no, they got some more documents

4    that they found two months ago.

5              By the way, I heard them represent – I want to

6    make sure I heard it right – that they regard that the

7    only documents they're talking about are the documents in

8    the Antonino production and that everything is fine and

9    not privileged, which they say in their papers, they've

10   said it here again today.  Frankly, I'm not sure that's

11   the case.  But it's not my responsibility to make sure

12   that what they do is correct and not reckless.  It's

13   theirs.

14             So as I say, Judge, and I mean it, actions have

15   consequences.  And if they're hanging their hat on the use

16   of the word continuing in a later letter that wasn't even

17   the letter in response to our exhibit DD, our September 25

18   letter, I don't get it, I don't get it.  So I don't see

19   that they have a safe harbor here to be able to clawback

20   those documents.

21             And I do hope we have a couple of moments to

22   talk about this in the context of the entire case.  We

23   have been stalled in this from the first day --

24             THE COURT:   Okay, believe me, I read your brief

25   on that, and I'm at a loss on what basis you could get

|  | PROCEEDINGS | 62 |

2  fees for that.

3          MR. WANG:   Can I respond?

4          THE COURT:   GO ahead.

5          MR. WANG:   Rule 37 and the inherent powers of

6  the court, but we tried to --

7          THE COURT:   Hold on, hold on.  Those are two

8  different things.

9          MR. WANG:   Yes, they are.

10          THE COURT:   Inherent powers of the court, I'd

11  have to find bad faith, and I'll – let's work on Rule 37.

12  What part of Rule 37?

13          MR. WANG:   I didn't bring my copy, but I

14  believe it's 37(c).  But now I'm going by my memory which

15  isn't as good as it used to be.

16          THE COURT:   And they keep changing them.  Well,

17  I read 37(c) and notwithstanding a case that in dictum

18  refers to documents, I think it's very obvious it refers

19  to Rule 26(a) and (3) disclosures, in other words, witness

20  disclosures.  And document disclosures, in other words,

21  not discovery document disclosures but thing you're

22  relying on at trial type disclosures.  So I don't know how

23  you get documents out of that.  You had a case, I know,

24  but it's dictum, and I think it's a mistake.

25          MR. WANG:   Well, I think I'm --

1                              PROCEEDINGS                        63

2            THE COURT:   Because otherwise any time someone

3    was late in producing documents, you come in and say,

4    okay, I get my fees under 37.

5            MR. WANG:   Your Honor, and that's exactly what

6    I was about to say, which is if we made a mistake here, it

7    was by not sounding the alarm a lot earlier in this

8    process, probably getting an order, and then we'd have a

9    violation of an order which would be the normal – and I

10   understand that, Judge.  And I can tell you, Your Honor,

11   we have done everything, I mean that's one of the reasons

12   why we painstakingly went over the screw-ups over a very,

13   very long period of time at a tremendous cost and expense

14   and a time delay to us.

15           It dovetails with what's happening with the

16   privilege because there's kind of a cavalier, I was going

17   to use the word reckless but I don't want to load it up.

18   A kind of cavalier attitude with the way that the

19   discovery obligations have been treated which, I'm telling

20   you, I've never seen it.  I've never seen anything like

21   this before.  And I understand, Judge, that coming without

22   an order in hand to ask for sanctions, that's not an

23   everyday occurrence.  I think it's a first for me in 40

24   years.

25           But what we've had here over such an extended

1                        PROCEEDINGS                    64

2  period of time, over so many different attempts to try to

3  get them to fix it, and with promises that they'll fix it,

4  and then new botches and new fumbles, and then to have all

5  of this on top of it with the privilege documents.  That's

6  why they're separate but connected.  This, it's really

7  beyond.  It's really beyond.

8           So I hear what Your Honor says, and I'm not

9  going to extend the conversation about our entitlement to

10 costs, but we have been badly, badly prejudiced in this

11 case, both in terms of time and cost, and as far as the

12 privileged documents are concerned, we are badly

13 prejudiced in terms of very, very relevant, very, very

14 material documents which we believe that that's the

15 consequence of the actions that they took.

16          THE COURT:  You mentioned an October 14 letter

17 from them.

18          MR. WANG:  Yes, Your Honor.

19          THE COURT:  Do you have a cite for that?  Is it

20 somewhere in here?

21          MR. WANG:  Let me see.  I know that on October

22 4 --

23          THE COURT:  If you have a copy, I just want to

24 look at it.

25          MR. WANG:  Yes, let me --

1

2              (interposing)

3              THE COURT:   It's in their papers?

4              MR. WANG:   I believe so.

5              MS. MILLROOD:   It's exhibit, our October 14

6    letter, Your Honor, is exhibit 14.

7              THE COURT:   14?

8              MS. MILLROOD:   Yes, and, again, in that we say

9    that we're continuing --

10             THE COURT:   Hold on, hold on.  Just – we're not

11   up to you yet.

12             MS. MILLROOD:   Sorry.

13             (pause in proceeding)

14             THE COURT:   Yep, there's the continuing review

15   again.

16             MR. WANG:   Yeah.  Judge, I saw it, I was --

17             THE COURT:   So I – okay.

18             MR. WANG:   Every time we saw it, I can't say I

19   smiled because I don't mean to make light of it.

20             THE COURT:   Okay, all right.

21             MR. WANG:   But their view was that this is just

22   something that they can continue, and now when I heard

23   today we're going to get another because they finished it

24   two days ago, you know, the three of us looked at each

25   other and all we could do is smile because this is, we've

1                         PROCEEDINGS                    66

2  seen this movie.

3           THE COURT:   All right.

4           MR. WANG:   And actually my partner makes a good

5  point.  What does it mean a continuing review?  I mean

6  this is 90,000 pages of documents; there should've been a

7  review long ago.  That's why I made the point about what

8  Mr. Pence was able to do in a much shorter period of time

9  by himself.  Is it different lawyers going back over it?

10 Were they not on notice after we alerted them to the fact

11 that there seemed to be privileged documents, that they

12 should go page by page, as Mr. Pence did, over the 90,000

13 pages?

14          They said they did.  Jacqueline Frank's

15 affidavit says that that's exactly what she did, that

16 that's exactly what she did.

17          THE COURT:   What, where?

18          MR. WANG:   In her affidavit.

19          THE COURT:   What paragraph?

20          MR. WANG:   I have to get the right Frank

21 affidavit.

22          (pause in proceeding)

23          MR. WANG:   Well, in paragraph 9 she says, "I

24 continue to review all documents gathered for purposes of

25 discovery."  On paragraph 10 of her affidavit, she says,

1                      PROCEEDINGS                    67

2   "I reviewed each and every page of the documents provided

3   by Windsor, Antonino, and Judd, identified documents as

4   privileged and flagged them as such."  So she says --

5              THE COURT:   Hold on, hold on.  This is

6   Jacqueline Frank's affidavit?

7              MR. WANG:   Yes.  Jacqueline Frank, paragraph

8   10.

9              THE COURT:   This is in March of 2017.  This is

10  not the time period I'm talking about.

11             MR. WANG:   On page 34, she says now --

12             THE COURT:   Hold on, I need a paragraph.

13             MR. WANG:   Paragraph 34, I'm sorry.

14             THE COURT:   That's when they're reviewing your

15  Bates range.  That's all she's reviewing.  Look at the

16  last sentence of 34.

17             MR. WANG:   Yes, I see.  By the way, I don't

18  think --

19             THE COURT:   At least they're consistent.

20             MR. WANG:   No, but I don't think there was any,

21  I don't believe that Miss Millrood said that Miss Frank's

22  review was incomplete.

23             THE COURT:   Well, it says it right here.  It's

24  still ongoing.

25             MR. WANG:   This was in response to the motion.

1                           PROCEEDINGS                    68

2   In other words, Miss Frank writes, "Samantha Millrood

3   notified defendants that my re-review was incomplete and

4   ongoing."

5           THE COURT:  Wait, what paragraph are you

6   reading from?

7           MR. WANG:  35.

8           (pause in proceeding)

9           THE COURT:  So what's your point, I'm sorry?

10          MR. WANG:  No, that that's not what we were

11  notified, that it was incomplete and ongoing.  They

12  reserved their rights.  They said it's --

13          THE COURT:  Oh, okay, but I'm making a

14  different point which is I thought you were going to find

15  something in the Frank affidavit that showed that she was

16  saying as of October 17 that she'd completely done this

17  re-review.

18          MR. WANG:  Well, Your Honor, let me just go

19  back to paragraph 10 and perhaps on I'm misunderstanding.

20  In paragraph 10, which I didn't regard was just limited to

21  the March, what she was doing in March of 2017, she says,

22  I'm quoting, "I reviewed each and every page of the

23  documents provided by Windsor, Antonino, and Judd."

24          THE COURT:  Yeah, that's their initial review

25  that they messed up on with the production.  I mean it's

| | |
|---|---|
| 1 | PROCEEDINGS                                    69 |

2  in the middle of a March timeline.

3          MR. WANG:   Yeah, I see that, Your Honor, but

4  those words, Antonino and Judd documents in the March

5  timeline, those were Windsor documents.  We didn't get

6  Antonino and Judd documents until the 90,000 pages.

7          THE COURT:   Oh, well, I mean --

8          MS. MILLROOD:   There were Judd documents

9  provided before.

10          MR. WANG:   Not Antonino.  There were no

11  Antonino documents provided until August of 2017.  I

12  believe that's right, Miss Millrood.  And so --

13          THE COURT:   It would be more appropriate

14  perhaps to strike the word Antonino from that paragraph

15  than to decide it goes to some later date.  Okay, I think

16  I heard from you completely, Mr. Wang, right?

17          MR. WANG:   Yes, I think so, Your Honor.

18          THE COURT:   All right.  I don't need to hear

19  anymore argument.  I think it's unfortunate that we've

20  come to this situation.  I don't blame defendants at all

21  for making this motion, but I just don't think I can grant

22  it.

23          I think there's been a lot of miscommunication

24  here.  I think there was some bad decisions made.  I think

25  plaintiffs should've made it far more clear that there

1                           PROCEEDINGS                        70

2   were going to be potentially future clawbacks and that

3   they were taking their time, apparently two months to go

4   over all these documents.  But I can't find that their

5   conduct is completely, was completely reckless, and that

6   is the standard out of the case law.

7           What happened I think was there was a misguided

8   effort to move these depositions along.  The plaintiffs

9   did something highly unusual which was to basically give

10  back over documents that they knew had to be re-reviewed

11  to the defendants and said go ahead, work with them, use

12  them.  And the defendants understandably assumed that that

13  meant that whatever re-review had been accomplished was

14  completed.  But apparently that had not happened, and

15  there were little hints scattered here and there from the

16  plaintiffs saying that that had not occurred.  They didn't

17  respond to that email that sort of assumed rather

18  forcefully that it was all done.  But they said it before

19  and after that their review was continuing as late as

20  October 14.  And if looked at from that perspective, it

21  explains what happened here.

22          It would've been one thing if they had said our

23  review is complete, our re-review is complete on August

24  10, I'm sorry, on October 3 when the documents were re-

25  uploaded to the FTP file, then I might have – and if they

1                              PROCEEDINGS                      71

2   had done a second review complete on that date and then

3   afterwards tried to do clawbacks, I would have to think

4   about whether having been put on notice that they messed

5   up the first time, that whatever that second review,

6   having let more documents through, might have been found

7   to be completely reckless.  I mean I would need more

8   description about what had been done, and plaintiff's

9   papers were oddly undetailed on that.

10          But that's not what was going on in plaintiff's

11  and, and I think recklessness to some degree goes to their

12  own state of mind.  And they were sailing along thinking

13  we're going on this very unusual process of letting them

14  have the documents back again even though we know we

15  haven't completed our review, and we're going to sail

16  along at our own pace to complete that review.  And I can

17  see how one might characterize that as being an

18  inefficient way to proceed and opening up the possibility

19  of adversaries seeing a document and then reviewing it yet

20  again.

21          But I can't point to the nature of their review

22  that second time and say that it was completely reckless

23  because, I mean, first of all, in the first production –

24  maybe the better way to look at it.  The first production

25  I can't make any finding that was completely reckless.  I

1                          PROCEEDINGS                      72

2   have someone saying they went over all these documents,

3   and obviously they did a pretty bad job, but that's not

4   the standard.  They just, you know, were negligent,

5   grossly negligent perhaps.

6            So one the production is made on August 10, and

7   they learn that there's a problem, then they have to go

8   over it in detail, but that's the very thing that I can't

9   find was improper because they say they did a page-by-page

10  review again.  And the real problem with that review is

11  that it just took a long time, number one, and, number

12  two, it was never made clear to defendants that this was a

13  process that was going on that would take two months, and

14  they could at any time expect more clawback requests.  So

15  that, you know, that doesn't speak to the nature of their

16  review.  That speaks to kind of external communication

17  problems.

18           So my ruling then is that the motion, you know,

19  to find the document privilege to have been waived is

20  denied.  I think I've already spoken to the issue of the

21  request for fees.  I don't find any legal basis in Rule

22  37.  And it does not rise to the level of bad faith

23  conduct, at least I couldn't make that finding on the

24  current record that would allow me to use my inherent

25  powers to award a sanction.  That's --

1                           PROCEEDINGS                        73

2              MR. WANG:   Your Honor --

3              THE COURT:   Yep.

4              MR. WANG:   Can I just try to make one – not a

5    motion for reargument but just an observation, because I

6    just want to make sure that Your Honor had it in mind.

7    Our view when Mr. Frank says there are no deficiencies on

8    September 1, after the problem has arose, is a recognition

9    of the fact that they're aware and they say that

10   everything is fine and things are complete.  To say no

11   deficiencies --

12             THE COURT:   I heard your argument on that

13   point.  Let's not go over this, Mr. Wang.

14             MR. WANG:   All right.

15             THE COURT:   What's left on the case that we

16   should deal with now?

17             MR. WANG:   Well, we have, we had stopped the

18   discovery.  We have two depositions that are remaining to

19   be taken.  One is Mr. Hauchens (phonetic) who was the

20   broker who sold the underlying policies, and the other was

21   a Miss Antonino.  Those depositions were taken, you might

22   recall that those depositions were to be taken in Atlanta,

23   but there was some --

24             THE COURT:   Right, right, payments or fees, I

25   remember that.

1                          PROCEEDINGS                    74

2              MR. WANG:   That's right.  So we did not go to

3    Atlanta for those depositions.

4              THE COURT:   So what do you guys want to do?  Do

5    you want to give me a proposed schedule in a letter or you

6    want to tell me right now?

7              MR. WANG:   If we get – I assume we're going to

8    get within a couple of days --

9              THE COURT:   When do they get the final clawback

10   requests?

11             MS. MILLROOD:   Can we have till Monday, Your

12   Honor?

13             THE COURT:   Sure, Monday.

14             MR. WANG:   And assuming we have no problem with

15   that, and I'll assume it's not going to have the

16   reservation with respect to continuing --

17             THE COURT:   No reservation of continuing

18   review, right?

19             MS. MILLROOD:   No reservation of continuing

20   review.

21             THE COURT:   Okay.

22             MR. WANG:   So assuming we get that and we have

23   no problems with it, we're into December, I think that we

24   could, you know --

25                  (interposing)

```
 1                      PROCEEDINGS                    75

 2            MR. WANG:   Well, we have to coordinate - these

 3   are non-parties, Mr. Hauchens and Miss Antonino --

 4            THE COURT:   Why don't you do this?  Write me a

 5   letter in the next week or two saying here's our proposal.

 6   I think I had last given you a date - there's no expert

 7   discovery, right?

 8            MR. WANG:   There is.

 9            THE COURT:   Ah, so there's going to be an

10   expert discovery period after this?

11            MR. WANG:   Yes, there will.

12            THE COURT:   Okay, so give me a proposal just

13   consistent with whatever I gave you last time.  If I

14   haven't gotten it in two weeks, I'm going to have my clerk

15   bug you.

16            MR. WANG:   Okay.

17            THE COURT:   So that would be - (pause) -

18   December 14.

19            MS. MILLROOD:   By December 14?

20            THE COURT:   A joint letter.  If you can't

21   agree, separate letters.  Anything else from the

22   defendants' side?

23            MR. WANG:   No, Your Honor.

24            THE COURT:   From plaintiff.

25            MS. MILLROOD:   No, Your Honor, thank you.
```

1                          PROCEEDINGS                    76

2          THE COURT:   All right, thank you everyone.

3          MR. WANG:   Thank you.

4          (Whereupon the matter is adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                                          77

2                  C E R T I F I C A T E

3

4       I, Carole Ludwig, certify that the foregoing

5  transcript of proceedings in the case of Windso4 Securities

6  v. Arent Fox, et al, Docket #16cv1533, was prepared using

7  digital transcription software and is a true and accurate

8  record of the proceedings.

9

10

11

12  Signature_____
                    *Carole Ludwig*

13                  Carole Ludwig

14  Date:    December 2, 2017

15

16

17

18

19

20

21

22

23

24

25