# EXHIBIT "13"

Case 1:16-cv-01533-GBD-GWG Document 125-14 Filed 08/23/18 Page 2 of 77
Case3:14-cv-03713-WHO Document40 Filed07/30/15 Page1 of 160

1  HENNEFER FINLEY & WOOD, LLP
   JOSEPH WOOD [Calif. SBN 103596]
2  275 Battery Street, Suite 200
   San Francisco, California 94111
3  Telephone:    (415) 421-6100
   Facsimile:    (415) 421-1815
4  E-Mail:       jwood@hennefer-wood.com; jhcwlaw@yahoo.com

5  Attorneys for Defendant and Cross-Claimant, Maria Ana Gordillo
   as Trustee of the Erwin A. Collins Family Insurance Trust - 2008
6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  PACIFIC LIFE INSURANCE COMPANY,          Civil Action No. 3:14-cv-03713-WHO

13       Plaintiff,

14  vs.

15  MARIA ANA GORDILLO AS TRUSTEE
    OF THE ERWIN A. COLLINS FAMILY
16  INSURANCE TRUST - 2008; and
    WINDSOR SECURITIES, LLC,
17
    Defendants.
18                                        /

19  AND RELATED CROSS-ACTION.
                                          /
20

21

22
            DECLARATION OF MARIA ANA GORDILLO
23     IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

24

25             Date:    August 12, 2015
               Time:    2:00 p.m.
26             Courtroom 2, 17th Floor
               Hon. William H. Orrick
27

28
    DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
    Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,
    and Related Cross-Action
    Civil Action No. 3:14-cv-03713-WHO
    JUDD 070392

1      Maria Ana Gordillo declares:

2      1.    I am, and at all relevant times have been the trustee of the Erwin A. Collins Family

3  Insurance Trust - 2008 [the "Trust"]  The facts set forth below are within my personal knowledge

4  and if called as a witness I would testify competently to those facts.

5      2.    In my role as trustee, I executed on behalf of the Trust, on or about April 15, 2008,

6  a certain Life Insurance Premium Financing Agreement Among Windsor Securities LLC The

7  Erwin A. Collins Family Insurance Trust - 2008 And Erwin A. Collins [the "Financing

8  Agreement"]. A true copy of the Financing Agreement is attached as Exhibit A to this

9  declaration, bearing Bates Numbers GORDILLO 0001 - GORDILLO 0134. In my understanding,

10  the Financing Agreement provided that the lender, Windsor Securities, LLC ["Windsor"], was to

11  loan the Trust monies to cover approximately two years of premium payments on a life insurance

12  policy [the "Policy"] issued to the Trust by Pacific Life Insurance Company ["Pacific Life"], and

13  that the Trust was to repay the loan approximately twenty-seven months after it had obtained the

14  Policy. In my understanding, the loan was secured by the Policy.

15      3.    In 2010, shortly before the loan was due to be repaid, the Trust informed Windsor

16  that it would not repay the loan when due. Although I am not an attorney, my lay understanding

17  of the Financing Agreement was and is that the Trust thereby defaulted under the Financing

18  Agreement and that, upon occurrence of such default, the Trust was obligated under the Financing

19  Agreement to execute a certain document or documents that would allow Windsor, subject to

20  Windsor's continuing obligations to the Trust under the Financing Agreement, to take title to, and

21  beneficiary status under, the Policy.

22      4.    Although I am not an attorney, my lay understanding of the Financing Agreement

23  was and is that, once the Trust, following default, had performed its obligation to execute the

24  abovementioned document or documents that would allow Windsor, subject to Windsor's

25  continuing obligations to the Trust under the Financing Agreement, to take title to, and

26  beneficiary status under, the Policy, the following outcomes were possible:

27      (a)    Windsor could allow the Policy to lapse, in which case neither Windsor nor

28  the Trust would obtain any financial benefit from the Policy and the Trust would remain liable to

DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
*Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,
and Related Cross-Action*
Civil Action No. 3:14-cv-03713-WHO
JUDD 070393

1

1   Windsor for the full amount of the loan plus interest thereon.

2           (b)     Windsor could choose to continue to make premium payments on the
3   Policy, thereby preventing the Policy from lapsing and increasing the amount of the loan in the
4   amount of the additional payments.

5           (c)     Assuming the Policy had not been allowed to lapse, Windsor, prior to the
6   death of the insured and pursuant to Windsor's status as secured lender/title holder: (i) could sell
7   the Policy at a public or private sale, at which sale the Trust would be allowed to bid;[1] (ii) could
8   take from the proceeds of the sale the amount it had loaned to the Trust, plus legal interest
9   thereon, plus its reasonable costs incurred in connection with the sale; (iii) would be required to
10  provide any excess proceeds to the Trust; and, (iv) should the proceeds be insufficient to cover
11  what Windsor was owed, could proceed directly against the Trust to recover the deficiency.

12          (d)     Again assuming the Policy had not been allowed to lapse, and that no sale
13  had been held, Windsor, following the death of the insured, and pursuant to Windsor's status as
14  beneficiary: (i) could collect the death benefit from the insurance company; (ii) could take from
15  the death benefit the amount it had loaned, plus legal interest thereon, plus its reasonable costs
16  incurred in connection with collecting the death benefit; and (iii) would be required - unless
17  Windsor had expressly agreed to relieve the Trust from any continuing liability on its debt to
18  Windsor in return for the Trust's express agreement to relinquish whatever rights it had to the
19  death benefit under the Financing Agreement - to provide the remaining portion of the death
20  benefit to the Trust.

21      5.      In accordance with my lay understanding of the obligations of the Trust set forth in
22  paragraph 3 of this declaration, above, I executed on behalf of the Trust a certain Pacific Life form
23  document, described more fully in paragraph 6 of this declaration, below, that I understood was
24  required in order to provide Windsor, subject to Windsor's continuing obligations to the Trust
25  under the Financing Agreement, with title to the Policy and beneficiary status under the Policy.

26

27          [1]  I also understood that Windsor was not required to hold any such sale.

28

6. On or about May 11, 2010, I executed a Pacific Life form document entitled "Ownership, Name, Or Beneficiary Change Request." A true copy of that document is attached as Exhibit B to this declaration, Bates Nos. GORDILLO 0136 - GORDILLO 0138.

7. I executed the abovementioned Ownership, Name, Or Beneficiary Change Request because I believed the Trust was required to do so, following default, in order to provide Windsor, subject to Windsor's continuing obligations to the Trust under the Financing Agreement, with title to the Policy and with beneficiary status under the Policy. At no time did I believe that by my executing that document the Trust was giving up either: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).

8. Windsor never suggested to me, in any communication at or around the time I executed the abovementioned Ownership, Name, Or Beneficiary Change Request, or at any time thereafter until June 2014, that I was executing the abovementioned Ownership, Name, Or Beneficiary Change Request in return for an agreement by Windsor to relieve the Trust from any continuing obligation to repay the loan. Nor did Windsor ever suggest to me, in any communication prior to June, 2014, that by my executing those documents the Trust was giving up either: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).

9. Following my execution of the abovementioned Ownership, Name, Or Beneficiary Change Request, I received documents from Pacific Life indicating that Windsor had provided the

1  the abovementioned Ownership, Name, Or Beneficiary Change Request to Pacific Life and that
2  Pacific Life had amended its internal records accordingly, thereafter showing Windsor as the
3  owner and beneficiary of the Policy. True copies of those documents are respectively attached as
4  Exhibits C and D hereto, Bates Nos. GORDILLO 0141, GORDILLO 0142. I lodged no objection
5  to the amendments referred to in those documents because, as noted above, I believed the Trust
6  had been required, following default, to provide Windsor, subject to Windsor's continuing
7  obligations to the Trust under the Financing Agreement, with title to the Policy and with
8  beneficiary status under the Policy. At no time did I believe that those amendments had any effect
9  upon either: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any
10  proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it
11  was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with
12  the sale); or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any portion
13  of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*,
14  premium payments, interest, and reasonable expenses connected with collecting the death
15  benefit).

16    10.    Windsor has never communicated to me, and I have thus by definition never
17  accepted, either:

18    (a)    an offer to relieve the Trust from any continuing obligation to repay the
19  loan if the Trust would agree to give Windsor a form of ownership of the Policy unfettered by the
20  obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining
21  from the proceeds of a public or private sale of the Policy after Windsor had been paid what it was
22  owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the
23  sale); or

24    (b)    an offer to relieve the Trust from any obligation to repay the loan if the
25  Trust would agree to give Windsor a form of beneficiary status under the Policy unfettered by the
26  obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining
27  from the death benefit after Windsor had been paid what it was owed on the loan (*viz.*, premium
28  payments, interest, and reasonable expenses connected with collecting the death benefit).

DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
*Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,
and Related Cross-Action*
Civil Action No. 3:14-cv-03713-WHO

4

1    11.    I have never communicated to Windsor, and Windsor has thus by definition never
2    accepted, either:

3           (a)    an offer to give Windsor a form of ownership of the Policy unfettered by
4    the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts
5    remaining from the proceeds of a public or private sale of the Policy after Windsor had been paid
6    what it was owed on the loan (viz., premium payments, interest, and reasonable expenses
7    connected with the sale) if Windsor would agree to relieve the Trust from any continuing
8    obligation to repay the loan; or

9           (b)    an offer to give Windsor a form of beneficiary status under the Policy
10   unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any
11   amounts remaining from the proceeds of the death benefit after Windsor had been paid what it
12   was owed on the loan (viz., premium payments, interest, and reasonable expenses connected with
13   collecting the death benefit) if Windsor would agree to relieve the Trust from any continuing
14   obligation to repay the loan.

15   12.    In short, I never heard of, never intended to enter into, and never did enter into, any
16   agreement with Windsor either:

17          (a)    to give Windsor a form of ownership of the Policy unfettered by the
18   obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining
19   from the proceeds of a public or private sale of the Policy after Windsor had been paid what it was
20   owed on the loan (viz., premium payments, interest, and reasonable expenses connected with the
21   sale) in return for Windsor's relieving the Trust from any continuing obligation to repay the loan;
22   or

23          (b)    to give Windsor a form of beneficiary status under the Policy unfettered by
24   the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts
25   remaining from the proceeds of the death benefit after Windsor had been paid what it was owed
26   on the loan (viz., premium payments, interest, and reasonable expenses connected with collecting
27   the death benefit) in return for Windsor's relieving the Trust from any continuing obligation to
28   repay the loan.

1    13.    Following the Trust's default on the loan, I commissioned the originating insurance

2    agent on the Policy, Eugene Houchins III, to monitor the status of the Policy and, in particular, to

3    let me know immediately if Windsor at any time failed timely to pay the premiums on the Policy

4    and thus created the possibility that the Policy might lapse. My purpose in doing so was to

5    preserve for the Trust the possibility of taking over those premium payments and thus preventing

6    the Policy from lapsing.

7    14.    In or about mid-June, 2014, I received a letter from Windsor, dated June 1, 2014,

8    ostensibly because Windsor was doing "spring cleaning" of its transaction record and was

9.   therefore seeking "an update on certain information." In that letter, Windsor stated:

10                  Pursuant to the Financing Agreement ("FA") signed by you and according to our

11                  records, on May 11, 2010, you assigned the policy listed above to Windsor. You

12                  may recall that this voluntary assignment of the policy was in exchange for

.13                 Windsor's agreement that the assignment of the policy would constitute a complete

.14                 satisfaction and discharge of the loan Windsor had made to enable you to purchase

15                  the policy. Accordingly, you no longer have any financial liability under that loan.

16   A true copy of the letter is attached as Exhibit E hereto, Bates No. GORDILLO 0275.

17   15.    That letter marked the first time Windsor had ever suggested to me that - contrary

18   to the facts, as set forth above - my execution of the abovementioned Ownership, Name, Or

19   Beneficiary Change Request was "in exchange for Windsor's agreement that the assignment of

20   the policy would constitute a complete satisfaction and discharge of the loan" or that "you [*i.e.*,

21   the Trust] no longer have any financial liability under that loan."

22   16.    In response to that letter, I obtained counsel and responded by letter dated July 18,

23   2014. A true copy of that response, which I now recall was prepared by my counsel and which

24   denied the abovementioned statement by Windsor, is attached as Exhibit F hereto, Bates Nos.

25   GORDILLO 0276 - GORDILLO 0277. The response stated the facts as I understood them.

26   17.    In further response to that letter, I sent a letter to Pacific Life dated July 15, 2014.

27   That letter, which I now recall was prepared by my counsel, informed Pacific Life of the apparent

28   dispute between Windsor and the Trust over the parties' respective rights in and to the death

DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
*Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,
and Related Cross-Action*
Civil Action No. 3:14-cv-03713-WHO                                                                              6

1    benefit pursuant to the Financing Agreement between the parties. A true copy of that letter is

2    attached as Exhibit G hereto, Bates Nos. GORDILLO 0151- GORDILLO 0152.

3       I declare under penalty of perjury under the laws of the United States that, to the best of

4    my present knowledge and belief, the foregoing is true.

5    DATED:      July 27, 2015

6

7                           /s/   Maria Ana Gordillo
                             Maria Ana Gordillo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
*Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,*
*and Related Cross-Action*
Civil Action No. 3:14-cv-03713-WHO                                                 7

# EXHIBIT A

JUDD  070400

Document #1 of 19

## LIFE INSURANCE PREMIUM FINANCING AGREEMENT

### AMONG

### WINDSOR SECURITIES LLC

### THE ERWIN A. COLLINS TAMILY INSURANCE TRUST-2008

### AND

### ERWIN A. COLLINS

1612628 v01

GORDILLO 0001

JUDD 070401

Document #1 of 19

# LIFE INSURANCE PREMIUM FINANCING AGREEMENT

## Table Of Contents

### TRUST CONTRACT

Incorporation of Terms and Conditions
Designation of Terms and Conditions
Execution Page
Exhibit 1. Description of Policy and Instructions for Payment of Premiums Exhibit
2. Instructions for Payment of Structuring and Closing Fees
Exhibit 3. Specimen copy of Promissory Note

### TERMS AND CONDITIONS

Article I. Loan, Interest and Payment Terms ............................................................................... 1
Article II. Conditions Precedent ................................................................................................. 2
Article III. Representations and Warranties of Trust and Insured .................................................. 3
Article IV. Representations and Warranties of Lender .................................................................. 7
Article V. Covenants of Trust and Insured .................................................................................. 8
Article VI. Events of Default ...................................................................................................... 10
Article VII. General Provisions ................................................................................................... 11
Article VIII. Defined Terms ......................................................................................................... 14

### APPENDIX

A. Closing Package
B. Representation Required by Treasury Regulations Section 1.7872-15(d)(2)

(612628 v0)

GORDILLO 0002

JUDD 070402

Document #1 of 19

## LIFE INSURANCE PREMIUM FINANCING AGREEMENT

**LIFE INSURANCE PREMIUM FINANCING AGREEMENT**, dated as of 4/15, 2008, among **Windsor Securities LLC**, a Nevada LLC with a principal address as shown on the signature page hereto (the "Lender"), the Georgia trust (the "Trust"), and the Insured designated below (the "Insured"). The term "Agreement" shall refer to this document and any attachments, exhibits and appendixes plus the document *"Terms and Conditions for Life Insurance Premium Financing Agreement Among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins"* and any attachments, exhibits and appendixes.

The Lender, the Trust and the Insured agree to the Lender's providing a loan to the Trust subject to the Terms and Conditions attached hereto, which are incorporated herein and made a part of this Agreement in their entirety. All capitalized terms used herein have the respective meanings specified in the Terms and Conditions attached hereto. The Policy is described in Exhibit 1 hereto.

| | |
|---|---|
| Insured: | Erwin A. Collins, Tennessee |
| | (Name and state of residence) |
| Trust: | The Erwin A. Collins Family Insurance Trust-2008 |
| | (Name of Georgia Trust) |

Principal Loan Amounts for
| | |
|---|---|
| Payment of Insurance Premiums | $99,750 |
| Structuring Fee | $0 |
| Closing Fees: | $13,000 |
| TOTAL LOAN AMOUNT (as of Financing date): | $112,750 |

Annual Interest Rate:     Annual Interest Rate                                    15.0%

**Pre-Payment Fee:** 3.0% of the Financing Balance reduced by 1/27 of 3.0% of the Financing Balance for each month this Agreement remains effective.

Notices:
Trust:
The Erwin A. Collins Family Insurance Trust-2008
c/o Maria A. Gordillo, as Trustee
346 Crestview Circle
Roswell, GA 30075

Insured:
Erwin A. Collins
311 Suburban Road
Knoxville, TN 37923

Lender:
Windsor Securities LLC
c/o MFIP
25 East Athens Avenue
Ardmore, PA 19003

- 3 -

1612628 v01

**GORDILLO 0003**

JUDD 070403

Document #1 of 19

This Agreement shall not become effective until it is executed below by the Insured, executed by the Trust through its Trustee as evidenced by his signature below, and accepted and executed by the Lender as evidenced by its signature below.

IN WITNESS WHEREOF, the parties have executed this Agreement on the respective dates specified below with the effect from the date specified on the first page of this Agreement.

WINDSOR SECURITIES LLC By MFIP (Delaware, Inc.)

By: _____
Steven Prusky, President/Director, MFIP (Delaware)

The Erwin A. Collins Family Insurance Trust-2008

By: *Maria ana Gordillo*
Trustee Name: Maria A. Gordillo

Date: April 15, 2008

Place of execution: Atlanta, GA

- 4 -

1612628 v01

GORDILLO 0004

JUDD 070404

Document #1 of 19

This Agreement shall not become effective until it is executed below by the Insured, executed by the Trust through its Trustee as evidenced by his signature below, and accepted and executed by the Lender as evidenced by its signature below.

IN WITNESS WHEREOF, the parties have executed this Agreement on the respective dates specified below with the effect from the date specified on the first page of this Agreement.

WINDSOR SECURITIES LLC By MFIP (Delaware, Inc.)

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Steven Prusky, President/Director, MFIP (Delaware)

The Erwin A. Collins Family Insurance Trust-2008

By: _Maria Ana Gordillo_
Trustee Name: Maria A. Gordillo

Date: _April 15, 2008_

Place of execution: _Atlanta, GA_

- 4 -

1612628 v01

GORDILLO 0005

JUDD 070405

Document #1 of 19

## EXHIBIT 1
### Description of the Policy

| Insurer | Policy Issue Date | Policy Number | Annual Premium | Death Benefit |
|---|---|---|---|---|
| Pacific Life | March 4, 2008 | VF51701320 | $101,667 3rd year on | $2,000,000.00 |

### Instructions for Payment of Premiums:

Bank:      Bank of America, N.A.
ABA#:     121000248
Account name:Pacific Life- Life
Account #:   4121486161
Amount of:  $99,750.00
FBO:      Policy #: VF51701320
         Name: The Erwin A. Collins Family Insurance Trust-2008

- 5 -

1612628 v01

GORDILLO 0006

JUDD 070406

Document #1 of 19

**EXHIBIT 2**
Instructions for Payment of Structuring and Closing Fees

**Structuring Fee:**                                                    $0

**Closing Fees:**                                                $13,000
                              To be paid according to the Financing Documents

1612628 v01

**GORDILLO 0007**

JUDD 070407

Document #1 of 19

## EXHIBIT 3
### PROMISSORY NOTE

$112,750.00                                                              April____ 15, 2008

        FOR VALUE RECEIVED, The Erwin A. Collins Family Insurance Trust, a Georgia trust ("Borrower"), hereby promises to pay to the order of Windsor Securities LLC, a Nevada LLC ("Lender"; Lender and any other person who becomes a holder of this promissory note being referred to hereinafter sometimes as the "Holder"), the sum of ONE HUNDRED TWELVE THOUSAND SEVEN HUNDRED FIFTY Dollars ($112,750.00), or greater amount should Lender, at its sole discretion, choose to make additional premium payments on the Policy, or other amount as the Lender may disburse, together with interest accrued thereon (at Lender's address or at such other place as Lender may designate to Borrower in writing), on the "Maturity Date" as provided in Section 3 hereof. Additional Premium Payments are currently estimated at approximately $25,417 (twenty five thousand four hundred seventeen dollars) per calendar quarter after the first 24 (twenty-four) months. This promissory note and any promissory note issued in substitution for this promissory note in accordance with the provisions hereof are referred to herein and elsewhere in the Financing Documents as the "Note." The unpaid principal amount outstanding under this Note from time to time shall accrue and bear interest at the simple rate of fifteen percent (15.0%) per annum. All payments made under this Note shall be made in lawful tender of the United States and shall be credited first to accrued and unpaid interest and the remainder to outstanding principal. Interest owed under this Note shall be calculated on the basis of actual days elapsed over a 360-day year. The principal and interest hereunder shall be paid in one installment, to be paid on the Maturity Date or as provided in Section 3 hereof. This Note has been executed and delivered pursuant to, and is the Note referenced in, the Life Insurance Premium Financing Agreement dated as of the date hereof between the Lender and the Borrower (the "Financing Agreement").

    1.    Defined Terms.  Unless defined in this Note, all capitalized terms used, but not defined, in this Note have the meanings ascribed to such terms in the Financing Agreement.

    2.    Use of Proceeds of Note.  The Borrower shall use the proceeds of this Note solely for purposes of paying the Financed Premiums to the Insurer and the Closing Fees to the parties designated in the Financing Agreement.

    3.    Maturity Date.  The Maturity Date is 820 days (approximately 27 months) from the date Lender disburses funds pursuant to the Financing Documents. It is estimated that the Maturity Date is July 15, 2010, although the exact date shall be dictated by the date of disbursement. The entire principal amount of this Note and all accrued but unpaid interest owed hereunder shall be due and payable by the Borrower on the earlier of (a) the Death Date, or (b) the Maturity Date.

    4.    Prepayment.

        (a)    At any time prior to the Maturity Date, on sixty (60) calendar days prior written notice to the Lender, the Borrower may prepay the Financing Balance in full, but not in part.

        (b)    If an Event of Default occurs before the Maturity Date, the Borrower shall

- 7 -

1612628 v01

**GORDILLO 0008**

Document #1 of 19

immediately pay the Financing Balance pursuant to Section 6 hereof.

5.   Collateral. This Note is secured by (a) the "Pledged Collateral" as defined in the Security Agreement and (b) the collateral assignment of the Policy given by Borrower to Lender pursuant to the Assignment of Life Insurance Policy as Collateral dated the date hereof.

6.   Events of Default. Upon the occurrence of an Event of Default before the Maturity Date, the Financing Balance (as defined in the Financing Agreement) shall be immediately due and payable, all without notice, presentment, protest, demand, notice of dishonor or any other demand or notice whatsoever, all of which are hereby expressly waived by Borrower.

7.   Miscellaneous.

(a)   Waiver of Presentment. The Borrower hereby

(i) waives demand, presentment of payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit, and diligence in collecting this Note;

(ii) agrees to any substitution, addition, or release of any party or person primarily or secondarily liable hereon;

(iii) agrees that the Lender shall not be required first to institute any suit, or to exhaust his remedies against the undersigned or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Note; and

(iv) consents to any extension, rearrangement, renewal, or postponement of time of payment of this Note and to any other indulgence with respect hereto without notice, consent, or consideration to the undersigned. No failure to accelerate the debt evidenced hereby by reason of an Event of Default hereunder, and no indulgence that may be granted from time to time, shall be construed either as a novation of this Note, or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of the Lender thereafter to insist upon strict compliance with the terms of this Note, or to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of California. No extension of the time for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Borrower under this Note, either in whole or in part, unless the Lender agrees otherwise in writing.

(b)   Limitation on Interest. Regardless of any provisions contained herein, the Lender shall never be deemed to have contracted for or be entitled to receive, collect or apply as interest on the Note, any amount in excess of the highest lawful rate, and, in the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Borrower. In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Borrower and Lender shall, to the maximum extent permitted under applicable law, (i) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense, fee, or premium,

- 8 -

1612628 v01

GORDILLO 0009

JUDD 070409

Case 1:16-cv-01533-GBD-GWG  Document 125-14  Filed 08/23/18  Page 20 of 77
Case3:14-cv-03713-WHO  Document40  Filed07/30/15  Page19 of 160

Document #1 of 19

rather than as interest, (ii) exclude voluntary prepayments and the effect thereof, and (iii) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout such term.

(c)     Amendment. Any provision of this Note may be amended, waived or modified upon the written consent of Borrower and Lender.

(d)     No Waiver; Remedies Cumulative. None of the rights or remedies of the Lender are to be deemed waived or affected by failure to delay to exercise the same. All remedies conferred upon the Lender by this Note or any other instrument or agreement, including without limitation the Financing Agreement shall be cumulative, no such remedy is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

(e)     Time of the Essence. Time is of the essence with respect to the obligations of the Borrower under this Note.

(f)     Assignment. This Note may be assigned by Lender at any time given written notice of such assignment to Borrower. Borrower may not assign this Note.

(g)     Notices. Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered or if telegraphed or mailed by registered or certified mail, postage prepaid, at the respective addresses of the parties as set forth herein. Any party hereto may by notice so given change its address for future notice hereunder. Notice shall conclusively be deemed to have been given when personally delivered or when deposited in the mail or telegraphed in the manner set forth above and shall be deemed to have been received when delivered. Notice shall be made in writing as follows:

If to Borrower:                         The Erwin A. Collins Family Insurance Trust-2008
                                        c/o Maria A. Gordillo, as Trustee
                                        346 Crestview Circle
                                        Roswell, GA 30075
                                        Telephone: 770-375-9266
                                        Facsimile: n/a

If to Lender:                           Windsor Securities LLC
                                        25 East Athens Avenue
                                        Ardmore, PA 19003
                                        Attention: Steven Prusky
                                        Telephone: 610-642-3100
                                        Facsimile: 610-642-9709

(h)     Governing Law and Consent to Jurisdiction. This Agreement shall be governed by and construed under the laws of the State of California (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said laws. All parties hereto agree that any claim arising out of or relating to this Agreement shall be (i) brought in the Superior Court of Sonoma County, California, or (ii) brought in or removed to the United States District Court for the Northern District of California. Each of the parties consents to the personal jurisdiction of the courts

- 9 -

GORDILLO 0010

JUDD 070410

Document #1 of 19

identified above and waives (i) any objection to jurisdiction or venue, or (ii) any defense claiming lack of jurisdiction or improper venue, in any action brought in such courts.

(i)    **Binding Effect.** This Note shall be binding upon and inure to the benefit of the Borrower's and Lender's respective heirs administrators, successors and permitted assigns.

(j)    **Severability.** The provisions of this promissory note shall be severable. If any provision hereof is held to be invalid, void or otherwise unenforceable, the remaining provisions shall remain in full force and effect to the fullest extent permitted by law.

IN WITNESS WHEREOF, the Borrower has executed and delivered this Note as of the date set forth above.

**BORROWER:**

The Erwin A. Collins Family Insurance Trust 2008

By: _Maria Ana Gordillo_

Name: Maria A. Gordillo, Trustee

Date: _April 19, 2008_

Place of execution: _Atlanta, GA_

Tax Identification number 26-6230172

- 10 -

**GORDILLO 0011**

JUDD 070411

**TERMS AND CONDITIONS FOR LIFE INSURANCE PREMIUM FINANCING
AGREEMENT AMONG WINDSOR SECURITIES LLC, THE ERWIN A. COLLINS
FAMILY INSURANCE TRUST-2008, AND ERWIN A. COLLINS**

By entering into this Life Insurance Premium Financing Agreement, the Trust has requested that the Lender make a loan to the Trust in the principal amount designated as the Loan Amount in the Trust Contract (the "Loan") for the sole purpose of paying the Financed Premiums for the Policy and the other amounts shown in the calculation of the Loan Amount in the Trust Contract. To secure the obligations of the Trust for the Loan and otherwise under this Agreement, the Trust is granting the Lender a collateral assignment and pledge of the Policy and all the proceeds thereof, and the Trust, as beneficiary of the Policy, is pledging its beneficiary interest in the Policy. All capitalized terms used herein without definition shall have the respective meanings assigned to such terms in Article VIII.

This Agreement shall be effective on the date hereof except for Section 1.01 hereof. If the Lender, in its sole discretion, elects to advance the Financed Premiums, the date on which the Loan has occurred shall be the "Financing Date," and the entire Section 1.01 hereof shall become effective on the Financing Date.

**ARTICLE I.
LOAN, INTEREST AND PAYMENT TERMS**

SECTION 1.01. Loan. (a) Except as otherwise provided below, the Lender shall make to the Trust, either directly or through payment to parties (such as the insurance company issuing the policy) on behalf of the Trust, and the Trust shall so borrow from the Lender, the Loan Amount for the sole purpose of funding the payment of the Financed Premiums, Structuring Fee and Closing Fees.

(b) The Structuring Fee and Closing Fees are fully earned at Closing and no amount of such fees is refundable in the event of pre-payment.

(c) The Lender shall disburse the Loan, on behalf of the Trust, as follows: (i) the amount set forth as the Financed Premiums on the first page of the Trust Contract shall be disbursed directly to parties as set forth in Exhibit 1 of the Trust Contract, (ii) the Structuring Fee and Closing Fees shall be disbursed as set forth in Exhibit 2.

SECTION 1.02. Interest. Interest shall accrue on the Loan Amount outstanding hereunder from time to time as provided in the Note. On any date, the Loan Amount, plus the aggregate amount of accrued and unpaid interest owed thereon shall be defined as the "Financing Balance" as of such date.

Notwithstanding anything to the contrary herein or elsewhere, if at any time the rate of interest payable hereunder or under any Note or other Financing Document (the "Stated Rate") would exceed the highest rate of interest permitted under any applicable law to be charged (the "Maximum Lawful Rate"), then for so long as the Maximum Lawful Rate would be so exceeded, the rate of interest payable shall be equal to the Maximum Lawful Rate; provided, that if at any time thereafter the Stated Rate is less than the Maximum Lawful Rate, borrower shall, to the extent permitted by law, continue to pay interest at the Maximum Lawful Rate until such time as the total interest received is equal to the total interest which would have been received had the Stated Rate

1

GORDILLO 0012

been (but for the operation of this provision) the interest rate payable.

Thereafter, the interest rate payable shall be the Stated Rate unless and until the Stated Rate again would exceed the Maximum Lawful Rate, in which event this provision shall again apply.

SECTION 1.03. Payment of Loan at Maturity, Early Maturity and Prepayment.

(a) Payment of the Loan shall be as provided in the Note.

(b) In the event the Trust receives the Death Benefit for the Policy from the Insurer, no later than the next Business Day after the Trust receives the Death Benefit, the Trust shall pay to the Lender the Financing Balance.

(c) At any time prior to the Maturity Date, on sixty (60) calendar days prior written notice to the Lender, the Trust may prepay the Loan Amount only in full but not in part. The prepayment amount shall be the Financing Balance outstanding as of the day of receipt of such prepayment by Lender.

SECTION 1.04. Note. The Loan shall be evidenced by the Note executed and delivered by the Trust to the Lender as part of the Closing Package.

SECTION 1.05. Certain Tax Matters. For all United States federal tax purposes, it is the intent of the parties to this Agreement and all of their affiliates and beneficial owners, including the Insured, that (1) this Agreement be treated as a "split-dollar life insurance arrangement" under Treasury Regulations Section 1.61-22(b)(1), and (2) all payments made by or on behalf of the Lender to the Trust pursuant to this Agreement shall be treated as "split-dollar" loans pursuant to Treasury Regulations Section 1.7872-15(a)(2) in which the Lender is treated as the lender and the Trust is treated as the borrower. The parties to this Agreement and their affiliates and beneficial owners, including the Insured, agree not to take any position for United States federal tax purposes that is inconsistent with this intent unless required to do so by law. Pursuant to Treasury Regulations Section 1.7872-15(d)(2), the parties to this Agreement hereby represent that a reasonable person would expect that the Death Benefit will equal or exceed the Financing Balance, and the Lender, the Trust and the Insured shall make the representation in the manner required by Treasury Regulations Section 1.7872-15(d)(2)(ii) in the form attached hereto as Appendix B to this Agreement.

SECTION 1.06. Pledge of Trust Beneficial Interests. As a material inducement to the Lender to make the Loan to the Trust and enter into this Agreement, the trust beneficiary shall execute and deliver to the Lender the Security Agreement.

ARTICLE II.
CONDITIONS PRECEDENT

SECTION 2.01. Financing Date Conditions. The obligation of the Lender under Section 1.01 to make the Loan for the Loan Amount shall be contingent upon each of the following conditions having been satisfied or waived by the Lender:

a) As of the Financing Date, all the representations and warranties of the Trust and the

- 2 -

1612628 v01

GORDILLO 0013

JUDD 070413

Document #1 of 19

Insured in this Agreement and the other Financing Documents shall be accurate and complete in all material respects as if made on such date; and

b) Execution and delivery by the Trust and/or the Insured, as applicable, of all the documents included in the Closing Package.

SECTION 2.02. Termination. If the Trust does not deliver a complete Closing Package to the Lender within thirty (30) calendar days after the date of this Agreement, then the Lender shall have the option, in its discretion, to terminate this Agreement, in which event it shall be of no further force or effect and the Lender shall not have any further obligations to the Trust or the Insured under this Agreement, and the Lender shall have no duty or obligation to cause the Financing Date to occur.

## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES OF TRUST AND INSURED

SECTION 3.01. Trust. The Trust represents and warrants to the Lender, as of the date hereof and the Financing Date, as follows:

(a) Organization. The Trust is duly organized and validly existing under the laws of the State of Georgia, is authorized to do business in the State of Georgia, and has all necessary right, title, power and authority to enter into this Agreement and the other Financing Documents to which the Trust is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by the Trust of this Agreement and the other Financing Documents to which the Trust is a party, and the consummation of the transactions contemplated hereby and thereby, have been duly authorized by all required action, corporate or otherwise, on the part of the Trust.

A true and correct copy of the Trust Agreement, including all amendments, supplements and other modifications thereto, has been previously delivered by the Trust to the Lender, and the Trust Agreement is a legal, valid and binding agreement, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law). There are no existing options, warrants, calls or commitments of any character whatsoever relating to the Trust or its assets; other than the Trust Agreement as such may be amended and this Agreement.

(b) Execution. This Agreement has been, and as of the Financing Date the other Financing Documents to which the Trust is a party have been, duly executed and delivered by the Trust, and this Agreement and such other Financing Documents constitute or as of the Financing Date will constitute legal, valid and binding obligations of the Trust, enforceable against the Trust in accordance with their terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and to equitable principles of general application, regardless of whether such principles are considered in a proceeding in equity or at law).

(c) No Conflict. The execution and performance by the Trust of this Agreement and the other Financing Documents to which it is a party do not and will not (1) violate, conflict with or result in the breach of any provision of its constitutive documents, (2) conflict with or cause a

- 3 -

1612628 v01

**GORDILLO 0014**

Document #1 of 19

violation by the Trust of any Law or Governmental Order applicable to it or to any of its assets, properties or business or (3) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment or acceleration pursuant to any Contract to which the Trust is a party.

(d) <u>Consents.</u> No authorization, approval, consent, franchise, license, covenant, order, ruling, permit, certification, exemption, notice, declaration or similar right, undertaking or other action of, to or by, or any filing, qualification or registration with, any Governmental Authority is required to be obtained by the Trust that has not been obtained or is not in full force and effect; and no registration, declaration, or filing with any Governmental Authority is required to be given or made by the Trust to or with any Governmental Authority that has not been given or made or the applicable waiting period for which has not expired or terminated, each in connection with the execution and delivery of this Agreement and the other Financing Documents and the consummation of the transactions contemplated hereby and thereby.

(e) <u>No Event of Default; Compliance and Litigation.</u> No Event of Default, or event which with notice or passage of time would become an Event of Default, has occurred and is continuing. The Trust is not in violation of any Law or Governmental Order applicable to it or any of its properties or assets. No judicial, administrative or arbitral proceeding is pending or, to the best knowledge of the Trust, threatened against the Trust.

(f) <u>Policy.</u>
(i) The Trust has full, complete and absolute title to and ownership of, and is the sole and duly designated beneficiary under, the Policy and all rights thereunder free and clear of any Encumbrances, options, purchase rights or commitments of any kind except as otherwise contemplated by the Financing Documents. Under the terms of the Policy, the Trust has the sole and absolute right to (1) change the beneficiary of the Policy, (2) elect settlement options available under the Policy, (3) assign, transfer, sell or surrender the Policy, (4) borrow against the Policy, (5) pledge or assign the Policy as collateral, (6) apply for and maintain waiver of premium or conversion of the Policy, (7) exercise any right regarding nonforfeiture, amendment or voting, (8) be notified about any and all matters relating to the Policy as to which the owner and beneficiary thereof should be notified, and (9) receive all proceeds and other amounts now or in the future due and payable under the Policy, including all death benefits, surrender value, dividends, options, benefits or advantages claimed from the Policy. On the Financing Date, no Person other than the Trust will have any interest in or claim to the Policy other than as expressly provided in this Agreement. On the date the Policy was issued, the Trust and each beneficiary of the Trust had an insurable interest in the life of the Insured under applicable law.

(ii) The Policy is in full force and effect and constitutes the legal, valid and binding obligation of the Insurer, enforceable in accordance with its terms, subject to the terms of the collateral assignment of the Policy given by the Trust to the Lender.

(iii) The copies of the Policy, financial information, policy information, premium schedules, in-force illustrations and the other documentation included in the Closing Package are true and correct copies of the Policy and such other documentation, and no amendments or other modifications have been made to any of the foregoing that are not included in the Closing Package, nor is the Trust aware of any material documentation in connection with the negotiation, purchase and administration of the Policy a copy of

- 4 -

GORDILLO 0015

JUDD 070415

which is not included in the Closing Package.

(iv) All of the material information provided by the Trust or which the Trust caused to be provided by any Person to the Lender (or its agent(s)) or any insurer, reinsurer, insurance agent or medical underwriters in connection with the issuance of the Policy, this Agreement or any other Financing Document, is complete and accurate in all material respects as of the date when delivered, including the information contained in the Closing Package.

(v) Other than this Agreement, the Policy and the other agreements in the Closing Package to which it is a party, the Trust is not a party to any Contract, has not engaged in any business or activity and has no liabilities or obligations. The copies of the Trust Agreement included in the Closing Package are true and correct copies, and no amendments or other modifications have been made thereto that are not included in the Closing Package.

(g) Independent Decision. The Trust has consulted with and received advice from attorneys, accountants and tax or other financial advisors of his or her choosing, has considered other options for financing the Policy, and has satisfied himself or herself that entering into this Agreement and the other Financing Documents and consummating the transactions contemplated by this Agreement and the other Financing Documents is in the best interest of the Trust. The Trust acknowledges that it has had this Agreement and the other Financing Documents for an amount of time sufficient to thoroughly analyze, discuss and receive advice from any professionals or anyone else of its choosing.

(h) No Competency Proceedings. Neither the Insured nor the Trustee is now, nor has ever been, the subject of any mental health or mental competency proceedings or any other proceedings or hearings with respect to which that party's competency or capacity to contract is or was an issue, nor is any such proceeding, hearing, appointment or service pending, threatened or contemplated.

(i) No Illness. To the Trustee's knowledge, the Insured does not have a catastrophic, chronic, life-threatening or terminal illness or condition.

(j) Purpose of Loan. The purpose of this Loan is for estate planning purposes and is not entered into with the intent to effect a life settlement transaction.

(k) Net Worth. To the Trustee's knowledge, the application for insurance and all financial information relative to the Insured provided in, or with, such application is true, accurate and correct in all material respects as of the date of this Agreement and the Financing Date.

SECTION 3.02. Insured. The Insured hereby represents and warrants to the Lender, as of the date hereof and the Financing Date, as follows:

(a) Residence. The Insured is an individual residing in the state designated by the Insured in the Trust Contract.

(b) Execution. This Agreement and the other Financing Documents to which the Insured is a party have been duly executed and delivered by the Insured and the Trust, and this Agreement and such other Financing Documents constitute legal, valid and binding obligations of the Insured and the Trust, enforceable against the Insured and the Trust in accordance with the documents' terms (subject to Section 7.13 below and applicable bankruptcy, reorganization,

1612628 v01

GORDILLO 0016

JUDD 070416

Document #1 of 19

insolvency, moratorium or similar laws affecting creditors' rights generally and to equitable principles of general application regardless of whether such principles are considered in a proceeding in equity or at law).

(c) No Conflict. The execution, delivery and performance by the Insured of this Agreement and the other Financing Documents to which it is a party do not and will not (1) to the knowledge of the Insured, conflict with or cause a violation by the Insured of (A) any Law or Governmental Order of the Insured's state of residence applicable to the Insured or to any of the Insured's assets, properties or business or (B) to the knowledge of the Insured, any other Law or Governmental Order applicable to the Insured or to any of the Insured's assets, properties or business or (2) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment or acceleration pursuant to any Contract to which the Insured is a party.

(d) Consents. No authorization, approval, consent, franchise, license, covenant, order, ruling, permit, certification, exemption, notice, declaration or similar right, undertaking or other action of, to or by, or any filing, qualification or registration with, any Governmental Authority is required to be obtained by the Insured that has not been obtained or is not in full force and effect, and no registration, declaration, or filing with any Governmental Authority is required to be given or made by the Insured to or with, any Governmental Authority that has not been given or made or the applicable waiting period for which has not expired or terminated, each in connection with the execution and delivery of this Agreement and the other Financing Documents and the consummation of the transactions contemplated hereby and thereby.

(e) No Event of Default. No Event of Default described in Section 6.01 or event which with notice or passage of time would become such an Event of Default, has occurred and is continuing.

(f) Policy. The Insured does not have any knowledge that any representation made by the Trust is false or misleading. The Trust does not have any knowledge that any representation made by the insured is false or misleading. All of the material information provided by the Insured or which the Insured caused to be provided by any Person to the Lender (or its agent(s)) or any insurer, reinsurer, insurance agent or medical underwriters in connection with the issuance of the Policy, this Agreement or any other Financing Document is complete and accurate in all material respects as of the date when delivered, including the information contained in the Closing Package.

(g) Independent Decision. The Insured and Trustee each has read, understands, and has signed or caused to be signed by the appropriate Persons (other than the Lender) each document in the Closing Package. The Insured and Trustee each has sought and obtained his or her own tax, accounting, financial and legal advice with respect to this Agreement and any obligations that the Insured and/or trustee will incur or undertake thereunder; and is relying solely upon his or her own tax, accounting, financial, legal and other advisers in his or her decision to enter into this Agreement and any related transactions. The Insured and Trustee each has considered other alternatives for financing the Policy, and has satisfied himself or herself that entering into this Agreement and the other Financing Documents and consummating the transactions contemplated by this Agreement and the other Financing Documents is in his or her and the Trust's best interest. The Insured and Trustee each acknowledges that he or she has had this Agreement and the other Financing Documents for an amount of time sufficient to thoroughly analyze, discuss and receive advice from any professionals or anyone else of his or her choosing.

- 6 -

GORDILLO 0017

JUDD 070417

Document #1 of 19

(h) <u>No Competency Proceedings.</u> Neither the Insured nor the Trustee is now, nor has ever been, the subject of any mental health or mental competency proceedings or any other proceedings or hearings with respect to which that party's competency or capacity to contract is or was an issue, nor is any such proceeding, hearing, appointment or service pending, threatened or contemplated.

(i) <u>No Illness.</u> To the Insured's knowledge, the Insured does not have a catastrophic or life-threatening illness or condition.

(j) <u>Purpose of Loan.</u> The purpose of this Loan is for estate planning purposes and is not entered into with the intent to effect a life settlement transaction.

(k) <u>Net Worth.</u> The application for insurance and all financial information provided in, or with, such application is true, accurate and correct in all material respects as of the date of this Agreement and the Financing Date.

(l) <u>Accredited Investor.</u> The Insured and the Trust each is an "accredited investor" pursuant to Rule 501(a) or Rule 144A promulgated under the Federal Securities Act of 1933 and by reason of his/her business and financial experience, has such knowledge, sophistication and experience in business and financial matters as to be capable of evaluating the merits and risks of the transactions contemplated by this Agreement and is able to bear any economic risk of such transactions. Furthermore, the Insured is a natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,500,000.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF LENDER

The Lender hereby represents and warrants to the Trust and the Insured, as of the date hereof and the Financing Date, as follows:

SECTION 4.01. <u>Lender.</u> The Lender is a Nevada LLC which is duly organized, validly existing and in good standing under the laws of the State of Nevada. It has all necessary power and authority to enter into this Agreement and any Financing Document to which it is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by the Lender of this Agreement and any Financing Document to which it is a party, and the consummation of the transactions contemplated hereby and thereby, have been duly authorized by all required action on the part of the Lender.

SECTION 4.02. <u>Execution.</u> This Agreement and any Financing Document to which the Lender is a party have been duly executed and delivered by the Lender, and (assuming due authorization, execution and delivery by the other parties thereto) this Agreement and such Financing Documents constitute legal, valid and binding obligations of the Lender, enforceable against the Lender in accordance with their terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application, regardless of whether enforcement is sought in a proceeding in equity or at law).

1612628 v01

JUDD 070418

GORDILLO 0018

SECTION 4.03. No Conflict. The execution, delivery and performance of this Agreement and any Financing Document to which it is a party by the Lender do not and will not (1) violate, conflict with or result in the breach of any provision of its constitutive documents, (2) conflict with or violate any Law or Governmental Order applicable to it or to any of its respective assets, properties or businesses or (3) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of any Contract to which the Lender is a party.

SECTION 4.04. Consents. No authorization, approval, consent, franchise, license, covenant, order, ruling, permit, certification, exemption, notice, declaration or similar right, undertaking or other action of, to or by, or any filing, qualification or registration with, any Governmental Authority is required to be obtained by the Lender that has not been obtained or is not in full force and effect, and no registration, declaration, or filing with any Governmental Authority, domestic or foreign, is required to be given or made by the Lender, or any of its affiliates to, or to be made by the Lender, or any of its affiliates with, any Governmental Authority that has not been given or made or the applicable waiting period for which has not expired or terminated, each in connection with the execution and delivery of this Agreement and the other Financing Documents and the consummation of the transactions contemplated hereby and thereby.

## ARTICLE V.
## COVENANTS OF TRUST AND INSURED

SECTION 5.01. Covenants of Trust. From and after the Financing Date and for so long as any amounts remain owing by the Trust to the Lender under this Agreement, the Trust hereby covenants and agrees as follows:

(a) The Trust shall take such further action and/or execute and deliver all further assurances, documents and/or instruments as may be reasonably requested by the Lender in order to (i) effect and protect the collateral assignment of the Policy to the Lender and its assigns, (ii) immediately notify the Lender upon having knowledge of the Insured's death, (iii) provide from time to time to the Lender assurance from the Insurer that the Policy remains in effect, that no collateral assignment or other impairment has been submitted to the Insurer with respect to the Policy, (other than an instrument reflecting the Lender's interest in the Policy which was submitted by or with the consent of the Lender) and that the Trust is the owner of the Policy, (iv) effect, administer or enforce the transactions contemplated by this Agreement and the other Financing Documents to which the Trust is a party, (v) execute any documents requested by the Lender to submit to the Insurer for payment of the Death Benefit, and (vi) authorize the provision and/or delivery of medical, financial, personal and other information and documentation about the Insured to the Lender, any affiliate of the Lender, any of their assigns, or any Insurer from any physician, hospital, medical provider, insurance company or other Person with respect to the Insured.

(b) The Trust agrees to notify the Lender in writing of any change of the Trust's address, telephone number or other contact information or the appointment of a new Trustee at least thirty (30) days prior to such change. The Trust acknowledges that the Lender will be verifying the Trust's and the Insured's current addresses, contact information and other relevant information by sending the Trust correspondence with a prepaid return response from time to time. The Trust covenants and agrees that it shall accurately complete and manually execute each such response and return the same to the Lender and/or its designees in a timely manner.

- 8 -

GORDILLO 0019

JUDD 070419

Case 1:16-cv-01533-GBD-GWG   Document 125-14   Filed 08/23/18   Page 30 of 77
Case3:14-cv-03713-WHO   Document40   Filed07/30/15   Page29 of 160

Document #1 of 19

(c) If the Trust receives proceeds derived or to be derived from the Policy other than from the Lender, the Trust shall (1) hold all such proceeds for the sole and exclusive benefit of the Lender and its assigns, (2) immediately notify the Lender of such receipt by the Trust, (3) immediately transfer, convey and pay over to the Lender such portion of the proceeds as is equal to the amount(s) then due and owing by the Trust to the Lender, and (4) take any and all actions reasonably requested by the Lender, in order to change the payment instructions with respect to the Policy such that proceeds therefrom are payable directly to the Lender or any person designated in writing by the Lender.

(d) The Trust shall remain duly organized, validly existing and in good standing under the law of the State of Georgia, and shall not change its form of organization, breach the terms of the Trust Agreement, remove, replace or otherwise change the Trustee or name an additional Trustee of the Trust, or permit an Encumbrance to the Policy or the other Trust Assets (except as contemplated by this Agreement) without the Trust's receipt of the prior written consent of the Lender. Should any material changes take place concerning the Trust or the trustee that could not be anticipated, Lender shall be immediately informed of such changes as soon as is practicable.

(e) The Trustee shall not take any of the actions set forth in Section VI of the Trust Agreement without the prior written consent of the Lender, which consent may be withheld by the Lender in its sole discretion.

SECTION 5.02. Covenants of Insured. For so long as any amounts remain owing by the Trust to the Lender under this Agreement, the Insured hereby covenants and agrees as follows:

(a) Subject to the Lender complying with its obligations under Section 7.01, the Insured shall take such further action and/or execute and deliver all further assurances, documents and/or instruments as may be reasonably requested by the Lender to effectuate the purpose of this Agreement and the other Financing Documents, including to authorize the provision and/or delivery of (i) medical information and documentation about the Insured and (ii) during the twenty-four (24) month contestability period for the Policy, financial, personal and other information and documentation with respect to the Insured, to the Lender, any affiliate of the Lender, any of their assigns, or any Insurer from any physician, hospital, medical provider, insurance company or other Person.

(b) The Insured and Trustee each agrees to notify the Lender in writing of any change of his or her and the Trust's address, telephone number or other contact information thirty (30) days prior to such change.

(c) The Insured and Trustee each understands that the Lender will be verifying his or her current address, contact information and other relevant information by sending the Insured correspondence with a prepaid return response from time to time. The Insured and Trustee each covenants and agrees that he or she shall accurately complete and manually execute each such response and return the same to the Lender and/or its designees in a timely manner.

## ARTICLE VI.
## EVENTS OF DEFAULT

SECTION 6.01. Events of Default. The occurrence at any time of any of the following events constitutes an "Event of Default":

- 9 -

1612628 v01

GORDILLO 0020

a) Failure by the Trust or the Insured to perform any of its obligations under this Agreement or any Financing Document to which either the Trust or the Insured is a party if, except with respect to defaults under Sections 6.01(2) and (3) below; provided that if such failure is susceptible to remedy, it shall not constitute an Event of Default unless such failure is not remedied on or prior to the thirtieth (30th) calendar day after written notice of such failure is given to the Trust and the Insured by the Lender;

b) Failure by the Trust to pay any amount within two (2) days when due under this Agreement or any Financing Document;

c) Failure by the Trust to comply with any of its covenants under Sections 5.01(d) or 5.01(e);

d) Any representation or warranty made by the Trust or the Insured under this Agreement or any Financing Document to which either is a party is incorrect or misleading in any material respect when made or deemed to be made;

e) The Trust is terminated, dissolved or liquidated, is unable to pay its debts as they mature, makes an assignment for the benefit of creditors, is adjudicated a bankrupt or insolvent, seeks appointment of, or is subject of an order appointing, a trustee, conservator, liquidator or receiver as to all or part of its assets, commences, approves or consents to, or is the debtor in, any case or proceeding under any bankruptcy, reorganization or similar law and, in the case of an involuntary case or proceeding, such case or proceeding is not dismissed thirty (30) days following its commencement, or is the subject of an order for relief in an involuntary case under federal bankruptcy law;

f) The Insured commits suicide, as determined by the Insurer, or the Insurer contests the Policy, exercises its contestability rights under the Policy or otherwise rescinds or attempts to rescind the issuance of the Policy, within the two (2) year period following the date of issuance of the Policy.

SECTION 6.02. Remedies. If any Event of Default shall occur and be continuing, then automatically in the case of an Event of Default described in clause (5) of Section 6.01 or otherwise at the election of the Lender, the Financing Balance shall become due and payable, without presentment, demand, protest or any notice of any kind, all of which are expressly waived by the Insured and the Trust (the "Default Maturity"). Upon the occurrence and during the continuance of an Event of Default, in addition to any other rights under this Agreement and any other Financing Documents or otherwise available at law or in equity, the Lender and its assigns shall have all the rights and remedies of a secured party on default under the law of the State of California and other applicable law to enforce the assignments and security interests contained in the Financing Documents, including the right, subject to compliance with any mandatory requirements under applicable law, to sell or apply any rights and other interests assigned or pledged in the Financing Documents at public or private sale. The rights and remedies of Lender with respect to the Insured are subject to the terms of "Section 7.13 below.

## ARTICLE VII.
## GENERAL PROVISIONS

SECTION 7.01. Expenses. Except as otherwise specified in this Agreement, all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses unless, at any time after the Financing

-- 10 --

1612628 v01

GORDILLO 0021

Date, the Lender elects in its sole discretion to pay the costs and expenses of any other party hereto, *provided, however,* that any party that is in default in the performance or observance of its duties and obligations hereunder shall indemnify the other party hereto for the reasonable costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred by such other party in enforcing this Agreement against such defaulting party. This Section 7.01 shall survive the payments of all other amounts due hereunder.

SECTION 7.02. Confidentiality. (a) The Lender agrees (i) not to use or disclose Consumer Information except as necessary, in the opinion of the Lender, to secure funding for its obligations under this Agreement or the other Financing Documents or to effect, administer or enforce the transactions contemplated by this Agreement, the other Financing Documents, and any other agreements entered into in connection therewith, including, without limitation, the sale or exercise of rights under the Policy, and (ii) to keep Consumer Information confidential and limit access to such information to those Persons who, in the Lender's reasonable discretion, require access to such information to effect, administer or enforce the transactions contemplated by this Agreement, the other Financing Documents and any other agreements entered into in connection therewith, including, without limitation, the sale or the exercise of rights under the Policy.

(b) Each of the Trust and the Insured agrees not to use or disclose any Financing Documents or any information or data related thereto except to its counsel, financial advisors, internal and external auditors and accountants advising the Trust or the Insured with respect to the transaction contemplated thereby or to the members of the Trust or family members of the Insured, in each case, provided that the third party agrees not to use or disclose such documents, information or data, except on the same terms and subject to the same limitations.

(c) Nothing in this Section 7.02 shall prohibit disclosure of information that is required by any Law or regulation, or in response to legal process or to the extent that it may otherwise have become publicly available without the fault of the person proposing to disclose. In addition, notwithstanding anything herein to the contrary, in accordance with section 1.60114(b)(3)(iii) of the United States Treasury Regulations, the parties (and each employee, representative, or other agent of any party) may disclose to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this Agreement and all materials of any kind (including opinions or other tax analyses) that are provided to the parties relating to such tax treatment and tax structure.

SECTION 7.03. Survival of Representations and Warranties. The representations and warranties of the Trust, the Trustee and the Insured contained in Article III hereof, and the representations and warranties of the Lender contained in Article IV, shall survive the Financing Date.

SECTION 7.04. Notices. All notices, requests, claims, demands and other communications required or permitted to be given hereunder shall be in writing, shall be given to the Trust, Insured and the Lender and shall be delivered by hand or telecopied or sent by reputable overnight courier service and shall be deemed given when so delivered by hand or telecopied (with proof of transmission), or one (1) Business Day after being sent by reputable overnight domestic courier service and five (5) Business Days after being sent by reputable overnight international courier service. All such notices, requests, claims, demands and other communications shall be addressed as set forth in the Trust, or pursuant to such other instructions as may be designated in writing to the other party in accordance with this Section 7.04.

SECTION 7.05. Severability. The provisions of this Agreement shall be severable. If any

- 11 -

GORDILLO 0022

JUDD 070422

provision hereof is held to be invalid, void or otherwise unenforceable, the remaining provisions shall remain in full force and effect to the fullest extent permitted by law.

SECTION 7.06. Entire Agreement. This Agreement and the other Financing Documents to which the Insured or Trust are parties constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements and undertakings, both written and oral, among the Lender, the Trust and the Insured with respect to the subject matter hereof.

SECTION 7.07. Assignment. The Trust and the Insured may not assign this Agreement, or any of their rights, duties or obligations hereunder, without their receipt of the prior written consent of the Lender. The Lender may assign or pledge its rights and obligations under this Agreement and the other Financing Documents to any Person from time to time in its sole discretion; provided that the Lender shall remain liable to the Insured and the Trust for all of its obligations under Sections 1.05, 7.01, 7.02 and 7.11 of the Terms and Conditions.

SECTION 7.08. Third Party Beneficiaries. Except as otherwise expressly provided herein to the contrary, this Agreement shall be binding upon and inure solely to the benefit of the parties hereto, and their permitted assigns, and nothing herein is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

SECTION 7.09. Execution in Counterparts. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile shall be effective as delivery of an original executed counterpart of this Agreement.

SECTION 7.10. Amendments. No amendment, waiver, modification or supplement of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the Lender and the Trust, provided that no amendment, waiver, modification or supplement of any provision of this Agreement that affects the rights or obligations of the Insured hereunder shall in any event be effective until approved in writing by the Insured and then any such amendment, waiver, modification, supplement or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 7.11. Dispute Resolution.

(a) The Lender, the Trust and the Insured agree that all controversies or disputes arising out of or in connection with this Agreement ("Disputes") shall be resolved pursuant to this Section 7.11.

(b) All Disputes shall in the first instance be discussed amicably between the parties with a view to resolving such Dispute, commencing upon one party giving other parties written notice of such Dispute. In the event that such Dispute is not resolved within thirty (30) days after such notice (or such longer period as the parties may agree in writing with respect to any such Dispute), any party may submit such Dispute to be finally settled by arbitration administered under the Rules by a panel of three arbitrators sitting in San Francisco, California. One arbitrator shall be nominated by the party initiating arbitration at the time of the filing of its demand for arbitration, the second arbitrator shall be nominated by the opposing party(ies) at the time of the filing of its

- 12 -

GORDILLO 0023

JUDD 070423

Document #1 of 19

answering statement, and the third arbitrator (who shall act as chairman) shall be jointly nominated by party-nominated arbitrators if they are able to agree. If the first two party nominated arbitrators are unable to agree upon a third within thirty (30) days after the nomination of the second, or if either party fails to nominate an arbitrator as set forth herein, an arbitrator shall be appointed pursuant to the Rules. The award of the arbitrators shall be final and binding upon the parties, and shall not be subject to any appeal or review. The parties agree that such award may be recognized and enforced in any court of competent jurisdiction. The parties agree to submit to the personal jurisdiction of the federal and state courts sitting in Sonoma County, California, for the sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief), the agreement to arbitrate contained herein and any award resulting from arbitration pursuant to this Section 7.11 and, to the fullest extent permitted by law, waive any objection which they may have at any time to the laying of venue of any proceedings brought in such court and any claim that such proceedings have been brought in an inconvenient forum.

(c) In any arbitral proceeding arising under this Agreement, the parties agree that they will engage in cooperative discovery, to be supervised by the arbitral tribunal. In its discretion, the tribunal may order the exchange of documents in the custody or control of parties to this Agreement, and may order a limited number of party depositions of one (1) day's duration each if requested by the opposing party and if the tribunal finds that such depositions would contribute to the efficient development of evidence.

SECTION 7.12. Governing Law and Consent to Jurisdiction. This Agreement shall be governed by and construed under the laws of the State of California (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said laws. All parties hereto agree that any claim arising out of or relating to this Agreement shall be (i) brought in the Superior Court of Sonoma County, California, or (ii) brought in or removed to the United States District Court for the Northern District of California. Each of the parties consents to the personal jurisdiction of the courts identified above and waives (i) any objection to jurisdiction or venue, or (ii) any defense claiming lack of jurisdiction or improper venue, in any action brought in such courts.

SECTION 7.13. Limitation on Insured Liability. The Insured shall be liable for damages for any misrepresentation made by him or her in Section 3.02, and for any default by him or her in the performance of any of his or her obligations under Article V and Section 7.01 but, in the absence of fraud, otherwise shall have no liability hereunder, including, without limitation, no liability for the payment of the Financing Balance.

SECTION 7.14. Limitation on Liability of Manager. In no event shall any members or managers of the Lender be liable to any Person for the representations and obligations of the Lender under any Financing Document.

## ARTICLE VIII.
## DEFINED TERMS

SECTION 8.01. Definitions. Terms used in this Agreement and elsewhere in the Financing Documents shall be as defined in this Section 8.01. Whenever the word "Other" is inserted before a defined term, it refers to such term as used in other financing agreements which have terms and conditions substantially similar to the Terms and Conditions of this Agreement.

- 13 -

1612628 v01

**GORDILLO 0024**

Document #1 of 19

"**Agreement**" means this Life Insurance Premium Financing Agreement, consisting of the Trust Contract and the Terms and Conditions, and including all the exhibits and appendices thereto.

"**Business Day**" means a day of the year other than a Saturday or Sunday on which commercial banks in New York City or San Francisco, California are not authorized or required to be closed.

"**Closing Fees**" has the meaning given to such term in the preamble to the Trust Contract.

"**Closing Package**" means, collectively, the agreements, instruments, certificates, reports and documents included in Appendix A to this Agreement.

"**Consumer Information**" means non-public medical, financial and personal information about the Trust and the Insured (including the identity of the Trust or the Insured, or the identity of a family member or friend thereof).

"**Contract**" means any contract, agreement, lease, sublease, license, note, bond, mortgage or indenture, permit, franchise, insurance policy or other instrument, whether written or oral.

"**Death Benefit**" means the amount paid by any Insurer upon the death of the Insured under the terms of the Policy.

"**Death Date**" means the date on which the Insured dies.

"**Default Maturity**" has the meaning specified in Section 6.02 hereof. "**Dispute**" has the meaning specified in Section 7.11 hereof.

"**Encumbrance**" means any security interest, pledge, mortgage, lien (including, without limitation, environmental and tax liens), charge, encumbrance, adverse claim, preferential arrangement or restriction of any kind, including, without limitation, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership.

"**Event of Default**" means any event specified as such in Section 6.01 hereof.

"**Financing Balance**" has the meaning set forth in Section 1.02 hereof.

"**Financing Date**" has the meaning given to such term in the preamble hereof.

"**Financed Premiums**" means the insurance premiums required to be paid for the Policy to keep the Policy in force for twenty-seven (27) months following the date of inception of the Policy.

"**Financing Documents**" means this Agreement, the Promissory Note, the Pledge Agreement, and all other agreements and instruments as referenced in the Closing Package, and any of the foregoing which may be amended from time to time.

- 14 -

1612628 v01

JUDD 070425

GORDILLO 0025

Document #1 of 19

"Governmental Authority" means any nation or government, any state, province, city, municipal entity or other political subdivision thereof, and any governmental, executive, legislative, judicial, administrative or regulatory agency, department, authority, instrumentality, commission, board, bureau or similar body, whether federal, state, provincial, territorial, local or foreign.

"Governmental Order" means any order, writ, judgment, injunction, decree, stipulation, determination or administrative ruling or award entered by or with any Governmental Authority.

"Holder" has the meaning given to such term in the Promissory Note.

"Insured" means the individual who is designated as the insured in the Trust Contract.

"Insurer" means the life insurance company designated in the Trust Contract and which is the issuer of the Policy.

"Law" means any federal, national, supranational, state, provincial or local statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including, without limitation, common law).

"Lender" has the meaning given to such term in the preamble to the Trust Contract.

"Loan" has the meaning given to such term in the preamble to the Terms and Conditions.

"Loan Amount" means the aggregate principal amount of the loan and related fees designated in the Trust Contract.

"Maturity Date" means the date that is twenty-seven (27) months after the Financing Date.

"Note" means the promissory note evidencing the Loan in the form attached as Exhibit 3 to the Trust Contract.

"Pre-Payment Amount" means an amount equal to the sum of (1) the Financing Balance as of the repayment date, plus (2) the Pre-Payment Fee.

"Person" means any individual, partnership (whether general or limited), corporation (including a business trust), joint stock company, limited liability company, trust, estate, association, custodian, nominee, joint venture or other entity, or a government or any political subdivision or agency thereof.

"Pledge Agreement" means the Security Agreement for Beneficiary Interest in Trust between the Lender and the Trust beneficiary(ies) pursuant to which the Beneficiary(ies) have pledged to the Lender any beneficial interest in the Trust.

"Pledged Collateral" shall have the meaning as denoted in the Security Agreement (for Beneficiary Interest in Trust).

- 15 -

1612628 v01

JUDD 070426

GORDILLO 0026

"**Policy**" means the life insurance policy designated in the Trust Contract, and any applications, riders, endorsements, supplements, amendments and other documents that modify or otherwise affect the terms and conditions of such policy, and any and all proceeds thereof.

"**Prepayment Date**" means the date of prepayment by Borrower pursuant to Section 1.03(c).

"**Promissory Note**" has the same meaning as "Note", defined above.

"**Pre-Payment Fee**" means an amount equal to the Pre-Payment Fee specified in the Trust Contract.

"**Rules**" means the Commercial Arbitration Rules of the American Arbitration Association.

"**Secured Obligations**" has the same meaning as "Pledged Collateral".

"**Security Agreement**" is the document "The Security Agreement for Beneficiary Interest in Trust" that is part of the Financing Documents

"**Structuring Fee**" is the amount set forth opposite such term in the Trust Contract.

"**Terms and Conditions**" means the Terms and Conditions incorporated into the Trust Contract.

"**Trust Assets**" means all the assets of the Trust including, without limitation, the Policy, cash, accounts, chattel paper, general intangibles, documents, instruments and other assets and property, and all replacements, proceeds and products of the foregoing, wherever located, whether now or hereafter acquired.

"**Trust Contract**" means the Life Insurance Premium Financing Agreement exclusive of the Terms and Conditions.

"**Trustee**" means the individual or entity identified as the Trustee in the Trust Contract.

[end of Terms and Conditions of Financing Agreement]

1632628 v01

GORDILLO 0027

JUDD 070427

Document #1 of 19

## APPENDIX A

### Closing Package Documents

The Trust shall have delivered to the Lender the documents which together comprise the **"Closing Package"**, and which includes, but may not be limited to, the following:

1) This **Financing Agreement**, including
   1a) Exhibit 1: Description of Policy;
   1b) Exhibit 2: Instructions for Payment of Structuring and Closing Fees;
   1c) Exhibit 3: Specimen copy of Promissory Note;
   1d) The Terms and Conditions,
   1d) Appendix A: This Closing Package;
   1e) Appendix B: Representation Required by Treasury Regulations;

2) **Promissory Note**, duly executed;

3) **Trustee's Certificate** Confirming the Trust, including:
   3a) Exhibit A: Copy of the Trust Document, TO BE PROVIDED BY TRUSTEE;
   3b) Exhibit B: Internal revenue Service letter certifying EIN of the Trust, TO BE PROVIDED BY TRUSTEE;

4) **Insured's Consent**;

5) **Authorization for Disclosure of Protected Health Information Form** executed by the Insured, TO BE NOTARIZED;

6) **Irrevocable and Durable Limited Power of Attorney** executed by the Insured permitting the Lender to review and receive copies of all records protected by the federal Health Insurance Portability and Accountability Act of 1996; permitting Lender sign for Insured for such documents; and permitting Lender to complete and blanks or omissions in any documents in the Closing Package, TO BE NOTARIZED;

7) **Authorization and Direction to Provide Death Certificate Form** executed by the Insured, TO BE NOTARIZED;

8) **Insured's Closing Certificate**;

9) **Acknowledgment and Agreement of Trust and Insured with Respect to Certain Financial Matters**;

10) A copy of the **Insured's driver's license** or other proof of the Insured's age and sex reasonably satisfactory to the Lender, in either case certified by the Insured, TO BE PROVIDED BY INSURED, preferably enlarged color copy;

11) **Special Power of Attorney** executed by the Trust permitting the Lender or its designee to submit documents to the Insurer for payment of the Death Benefit, TO BE NOTARIZED;

- 17 -

1612628 v01

**GORDILLO 0028**

JUDD 070428

Document #1 of 19

12) The **Policy** and related financial information, policy information and premium schedules (The original, or a copy signed by the Insured, the Owner (Trust) and the agent of record certifying such copy as accurate and current), TO BE PROVIDED BY TRUSTEE;

13) The **Security Agreement for Beneficiary Interest in Trust** between the Lender and the trust beneficiary executed by the Insured and beneficiary, including:
13a) Policy Issue Information (Schedule 1);
SEPARATE COPIES TO BE SIGNED BY EACH BENEFICIARY;

14) Sales illustration for the Policy, in form reasonably satisfactory to the Lender, generated by each applicable Insurer, TO BE PROVIDED BY TRUSTEE;

15) **Assignment of Life Insurance Policy as Collateral**, including:
15a) Schedule 1: addresses for Notice;

16) *Assignment of Life Insurance Policy as Collateral* (insurance company form)
16a) Individual Acknowledgement, TO BE NOTARIZED;

17) **Borrower's Closing Certificate**, certifying the representations and warranties made in the Financing Documents are accurate and complete in all material respects;

18) **Life Insurance Premium Finance Trust Questionnaire;**

19) **Receipt of Funds Confirmation.** To be signed and returned upon receipt of such funds.

- 18 -

1612625 v01

**GORDILLO 0029**

JUDD 070429

Document #1 of 19

### APPENDIX B

Representation Required by Treasury Regulations Section 1.7872-15(d)(2)

Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins hereby represent, pursuant to Treasury Regulations Section 1.7872-15(d)(2), that the Death Benefit provided under the Life Insurance Premium Financing Agreement dated ___4___ ___15___, 2008 (the "Agreement") among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008 and Erwin A. Collins is equal to or exceeds the Financing Balance under that Agreement and that, accordingly, a reasonable person would expect that all payments under the split-dollar loan will be made. All capitalized terms not otherwise defined shall have the same meanings given to such terms in the Agreement. A copy of this representation shall be attached to the federal income tax return for each undersigned party filed for the tax year in which the loan is made to the borrower under the Agreement.

WINDSOR SECURITIES LLC By MFIP (Delaware, Inc.)

By: _____

Steven Prusky
Title:        President/Director, MFIP (Delaware)
Address:   25 East Athens Avenue
              Ardmore, PA 19003
Taxpayer I.D. Number:     20-3360806

The Erwin A. Collins Family Insurance Trust-2008

By: *Maria Ana Gordillo*
      Trustee Name: **Maria A. Gordillo**

Date: ___April 15, 2008___
Taxpayer I.D. Number: 26-6230172
Place of execution: ___Atlanta, GA___

Erwin A. Collins

*Erwin A. Collins*
Address: 331 Suburban Road
              Knoxville, TN 37923
Date: ___4-14-08___
Taxpayer I.D. Number: 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

- 19 -

1612626 v01

**GORDILLO 0030**

JUDD  070430

Document #1 of 19

## APPENDIX B

Representation Required by Treasury Regulations Section 1.7872-15(d)(2)

Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins hereby represent, pursuant to Treasury Regulations Section 1.7872-15(d)(2), that the Death Benefit provided under the Life Insurance Premium Financing Agreement dated __4 15_, 2008 (the "Agreement") among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008 and Erwin A. Collins is equal to or exceeds the Financing Balance under that Agreement and that, accordingly, a reasonable person would expect that all payments under the split-dollar loan will be made. All capitalized terms not otherwise defined shall have the same meanings given to such terms in the Agreement. A copy of this representation shall be attached to the federal income tax return for each undersigned party filed for the tax year in which the loan is made to the borrower under the Agreement.

WINDSOR SECURITIES LLC By MFIP (Delaware, Inc.)

By:

Steven Prusky
Title:       President/Director, MFIP (Delaware)
Address:     25 East Athens Avenue
             Ardmore, PA 19003
Taxpayer I.D. Number:     20-3360806

The Erwin A. Collins Family Insurance Trust-2008

By:     Maria Ana Gordillo
        Trustee Name: Maria A. Gordillo

Date: April 15, 2008
Taxpayer I.D. Number: 26-6230172
Place of execution: Atlanta, GA

Erwin A. Collins

Address: 331 Suburban Road
         Knoxville, TN 37923
Date: 4-14-08
Taxpayer I.D. Number: 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

- 19 -

1612628 v01

**GORDILLO 0031**

JUDD 070431

Document #2 of 19

## PROMISSORY NOTE

$112,750.00                                      April  15, 2008

FOR VALUE RECEIVED, The Erwin A. Collins Family Insurance Trust-2008, a Georgia trust ("Borrower"), hereby promises to pay to the order of Windsor Securities LLC, a Nevada LLC ("Lender"; Lender and any other person who becomes a holder of this promissory note being referred to hereinafter sometimes as the "Holder"), the sum of ONE HUNDRED TWELVE THOUSAND SEVEN HUNDRED FIFTY Dollars ($112,750.00), or greater amount should Lender, at its sole discretion, choose to make additional premium payments on the Policy, or other amount as the Lender may disburse, together with interest accrued thereon (at Lender's address or at such other place as Lender may designate to Borrower in writing), on the "Maturity Date" as provided in Section 3 hereof. Additional Premium Payments are currently estimated at approximately $25,417 (twenty five thousand four hundred seventeen dollars) per calendar quarter after the first 24 (twenty-four) months. This promissory note and any promissory note issued in substitution for this promissory note in accordance with the provisions hereof are referred to herein and elsewhere in the Financing Documents as the "Note." The unpaid principal amount outstanding under this Note from time to time shall accrue and bear interest at the simple rate of fifteen percent (15.0%) per annum. All payments made under this Note shall be made in lawful tender of the United States and shall be credited first to accrued and unpaid interest and the remainder to outstanding principal. Interest owed under this Note shall be calculated on the basis of actual days elapsed over a 360-day year. The principal and interest hereunder shall be paid in one installment, to be paid on the Maturity Date or as provided in Section 3 hereof. This Note has been executed and delivered pursuant to, and is the Note referenced in, the Life Insurance Premium Financing Agreement dated as of the date hereof between the Lender and the Borrower (the "Financing Agreement").

1.  Defined Terms. Unless defined in this Note, all capitalized terms used, but not defined, in this Note have the meanings ascribed to such terms in the Financing Agreement.

2.  Use of Proceeds of Note. The Borrower shall use the proceeds of this Note solely for purposes of paying the Financed Premiums to the Insurer and the Closing Fees to the parties designated in the Financing Agreement.

3.  Maturity Date. The Maturity Date is 820 days (approximately 27 months) from the date Lender disburses funds pursuant to the Financing Documents. It is estimated that the Maturity Date is July 15, 2010, although the exact date shall be dictated by the date of disbursement. The entire principal amount of this Note and all accrued but unpaid interest owed hereunder shall be due and payable by the Borrower on the earlier of (a) the Death Date, or (b) the Maturity Date.

4.  Prepayment.

(a)  At any time prior to the Maturity Date, on sixty (60) calendar days prior written notice to the Lender, the Borrower may prepay the Financing Balance in full, but not in part.

(b)  If an Event of Default occurs before the Maturity Date, the Borrower shall immediately pay the Financing Balance pursuant to Section 6 hereof.

-1-                                      1604856 v01

GORDILLO 0032

Case 1:16-cv-01533-GBD-GWG   Document 125-14   Filed 08/23/18   Page 43 of 77
Case3:14-cv-03713-WHO   Document40   Filed07/30/15   Page42 of 160

Document #2 of 19

5.     Collateral. This Note is secured by (a) the "Pledged Collateral" as defined in the Security Agreement and (b) the collateral assignment of the Policy given by Borrower to Lender pursuant to the Assignment of Life Insurance Policy as Collateral dated the date hereof.

6.     Events of Default. Upon the occurrence of an Event of Default before the Maturity Date, the Financing Balance (as defined in the Financing Agreement) shall be immediately due and payable, all without notice, presentment, protest, demand, notice of dishonour or any other demand or notice whatsoever, all of which are hereby expressly waived by Borrower.

7.     Miscellaneous.

       (a)  Waiver of Presentment. The Borrower hereby

            (i) waives demand, presentment of payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit, and diligence in collecting this Note;

            (ii) agrees to any substitution, addition, or release of any party or person primarily or secondarily liable hereon;

            (iii) agrees that the Lender shall not be required first to institute any suit, or to exhaust his remedies against the undersigned or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Note; and

            (iv) consents to any extension, rearrangement, renewal, or postponement of time of payment of this Note and to any other indulgence with respect hereto without notice, consent, or consideration to the undersigned. No failure to accelerate the debt evidenced hereby by reason of an Event of Default hereunder, and no indulgence that may be granted from time to time, shall be construed either as a novation of this Note, or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of the Lender thereafter to insist upon strict compliance with the terms of this Note, or to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of California. No extension of the time for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Borrower under this Note, either in whole or in part, unless the Lender agrees otherwise in writing.

       (b)  Limitation on Interest. Regardless of any provisions contained herein, the Lender shall never be deemed to have contracted for or be entitled to receive, collect or apply as interest on the Note, any amount in excess of the highest lawful rate, and, in the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Borrower. In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Borrower and Lender shall, to the maximum extent permitted under applicable law, (i) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense, fee, or premium, rather than as interest, (ii) exclude voluntary prepayments and the effect thereof, and (iii) spread

-2-                                                    1604856 v01

GORDILLO 0033

Document #2 of 19

the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout such term.

(c)   Amendment.  Any provision of this Note may be amended, waived or modified upon the written consent of Borrower and Lender.

(d)   No Waiver; Remedies Cumulative.  None of the rights or remedies of the Lender are to be deemed waived or affected by failure to delay to exercise the same.  All remedies conferred upon the Lender by this Note or any other instrument or agreement, including without limitation the Financing Agreement, shall be cumulative, no such remedy is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

(e)   Time of the Essence.  Time is of the essence with respect to the obligations of the Borrower under this Note.

(f)   Assignment.  This Note may be assigned by Lender at any time given written notice of such assignment to Borrower. Borrower may not assign this Note.

(g)   Notices.  Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered or if telegraphed or mailed by registered or certified mail, postage prepaid, at the respective addresses of the parties as set forth herein. Any party hereto may by notice so given change its address for future notice hereunder. Notice shall conclusively be deemed to have been given when personally delivered or when deposited in the mail or telegraphed in the manner set forth above and shall be deemed to have been received when delivered. Notice shall be made in writing as follows:

If to Borrower:                          The Erwin A. Collins Family Insurance Trust-2008
                                         c/o Maria A. Gordillo, as Trustee
                                         346 Crestview Circle
                                         Roswell, GA 30075
                                         Telephone:  770-375-9266
                                         Facsimile:  n/a

If to Lender:                            Windsor Securities LLC
                                         25 East Athens Avenue
                                         Ardmore, PA 19003
                                         Attention: Steven Prusky
                                         Telephone:  610-642-3100
                                         Facsimile:  610-642-9709

(h)   Governing Law and Consent to Jurisdiction.  This Agreement shall be governed by and construed under the laws of the State of California (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said laws. All parties hereto agree that any claim arising out of or relating to this Agreement shall be (i) brought in the Superior Court of Sonoma County, California, or (ii) brought in or removed to the United States District Court for the Northern District of California. Each of the parties consents to the personal jurisdiction of the courts

-3-                                          1691856 v01

GORDILLO 0034

Document #2 of 19

identified above and waives (i) any objection to jurisdiction or venue, or (ii) any defense claiming lack of jurisdiction or improper venue, in any action brought in such courts.

(i)     Binding Effect. This Note shall be binding upon and inure to the benefit of the Borrower's and Lender's respective heirs administrators, successors and permitted assigns.

(j)     Severability. The provisions of this promissory note shall be severable. If any provision hereof is held to be invalid, void or otherwise unenforceable, the remaining provisions shall remain in full force and effect to the fullest extent permitted by law.

IN WITNESS WHEREOF, the Borrower has executed and delivered this Note as of the date set forth above.

**BORROWER:**

The Erwin A. Collins Family Insurance Trust-2008

By: Maria ana Gordillo

Name: Maria A. Gordillo, Trustee

Date: April 15, 2008

Place of execution: Atlanta, GA

Tax Identification number 26-6230172

-4-

1604856 v01

**GORDILLO 0035**

JUDD 070435

Document #3 of 19

## TRUSTEE'S CERTIFICATE

THE UNDERSIGNED, on behalf of **The Erwin A. Collins Family Insurance Trust-2008**, a Georgia situed irrevocable trust (the "**Trust**"), certifies that in connection with the Life Insurance Premium Financing Agreement dated as of __April__  __15__,  2008  (the "**Financing Agreement**"), by and between the Trust and Windsor Securities LLC, a Nevada LLC, (the "**Lender**"), and the transactions contemplated thereby (the "**Transaction**"), that he is the duly appointed and duly qualified Trustee of the Trust and that:

1.      Attached as Exhibit A is a true and correct copy of the Irrevocable Trust Agreement as in effect on the date hereof. There exist no amendments or modifications to the Irrevocable trust Agreement, except as attached hereto.

2.      The Insured has formed the Trust as its sole settlor by executing the attached Trust Agreement that permits the Trustee to enter into the Financing Agreement and apply for, purchase, own and pledge the Policy. The beneficiary of the Policy, and the party to whom the death benefit would be payable on the date hereof, is the Trust. The sole beneficiary of the Trust is or will be the Beneficiary. The Trust (1) is intended to be a non-business trust, ineligible for relief under the United States Bankruptcy Code, and (2) is irrevocable and may not be revoked by the Insured, the Insured's spouse, the Beneficiary or any creditors of the foregoing. The beneficiary of the Trust will be the Insured's spouse, the Insured's natural children, any other person having an insurable interest in the life of the Insured or an entity or trust, the owner or beneficiaries of which are either the Insured's spouse, the Insured's natural children or any other person having an insurable interest in the life of the Insured. The assets of the Trust (A) including the Policy and the proceeds thereof, are separate and apart from the assets of the Insured, the Insured's spouse and the Beneficiary, and (B) are not subject to the claims of any creditor of the Insured, the Insured's Spouse or the Beneficiary. The initial contribution of the Insured to the Trust constitutes the Insured's separate property and does not constitute the community property or quasi-community property of the Insured and the Insured's spouse.

3.      The Beneficiary is the sole and duly designated beneficiary of the Borrower and possesses and owns all its beneficiary rights free and clear of any liens, options, purchase rights or commitments of any kind except as expressly contemplated by the Loan Documents. Under the terms of the Trust, the Beneficiary in its capacity as beneficiary of the Borrower has the absolute right to (A) assign, transfer, sell or surrender the Beneficiary's interest in the Trust (the "**Beneficiary's Trust Interest**") to the Lender, and (B) pledge or assign the Beneficiary's Trust Interest as collateral for the "**Obligations**" (as defined in the Security Agreement for Beneficiary Interest in Trust, dated as of 4/15, 2008, between the Lender and the Beneficiary).

IN WITNESS WHEREOF, the undersigned has duly executed this certificate on the 15 day of April, 2008.

The Erwin A. Collins Family Insurance Trust-2008

By: *Maria Ana Gordillo*              , Trustee
Name: **Maria A. Gordillo**
Date: April 15, 2008

Place of execution: Atlanta, GA

- 1 -

1601868 v01

**GORDILLO 0036**

JUDD 070436

Document #3 of 19

## EXHIBIT A

IRREVOCABLE TRUST AGREEMENT
<to be attached by Trustee>

- 2 -

1601868 v01

GORDILLO 0037

JUDD 070437

## THE ERWIN A. COLLINS FAMILY INSURANCE TRUST - 2008

### IRREVOCABLE TRUST AGGREEMENT

THIS TRUST AGREEMENT, dated this 1st day of February, 2008 is made between Erwin A. Collins of 331 Suburban Road Knoxville, TN 37923 as Settlor ("Settlor") and Maria A. Gordillo of 346 Crestview Circle Roswell, GA 30075 as Trustee ("Trustee").

I intend by this Trust Agreement to create an irrevocable trust of the sum of Ten Dollars ($10.00), and Trustee is willing to administer the same in accordance with the terms of this Trust Agreement. I therefore assign, transfer and deliver such property to Trustee, and Trustee hereby acknowledges the receipt of such property, IN TRUST, and agree to hold, manage, invest and reinvest the same (and all property later assigned, transferred and delivered to the Trustee by me or at my direction), and to collect the income therefrom and to distribute the net income and principle thereof in accordance with the terms of this Trust Agreement.

### I. STATEMENT OF IRREVOCABILITY AND BENEFICIARIES

A. Irrevocable Trust. Settlor acknowledges and states that the promises and covenants set forth in this agreement are not revocable. Settlor has relinquished all power to alter, amend or revoke this Trust Agreement in whole or in part.

B. Named Beneficiary. The Named Beneficiary of this Trust is Ann H. Collins. For the convenience of reference, the Named Beneficiary herein may also be referred to as "Named Beneficiaries" and it shall be sufficient that they be referred to as such in any instrument of transfer, deed, assignment, bequest or devise pertaining to this Trust Agreement.

### II. NAME AND SITUS OF TRUST

A. Name. This Trust shall, for the convenience of reference, be known as "The Erwin A. Collins Family Insurance Trust - 2008" and it shall be sufficient that it be referred to as such in any instrument of transfer, deed, assignment, bequest or devise.

B. Situs; Choice of Law and Venue. Unless and until changed by an affirmative specific election and act of the Trustee, the situs of this Trust is the State of Georgia. No Named Beneficiary shall compel a change if situs except as in accordance with the Changing of Situs provision herein. The laws and courts of Georgia shall have exclusive jurisdiction over the subject matter of this Trust Agreement and disputes arising hereunder, unless otherwise agreed in a separate writing executed by the Trustee and each Named Beneficiary that specifies that the laws of some other jurisdiction will apply to specific subject matter hereunder or that the courts of another jurisdiction will have non-exclusive jurisdiction over such subject matter and disputes arising in connection therewith under this Trust Agreement.

GORDILLO 0038

C. Changing of Situs. The Trustee may change the legal situs by a written
instrument signed and acknowledged before a witness and a public notary to
which state the situs is being changed. The Trustee shall do so if the Named
Beneficiaries hereof unanimously instruct the Trustee to do so in writing, in
which event the Trustee shall change the situs of the Trust to the jurisdiction
specified by the Named Beneficiaries in such writing; provided that the Trustee
shall not be obligated to do so if the Trustee is not qualified or legally capable of
acting as trustee with respect to this Trust in the indicated jurisdiction.

## III. DURING MY LIFETIME

A. Payment of Income. Until my death, Trustee shall pay any net income from the
trust to my Named Beneficiaries as, and only as, specified in this Trust
Agreement.

B. Payment of Principal. Subject to the express limitations set forth herein with
respect to distributions in kind or in respect of specific assets of property
comprising the trust estate, until my death, Trustee is authorized to pay to my
Named Beneficiaries such sums from the Principal of the trust as seem advisable
in Trustee's discretion for their health, education, or support in reasonable
comfort. In exercising such discretion, Trustee may, but shall not be obliged to,
take into consideration the income of other resources of the Named Beneficiaries.
Trustee shall be the sole judge of whether the occasion exists for the payment of
principal, the amount, if any, to be paid and its use.

IV. AFTER MY DEATH. Upon my death, Trustee shall distribute the balance of the trust
evenly to Ann H. Collins. The successors in interest to the Named Beneficiary, should
they predeceases Settlor are his/her descendants, per stirpes, subject to any more
specific provisions or the proper exercise of a power of appointment stated in the
Trust Agreement.

V. DISTRIBUTION TO PERSONAL REPRESENTATIVE. Notwithstanding the
foregoing provisions of this Trust Agreement for distribution of the trust after my
death, if it shall be determined that any portion of the trust is included in my gross
estate for federal estate tax purposes, Trustee shall distribute such portion to the
personal representative of my estate.

## VI. PROVISIONS CONCERNING LIFE INSURANCE.

A. Authorization to Purchase. I authorize Trustee to purchase or to receive by
transfer from me one or more life insurance policies on my life or on the life of a

GORDILLO 0039

JUDD 070439

person in which I and each Named Beneficiary have an insurable interest and to hold the same as an investment of the trust (herein sometimes collectively referred to, along with any policies that may be issued in exchange therefore, and any policies assigned to Trustee, as the "Policy").

B. Rights and Powers of Trustee. Without limiting the generality of the foregoing, all right, title and interest in to and under such Policy shall vest solely in Trustee each and all of the following rights and powers if applicable with respect to the Policy:

1. To exercise all options, rights and elections (including, without limitation, the right to elect methods of settlement and to exercise any conversion privilege) exercisable under the Policy or allowed by the company or companies issuing said policies;

2. To designate beneficiaries under the Policy provided that myself, my estate, my creditors or my estate's creditors shall not be designated as such beneficiary and subject to any more specific provisions herein;

3. To demand and collect from the company or companies issuing said policies all such proceeds of the Policy as shall become a claim. Upon the death of an insured or earlier maturity of any insurance policy or policies composing part of the trust estate, the Trustee shall collect the proceeds and the benefits thereof. The Trustee shall furnish the necessary proofs of death to the insurance companies. The Trustee is authorized to take any and all other steps reasonably necessary for the collection of such proceeds and benefits, including the institution of proceedings at law or in equity in order to enforce the payment thereof;

4. Subject to the other provisions of this Trust Agreement, to cancel any interest in the Policy and to surrender the converted Policy;

5. To pay any premium due in respect of such Policy from income or principal of the trust estate, to apply any dividends or cash surrender value of such Policy to fund premiums due in respect of such Policy, or to borrow funds to apply premiums due in respect of such Policy and to pledge such policies to secure such borrowings; and

6. To receive any increases in the amount of insurance under the Policy.

7. The insurance companies which have issued such policies are hereby authorized and directed to recognize the Trustee as absolute owner of such policies of insurance and that all options, rights, privileges and interests under such policies, and any receipts, releases and other instruments executed by the Trustee in connection with such policies shall be binding and conclusive upon the insurance companies and upon all persons interested in this trust.

C. Limitations on Powers. Trustee shall not incur any indebtedness on behalf of or secured by any assets or property of the Trust or comprising the trust estate,

GORDILLO 0040

whether secured by assets of the Trust or otherwise, except as expressly contemplated by this Trust Agreement. Trustee shall not purport to create or permit to exist any interest in any asset of the Trust (including the Policy) in favor of any person other than (i) in favor of a Named Beneficiary to the extent expressly set forth in this Trust Agreement or (ii) a lien or collateral security interest therein in favor of a lender in connection with the incurrence of debt expressly permitted herein. Trustee shall not purport to amend or modify the Policy in any way, including by making any transfer thereof, change of ownership or change of beneficiary thereunder with out the prior written consent of every Named Beneficiary.

D. Limitations on Duties. The Trustee shall be under no obligation (i) to pay the premiums which may become due and payable under the provisions of any policies of insurance added to the trust estate from Trustee's own funds or assets, (ii) to make certain that such premiums are paid by the Settlor or others, or (iii) to notify any persons of the nonpayment of such premiums, except that if the Trustee receives notice from the issuer of any such life insurance policy that any premium has not been paid, Trustee will forward a copy of such notice to each Named Beneficiary and to the Settlor. The Trustee shall not be held responsible or liable in the event such premiums are not paid, except that Trustee will apply any funds delivered to it by Settlor or any other person for the purpose of funding such premiums to fund such premiums.

## VII.  TRUSTEE'S COMPENSATION.

A. Reasonable Compensation. Trustee shall be entitled to receive reasonable compensation for its services hereunder (which may be taken without judicial authorization at the time or times permitted under the laws of the State of Georgia.

B. Reimbursement of Expenses. Trustee shall be entitled to be reimbursed for all expenses reasonably incurred by it in the administration of the trust, including legal fees, the fees of investment advisors and other similar expenses.

## VIII. TRUSTEE SUCCESSION.

A. Trustee's Inability to Act. Trustee hereby represents that it is qualified under the laws of the State of Georgia to act as Trustee with respect to the Trust. I acknowledge that it may become impractical, because of mental or physical incapacity or otherwise, for an individual to serve as trustee throughout the trust term. For purposes of this Trust Agreement, an individual shall be considered to be unable to serve as trustee if such individual is not able to promptly and

GORDILLO 0041

JUDD  070441

intelligently manage his or her affairs or the affairs of the Trust due to a legal, physical or mental instability. The determination as to whether an individual has any such physical or mental disability shall be made in writing by two duly licensed physicians, and the determination as to whether such individual is legally unable to serve as trustee hereunder shall be made by legal counsel to such individual. Upon any determination that an individual currently serving as Trustee hereunder is unable to serve as trustee, Trustee shall cease to serve as such.

B. Resignation of Trustee. Trustee shall have the right to resign at any time by delivering or mailing written notice of such resignation to the Settlor and Named Beneficiaries hereunder. Such resignation shall take effect upon the date specified in such notice, but not less than thirty (30) days after such mailing or delivery.

C. Appointment of Successor Trustee. If the Trustee resigns or otherwise ceases to act as Trustee, the Named Beneficiaries will have the right to appoint as successor Trustee any person that is qualified to act as trustee hereunder under the laws of the State of Georgia and is physically and mentally capable of acting as trustee hereunder. Such appointment will become effective upon the later of acceptance by such successor of such appointment and the date specified as the effective date of such appointment in written notice of such appointment delivered by the Named Beneficiaries to the Trustee being replaced.

## IV. GENERAL PROVISIONS AND FIDUCIARY POWERS.

A. Transfer Documents. I hereby agree to execute and deliver at any time upon request of Trustee, such other and further instruments of transfer and conveyance as are or may be deemed necessary with respect to any part of the trust assets or the assignment or transfer thereof to Trustee.

B. Fiduciary Bonds. No Trustee, Successor Trustee or Donee of a Power to manage property during minority or incompetency, or other such fiduciary however styled, shall be required to post a bond or other security in such capacity in any jurisdiction unless posting a bond or security is then required by law.

C. References to Fiduciaries. For convenience I refer to my fiduciaries herein in the singular neuter gender. This reference shall, throughout, include the masculine and feminine and plural where ever necessary to appropriate.

D. Power to Apply Income or Principal. Whenever Trustee is directed or authorized hereunder to pay income or principal to any Named Beneficiary, Trustee may so apply such income or principal for the benefit of such beneficiary.

E. Trustee's Discretion. The decision of Trustee with respect to the exercise or nonexercise by it of any discretionary power hereunder, or the time or manner of

GORDILLO 0042

the exercise thereof, made in good faith, shall be conclusive and binding upon all persons interested in the trust.

F. <u>Release.</u> Absent bad faith, I hereby release the Trustee from any claim or cause of action I may now or herein after have arising from or pertaining to their respective discretionary decisions and actions (or lack of actions) in the discharge of their duties and the exercise of their powers hereunder that are taken in good faith and without fraud, willful misconduct or gross negligence.

G. <u>Discretionary Trust Termination.</u> Whenever, in the sole discretion of Trustee, a trust hereunder is too small to administer economically, or the purposes for which the trust was established can no longer be effectively carried out because of a change in the law affecting the trust and its Named Beneficiaries or any other changes in circumstances which make continuation of the trust unwarranted, Trustee may terminate such trust. In such event Trustee shall distribute the then remaining assets of the trust to the Named Beneficiaries in accordance with the provisions hereof outright and without any obligation to account to anyone other than the Named Beneficiaries.

H. <u>Accounts.</u> Trustee may from time to time (or, upon the reasonable request of a Named Beneficiary, at any time), render an account of the acts and transactions of Trustee with respect to the income and principal of the trust from the date of the creation of the trust or from the date of the last previous account of Trustee, as the case may be, to the Named Beneficiaries as shall be of full age and competent at the time when such account is rendered. Such Named Beneficiaries shall have full power and authority on behalf of all persons interested in the trust to settle and adjust such account. Upon such account being settled and adjusted to the satisfactions of such Named Beneficiaries, it shall be final and conclusive upon each and every person (whether then living or then ascertainable or not) who will then or therafter be or become interested in either the income or the principal of the trust fund, with like effect as a judgement of a court having jurisdiction, judically settling such account in an action in which Trustee and all persons having or claiming any interest in the trust fund were parties. The approval of such account by such Named Beneficiaries shall constitute a full and complete discharge and release of Trustee from all further liability, responsibility and accountability for or with respect to the acts and transactions of Trustee as set forth in said account, both as to the income and as to the principal of the trust. If at any time the trust shall be divided into shares, the provisions of this paragraph shall apply to each share with the like effect as if such share constituted the entire trust. The foregoing provision, however, shall not preclude Trustee from having its account judicially settled if it so desires.

I. <u>Payment of Minor's Interest.</u> Whenever pursuant to any provision of this Trust Agreement, Trustee is required or permitted to pay to or apply for the benefit of a

GORDILLO 0043

JUDD 070443

minor any gift or any income or principal of the trust, Trustee may make such payment or application by paying the same directly to such minor, or to a bank for deposit to such minor's account, or to the parent or guardian of such minor or to a custodian for such minor under a Uniform Gifts to Minors Act or a Uniform Transfers to Minors Act to the extent permitted by law, and the receipt of such bank, parent, guardian or custodian shall be a full and complete discharge and acquittance to Trustee to the extent of any such payment. I authorize Trustee to designate that any payment or application to a custodian hereunder shall be held by such custodian until the minor attains the age of twenty-one years.

J.  Power to Manage Property Vested in a Minor or Incompetent During Minority or Incompetency.  Not withstanding any contrary provisions of this Trust Agreement, if any portion of the trust shall at any time be or become payable or distributable to a minor or an incompetent, such interest shall vest in absolute ownership in such minor or incompetent, and Trustee is authorized in its discretion, and without authorization by any court, to defer payment or distribution of the whole or any part of such interest during such minority or incompetency and, in the meantime, to hold, manage, invest and reinvest the same, to collect the income therefrom and to pay to, or apply for the benefit of, such minor or incompetent so much of the net income and principal thereof as such Trustee, in its discretion, deems advisable for the health, education or support of such minor or incompetent, accumulating any income not so paid or applied. The principal thereof any accumulated income shall be paid or distributed to such minor when such minor reaches his or her majority, or earlier pursuant to the provisions of the preceding paragraph, or to such incompetent or his or her committee, conservator or other legal representative at any time. The Trustee holding property under this power is authorized to permit the minor or incompetent, or his or her legal guardian, committee, conservator or other legal representative at any time to have the use of possession of any real or tangible personal property so held. Trustee shall be entitled to receive compensation with respect to any property held under this power at the same rate and payable in the same manner as provided earlier in this Trust Agreement. For purposes of this paragraph a minor shall be deemed to be a person who has not attained the age of twenty-one years.

K.  Pension Plans and Insurance Proceeds Payable to Trusts.  With regard to all policies of life insurance and all pension, stock bonus, profit sharing, individual retirement and like plans which designate the Trust hereunder as beneficiary, Trustee is specifically authorized and empowered:

1.  to execute and deliver receipts and other instruments and to take such actions as may be appropriate to obtain possession and control of such policies or of documents necessary to collect proceeds of such plans;

GORDILLO 0044

2. to execute and file proofs of claim required to collect the proceeds thereof (the receipt of Trustee shall constitute full acquittance to insurance companies, employers, trustees or other payors for proceeds so paid), provided however, that Trustee shall be under no obligation to institute legal proceedings for the collection of any such proceeds until and unless it has been indemnified to its satisfaction for all costs and expenses, including attorney's fees;

3. to elect, in its discretion, but consistent with the provisions hereof or any other agreement entered into by the Trustee hereunder pledging or collaterally assigning such policy, any optional modes of settlement available to it under such policies or plans;

4. to receive such proceeds and to administer and distribute them in accordance with the dispositive provisions of this Trust Agreement;

5. to use such proceeds in the purchase from my estate of such assets as Trustee deems advisable without being limited to assets authorized by law for the investment of trust funds;

6. to the extent that proceeds of such policies or plans represent ordinary income taxable to the recipient, other than for a trust qualifying for the marital deduction Trustee may, in its discretion, allocate such taxable proceeds in any manner between principal and income, paying out any part or all of it as current income of the trust, or accumulating and adding it to the principal of the trust; and Trustee's determination in this regard, and its exercise of any election available to them affecting the manner of taxation of such proceeds, shall be final and shall not be subject to judicial review, and any person adversely affected by such determination or election shall not be entitled to any reimbursement or adjustment by reason thereof.

L. **Dividends Paid in Stock**. Dividends and other distributions by a corporation or association, whether ordinary or extraordinary, received by Trustee in the stock of the corporation or association making the distribution shall be principal.

M. **Exercise of powers by multiple trustees**. Whenever more than one trustee is serving as fiduciary, the co-trustees may designate one trustee to exercise the administrative and/or ministerial powers granted by law or under this instrument. As evidence of such designation, persons dealing with the trust may rely on a notarized, written statement signed by all trustees then in office which specifies powers that may be exercised by one of the multiple trustees, acting alone.

N. **Captions**. The use of captions or headings in articles and paragraphs of this Trust Agreement is for convenience only. They are not intended to embody any substantive content and shall be wholly disregarded in the construing of this Trust Agreement.

O. **General Powers**. I grant to Trustee the following powers in addition to those elsewhere herein granted or conferred by law, and to the exclusion of contrary

GORDILLO 0045
JUDD 070445

provisions of law where I have power to vary such provisions, with respect to all property, real and personal, at any time forming part of any trust hereunder, including accumulated income and property held under a power to manage property vested in a minor or incompetent during minority or incompetency, until the final distribution therof.

P. Retention and Diversification. To retain any such property, including shares of stock of a Trustee hereunder or shares of stock of a corporation having voting control of such Trustee, as an investment without regard to the proportion which it and other property of a similar character held hereunder may bear to the trust in which such property is held and whether or not such property is of the class in which trustees are authorized by law or rule of court to invest trust funds.

Q. Sale or Other Disposition. To sell, exchange or otherwise dispose of any such property at public or private sale, without authorization by any court, wholly or partly on credit or for cash or for any other consideration including stocks, bonds, other obligations, real estate or other property and to grant options for the purchase, exchange or other disposition thereof.

R. Investments. To invest and reinvest in property of any character, real or personal, located in or outside the state of my domicile, including, but not limited to, bonds, notes, debentures, mortgates, leases, common and proferred stocks, general or limited partnership interests, legal and discretionary common trust funds and mutual funds, without being limited to investments authorized by law or rule of court for trust funds, and without regard to the proportion which all such property and other property of a similar character held hereunder may bear to the trust in which such property is held, or other property in which I hold interest.

S. Options, Proxies. To exercise or sell any options and any conversion, subscription, voting and other rights pertaining to any such property and to grant proxies, discretionary or otherwise, in respect thereof.

T. Corporate Matters Affecting Investments. To consent to and participate in any plan of reorganization, consolidation, merger, combination, recapitalization, reclassification, liquidation or other plan and to consent to any contract, lease, mortgage, purchase, sale or other action by any corporation.

U. Creditors' Rights Affecting Investments. To deposit any such property with any protective, reorganization or similar committee, to delegate discretionary power thereto, to pay part of such committee's expenses and compensation and any assessments levied with respect to such property.

V. Adjustment of Claims. To extend the time of payment of any obligation held hereunder and to compromise, settle, arbitrate or abandon any claim in favor of or against any trust hereunder.

GORDILLO 0046

W. <u>Title to Assets</u>. To hold property unregistered or in such other form that title shall pass by delivery, and to cause any Policy or securities or other property held hereunder to be registered in the name of a nominee or in its own name.

X. <u>Distribution In Kind</u>. To make any division or distribution required hereunder (including the satisfaction of any pecuniary gift) in cash or in other property, real or personal, or undivided interests therein, or partly in cash and partly in such other property, in accordance with this Trust Agreement as to any particular asset, and to do so without regard to the income tax basis of specific property allocated to any beneficiary (including any trust).

Y. <u>Worthless Assets</u>. To abandon property which it determines not to be worth protecting or collecting.

Z. <u>Trust Additions</u>. To receive additional property acceptable to Trustee from any source and add it to and mingle it with the trust or trusts created hereunder; provided that no such property shall be so added or mingled if subject to any interest, lien, pledge, mortgage or other claim by any person.

AA.     <u>Plenary Powers</u>. To do all such acts, take all such proceedings and exercise all such rights and privileges, although not specifically mentioned, with relation to any such property, as though the absolute owner thereof, and in connection therewith to make, execute and deliver any instruments and to enter into any covenants or agreements binding any trust hereunder.

The remainder of this page is intentionally left blank.

GORDILLO 0047

**ACCEPTANCE.** Trustee accepts the trust and agrees to perform its duties hereunder.

IN WITNESS WHEREOF, we have signed this Trust Agreement.

Acknowledged and Agreed to this 37 day of September, 2007.

By: _____

Erwin A. Collins, as Settlor

STATE OF TENNESSEE

COUNTY OF Knox

Subscribed and sworn to (or affirmed) before me on this 27th day of September, 2007, by Erwin A. Collins, personally know to me (or proved to me on the basis of satisfactory evidence) to be the person who appeared before me.

WITNESS my hand and official seal.

Signature _____
1-26-2011

(Seal)

GORDILLO 0048

JUDD 070448

*Maria A. Gordillo*

Maria A. Gordillo
Trustee


STATE OF Dekalb, GA    )
                                                    ) ss.
COUNTY OF _____    )

On this ___1st__ day of __Febuary_____, 2008, before me, a Notary Public within and for said County, personally appeared Maria A. Gordillo, to me known to be the person described in and who executed the foregoing instrument as trustee, and acknowledged that she executed the same as her free act and deed.

*Jamie L. Remington*

Notary Public

My Commission Expires 4/30/2011

Document #3 of 19

## EXHIBIT B

INTERNAL REVENUE SERVICE LETTER CERTIFYING EIN OF TRUST

<to be provided by trustee>

- 3 -

1691868 v01

GORDILLO 0050

JUDD 070450

X

**IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI   OH   45999-0023**

Date of this notice:  02-14-2008

Employer Identification Number:
26-6230172

002139.417786.0008.001 1 MB 0.360 532
lablllullulludkldudllulalulldudludahdluddud

Form:  SS-4

Number of this notice:  CP 575 B

ERWIN A COLLINS FAMILY INS TR -
2008
MARIA A GORDILLO TTEE
346 CRESTVIEW CIR
ROSWELL   GA   30075

For assistance you may call us at:
1-800-829-4933

002139

IF YOU WRITE, ATTACH THE
STUB OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned
you EIN 26-6230172.  This EIN will identify your business account, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, please use the label we provided.  If this isn't
possible, it is very important that you use your EIN and complete name and address
exactly as shown above on all federal tax forms, payments and related correspondence.
Any variation may cause a delay in processing, result in incorrect information in your
account or even cause you to be assigned more than one EIN.  If the information
isn't correct as shown above, please correct it using tear off stub from this notice
and return it to us so we can correct your account.

Based on the information from you or your representative, you must file the
following form(s) by the date(s) shown.

Form 1041                            04/15/2009

If you have questions about the form(s) or the due dates(s) shown, you can call
or write to us at the phone number or address at the top of the first page of this
letter.  If you need help in determining what your tax year is, see Publication 536,
Accounting Periods and Methods, available at your local IRS office or you can download
this Publication from our Web site at www.irs.gov.

We assigned you a tax classification based on information obained from you or
your representative.  It is not a legal determination of your tax classification,
and is not binding on the IRS.  If you want a legal determination on your tax
classification, you may request a private letter ruling from the IRS under the
guidelines in Revenue Procedure 2004-1,2004-1 I.R.B. 1 (or superseding Revenue
Procedure for the year at issue.)

**GORDILLO 0051**

JUDD 070451

(IRS USE ONLY)     575D          02-14-2008  ERWI  B  0509905261  SS-4

IMPORTANT REMINDERS:

   * Keep a copy of this notice in your permanent records.

   * Use this EIN and your name exactly as they appear above on all your federal
     tax forms.

   * Refer to this EIN on your tax related correspondence and documents.

   If you have questions, you can call or write to us at the phone number or address
at the top of the first page of this notice.  If you write, please tear off the stub
at the end of this notice and send it along with your letter.  Thank you for your
cooperation.

GORDILLO 0052

JUDD 070452

Document #4 of 19

### INSURED'S CONSENT

Reference is made to the Life Insurance Premium Financing Agreement dated as of $\underline{\text{April}}$   $\underline{15}$, 2008 (the "*Agreement*"), including its Terms and Conditions, among Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003, as Lender (the "*Lender*"), Erwin A. Collins, as Insured (the "*Insured*") and The Erwin A. Collins Family Insurance Trust-2008, as Borrower (the "*Borrower*"). All terms defined in the Agreement shall have their defined meanings when used herein.

The undersigned is the Insured under the Policy attached to the Agreement as Exhibit 1. The Insured Life understands and is aware that the Policy is owned by the Borrower and that the Borrower is financing its payment of the Policy premiums by entering into the Agreement with the Lender. The Insured wishes to assist the Borrower in financing the payment of the Policy premiums and consummating the transactions contemplated by the Agreement. To that end the Insured hereby agrees, represents and warrants to the Lender as follows:

1.    The Insured consents to the issuance of the Policy to the Borrower based on his/her life.

2.    The Insured has a net worth in excess of US $1,500,000.

3.    The Insured has consulted with and received advice from attorneys, accountants and/or financial advisors of the Insured's, choosing to the extent the Insured has deemed such advice necessary or desirable in order to satisfy himself/herself that assisting the Borrower in financing the Policy premiums and consummating the transactions contemplated by the Agreement is in the Insured's best interest. The Insured has determined that the Borrower's entering into the Agreement and consummating the transactions contemplated thereby is in the Insured's best interest, and the Insured acknowledges that he/she has had the Agreement and all Exhibits or other documents in connection with or relating to the Agreement (the "*Related Documents*") for an amount of time sufficient thoroughly to analyze, discuss and make informed decisions with respect to the Agreement and the Related Documents and to receive advice from any professionals or anyone of the Insured's choosing.

4.    The Insured expressly acknowledges, understands, consents and agrees to waive, and hereby waives, any and all rights, claims, interests, powers and privileges that the Insured now possesses, or in the future will possess, under or with respect to the Policy.

5.    The Insured is of sound mind and not subject to any constraint or undue influence or duress.

6.    This "Insured's Consent" has been executed and delivered by the Insured and is in full force and effect.

7.    The Insured has consented to the release and disclosure of all medical and health information about the Insured that has been or will be provided to the

- 1 -

1601845 v01

**GORDILLO 0053**

JUDD 070453

Document #4 of 19

Lender in connection with the Agreement, and the Authorization for Disclosure of Protected Health Information, is in full force and effect, and shall remain in full force and effect for the longest term permitted under any applicable statute or regulation.

        8.     The Insured has executed and delivered an Irrevocable and Durable Limited Power of Attorney ("Power of Attorney") naming the Lender as the Insured's attorney-in-fact and personal representative. The Power of Attorney empowers the Lender to obtain any medical and health information about the Insured that the Lender may need to effect the intent and purpose of the Agreement and Related Documents at any time now or in the future without obtaining further specific authorization or consent from the Insured or the Insured's other personal representatives.

        9.     The Insured will, at any time and from time to time, subsequent to the execution of the Agreement and Related Documents, at no net cost or net expense to the Insured, take all further actions and/or execute and deliver all further assurances, authorizations, documents and/or instruments as may be requested by the Lender in order for the Lender or its designee or assigns to effectuate the intent and purpose of the Agreement and Related Documents, including to authorize the provision and/or delivery of information and documentation to the Lender or its designees or assigns from any physician, hospital, medical or healthcare provider, insurance company or other person or entity with regard to the Insured, the Policy and/or any other matter related thereto as may be reasonably requested by the Lender or its assigns.

Name of Insured: Erwin A. Collins

STATE OF Florida )

COUNTY OF St. Lucie )

On 14 April , 2008, before me, the undersigned, personally appeared Erwin A. Collins, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same, and that by his/her signature on the instrument the person executed the instrument.

WITNESS my hand and official seal.

Notary Public

LISA M. CAUDULLO
Notary Public - State of Florida
My Commission Expires Sep 25, 2011
Commission # DD 719273
Bonded Through National Notary Assn.

My Commission Expires: Apt 85 2011

- 2 -

1604845 v01

GORDILLO 0054

JUDD 070454

Document #5 of 19

## AUTHORIZATION FOR DISCLOSURE OF PROTECTED HEALTH INFORMATION

I, the undersigned individual, authorize the disclosure of my protected health information ("PHI") as defined under the privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 as follows:

1.    Classes of Persons Authorized to Disclose My Protected Health Information: I authorize each doctor, hospital, nurse, pharmacy, physician, physician practice group, and any other type of health care provider (each, an "Authorized HCP") having any PHI about me to disclose any and all of my PHI, except psychotherapy notes, as provided under this authorization. I acknowledge that all of my PHI in the possession of any Authorized HCP, except psychotherapy notes, is necessary for the purpose for which this authorization is given as described below. I authorize each Authorized HCP to rely upon a photostatic or facsimile copy or other reproduction of this authorization.

2.    Classes of Persons Authorized to Receive My Protected Health Information: I authorize each Authorized HCP to disclose my PHI under this authorization to Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003, and of its affiliates, and any of their directors, officers, employees, agents, independent contractors, service providers or other representatives (each, an "Authorized Recipient").

3.    Description of Protected Health Information Authorized for Disclosure and Purpose of Disclosure: This authorization shall apply to any and all of my health and medical data, information and records, except psychotherapy notes, whether or not personally or individually identifiable or protected under any federal or state confidentiality or privacy laws or regulations. This authorization and all disclosures of my PHI made under this authorization are for purposes of allowing the Authorized Recipient (1) to analyze, assess, evaluate or underwrite my health or medical condition, or life expectancy, in connection with the sale and issuance of any life insurance policy under which my life is insured, or any resale, assignment or other transfer of such life insurance policy after its issuance, (2) to monitor, track or verify my health or medical status and condition in connection with any life insurance policy under which my life is insured and (3) to assess the value of a life insurance policy on my life.

4.    Expiration of Authorization: This authorization shall remain valid until, and shall expire on, the date that is one (1) year after the date of my death.

5.    Right to Revoke Authorization: I acknowledge and understand that I may revoke this authorization any time with respect to any Authorized HCP by notifying such Authorized HCP in writing of my revocation of this authorization and delivering my revocation by mail or personal delivery at such address designated to me by such Authorized HCP; provided, that, any revocation of this authorization shall not apply to the extent that the Authorized HCP has taken action in reliance upon this authorization prior to receiving written notice of my revocation.

6.    Inability to Condition Treatment, Payment, Enrollment or Eligibility for Benefits on Provision of Authorization. I acknowledge and understand that no HCP or other covered entity may condition my treatment, payment, enrollment or eligibility for benefits on whether I sign this authorization.

- 1 -

1601833 v01

GORDILLO 0055

JUDD 070455

Document #5 of 19

I understand that this authorization is not a consent or an authorization requested by a health care provider, health care clearinghouse or health plan covered by the privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 (the "HIPAA Privacy Regulations"). I further understand that, as a result of this authorization, there is the potential for my PHI that is disclosed by any Authorized HCP to an Authorized Recipient to be subject to redisclosure by such Authorized Recipient and my PHI that is disclosed to such Authorized Recipient may no longer be protected by the HIPAA Privacy Regulations.

I certify that I am executing and delivering this authorization freely and unilaterally as of the date written below. I acknowledge that I have received and retained a copy of this signed authorization for my future reference.

_____
Signature of Individual

Erwin A. Collins
Print or Type Name of Individual

Date: 4 - 14 - 08

If this Authorization is signed by the Individual's Personal Representative, you must provide a description of the Personal Representative's legal authority to act for the Individual:

-2-

1604833 v01

GORDILLO 0056

JUDD 070456

Document #6 of 19

## IRREVOCABLE AND DURABLE LIMITED POWER OF ATTORNEY

The State of ___Georgia___ )
                                      ) KNOW ALL MEN BY THESE PRESENTS
County of ___DeKalb___ )

This Irrevocable and Durable Limited Power of Attorney (this *"Power of Attorney"*) is executed and delivered by Erwin A. Collins (the *"Grantor"*) to Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003 (the *"Attorney"*), in connection with the Life Insurance Premium Financing Agreement dated April 15, 2008, among the Grantor, Attorney and The Erwin A. Collins Family Insurance Trust-2008 settled by the Grantor. No person to whom this Power of Attorney is presented, as authority for Attorney to take any action or actions contemplated hereby, shall be required to inquire into or seek confirmation from Grantor as to the authority of Attorney to take any action described below, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to Attorney unconditionally the authority to take and perform the actions contemplated herein, and Grantor irrevocably waives any right to commence any suit or action, in law or equity, against any person or entity which acts in reliance upon or acknowledges the authority granted under this Power of Attorney.

Grantor hereby irrevocably authorizes, empowers and appoints Attorney (and all officers, employees, agents and representatives designated by Attorney), as Grantor's true and lawful attorney-in-fact with full irrevocable and durable power and authority in the place and stead of Grantor and in the name of Grantor or in its own name, with sole and absolute discretion to:

1. review and receive copies of all records, including, but not limited to, private, privileged, protected or personal health information defined as "Protected Health Information" in the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), relating to Grantor's medical history, health-care insurance, and life insurance, and to release or authorize the release of such information to others, as Attorney shall deem appropriate;

2. sign documents and instruments on Grantor's behalf in order to carry out the powers granted herein, including HIPAA-compliant authorizations as described at 45 CFR § 164.508, waivers, or releases of liability required by any Covered Entity, health care provider or any custodian of records; and

3. complete any blanks in the Life Insurance Premium Financing Agreement or related documents, including making any required mechanical or clerical changes to the documents on Grantor's behalf.

This Power of Attorney shall be construed and interpreted as a special power of attorney limited in scope to the authority to act on Grantor's behalf for the above-stated purposes. This Power of Attorney is intended to designate Attorney as a "personal representative" of Grantor, and any Covered Entity shall treat Attorney as the personal representative of Grantor, as provided in 45 CFR § 164.502 (g)(1) for all purposes of HIPAA.

The above powers and authorizations are irrevocably granted and appointed to Attorney and its successors and assignees, and Grantor specifically gives up all rights to revoke this

- 1 -

1601852 v01

**GORDILLO 0057**

Document #6 of 19

Irrevocable and Durable Limited Power of Attorney. Except as otherwise provided by applicable law, the power of attorney granted hereby is coupled with an interest, and may only be revoked or canceled by the Grantor with Attorney's prior written consent. Notwithstanding the foregoing, this Irrevocable and Durable Limited Power of Attorney shall expire on the date that is one (1) year after the date of my death.

Grantor acknowledges that information disclosed by a healthcare provider or other "Covered Entity" (as defined under HIPAA) pursuant to this Power of Attorney may be redisclosed and may no longer be subject to the privacy rules provided by law including, but not limited to, HIPAA.

The power of attorney granted by this instrument shall be durable and will not be affected by Grantor's subsequent death, disability, incapacity or incompetence. At Grantor's option, Grantor has had the opportunity to consult with an attorney prior to signing this Power of Attorney, and Grantor affirms that Grantor understands and agrees to all the terms of this Power of Attorney.

IN WITNESS WHEREOF, this Power of Attorney is executed by Grantor on this _14_ day of _April_, 2008.

GRANTOR

By: _Erwin A. Collins_

Name: Erwin A. Collins

STATE OF _Florida_

COUNTY OF _St. Lucie_

I, _Lisa M. Caudullo_, a Notary Public in and for said County in the State aforesaid, DO HEREBY CERTIFY that Erwin A. Collins, personally known to me to be the same person whose name is subscribed to the foregoing instrument as "Grantor", appeared and delivered the said instrument as his/her free and voluntary act, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _14_ day of _April_ 2008.

_Lisa M. Caudullo_

Notary Public

My commission expires: _Sept 25 2011_

(Official Seal)



LISA M. CAUDULLO
Notary Public - State of Florida
My Commission Expires Sep 25, 2011
Commission # DD 719273
Bonded Through National Notary Assn.

1604852 v01

GORDILLO 0058

JUDD 070458

Document #7 of 19

### AUTHORIZATION AND DIRECTION TO PROVIDE DEATH CERTIFICATE

I hereby authorize, direct and instruct my personal representative, family members, funeral service providers, or any other person with responsibility for my affairs at the time of and after my death to provide to Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003, its agents, representatives, designees, successors or assigns one or more original death certificates evidencing my death and any other documents necessary to process a claim for payment of any and all benefits under a life insurance policy under which I am the insured and under which Windsor Securities LLC, has a direct or indirect economic interest.

If any of the above referenced individuals fails or refuses to provide original death certificates or any other documents necessary to process a claim for payment of any benefits under a life insurance policy under which I am the insured and under which Windsor Securities LLC, has a direct or indirect economic interest, then I authorize and consent that this authorization may be used to obtain one or more certified copies of my death certificate directly from the appropriate governmental agency and/or funeral service provider, notwithstanding that such certificate may contain confidential or nonpublic personal information otherwise protected from disclosure or dissemination under any state or Federal law.

Name of Insured: Erwin A. Collins

STATE OF Florida )

COUNTY OF St. Lucie )

On 14 April, 2008, before me, the undersigned, personally appeared Erwin A. Collins, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same, and that by his/her signature on the instrument the person executed the instrument.

WITNESS my hand and official seal.

Notary Public

My Commission Expires: Sept 25 2011

LISA M. CAUDULLO
Notary Public - State of Florida
My Commission Expires Sep 25, 2011
Commission # DD 719273
Bonded Through National Notary Assn.

1604329 v01

**GORDILLO 0059**

Document #8 of 19

## INSURED'S CLOSING CERTIFICATE

Dated as of ___April___ _14_, 2008

Reference is made to the Life Insurance Premium Financing Agreement dated as of ___April___ _15_, 2008 (the *"Financing Agreement"*) among Windsor Securities LLC, a Nevada LLC, as Lender (the *"Lender"*), Erwin A. Collins, as Insured (the *"Insured"*) and The Erwin A. Collins Family Insurance Trust-2008, as Borrower *(the "Borrower")*.

Pursuant to Section 2.01 of the Financing Agreement, the Insured hereby certifies that all the representations and warranties of and made by the Insured set forth in the Financing Agreement and each Financing Document to which the Insured is a party are true and correct in all respects on and as of the date first above written.

IN WITNESS WHEREOF, the undersigned Insured has hereunto set his/her name as of the date set forth below.

_____
Erwin A. Collins

Date: _4 - 14 - 08_

GORDILLO 0060

JUDD 070460

Document #9 of 19

## ACKNOWLEDGMENT AND AGREEMENT OF TRUST AND INSURED
## WITH RESPECT TO CERTAIN FINANCIAL MATTERS

In connection with the Life Insurance Premium Financing Agreement (the "Financing Agreement"), dated as of $\underline{April\ 15}$, 2008, among Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003 (the "Lender"), the Trust designated below (the "Trust") and the Insured designated below (the "Insured"), this Acknowledgment and Agreement has been signed by the Insured and behalf of the Trust. All capitalized terms used, but not defined herein, shall have the respective meanings assigned to such terms in the Financing Agreement.

The Trust and the Insured acknowledge and agree as follows:

1. The Trust, the beneficiaries of the Trust, and the Insured have consulted experts, including the undersigned advisor(s), regarding the Financing Documents and the transactions contemplated thereby and are not relying on Lender, or any of its respective officers, directors, employees, agents or attorneys for any tax, estate planning, accounting, financial planning, legal, or other advice. The Trust, the beneficiaries of the Trust, the Insured, and their representatives, attorneys, accountants and tax or other financial advisors or experts have reviewed the Financing Documents and the formulas and procedures for determining the Financing Balance. The Insured acknowledges that neither the Lender nor Trust solicited the Insured with respect to the Loan and that the contact was initiated by agents acting on behalf of the Insured.

2. The Lender has undertaken substantial obligations to the Trust under the Financing Agreement, as well as the substantial risk associated with such obligations. The Lender's affiliates have incurred substantial costs associated with the organization of the Life Insurance Premium Financing Program. The Trust and the Insured have enjoyed substantial benefit from the obligations and risks assumed by the Lender and its affiliates, including, without limitation, the potential Net Death Benefit payable to the Insured's beneficiaries. The intention and expectation of the Trust, the Insured and the Lender is that prior to the Maturity Date (as defined in the document "Life Insurance Premium Financing Agreement Among Windsor Securities LLC, the Erwin A. Collins Family Insurance Trust-2008 and Erwin A. Collins", which includes, but is

- 1 -

1604830 v01

GORDILLO 0061

JUDD 070461

Document #9 of 19

not limited to, Term and Conditions and specimen copy of Promissory Note), the Lender and its affiliates will make the Loan to the Trust under the Financing Agreement in the principal amount designated as the Loan Amount in the Financing Agreement for the sole purpose of paying the Financed Premiums for the Policy, Structuring Fee and Closing Fees (as defined in the preamble to the Trust Contract).

3. The statements of the Trust in this Acknowledgement are solely those of the Trust and are not the statements of the Trustee nor have they been verified by the Trustee.

Insured:

Print Name: Erwin A. Collins

Trust:

*The Erwin A. Collins Family Insurance Trust-2008* a Georgia Irrevocable Trust

By Maria A. Gordillo,
as Trustee, and not in his individual capacity

By: Maria ana Gordillo
Print Name: Maria A. Gordillo
Title: Trustee

I acknowledge that I have advised the Insured with respect to the Financing Documents and the transactions contemplated thereby.

By: _____     By: _____

Print                                 Print
Name: _____      Name: _____
Title: _____     Title: _____

_____                                 _____

- 2 -                                 1604830 v01

GORDILLO 0062

JUDD 070462

Document #10 of 19

Copy of Insured's drivers license (or other proof of insured's age and sex)

*TO BE PROVDED BY INSURED*

<please attach enlarged color copy>

GORDILLO 0063

JUDD 070463



GORDILLO 0064

Document #12 of 19

## THE POLICY

### *TO BE PROVIDED BY INSURED*

<Please attach complete original policy and premium schedule, or, if a copy of each is

attached, please sign the verification below>

By affixing my signature below, I am hereby affirming that the attached copy of the insurance policy being financed according to the terms *Life Insurance Premium Financing Agreement Among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins* is an accurate and current copy of that insurance policy as of the date of this signing.

*Maria Ana Gordillo*                , Trustee          Date:  April 15, 2008
The Erwin A. Collins Family Insurance Trust-2008

_____, Agent          Date:  4/15/08

GORDILLO 0066

JUDD 070466



# PACIFIC LIFE

**Pacific Life Insurance Company • 700 Newport Center Drive • Newport Beach, CA 92660**

READ YOUR POLICY CAREFULLY. This is a legal contract between you, the Owner, and us, Pacific Life Insurance Company, a stock insurance company. We agree to pay the benefits of this policy according to its provisions. The consideration for this policy is the application for it, a copy of which is attached, and payment of the premiums.

THE METHOD FOR DETERMINING THE DEATH BENEFIT IS DESCRIBED IN THE DEATH BENEFIT SECTION OF THIS POLICY. THE AMOUNT OF THE DEATH BENEFIT MAY BE FIXED OR VARIABLE ACCORDING TO THE DEATH BENEFIT OPTION SELECTED AND MAY INCREASE OR DECREASE. POLICY LOAN VALUE IS LESS THAN ONE HUNDRED PERCENT (100%) OR THE POLICY'S CASH SURRENDER VALUE.

Free Look Right - You may return this policy within 20 days after you receive it. To do so, deliver or mail it to us or to our agent. This policy will then be deemed void from the beginning and we will refund the premiums paid.

Signed for Pacific Life Insurance Company

President and Chief Executive Officer          Secretary

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- Death Benefit Payable On The Death Of The Insured While The Policy Is In Force
- Net Cash Surrender Value Payable Upon Surrender While The Policy Is In Force
- Flexible Premiums
- Adjustable Face Amount
- Non-Participating

T

ER

CONTINUE IN
INTEREST
HDRAWALS, AND
I FORCE.

POLICY NUMBER: VF51701320

## POLICY SPECIFICATIONS

### SUMMARY OF COVERAGES EFFECTIVE ON THE POLICY DATE

**P04VF5**

BASIC COVERAGE

FACE AMOUNT:      $ 2,000,000.00
AGE ON POLICY DATE:      74
RISK CLASS:      MALE PREFERRED NONSMOKER

INSURED:      ERWIN A COLLINS

---

**R02NL5**

NO LAPSE GUARANTEE RIDER

GUARANTEE PERIOD = 10 POLICY YEARS

INITIAL ANNUAL NO LAPSE PREMIUM = $ 103,482.84

MONTHLY INTEREST RATE FOR ACCUMULATION OF THE NO LAPSE CREDIT IF
THE NO LAPSE CREDIT IS POSITIVE: 0.327374%

---

**R06CON**

CONVERSION RIDER

ELIGIBLE COVERAGE:
BASIC POLICY

---

PAGE 3.1

GORDILLO 0069