POLICY NUMBER: VFS1701320

POLICY SPECIFICATIONS

TABLE OF COST OF INSURANCE RATES - BASIC POLICY

THE RATES BELOW ARE GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER
$1,000.00 OF COVERAGE APPLICABLE TO THE BASIC POLICY COVERING ERWIN A COLLINS.
THESE INCLUDE A 5 YEAR GUARANTEE OF OUR CURRENT RATES AS OF THE POLICY DATE.

| AGE | MONTHLY RATE | AGE | MONTHLY RATE | AGE | MONTHLY RATE |
|---|---|---|---|---|---|
| 74 | 0000.65554 | | | | |
| 75 | 0000.93285 | | | | |
| 76 | 0001.24747 | | | | |
| 77 | 0001.59191 | | | | |
| 78 | 0001.94088 | | | | |
| 79 | 0007.92387 | | | | |
| 80 | 0008.63521 | | | | |
| 81 | 0009.43098 | | | | |
| 82 | 0010.33895 | | | | |
| 83 | 0011.37350 | | | | |
| 84 | 0012.51384 | | | | |
| 85 | 0013.73773 | | | | |
| 86 | 0015.02185 | | | | |
| 87 | 0016.35661 | | | | |
| 88 | 0017.73798 | | | | |
| 89 | 0019.17199 | | | | |
| 90 | 0020.67765 | | | | |
| 91 | 0022.28714 | | | | |
| 92 | 0024.06347 | | | | |
| 93 | 0026.11993 | | | | |
| 94 | 0028.81300 | | | | |
| 95 | 0032.81758 | | | | |
| 96 | 0039.64294 | | | | |
| 97 | 0053.06605 | | | | |
| 98 | 0083.33333 | | | | |
| 99 | 0083.33333 | | | | |
| 100+ | 0000.00000 | | | | |

PAGE 4.0

GORDILLO 0070

JUDD 070470

## DEFINITIONS

In this section, we define certain terms used throughout this policy. Other terms may be defined in other parts of the policy. Defined terms are usually capitalized to show emphasis.

**Accumulated Value** - is the sum of Net Premiums and credited interest less Withdrawals and deductions. See the Accumulated Value section for details.

**Administrative Office** - at the time of the delivery of this notice our Administration Office address is: Pacific Life Insurance Company (Life Division), PO BOX 2030, OMAHA, NE 68103-2030. We will notify you of any change in the address of our Administrative Office.

**Age** - means the age as of the Insured's birthday nearest to the Policy Date, increased by the number of complete policy years elapsed.

**Code** - is the U.S. Internal Revenue Code, and the resulting rules and regulations.

**Coverage Segment** - is a layer of insurance coverage with an associated Face Amount. The Face Amount shown in the Policy Specifications is that of the initial Coverage Segment. Any increase in the Face Amount, as shown in a Supplemental Schedule of Coverage, will result in a new Coverage Segment.

**Evidence of Insurability** - is information, including medical information, satisfactory to us that is used to determine insurability and the Insured's risk class.

**Face Amount** - is the sum of Face Amounts of each Coverage Segment and is used in determining the Death Benefit under this policy. The Face Amount as of the Policy Date is shown in the Policy Specifications. The Face Amount may be changed, as provided for in the Death Benefit section.

**Insured** - is the person insured under this policy, as shown in the Policy Specifications section.

**Monthly Payment Date** - is the day each month on which certain policy charges are deducted from the Accumulated Value. This first Monthly Payment Date is the Policy Date. Later Monthly Payment Dates are the same each month thereafter.

**Net Accumulated Value** - is the Accumulated Value, less Policy Debt.

**Net Premium** - is the premium we receive reduced by any Premium Load.

**PL, we, our, ours, us and the Company** - refer to Pacific Life Insurance Company.

**Policy Date** - is shown on page 3.0. Policy months, years and anniversaries are measured from this date.

**Policy Debt** - is the sum of all outstanding policy loans plus accrued loan interest.

**Policy Specifications** - is a section of the policy which shows information specific to your policy.

**Risk Class** - is shown in the Policy Specifications and is used in determining the Insured's Cost of Insurance Charges.

**Written Request** - is a request in writing, signed by you, containing the information we need to act on the request, and received by us at our Administrative Office.

**You, your or Owner** - refer to the Owner of this policy.

GORDILLO 0071

JUDD 070471

## DEATH BENEFIT

**Death Benefit** – This policy provides a Death Benefit on the death of the Insured while this policy is in force. This section describes how the Death Benefit is calculated. On the date of death, the Death Benefit is the larger of:

- The Death Benefit as calculated under the Death Benefit Option in effect; or
- The Minimum Death Benefit calculated under the Death Benefit Qualification Test elected.

**Death Benefit Options** – You have elected the Death Benefit Option in the application. The Initial Death Benefit Option for this policy appears in the Policy Specifications. The Death Benefit Options are explained below.

- Option A – The Death Benefit equals the Face Amount.
- Option B – The Death Benefit equals the Face Amount plus the Accumulated Value at death.
- Option C – The Death Benefit equals the Face Amount plus the sum of the premiums paid minus the sum of any Withdrawals taken and any other distribution that reduces the Accumulated Value. If the sum of the Withdrawals is greater than the sum of the premiums paid, then the Death Benefit may be less than the Face Amount.

**Change of Death Benefit Option** – The Death Benefit Option may be changed to Option A or B upon Written Request at a maximum of once per policy year. Changes to Option C are not permitted. After any such change, the Face Amount will be that amount which results in the Death Benefit after the change being equal to the Death Benefit before the change. For this purpose, the Death Benefit is the amount calculated under the Death Benefit Options, disregarding the Minimum Death Benefit. The change will be effective on the Monthly Payment Date on or next following the day we receive your Written Request at our Administrative Office. We reserve the right to disallow any Death Benefit Option Change from Option A to B that would result in the Face Amount remaining after the change to be less than $50,000.

Unless you specify otherwise by Written Request, any request for a Death Benefit Option changes will not take effect if the requested change would cause the policy to be classified as a Modified Endowment Contract under the Code.

**Death Benefit Qualification Test** – In order for your policy to be classified as life insurance under the Code, it must satisfy one of two Death Benefit Qualification Tests. Unless you have elected otherwise, the Death Benefit Qualification Test for this policy is the Guideline Premium Test. The Death Benefit Qualification Test for this policy appears in the Policy Specifications section. The two Death Benefit Qualification tests are explained in this subsection.

1. **Cash Value Accumulation Test** – The Minimum Death Benefit will be the greater of the amount required for this policy to be deemed "life insurance" according to the Code or 101% of the Accumulated Value.

2. **Guideline Premium Test** – The Minimum Death Benefit at any time is the Accumulated Value multiplied by the Death Benefit percentage for the Age of the Insured as shown in the following table

| Age | Death Benefit Percentage | Age | Death Benefit Percentage | Age | Death Benefit Percentage | Age | Death Benefit Percentage |
|---|---|---|---|---|---|---|---|
| 0-40 | 250% | 50 | 185% | 60 | 130% | 70 | 115% |
| 41 | 243 | 51 | 178 | 61 | 128 | 71 | 113 |
| 42 | 236 | 52 | 171 | 62 | 126 | 72 | 111 |
| 43 | 229 | 53 | 164 | 63 | 124 | 73 | 109 |
| 44 | 222 | 54 | 157 | 64 | 122 | 74 | 107 |
| 45 | 215 | 55 | 150 | 65 | 120 | 75-90 | 105 |
| 46 | 209 | 56 | 146 | 66 | 119 | 91 | 104 |
| 47 | 203 | 57 | 142 | 67 | 118 | 92 | 103 |
| 48 | 197 | 58 | 138 | 68 | 117 | 93 | 102 |
| 49 | 191 | 59 | 134 | 69 | 116 | Over 93 | 101 |

P04VF5

GORDILLO 0072

JUDD 070472

We reserve the right to reduce the Minimum Death Benefit by requiring Withdrawals be made in order to maintain the Net Amount at Risk at a level that will not exceed three times the Death Benefit on the Policy Date.

**Death Benefit Proceeds** - The Death Benefit Proceeds are the actual amount payable if the Insured dies while this policy is in force. The Death Benefit Proceeds are equal to the Death Benefit, as of the date of the Insured's death, less any Policy Debt and less any due and unpaid monthly deductions occurring during a grace period.

We will pay the Death Benefit Proceeds to the beneficiary within one month after we receive, at our Administrative Office, due proof of the Insured's death and proof of interest of the claimant. The Death Benefit Proceeds paid are subject to the conditions and adjustments defined in other policy provisions, such as General Provisions, Withdrawals, Policy Loans, and Timing of Payments and Transfers. We will pay interest on Death Benefit Proceeds as required by applicable law.

**Face Amount Change** - Subject to our approval, the Owner may change the Face Amount if such request is made:

• during the lifetime of the Insured;
• no more often than once in any policy year; and
• on your Written Request while this policy is in force.

**Face Amount Increase** - You may submit an application to increase the Face Amount by an amount not less than $25,000. The Insured must be Age 90 or less and the application must include Evidence of Insurability satisfactory to us. The effective date of the increased Face Amount will be the first Monthly Payment Date on or following the date all required conditions are met. We reserve the right to limit increases to one per policy year and to charge a fee to evaluate Insurability, which will be deducted from the Accumulated Value. As of the time this policy is delivered, the fee will not exceed $100, but is subject to upward adjustments for inflation.

Upon approval of any unscheduled increase, we will send you a Supplemental Schedule of Coverage, which will include the following information:

• the Increased Face Amount and the effective date of the increase;
• the Risk Class for the increase;
• the Monthly Cost of Insurance Rates applicable to the increase;
• the Face Amount Charge for the increase;
• the Surrender Charge for the increase; and
• If the Guideline Premium Test is used, the new Guideline Premiums.

**Face Amount Decrease** - The effective date of the decreased Face Amount will be the first Monthly Payment Date on or following the date we receive the Written Request and have approved it. We recommend you consult your tax advisor before requesting a decrease in policy Face Amount. Upon approval of any unscheduled decrease, we will send you a Supplements Schedule of Coverage, which will include the decreased Face Amount and the effective date of the decrease. If there have been prior increases in Face Amount, they will be decreased or eliminated in the following order:

• first, the most recent increase;
• next, other Increases in Face Amount, in the reverse order in which they arose; and
• finally, the original Face Amount.

The request for a decrease in the Face Amount will be subject to the Guideline Premium Limit (if applicable to your policy) as defined in the Code. This may result in a refund of premiums and/or the distribution of Accumulated Value in order to maintain compliance with such limit. Such request will not be allowed if the resulting Guideline Premium limit could cause and amount in excess of the Net Cash Surrender Value to be distributed from the policy.

P04VF5                              Page 7

GORDILLO 0073

JUDD 070473

No request for a Face Amount decrease will be approved if the decrease would cause the policy to be classified as a Modified Endowment Contract under the Code, unless you authorize such a change in classification by Written Request.

**Change in Benefits** - Under the Guideline Premium Test, any change in policy or rider benefits will require an adjustment to the Guideline Premium Limit. See the Tax Qualification as Life Insurance subsection of the General Provisions Section for details.

## PREMIUMS

**Premiums** - This policy will not be in force until the initial premium is paid. The initial premium is payable either at our Administrative Office or to our agent. Additional premiums, if any, are payable in advance at our Administrative Office. At your request, a premium receipt signed by one of our officers will be given to you. We reserve the right to require each premium to be at least $50. Premiums may be paid at any time before the insured attains Age 100, subject to the premium limits below, except that you may always make a premium payment which is required to keep this policy in force.

**Planned Premium** - is the amount of premium you plan to pay and is shown in the Policy Specifications. We will send you premium reminder notices for the Planned Premium. You may change the Planned Premium by Written Request, in which case we will send you premium reminder notices for the new Planned Premium. Payment of the Planned Premium does not guarantee that the policy will continue in force.

**Premium Limitation** - We will not accept premiums after the insured's Age 100, although you may make a loan repayment at any time. We reserve the right to require Evidence of Insurability, satisfactory to us, for any unscheduled premium payment that would result in an immediate increase in the difference between the Death Benefit and the Accumulated Value.

**Guideline Premium Limit** - This subsection applies only if you have elected the Guideline Premium Test as the Death Benefit Qualification Test. In order for this policy to be classified as life insurance under section 7702 of the Code, the sum of the premiums paid less a portion of any Withdrawals, as defined in the Code, may not exceed the greater of:

*   The Guideline Single Premium; or
*   The sum of the annual Guideline Level Premiums to the date of payment.

The Guideline Premiums are shown in the Policy Specifications section. The Guideline Premiums may change whenever there is a change in the Face Amount of insurance or in other policy benefits. Any such Guideline Premium change will be shown in a supplemental schedule that we will send to you at the time of the change. The Guideline Premiums are used solely to determine the premium limits, beyond which this policy would fail to be classified as life insurance under the Code. Payment of the Guideline Premiums does not guarantee that the policy will never lapse and additional premiums may be necessary to prevent the policy from lapsing in the future.

The Guideline Premiums are determined by the rules that apply to this policy as set forth in the Code. The Guideline Premiums will be revised to conform to any changes in the Code. In the event that a premium payment would cause such revised limits to be exceeded, we reserve the right to refund the excess payment to you, provided that we may not refuse any premium payment necessary to keep this policy in force. Further, we reserve the right to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance under the Code.

**Modified Endowment Contract Premium Limit** - in order that this policy not be classified as a Modified Endowment Contract under Section 7702A of the Code, the sum of premiums paid less a portion of any Withdrawals may not exceed the 7-Pay limit as defined in the Code. The 7-Pay limit is the cumulative sum of the 7-Pay Premiums to the date of payment. In the event that a premium payment would cause the 7-Pay limit to be exceeded, we reserve the right to refund the excess payment to your, unless you have provided a Written Request that we may accept any such payments and apply them to the policy.

P04VF5                                                Page 8

The 7-Pay premium may change whenever there is a change in the Face Amount of insurance or in other policy benefits. The 7-pay premiums are determined according to the rules applicable to this policy set forth in the Code. The 7-Pay premium will be revised to conform to any changes in the Code. In the event that a premium payment would cause such revised limits to be exceeded, we reserve the right to refund the excess payment to you. Further, we reserve the right to increase the Death Benefit or make distributions from the policy to the extent we deem it necessary to continue to classify this policy as a non-Modified Endowment Contract under the Code.

### ACCUMULATED VALUE

Accumulated Value - on each Policy Date, the Accumulated Value equals the Net Premium received less the first Monthly Deduction. On each other day, the Accumulated Value equals:

- the Accumulated Value as of the prior day;
- plus interest earned on such amount since the prior day;
- plus the amount of any Net Premiums received since the prior day;
- less the amount of any Withdrawal and Withdrawal fee as of the current day; and
- less, on a Monthly Payment Date, the Monthly Deduction and any fee for a Face Amount Increase or
- a Substitution of the Insured.

We credit interest on a daily basis using a 365-day year at a rate not less than the Guaranteed Minimum Annual Interest Rate shown in the Policy Specifications. The daily equivalent is also shown in the Policy Specifications. At our discretion, we may credit additional interest. Any such additional interest may be adjusted to reflect expenses, taxes, profit or sources of earning other than investment earnings.

### POLICY CHARGES

Monthly Deduction - A Monthly Deduction for a policy month is due on each Monthly Payment Date prior to the Insured's age 100 and is equal to the sum of the following items:

- the Face Amount Charge;
- the Administrative Charge;
- rider or benefit charges, if any; and
- the Cost of Insurance Charge.

The guaranteed maximum of each such charge is described below or in the rider forms. We may charge less than these guaranteed maximum charge. Any lesser charge will apply uniformly to all members of the same Class. Class is determined by a number of factors, including (but not limited to) the Death Benefit, Accumulated Value, Policy Date, policy duration, and the Insured's Age and Risk Class.

Face Amount Charge - The Face Amount Charge will not exceed the Face Amount Charge shown in the Policy Specifications. This charge is based on the Face Amount on the Policy Date. If there have been increases in the Face Amount, each increase will have a Face Amount Charge corresponding to the amount of the increase and will be shown in the Supplemental Schedule of Coverage sent to you at the time of the increase.

Administrative Charge - The Administrative Charge is shown in the Policy Specifications.

Rider Charges - Any rider charges are described in the rider forms.

Cost of Insurance Charge - The Cost of Insurance Charge is the sum of the Cost of Insurance Charges on all Coverage Segments. For each Coverage Segment, the Monthly Cost of Insurance Charge is equal to (1) multiplied by (2), where:

(1) is the Guaranteed Maximum Monthly Cost of Insurance Rate for the Coverage Segment; and
(2) is the Net Amount at Risk for the Coverage Segment.

P04VF5                                      Page 9

GORDILLO 0075

**Cost of Insurance Rates** - The Guaranteed Maximum Monthly Cost of Insurance Rates for the initial Coverage Segment are shown in the Policy Specifications. The Guaranteed Maximum Monthly Cost of Insurance Rates for any subsequent Coverage Segment will be shown in a Supplemental Schedule of Coverage sent to you at the time of the increase.

**Net Amount at Risk** - is equal to the Death Benefit as of the most recent Monthly Payment Date divided by the Divisor for Calculating the Net Amount at Risk shown in the Policy Specifications, then reduced by the Accumulated Value at the beginning of the policy month before the Monthly Deduction is due. The Accumulated Value section describes how the Net Amount at Risk is used to calculate the Cost of Insurance Charge. If there are multiple Coverage Segments, then the Net Amount at Risk will be allocated proportionately to each Coverage Segment according to Face Amount.

**Premium Load** - The Premium Load will equal the premium paid multiplied by the Premium Load Rate shown in the Policy Specifications.

**Grace Period and Lapse** - If the Accumulated Value less Policy Debt on a Monthly Payment Date is not sufficient to cover the current monthly deduction, a grace period of 61 days will be allowed for the payment of sufficient premium to keep your policy in force.

The grace period begins on the Monthly Payment Date on which the insufficiency occurred and ends 61 days thereafter. At the start of the grace period, we will notify you and any assignee of record at the last known address. The notice will state the due date and the amount of premium required for your policy to remain in force. A minimum of three times the monthly deduction due when the insufficiency occurred, plus Premium Load, must be paid. There is no penalty for paying a premium during the grace period. Your policy will remain in force during the grace period. If sufficient premium is not paid by the end of the grace period, a lapse will occur. Thirty-one days prior to lapse, we will send you and any assignee of record a notice containing the lapse date and the required premium to keep your policy in force. If the Insured dies during the grace period, the Death Benefit Proceeds will be reduced by any overdue charges. Upon lapse, the policy will terminate with no value.

**Reinstatement** - If it has not been surrendered, this policy may be reinstated not more than five years after the end of the grace period. To reinstate this policy you must provide us with the following:

- a written application;
- Evidence of Insurability satisfactory to us;
- sufficient premium to cover all monthly deductions due and unpaid during the grace period; plus
- sufficient premium to keep the policy in force for three months after the date of reinstatement.

The effective date of the reinstated policy will be the first Monthly Payment Date on or following the date we approve your application. At reinstatement, the Net Accumulated Value will equal the Net Accumulated Value on the date of lapse and the surrender charge will be that in effect at the beginning of the grace period. The surrender charge will then decrease each Policy Month by 0.9259% of the Initial Surrender Charge until it becomes zero. Further, at reinstatement, the Face Amount Charge will be that in effect at the beginning of the grace period and will continue as if lapse had not occurred. If there was a policy loan at lapse, you may, by Written Request, reinstate or repay the loan at the time of reinstatement. In the absence of such Written Request, if the reinstatement occurs on the first Monthly Payment Date after lapse, the loan will also be reinstated; otherwise it will be repaid.

## SURRENDER AND WITHDRAWAL OF VALUES

**Surrender** - Upon Written Request and return to us of this policy while the Insured is living you may surrender this policy for its Net Cash Surrender Value. The policy will terminate on the date the request is received.

**Cash Surrender Value** - The Cash Surrender Value is the Accumulated Value less any Surrender Charge.

**Surrender Charge** - If you surrender your policy, a Surrender Charge will be deducted from the

P04VF5                                    Page 10

GORDILLO 0076

Accumulated Value. The Surrender Charge is needed to help pay for costs such as underwriting, policy issue and sales and distribution costs. Each Coverage Segment has an associated Initial Surrender Charge, which is shown in the Policy Specifications for the initial Coverage Segment or in a Supplemental Schedule of Coverage for subsequent Coverage Segments. For each Coverage Segment, the Surrender Charge will remain level for the first 12 Policy Months and then will decrease each Policy Month by 0.9259% of the Initial Surrender Charge for the Coverage Segment until it becomes zero at the 120th Policy Month following the effective date of the Coverage Segment. If there have been decreases in the Face Amount, including decreases in Face Amount due to Withdrawals, the Surrender Charge will not change as a result of the decrease.

The Surrender Charge as described above is the Guaranteed Maximum Surrender Charge. We may charge less than these guaranteed maximum charges. Any lesser charge will apply uniformly to all members of the same Class. Class is determined by a number of factors, including (but not limited to) the Death Benefit, Accumulated Value, Policy Date, policy duration, and the Insured's Age and Risk Class.

Net Cash Surrender Value - The Net Cash Surrender Value is the Cash Surrender Value less any Policy Debt.

Withdrawals - Upon Written Request on or after the first policy anniversary while the Insured is living, you may withdraw a portion of the Net Cash Surrender Value of this policy. We may deduct a Withdrawal fee of no more than $25 from the Accumulated Value for each Withdrawal. There is no Surrender Charge imposed for a Withdrawal, even if the Face Amount is reduced as a result of the Withdrawal.

Withdrawals will be subject to the following conditions:

- the amount of each Withdrawal must be at least $200; and
- the Net Cash Surrender Value remaining after a Withdrawal must be at least $500.

The amount of each Withdrawal and its associated Withdrawal fee will be deducted from the Accumulated Value. If the Insured dies after the request for a Withdrawal is sent to us and prior to the Withdrawal being effected, the amount of the Withdrawal will be deducted from the Death Benefit Proceeds, which will be determined without taking the Withdrawal into account.

A Withdrawal will affect the Death Benefit, depending on the Death Benefit Option you have chosen. If your policy's Death Benefit is greater than the Minimum Death Benefit, then the withdrawal may reduce the Death Benefit by the amount of the Withdrawal depending on the Death Benefit Option in effect. However, if your policy's Death Benefit is equal to the Minimum Death Benefit, the Withdrawal may cause the Death Benefit to decrease by an amount greater than the amount of the Withdrawal. For Death Benefit Option C, if the sum of the Withdrawals and other distributions from the policy is greater than the premiums paid, the Death Benefit will be less than the Face Amount.

Withdrawals May Change the Face Amount - Immediately following a Withdrawal, but only if Death Benefit Option A is in effect, the Face Amount of the policy will be re-determined as the lesser of (a) the Face Amount immediately before the Withdrawal and (b) the Death Benefit immediately before the Withdrawal less the amount of the Withdrawal or, if the Withdrawal is the first in any one of the first 15 policy years, less the amount of the Withdrawal in excess of 10% of the cumulative premiums paid to date. If the Face Amount has changed as a result of a Withdrawal as described above, the Death Benefit will also have changed since the Death Benefit depends on the Face Amount. See the Death Benefit section.

## INCOME BENEFITS

Income Benefits - Surrender or Withdrawal benefits may be used to buy a lifetime monthly income for the Insured as long as the monthly income is at least $100. Death benefits may be used to buy a monthly income for the lifetime of the beneficiary. The monthly income will automatically be guaranteed to continue for at least ten years, unless another form of payment is requested. Under the automatic form of payment, if the income recipient dies before the end of the ten-year period, payments will continue to the end of the

P04VF5

Page 11

GORDILLO 0077

ten-year period to a person named by the income recipient in a Written Request.

The purchase rates for the monthly income will be set by the Company. However, under the automatic form of payment, the monthly income bought by each $1,000 of benefit amount will always be at least as large as that shown below.

| Age | Monthly Income | Age | Monthly Income | Age | Monthly income | Age | Monthly Income | Age | Monthly Income |
|------|------|------|------|------|------|------|------|------|------|
| 0-30 | 2.38 | 40 | 2.63 | 50 | 3.00 | 60 | 3.69 | 70 | 4.63 |
| 32 | 2.42 | 42 | 2.69 | 52 | 3.10 | 62 | 3.76 | 72 | 4.92 |
| 34 | 2.47 | 44 | 2.76 | 54 | 3.20 | 64 | 3.94 | 74 | 5.26 |
| 36 | 2.52 | 46 | 2.83 | 56 | 3.32 | 66 | 4.14 | 75+ | 5.45 |
| 38 | 2.57 | 48 | 2.91 | 58 | 3.45 | 68 | 4.37 | | |

Monthly income amount for ages not shown are halfway between the two amounts for the nearest two ages that are shown. Amounts shown are based on an annual interest rate of 2% and the Annuity 2000 mortality table with the age setback 5 years. This benefit is not available if the income would be less than $100 a month. We may require evidence of survival for incomes that last more than ten years.

Other Income Options - Surrender, Withdrawal or Death Benefits may be used under any other payment plans that we make available at that time.

## POLICY LOANS

Policy Loans - You may obtain loans by Written Request after the Free Look Period, on the sole security of the Accumulated Value of this policy. We recommend you consult your tax advisor before requesting a policy loan.

Loan Amount Available - The amount of the loan must be at least $200. The amount available for a loan is equal to 90% of Accumulated Value, less any Policy Debt and also less any Surrender Charge that would be imposed if the policy were surrendered on the date the loan is taken or, if greater, the result of (a x b/c)-d, where:

a = the Accumulated Value less 12 times the most recent monthly deduction less any Surrender Charge on the date of the loan;
b = 1 + the Guaranteed Minimum Annual Interest Rate shown in the Policy Specifications;
c = 1 + the loan interest rate described below; and
d = any existing Policy Debt.

Loan Interest - Interest will accrue daily at a rate no greater than the Guaranteed Minimum Annual Interest Rate shown in the Policy Specifications plus 0.25% and is due at the end of each policy year. Interest not paid when due will be added to the loan principal and bear interest at the same rate.

Loan Repayment - Loans may be repaid at any time prior to lapse of this policy. Any payment we receive from you while you have a loan will be first considered a loan repayment, unless you tell us by Written Request it is a premium payment.

## SUBSTITUTION OF INSURED

Benefit - Subject to our approval, after the first policy year, you may request a substitution of the Insured under this policy for a new Insured. We will require the following before we substitute the Insured:

* The new Insured must submit Evidence of Insurability satisfactory to us.
* You must submit a written application for the substitution.

We may adjust the Face Amount, Accumulated Value, Surrender Charge, and any policy fees and charges to reflect the new Insured. A revised schedule of benefits will be sent to you outlining the benefits of the

P04VF5

GORDILLO 0078

JUDD 070478

new Insured. Riders on the new insured will be added only with our consent and subject to our requirements for those riders. If approved, the substitution will be effective on the next Monthly Payment Date on or following our approval.

With respect to the substituted Insured, the incontestability and suicide exclusion periods will begin on the substitution date, or any later reinstatement date. If the substituted Insured commits suicide, while sane or insane, within 2 years of the effective date of the substitution, no Death Benefit Proceeds will be paid. Instead, we will return the Net Cash Surrender Value as of the substitution date, plus any premiums paid and less any loans and Withdrawals taken all since the substitution date.

## OWNER AND BENEFICIARY

Owner - The Owner of this policy is as shown in the Policy Specifications or in a later Written Request. If you change the Owner, the change is effective on the date the Written Request is signed, subject to our receipt of it. If there are two or more Owners, they will own this contract as joint tenants with right of survivorship.

Assignment - You may assign this policy by Written Request. An assignment will take place only when recorded at our Administrative Office. When received, the assignment will take effect as of the date the Written Request was signed. Any rights created by the assignment will be subject to any payments made or actions taken by us before the change is recorded. We will not be responsible for the validity of any assignment.

Beneficiary - The beneficiary is named by you in the application to receive the Death Benefit Proceeds. The beneficiary may be one or more persons. If the beneficiary is more than one person, they will share the Death Benefit Proceeds equally or as you may otherwise specify by Written Request. The interest of any beneficiary will be subject to any assignment. If you have named a contingent beneficiary, that person becomes the beneficiary if the beneficiary dies before the Insured. A beneficiary may not, at or after the Insured's death, assign, transfer or encumber any benefit payable. To the extent allowed by law, policy benefits will not be subject to the claims of any creditor of any beneficiary.

You may make a change of beneficiary by Written Request on a form provided by us while the Insured is living. The change will take place as of the date the request is signed. Any rights created by the change will be subject to any payments made or actions taken by us before the Written Request is received. You may designate a permanent beneficiary whose rights under the policy cannot be changed without his or her written consent.

The interest of a beneficiary who does not survive the Insured will pass to the surviving beneficiaries in proportion to their share in the portion of proceeds that pass to the surviving beneficiaries, unless otherwise provided. For example, if three beneficiaries were named with unequal portions, the first two named to receive 20% each, and the last to named to receive 60%, and if one of the 20% beneficiaries were to fail to survive the Insured, then such 20% share would be split between the two surviving beneficiaries, the first receiving 20/80 of the 20% share (5% of the total), and the other receiving 60 /80 of the 20% share (15% of the total). If no beneficiaries survive to receive payment, the death proceeds will pass to the Owner, or the Owner's estate if the owner does not survive to receive payment.

## GENERAL PROVISIONS

Entire Contract - This policy is a contract between you and us. This policy, any attached endorsements, benefits and riders and the attached copy of the initial application are the entire contract, except as follows. Any written application for a change in policy terms allowed by the policy after issue or written notice of exercise of policy options made after the policy has been issued will also become part of the contract upon our acceptance of such application or notice and our mailing of same to your address last known to us. Only our president, chief executive office or secretary is authorized to change this contract or extend the time for paying premiums. Any such change must be in writing.

All statements in the application shall, in the absence of fraud, be deemed representations and not

P04VF5                                    Page 13

GORDILLO 0079

JUDD 070479

warranties. We will not use any statement to contest this policy or defend a claim on grounds of misrepresentation unless the statement is in an application.

**Incontestability** – We will not contest this policy unless there was a material misrepresentation in an application, including any reinstatement application. The policy will terminate upon successful contest and we will return to you the premiums paid less any policy loans and Withdrawals. Except for failure to pay premiums, this policy cannot be contested after the expiration of the following time periods:

- If this policy has not been reinstated, we cannot contest the Death Benefit of any Coverage Segment after it has been in force during the Insured's lifetime for two years from its effective date; and
- Following a reinstatement, we cannot contest this policy after it has been in force during the Insured's lifetime for two years from the reinstatement date.

**Non-Participating** – This policy will not share in any of our surplus earnings.

**Suicide Exclusion** – If the Insured dies by suicide, while sane or insane, within two years after the Policy Date, the Death Benefit Proceeds will be limited to an amount equal to the sum of the premiums paid, less the sum of any Policy Debt and Withdrawals.

If the Insured dies by suicide, while sane or insane, within two years of the effective date of any increase in the Face Amount, the Death Benefit Proceeds with respect to such increase will be limited to the portion of the Monthly Deductions associated with that increase.

**Misstatement** – If the Insured's Age is misstated in the application, the amount of the Death Benefit shall be the Minimum Death Benefit for the correct age, or if greater, the Death Benefit Proceeds otherwise payable multiplied by a) divided by b), where a) = the Cost of Insurance rate for the misstated age use d in the most recent Monthly Deduction and b) = the Cost of Insurance rate for the correct age for such Monthly Deduction, unless such rate is zero, in which case b) = the last non-zero Cost of Insurance rate used in calculating a Monthly Deduction.

**Evidence of Insurability** – We reserve the right to require Evidence of Insurability for any policy change or any premium payment, which would result in an increase in Net Amount at Risk.

**Maturity** – This policy does not mature, but will continue in force so long as the Insured is alive and there is sufficient Accumulated Value to provide for the Monthly Deduction due. Starting at age 100 of the Insured there is no Monthly Deduction whatsoever.

**Timing of Payments** – We may defer payments of any Net Cash Surrender Value, Withdrawal or loan (except for loans to pay a premium on any policy issued by us) for up to six months after we receive your request. If we defer any such payment for more than 30 days after we receive your request, we will pay interest at the rate required by the state in which this policy is delivered, but not less the Guaranteed Minimum Annual Interest Rate shown in the Policy Specifications.

**Reports** – A report will be mailed to you at the end of each policy year to your last known address. This report will show the following information as of the policy anniversary:

- the Accumulated Value;
- any Cash Surrender Value;
- the Death Benefit;
- premiums paid and charges made during the policy year;
- interest earned during the policy year;
- any existing Policy Debt;
- any change in the Guideline Premiums, and
- any other information required by law.

**Policy Illustrations** – Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more

P04VF5                                          Page 14

GORDILLO 0080

than once in any policy year, we reserve the right to charge you a fee not to exceed $25 per request for this service. Illustrated benefits that are not guaranteed, such as benefits based on the current cost factor assumptions, will vary depending upon a number of factors, including but not limited to, changes in future interest.

**Juvenile Insured** – If an insured's Age on the Policy Date is less than 20, the insured may apply for Nonsmoker risk status on attaining Age 20. This option must be requested by Written Request and accompanied by satisfactory evidence of nonsmoking.

**Basis of Values** – All values provided by this policy will be at least equal to the nonforfeiture minimums required by the state in which this policy was delivered. A detailed statement showing how values are determined has been filed with the insurance department in states that require such filing. Required minimum values include the policy cash value.

To calculate the required minimum values, we use the Minimum Guaranteed Interest rate shown in the Policy Specifications, and the 1980 Commissioners Standard Ordinary Unismoke Ultimate Age nearest birthday, Sex-distinct Mortality Table. However, if the policy is issued as unisex (gender-neutral), we use a corresponding unisex mortality table, the 1980 Commissioners Standard Ordinary Table B (80% male, 20% female). The Risk Class in the Policy Specifications shows whether this policy was issued as sex-distinct or unisex.

**Tax Qualification as Life Insurance** – This policy is intended to qualify as a life insurance contract for federal tax purpose, and the death benefit under this policy is intended to qualify for federal income tax exclusion. This policy, including any rider, benefit or endorsement, shall be interpreted to ensure and maintain such tax qualification, despite any other provision to the contrary.

If at any time the premiums paid under the policy exceed the amount allowable for such tax qualification, the excess amount shall be removed from the policy as of the date of its payment in accordance with federal tax law. Any appropriate adjustments will be made to the death benefit and/or Accumulated Value of the policy. We will refund to you this excess amount, including interest, no later than 60 days after the end of the contract year in which this excess amount occurs, as determined under federal tax law.

If this excess amount is not refunded by the end of such 60-day period, the death benefit shall be increased retroactively to the minimum extent necessary so that at no time is the death benefit ever less than the amount necessary to ensure or maintain such tax qualification. In addition, the Accumulated Value will be reduced to reflect the increased Monthly Deductions that result from such death benefit increase, starting on the date that the increase is effective.

If you request a decrease in policy or rider benefits, it may cause a reduction in any applicable limits on premiums or cash values for the policy to qualify as life insurance under federal tax law. Such a reduction in these limits may require us to make a distribution from the policy equal to the greatest amount by which the premiums paid or cash values for the policy, as determined under federal tax law, exceed any such reduced limits, in order to maintain the policy's tax qualification. If such distribution is made, the distribution will be paid to you and the Accumulated Value will be reduced by the amount of the distribution. However, no request for a decrease in policy or rider benefits will be allowed to the extent that the resulting reduction in such tax limits would require us to distribute more than the Net Cash Surrender Value for the policy.

**Modified Endowment Contract Classification** – This policy is intended not to be classified as a Modified Endowment Contract for federal tax purposes, unless you have provided a Written request to accept a Modified Endowment Contract classification for this policy. Prior to such a Written Request, the provisions of this policy, including any rider, benefit or endorsement shall be interpreted to prevent the policy from being classified as a Modified Endowment Contract, despite any other provisions to the contrary.

In that case, if at any time the premium or other amounts paid under the policy exceed the limit for avoiding Modified Endowment Contract classification, the excess amount shall be removed from the policy as of the date of its payment in accordance with federal tax law. Any appropriate adjustments will be made to the death benefit and/or Accumulated Value of the policy. We will refund to you this excess amount, including

P04VF5                                          Page 15

GORDILLO 0081

JUDD  070481

interest, no later than 60 days after the end of the contract year in which this excess amount occurs, as determined under federal tax law.

If this excess amount is not refunded by the end of such 60-day period, the death benefit shall be increased retroactively to the minimum extent necessary so that at no time is the death benefit ever less than the amount required to avoid Modified Endowment Contract classification. In addition, the Accumulated Value will be reduced to reflect the increased Monthly Deductions resulting from such death benefit increase, starting on the date that the increase is effective.

Any request that would change the death benefit or any other benefit under the policy or any rider will not be processed if the change would cause the policy to be classified as a Modified Endowment Contract, unless you have provided us with a Written Request to accept Modified Endowment Contract classification. Requested changes that could cause the policy to be classified as a Modified Endowment Contract include, but are not limited to, an elective reduction in the Face Amount, a Death Benefit Option change that would cause a reduction in the Face Amount, and a Withdrawal that would cause a reduction in the Face Amount.

Compliance - We reserve the right to make any change to the provisions of this policy to comply with, or give you the benefit of, any federal or state statute, rule, or regulation, including but not limited to requirements for life insurance contracts under the Code or of any state.

We will provide you with a copy of any such change, and file such a change with the insurance supervisory official of the state in which this policy is delivered. You have the right to refuse any such change.

Termination - This policy terminates on the earliest of:

* the death of the Insured;
* lapse of the policy; or
* surrender of the policy.

GORDILLO 0082

JUDD  070482

# INDEX

| | Page |
|---|---|
| Accumulated Value | 5 |
| Administrative Charge | 9 |
| Administrative Office | 5 |
| Age | 5 |
| Assignment | 13 |
| Basis of Values | 15 |
| Beneficiary | 13 |
| Cash Surrender Value | 10 |
| Cash Value Accumulation Test | 6 |
| Change of Death Benefit Option | 6 |
| Code | 5 |
| Compliance | 16 |
| Cost of Insurance Charge | 9 |
| Coverage Segments | 5 |
| Death Benefit | 6 |
| Death Benefit Options | 6 |
| Death Benefit Proceeds | 7 |
| Death Benefit Qualification Test | 6 |
| Entire Contract | 13 |
| Evidence of Insurability | 5, 14 |
| Face Amount | 5 |
| Face Amount Change | 7 |
| Face Amount Charge | 9 |
| Face Amount Decrease | 7 |
| Face Amount Increase | 7 |
| Grace Period | 10 |
| Guideline Premium Limit | 8 |
| Guideline Premium Test | 6 |
| Income Benefits | 11 |
| Incontestability | 14 |
| Insured | 5 |
| Juvenile Insured | 15 |
| Lapse | 10 |
| Loan Amount Available | 12 |

| | Page |
|---|---|
| Loan Interest | 12 |
| Loan Repayment | 12 |
| Maturity | 14 |
| MEC Classification | 15 |
| Misstatement | 14 |
| Modified Endowment Contract | 8 |
| Monthly Deduction | 9 |
| Monthly Payment Date | 5 |
| Net Accumulated Value | 5 |
| Net Amount at Risk | 10 |
| Net Cash Surrender Value | 11 |
| Net Premium | 5 |
| Non-Participating | 14 |
| Owner | 13 |
| Planned Premium | 8 |
| Policy Date | 5 |
| Policy Debt | 5 |
| Policy Illustrations | 14 |
| Policy Loans | 12 |
| Policy Specifications | 5 |
| Premium Limitation | 8 |
| Premium Load | 10 |
| Premiums | 8 |
| Reinstatement | 10 |
| Reports | 14 |
| Risk Class | 5 |
| Suicide Exclusion | 14 |
| Surrender | 10 |
| Surrender Charge | 10 |
| Tax Qualification as Life Insurance | 15 |
| Termination | 16 |
| Timing of Payments | 14 |
| Withdrawals | 11 |
| Written Request | 5 |

GORDILLO 0083

JUDD  070483

## NO LAPSE GUARANTEE RIDER

### SOME DEFINITIONS USED IN THIS RIDER

Guarantee Period – is the time during which we guarantee the death benefit will remain in force if the condition for the No Lapse Guarantee to be in effect (see below) is satisfied. The Guarantee Period is shown in the Policy Specifications. The Guarantee Period begins on the Policy Date and does not re-start if coverage is added or increased.

No Lapse Guarantee Required Premium ("No Lapse Premium") – is an amount used during the Guarantee Period to determine the No Lapse Credit (see next section), which in turn is used to determine if the No Lapse Guarantee is in effect. The Initial Annual No Lapse Premium is shown in the Policy Specifications. The No Lapse Premium may change as described in the "Changes in the No Lapse Premium" section below.

No Lapse Credit – is a value used to determine if the No Lapse Guarantee is in effect. It is calculated at the beginning of each policy month during the Guarantee Period. The No Lapse Credit as of the Policy Date, which is also the first Monthly Payment Date, is equal to the premium paid less one-twelfth of the Initial Annual No Lapse Premium. On any other Monthly Payment Date, the No Lapse Credit is equal to:

- the No Lapse Credit as of the prior Monthly Payment Date multiplied by $(1 + i)$, where $i = 0.327374\%$ if the No Lapse Credit is negative, otherwise $i$ = the rate shown in the Policy Specifications;
- plus premiums received since the prior Monthly Payment Date;
- less withdrawals taken since the prior Monthly Payment Date; and
- less one-twelfth of the then current No Lapse Premium.

Net AV – is the policy Accumulated Value less policy debt.

### PROVISIONS OF THIS RIDER

Changes In No Lapse Premium – Any increase in face amount, scheduled or not, or addition or increase in coverage will cause an increase in the No Lapse Premium. A decrease in Face Amount or in other coverage will not cause a decrease in the No Lapse Premium. If the No Lapse Premium changes as a result of a coverage change, we will provide you with the changed No Lapse Premium.

Condition For The No Lapse Guarantee To Be In Effect – The condition for the No Lapse Guarantee to be in effect is that the No Lapse Credit less policy debt is equal to or greater than zero. As an example, if you pay a premium at the beginning of each policy year at least equal to the then current No Lapse Premium, and if you have taken no policy loans or withdrawals, then the No Lapse Guarantee will be in effect throughout the Guarantee Period. You may also satisfy the condition for the No Lapse Guarantee to be in effect by other premium payment patterns so long as the No Lapse Credit less policy debt is greater than or equal to zero.

Catch-Up Amount – If the No Lapse Guarantee has become ineffective because you have not satisfied the above condition, you may bring the No Lapse Guarantee back into effect by paying the Catch-Up Amount. The Catch-Up Amount is equal to the No Lapse Credit less policy debt, if such amount is less than zero.

R02NL5                              Page 1 of 2

GORDILLO 0084

JUDD  070484

**No Lapse Guarantee Benefit** - If the No Lapse Guarantee is in effect, and if your policy would lapse in the absence of this rider due to insufficient Net AV to cover the Monthly Deductions due, the policy will not enter the grace period and will not lapse.  Instead, the policy will continue under the No Lapse Guarantee and it will stay in force as long as you continue to meet the condition for the No Lapse Guarantee to be in effect.

**AV Pay-Off Account** - If the policy is continued under the No Lapse Guarantee, then the policy has no Net AV from which Monthly Deductions can be collected.  Any such uncollected amounts are accumulated with interest at the monthly rate of 0.327374%, which is equivalent to 4% annually, and the result is stored in an account we call the AV Pay-Off Account.  Any payment you make to us when the policy is continued under the No Lapse Guarantee will first be used to reduce the AV Pay-Off Account.  After the AV Pay-Off Account is reduced to zero, any excess will be applied to the Accumulated Value, as described in your policy.  If you want to keep your policy active at the end of the Guarantee Period, you must make a payment sufficient to reduce the AV Pay-Off Account to zero.  In such case, any excess will then be applied to the Accumulated Value, as described in your policy.  Any payment used to reduce the AV Pay-Off Account will be subject to the Premium Loads shown in your policy.

**Other Riders Attached To Policy At Issue** - If the policy is continued under the No Lapse Guarantee, any attached riders will continue or end according to their terms.

**Effective Date** - This rider is effective on the policy date unless otherwise stated.  It will end on the earliest of:

- your Written Request;
- when the policy ends;
- if you change the Death Benefit Option from A to B;
- if you add any rider that has charges; or
- at the end of the Guarantee Period.

**General Conditions** - This rider is part of the policy to which it is attached.  All terms of the policy that do not conflict with this rider's terms apply to this rider.

Signed for Pacific Life Insurance Company

*[signature]*                              *[signature]*

President and Chief Executive Officer                    Secretary

R02NL5                              Page 2 of 2

GORDILLO 0085

**CONVERSION RIDER**

**Conversion Right** – At any time during the 8th policy year, you may convert any Eligible Coverage, as defined below, to any other policy of permanent life insurance that we make available at that time for such conversions. The new policy will be issued at the same Risk Class as this policy, provided that if this policy has one or more increases in Face Amount with one or more Risk Classes that are different from the Risk Class for the original Face Amount, the new policy will be issued at the Risk Class of the most recent Coverage Segment of this policy. If the Risk Class of this policy is not available on the policy to which you choose to convert, the new policy will be issued at the risk class for which the insured would have qualified based on the application for the original policy, or for the latest increase in Face Amount, if any. The Face Amount of the new policy will be equal to the current amount of Eligible Coverage for this policy, subject to any minimum requirement for the new policy. There will be no Surrender Charge imposed on this policy, and no Evidence of Insurability will be required for the conversion. Upon exercise of the conversion right of this rider, this policy will end.

**Eligible Coverage** – is coverage of the policy that will qualify for conversion under this rider. Eligible Coverage is listed in the Policy Specifications under the title of this rider.

Eligible Coverage does not include:

- any insurance provided under the policy on the life of someone other than the insured; and
- any other rider, term policy, or term coverage on the primary insured other than explicitly listed under Eligible Coverage above.

**Effective Date** – This rider is effective on the Policy Date unless otherwise stated.

**When This Rider Ends** – This rider will end when the policy lapses or ends.

**General Conditions** – This rider is part of the policy to which it is attached. All provisions of the policy that do not conflict with this rider's provisions apply to this rider.

**Consult Your Tax Advisor** – It is possible that converting your policy under this rider could cause the policy to become a Modified Endowment Contract, as defined in the Internal Revenue Code section 7702A. Such a result could have potential adverse tax consequences. You should consult your tax advisor before any such conversion to make sure you understand how it may affect the tax you owe.

Signed for Pacific Life Insurance Company

President and Chief Executive Officer                    Secretary

R06CON

GORDILLO 0086

JUDD  070486

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Operations Center
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7787



## ·HOME OFFICE ENDORSEMENTS

| INSURED NAME: | POLICY NUMBER: |
|---|---|
| COLLINS, ERWIN A | VF51701320 |

Pacific Life has endorsed the Application, referenced by the above policy number, as indicated below.

### ENDORSEMENTS

```
APPLICATION PAGE 7, QUESTION #5A: NOT APPLICABLE
APPLICATION PAGE 7, QUESTION #5B: CVAT
APPLICATION PAGE 7, QUESTION #11A: NOT APPLICABLE
```

GORDILLO 0087

JUDD 070487

**APPLC**

**PACIFIC LIFE INSURANCE COMPANY**
Life Insurance Operations Center
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7787 • Fax (949) 462-9636
www.PacificLife.com



## APPLICATION FOR LIFE INSURANCE

### CLIENT INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **PROPOSED INSURED** Complete for all Life Insurance Policies. | **1A. Name:** First Erwin | | MI A | Last Collins | | | **B. Gender** ☒ Male ☐ Female |
| | **C. Residence Address: Street** 331 Suburban Rd | | **City** Knoxville | | **State** TN | **Zip Code** 37923 | **D. How Long** 16 yr mo |
| | **E. Date of Birth (mm/dd/yyyy)** 09/15/1933 | **F. Place of Birth (State/Country)** TN / USA | | | | **G. Soc. Sec. #** 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 | |
| Employer's address should be location where Proposed Insured physically works. | **H. Driver's License # & State** C4522013333356    FL | | **I. Telephone # (include area code)** (865) 691-3328 | | **J. Occupation** Property Owner / Manager | | |
| | **K. Proposed Insured is a:** ☒ U.S. Citizen    ☐ U.S. Permanent Resident    ☐ Foreign National If Foreign National, provide Country | | | | | and Visa Type | |
| | **2A. Employer's Name** Suit Employent | | | | | | **B. How Long** 15 yr mo |
| | **C. Employer's Address: Street** P.O. Box 31668 | | **City** Knoxville | | **State** TN | **Zip Code** 37930 | **D. Type of Business** Property Management |
| **PROPOSED ADDITIONAL INSURED** Complete for either: 1) Spouse-to-Die Life Insurance Policy; or 2) Term Rider on Another Covered Person (e.g., Spouse) for an Individual Life Insurance Policy. | **3A. Name:** First | | MI | Last | | | **B. Gender** ☐ Male ☐ Female |
| | **C. Residence Address: Street** | | **City** | | **State** | **Zip Code** | **D. How Long** yr mo |
| | **E. Date of Birth (mm/dd/yyyy)** | **F. Place of Birth (State/Country)** | | **G. Soc. Sec. #** | | **H. Relationship to Insured** | |
| | **I. Driver's License # & State** | | **J. Telephone # (include area code)** | | **K. Occupation** | | |
| | **L. Proposed Insured is a:** ☐ U.S. Citizen    ☐ U.S. Permanent Resident    ☐ Foreign National If Foreign National, provide Country | | | | | and Visa Type | |
| | **4A. Employer's Name** | | | | | | **B. How Long** yr mo |
| | **C. Employer's Address: Street** | | **City** | | **State** | **Zip Code** | **D. Type of Business** |
| **OWNER** Complete only if owner is different from the Insured(s). If more than one owner, add in #6A. If owner is a trust, complete #s 5 & 7-10 with appropriate information. Use Remarks if necessary. | **5A. Name** Erwin A. Collins Family Insurance Trust - 2008 | | | | | | |
| | **B. Address: Street** 346 Crestview Circle | | **City** Roswell | | **State** GA | **Zip Code** 30075 | |
| | **C. Date of Birth (mm/dd/yyyy)** N/A | | | **D. Relationship to Insured(s)** Trust | | | |
| | **E. Soc. Sec #/Tax ID #** 36-6230172 | **F. Driver's License # & State (applicable)** N/A | | **G. Telephone # (include area code)** | | | |
| | **6A. Additional Name (if applicable)** | | | | | | |
| | **B. Address: Street** | | **City** | | | **State** | **Zip Code** |
| | **C. Relationship to Insured(s)** | | | **D. Soc. Sec. #/Tax ID #** | | | |
| If owner is a corporation or business entity, indicate name and title of authorized representative in #11. Use Remarks if more than one. | **7A. Trustee's Name:** First Maria | | MI A | Last Gordillo | | | **B. Date of Trust (mm/dd/yyyy)** 02/01/2008 |
| | **8. Additional Trustee's Name:** First | | MI | Last | | | **9. Total Number of Trustees** 1 |
| | **10. Does your trust agreement require all trustees to sign?** ☒ Yes  ☐ No  (If No, indicate in Remarks who is required to sign) | | | | | | |
| | **11A. Authorized Representative's Name:** First  MI | | | Last | | | **B. Title** |

A08IUW                                      Page 1                  PLXRAPPLCXPLH          15-27446-05 01/2008

JUDD  070488                                                                        GORDILLO 0088

**CLIENT INFORMATION (Continued)**

| CERTIFICATION OF OWNER'S TAXPAYER IDENTIFICATION | Under penalty of perjury, I certify that: |
|---|---|

Under penalty of perjury, I certify that:
1. The number shown in this application as my Social Security number or Taxpayer Identification number is correct; and
2. I am not subject to backup withholding under Section 3406(a)(1)(c) of the Internal Revenue Code; and
3. I am a U.S. person (including a U.S. resident alien).

Note: If statement 2 or 3 is false, strike out and initial.

I understand that 1) federal law requires all financial institutions to obtain the name, residential address, date of birth and Social Security or Taxpayer Identification number and any other information necessary to verify the identity of each customer, and 2) failure to provide this information could result in denial of this application or in delayed or unprocessed transactions.

| PRIMARY BENEFICIARY(IES) | 12A. Name | | | | | | B. % Share |
|---|---|---|---|---|---|---|---|
| If there are more than two, use the Remarks section. | Erwin A. Collins Family Insurance Trust - 2009 Trust | | | | | | 100 |
| | C. Relationship to Insured(s) | | | D. Soc. Sec. # / Tax ID # 26-6230172 | | E. Date of Birth (mm/dd/yyyy) | |
| If beneficiary is a trust, complete #12, 14 and 15 with applicable information. Use Remarks if necessary. | 13A. Additional Name (if applicable) | | | | | | B. % Share |
| | C. Relationship to Insured(s) | | | D. Soc. Sec. # / Tax ID # | | E. Date of Birth (mm/dd/yyyy) | |
| If percentage shares are left blank, the shares will be equal. | 14A. Trustee's Name: First | MI | Last | | | B. Date of Trust (mm/dd/yyyy) | |
| | Marie | A | Gordillo | | | 02/01/2005 | |
| | 15. Additional Trustee's Name: First | MI | Last | | | | |
| CONTINGENT BENEFICIARY (Optional) | 16A. Name | | | | | | |
| | B. Relationship to Insured(s) | | C. Soc. Sec. # / Tax ID # | | | D. Date of Birth (mm/dd/yyyy) | |

**TERM INSURANCE CONVERSION POLICY DETAILS**

AO6IUW                                          Page 2                              16-27446-06  01/2008

GORDILLO 0089

## EXISTING / PENDING INSURANCE INFORMATION

**LIFE INSURANCE / ANNUITY IN FORCE AND REPLACEMENT INFORMATION**

1. Is there any existing or pending life insurance or annuities on any Proposed Insured(s)?
   ☑ Yes (Complete and submit with the application any applicable state replacement notice, see IMPORTANT note)
   ☐ No

**IMPORTANT**
Certain states require replacement forms for any inforce policies even if a replacement is not intended. Refer to Producer Instructions for a list of states.

2. Will the policy applied for replace, cause a change in, or involve a cash withdrawal or loan from or lapse of any life insurance policy or annuity contract on any Proposed Insured's life?
   ☐ Yes (Complete and submit with the application the applicable state replacement forms)
   ☑ No

3. Complete the chart below:

**PROPOSED INSURED'S INFORMATION**

Add additional policies under Remarks.

| Policy/Contract # | Company | Face Amount | Year Issued / Applied For | Policy Type | | Ind/Grp | | Purpose | | Pending | | Replace | | 1035 Exch | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Life | Ann | Ind | Grp | Bus | Pers | Yes | No | Yes | No | Yes | No |
| Unknown | Phoenix Life | $2,000,000 | 2007 | ☑ | ☐ | ☑ | ☐ | ☐ | ☑ | ☑ | ☐ | ☐ | ☑ | ☐ | ☑ |
| | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**PROPOSED ADDITIONAL INSURED'S INFORMATION**

| Policy/Contract # | Company | Face Amount | Year Issued / Applied For | Policy Type | | Ind/Grp | | Purpose | | Pending | | Replace | | 1035 Exch | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Life | Ann | Ind | Grp | Bus | Pers | Yes | No | Yes | No | Yes | No |
| | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

4. For all 1035 Exchanges, complete the following chart:

| Policy/Contract # | Qualified Plan | | Loan Carryover | | Modified Endowment Contract | | | |
|---|---|---|---|---|---|---|---|---|
| | Yes | No | Yes (if yes, indicate amount) | No | Yes | No | Unknown | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |

**MODIFIED ENDOWMENT CONTRACT (MEC) DISCLOSURE**

Under federal tax rules, if a policy is received in exchange for an old policy that had become a MEC, the new policy will also be a MEC. This rule applies whether or not the two policies are issued by the same insurance company. A MEC Acceptance Form must be signed and submitted with the application, or must be signed upon policy delivery.

## REMARKS - IDENTIFY QUESTION AND GIVE DETAILS

Page 3                    16-27446-08  01/2008

GORDILLO 0090

JUDD  070490

## PERSONAL INFORMATION

| FINANCIAL INFORMATION | | Proposed Insured | | Additional Insured | |
|---|---|---|---|---|---|
| | 1. Annual earned income from occupation (After deduction of business expenses) | $ 125,352 | | $ | |
| | 2. Annual unearned income (State source in Remarks below) | $ 80,000 | | $ | |
| | 3. Net worth   ☑ Individual   ☐ Joint | $ 3,896,402 | | $ | |
| | 4A. Is the Proposed Insured married?   ☑ Yes ☐ No | | | | |
| | B. If married and applying for individual life insurance, list amount of life insurance in force on the spouse $ 0 (for business or survivor insurance write N/A) | | | | |

| | | | YES | NO | YES | NO |
|---|---|---|---|---|---|---|
| GENERAL INFORMATION | 5. | Within the next 2 years do you plan to fly, or within the last 2 years have you flown, as a pilot, student pilot, or crewmember? (If yes, complete the Aviation Questionnaire) | ☐ | ☑ | ☐ | ☐ |
| Complete each question for the Proposed Insured and Proposed Additional Insured. | 6. | Within the next 2 years do you plan to participate in, or within the last 2 years have you participated in, parachute jumping, scuba diving, automobile/motorboat/motorcycle racing, hang gliding, or mountain climbing? (If yes, complete the Avocation Questionnaire) | ☐ | ☑ | ☐ | ☐ |
| | 7. | Do you plan or expect to travel or reside outside the USA? (If yes, complete the appropriate Travel Questionnaire) | ☐ | ☑ | ☐ | ☐ |
| | 8. | Have you applied for any other life insurance within the last 3 months? | ☑ | ☐ | ☐ | ☐ |
| | 9. | Have you ever had life insurance declined, rated, modified, cancelled, or not renewed? | ☐ | ☑ | ☐ | ☐ |
| Explain all "Yes" answers in Remarks unless instructed otherwise. | 10. | Have you been convicted of a felony within the past 5 years? | ☐ | ☑ | ☐ | ☐ |
| | 11. | Have you had a driver's license restricted or revoked or been convicted of 3 or more moving violations within the past 5 years? | ☐ | ☑ | ☐ | ☐ |
| TOBACCO USE INFORMATION Complete if Proposed Insured and/or Proposed Additional Insured is age 20 and above. | 12. | Have you used within the last 5 years tobacco or any other product that contains nicotine? | ☐ | ☑ | ☐ | ☐ |

| | Type of Product | Proposed Insured | Additional Insured |
|---|---|---|---|
| (If yes, check all that apply and indicate date when last product was used) | Cigarettes | ☐ | ☐ |
| | Cigars | ☐ | ☐ |
| | Pipe | ☐ | ☐ |
| | Chewing | ☐ | ☐ |
| | Patch | ☐ | ☐ |
| | Gum | ☐ | ☐ |
| | Other | | |
| | Date last used [mm/yy] | | |

## MEDICAL CERTIFICATION

**MEDICAL CERTIFICATION**

Complete when submitting a medical examination from another insurance company.

1. The attached examination is on the life of (Use check boxes):

| Proposed Insured | Additional Insured | Name of Insurance Company | Date of Examination |
|---|---|---|---|
| ☑ | ☐ | Phoenix Life | 11/14/2007 |
| ☐ | ☐ | | |

Another insurance company's exam may be accepted if the proposed additional insured was examined within the past six months.

2. To the best of your knowledge and belief, are the statements in the examination true as of today? (If so, explain in Remarks)

Proposed Insured   ☑ Yes ☐ No
Additional Insured   ☐ Yes ☐ No

3. Has the person who was examined consulted a doctor or other medical practitioner, or received medical or surgical advice since the date of the examination? (If yes, explain in Remarks)

Proposed Insured   ☐ Yes ☑ No
Additional Insured   ☐ Yes ☐ No

## REMARKS SECTION / ANY QUESTION AND/OR DETAIL

#2: Source of unearned income: pension, stocks, bonds and mutual funds.

#8: Application for Phoenix Life has been submitted, but will not be accepted if the Pacific Life preferred rating stands.

JUDD 070491

GORDILLO 0091

## PHYSICIAN/MEDICAL FACILITY INFORMATION

| PHYSICIAN/MEDICAL FACILITY INFORMATION (Optional) | Complete information on the Proposed Insured and the Proposed Additional Insured regarding the last visits to a physician(s) or medical facility(ies): |
|---|---|

**Obtaining this information will assist in the early ordering of attending physician statements.**

**PROPOSED INSURED'S INFORMATION**

| 1A. Name: First Erwin | MI | Last & Cullins | | E. Height 6'1 | G. Weight 247 |
|---|---|---|---|---|---|

| 2A. Physician and/or Medical Facility Name Dr. Charles Robinson | B. Telephone Number (include area code) (865) 584-2146 |
|---|---|

| C. Address: Street 1300 Old Weisgarber Rd, | City Knoxville | State TN | Zip Code 37909 |
|---|---|---|---|

| D. Date of Last Visit (mm/yyyy) 09/2007 | E. Reason for Visit Regular Check up | F. Results of Visit Normal |
|---|---|---|

| 3A. Additional Physician and/or Medical Facility Name Dr. Eric Nienly | B. Telephone Number (include area code) (865) 691-3051 |
|---|---|

| C. Address: Street 9330 Park West Blvd., Ste 208 | City Knoxville | State TN | Zip Code 37923 |
|---|---|---|---|

| D. Date of Last Visit (mm/yyyy) 09/2007 | E. Reason for Visit Urological Physical | F. Results of Visit Normal |
|---|---|---|

**PROPOSED ADDITIONAL INSURED'S INFORMATION**

| 4A. Name: First | MI | Last | | B. Height | C. Weight |
|---|---|---|---|---|---|

| 5A. Physician and/or Medical Facility Name | B. Telephone Number (include area code) |
|---|---|

| C. Address: Street | City | State | Zip Code |
|---|---|---|---|

| D. Date of Last Visit (mm/yyyy) | E. Reason for Visit | F. Results of Visit |
|---|---|---|

| 6A. Additional Physician and/or Medical Facility Name | B. Telephone Number (include area code) |
|---|---|

| C. Address: Street | City | State | Zip Code |
|---|---|---|---|

| D. Date of Last Visit (mm/yyyy) | E. Reason for Visit | F. Results of Visit |
|---|---|---|

## REMARKS - DETAIL ANY QUESTIONS ANSWERED YES AND GIVE DETAILS

GORDILLO 0092

JUDD 070492

## PREMIUM AND BILLING INFORMATION

**AMOUNT PAID WITH THIS APPLICATION**
The application, TIA, and check should all have the same date.

1A. Is an initial premium submitted with this application? ☐ Yes ☑ No
(Do not submit money unless the Temporary Insurance Agreement (TIA) is completed)
B. If yes, show amount of initial premium and complete the next question. Amount $_____
C. Do you understand, accept, and agree to the terms of the TIA? ☐ Yes ☐ No

**PREMIUM FINANCING**
All questions must be answered.

2. Premium financing, or borrowing life insurance premiums from a lender or other third party, can be a legitimate method of obtaining life insurance premiums. However, not all premium financing arrangements may be appropriate and otherwise in compliance with the applicable laws and regulations. In fact, Pacific Life does not allow its products to be used in certain premium financing arrangements and will decline applications for life insurance made in connection with a premium financing arrangement that is not approved for use with Pacific Life products.
A. Have you entered into or do you have an expectation that you may enter into an agreement to borrow current or future premiums, or both, in connection with this Application for Life Insurance?
☐ Yes (A signed Premium Financing Disclosure Statement must be returned to Pacific Life before the underwriting process can begin)
☑ No
B. Do you have an expectation that you may transfer the policy to a third party as repayment of any premium financing debt? ☐ Yes (Give details in the Remarks section) ☑ No

**PREMIUMS**

3. Billing Method (Check one):
A. ☑ Direct
B. ☐ Monthly Bank Draft (Attach voided check and complete Authorization for Electronic Funds Transfer (EFT) section)
C. ☐ Single Premium
D. ☐ List Bill – I agree that inclusion of the premium for this policy in an itemized list to be furnished as stated below by Pacific Life to the Employer named in the Client Information section shall constitute notice of premium due, and I waive any future premium notices or other notices relating to premiums. (Check one)
☐ New List Bill ☐ Add to Existing List Bill #: _____

4. Frequency of Payment for Direct and List Bill (Check one):
A. ☑ Annually C. ☐ Quarterly
B. ☐ Semi-Annually D. ☐ Monthly (Available with List Bill only)

5A. Send Premium Notices to: ☐ Insured ☑ Owner ☐ Payor ☐ Other
Indicate name, relationship, and address below if different from Client Information section.

| B. Name | C. Relationship to Insured(s) |
|---|---|
| D. Care of (if applicable) | |
| E. Address, Street City State Zip Code | |

**NOTIFICATIONS (Optional)**
*Notifications include, but are not limited to, Policy Annual Statements, Last Premium Offers/Lapse Notices, and Confirmation Statements.

6A. For non-employer sponsored cases, original notifications* are sent to the policyowner. To send additional notifications, indicate where notifications should be sent: ☐ Insured ☐ Payor ☐ Other
B. For employer-sponsored cases, indicate where notifications* should be sent: ☐ Employer ☐ Other

7. Indicate name, relationship, and address below if information for above entity(ies) is different from Client Information section.

| A. Name | B. Relationship to Insured(s) |
|---|---|
| C. Address, Street City State Zip Code | |

## REMARKS (IDENTIFY QUESTION AND GIVE DETAILS)

GORDILLO 0093

JUDD 070493

## LIFE INSURANCE COVERAGE INFORMATION

| PRODUCT/PREMIUM | 1. Product Name | | 2. Planned Annual Premium |
|---|---|---|---|
| | Versa Flex VI | | $ 85,000.00 |

**FACE AMOUNT/DEATH BENEFIT**
Select the appropriate basic and additional coverage face amount(s) as shown on the illustration.

Not all additional coverages are available on all products.

| 3. Basic Coverage Amount | Rider/Other Coverage (Total of face amounts below) $ _____ | |
|---|---|---|
| $ 2,000,000 | ☐ Accounting Benefit Rider $ _____ | |
| | ☐ Annual Renewable Term $ _____ | |
| | ☐ Cash Value Enhancement Rider $ _____ | Total Initial Coverage |
| | ☐ ECV Coverage $ _____ | $ 2,000,000 |
| | ☐ Group Term Carve Out $ _____ | |
| | ☐ Last Survivor Accounting Benefit Rider $ _____ | |
| | ☐ Last Survivor Annual Renewable Term $ _____ | |
| | ☐ Other _____ $ _____ | |

**DEATH BENEFIT OPTION**
Not available on all products.

4. Check one: ☑ Option A (Level)    ☐ Option B (Increasing)    ☐ Option C (Face amount plus premiums less distributions)    ☐ Option D (Face amount modified by a death benefit factor)

**LIFE INSURANCE QUALIFICATION TEST**
Both tests not available on all products.

5. Check one: (Qualification test cannot be changed after the policy is in force)
A. ☑ Guideline Premium Test (GPT)
B. ☐ Cash Value Accumulation Test (CVAT)

**GUARANTEED COST OF INSURANCE (COI) PERIOD**
Not all years available on all products.

6. Indicate number of years:
☐ 0    ☐ 1    ☐ 2    ☐ 3    ☑ 5    ☐ 10    ☐ Other _____

**OPTIONAL BENEFITS**
Select the appropriate riders as indicated in the illustration and indicate face amount(s) where applicable.

7. Individual Life Insurance Products Only

A. ☐ Accelerated Living Benefit Rider (Complete disclosure form)
B. ☐ Accidental Death $ _____
C. ☐ Children's Term $ _____ (Complete non-standard term)
D. ☐ Disability Benefit $ _____
E. ☐ Flexible Duration No Lapse Guarantee Rider
F. ☐ Guaranteed Insurability $ _____
G. ☐ Guaranteed Minimum Distribution Rider
H. ☐ Long-Term Performance Rider _____ % (Indicate a percentage of Base plus Annual Renewable Term Coverages to which this rider applies)
I. ☐ Minimum Earnings Benefit Rider _____ years (Indicate a Maturity Period)
J. ☐ Maturity Extension Rider

K. ☐ Owner Waiver of Charges (Complete disclosure form)
L. ☐ Payor Waiver of Charges (Complete non-standard form)
M. ☐ Premium Waiver
N. ☐ Qualified Retirement Plan Rider
O. ☐ Short Term No Lapse Guarantee Rider
P. ☐ Termination Credit Rider I
Q. ☐ Termination Credit Rider II
R. ☐ Term Rider on Other Covered Person $ _____
S. ☐ Waiver of Charges (Co-Insured)
T. ☐ IRC §412(i) Life Insurance Rider
U. ☐ Other _____
V. ☐ Other _____
W. ☐ Other _____

8. Second-to-Die Life Insurance Products Only

A. ☐ Accelerated Living Benefit Rider (Complete disclosure form)
B. ☐ Flexible Duration No Lapse Guarantee Rider
C. ☐ Individual Term Rider on the Proposed Insured $ _____

O. ☐ Individual Term Rider on the Additional Insured $ _____
E. ☐ Other _____
F. ☐ Other _____

9. If any optional benefit applied for cannot be approved, should the policy be issued without it? ☑ Yes  ☐ No

**NON-FORFEITURE/ PREMIUM CESSATION OPTIONS** (if applicable)

10. ☐ Automatic Premium Loan    ☐ Extended Insurance    ☐ Reduced Paid-Up

**SPECIAL POLICY DATING**
Backdating is subject to Pacific Life and state guidelines.

11A. I understand that insurance charges and expenses begin on the policy date.  ☑ Yes  ☐ No
B  A current policy date will be used unless you select one of the following.
☐ Save Age    ☐ Specific Date _____ (mm/dd/yyyy)    (Indicate a date, excluding 29th, 30th, and 31st)

**MODIFIED ENDOWMENT CONTRACT (MEC) ACCEPTANCE** (if applicable)

12. I understand that the policy as applied for is expected to become a Modified Endowment Contract (MEC) prior to its first policy anniversary.
☐ Yes (I have signed and submitted, or will sign upon policy delivery, a MEC Acceptance Form)

GORDILLO 0094

JUDD  070494

**NON-VARIABLE LIFE INSURANCE INFORMATION**

**ILLUSTRATION ACKNOWLEDGMENT**

**IMPORTANT**
Must complete when applying for a non-variable product.

1   An illustration is defined as a presentation or depiction that includes non-guaranteed elements of a policy over a period of years. This includes supplemental illustrations and/or sales material, which can be classified as a supplemental illustration. As applicant, I acknowledge that: (Check one)

A. ☒   An illustration that matches this application was presented, signed, and is being submitted with this application.

B. ☐   An illustration was not presented to me. (Not applicable in Michigan)

C. ☐   An illustration was presented to me; however, the policy applied for is different than as illustrated.

D. ☐   An illustration was displayed to me on a computer screen. The displayed illustration matches the policy applied for; however, no printed copy of the illustration was given to me. The illustration on the screen included personal and policy information as listed in this application.

If B, C, or D is checked, I acknowledge, as applicant, that I did not receive and sign an illustration that matches this application for the reason indicated above. I also understand that an illustration matching the policy as issued will be provided for my signature no later than at the time the policy is delivered.

GORDILLO 0095

JUDD  070495

## APPLICANT/OWNER'S REPRESENTATION OF INSURABLE INTEREST

**REPRESENTATION OF INSURABLE INTEREST**

*Applicable except when the Proposed Insured is both Applicant and Owner.*

As the Applicant and/or Owner, I represent that the Owner and Beneficiary have an Insurable Interest in the life of the Proposed Insured(s).

## PROPOSED INSURED'S CONSENT FOR EMPLOYER-OWNED INSURANCE

**PROPOSED INSURED'S CONSENT**

*Applicable only if the employer or an employer-controlled trust is to be the owner of this policy.*

As the proposed Insured, I acknowledge and understand that (i) my employer (the "Employer"), or a trust established by my employer (the "Trust"), is involved in this Application for life insurance insuring my life ("Life Insurance Coverage"), (ii) the Employer or the Trust will have an interest as owner and/or beneficiary of the Life Insurance Coverage as reflected in this Application, and (iii) both I and my heirs may have no right or interest in or to the Life Insurance Coverage and its proceeds.

I (i) consent to the issuance of the Life Insurance Coverage as requested in this Application; (ii) acknowledge that the Life Insurance Coverage may continue after the termination of my employment with the Employer; (iii) acknowledge that my Employer has notified me in writing of the maximum face amount for which my Employer may seek Life Insurance Coverage insuring my life; and (iv) acknowledge that Pacific Life will not necessarily issue a policy at this maximum life insurance face amount.

My consent to this insurance has not been obtained by coercion of my Employer or its representatives or agents, whether express or implied. By my signature in the Signatures section, I am consenting to the Employer's and/or Trust's future purchase of additional Life Insurance Coverage up to the maximum amount described above, for which no additional notice to, or consent from me will be necessary.

## EMPLOYER ACKNOWLEDGMENT

**EMPLOYER ACKNOWLEDGMENT REGARDING THE POTENTIAL TAXATION OF DEATH BENEFITS**

I acknowledge and understand: (i) the potential significance of IRC section 101(j); and (ii) that, if IRC section 101(j) applies, the policy(s) death benefit may be income taxable unless I, as employer, have satisfied the conditions of IRC Section 101(j); and (iii) that Pacific Life and its producers are not authorized to provide tax or legal advice and that I must look to my independent tax and legal advisors for current information regarding life and other laws that may impact me and my life insurance policies.

I understand that it remains the employer's responsibility to ensure both current and ongoing compliance with the requirements of IRC sections 101(j) and 60391.

By signing in the Signatures section, I acknowledge my understanding of this information, and that I have obtained or will obtain from my independent tax and legal advisors whatever advice I deem necessary or appropriate concerning the taxation of my life insurance policies.

## APPLICATION PACKAGE

**PAGES OMITTED**

1.  Indicate below each page omitted from this application (Check all that apply):

    A.  ☐ Page 5 – Physician/Medical Facility Information

    B.  ☐ Page 6 – Non-Variable Life Insurance Information

    C.  ☑ Page 8-10 – Equity Indexed Universal Life Insurance Information

    D.  ☑ Page 11-15 – Variable Life Insurance Information

    E.  ☑ Page 16 – Additional/Alternate Life Insurance Coverage Information

    Note that only the above-referenced pages may be omitted when submitting this application. The omission of any other pages may result in rejection of the application.

## NEW BUSINESS DATE STAMP *(For Internal Use Only)*

RECEIVED
2008 APR 23
PM 2:07

## DECLARATIONS

The answers provided in this application are true and complete to the best of my knowledge and belief. I understand and agree that:

1.  (NOT APPLICABLE IN WEST VIRGINIA) Acceptance of a life insurance policy will be ratification of any administrative change with respect to such policy made by Pacific Life as indicated under the title "Endorsement," where permitted by state law. All other changes made to the application or policy by Pacific Life will be indicated on an "Application Amendment Form" that must be signed by all applicable parties, prior to or at the time of delivery of this policy.

AOSIUW                               Page 17                          15-27448-06  01/2008

GORDILLO 0096

JUDD  070496

04/13/2008  07:31   8516274928                                          PAGE  04

### DECLARATIONS (Continued)

2. Except as provided in the terms or conditions of any Temporary Insurance Agreement (TIA) that I may have received in connection with this application, coverage will take effect when the policy is delivered and the entire first premium is paid only if at that time the Proposed Insured(s) is alive, and all answers in this application that are material to the risk are still true and complete.

3. If I have given money with the application and received a TIA and if the coverage amount of the application exceeds the TIA coverage limits, I understand that if the Proposed Insured(s) die(s) before a policy is delivered, the death benefit will be limited to the TIA coverage limit.

4. I must inform the Producer or Pacific Life Insurance Company (PL) in writing of any changes in the health of any Proposed Insured(s) or if any of the statements or answers on this application change prior to delivery of the policy.

5. My statements and answers in this application must continue to be true as of the date I receive the policy.

6. No Producer is authorized to make or modify contracts or insurance policies on Pacific Life's behalf.

7. No Producer may alter the terms of this application, the TIA, or the policy, nor can the Producer waive any of Pacific Life's rights or requirements.

8. No representation is made that, based on information provided in the application, a particular premium rate, risk category or class will be offered to me. I will review my policy and ask the producer or the Company about the specific premium and its class referenced in my policy.

9. The policy(ies) as applied for in this Application will meet my insurance needs and financial objectives based in part upon my age, income, net worth, tax and family status, and any existing insurance policies I own.

10. (APPLICABLE ONLY IF THE EMPLOYER OR AN EMPLOYER-CONTROLLED TRUST IS TO BE THE OWNER OF THIS POLICY) If insurance is being applied for on the life of any non-exempt employee, then such insurance is not prohibited by applicable state law.

### SIGNATURES

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (Not applicable in Oregon)

If you are signing on behalf of an entity, you represent that you are authorized to execute this document and to make the representations herein. If the entity is a corporation, you further represent that all requirements under applicable law and under the corporation's governing documents have been satisfied concerning the execution of this document, including the use of the corporate seal and number of signing officers.

If Insured or owner is under age 16, a signature of parent/guardian is required in place of the minor's signature.

Signed and Dated by the Applicant in:   Atlanta          GA        09/11/2008
                                          City            State     Date (mm/dd/yy)

The applicant is the party that initiates and applies for the policy.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION IS REQUIRED TO AVOID BACKUP WITHHOLDING.

X  Maria A. Gordillo   TRUSTEE
Applicant's signature, always required & Title, if corporation, trust or business entity

| Applicant's Name: First | MI | Last | (suffix) | Relationship To Proposed Insured |
|---|---|---|---|---|
| MARIA | A. | GORDILLO | | TRUSTEE |

X _____     X _____
Proposed Insured's Signature, if other than Applicant     Proposed Additional Insured's Signature, if applicable

X _____     X _____
Owner's Signature, if other than Applicant or Insured & Title, if corporation, trust or business entity     Additional Owner's Signature & Title, if applicable

If a corporation or business entity, indicate name below. The signature and title of any authorized representative other than the Proposed Insured(s) is required. If a trust, all required trustees must sign according to the trust agreement.

Corporation or Business Entity's Name, if applicable

### PRODUCER'S CERTIFICATION

I certify that I have fully and accurately recorded the information supplied in the application.

X _____        | Gordillo Producer's Name: First | MI | Last | (suffix) |
Soliciting Producer's Signature   | Eugene | E. | Hutchins | |

AXGLOW                           Page 16                    16-27440-06  01/2008

GORDILLO 0097

JUDD  070497

04/19/2008  07:31    5516274928                                    **PQD**        PAGE  03

HE MAIL SERVICES

**PACIFIC LIFE INSURANCE COMPANY** 2008 FEB 13  PM12: 02        PCHG NONHD
Life Insurance Operations Center
P O Box 2340 • Omaha, NE 68103-2340
(800) 247-7787 • fax (949) 462-3584          **PACIFIC LIFE**
www.Pacificlife.com

## APPLICATION, PART II – NON-MEDICAL

| SECTION A      COMPLETE ON PROPOSED INSURED (AGE 16 OR OVER) | | | |
|---|---|---|---|
| 1. Name: First   Erwin     MI  A.   Last  Collins | | 2a. Date of Birth (mm/dd/yy) 09/15/1933 | 2b. Height 6ft 1   2c. Weight 247 lbs |

3. a. Name and address of physician or practitioner last visited:
Dr. Charles Robinson 1800 Old Weisgarber Rd. Knoxville, TN 37909

b. Date: 09/2007   c. Reason consulted: Regular Check Up

|  | Yes No | Details of "Yes" answers. (Identify question, and include diagnosis, dates, duration, and names and addresses of all attending physicians and medical facilities.) Use an additional sheet if necessary |
|---|---|---|
| d. Did any symptoms prompt consultation? | ☐ ☒ | |
| e. Was any treatment given or medication prescribed? | ☐ ☒ | 4.d) High blood pressure, diagnosed by Dr. Robinson, controlled w/ verapamil |
| 4. To the best of your knowledge and belief, during the past 10 years, have you had, or been told that you had, or been treated by a member of the medical profession for: | | |
| a. Disorder of the eyes, ears, nose, or throat? | ☐ ☒ | |
| b. Dizziness, fainting, convulsions, headaches, speech defect, paralysis or stroke, or mental or nervous disorder? | ☐ ☒ | 4.f) Diagnosed w/ BPH (Benign prostatic hypertrophy) in 2001 by Dr. Eric Nicely 9880 Park West Blvd., Ste 808 Knoxville, TN 37932. Treated by microwave turp. |
| c. Hoarseness or cough, blood spitting, asthma, pneumonia, emphysema, tuberculosis, or other respiratory system disorder? | ☐ ☒ | |
| d. Chest pain, high blood pressure, rheumatic fever, murmur, heart attack, or other disorder of the heart or blood vessels? | ☒ ☐ | |
| e. Jaundice, intestinal bleeding, ulcer, colitis, diverticulitis, hepatitis or other disorder of the liver, gallbladder, stomach, or intestines? | ☐ ☒ | |
| f. Sugar, albumin, or blood in urine, venereal disease, stone or other disorder of kidney, bladder, prostate, breasts or reproductive organs? | ☒ ☐ | 5.b) See 4.d above. |
| g. Diabetes, thyroid, or other endocrine disorder? | ☐ ☒ | |
| h. Neuritis, sciatica, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ ☒ | 7.a) Has regular check ups w/ Dr. Robinson and Dr. Nicely |
| i. Cancer, cyst, tumor, or disorder of skin, blood, or lymph glands? | ☐ ☒ | |
| j. Any disorder of the immune system, including AIDS (Acquired Immuno Deficiency Syndrome) and ARC (AIDS-Related Complex)? | ☐ ☒ | 7.b) Normal bloodwork, labs and EKGs w/ regular check ups |
| 5. a. Have you within the past 5 years been a patient in a hospital, clinic, sanitarium, or other medical facility? | ☐ ☒ | |
| b. Are you now under regular medical observation or taking treatment? | ☒ ☐ | |
| 6. a. Except as prescribed by a physician, have you used heroin, morphine, or other narcotic drugs in the last 10 years? | ☐ ☒ | |
| b. Except as prescribed by a physician, have you used cocaine, LSD, marijuana, or other hallucinogenic agents, or barbiturates, sedatives, tranquilizers, or any amphetamines in the last 5 years? | ☐ ☒ | |
| c. In the last 5 years have you received treatment for or joined an organization because of alcoholism or drug addiction? | ☐ ☒ | |
| 7. Other than as stated in answers above, have you within the past 5 years: | | |
| a. Had a checkup, consultation, illness, injury, or operation? | ☒ ☐ | |
| b. Had an electrocardiogram, blood test, other test or X-ray? | ☒ ☐ | |
| c. Been advised to have any diagnostic test, hospitalization, or surgery that was not completed? | ☐ ☒ | |
| g. Have you had any change in weight in the past year? | ☐ ☒ | |
| h. Have either of your parents, brothers, or sisters had diabetes, cancer, high blood pressure, heart disease or mental illness? | ☒ ☐ | |
| 10. Parents' Record | | |

| | LIVING | | DECEASED | |
|---|---|---|---|---|
| | AGE | STATE OF HEALTH | AGE AT DEATH | CAUSE OF DEATH |
| Father | | | 45 | Accident |
| Mother | | | 91 | Colon cancer |

The above statements are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be a part of the application. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Dated at Alcoma    GA  on 02/11/2008    [signature]

APP600-P2                    Page 1                    15-19536-08  10/2007

**GORDILLO 0098**

JUDD  070498

## NOTICE

The laws of the State of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family violence.

NFVIOL-GA

Required by Directive 00-EX-5

GORDILLO 0099

JUDD 070499



# PACIFIC LIFE

Pacific Life Insurance Company • 700 Newport Center Drive • Newport Beach, CA 92660

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- Death Benefit Payable On The Death Of The Insured While The Policy Is In Force
- Net Cash Surrender Value Payable Upon Surrender While The Policy Is In Force
- Flexible Premiums
- Adjustable Face Amount
- Non-Participating

15-26374-01

GORDILLO 0100

JUDD 070500

Document #13 of 19

## SECURITY AGREEMENT FOR BENEFICIARY INTEREST IN TRUST

This SECURITY AGREEMENT FOR BENEFICIARY INTEREST IN TRUST (the "Security Agreement") is entered into by Ann H. Collins, a Tennessee resident (the "Beneficiary"), in favor of Windsor Securities LLC, a Nevada LLC with its principal place of business located at 101 Convention Center Boulevard, Suite P-109, Las Vegas, NV 89109 (the "Lender"). It is further understood that the term "Trustee" used herein shall refer to the trustee of the Trust/Borrower in his or her capacity as Trustee.

### WITNESSETH:

WHEREAS, pursuant to the Life Insurance Premium Financing Agreement, dated the date hereof, entered into among the Lender, The Erwin A. Collins Family Insurance Trust-2008 (the "Trust" and "Borrower"), and Erwin A. Collins, a Tennessee resident (the "Insured") (including all annexes, exhibits and schedules thereto, and as from time to time amended, restated, supplemented or otherwise modified, (the "Financing Agreement"), Lender has agreed to make a loan to the Borrower for the amount specified in the Financing Agreement (the "Loan") as evidenced by that certain Promissory Note dated the date hereof by and between the Borrower and Lender (the "Note"), the proceeds of which shall be used by the Borrower to pay the Financed Insurance Premiums and Closing Fees on the Policy listed in Schedule 1 hereto;

WHEREAS, the Trust is the sole owner of the Policy;

WHEREAS, the Beneficiary is a beneficiary of the Trust; and,

WHEREAS, in order to induce the Lender to make the loan and extend credit to the Borrower as provided for in the Financing Agreement, the Beneficiary has agreed to grant a security interest in her entire beneficiary interest in the Trust to Lender in accordance with the terms and conditions of this Security Agreement.

NOW, THEREFORE, in consideration of the premises, promises, and the covenants hereinafter contained and to induce Lender to make loan and extend credit to Borrower as provided for in the Financing Agreement, Beneficiary and Trustee and Lender each agree as follows:

1.   Definitions.  Unless otherwise defined herein, all capitalized terms used in this Security Agreement have the meanings ascribed to such terms in the Financing Agreement.

2.   Grant of Security Interest  Beneficiary and Trustee each hereby grants, gives, conveys and pledges to Lender a first priority security interest in all of the Beneficiary's and Borrower's right, title and interest whether now owned or hereafter acquired and wherever located, in and to all of the following (collectively, the "Pledged Collateral"):

   (a)   the Beneficiary and Borrower's entire beneficiary interest in the Trust, all instruments, certificates or other securities or investment property evidencing such beneficial interest and all proceeds thereof; and

   (b)   the Beneficiary and Borrower's interest, if any, in and of and to the Policy and any related documents and security and the death benefit payable under the Policy and all proceeds thereof.

3.   Security for Obligations.  This Security Agreement secures, and the Pledged Collateral is security for, the timely and full performance of all of the covenants, obligations and duties of Borrower, as borrower under the Financing Agreement and the Note, and the prompt payment and in

- 1 -

**GORDILLO 0101**

JUDD  070501

Document #13 of 19

full when due, whether at stated maturity, by acceleration or otherwise, of all monetary obligations of any kind under or in connection with, the Financing Agreement and the Note (in each case, an "Obligation") and all Obligations of Borrower and Beneficiary to Lender, any affiliate of Lender and any successor or assign thereof, now or hereafter existing under this Security Agreement or any other agreement, understanding, commitment, or contract to which Borrower is a party with Lender, including, without limitation, all fees, costs and expenses whether in connection with collection actions hereunder (collectively, the "Secured Obligations"). *Time is of the Essence with respect to the performance of all and each of the Secured Obligations.*

4.    Perfection.  This Security Agreement may be perfected by the Lender, in Lender's sole discretion, filing one or more UCC-1 Financing Statements in accordance with the laws of the jurisdictions applicable to the Beneficiary and Borrower and the Pledged Collateral, and Lender taking any other action that may be necessary and/or reasonably requested by the Lender to perfect such Security Interest under all applicable law.  The Beneficiary and Trustee each hereby authorizes and acknowledges such filings or other action. After all amounts due by the Borrower under the Financing Agreement have been repaid in accordance with the terms of the Financing Agreement, the Lender shall release the Pledged Collateral, and shall terminate the UCC-1 Financing Statement(s) in accordance with the applicable laws.

5.    Representations and Warranties of Beneficiary and Borrower.  Beneficiary and Trustee each represents and warrants to Lender that:

(a)    Beneficiary is, as of the date hereof, the sole beneficiary of the Trust and owner of the Pledged Collateral free and clear of all liens, claims, security interests, pledges, rights of first refusal, charges, or encumbrances (a "Lien") thereon or affecting the title thereto, except for any Lien created by this Security Agreement;

(b)    Beneficiary has the right and requisite authority to grant a security interest, assignment and pledge of the Pledged Collateral to Lender as provided herein, and this Security Agreement and the security interest created by Beneficiary hereunder does not violate or breach the Irrevocable Trust Agreement dated February 1st, 2008 for the Trust (the "Trust Agreement") or any other document, instrument, mortgage or agreement to which the Beneficiary or Borrower is party or to which its assets are bound;

(c)    A true and correct copy of the Trust Agreement, including all amendments, supplements and other modifications thereto, has been previously delivered by Beneficiary or Borrower to Lender;

(d)    The Trust Agreement is a legal, valid and binding agreement, enforceable by Beneficiary and Trustee and Borrower, each, in accordance with its terms;

(e)    No consent, approval, authorization or other order or other action by, and no notice to or filing with, the trustee of the Trust any other person is required (i) for the grant of the security interest by Beneficiary or Borrower in the Pledged Collateral pursuant to this Security Agreement or for the execution, delivery or performance of this Security Agreement by Beneficiary and Trustee each, or (ii) for the exercise by Lender of any of its rights provided for in this Security Agreement or the remedies in respect of the Pledged Collateral pursuant to this Security Agreement;

(f)    The security interest created hereunder will create a valid first priority Lien in favor of Lender in the Pledged Collateral and all the proceeds thereof, securing the payment of the Secured Obligations, subject to no other Lien;

- 2 -

**GORDILLO 0102**

JUDD  070502

Document #13 of 19

(g)     This Security Agreement has been duly authorized, executed and delivered by Beneficiary and Trustee each and constitutes a legal, valid and binding obligation of Beneficiary and Trustee enforceable by Lender against Beneficiary and Trustee in accordance with its terms;

(h)     Without Beneficiary and Trustee's receipt of the prior written consent of Lender, neither Beneficiary nor Trustee will not sell, assign, transfer, pledge, or otherwise encumber any of its rights in or to the Pledged Collateral, or any distributions or payments with respect to the Pledged Collateral or grant a Lien in the Pledged Collateral; and

(i)     Beneficiary and Trustee each will, at its sole expense, promptly execute, acknowledge and deliver all such instruments and take all such actions as Lender from time to time may request in order to ensure to Lender the benefits of its Lien in and to the Pledged Collateral intended to be created by this Security Agreement, including the filing of any necessary financing statements or continuation statements, which may be filed by Lender with or (to the extent permitted by law) without the signature of Beneficiary and Trustee, and will cooperate with Lender, at Beneficiary's and Trustee's expense, in obtaining all necessary approvals and making all necessary filings under federal, state, local or foreign law in connection with such Lien or any sale or transfer of the Pledged Collateral.

(j)     Beneficiary and Trustee each hereby consents, acknowledges and agrees that Lender may transfer, sell or assign its interest hereunder and under the Financing Agreement to one or more third party finance providers to the Lender.

(k)     Beneficiary and Trustee each represent that until Loan and all obligations to Lender are satisfied in full, Trustee to ensure that the Policy will remain in full control of the Trust to satisfy the collateral Loan purpose.  The Policy will not be sold, gifted, distributed, or in any other way have its role as collateral for Loan compromised.  Any such action shall be considered a breach of Agreement and Event of Default.

(l)     Insured and Trustee agree that the Agent (registered representative) of the policy will not be changed or removed without prior notice and concurrence of Lender, such concurrence not unreasonably withheld.  Should the Agent (registered representative) be changed without the knowledge or consent of Trustee or due to facts beyond control of Trustee or Insured, Trustee and Insured shall immediately be notified.  Violation of either preceding sentence shall be a breach of Agreement and an Event of Default.

The representations and warranties of Beneficiary and Trustee each set forth in this Section 5 shall survive the execution, delivery and performance of this Security Agreement.

6.     Defaults and Remedies.

(a)     An "Event of Default" is defined under this Security Agreement to include any of (i) the failure of Beneficiary or Trustee to timely and fully comply with its obligations hereunder, (ii) the breach of any representation, warranty, covenant or other agreement or statement made by the Beneficiary or Trustee each hereunder or by the Borrower within the Financing Agreement or any document executed in connection therewith, (iii) the occurrence of any "Events of Default" under the Financing Agreement or any document entered into between the Borrower and the Lender in connection therewith, and (iv) the failure of Beneficiary or Trustee to be in timely and full compliance with each and all of its respective Secured Obligations.  Upon the occurrence of an Event of Default,

- 3 -

GORDILLO 0103

Document #13 of 19

Lender (personally or through an agent or assigns) is hereby authorized and empowered to take the following actions without a meeting: (i) transfer the Pledged Collateral and register it in Lender's name or in the name of its nominee; (ii) collect and receive all cash and other distributions made on or with respect to the Pledged Collateral; (iii) sell the Pledged Collateral in one or more sales after ten (10) days' notice of the time and place of any public sale or of the time at which a private sale is to take place (which notice Beneficiary and Trustee each agrees is commercially reasonable); and (iv) otherwise act with respect to the Pledged Collateral as though Lender was the outright owner thereof.

(b)     Beneficiary and Trustee each hereby irrevocably constitutes and appoints Lender and its assigns as the proxy and attorney-in-fact of Beneficiary and Trustee each, with full power of substitution to do so, and which appointment is coupled with an interest and shall remain in effect until there are no longer any Secured Obligations of Borrower under the Financing Agreement or other agreement with Lender entered into after the date hereof; provided, however, Lender shall not have any duty to exercise any such right or to preserve the same and shall not be liable for any failure to do so or for any delay in doing so. Any sale shall be made at a public or private sale at Lender's place of business, or at any place to be named in the notice of sale, either for cash or upon credit or for future delivery at such price as Lender may deem fair, and Lender may be the purchaser of the whole or any part of the Pledged Collateral so sold and hold the same thereafter in its own right free from any claim of Beneficiary or Trustee or any right of redemption (any such right being hereby waived or released). The Lender reserves the right to reject any and all bids at such sale which, in its discretion, it shall deem inadequate or unlikely to settle in a prompt and efficient manner. Demands of performance, except as otherwise herein specifically provided for, notices of sale, advertisements and the presence of property at sale are hereby waived by Beneficiary and Trustee each and any sale hereunder may be conducted by an auctioneer or any officer or agent of the Lender or its assigns.

(c)     If, at the original time or times appointed for the sale of the whole or any part of the Pledged Collateral, the highest bid, if there be but one sale, shall be inadequate to discharge in full all the Secured Obligations, or if the Pledged Collateral be offered for sale in fractions, if at any of such sales, the highest bid for a fraction offered for sale would indicate to Lender, in its discretion, that the proceeds of the sale of the whole of the Pledged Collateral would be unlikely to be sufficient to discharge all the Secured Obligations, Lender may, on one or more occasions and in its discretion, postpone any of said sales by public announcement at the time of sale or the time of previous postponement of sale, and no other notice of such postponement or postponements of sale need be given, any other notice being hereby waived; provided, however, that any sale or sales made after such postponement shall be after ten (10) days' notice to Beneficiary and Trustee.

(d)     Beneficiary and Trustee each recognizes that Lender may be unable to effect a public sale of any or all the Pledged Collateral and may be compelled to resort to one or more private sales thereof. Beneficiary and Trustee each also acknowledges that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of such sale being private.

(e)     Beneficiary and Trustee each agrees to the maximum extent permitted by applicable law that following the occurrence of an Event of Default it will not at any time plead, claim or take the benefit of any appraisal, valuation, stay, extension, moratorium or redemption law now or hereafter in force in order to prevent or delay the enforcement of this Security Agreement, or the absolute sale of the whole or any part of the Pledged Collateral or the possession thereof by any purchaser at any sale here-under, and Beneficiary and Trustee each waives the benefit of all such laws to the extent he lawfully may do so. Beneficiary and Trustee each agrees that it will not interfere with any right, power and remedy of Lender provided for in this Security Agreement or now or hereafter existing at law or in equity or by statute or otherwise, or the exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies. No failure or delay on the part of Lender to

- 4 -

**GORDILLO 0104**

exercise any such right, power or remedy and no notice or demand which may be given to or made upon Beneficiary or Trustee by Lender with respect to any such remedies shall operate as a waiver thereof, or limit or impair Lender's right to take any action or to exercise any power or remedy hereunder, without notice or demand, or prejudice its rights as against Beneficiary or Trustee each in any respect.

(f)     Beneficiary and Trustee each further agrees that a breach of any of its covenants contained in this Section 6 will cause irreparable injury to Lender, that Lender shall have no adequate remedy at law in respect of such breach and, as a consequence, agrees that each and every covenant contained in this Section 6 shall be specifically enforceable by Lender against Beneficiary or Trustee each, and Beneficiary and Trustee each hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred under the Financing Agreement.

(g)     Application of Proceeds.  The proceeds of all sales and collections, and any other monies, the application of which is not otherwise provided for, shall be applied as follows:

FIRST, to the payment of the costs and expenses of such sale or sales and collections, and the compensation of Lender, and its counsel;

SECOND, to the payment of the obligations secured hereby in such order and manner as Lender, in its sole discretion, may determine, until such obligations are paid in full; and

THIRD, any surplus remaining shall be paid to Beneficiary or Trust.

(h)     Certain Additional Waivers.  Beneficiary and Trustee each waives any defense based on the discharge of the Borrower by operation of law notwithstanding any intervention or omission by Lender and notwithstanding the provisions of Section 2825 of the California Civil Code.  Until all indebtedness and obligations secured hereunder have been fully satisfied: (i) Neither Beneficiary nor Trustee shall not have any right of subrogation, and Beneficiary and Trustee each waives, to the fullest extent permitted by law, all rights and benefits under Section 2848 of the California Civil Code and any right to enforce any remedy which Lender now has or may hereafter have against Beneficiary or Trustee in respect of the obligations and indebtedness secured hereunder; and (ii) Beneficiary and Trustee each waives (a) any benefit of, and any right to participate in, any security, whether real or personal property, now or hereafter held by Lender for the Secured Obligations, and (b) to the fullest extent permitted by law, all rights and benefits under Sections 2849 and 2850 of the California Civil Code.

7.     [Intentionally Omitted.]

8.     Termination Date.  This Security Agreement shall automatically terminate upon the Loan having been fully paid and performed and the Note extinguished.

9.     Waiver.  No delay on Lender's part in exercising any power of sale, Lien, option or other right hereunder, and no notice or demand which may be given to or made upon Beneficiary or Trustee each by Lender with respect to any power of sale, Lien, option or other right hereunder, shall constitute a waiver thereof, or limit or impair Lender's right to take any action or to exercise any power of sale, Lien, option, or any other right hereunder, without notice or demand, or prejudice Lender's rights as against Beneficiary or Trustee in any respect.

10.     Assignment.  Lender may assign, endorse or transfer any instrument evidencing all or any part of the Secured Obligations and such assignee shall be entitled to the benefits of this Security Agreement.

- 5 -

GORDILLO 0105

JUDD 070505

11.     Lien Absolute.   All rights of Lender hereunder, and all duties, rights, covenants and obligations of Beneficiary or Trustee each hereunder, shall be absolute and unconditional irrespective of:

    (a)     any lack of validity or enforceability of the Financing Agreement, any other related document or any other agreement or instrument governing or evidencing any Secured Obligations;

    (b)     any change in the time, manner or place of payment of, or in any other term of, all or any part of the Secured Obligations, or any other amendment or waiver of or any consent to any departure from the Financing Agreement, any other related document or any other agreement or instrument governing or evidencing any Secured Obligations;

    (c)     any exchange, release or non-perfection of any other Pledged Collateral, or any release or amendment or waiver of or consent to departure from any guaranty, for all or any part of the Secured Obligations;

    (d)     the insolvency of Beneficiary or Trustee each; or

    (e)     any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower, the Beneficiary or Trustee or any affiliate of the Borrower or the Beneficiary or Trustee.

12.     Modifications.   Beneficiary and Trustee each consents and agrees that Lender may at any time, or from time to time, in its discretion:

    (a)     renew, extend or change the time of payment, and/or the manner, place or terms of payment of all or any part of the Secured Obligations; and

    (b)     exchange, release and/or surrender all or any of the Pledged Collateral (including the Pledged Collateral), or any part thereof, by whomsoever deposited, which is now or may hereafter be held by or on behalf of Lender in connection with all or any of the Secured Obligations, all in such manner and upon such terms as Lender may deem proper, and without notice to or further assent from Beneficiary or Trustee, it being hereby agreed that Beneficiary and Trustee each shall be and remain bound upon this Security Agreement, irrespective of the value or condition of any of the Pledged Collateral, and notwithstanding any such change, exchange, settlement, compromise, surrender, release, renewal or extension, and notwithstanding also that the Secured Obligations may, at any time, exceed the aggregate principal amount thereof set forth in the Financing Agreement, or any other agreement governing any Secured Obligations. Beneficiary and Trustee each hereby waives notice of acceptance of this Security Agreement, and also presentment, demand, protest and notice of dishonor of any and all of the Secured Obligations, and promptness in commencing suit against any party hereto or liable hereon, and in giving any notice to or of making any claim or demand hereunder upon Beneficiary or Trustee. No act or omission of any kind on Lender's part shall in any event affect or impair this Security Agreement.

13.     Reinstatement.   This Security Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Beneficiary or Borrower for liquidation or reorganization, should Beneficiary or Borrower become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of Beneficiary or Borrower's assets, and shall continue to be effective or be reinstated, as the case may

- 6 -

GORDILLO 0106

be, if at any time payment and performance of the Secured Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Secured Obligations, whether as a "voidable preference", "fraudulent conveyance", or otherwise, all as though such payment or performance had not been made. In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Secured Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

14.    Miscellaneous.

(a)    Lender may execute any of its duties hereunder by or through agents or employees and shall be entitled to advice of counsel concerning all matters pertaining to its duties hereunder.

(b)    Beneficiary and Trustee each agrees promptly to reimburse Lender and its assigns for actual out-of-pocket expenses, including, without limitation, reasonable counsel fees, incurred by Lender in connection with the administration and enforcement of this Security Agreement.

(c)    Neither Lender, nor any of its respective officers, directors, employees, agents, counsel or assigns shall be liable for any action lawfully taken or omitted to be taken by it or them hereunder or in connection herewith, except for its or their own gross negligence or willful misconduct as finally determined by a court of competent jurisdiction.

(d)    This Security Agreement shall be binding upon Beneficiary and Trustee each of their successors and permitted assigns (including a debtor-in-possession on behalf of Beneficiary or Borrower each), and shall inure to the benefit of, and be enforceable by, Lender and its successors and assigns and none of the terms or provisions of this Security Agreement may be waived, altered, modified or amended except in writing duly signed for and on behalf of Lender and Beneficiary or Borrower, with an express statement in such writing that it is intended as an amendment, waiver or modification of the provisions of this Security Agreement.

15.    Severability.  If for any reason any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect those portions of this Security Agreement which are valid.

16.    Notices.  All notices and other communications required or permitted hereunder shall be given in writing and shall be deemed effectively given (a) upon delivery, when delivered personally against receipt therefore, (b) upon delivery when sent by certified mail, postage prepaid and return receipt requested, (c) upon transmission, when transmitted by telecopier, facsimile, telex or other electronic transmission method, provided that receipt is confirmed and notice is sent by certified mail, postage prepaid and return receipt requested, or (d) upon delivery, when sent by Federal Express or other nationally recognized overnight delivery service:

(a)    If to Lender, at:    Windsor Securities LLC
c/o Steven Prusky
25 East Athens Avenue
Ardmore, PA 19003
Telephone: 610-642-3100
Facsimile: 610-642-9709

- 7 -

GORDILLO 0107

JUDD 070507

Document #13 of 19

(b)   If to Beneficiary, at:   Ann H. Collins
331 Suburban Road
Knoxville, TN 37923
Telephone: 865-691-3329
Facsimile: n/a

(c)   If to Trustee, at:   Marla A. Gordillo
346 Crestview Circle
Roswell, GA 30075
Telephone: 770-375-9266
Facsimile: n/a

17.   Entire Agreement. This Security Agreement, the Financing Agreement and those documents executed in connection therewith constitute the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior written and oral agreements, arrangements and discussions with respect thereto. No course of conduct, course of dealing, course of performance or trade usage, shall be used to supplement or modify any terms or conditions of this Security Agreement.

18.   Governing Law. This Security Agreement and all the rights, covenants, duties and obligations created hereunder and any remedy at law or in equity sought by either party hereto in connection with this Security Agreement shall be governed by, and construed, enforced and interpreted solely in accordance with, the laws of the State of California without any application of its conflicts or choice of laws principles or rules. The Beneficiary and Lender acknowledge and agree that this Security Agreement is being executed and delivered in the State of California and the loan being made by Lender to Borrower is being contemplated and performed in the State of California.

19.   Binding Effect. This Security Agreement shall be binding upon, enforceable against, and inure to the benefit of each of the parties hereto and their respective permitted successors and assigns.

20.   Dispute Resolution. EACH PARTY HERETO AGREES THAT ANY AND ALL DISPUTES ARISING IN CONNECTION WITH THIS SECURITY AGREEMENT SHALL BE RESOLVED AS AGREED IN SECTION 7.11 OF THE FINANCING AGREEMENT.

21.   Headings. The section headings used in this Security Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

22.   Counterparts. This Security Agreement may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

23.   Limitation on Liability of Managers. In no event shall the Managing Member of the Lender's General Partner be liable to any Person for the representations and obligations of the Lender under this Security Agreement.

24.   Effective Date. This instrument shall be deemed effective as of the Financing Date, as such term is defined in the Financing Agreement.

- 8 -

JUDD 070508

**GORDILLO 0108**

Document #13 of 19

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly executed under seal as of this 15 day of April, 2008

**BENEFICIARY:**
Ann H. Collins

By: _Ann H. Collins_

Name: Ann H. Collins

Title: Spouse

Place of execution:

*Acknowledged by:*

**TRUST:**
The Erwin A. Collins Family Insurance Trust-2008

By: _Maria Ana Gordillo_,
Name: Maria A. Gordillo, Trustee

Place of execution: Atlanta, GA

**LENDER:**
Windsor Securities LLC

By: _____

Name: Steven Prusky

Title: Director/President MFIP (Delaware)

- 9 -

**GORDILLO 0109**

JUDD 070509

Document #13 of 19

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly executed under seal as of this 15 day of April , 2008

**BENEFICIARY:**
Ann H. Collins

By: _Ann H. Collins_

Name: _Ann H. Collins_

Title: _Spouse_

Place of execution:

*Acknowledged by:*

**TRUST:**
**The Erwin A. Collins Family Insurance Trust-2008**

By: _Maria Ana Gordillo_
Name: **Maria A. Gordillo, Trustee**

Place of execution: _Atlanta, GA_

**LENDER:**
Windsor Securities LLC

By: _____

Name: **Steven Prusky**

Title: **Director/President MFIP (Delaware)**

- 9 -

**GORDILLO 0110**

JUDD  070510

Document #13 of 19

### SCHEDULE I

### POLICY

| Insurer | Policy Issue Date | Policy Number | Annual Premium | Death Benefit |
|---------|-------------------|---------------|----------------|---------------|
| Pacific Life | March 4, 2008 | VF51701320 | $101,667 3rd year on | $2,000,000.00 |

1604823 v01

**GORDILLO 0111**

JUDD 070511

Document #14 of 19

## SALES ILLUSTRATION FOR THE POLICY

### *TO BE PROVIDED BY THE TRUSTEE AND ATTACHED HERETO*

By signing below, I do hereby affirm that the attached illustration corresponds to the policy being premium financed pursuant to *Life Insurance Premium Financing Agreement Among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins*, and that it was recently provided the insurance company issuing such Policy.

_Maria Ana Gordillo_, Trustee          Date: _April 15, 2008_
The Erwin A. Collins Family Insurance Trust-2008

GORDILLO 0112

JUDD 070512


**PACIFIC LIFE**

Versa Flex VI - Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

Producer:
Eugene Houchins
4243 Dunwoody Club Dr Suite 215
Atlanta, GA 30350

## Basic Illustration Narrative Summary

| | | |
|---|---|---|
| Proposed Insured | Proposed Insured: | Erwin Collins |
| | Age: | 74 |
| | Gender: | Male |
| | Risk Classification: | Preferred Nonsmoker |

The assumed risk classification has a material impact on any illustration. Your actual risk classification will ultimately depend on the outcome of processing the submitted life insurance application and may vary from what is shown on this illustration. If so, you will receive a revised illustration with your life insurance policy.

| | | |
|---|---|---|
| Summary of Proposed Initial Coverage | Initial Total Face Amount: | $2,000,000 |
| | Death Benefit Option: | Level |
| | Premium Frequency: | Annual |
| | | Accelerated Living Benefit Rider, Short Term No-Lapse Guarantee Rider, Overloan Protection Rider, Conversion Rider |

Above is a brief summary of the proposed coverage shown in this illustration. Additional information about the assumptions, coverage and product information is in the following sections. Any illustrated policy changes that require a request from you are detailed in the Future Action Required of Policyowner section.

**About Us**

For more than 135 years, Pacific Life Insurance Company has been serving the needs of individuals through our life insurance products, and our commitment to our policyholders has always been our top priority. From offering cutting-edge life insurance products to innovative services, our goal is to provide our policyowners with the best we can offer. For information about Pacific Life, including its current financial strength ratings from A.M. Best, Fitch Ratings, Standard & Poor's, and Moody's, visit the company Web site at www.PacificLife.com. Our principal office is located at 700 Newport Center Drive, Newport Beach, CA, 92660.

Pacific Life Insurance Company is licensed to issue individual life insurance and annuity products in all states except New York. Product availability and features may vary by state.

**About This Illustration**

This is an illustration only. An illustration is not intended to predict actual performance. Interest rates, dividends and values set forth in the illustration are not guaranteed, except for those items clearly labeled as guaranteed.

The sale or liquidation of any stock, bond, individual retirement account (IRA), certificate of deposit (CD), mutual fund, annuity, or other asset to fund the purchase of this product may have tax consequences, early *Withdrawal* penalties, or other costs or penalties as a result of the sale or liquidation. You may wish to consult independent legal or financial advice before selling or liquidating any assets, prior to the purchase of the life insurance product being solicited.

This is a life insurance illustration and not a contract. The illustration is intended to demonstrate the impact of policy charges on the policy cash value and *Death Benefit* under a set of assumptions. This illustration is not intended to predict actual performance. Please review the illustration and its assumptions. You may request illustrations with different assumptions to better understand how the policy charges affect the policy cash value and *Death Benefit.* You should consider a periodic review of your coverage with your producer.

This illustration assumes you, the applicant, will also will be the owner.

"Guaranteed" columns reflect maximum policy charges and a 3.00% minimum credited interest rate.

Key terms are italicized throughout this illustration. Please see the Key Terms section for definitions.

**How The Policy Works**

Versa Flex VI is a universal life insurance policy that provides a *Death Benefit* which will be paid to the beneficiaries in the event of the proposed insured's death. Your policy may also provide additional benefits through policy riders.

The policy and any riders attached to it have eligibility criteria that must be met. These criteria consist of various factors including, but not limited to, *Age,* risk classification and form of ownership. Policy and rider features and availability may

IONVL-1A                                   Producer: Eugene Houchins                                   For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660
10.1.2943.24397D  Run: 4/15/2008 4:32 PM                 VF6 - CVAT SG - NonGl                        Page: 1 of 9

GORDILLO 0113

JUDD 070513



vary by state.

You have the flexibility to choose the amount and frequency of your premium payments, within limits. Once a premium payment is made, a premium load is deducted and the net premium payment is added to your policy's *Accumulated Value*. Fees and charges are deducted and interest credits are added to your policy's *Accumulated Value* each month. In the event of surrender, your policy's *Accumulated Value* may be reduced by a surrender charge. You may take distributions of the *Cash Surrender Value* in the form of *Policy Loans* or *Withdrawals* subject to certain limitations defined in the policy. A policy issued and maintained as described in this illustration may cause tax implications. Please see the Tax Information section for more detail.

**Assumptions About Non-Guaranteed Elements**

The policy includes elements that may be changed at Pacific Life's discretion but cannot be less favorable to you than the policy's guarantees. These are referred to as the policy's "non-guaranteed elements" and include the cost of insurance charges, coverage charges, premium load and interest rates. This illustration's non guaranteed values are calculated using current cost of insurance charges, current coverage charges, current premium load and a non-guaranteed interest rate. This illustration assumes that the illustrated non-guaranteed elements will never be changed; however, change is likely to occur and actual results may be more or less favorable than those shown.

This illustration reflects certain assumptions about how you will use the policy's options. Over time, the policy's actual non-guaranteed elements, and perhaps your actual use of the policy's options are likely to vary from the assumptions used in this illustration. For these reasons, actual policy performance will either be more or less favorable than shown in this illustration.

All non-guaranteed elements are subject to change at Pacific Life's discretion. The illustration assumptions reflected here are not estimates of future values of these elements. Actual results could be more or less favorable.

**Death Benefit**

The amount that will be paid upon the proposed insured's death will be based on the then current *Total Face Amount*, and the death benefit option you have elected, less the amount of any outstanding *Policy Debt*. The *Total Face Amount* is provided through the policy's basic coverage and may also be provided through Annual Renewable Term rider (ART), Accounting Benefit Rider (ABR) and Cash Value Enhancement Rider (CVER) depending on availability. Obtaining *Death Benefits* through a combination of basic, ART, ABR or CVER coverage may be more economical than obtaining the same *Death Benefits* through basic coverage alone, because ART, ABR and CVER coverage have different current and guaranteed charges than basic coverage.

When deciding whether or not to add ART, ABR or CVER coverage to your policy, there are several factors to consider. These factors include, but are not limited to the following:

- The current cost of ART coverage is generally less than the current cost of basic, ABR and CVER coverage.
- The guaranteed maximum cost of ART coverage is generally greater than the guaranteed maximum cost of basic, ABR and CVER coverage.
- Basic, ABR and CVER coverage have the option to guarantee the current cost of insurance rates for an initial period.
- For the same amount of coverage, combining basic coverage with ART coverage may improve the *Accumulated Value*.
- Using a combination of basic coverage with ABR or CVER will result in higher early year *Cash Surrender Value* when basic coverage is used alone or in combination with ART coverage.
- When combining basic coverage with ABR or CVER coverage long term *Cash Surrender Value* will be lower than that provided with basic coverage only.
- Unlike basic , ABR and CVER coverage, ART coverage is not eligible for the benefits provided by the Conversion Rider and the Accelerated Living Benefits Rider. See the illustrated Riders section for more information on these riders.
- Using a combination of basic coverage with ABR or CVER may result in higher producer compensation than when basic coverage is used alone or in combination with ART coverage.

Your producer can provide you with additional illustrations showing the effects of different proportions of basic, ART, ABR and CVER coverage to help you make your decision. This illustration does not include ART, ABR, or CVER coverage. The following amounts of basic coverage are illustrated:

| Basic Coverage Face Amount | Basic Coverage Face Amount | | |
|---|---|---|---|
| | Start Year | End Year | Amount |
| | 1 | 26 | 2,000,000 |

IONVL-1A

Producer: Eugene Houchins

For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D  Run: 4/15/2008 4:32 PM

VF6 - CVAT SG - NonGI

Page: 2 of 9

GORDILLO 0114

JUDD 070514

 **PACIFIC LIFE**

Versa Flex VI - Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

| Initial Total Face Amount | Coverage Type | Face Amount |
|---|---|---|
| | Initial Basic Coverage | $2,000,000 |
| | Initial Total Face Amount | $2,000,000 |

**Death Benefit Option**  You may select one of the following death benefit options under your policy:
(A) a level benefit equal to the face amount ,
(B) a benefit equal to the sum of the face amount and the *Accumulated Value*,
(C) a benefit equal to the sum of the face amount and the total amount of premiums paid (less any *Withdrawals*).

| | Death Benefit Option | |
|---|---|---|
| Start Year | End Year | Option |
| 1 | 26 | Level (A) |

The *Death Benefit* column reflects 1) any future changes described in the previous tables; 2) the death benefit option and 3) any additional amounts necessary for the illustrated policy to qualify as life insurance.

**Premium**  Illustrated periodic premium payment frequencies and amounts are indicated in the following table. This illustration assumes premium payments will be made at the beginning of each premium payment interval.

| | Illustrated Premiums | | | |
|---|---|---|---|---|
| Start Year | End Year | Amount | Frequency | Annualized Amount |
| 1 | 26 | 99,750.00 | Annual | 99,750.00 |

The actual premium amounts and number of years of premium payments needed to maintain the illustrated policy benefits will depend on the policy's non-guaranteed elements and on your actual use of the policy's options. As with any other deviations from the assumptions of this illustration, if your actual premium payments occur in different amounts or different times than illustrated, the illustrated policy values and benefits may not be achieved and may increase the likelihood that the policy may lapse.

We reserve the right to require evidence of insurability, acceptable to us, for any premium payments that would result in an immediate increase in the *Death Benefit* that is greater than the increase in *Accumulated Value*.

A premium of $181,132.60 paid at the beginning of each policy year until the insured's *Age* 100 will guarantee the initial Total Face Amount if there are no distributions or coverage changes made.

**Charges**  We will deduct charges from the *Accumulated Value* monthly to cover expenses and the cost of providing the policy benefits. If the *Accumulated Value* less any *Policy Debt* is not sufficient to cover these monthly charges, you will need to pay additional premium at that time to keep the policy in force.

The current cost of insurance rates that are used to calculate non-guaranteed policy charges for the basic coverage and for any Accounting Benefit Rider are guaranteed for a period of 5 years after issue. They are not guaranteed after the guaranteed period and are subject to change at Pacific Life's discretion. The current cost of insurance rates will never exceed the maximum cost of insurance rates, which are reflected in the guaranteed columns.

**Surrender Charge**  At any time, you may surrender your policy and receive an amount equal to the *Accumulated Value* less a surrender charge and any *Policy Debt*.

The surrender charge on the initial basic coverage face amount (and on any later increase in face amount) will be level for the first 12 months after issue (or after an increase), and then grade down 0.9259% of the original amount each month to zero in 10 years.

**Interest Rate**  At the time this illustration was prepared, the current declared interest rate applicable to this product was 5.60%. The declared interest rate in effect when the policy is issued is guaranteed for the first policy year. After the first policy year, non-guaranteed interest credits are based on a declared interest rate. The current declared interest rate is set at Pacific Life's discretion and is likely to change but will never be less than the guaranteed rate of 3.00%. At the end of each policy month, we will credit interest to the *Accumulated Value*. The table below shows the hypothetical declared interest rates used in this illustration for calculating non-guaranteed interest credits on the unloaned *Accumulated Value*.

IONVL-1A

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D  Run: 4/15/2008 4:32 PM        VF6 - CVAT SG - NonGI

Producer: Eugene Houchins

For: Erwin Collins

Page: 3 of 9

GORDILLO 0115

JUDD 070515

 **PACIFIC LIFE**

Versa Flex VI - Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

Illustrated Interest Rate

| Start Year | End Year | Rate |
|---|---|---|
| 1 | 26 | 5.60% |

Starting in policy year 21 we currently credit additional non-guaranteed interest at a rate of 0.20% per year. This additional interest is reflected in this illustration, but is not guaranteed.

**Available Riders**

The following riders may be available with your policy provided the eligibility criteria are met. Rider features and availability may vary by state.

Rider Name (Form Series)

Accelerated Living Benefits Rider (R06ALB)
Accidental Death Benefit (R84-AD)
Accounting Benefit Rider (R04ABG)
Annual Renewable Term Rider (R06ARV)
Cash Value Enhancement Rider (R05CVV)
Children's Term Rider (R84-CT)
Conversion Rider (R05CON)
Disability Benefit Rider (R84-DB)
Flexible Duration No-Lapse Guarantee Rider (R03FNL)

Guaranteed Insurability Rider (R93-GI)
Immediate Family Member Term Rider (R98-SPT)
Overloan Protection Rider (R05OL2)
Owner Waiver of Charges Rider (R84-OWC)
Payor Waiver of Charges (R84-PWC)
Short Term No-Lapse Guarantee Rider (R02NL5)
Waiver of Charges Rider (R84-WC)

**Illustrated Riders**

The benefits and costs of the riders listed below are reflected in this illustration. A brief description of the riders requested follows. You should discuss with your producer the benefits and costs of each rider, and whether other riders might be appropriate for you. Unless otherwise noted, costs are deducted monthly from the *Accumulated Value*. Also, see the Tax Information section of this illustration for more information relating to this policy, including any riders.

Accelerated Living Benefit Rider — Gives you access to a portion of the policy's basic coverage face amount if the person insured by the policy has been diagnosed with a terminal illness resulting in a life expectancy of twelve months or less. In some states, the rider's benefit will be available even if the proposed insured's life expectancy is longer than twelve months. Benefits are subject to state requirements, may be subject to taxation and may impact eligibility for Medicaid or other government benefits. Please refer to the Accelerated Living Benefit Rider Disclosure Statement and consult your legal and tax advisor for more information. This rider is provided at no additional cost. (Form Series R06ALB.)

Conversion Rider — Anytime during the 8th policy year, while your policy is in-force, you may convert your Versa Flex VI policy for a Pacific Life permanent life insurance policy that we make available for such conversions at that time. The face amount of the new policy equals the current basic coverage plus any Accounting Benefit Rider or Cash Value Enhancement Rider for your Versa Flex VI policy. No evidence of insurability is required for the conversion. This conversion right is subject to state availability. This rider is provided at no additional cost. (Form Series R03CON.)

Short-Term No-Lapse Guarantee (STNLG) — Provides that, while the STNLG is in effect (up to the end of the STNLG guarantee period), your policy will not lapse or enter the grace period even if the policy's *Net Accumulated Value* is zero. The STNLG is in effect if the minimum requirements are met, which includes the ongoing payment of the STNLG premium during the guarantee period. If the policy is being maintained solely by the STNLG premium you will be foregoing the advantage of building *Accumulated Value*.

Initial STNLG Premium

| Annually | Semi-Annually | Quarterly | Monthly |
|---|---|---|---|
| 101,646.69 | 51,321.66 | 25,786.63 | 8,623.65 |

Guarantee Period          10 years from issue

Your STNLG premium requirements will be higher to reflect distributions or face amount increases. Any benefit changes illustrated after the first policy year may result in a corresponding change in the STNLG premium. Any benefit changes illustrated after the first policy year are not reflected in the previous table.

If the STNLG has become ineffective, it may be reinstated by paying the catch-up amount. The catch-up amount will be quoted upon request.

If the *Net Accumulated Value* becomes less than or equal to zero and if the STNLG is in effect, the uncollected monthly deductions are accumulated with interest at an annual rate of 4%. To keep your policy active at the end of the STNLG period, you will need to make a net premium payment at least equal to the uncollected monthly deductions plus accrued interest and you will need to continue to make future premiums that will be significantly higher than the STNLG premium you were paying.

IONVL-1A

Producer: Eugene Houchins

For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D Run: 4/15/2008 4:32 PM

VF6 - CVAT SG - NonGI

Page: 4 of 9

GORDILLO 0116

JUDD 070516



**PACIFIC LIFE**

Versa Flex VI – Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

This rider is provided at no additional cost. (Form Series R02NL5.)

**Tax Information** This material is not intended or written by Pacific Life to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. This material is written to support the promotion or marketing of the transaction(s) or matter(s) addressed by this material. Any taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

Although the information contained in this illustration is based on our understanding of the Internal Revenue Code (IRC) and on certain tax and legal assumptions, it is not intended to be tax or legal advice. Such advice should be obtained from your own counsel or other tax advisor.~

**Tax Rate** The following tax rates have been used to estimate your taxes, if any, due to a *Policy Loan* or *Withdrawal.*

|  | Assumed Income Tax Rate | |
| --- | --- | --- |
| Start | End | Rate |
| 1 | 26 | 31.00% |

**Death Proceeds** For federal income tax purposes, life insurance death benefits generally pay income tax-free to beneficiaries pursuant to IRC Sec. 101(a)(1). In certain situations, however, life insurance death benefits may be partially or wholly taxable. Situations include, but are not limited to: the transfer of a life insurance policy for valuable consideration unless the transfer qualifies for an exception under IRC Sec. 101(a)(2)( i.e. the "transfer- for- value rule"); arrangements that lack an insurable interest based on state law; and an employer-owned policy unless the policy qualifies for an exception under IRC Sec. 101 (j).

**Cash Value Accumulation Test** A life insurance policy will qualify as life insurance under IRC Section 7702 if it meets one of two alternative tests. This illustration uses the Cash Value Accumulation Test which requires that the *Accumulated Value* of the policy must not at any time exceed the net single premium which would be necessary to fund future benefits under the policy. Failure to qualify as life insurance will have adverse tax consequences.

**Modified Endowment Contract** As defined in IRC Section 7702A, a life insurance policy becomes a Modified Endowment Contract (MEC) if the cumulative premium payments (less nontaxable *Withdrawals* and nontaxable cash dividends) exceed, at any time during a Seven-Pay-Test Period, the cumulative total of the Seven-Pay-Test Premiums in that Period. The Seven-Pay-Test Period starts when a policy is issued and runs for seven years, but it will start over and run for seven more years any time there is a *"Material Change"* in the terms or benefits of the policy. Any time the Seven-Pay-Test Period starts over, a new Seven-Pay Premium is determined and cumulative premiums are measured from that point forward against the new cumulative limit.

Generally, once a policy is a MEC, it is always a MEC. However, if premiums in excess of the Seven-Pay Premium limit are paid, the MEC status can be avoided if such premium payments, plus interest (which is taxable), are returned to you within 60 days after the end of the 'measuring year' in which the premium payment was made.

Note that if the benefits of a policy are reduced the policy may be subject to "re-testing" with lower Seven Pay Premium limits based on the reduced benefits. Such "re-testing" of prior premiums can cause a policy to become a MEC. Before you reduce your policy benefits, you should confirm with us whether your policy would become a MEC.

**Taxable Income** Assuming the life insurance policy is not a "Modified Endowment Contract" ("MEC") as described above:
1. *Withdrawals* (and other distributions) are taxed under the "cost recovery rule" and are generally taxable only to the extent the *Withdrawal* exceeds the cost basis of the policy. Policy cost basis generally equals the gross premiums paid less prior untaxed *Withdrawals.*
2. However, *Withdrawals* in the first 15 policy years may be taxable in part or in full under IRC 7702(f)(7)(B) if they occur in connection with a reduction in benefits.
3. Further, when such a reduction in benefits has occurred during the first 15 policy years, it is possible that earlier *Withdrawals* (within the two years prior to the reduction in benefits) may be similarly taxable. This illustration does not reflect this "two years prior" taxation.
4. After 15 policy years, *Withdrawals* up to policy cost basis are not taxable.

If the life insurance policy is a MEC:
1. Distributions from a MEC, including *Withdrawals, Policy Loans,* and certain assignments, are taxed to the extent there is a gain in the policy and may be subject to additional penalties.
2. Further, distributions taken from a policy during the two years prior to the policy becoming a MEC will be subject to MEC rules in the year the policy became a MEC and may become taxable at that time. This illustration does not reflect this "two years prior" taxation.

Whether or not the life insurance policy is a MEC:
If a life insurance *Policy Loan* is still outstanding when a policy is surrendered or lapses, the *Policy Loan* is automatically repaid from policy values. This will result in taxable income to the extent the *Net Cash Surrender*

IONVL-1A

Producer: Eugene Houchins

For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D Run: 4/15/2008 4:32 PM

VF6 - CVAT SG - NonGl

Page: 5 of 9

GORDILLO 0117

JUDD 070517



**PACIFIC LIFE**

Versa Flex VI - Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

*Value* plus the amount of the repaid loan exceeds the cost basis of the policy. This potential tax is not reflected in any tax calculation(s) included in this illustration.

Premium Limits Summary  Initial Seven Pay Premium:          $220,648.56

When the *Death Benefit* is greater than the face amount due to *Accumulated Value* growth, payment of additional premium will be subject to approval.

Based on our understanding of the Internal Revenue Code a *policy issued and maintained consistent with the assumptions in this illustration would not be a MEC at issue or become one there after.*

Whether your policy might actually become a MEC depends on the timing and amounts of premium payments and *Withdrawals*, the policy's non-guaranteed elements, your actual use of the policy's options, and any policy changes made pursuant to your request.

Future Actions Required of  This illustration does not reflect any future changes that require a written request. However, if you want to make changes
Policyowner                 to your policy, you must request the change in writing.

**Key Terms**

Accumulated Value  The sum of premiums paid less all loads and expense charges, monthly deductions, and *Withdrawals* plus credited or accrued interest since the *Policy Effective Date*.

Age  The proposed insured's age on the birthday nearest the beginning of the policy year shown.

BOY  Beginning of the illustrated policy year.

Cash Surrender Value  The *Accumulated Value* minus any applicable surrender charge.

Death Benefit  The amount payable upon the proposed insured's death. The *Death Benefit* is always reduced by any outstanding *Policy Debt* and increased by any applicable rider benefits.

EOY  End of the illustrated policy year.

"Guaranteed" Columns  Reflect maximum policy charges and minimum credited interest.

"Illustrated" Columns  Reflect the assumptions about non-guaranteed elements.

"Intermediate" Columns  Reflect non-guaranteed elements, including charges and credits at rates that are halfway between the rates used in the "guaranteed" and "illustrated" columns.

Material Change  IRC 7702A describes the 7-Pay Test and also provides that a *Material Change* will cause the 7-Pay Test period to start over. A *Material Change* may occur when there is an increase in benefits, depending upon the amount of cumulative premiums paid into the policy at that time. In addition, a *Material Change* will occur if certain policy guarantees change (e.g. a change in rating class.)

Net Accumulated Value  *Accumulated Value* less *Policy Debt.*

Net Cash Surrender Value  *Cash Surrender Value* less *Policy Debt.*

Policy Debt  The sum of all outstanding *Policy Loans* plus accrued loan interest.

Premium Outlay  The sum of the premium payments you plan to make each year.

Total Face Amount  The basic coverage face amount plus the face amount of any Annual Renewable Term Rider, Accounting Benefit Rider or Cash Value Enhancement Rider covering the proposed insured.

**GORDILLO 0118**

JUDD  070518


**PACIFIC LIFE**

Versa Flex VI - Life Insurance Illustration
Flexible Premium Adjustable Life Insurance Policy
Form # P04VF5 - For Presentation in GA

Proposed Insured: Erwin Collins
Male, Age 74
Preferred Nonsmoker

Death Benefit Option = Level
Total Face Amount = $2,000,000
Premium Frequency = Annual

Producer:
Eugene Houchins
4243 Dunwoody Club Dr Suite 215
Atlanta, GA 30350

## Basic Illustration Tabular Detail and Statement of Policy Cost and Benefit Information

| Yr | Age | Premium Outlay (1) | Guaranteed Values (EOY) @ 3.00% | | | Non-Guaranteed Values (EOY) @ 5.60% | | |
|---|---|---|---|---|---|---|---|---|
| | | | Accumulated Value (2) | Cash Surrender Value (3) | Death Benefit (4) | Accumulated Value (5) | Cash Surrender Value (6) | Death Benefit (7) |
| 1 | 74 | 99,750 | 48,768 | 0 | 2,000,000 | 63,271 | 0 | 2,000,000 |
| 2 | 75 | 99,750 | 91,265 | 6,998 | 2,000,000 | 104,269 | 20,002 | 2,000,000 |
| 3 | 76 | 99,750 | 128,450 | 54,717 | 2,000,000 | 152,430 | 78,697 | 2,000,000 |
| 4 | 77 | 99,750 | 169,710 | 96,510 | 2,000,000 | 197,329 | 134,129 | 2,000,000 |
| 5 | 78 | 99,750 | 184,919 | 132,252 | 2,000,000 | 238,984 | 186,318 | 2,000,000 |
| 6 | 79 | 99,750 | 78,350 | 36,216 | 2,000,000 | 279,724 | 237,591 | 2,000,000 |
| 7 | 80 | 99,750 | 0 | 0 | 0 | 317,741 | 285,141 | 2,000,000 |
| 8 | 81 | 99,750 | 0 | 0 | 0 | 353,650 | 332,593 | 2,000,000 |
| 9 | 82 | 99,750 | 0 | 0 | 0 | 388,051 | 377,516 | 2,000,000 |
| 10 | 83 | 99,750 | 0 | 0 | 0 | 420,003 | 420,003 | 2,000,000 |
| Total | | 997,500 | | | | | | |
| 11 | 84 | 99,750 | 0 | 0 | 0 | 482,649 | 482,649 | 2,000,000 |
| 12 | 85 | 99,750 | 0 | 0 | 0 | 544,550 | 544,550 | 2,000,000 |
| 13 | 86 | 99,750 | 0 | 0 | 0 | 605,482 | 605,482 | 2,000,000 |
| 14 | 87 | 99,750 | 0 | 0 | 0 | 663,745 | 663,745 | 2,000,000 |
| 15 | 88 | 99,750 | 0 | 0 | 0 | 719,375 | 719,375 | 2,000,000 |
| 16 | 89 | 99,750 | 0 | 0 | 0 | 774,749 | 774,749 | 2,000,000 |
| 17 | 90 | 99,750 | 0 | 0 | 0 | 828,293 | 828,293 | 2,000,000 |
| 18 | 91 | 99,750 | 0 | 0 | 0 | 879,617 | 879,617 | 2,000,000 |
| 19 | 92 | 99,750 | 0 | 0 | 0 | 928,259 | 928,259 | 2,000,000 |
| 20 | 93 | 99,750 | 0 | 0 | 0 | 973,845 | 973,845 | 2,000,000 |
| Total | | 1,995,000 | | | | | | |
| 21 | 94 | 99,750 | 0 | 0 | 0 | 1,017,199 | 1,017,199 | 2,000,000 |
| 22 | 95 | 99,750 | 0 | 0 | 0 | 1,056,523 | 1,056,523 | 2,000,000 |
| 23 | 96 | 99,750 | 0 | 0 | 0 | 1,091,018 | 1,091,018 | 2,000,000 |
| 24 | 97 | 99,750 | 0 | 0 | 0 | 960,698 | 960,698 | 2,000,000 |
| 25 | 98 | 99,750 | 0 | 0 | 0 | 528,504 | 528,504 | 2,000,000 |
| 26 | 99 | 99,750 | ## | ## | ## | ## | ## | ## |
| Total | | 2,593,500 | | | | | | |

Insurance coverage will cease in year 7 based on guaranteed assumptions.  Insurance coverage will cease in year 26 based on illustrated assumptions.

A zero in the *Premium Outlay* column does not mean the policy is paid up.  Charges will continue to be deducted from the *Accumulated Value* as long as the policy remains in-force.  The actual premium amounts and number of years of premium payments that are needed to maintain the illustrated non-guaranteed policy benefits will depend on the policy's non-guaranteed elements and on your actual use of the policy's options.

IONVL-1A

Producer: Eugene Houchins

For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D  Run: 4/15/2008 4:32 PM

VF6 - CVAT SG - NonGI

**GORDILLO 0120**

JUDD 070520


**PACIFIC LIFE**

## Statement of Policy Cost and Benefit Information
## Summary of Coverage

Life Insurance Cost Information

| | Guaranteed | | Current | |
|---|---|---|---|---|
| Cost Index | 10 Year | 20 Year | 10 Year | 20 Year |
| Surrender @ 5% | 0.00 | 0.00 | 33.97 | 35.85 |
| Net Payment @ 5% | 0.00 | 0.00 | 49.88 | 49.88 |

An explanation of the intended use of these indices is provided in the life insurance buyer's guide.

**Important Notice**
Actual results will differ from the projections shown on the previous page if there is a change in the interest rates, cost of insurance rates or the timing and amount of your premium payments. The non-guaranteed amounts shown on the previous page are based on our current unloaned interest rate of 5.60%. We may change the current interest rate at any time but may not credit less than the guaranteed annual rate of 3.00%. We may change the current cost of insurance rates at any time but may not charge more than the guaranteed cost of insurance rates.

The tax status of this contract should be reviewed each year. For further information, contact the insurance company or your producer shown at the top of page one.

The projected values in this Statement of Policy Cost and Benefit Information include the costs and benefits of the basic coverage and any additional riders or benefits. In addition, all values are based on the plan of insurance as illustrated, including any face amount changes, option changes, withdrawals and policy loans. A Statement of Policy Cost and Benefit Information based on the policy as issued, without any policy changes, is available on request.

Type of Coverage
Basic Coverage:

**Benefit Amount**

Universal Life Insurance Rider

$2,000,000.00

Riders:

No-Lapse Guarantee

ICNVL-1A

Producer: Eugene Houchins

For: Erwin Collins

Pacific Life Insurance Company, 700 Newport Center Drive, Newport Beach, CA 92660

10.1.2943.24397D  Run: 4/15/2008 4:32 PM

VF6 - CVAT SG - NonGI

Page: 9 of 9

GORDILLO 0121

JUDD 070521

Document #15 of 19

## ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

**ASSIGNMENT.** For Value Received, *The Erwin A. Collins Family Insurance Trust-2008*, a Georgia Irrevocable Trust, its successors and assigns ("Owner"), hereby assigns, transfers, pledges, and grants all of Owner's claims, options, privileges, rights, titles and interests in, to and under the insurance policy or policies described below to *Windsor Securities LLC*, a Nevada LLC, its successors and assigns (herein called "Assignee"):

Policy No.: VF51071320          Issued by: Pacific Life ("Insurer")

Insured:   Erwin A. Collins ("Insured")

and any and all additions, renewals and supplementary contracts issued in connection therewith and any and all proceeds thereof (said policies and contracts and proceeds are hereinafter collectively referred to as the "Insurance Policy"), subject to all the terms and conditions of this Assignment of Life Insurance Policy as Collateral (this "Assignment").

This Assignment includes, without limitation, assignment of the following rights of Owner:

1.    The sole right to collect from Insurer the net proceeds of the Insurance Policy due to the death of the Insured or maturity of the Insurance Policy;

2.    The sole right to withdraw from or surrender the Insurance Policy and receive the surrender value thereof at any time provided by the terms of the Insurance Policy and at such other times as Insurer may allow;

3.    The sole right to obtain one or more loans or advances on the Insurance Policy at any time, either from Insurer or from other persons, and to pledge or assign the Insurance Policy as security for such loans or advances;

4.    The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Insurance Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Insurance Policy with respect thereto; provided, that unless and until Assignee shall notify Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this Assignment;

5.    The sole right to exercise all nonforfeiture rights permitted by the terms of the Insurance Policy or allowed by Insurer and to receive all benefits and advantages derived therefrom;

6.    The sole right to amend the Insurance Policy; and

7.    The right to exercise any and all voting rights or privileges to the extent created or endowed by the Insurance Policy.

8.    The sole right to sell the Policy, but only upon the failure of the Owner to fulfill obligations to the Lender as specified in any agreements or contracts to which Lender and Owner are parties.

9.    Any other Policy rights the Owner might enjoy not otherwise excluded below.

- 1 -                                                            1601840 v01

**GORDILLO 0122**

JUDD  070522

Document #15 of 19

**RIGHTS RETAINED.** The following rights, so long as the Insurance Policy has not been surrendered or canceled, are reserved and excluded from this Assignment and do not pass by virtue hereof:

1.   The right to collect from Insurer any disability benefit payable in cash under the terms of the Insurance Policy that does not reduce the amount of insurance provided under the Insurance Policy;

2.   The right to designate and change the beneficiary of the Insurance Policy, provided that Assignee shall continue to be the primary assignee of the Insurance Policy; and

3.   The right to elect any optional mode of settlement permitted by the Insurance Policy or allowed by Insurer;

provided, however, that Owner shall not exercise any of these rights without the Owner's receipt of the prior written consent of Assignee and that the reservation of these rights shall in no way impair the right of Assignee to surrender the Insurance Policy completely with all its incidents or impair any other right of Assignee hereunder, and any permitted designation or change of beneficiary or election of a mode of settlement shall expressly be made subject to this Assignment and to the rights of Assignee hereunder.

**OBLIGATIONS SECURED.** This Assignment is made, and the Insurance Policy is to be held, as collateral security for any and all liabilities of Owner to Assignee, either now existing or that may hereafter arise, under the Life Insurance Premium Financing Agreement dated as of 4/15, 2008, among Assignee, Owner and Insured, as amended, supplemented, and otherwise modified from time to time (the "**Agreement**") and all liabilities, obligations, covenants, duties, indebtedness, fees, expenses and other amounts owing by Owner to Assignee under this Assignment (all of which liabilities of Owner, secured or to become secured, are herein called "**Liabilities**"). Subject to the terms of this Assignment, Assignee may apply any and all money received under the Insurance Policy to pay Liabilities when due in any order Assignee may choose it its sole discretion.

**BENEFITS PAYMENT DIRECTIVE.** Owner hereby authorizes and directs Insurer to pay Assignee any and all death benefits and other amounts due under or on account of the Insurance Policy, and Owner shall be considered the Insurance Policy's primary beneficiary, provided, however, that nothing in this paragraph entitles Assignee to retain more than the amount of the Liabilities.

**REPRESENTATIONS.** Owner hereby represents and warrants to Insurer and Assignee that: (a) Owner is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization; (b) the execution, delivery and performance of this Assignment by Owner (i) are within Owner's power, (ii) have been duly authorized by all necessary limited liability company or other action and (iii) do not contravene any provision of Owner's articles of organization, operating agreement or other comparable organizational documents, any law or regulation applicable to Owner or its members or conflict with, violate, create a lien or default under or require a consent under any document or agreement to which Owner is a party or by which it is bound; (c) the Insurance Policy is in full force and effect and has never lapsed; (d) Owner is the sole owner of the Insurance Policy and has full authority to assign the Insurance Policy to Assignee; (e) Owner has neither assigned, nor granted or suffered any lien, pledge or security interest against, the Insurance Policy to any other person or entity, except for liens securing the Liabilities; (f) this Assignment constitutes a legal, valid and binding obligation of Owner, enforceable by Assignee against Owner in accordance with its terms (subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally); and (g) none of the proceeds of the Agreement will be used for personal, family or household purposes. Owner further represents and warrants to Insurer and Assignee that no proceedings in bankruptcy are pending or to its knowledge threatened against Owner (and that no grounds exist for such proceedings) and that Owner's property is not subject to any assignment for the benefit of creditors.

- 2 -                                                                    1604840 v01

**GORDILLO 0123**

JUDD 070523

**COVENANTS.** Owner and Assignee covenant and agree as follows:

1.     That, unless Owner and Assignee have elected to exercise the Default Sale Right (as defined below), any balance of sums received hereunder from Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid in full by Assignee to the persons entitled thereto under the terms of the Insurance Policy had this Assignment not been executed;

2.     That Assignee shall not exercise either the right to surrender the Insurance Policy or the right to obtain policy loans from Insurer, until there has been a default on any of the Liabilities or any other Event of Default under the Agreement that shall not have been cured within the time period, if any, provided in the Agreement;

3.     That upon Owner's request, and subject to the terms of "RIGHTS RETAINED" above, Assignee shall forward, without unreasonable delay, to Insurer, the Insurance Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

4.     Owner hereby authorizes Insurer to recognize Assignee's claims to rights hereunder (including the exercise of the Default Sale Right) without investigating the reason for any action taken by Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice hereunder, under applicable law or otherwise, or the application to be made by Assignee of any amounts to be paid to Assignee. The sole signature of Assignee shall be sufficient for the exercise of any rights under the Insurance Policy assigned hereby and the sole receipt by Assignee of any sums shall be a full discharge and release therefor to Insurer. Checks or drafts for all or any part of the sums payable under the Insurance Policy and assigned herein shall be paid to the exclusive order of Assignee if, when, and in such amounts as may be requested by Assignee;

5.     Owner shall at no time change the mode of premium payment or otherwise modify the timing of any such premium payments from the signed policy illustration provided by Owner to Assignee. Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Insurance Policy, whether or not obtained by Assignee, or any other charges on the Insurance Policy, but such amounts so paid by Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall accrue interest at the highest rate allowed by applicable law; and

6.     The exercise of any right, option, privilege or power given to Assignee under this Assignment shall be at the sole option of Assignee, and Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by Owner.

**TERMINATION.** At such time as the Liabilities have been paid and performed in full, Assignee will promptly terminate this Assignment and the security interests granted hereunder, and will promptly terminate any UCC financing statements filed in connection with this Assignment.

**LIMITED POWER OF ATTORNEY.** Owner irrevocably appoints Assignee and any officer or agent thereof, with full power of substitution, as Owner's true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Owner and in the name of Owner or in its own name, from time to time in Assignee's discretion, for the limited purpose of carrying out the terms of this Assignment, to take any and all appropriate action and to execute and deliver any and all documents and instruments that Assignee may deem necessary or desirable to accomplish the purposes of this Assignment, provided, however, that nothing in this Assignment shall obligate Assignee to

- 3 -                    1604840 v01

**GORDILLO 0124**

JUDD  070524

Case 1:16-cv-01533-GBD-GWG   Document 125-15   Filed 08/23/18   Page 55 of 81
Case3:14-cv-03713-WHO   Document40   Filed07/30/15   Page134 of 160

Document #15 of 19

protect the interests of Owner or anyone else in or under the Insurance Policy. For avoidance of doubt, such power of attorney shall be considered to be coupled with an interest.

**DEFAULT SALE RIGHT.** Upon an occurrence of an Event of Default (as defined in the Agreement) that has not been remedied within the time period required in the Agreement, Assignee shall have the right (the "**Default Sale Right**") but not the obligation to accept, that in consideration of the full and complete satisfaction of the Liabilities (the sufficiency of which consideration is hereby acknowledged) Owner may make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder. Upon the exercise of this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy.

**NO WAIVER.** Any forbearance or failure or delay by Assignee in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy shall not preclude the further exercise thereof. Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as Assignee shall determine, the proceeds of the Insurance Policy hereby assigned or any amount received on account of the Insurance Policy by the exercise of any right permitted under this Assignment, without resorting or regard to other security or any guaranty. No waiver of any provision hereof shall be effective unless it shall be in writing and signed by Assignee.

**JOINT AND SEVERAL LIABILITY.** If more than one entity signs this Assignment as an owner, the obligations, agreements, covenants, representations and warranties of all such persons or entities signing this Assignment as owners shall be joint and several.

**SUCCESSORS AND ASSIGNS.** All of the terms and provisions of this Assignment shall be binding upon, and inure to the benefit of, and be enforceable by, the respective successors, executors, administrators and assigns of the parties hereto.

**NOTICES.** Unless notice is required by law to be given in another manner, all notices or other communications required or permitted to be given pursuant to this Assignment shall be given in writing and may be personally served or may be deposited in the United States mail, by first-class mail, postage prepaid, addressed as set forth in Schedule 1 hereto, or to such other address as such party shall have specified by written notice given as provided herein. All notices mailed as provided herein shall be deemed given on the third (3rd) business day following the date so mailed.

**CHOICE OF LAW.** This Assignment shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the state of California.

**TITLES AND HEADINGS.** Titles and headings of sections of this Assignment are for convenience of reference only and shall not affect the construction of any provision of this Assignment. The unenforceability of any provision of this Assignment shall not affect the enforceability or validity of any other provision hereof.

- 4 -

1604840 v01

**GORDILLO 0125**

JUDD 070525

Document #15 of 19

**COUNTERPARTS.** This Assignment may be executed in any number of counterparts, each of which shall constitute an original and together shall constitute one and the same instrument.

Signed this 15 day of April, 2008.

**OWNER:**

**The Erwin A. Collins Family Insurance Trust-2008**

By: _Maria Ana Gordillo_, Trustee
Name: **Maria A. Gordillo**
Date: 4/15/2008

**ASSIGNEE:**

*Windsor Securities LLC*
By MFIP (Delaware Inc.)

By:_____
Name: **Steven Prusky**
Title:
Date:

- 5 -

1604840 v01

**GORDILLO 0126**

JUDD 070526

**COUNTERPARTS.** This Assignment may be executed in any number of counterparts, each of which shall constitute an original and together shall constitute one and the same instrument.

Signed this 15 day of April , 2008.

**OWNER:**

The Erwin A. Collins Family Insurance Trust-2008

By: _Maria Ana Gordillo_ , Trustee
Name: **Maria A. Gordillo**
Date: 4/15/2008

**ASSIGNEE:**

*Windsor Securities LLC*
By MFIP (Delaware Inc.)

By:
Name: Steven Prusky
Title: President/Director
Date: 16-Apr-08

- 5 -

1604840 v01

**GORDILLO 0127**

JUDD 070527

## Schedule 1

Addresses for notice:

**Owner:**

> The Erwin A. Collins Family Insurance Trust-2008
> c/o Maria A. Gordillo, as Trustee
> 346 Crestview Circle
> Roswell, GA 30075
> Telephone:  770-375-9266
> Facsimile:  n/a

**Assignee:**

> Windsor Securities LLC
> c/o Steven Prusky
> 25 East Athens Avenue
> Ardmore, PA 19003
> Telephone:  (610) 642-3100
> Facsimile:

1604840 v01

**GORDILLO 0128**

JUDD  070528

Document #16 of 19

**Assignment of Life Insurance Policy as Collateral**
**and**
**Individual Acknowledgement to be signed and notarized.**

*This is an insurance company form to be provided to the Insured and Trustee and attached hereto.*

**GORDILLO 0129**

JUDD  070529

TITLE ASNMT

## PACIFIC LIFE INSURANCE COMPANY
Life Insurance Operations Center
P.O. Box 2030 • Omaha, NE 68103-2030
(800) 347-7767 • fax (949) 462-3068
www.PacificLife.com



## COLLATERAL ASSIGNMENT

### INSTRUCTIONS TO POLICYOWNER

1. Print full name and address of the Collateral Assignee.

2. The policyowner must sign and date this form.

3. Return the completed form to your Pacific Life Insurance Company (PL) Associate or local office. The form may also be mailed directly to Pacific Life Insurance Company, Attn: Life Insurance Operations Center, P.O. Box 2030, Omaha, Nebraska 68103-2030. Our toll free number is (800) 347-7767.

4. You will receive written confirmation from PL that will signify that this assignment is acceptable to PL and has been recorded. Upon receipt of confirmation, you should send a copy to Collateral Assignee.

### SIGNATURES REQUIRED

ONE INDIVIDUAL OWNER - No other signatures are required. However, in community property states it is recommended that the individual owner's spouse also sign the form when the policy is not considered separate property.

SEVERAL INDIVIDUAL JOINT OWNERS - All individuals must sign.

PARTNERSHIP AS OWNER - Signature of authorized signing partner.

CORPORATION AS OWNER - An authorized officer must sign the form with his/her signature and title. The signature must be notarized or the corporate seal affixed.

BENEFICIARY - PL suggests that the beneficiary consent to the assignment by signing this form in the "vested interest" states of Colorado, Massachusetts, Louisiana, New York and New Jersey.

| Insured's Name: First   MI   Last | Policy/Application Number |
|---|---|
| Erwin  A.  Collins | VFS1701320 |

For value received, I transfer and assign this policy, subject to the conditions outlined below and on page two, to:

| Collateral Assignee's Name |
|---|

| Address: Street | City | State | Zip Code |
|---|---|---|---|

BENEFICIARY - This assignment will not change the beneficiary of the policy. The beneficiary designation will remain in effect unless changed by the owner.

SUPPLEMENTARY POLICY - This assignment will apply to any Life policy, including any supplementary riders, having the above policy number.

PRIOR ASSIGNMENT - If this policy has been previously assigned, the existing assignment(s) will take precedence in case of a claim.

ASSIGNMENT EFFECTIVE DATE - Written confirmation by PL to the policyowner will signify that this is acceptable to PL and has been recorded. However, PL will have no liability for any action taken before this assignment is recorded at its home office.

DEFINITIONS - PL means Pacific Life Insurance Company. Words in the singular will include the plural, and words in the masculine gender will include the feminine gender, if applicable.

| Policyowner's Signature   Maria Ana Gordillo | Date | Applicant's Signature (Only required at time of application, if other than policyowner) | Date |
|---|---|---|---|
| Proposed Insured's Signature (Only required at time of application, if other than applicant/policyowner) | Date | Assignee's Signature | Date |
| Beneficiary's Signature (if applicable) | Date | NOTARY | |
| Corporation's Signature (if applicable) | Date | | |



**HOME OFFICE USE**
Pacific Life Insurance Company has retained the original Assignment, dated _____ and is returning a copy of this document. The Home Office assumes no responsibility for the validity of this document.

SECRETARY, NEWPORT BEACH, CALIFORNIA

**PRODUCER: PROVIDE A PHOTOCOPY OF THIS SIGNED FORM TO ALL SIGNING PARTIES.**

Page 1 of 2   PLZASNMTXPLS   15-04027-42 10/2007

GORDILLO 0130

JUDD 070530

## COLLATERAL ASSIGNMENT



### GENERAL CONDITIONS

*This assignment is made as collateral security for an obligation owed the assignee, which may include, but is not limited to, any amounts hereafter advanced by the assignee for the purpose of paying premiums on the policy.*

*This assignment is subject to all the conditions of the policy, any prior lien in favor of PL and rules and regulations of PL. This assignment is also subject to all prior assignments.*

*The assignee, by the acceptance of this assignment, agrees to the conditions and provisions herein set forth.*

### ASSIGNEE'S RIGHTS

It is agreed that the following specific rights are included in this assignment and pass to the assignee.

1. The sole right to collect from PL the net policy proceeds when it becomes a claim by death or maturity.

2. The sole right to surrender the policy and receive the surrender value:

    (i)   at any time provided by the policy terms, and

    (ii)  at such other times as the insurer may allow.

3. The sole right to obtain one or more loans on the policy, either from PL or from other persons. The sole right to pledge or assign the policy as security for such loans.

4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the policy now or later made. The sole right to exercise any and all options in the policy with respect to such distributions or surplus dividend deposits or additions. However, the plan in effect for such distributions of surplus, dividend deposits or additions at this assignment date will remain, unless PL receives a written request from the assignee to change it.

5. The sole right to exercise all non-forfeiture rights permitted by the terms of the policy or allowed by PL. The sole right to receive all benefits and advantages derived from the exercise of such non-forfeiture rights.

### POLICYOWNER'S RIGHTS

It is agreed that the following specific rights, so long as the policy has not been surrendered, are reserved and excluded from the assignment and do not pass to the assignee.

1. The right to collect from PL any disability benefit payable in cash that does not reduce the amount of insurance.

2. The right to designate and change the beneficiary.

3. The right to elect any settlement option available in the policy or allowed by PL.

4. The right to transfer amounts between the subaccounts of the Separate Account and to and from the Fixed Account as allowed per the Prospectus for a Variable Universal Life Policy.

The reservation of these rights will in no way impair the right of the assignee to surrender the policy. Neither will such reservation impair any other right of the assignee resulting from this assignment. Any designation or change of beneficiary or election of a settlement option will be subject to this assignment and the rights of the assignee under this assignment.

### AGREEMENT BETWEEN POLICYOWNER AND ASSIGNEE

A. The assignee agrees with the policyowner as follows:

1. That any balance of money received under this assignment remaining after payment of the obligation, which this assignment secured, will be paid to the persons entitled thereto under the terms of the policy, had this assignment not been made.

2. That the assignee will not exercise the right to obtain policy loans from PL, except for the purpose of paying premiums and except as an alternative, at the option of the assignee, to the surrender of this policy.

3. That the assignee will not exercise the right to surrender this policy or the right to obtain a policy loan from PL (other than to pay premiums) until:

    (i)   there has been default in performance of the obligation secured by this assignment, or

    (ii)  there has been failure to pay any policy premium when due, and in either case

    (iii)  20 days have elapsed since the assignee mailed by first class mail, to the policyowner at his last known address, notice of intention to surrender or obtain a policy loan.

B. The policyowner and assignee agree as follows:

1. That PL will not be responsible for the sufficiency or validity of this assignment.

2. That PL is authorized to, and will be protected in, accepting the sole signature or request of the assignee as to rights granted the assignee by this assignment, and the sole signature or request of the policyowner as to rights reserved to the policyowner.

3. That PL will have no duty or responsibility to determine the existence of any default in the obligation secured hereby, the amount of the obligation, the giving of any notice by the assignee, the purpose of any policy loan or surrender of the policy, or otherwise question the right of the assignee to exercise any of the rights granted by this assignment.

4. That PL is authorized to make payment to the sole order of the assignee of any amounts becoming payable to the assignee under this assignment, and PL will have no duty to see to the application of the funds so received and will be discharged to the extent of such payment.

15-04027-42  10/2007

GORDILLO 0131

JUDD  070531

Document #17 of 19

## BORROWER'S CLOSING CERTIFICATE

Dated as of 4/15, 2008

Reference is made to the Life Insurance Premium Financing Agreement dated as of April 15, 2008 (the *"Financing Agreement"*) among Windsor Securities LLC, a Nevada LLC with a mailing address of 25 East Athens Avenue, Ardmore, PA 19003, as Lender (the *"Lender"*), Erwin A. Collins as Insured (the *"Insured"*) and The Erwin A. Collins Family Insurance Trust-2008, as Borrower (the *"Borrower"*).

Pursuant to Section 2.01 of the Financing Agreement, the Borrower hereby certifies that all the representations and warranties of and made by the Borrower set forth in the Financing Agreement and each Financing Document to which the Borrower is a party are true and correct in all respects on and as of the date first above written.

IN WITNESS WHEREOF, the undersigned Borrower has hereunto set its name as of the date set forth below.

The Erwin A. Collins Family Insurance
Trust-2008

By: *Maria Ana Gordillo* Trustee
Name: Maria A. Gordillo
Date: 4/15/2008

**GORDILLO 0132**

Document #18 of 19

To be completed by Lender
Lender: Windsor Securities, LLC
Lender address:
Tax ID#:
Agent Guaranty:

**Loan Information:**

Loan:                          $____99,750____ First Year Premium

                               $_____0_____ Second Year Premium

                               $_____ Structuring Fee

                               $____13,000____ Closing Fees

Total Loan Amount:             $____112,750____

-3-

GORDILLO 0133

JUDD 070533

Document #19 of 19

## Receipt of Funds Confirmation

THE UNDERSIGNED, on behalf of the Erwin A. Collins Family Insurance Trust-2008, EIN #26-6230172, hereby confirms receipt of NINTY NINE THOUSAND SEVEN HUNDRED FIFTY dollars ($99,750.00), from Windsor Securities LLC, pursuant to the premium financing documents (including, but not limited to *"Life Insurance Premium Financing Agreement Among Windsor Securities LLC, The Erwin A. Collins Family Insurance Trust-2008, and Erwin A. Collins"*, "The Promissory Note", and *"The Security Agreement(s) for Beneficiary Interest in Trust"*).

*Maria Ana Gordillo*      , Trustee      Date: 04/30/2008

The Erwin A. Collins Family Insurance Trust-2008

GORDILLO 0134

JUDD 070534

# EXHIBIT B

JUDD 070535

## OWNERSHIP, NAME, OR BENEFICIARY CHANGE REQUEST



**PACIFIC LIFE**

| Insured's Name: First    MI    Last | Policy Number(s): |
|---|---|
| Erwin  A.  Collins | VF51701320 |

### 6 SIGNATURES

If you are signing below on behalf of an entity, you represent, under penalty of perjury, that you are authorized to execute this document and make the representations set forth herein. You further represent that all requirements of the entity's governing documents, including the use of the corporate seal (if a Corporation) and the number of authorized signatures, have been met. Each of the undersigned attests that no bankruptcy or insolvency proceedings have been filed or commenced by or against all signing parties.

**THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.**

**SIGNED AND DATED ON:**

Date (mm/dd/yyyy)
05/11/2010

x _Maria Ana Gordillo_
Policyowner's* Signature (Current)

X _____
Assignee's* Signature

X _____
Other Required* Signature (Must check a box below)

| Policyowner's Name: First    MI | Last | Title, if applicable |
|---|---|---|
| Maria  A.  Gordillo | | Trustee. |

| Assignee's Name: First MI    Last    (print) | Title, if applicable |
|---|---|

| Other Required Name: First  MI    Last | Title, if applicable |
|---|---|

Indicate role of "Other Required" signature:
- [ ] Additional Policyowner
- [ ] Additional Assignee
- [ ] Insured
- [ ] Additional Insured
- [ ] Business Entity's Authorized Representative
- [ ] Trustee
- [ ] Attorney-in-Fact
- [ ] Irrevocable Beneficiary
- [ ] Premium Payor/Remitter
- [ ] New Policyowner (only required for ownership changes)
- [ ] Applicant (only required at time of application)
- [ ] Other: _____

*If a Corporation, Trust or Business Entity, the full name of the Corporation, Trust or Business Entity must be shown below.

Corporation, Trust, or Business Entity's Name

The Erwin A. Collins Family Insurance Trust - 2008

**PRODUCER: PROVIDE A PHOTOCOPY OF THIS SIGNED FORM TO ALL SIGNING PARTIES**

### INSTRUCTIONS

| When to use this form: | This form is used to request ownership, beneficiary and name changes on a life insurance or fixed annuity policy. |
|---|---|
| Who must sign this form: | For ownership changes, the current and new policyowner(s) must sign this form. POLICYOWNER(S) – Required signature(s) of current policyowner(s). ASSIGNEE(S) – Required when the policy has an active assignment(s) and the assignee's signature or consent is required according to the assignment agreement. OTHER REQUIRED SIGNATURE(S) – Any party that has an ownership interest that requires them to approve this policy request. Indicate their signing capacity by checking the appropriate role. The new policyowner(s) should sign this space. When the policy is community property, PL suggest that the current policyowner's spouse also sign the form. Community Property states are Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, and, Wisconsin. If the policyowner, assignee or other required signing party is a Corporation, Business Entity, or Trust, all signatures required by the governing documents or the trust agreement (if a Trust) must be included, in addition to the authorized representative's title or signing capacity. |
| Where to send this form: | Send this form to Pacific Life Insurance Company, Life Insurance Operations Center, P.O. Box 2030, Omaha, NE 68103-2030. Our toll free number is (800) 347-7787. |

15-21072-08  07/2009

**GORDILLO 0136**

JUDD  070536

## OWNERSHIP, NAME, OR BENEFICIARY CHANGE REQUEST

 **PACIFIC LIFE**

## SAMPLE OWNERSHIP WORDING

| Ownership Arrangement | Sample Wording |
|---|---|
| One Owner | Mary Doe, Wife. |
| Several Owners (with deceased owner's interest passing to surviving owners) | John Smith, Paul Smith, Frank Smith, Brothers, as joint tenants with rights of survivorship. |
| Several Owners (with deceased owner's interest passing to his/her estate) | John Smith, Paul Smith, Frank Smith, Brothers, as tenants-in-common. |
| Partnership (General) | Smith and Jones, a general partnership composed of John Smith and Thomas Jones. |
| Partnership (Limited) | John Smith, general partner, Smith Associates, Limited Partnership. |
| Inter-Vivos Trust with One Trustee | The _(Name of Trust)_ Trust, dated _(Trust date)_, with _(Name of Trustee)_, Trustee, or the successor or successors in trust. |
| Inter-Vivos Trust with More Than One Trustee | The _(Name of Trust)_ Trust, dated _(Trust date)_, with _(Names of all Co-Trustees)_, or their successor or successors in trust, with exercise of any and all ownership rights requiring the signatures of any one Co-Trustee only**. |
| | **Where all Co-Trustees must sign for each transaction, substitute the wording "of any one Co-Trustee only" with "All Co-Trustees." |
| Corporation | The ABC Company, a _(State Of Incorporation)_ corporation, its successors or assigns. |
| Qualified Pension or Profit Sharing Plan Owner, with Trustee or Plan Administrator | _(Name of Plan)_ Plan, with _(Name of Trustee or Plan Administrator)_, Trustee or Plan Administrator. |
| UGMA/UTMA | _Name of Custodian_, as custodian for _(Name of Minor)_, born _(Date of Birth)_, under the _(Name of the State and Name of the UGMA/UTMA Act for the State in Question.)_ |

15-21072-06  07/2009

GORDILLO 0137

JUDD  070537

## SAMPLE BENEFICIARY WORDING

| Beneficiary Arrangement | Sample Wording |
| --- | --- |
| Estate | The Insured's Estate. |
| One Primary Beneficiary | Mary Doe, Wife. |
| Several Primary Beneficiaries | Mary Doe, Jane Doe and Thomas Doe, Wife and Children, equally, survivors or survivor. |
| Un-named Beneficiaries | My Children equally, survivors or survivor. |
| | The Children born of the marriage between John and Mary Doe, equally, survivors or survivor. |
| | Thomas Doe, Son and any other children born of the marriage between John and Mary Doe, equally, survivors or survivor. |
| Unequal Amounts | 70% to Mary Doe, Wife, and 30% to John Doe, Son, or all to the survivor. |
| | 60% to Joe Doe, Husband, 20% to Mary Doe, Daughter and 20% to John Doe, Son. If the beneficiary should not survive, then the remaining beneficiaries shall share the deceased beneficiary's portion equally. |
| Partnership (General) | Smith and Jones, a general partnership comprised of John Smith and Thomas Jones. |
| Partnership (Limited) | John Smith, general partner, Smith Associates, Limited Partnership. |
| Corporation | The ABC Company, a _(State Of Incorporation)_ corporation, its successors or assigns. |
| Inter-Vivos Trust | The _(Name of Trust)_ Trust, dated _( Trust date)_, with _(Name of Trustee)_, Trustee, or the successor or successors in trust. |
| Testamentary Trust | The Trust created by the Will of _(Insured)_ by _(Name of Trustee)_, Trustee, or the successor or successors in trust. |
| Split Dollar (Collateral Assignment or Endorsement) | XYZ Corporation, a _(State Of Incorporation)_ corporation, its successors or assigns, in the amount claimed by said corporation not to exceed the amount payable under the policy, and the balance if any, payable to Jane Doe, spouse of the insured. |
| UGMA/UTMA | Minor as Insured:  The estate of the Minor. |
| | Someone Other Than Minor as Insured: _Name of Custodian_, as custodian for _(Name of Minor)_, born _(Date of Birth)_, under the _(Name of the State and Name of the UGMA/UTMA Act for the State in Question.)_ |

15-21072-06 07/2009

GORDILLO 0138

JUDD 070538

# EXHIBIT C

JUDD  070539



Life Insurance Operations Center
P.O. Box 2030, Omaha, Nebraska  68103-2030
Tel (800) 347-7787  Fax (866) 964-4859
www.PacificLife.com

**TITLE CHANGE CONFIRMATION**

May 25, 2010

Servicing Producer:  (678) 336-5250

WINDSOR SECURITIES LLC
25 E ATHENS AVE
ARDMORE, PA  19003-2229

EUGENE HOUCHINS
4243 DUNWOODY CLUB DR
STE 215
ATLANTA, GA  30350

Insured Name:           ERWIN A COLLINS
Policy Number(s):       VF51701320

Thank you for your recent request(s). This is to confirm that the following request(s) are recorded and should be filed with your policy:

Change of Ownership                                          Dated:  5/11/2010

Change of Payor                                             Dated:  5/11/2010

- Pacific Life Does not Waive its Rights to Seek Remedies for STOLI and other Violations of Law

- Pacific Life's receipt of your title change request, the processing and administration of your title change request, and the issuance of this title change confirmation does not waive or in any manner compromise Pacific Life's rights to seek legal or other remedies from past and present policyowner(s), past and present producer(s) of record, and any other involved party(ies) arising from, but not limited to, STOLI (Stranger Owned Life Insurance) arrangements, violations of insurable interest laws, or any other violations of law relevant to the application and purchase of life insurance. This disclosure applies to any information that may have been received with the title change request, including, but not limited to information indicating that this policy was the subject of a life settlement transaction.

If you need further assistance, please contact your Servicing Producer or our Life Insurance Operations Center. We appreciate your business and welcome the opportunity to serve your ongoing life insurance needs.

Life Insurance Operations Center
Client Services Department

Servicing Office:
SOUTHEAST REGIONAL LIFE OFFICE
FIVE CONCOURSE PKWY
STE 2800
ATLANTA, GA  30328

Prior Owner:
ERWIN A COLLINS FAM INS TRST
MARIA A GORDILLO TTEE
4306 N SHALLOWFORD RD APT 2117
ATLANTA, GA 30341-1157

00190 / YDUYD / TTLLR

ICS/Title/Title Cnfrm/Title Cnfrm 20051210

**GORDILLO 0141**

JUDD 070540

# EXHIBIT D

JUDD 070541

 **PACIFIC LIFE**

Life Insurance Operations Center
P.O. Box 2030, Omaha, Nebraska 68103-2030
Tel (800) 347-7787 Fax (866) 964-4859
www.PacificLife.com

**TITLE CHANGE CONFIRMATION**

September 01, 2010

Servicing Producer: (678) 336-5250

WINDSOR SECURITIES LLC
25 E ATHENS AVE
ARDMORE, PA 19003-2229

EUGENE HOUCHINS
4243 DUNWOODY CLUB DR
STE 215
ATLANTA, GA 30350

Insured Name:        ERWIN A COLLINS

Policy Number(s):       VF51701320

Thank you for your recent request(s). This is to confirm that the following request(s) are recorded and should
be filed with your policy:

Change of Beneficiary

Dated: 8/26/2010

- The processing of your requested change does not constitute a waiver of Pacific Life's rights pursuant to the
policy and under applicable law relating to the purchase and administration of your policy, irrespective of
any documents or information received in connection with your request.

If you need further assistance, please contact your Servicing Producer or our Life Insurance Operations Center.
We appreciate your business and welcome the opportunity to serve your ongoing life insurance needs.

Life Insurance Operations Center
Client Services Department

Servicing Office:
SOUTHEAST REGIONAL LIFE OFFICE
FIVE CONCOURSE PKWY
STE 2800
ATLANTA, GA 30328

00190 / YDUYD / TTLLR

ICS/Title/Title Cnfrm/Title Cnfrm 20091210

**GORDILLO 0142**

JUDD 070542

# EXHIBIT E

JUDD 070543

**Windsor Securities, LLC**
25 East Athens Avenue
Ardmore, PA 19003

610-642-3100; 610-642-9709 (f)
mfiwsi@comcast

June 1, 2014

Maria A. Gordillo, Trustee
The Erwin A. Collins Family Insurance Trust.
346 Crestview Circle
Roswell, GA 30075

Re: Pacific Life Insurance Policy #VF51701320

Dear Ms. Gordillo:

Windsor Securities LLC ("Windsor") has been doing some "spring cleaning" of our transaction records and are requesting an update on certain information.

Pursuant to the Financing Agreement ("FA") signed by you and according to our records, on May 11, 2010, you assigned the policy listed above to Windsor. You may recall that this voluntary assignment of the policy was in exchange for Windsor's agreement that the assignment of the policy would constitute a complete satisfaction and discharge of the loan that Windsor had made to enable you to purchase the policy. Accordingly, you no longer have any financial liability to Windsor under that loan.

Nevertheless, you do have some continuing obligations, including that we do expect you to continue to comply with the (non-formal) obligations of the FA, including requests for HIPAA's, etc. At this time our only request is that you confirm the insured is still alive and that the trust is still extant. You may also be glad to know that Windsor has always (unilaterally and without obligation) intended to pay the trust a small portion of the Death Benefit upon policy maturity – hence our request for confirmation the trust still exists in proper legal order.

If you have any questions, please don't hesitate to contact us.

Best regards,

Windsor Securities, LLC

By: _____
Steven G. Prusky,
Managing Member

SGP:esh

GORDILLO 0275

JUDD  070544

# EXHIBIT F

JUDD 070545

July 18, 2014

Windsor Securities, LLC
25 East Athens Avenue
Ardmore, PA  19003

Re:   Life Insurance Premium Financing Agreement among Windsor Securities LLC, the
Erwin A. Collins Family Insurance Trust—2008 and Erwin A. Collins, dated April 15, 2008.

Dear Windsor Securities, LLC:

I am the trustee of the Erwin A. Collins Family Insurance Trust—2008 (the "Trust"), one of the
parties to the above-referenced Life Insurance Premium Financing Agreement Among Windsor
Securities LLC, the Erwin A. Collins Family Insurance Trust—2008 and Erwin A. Collins, dated
April 15, 2008 (the "Agreement"). As you are aware, the Trust defaulted on its obligation under
the Agreement to repay to Windsor monies loaned by Windsor for premium payments on Pacific
Life Insurance Policy No. VF51701320 plus legal interest thereon and reasonable costs incurred
by Windsor pursuant to the Security Agreement between the parties. As you are also aware, the
Trust thereafter provided to Windsor, at Windsor's request pursuant to its rights as a secured
lender under the Security Agreement, an executed change of ownership form and other
documentation that would have made it possible for Windsor to sell or otherwise dispose of the
subject policy collateral.

It is the Trust's understanding that Windsor has never exercised its right to sell or
otherwise dispose of the policy collateral. It is also the Trust's understanding that the insured,
Erwin A. Collins, passed away on June 19, 2014. This means that the respective rights of the
parties are now governed by the Collateral Assignment between the parties, which provides:

> [Benefits Payment Directive.]  Owner hereby authorizes and directs Insurer to
> pay Assignee any and all death benefits and other amounts due under or on
> account of the Insurance Policy, and Owner shall be considered the Insurance
> Policy's primary beneficiary, provided, however, that nothing in this paragraph
> entitles Assignee to retain more than the amount of the Liabilities.

> [Covenants.]  That unless Owner and Assignee have elected to exercise the
> Default Sale Right (as defined below),[1]  any balance of sums received hereunder
> from Insurer remaining after payment of the then existing Liabilities, matured or
> unmatured, shall be paid in full by Assignee to the persons entitled thereto under
> the terms of the Insurance Policy had this Assignment not been executed.

The term "Liabilities" in those provisions covers, as noted above, the total amount of
monies loaned by Windsor for premium payments, plus legal interest thereon and reasonable
costs incurred pursuant to the Security Agreement.  Any portion of the death benefit in excess
of that amount belongs to the Trust.

---

[1]   As you are aware, no such exercise occurred.

GORDILLO 0276

The Trust is informed and believes that Windsor is now claiming entitlement to the entire death benefit, not merely to the "Liabilities" as defined above. The Trust regards that claim as an anticipatory breach by Windsor of the terms of the Collateral Assignment. That breach relieves the Trust of any continuing obligation to allow distribution of the death benefit to Windsor pending resolution of the dispute between the parties as to how that death benefit should be allocated.

Pursuant to section 7.11 of the Terms and Conditions portion of the Agreement, please consider this letter to comprise notice of the dispute described above. If the dispute is not amicably resolved within thirty days, the Trust will initiate an appropriate action for declaratory relief against Windsor and Pacific Life in the United States District Court, Northern District of California.

Sincerely yours,

*Maria Ana Gordillo*

Maria A. Gordillo, Trustee
Erwin A. Collins Family Insurance Trust — 2008
7742 Spalding Drive, #140
Norcross, GA 30092

**GORDILLO 0277**

JUDD 070547

# EXHIBIT G

JUDD  070548

# Maria Ana Gordillo

Trustee of the Erwin A. Collins Insurance Trust - 2008
7742 Spalding Drive, Suite 140, Norcross, GA 30092

Phone:
770-375-9266

Email:
MariaGordillo1983@gmail.com

## URGENT – IMMEDIATE ATTENTION REQUESTED

July 15, 2014

Pacific Life Insurance Company
Attn: Death Claim Department
1299 Farnam Street, 4th Floor
Omaha, NE 68102
Title Dept. FAX: 866-964-4859
Claim Dept. FAX: 866-398-0467

RE:   Death Claim – Erwin A. Collins
      Policy Number VF51701320

Dear Sir or Madam:

I am the trustee of the Erwin A. Collins Family Insurance Trust - 2008 (the "Trust"), owner and beneficiary of Pacific Life Policy VF51701320 (the "Policy"). The insured, Erwin A. Collins, passed away on June 19, 2014. The death benefit due under the Policy is $2,000,000.00.

As I believe you are aware, the Policy premiums were financed by Windsor Securities, LLC ("Windsor"). Pursuant to a collateral assignment between the Trust and Windsor, Windsor is entitled, under certain circumstances, to collect the death benefit. Those circumstances include, most importantly, the obligation of Windsor, following the kind of default by the Trust in payment on Windsor's loan that occurred herein, to retain from the collected death benefit only those amounts it has loaned to the Trust, plus legal interest thereon, plus reasonable expenses incurred in collecting or enforcing the Policy collateral, and to provide the remainder of the collected death benefit to the Trust.

We are informed and believe that, contrary to its obligations under the abovementioned collateral assignment, Windsor has unequivocally asserted the right to retain for its own account the entire death benefit. That assertion comprises an anticipatory breach of the collateral assignment by

---

1       You would be interested to know that a panel of arbitrators in the Barnes action, on facts virtually identical to those presented here, ruled that Windsor was not entitled to retain the entire death benefit, but was entitled to retain from that benefit only those amounts it had loaned to the trust therein, plus legal interest on those amounts, plus reasonable expenses incurred in collecting or enforcing the Policy collateral.

**GORDILLO 0151**

JUDD 070549

Windsor and thus frees the Trust to take whatever legal action may be required to safeguard its rights in and to the portion of the death benefit that would remain after Windsor had been reimbursed for its loans, interest, etc. (We estimate that remaining amount to be approximately 80% of the death benefit, or $1,600,000.00.) Such legal action takes two forms. First, the Trust hereby claims the right to approximately 80% of the death benefit, or $1,600,000.00, and categorically denies Windsor's claim that Windsor is entitled to the entire death benefit. The Trust expects Pacific Life to withhold payment of any portion of the death benefit from either or both of the parties until those conflicting claims have been resolved. Second, we anticipate the filing of a claim for declaratory relief against Windsor and Pacific Life, aimed at resolving those conflicting claims, in the United States District Court, Northern District of California. We would further anticipate that Pacific Life, having been placed on notice of the abovementioned conflicting claims to the death benefit and having been joined in such a suit for declaratory relief, would interplead the subject funds as it did, correctly, in the recent action entitled Gregory Barnes, Trustee of John L. Bitter Irrevocable Insurance Trust v. Windsor Securities, LLC and Pacific Life Insurance Co., United States District Court, N. D. Cal., No. 3:13-cv-01878-WHO.[1]

Please be so kind as to confirm in writing that, in light of the abovementioned conflict, Pacific Life will not pay out the death benefit to Windsor and will await service of the Trust's' action for declaratory relief.

Sincerely yours,

*Maria A. Gordillo*

Maria A. Gordillo
Trustee of the Erwin A. Collins Family Insurance Trust - 2008

**GORDILLO 0152**

JUDD  070550

1                                    PROOF OF SERVICE

2          Joseph Wood declares:

3          1.      I am over twenty-one years of age and am not a party to the above-named action.

4    My business address is 275 Battery Street, Suite 200, San Francisco, CA 94111.

5          2.      On July 29, 2015, in San Francisco, California, I served the attached

6                        DECLARATION OF MARIA ANA GORDILLO
                     IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
7

8    on the parties to this action.

9          3.      Service was made by electronically filing that document with the Court to be

10   served by operation of the Court's electronic filing and notice system.

11         I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true.

13   DATED:        July 29, 2015

14
                                        /s/ Joseph Wood
15                                          Joseph Wood

16

17

18

19

20

21

22

23

24

25

26

27

28
     DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
     *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Insurance Trust - 2008 et al.,*
     *and Related Cross-Action*
     Civil Action No. 3:14-cv-03713-WHO

JUDD 070551