# EXHIBIT "16"

1    HENNEFER FINLEY & WOOD, LLP
     JOSEPH WOOD [Calif. SBN 103596]
2    275 Battery Street, Suite 200
     San Francisco, California 94111
3    Telephone:    (415) 421-6100
     Facsimile:     (415) 421-1815
4    E-Mail:      jwood@hennefer-wood.com; jhcwlaw@yahoo.com

5    Attorneys for Defendant, Cross-Claimant, and Cross-Defendant,
     Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust
6

7

8                      UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12    JOHN HANCOCK LIFE INSURANCE            Civil Action No. 3:14-cv-04651-WHO
     COMPANY (U.S.A.),
13

         Plaintiff,
14

     vs.
15

16    MINDY GOSS [now Ronald Mark Goss]
     AS TRUSTEE OF THE JOE E. ACKER
     FAMILY INSURANCE TRUST [incorrectly
17    named herein as the "Joe E. Acker Family
     Trust"]; and WINDSOR SECURITIES, LLC,
18

         Defendants.
19                                    /

20    AND RELATED CROSS-ACTIONS.
21                                    /

22

23         **DECLARATION OF JOSEPH WOOD IN SUPPORT OF**
            **MOTION FOR SUMMARY JUDGMENT OR,**
24    **IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

25                  Date:      December 2, 2015
                   Time:      2:00 p.m.
26                  Courtroom 2, 17th Floor
                   Hon. William H. Orrick
27

28
    DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
    PARTIAL SUMMARY JUDGMENT
    *John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,*
    *et al. and Related Cross-Actions*
    Civil Action No. 3:14-cv-04651-WHO

1  Joseph Wood declares:

2  1.  I am the attorney for Ronald Mark Goss ["Goss"] as Trustee of the Joe E. Acker

3 Family Insurance Trust, defendant, cross-claimant, and cross-defendant in the above-named action

4 [the "Trust"]. The facts set forth below are within my personal knowledge and if called as a

5 witness I would testify competently to those facts.

6  2.  On or about May 6, 2015, I served the Trust's Request For Production Of

7 Documents [the "Doc. Req."] herein on Windsor Securities, LLC, defendant, cross-claimant, and

8 cross-defendant herein ["Windsor"]. A true copy of the Doc. Req. is attached as Exhibit A to this

9 declaration.

10  3.  The Doc. Req. included, among other things, requests for all documents or other

11 tangible things that comprised, referred to, or in any way evidenced:

12    (a)  any communication between Windsor and Mindy Goss or any agent of

13 Mindy Goss (Doc. Req., 1:9-20);

14    (b)  any communication between Windsor and Ronald Mark Goss or any agent

15 of Ronald Mark Goss (Doc. Req., 1:21-2:2);

16    (c)  any communication between Windsor and the Trust or any agent of the

17 Trust (Doc. Req., 2:3-12);

18    (d)  any communication between Windsor and Joe E. Acker (the insured under

19 the policy owned by the Trust) or any agent of Joe E. Acker (Doc. Req., 2:13-22);

20    (e)  any communication between Windsor and Nadine Acker (the beneficiary of

21 the Trust) or any agent of Nadine Acker (Doc. Req., 2:23-3:4);

22    (f)  any communication between Windsor and Eugene Houchins III or any

23 agent of Eugene Houchins III (Doc. Req., 3:5-14);

24    (g)  any agreement, whether oral or written, between Windsor and Mindy Goss

25 or any agent of Mindy Goss (Doc. Req., 3:25-4:5);

26    (h)  any agreement, whether oral or written, between Windsor and Ronald Mark

27 Goss or any agent of Ronald Mark Goss (Doc. Req., 4:6-14);

28

1            (i)     any agreement, whether oral or written, between Windsor and the Trust or

2  any agent of the Trust (Doc. Req., 4:15-24);

3            (j)     any agreement, whether oral or written, between Windsor and Joe E. Acker

4  (the insured under the policy owned by the Trust) or any agent of Joe E. Acker (Doc. Req., 4:25-

5  5:5);

6            (k)     any agreement, whether oral or written, between Windsor and Nadine

7  Acker (the beneficiary of the Trust) or any agent of Nadine Acker (Doc. Req., 5:6-14);

8            (l)     any agreement, whether oral or written, between Windsor and Eugene

9  Houchins III or any agent of Eugene Houchins III (Doc. Req., 5:15-24).

10       4.     In response to the Doc. Request, Windsor served on me, in electronic form,

11  documents comprising a total of 4857 pages [the "Windsor Doc. Prod."] . The first 1080 pages of

12  the Windsor Doc. Prod. production bore Bates numbers Windsor-Acker 1 through Windsor-Acker

13  1080, respectively. The remaining 3057 pages bore no Bates numbers. The preponderance of

14  those documents comprised records of premium financing transactions between Windsor and

15  trusts other than the Trust involved in the present action.

16       5.     Windsor has made no supplemental production of documents pursuant to Federal

17  Rules of Civil Procedure, Rule 26(e).

18       6.     I have physically reviewed every page of the Windsor Doc. Prod., and have also

19  performed on the Windsor Doc. Prod. an electronic search whereby I located, and examined the

20  context of, every occurrence of the term "loan," every occurrence of the term "satisfaction," and

21  every occurrence of the term "forgive" therein. That review and that research revealed:

22            (a)     no document in which Windsor at any time offered to forgive Windsor's

23  loan to the Trust in return for the Trust's agreement to waive, abandon, or assign: (i) the right of

24  the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale

25  of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium

26  payments, interest, and reasonable expenses connected with the sale); and/or (ii) the right of the

27  Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit

28

DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,
et al., and Consol Cross-Actions*
Civil Action No. 3:14-cv-04651-WHO
2

1 | remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments,

2 | interest, and reasonable expenses connected with collecting the death benefit);

3 |        (b)    no document in which the Trust, at any time, offered to waive, abandon, or

4 | assign: (i) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of

5 | a public or private sale of the Policy remaining after Windsor had been paid what it was owed on

6 | the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale);

7 | and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of

8 | the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*,

9 | premium payments, interest, and reasonable expenses connected with collecting the death

10 | benefit), in return for an agreement by Windsor to forgive the loan.

11 |        (c)    no document comprising an agreement under which the Trust would waive,

12 | abandon, or assign: (i) the right of the Trust, pursuant to the Financing Agreement, to receive any

13 | proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it

14 | was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with

15 | the sale); and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any

16 | proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan

17 | (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death

18 | benefit), in return for Windsor's forgiveness of the loan.

19 |        7.    The Windsor Doc. Prod. does contain a letter from Windsor to Goss dated

20 | February 19, 2010, which Windsor has claimed is evidence that Goss executed the assignment

21 | documents in exchange for forgiveness of the loan but which actually: (a) makes no mention of

22 | any such exchange; and (b) instead suggests that Goss signed those documents simply because the

23 | Trust, in addition to having defaulted on the loan, was not willing to make any future payments on

24 | the policy. (Windsor Securities, LLC's Surreply Memorandum Of Points And Authorities In

25 | Support Of Motion For Summary Judgment, Or, In The Alternative, Partial Summary Judgment,

26 | Court Doc. 55, page 5 of 7 [i.p. 5:9-19]; Declaration Of Ronald Mark Goss In Opposition To

27 | Motion For Summary Judgment, Court Doc. No. 38, p. 4 of 143 [internal pagination 3:4-14];

28 |

DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,
et al., and Related Cross-Actions*
Civil Action No. 3:14-cv-04651-WHO

3

1  Exhibit C thereto, p. 137 of 143, Bates. No. GOSS 135.) Windsor's letter, and Goss's testimony

2  in regard thereto, have already been considered by the Court. (*Id.*)

3      8.      The Windsor Doc. Prod. also contains a letter sent by Windsor to the Trust in June,

4  2014 - four years after the Trust's default on the loan and following Windsor's receipt of an

5  unfavorable ruling from the arbitrators in the *Barnes* case - claiming that the Trust's execution of

6  assignment documents in 2010 "was in exchange for Windsor's agreement that the assignment of

7  the policy would constitute a complete satisfaction and discharge of the loan that Windsor had

8  made to enable you to purchase the policy." The trust responded with a letter denying that claim.

9  (Declaration Of Mindy Goss In Opposition To Motion For Summary Judgment, Court Doc. No.

10  39, p. 2 of 12 [internal pagination 1:5-19]; Exhibit A thereto, p. 5 of 12, Bates No. GOSS 0267;

11  Exhibit B thereto, pages 7-8 of 12, Bates Nos. GOSS 0128 - GOSS 0129.) Windsor's letter, and

12  the Trust's response thereto, have already been considered by the Court. (*Id.*)

13      9.      The Windsor Doc. Prod. also contains an e-mail sent by Windsor to Eugene

14  Houchins III in July, 2014 - again, four years after the Trust's default on the loan and following

15  Windsor's receipt of an unfavorable ruling from the arbitrators in the *Barnes* case - claiming that

16  "when the trusts of Acker, Collins, Coppock and Stamatov surrendered the life insurance policies

17  in satisfaction of the premium finance loans made by Windsor, Windsor agreed to release the

18  trusts from the loans with no further financial obligation among the parties . . ." (Declaration Of

19  Eugene Houchins III Submitted In Support Of Motion For Summary Judgment Or, In The

20  Alternative, For Partial Summary Judgment ["Houchins Decl."], filed herewith, 3:16-26, and

21  Exhibit A thereto.) Houchins responded with an e-mail denying that claim, as follows:

22              One thing about your e-mail - I don't think it's correct that "Acker, Collins,

23              Coppock, and Stamatov surrendered the life insurance policies in satisfaction of

24              the premium finance loans made by Windsor" or that "Windsor agreed to release

25              the trusts from the loans with no further financial obligations among the parties."

26              My recollection is that the trusts communicated that they weren't willing to pay

27              back the loans, that Windsor took that as a default and demanded signed COO's,

28
DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,
et al., and Cross-Actions*
Civil Action No. 3:14-cv-04651-WHO                                                                    4

1      and that the trusts complied with that demand. I advised them to comply, just like I

2      did with Barnes, because I thought it was required under the security agreement. I

3      don't remember any discussion about "surrender" or "release." I've reviewed the

4      correspondence and it seems to confirm my recollection. Maybe I'm missing

5      something.

6      (Houchins Decl., 3:27-4:14, and Exhibit A thereto.)

7      10.    I obtained from Eugene Houchins III what he then represented to be, and which he

8 has now declared under oath to have been, all documents then in his possession or control that

9 comprised or referred to any communication between him and Windsor or any agent of Windsor.

10 (Houchins Decl., 4:15-20.) I produced all of those documents - comprising more than 120 pages -

11 to Windsor. I also physically reviewed each of those documents. That review revealed:

12        (a)    no document in which Windsor at any time offered to forgive Windsor's

13 loan to the Trust in return for the Trust's agreement to waive, abandon, or assign: (i) the right of

14 the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale

15 of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium

16 payments, interest, and reasonable expenses connected with the sale); and/or (ii) the right of the

17 Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit

18 remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments,

19 interest, and reasonable expenses connected with collecting the death benefit);

20        (b)    no document in which the Trust, at any time, offered to waive, abandon, or

21 assign: (i) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of

22 a public or private sale of the Policy remaining after Windsor had been paid what it was owed on

23 the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale);

24 and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of

25 the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*,

26 premium payments, interest, and reasonable expenses connected with collecting the death

27 benefit), in return for an agreement by Windsor to forgive the loan; and

28

1              (c)     no document comprising an agreement under which the Trust would waive,

2    abandon, or assign: (i) the right of the Trust, pursuant to the Financing Agreement, to receive any

3    proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it

4    was owed on the loan (viz., premium payments, interest, and reasonable expenses connected with

5    the sale); and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any

6    proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan

7    (viz., premium payments, interest, and reasonable expenses connected with collecting the death

8    benefit), in return for Windsor's forgiveness of the loan.

9           11.     On October 2, 2015, pursuant to the order of the Court, I sent an e-mail to Darin

10   Judd, attorney for Windsor, seeking to meet and confer as to (a) the principal amount, and interest

11   due, in connection with Windsor's loan to the Trust; and (b) the categories of costs of collection

12   to which Windsor claimed entitlement, along with the total amounts claimed for each category.

13   Windsor responded to that e-mail on October 16, 2015 as follows:

14             (a)     Loan principal plus interest:

15                       $652,136.36.

16             (b)     Categories of costs of collection to which Windsor claims entitlement:

17                  -     Legal fees incurred for filing responsive pleadings and

18                       motion for partial summary judgment.

19                  -     Expert fees incurred for K. Canoff in support of motion for

20                       partial summary judgment.

21                  -     Legal fees incurred for written discovery.

22                  -     Legal fees incurred for depositions of trustee/putative

23                       trustee.

24                  -     Legal fees incurred for resolution of trustee issue.

25             (c)     Amounts claimed for each category:

26                       Not provided.

27   A true copy of that e-mail string is attached as Exhibit B to this declaration.

28   DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*
Civil Action No. 3:14-cv-04651-WHO                                      6

1    12.    The Trust accepts the accuracy of Windsor's calculation of loan principal plus

2    interest. The Trust does not accept that Windsor is entitled to recover, as costs of collection, all

3    costs allegedly incurred under the categories set forth above.

4    13.    I represented Gregory Barnes in *Gregory Barnes as Trustee of the John L. Bitter*

5    *Irrevocable Trust*, U.S.D.C., N.D. Cal. No. 3:13-cv-01878-WHO, AAA Case No. 74-148-

6    000296-13-S1M. In that capacity, I attended the arbitration hearing therein. Testimony was

7    provided at that hearing on January 15, 2014 by Eugene Houchins III. A true copy of a portion of

8    the transcript of that testimony is attached as Exhibit C to this declaration.

9    I declare under penalty of perjury under the laws of the United States that, to the best of

10    my present knowledge and belief, the foregoing is true.

11    DATED:    October 27, 2015

12    /s/ Joseph Wood
         Joseph Wood

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
PARTIAL SUMMARY JUDGMENT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,*
*et al., and Goss Cross-Actions*
Civil Action No. 3:14-cv-04651-WHO

7

# EXHIBIT A

JUDD 069098

1   HENNEFER FINLEY & WOOD, LLP
    JOSEPH WOOD [Calif. SBN 103596]
2   275 Battery Street, Suite 200
    San Francisco, California 94111
3   Telephone:     (415) 421-6100
    Facsimile:     (415) 421-1815
4
    Attorneys for Defendant and Cross-Claimant,
5   Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust

6

7                        UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9                            SAN FRANCISCO DIVISION

10

11  JOHN HANCOCK LIFE INSURANCE            Civil Action No. 3:14-cv-047651-WHO
    COMPANY (U.S.A.),
12
         Plaintiff,
13
    vs.
14
    MINDY GOSS AS TRUSTEE OF THE
15  JOE E. ACKER FAMILY INSURANCE
    TRUST [incorrectly named herein as the
16  "Joe E. Acker Family Trust"]; and
    WINDSOR SECURITIES, LLC,
17
         Defendants.
18   _____/

19  MINDY GOSS AS TRUSTEE OF THE
    JOE E. ACKER FAMILY INSURANCE
20  TRUST;

21       Cross-Claimant,

22  vs.

23  WINDSOR SECURITIES, LLC,

24       Cross-Defendant.
     _____/
25

26              REQUEST FOR PRODUCTION OF DOCUMENTS

27

28

    REQUEST FOR PRODUCTION OF DOCUMENTS
    *John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-*
    JGWD  069099
    Civil Action No. 3:14-cv-047651-WHO

1    Defendant and cross-claimant, Mindy Goss as Trustee of the Joe E. Acker Family

2    Insurance Trust, hereby requests, pursuant to Federal Rules of Civil Procedure, Rule 34, that

3    defendant and cross-defendant, Windsor Securities, LLC, produce, for inspection and copying by

4    defendant and cross-claimant, Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust,

5    the following documents or other tangible things within the possession or control of defendant

6    and cross-defendant, Windsor Securities, LLC.  The production is to be made at 10:00 a.m. on

7    June 5, 2015, at the offices of Hennefer Finley & Wood, LLP, 275 Battery Street, Suite 200, San

8    Francisco, California 94111.

9    **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:**

10    All documents or other tangible things, including, but not limited to, drafts, contracts,

11    letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

12    decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

13    deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

14    checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

15    reflect, or in any way evidence any communication, whether oral or written, at any time, between

16    defendant and cross-defendant, Windsor Securities, LLC (hereafter referred to as "WINDSOR"),

17    or any partner, principal, member, officer, employee, attorney or agent of WINDSOR, on the one

18    hand, and defendant and cross-claimant, Mindy Goss as Trustee of the Joe E. Acker Family

19    Insurance Trust (hereafter referred to as "M. GOSS"), or any attorney or agent of M. GOSS, on

20    the other.

21    **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

22    All documents or other tangible things, including, but not limited to, drafts, contracts,

23    letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

24    decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

25    deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

26    checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

27    reflect, or in any way evidence any communication, whether oral or written, at any time, between

28    WINDSOR, or any partner, principal, member, officer, employee, attorney or agent of

REQUEST FOR PRODUCTION OF DOCUMENTS
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-*
JG&D  069100
Civil Action No. 3:14-cv-04651-WHO

1

1   WINDSOR, on the one hand, and Ronald Goss as Trustee of the Joe E. Acker Family Insurance

2   Trus (hereafter referred to as "R. GOSS"), or any attorney or agent of R. GOSS, on the other.

3   **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**

4         All documents or other tangible things, including, but not limited to, drafts, contracts,

5   letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

6   decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

7   deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

8   checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

9   reflect, or in any way evidence any communication, whether oral or written, at any time, between

10  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

11  WINDSOR, on the one hand, and the Joe E. Acker Familiy Insurance Trust (hereafter referred to

12  as the "TRUST"), or any attorney or agent of the TRUST, on the other.

13  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

14        All documents or other tangible things, including, but not limited to, letters, notes,

15  minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or

16  arbitration orders, court or arbitration judgments, court or arbitration records, deposition

17  transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and

18  voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in

19  any way evidence any communication, whether oral or written, at any time, between WINDSOR,

20  or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one

21  hand, and Joe E. Acker (hereafter referred to as "MR. ACKER"), or any attorney or agent of MR.

22  ACKER, on the other.

23  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:**

24        All documents or other tangible things, including, but not limited to, letters, notes,

25  minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or

26  arbitration orders, court or arbitration judgments, court or arbitration records, deposition

27  transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and

28  voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in

REQUEST FOR PRODUCTION OF DOCUMENTS
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-*
JH00 069101
Civil Action No. 3:14-cv-047651-WHO

2

1   any way evidence any communication, whether oral or written, at any time, between WINDSOR,

2   or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one

3   hand, and Nadine Acker (hereafter referred to as "MS. ACKER"), or any attorney or agent of MS.

4   ACKER, on the other.

5   **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:**

6          All documents or other tangible things, including, but not limited to, drafts, contracts,

7   letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

8   decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

9   deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

10  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

11  reflect, or in any way evidence any communication, whether oral or written, at any time, between

12  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

13  WINDSOR, on the one hand, and Eugene Houchins III (hereafter referred to as "HOUCHINS"),

14  or any attorney or agent of HOUCHINS, on the other.

15  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:**

16         All documents or other tangible things, including, but not limited to, drafts, contracts,

17  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

18  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

19  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

20  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

21  reflect, or in any way evidence any communication, whether oral or written, at any time, between

22  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

23  WINDSOR, on the one hand, and Joseph Aaron (hereafter referred to as "AARON"), or any

24  attorney or agent of AARON, on the other.

25  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**

26         All documents or other tangible things, including, but not limited to, drafts, contracts,

27  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

28  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

1  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

2  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

3  reflect, or in any way evidence any agreement, whether oral or written, at any time, between

4  WINDSOR, or any partner, principal, member, officer, employee, attorney or agent of

5  WINDSOR, on the one hand, and M. GOSS, or any attorney or agent of M. GOSS, on the other.

6  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9:**

7  All documents or other tangible things, including, but not limited to, drafts, contracts,

8  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

9  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

10  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

11  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

12  reflect, or in any way evidence any agreement, whether oral or written, at any time, between

13  WINDSOR, or any partner, principal, member, officer, employee, attorney or agent of

14  WINDSOR, on the one hand, and R. GOSS, or any attorney or agent of R. GOSS, on the other.

15  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10:**

16  All documents or other tangible things, including, but not limited to, drafts, contracts,

17  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

18  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

19  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

20  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

21  reflect, or in any way evidence any agreement, whether oral or written, at any time, between

22  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

23  WINDSOR, on the one hand, and the TRUST, or any attorney or agent of the TRUST, on the

24  other.

25  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11:**

26  All documents or other tangible things, including, but not limited to, letters, notes,

27  minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or

28  arbitration orders, court or arbitration judgments, court or arbitration records, deposition

REQUEST FOR PRODUCTION OF DOCUMENTS
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-*
JUDD  069103
Civil Action No. 3:14-cv-04765l-WHO

4

transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in any way evidence any agreement, whether oral or written, at any time, between WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one hand, and MR. ACKER, or any attorney or agent of MR. ACKER, on the other.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12:**

All documents or other tangible things, including, but not limited to, letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records, deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in any way evidence any agreement, whether oral or written, at any time, between WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one hand, and MS. ACKER, or any attorney or agent of MS. ACKER, on the other.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13:**

All documents or other tangible things, including, but not limited to, drafts, contracts, letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records, deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in any way evidence any agreement, whether oral or written, at any time, between WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one hand, and HOUCHINS, or any attorney or agent of HOUCHINS, on the other.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14:**

All documents or other tangible things, including, but not limited to, drafts, contracts, letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

JUHANC 069104

1  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

2  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

3  reflect, or in any way evidence any agreement, whether oral or written, at any time, between

4  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

5  WINDSOR, on the one hand, and AARON, or any attorney or agent of AARON, on the other.

6  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15:**

7       All documents or other tangible things, including, but not limited to, drafts, contracts,

8  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

9  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

10  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

11  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

12  reflect, or in any way evidence any communication, whether oral or written, at any time, between

13  WINDSOR, or any partner, principal, member, officer, employee, attorney or agent of

14  WINDSOR, on the one hand, and plaintiff, John Hancock Life Insurance Company (U.S.A.)

15  (hereafter referred to as "JOHN HANCOCK"), or any attorney or agent of JOHN HANCOCK, on

16  the other, in connection with, or in any way related to, GORDILLO, the TRUST, MR. ACKER,

17  MS. ACKER, and/or life insurance policy no. 937837511 issued to the TRUST by JOHN

18  HANCOCK.

19  **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 16:**

20       All documents or other tangible things, including, but not limited to, drafts, contracts,

21  letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration

22  decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records,

23  deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records,

24  checks, and voicemail messages, whether in written or electronic form, that comprise, refer to,

25  reflect, or in any way evidence any agreement, whether oral or written, at any time, between

26  WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of

27  WINDSOR, on the one hand, and JOHN HANCOCK, or any attorney or agent of JOHN

28  HANCOCK, on the other, in connection with, or in any way related to, GORDILLO, the TRUST,

REQUEST FOR PRODUCTION OF DOCUMENTS
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Action*
Civil Action No. 3:14-cv-047651-WHO

6

JH000 069105

MR. ACKER, MS. ACKER, and/or life insurance policy no. 937837511 issued to the TRUST by JOHN HANCOCK.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17:**

All documents or other tangible things, including, but not limited to, drafts, contracts, letters, notes, minutes, memoranda, e-mails, court or arbitration filings, court or arbitration decisions, court or arbitration orders, court or arbitration judgments, court or arbitration records, deposition transcripts, hearing transcripts, discovery requests, discovery responses, bank records, checks, and voicemail messages, whether in written or electronic form, that comprise, refer to, reflect, or in any way evidence any payment of monies, at any time, by WINDSOR, or any partner, principal, member, officer, employee, attorney, or agent of WINDSOR, on the one hand, to JOHN HANCOCK, or any attorney or agent of JOHN HANCOCK, on the other, in connection with, or in any way related to, GORDILLO, the TRUST, MR. ACKER, MS. ACKER, and/or life insurance policy no. 937837511 issued to the TRUST by JOHN HANCOCK.

DATED:     May 6, 2015                    HENNEFER FINLEY & WOOD, LLP

                                          ≤/
                                          _____
                                          Joseph Wood

                                          Attorneys for Defendant and Cross-
                                          Claimant, Mindy Goss as Trustee
                                          of the Joe E. Acker Family Insurance
                                          Trust

1    PROOF OF SERVICE

2    Joseph Wood declares:

3        1.    I am over twenty-one years of age and am not a party to the above-named action.

4    My business address is 275 Battery Street, Suite 200, San Francisco, CA 94111.

5        2.    On May 6, 2015, in San Francisco, California, I served the attached

6                REQUEST FOR PRODUCTION OF DOCUMENTS

7    on the parties to this action.

8        3.    Service was made by causing a true copy of that document to be delivered by hand

9    to:

10                Darin T. Judd
                Thompson Welch
11                3950 Civic Center Drive, Suite 300
                San Rafael, CA 94903
12

13        I declare under penalty of perjury under the laws of the State of California that the

14    foregoing is true.

15    DATED:      May 6, 2015

16

17                                        Joseph Wood

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

JUDD 069108

Subject:  RE: Meet and confer

From:  Darin T. Judd (Darin@twsglaw.com)

To:  Jhcwlaw@yahoo.com;

Date:  Friday, October 16, 2015 1:26 PM

Dear Joe,

Here is what I show in the Premium and Interest Calculations for Collins & Acker:

Collins: Loan & Premiums Total Paid $423,566.45     Accrued Interest (10%) through 10/7/2015
$208,853.51     TOTAL: $632,419.96

Acker: Loan & Premiums Total Paid $436,869.15     Accrued Interest (10%) through 10/7/2015
$215,267.21     TOTAL: $652,136.36

I am attaching separate spreadsheets that show the dates and amounts of payments for each case.  The Categories
of costs of collection that we anticipate claiming are as follows:

1. Legal Fees incurred for Filing Responsive Pleadings and the Motion for Partial Summary Judgment
2. Expert Fees incurred for K. Canoff in support of Motion for Partial Summary Judgment
3. Legal Fees incurred for written discovery
4. Legal Fees incurred for depositions of Trustee/Putative Trustee
5. Legal Fees incurred for resolution of Trustee issue in Acker

Once we have the categories determined I will get the attorney fees incurred complied.  I will also need the amount
of fees incurred by Lauren on these categories.

Please let me know,

Darin

JUDD  069109

**From:** Joseph Wood [mailto:jhcwlaw@yahoo.com]
**Sent:** Friday, October 16, 2015 10:16 AM
**To:** Darin T. Judd
**Subject:** Fw: Meet and confer

Dear Darin:

Please respond to the attached e-mail. As you know, the court ordered this issue to be addressed in the upcoming motion for summary judgment, which I obviously cannot do if you do not respond.

Thank you.

Joe Wood

----- Forwarded Message -----
**From:** Joseph Wood <jhcwlaw@yahoo.com>
**To:** Darin T. Judd <darin@twsglaw.com>
**Sent:** Friday, October 2, 2015 3:11 PM
**Subject:** Meet and confer

Darin:

Please send me your calculation of premiums paid and interest due for Collins and Acker so I can check it against our records.

Please also let me know the categories of costs of collection to which Windsor claims entitlement as well as the totals for each category.

Thank you.

JW

## Attachments

JUDD 069110

# EXHIBIT C

JUDD  069111



JANE ROSE REPORTING

800-825-3341

74 FIFTH AVENUE NYC 10011
JANE ROSE REPORTING.COM
JANE ROSE @ JANE ROSE REPORTING.COM

*American Arbitration Association*

# Gregory P. Barnes Jr.

# V.

# Windsor Securities

*Proceedings of:*
**Hearing Day 3**
**January 15, 2014**

JUDD 069112

American Arbitration Association ·
Barnes v. Windsor Securities

FINAL – January 15, 2014
Hearing Day 3

Page 407

AMERICAN ARBITRATION ASSOCIATION
------------------------------------------------

GREGORY P. BARNES JR. TRUSTEE
OF JOHN L. BITTER IRREVOCABLE
LIFE INSURANCE TRUST,

                    Claimant,


v.


WINDSOR SECURITIES LLC,

                    Respondent.

No. 74-148-00296-13-SIM
------------------------------------------------


PROCEEDINGS OF
Hearing Day 3
January 15, 2014
San Francisco, California

BEFORE
Eugene Lynch
Paul A. Renne
Richard A. Brown


FINAL COPY   [Pages 407 through 683]
JANE ROSE REPORTING 1-800-825-3341

JUDD 069113

American Arbitration Association
Barnes v. Windsor Securities

FINAL - January 15, 2014
Hearing Day 3

Page 408

January 15, 2014
9:00 a.m.

PROCEEDINGS HAD ON JANUARY 15, 2014, held at
American Arbitration Association, One Sansome
Street, 11th Floor, San Francisco, California,
pursuant to Subpoena before Linda Vaccarezza,
a Certified Shorthand Reporter of the State
of California.

JANE ROSE REPORTING
1-800-825-3341

National Court-Reporting Coverage
janerosereporting.com

JUDD 069114

American Arbitration Association
Barnes v. Windsor Securities

FINAL - January 15, 2014
Hearing Day 3

---

Page 409

A P P E A R A N C E S:

Attorneys for Respondent
ARENT FOX, LLP
1675 Broadway
New York, New York 10019
BY: Julius Rousseau, Esquire
    Michael Cryan, Esquire

Attorneys for Claimant
HENNEFER FINLEY & WOOD, LLP
425 California Street, 19th Floor
San Francisco, California 94104
BY: Joseph Wood, Esquire

ALSO PRESENT
Darren Cadiz, Arent Fox
Gregory Barnes

JANE ROSE REPORTING
74 Fifth Avenue
New York, New York  10011
1-800-825-3341
Linda Vaccarezza, RPR, CLR, CRP, CSR. NO. 10201

---

JANE ROSE REPORTING
1-800-825-3341

National Court-Reporting Coverage
janerosereporting.com

American Arbitration Association
Barnes v. Windsor Securities

FINAL - January 15, 2014
Hearing Day 3

```
                                                    Page 614
  1    on the Pawlik loan, right?  If you look below, the
  2    rest of the e-mail is about getting the Pawlik loan
  3    paid off.
  4         A.   Okay.
  5         Q.   Then you go on to conclude your e-mail by
  6    saying, "It is almost time to sign over the other
  7    policies."  What did you mean in March when you said
  8    that?
  9         A.   Where are we now, on the second e-mail?
 10         Q.   The last sentence of your first -- final
 11    e-mail.  It's highlighted on the copy.
 12         A.   Okay.  So we're still on the first page.
 13    Okay, sorry, I was on the second page.
 14              That simply meant that the loans were coming
 15    due.
 16         Q.   So what does it mean to sign over the other
 17    policies?
 18         A.   Well, there was at least one or two other
 19    policies that we were going to sign over, whatever
 20    that meant.  It definitely didn't mean the Bitter
 21    case.
 22         Q.   Well, whatever it meant, you're the one who
 23    wrote it.  What did it mean to sign over the other
 24    policies?
 25         A.   It meant that there was a couple other
```

American Arbitration Association
Barnes v. Windsor Securities

FINAL - January 15, 2014
Hearing Day 3

Page 615

1  policies that were coming due, the loan was, and it
2  was time to relinquish those policies.
3      Q.    That would be Acker, Kopek, Collins and
4  Stanislaus?
5      A.    Right.
6      Q.    But not Bitter?
7      A.    No, absolutely not Bitter.
8      Q.    Why not Bitter in March?
9          ARBITRATOR BROWN:  Can you just clarify, what
10  do you mean by "relinquish the policy"?
11         THE WITNESS:  Well, they had a decision to
12  make.  They had a decision whether they're going to
13  pay back the loan, which they indicated to me they
14  weren't interested in, or they were going to give the
15  policy back and do a mutual release as is a default
16  sale agreement, or they were going to let it go in
17  default.  None of these policies went in default.
18  There was no default notice sent or anything, so.
19  BY MR. ROUSSEAU:
20     Q.    Well, but there's also no requirement for
21  default notice, right?
22     A.    What?
23     Q.    There's no requirement for default notice,
24  right?  You've been through this.  This witness hasn't
25  been asked, didn't you realize that on these dozens of

1                                    PROOF OF SERVICE

2              Joseph Wood declares:

3              1.      I am over twenty-one years of age and am not a party to the above-named action.

4       My business address is 275 Battery Street, Suite 200, San Francisco, CA 94111.

5              2.      On October 27, 2015, in San Francisco, California, I served the attached

6                      DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR
                       SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
7                      PARTIAL SUMMARY JUDGMENT

8       on the parties to this action.

9              3.      Service was made by electronically filing that document with the Court to be

10      served by operation of the Court's electronic filing and notice system.

11             I declare under penalty of perjury under the laws of the United States that the foregoing is

12      true.

13      DATED:         October 27, 2015

14                                          /s/   Joseph Wood
                                                  Joseph Wood
15

16

17

18

19

20

21

22

23

24

25

26

27

28
        DECLARATION OF JOSEPH WOOD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR
        PARTIAL SUMMARY JUDGMENT
        John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss [now Ronald Mark Goss] as Trustee of the Joe E. Acker Family Insurance Trust,
        et al., and Related Cross-Actions
        Civil Action No. 3:14-cv-04651-WHO