EXHIBIT "18"

# AFFIDAVIT OF LAUREN S. ANTONINO

STATE OF GEORGIA )
)
FULTON COUNTY )

I, Lauren S. Antonino, being sworn, states as follows:

1. I am a resident of the State of Georgia, am over 21, of sound mind and body, and have personal knowledge of the matters set forth herein.

2. The Antonino Firm LLC ("Firm"), of which I am the principal, was retained by Windsor Securities, LLC ("Windsor") on or around August 20, 2014 to review potential claims that Windsor might have under Georgia law against Gene Houchins in connection with his role in the financing and handling of life settlement policies that Windsor financed for the Bitter and Collins Trusts. The retention expressly did not include my serving as counsel in a litigation matter and provided that should it subsequently be agreed that I should get involved in a court proceeding, we would amend the retainer agreement, in which case I reserved the right to increase the retainer my Firm required. In June 2016, we amended the Original Retainer Agreement to provide that I would assist with discovery in the then pending Acker and Collins cases.

3. There was no discussion of my coming in as co-counsel with Arent Fox in connection with the Bitter matter, which was then in the process of settling.

4. Prior to my retention, I did receive several phone calls from Jule Rousseau and/or Jule Rousseau with Steven Prusky on the phone. The purpose of these calls, as I understood them,

1

was to give me the background of the life settlement transactions Windsor had been involved in, Mr. Houchins and his companies' roles in them, and damages that Arent Fox and/or Windsor believed Windsor had sustained or was sustaining as a result of possibly tortious conduct by Houchins.

5. The first call I received on any Windsor issue was on or around July 8, 2014 from Mr. Rousseau to talk about the possibility of my retention to analyze possible claims against Houchins in Georgia. Between July 16 and July 19, 2014, I received a few more calls and/or emails.

6. As part of informing me of what had happened, Mr. Rousseau and Mr. Prusky discussed the arbitration in Bitter on these introductory calls, and Mr. Prusky began sending materials from the Bitter arbitration to me. I did not read these materials at that time as I had not been retained and they were extensive. When or shortly after the July 17 email enclosing the hearing transcripts and other materials from the Bitter arbitration was sent to me, Windsor instructed me to "stand down" because Windsor might be settling.

7. I heard again from Windsor on or around August 19, 2014 that Windsor did want to retain my Firm to analyze potential claims against Houchins. I prepared a retainer agreement and worked out terms of representation with Windsor on or around August 20, 2014 accordingly.

8. When I was retained, I was informed that Windsor was looking for potential counsel to file a malpractice claim against Arent Fox.

9. Shortly after retention, I was involved in calls with Darin Judd and Arent Fox regarding the settlement that Arent Fox had been working on with Joe Wood, counsel for Bitter and the Barnes Trust. We discussed whether the Bitter settlement would be confidential and what effect the Bitter settlement would have on other potential claims. My Firm did research on whether

2

"agent" language that Arent Fox was considering in the draft settlement agreement would release potential claims against Houchins, and I thought they would.

10. Darin Judd's firm was retained, to the best of my knowledge, to replace Arent Fox to finish the Bitter settlement and to handle any California litigation or settlement negotiations that might arise from the life settlement transactions in other matters.

11. Prior to July 2014, I had never met or spoken with anyone from Windsor.

12. Prior to July 2014, I had never met or spoken with Jule Rousseau. Similarly, prior to July 2014, I had never met or spoken to anyone at Arent Fox or anyone at Jule Rousseau's former law firm about life insurance settlement transactions, possible claims against Houchins, or anything having to do with Windsor.

13. I did not know Windsor or Mr. Rousseau or his law firms when Mr. Rousseau provided transactional advice regarding the five life settlement policies Windsor purchased that I understand are at issue in the litigation now pending against Mr. Rousseau et al. My Firm and I never gave transactional legal advice to Windsor with respect to any of these policies or regarding perfecting entitlement to ownership of any benefits due under the policies before the insureds died and/or contested the death benefits payable under the policies.

14. I was introduced to Windsor well after the Bitter arbitration, in which Windsor was represented by Arent Fox and Mr. Rousseau.

AFFIANT SAYETH FURTHER NOT this 8th day of June, 2017.

_____
Lauren S. Antonino

3

SUBSCRIBED and SWORN to before me this 01 day of June, 2017.

_Patrice Woodard_
Notary Public in and for the
State of Georgia.
My Commission expires: 2/26/21

4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINDSOR SECURITIES, LLC | : |
| Plaintiff | : Civil Action No. 16-cv-01533 (GBD) |
| v. | : |
| ARENT FOX, LLP and JULIUS ROUSSEAU, III, ESQUIRE | : |
| Defendants | : JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I, Alan L. Frank, Esquire, hereby certify that on the 13th day of September, 2016, served a true and correct copy of the Memorandum of Law In support of Plaintiff Windsor Securities, LLC's Opposition to Defendants' Motion to Compel with supporting Declarations via ECF upon the following:

Peter N. Wang, Esquire
Douglas S. Heffer, Esquire
Adam Gregory Pence, Esquire
Foley & Lardner LLP
90 Park Avenue
New York, New York, 10016
pwang@foley.com
dheffer@foley.com
apence@foley.com

ALAN L. FRANK LAW ASSOCIATES, P.C.

Alan L. Frank, Esquire
1601 Gravesend Neck Rd., Suite 903
Brooklyn, NY 11229
T: 215.935.1000/F: 215.935.1110
E-mail: afrank@alflaw.net
       And
135 Old York Road
Jenkintown, PA 19046
T: 215.935.1000/F: 215.935.1110
E-mail: afrank@alflaw.net
Attorneys for Plaintiff Windsor Securities, LLC

Dated: June 13, 2017