# EXHIBIT "21"

STEPHEN G. LARSON (SBN 145225)
MICHAEL S. CRYAN (SBN 249507)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
Email:        cryan.michael@arentfox.com
    –and–
JULE ROUSSEAU (*Pro Hac Vice* To Be Filed)
**ARENT FOX LLP**
1675 Broadway
New York, NY 10019
Telephone:    212.484.3900
Facsimile:    212.484.3990
Email:        rousseau.jule@arentfox.com

Attorneys for Plaintiff
WINDSOR SECURITIES, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| WINDSOR SECURITIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE CO.; and DOES 1 through 100, inclusive,<br><br>Defendants, | CASE NO. BC488981<br>Hon. Jane Johnson<br>Dept:    308<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT;**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**3. UNFAIR BUSINESS PRACTICES;**<br>**4. INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE; AND**<br>**5. DECLARATORY RELIEF.**<br><br>**DEMAND FOR JURY TRIAL** |

## THE PARTIES

1.      Plaintiff Windsor Securities, LLC ("Windsor") is a Nevada limited liability company with its principal place of business in Ardmore, Pennsylvania. Windsor is the owner of all legal and beneficial interests in the life insurance policy at issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT

2.     Defendant The Lincoln National Life Insurance Company ("Lincoln") is, upon information and belief, an Indiana corporation with its principal place of business in Fort Wayne, Indiana. Lincoln issued the life insurance policy at issue.

3.     Plaintiff is unaware of the true names and capacities of Does 1 through 100, inclusive, and therefore sues said Doe Defendants by their fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants when they are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Doe Defendants is responsible for the occurrences alleged herein and in some manner proximately caused the damages suffered by Plaintiff.

4.     Lincoln and Does 1 through 100 will be referred to collectively as "Defendants" herein.

5.     At all times herein mentioned, unless otherwise indicated, Defendants were the agents and employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of his agent.

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over each of the Defendants because each Defendant has had purposeful contacts with California citizens and has done and/or is doing business in California in a manner that has caused and/or is causing injury to Plaintiff in California.

7.     Venue in this judicial district is proper because each Defendant transacted business in this district, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, the contract was entered into in this district and Defendants committed overt acts in this district.

## GENERAL ALLEGATIONS

8.     This lawsuit concerns a life insurer's breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices. The lawsuit seeks injunctive relief for

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

JUDD  164493

specific performance of the policy, declaratory relief that the policy remains in full force and effect, compensatory and punitive damages, restitution, attorney's fees and costs in compensation for the insurer's wrongful conduct, including the following:

    (a)   Canceling the Policy without providing any notice of cancellation;

    (b)   Failing to notify Windsor of the minimum amount due at least 30 days before the end of the grace period;

    (c)   Failing to acknowledge or implement a request to change the agent for the Policy to Joseph Darracq;

    (d)   Failing to notify the policy holder that no agent was acting as agent for the Policy;

    (e)   Failing to appoint a new or substitute agent for the Policy after terminating the agency contract of Andy Castro;

    (f)   Failing to notify Windsor that no agent was acting as agent for the Policy after Windsor became owner of the Policy;

    (g)   Preventing servicing from Mr. Castro, Mr. Darracq or any agent by terminating Mr. Castro as the agent for the Policy without taking any steps to ensure that a new or substitute agent for the Policy was appointed;

    (h)   Failing to honor the "COVERAGE PROTECTION GUARANTEE REINSTATEMENT PROVISIONS PERIOD" of the Policy, which applies "WITHIN 90 DAYS AFTER THE DATE OF TERMINATION . . .;"

    (i)   Insisting upon a forfeiture for nonpayment on a day named without having notified the policy holder that no agent was acting as agent for the Policy;

    (j)   Insisting upon a forfeiture for nonpayment on a day named without having appointed a new or substitute agent for the Policy;

    (k)   Exercising dominion and control over the premium paid on the Policy in bad faith without providing coverage as required and requiring Windsor to initiate this action before returning the premium to Windsor; and

    (l)   Failing to reinstate the Policy despite a valid request for reinstatement.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

JUDD 164494

9.     Plaintiff has suffered and continues to suffer irreparable injury and damages as a result of acts jointly undertaken by Defendants, and each of them.  Plaintiff avers that Lincoln engaged in numerous other instances of bad faith conduct, including a deliberate pattern of delay and misrepresentation despite the reasonable good faith effort of Plaintiff.  This type of conduct by Lincoln represents a pattern of conduct by Lincoln designed to unethically dispose of certain types of policies and policy holders that Lincoln finds undesirable.  Lincoln engaged in bad faith conduct in order to attack Windsor and Steven Prusky, the Managing Member of Windsor, in order to retaliate against them from the fact that they defeated Lincoln in prior disputes in which Lincoln had engaged in improper conduct, including but not limited to an action entitled *Prusky et al. v. Aetna Life Ins. & Annuity Co. et al.*, Case Nos. 04-4466/4547 (3d Cir.), which was resolved favorably for Windsor and Mr. Prusky and unfavorably for Lincoln.  Upon information and belief, Lincoln engaged in a pattern of improper conduct against Windsor and Mr. Prusky based on malice and animus against them.

***The Life Insurance Policy***

10.     On or about May 13, 2008, Lincoln issued the life insurance policy at issue, Policy No. JJ-7025419 ("Policy").  A true and correct copy of the Policy is attached hereto as Exhibit A.  Pursuant to the Policy, the insured was Martha G. Garcia ("Insured") and the owner was the Martha G. Garcia Family Trust.  The Policy provides life insurance coverage in the amount of $1,000,000.  Lincoln's President and Secretary issued the Policy.

11.     Subsequent to Policy issuance, the Insured, the Martha G. Garcia Family Trust, and Windsor entered in a certain financing agreement, and the Martha G. Garcia Family Trust executed a certain collateral assignment of policy/certificate, assigning the Policy to Windsor as collateral should the Martha G. Garcia Family Trust fail to repay Windsor its loans.

12.     On or about March 5, 2009, Lincoln allegedly sent a letter to the Martha G. Garcia Family Trust stating, *inter alia*, that Lincoln would like to "notify" the Martha G. Garcia Family Trust that Andy Castro, the agent for the Policy, "is no longer contracted with the Lincoln Financial Group" but Windsor has no record that the Martha G. Garcia Family Trust ever

JUDD  164495

1  received this alleged letter.  At no time did Lincoln notify the policy holder that no agent

2  whatsoever was performing as agent for the Policy.

3       13.    On or about July 28, 2009, Windsor recorded its security interest in the Policy and

4  all proceeds therefrom with the Secretary of State of California by filing a UCC financing

5  statement.

6       14.    On or about February 12, 2010, Lincoln acknowledged recordation of the

7  assignment to Windsor on Lincoln's books and records.

8       15.    On or about March 31, 2010, the Insured and the Martha G. Garcia Family Trust

9  agreed that Windsor shall retain the Policy as its own property as satisfaction for Windsor's loan,

10  and appointed Steven G. Prusky, Managing Member of Windsor, as Trustee of the Martha G.

11  Garcia Family Trust.

12       16.    On or about May 7, 2010, Lincoln acknowledged recordation of the appointment

13  of Steven G. Prusky, Managing Member of Windsor, as Trustee of the Martha G. Garcia Family

14  Trust.

15       17.    On or about June 21, 2010, Lincoln sent the Martha G. Garcia Family Trust

16  purported information about the request to change ownership and beneficiary on the Policy.

17       18.    In sending the Martha G. Garcia Family Trust purported information about the

18  request to change ownership and beneficiary on the Policy, Lincoln intentionally omitted

19  information about the agent for the Policy because there was, in fact, no agent for the Policy at

20  that time.  Specifically, on or about June 21, 2010, Ken Elder, a Vice President of Lincoln,

21  intentionally caused Lincoln to omit information about the agent for the Policy by directing

22  Lincoln personnel to omit from the information sent to Windsor the "agent disclosure form as the

23  agent is terminated".

24       19.    On or about July 21, 2010, Lincoln acknowledged recordation of the change of

25  owner and beneficiary of the Policy.  The owner was changed to Windsor Securities, LLC and the

26  beneficiary was changed to Windsor Securities, LLC.  Even after having acknowledged

27  recordation of the change of owner and beneficiary of the Policy to Windsor, Lincoln

28  intentionally omitted information about the agent for the Policy because there was, in fact, no

JUDD  164496

1    agent for the Policy at that time or at any time after Windsor became owner and beneficiary of
2    record.

3        20.    The Policy requires that Lincoln must "notify" the policy owner "and any assignee
4    of the minimum amount due at least 30 days before the end of the grace period." (Policy at p. 7).

5        21.    The Policy provides that the "COVERAGE PROTECTION GUARANTEE
6    REINSTATEMENT PROVISIONS PERIOD" applies "WITHIN 90 DAYS AFTER THE DATE
7    OF TERMINATION AND PRIOR TO THE INSURED'S ATTAINED AGE 121." (Policy at p.
8    4D). *See* Cal. Ins. Code § 10160.

9    *The Usual Practice Regarding Notices of the Amount Due*

10       22.    As noted above, Lincoln was *required* to give Windsor notice of the minimum
11   amount due "at least 30 days before the end of the grace period." (Policy at p. 7).  The usual
12   practice – prior to the events of 2012 at issue in this lawsuit – was that Windsor received from
13   Lincoln notices of the minimum amount due approximately 30 days before the end of the grace
14   period.  The usual practice – prior to the events of 2012 at issue in this lawsuit – was that Windsor
15   then immediately paid the amount due.

16   *Importance of an Agent Regarding Notices of the Amount Due*

17       23.    Windsor was entitled to rely on its agent for the Policy, including relying on its
18   agent to advise Windsor of the amount due prior to the end of the grace period.

19       24.    Agents receive duplicate copies of all premium notices, among other
20   correspondence, and a policy's agent monitors the policy for pending lapses and other
21   considerations.  Agents are intended to assist policy owners in matters concerning the policy.

22       25.    Mr. Castro was the agent on the Policy at the outset.

23       26.    Windsor requested that Mr. Darracq be substituted as the agent for the Policy.

24   *Improper Failure to Appoint New or Substitute Agent*

25       27.    At no time prior to the cancellation of the Policy did Lincoln ever notify Windsor
26   that Lincoln did not substitute Mr. Darracq as the agent for the Policy.

27       28.    At no time prior to the cancellation of the Policy did Lincoln ever notify Windsor
28   (or Windsor's predecessor) that no agent whatsoever was serving as agent for the Policy.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

FIRST AMENDED COMPLAINT

1       29.    At no time ever did Lincoln appoint any new or substitute agent to replace Mr.

2    Castro as the agent for the Policy.

3       30.    In other words, Lincoln, knowing that Windsor (or Windsor's predecessor) relied

4    on the agent to perform his or her obligations, specifically including relying on the agent to advise

5    Windsor (or Windsor's predecessor) of the amount due prior to the end of the grace period,

6    terminated the agency contract of Mr. Castro but never notified Windsor (or Windsor's

7    predecessor) that no agent whatsoever was serving as agent for the Policy.  Since Windsor (or

8    Windsor's predecessor) were never informed that no agent whatsoever was serving as agent for

9    the Policy, Windsor (and Windsor's predecessor) had no knowledge that there was no agent

10    whatsoever to service the Policy.

11       31.    At no time prior to the cancellation of the Policy did Lincoln ever notify Windsor

12    (or Windsor's predecessor) of the reasons that Lincoln terminated the agency of Mr. Castro.

13    Upon information and belief, Lincoln terminated Mr. Castro's appointment as agent based upon

14    Lincoln's belief that Mr. Castro had engaged in fraudulent schemes, misrepresentations, and

15    conspiracies with respect to life insurance policies not at issue in this action.  Despite Lincoln's

16    knowledge and belief as to Mr. Castro's alleged conduct, Lincoln never informed Windsor (or

17    Windsor's predecessor) of these alleged facts.

18       32.    As an insurer, when Lincoln terminated the agency contract of Mr. Castro, Lincoln

19    was under a *duty* to notify the policy holder of the termination.  *See* Couch on Insurance 3d §

20    44.70 ("***When the insurer terminates the agency contract***, it is its *duty* to *notify* third persons,

21    such as *insureds* with whom the agent dealt, ***and inform them of the termination***." (emphasis

22    added)).

23    ***Improper Failure to Notify Windsor of Amount Due Before End of Grace Period***

24       33.    At no time ever did Lincoln notify Windsor of the amount due before the end of a

25    60-day grace period beginning on February 12, 2012.  At no time ever did Lincoln notify

26    Windsor of a pending lapse due to lack of premium "of the amount due before the end of a 60-day

27    grace period beginning on February 12, 2012." (Policy at p. 7).

28

JUDD  164498

1        34.     By failing to notify Windsor of the amount due before the end of a 60-day grace

2 period beginning on February 12, 2012, Lincoln breached the Policy and left Windsor unable to

3 make a timely payment of the amount due.

4        35.     By letter dated June 5, 2012, almost two months after the alleged lapse, Lincoln

5 alleged that Lincoln had sent Windsor a lapse pending notice dated March 8, 2012. However,

6 Lincoln in fact never sent Windsor a lapse pending notice dated March 8, 2012, as evidenced by

7 the fact that Windsor never received any such notice. Lincoln admitted that Lincoln was unable

8 to provide any evidence whatsoever that Lincoln had, in fact, sent Windsor a lapse pending notice

9 dated March 8, 2012.

10        36.     Because Lincoln had terminated Mr. Castro as the agent without notifying

11 Windsor (or Windsor's predecessor) that no agent was serving as agent for the Policy, failed to

12 substitute Mr. Darracq as the agent without notifying Windsor, and failed to have any agent at all

13 assigned to service the Policy without notifying Windsor, Windsor was unknowingly deprived of

14 the assistance of an agent to service the Policy or advise Windsor to make premium payments

15 when due.

16 *Improper Cancellation of the Policy*

17        37.     Prior to receiving any relevant correspondence from Lincoln about the Policy in

18 2012, on or about April 18, 2012, less than one week after the alleged lapse of the Policy (which

19 alleged lapse was unknown to Windsor at the time), Windsor called Lincoln. Lincoln verbally

20 informed Windsor of Lincoln's position that the Policy had lapsed. Windsor offered to pay the

21 amount due immediately. Lincoln advised Windsor to await receipt of information as to the

22 amount due. Windsor in fact paid the amount due immediately upon being advised by Lincoln of

23 the amount due. Payment was made by check dated April 24, 2012, in the amount of $9,100.00.

24        38.     Despite never having notified Windsor of the amount due at least 30 days before

25 the end of the grace period or at any time before the end of the grace period, Lincoln improperly

26 canceled the Policy effective April 12, 2012, as stated in a letter dated April 18, 2012, from

27 Lincoln to Windsor, which letter was received by Windsor after Windsor had contacted Lincoln

28 by telephone on April 18, 2012.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT

JUDD 164499

39.     Because Lincoln never notified Windsor (or Windsor's predecessor) that no agent whatsoever was serving as agent for the Policy, Lincoln cannot insist upon a forfeiture for nonpayment on a day named. *See* Couch on Insurance 3d § 44.72 ("***If the insured has no notice of the revocation of the agency, or that the agent ceased to act,*** the company ***cannot insist upon a forfeiture for nonpayment*** on the day named . . ." (emphasis added)).

40.     Lincoln was required to notify Windsor (or Windsor's predecessor) of the appointment of a new or substitute agent so that the agent may perform obligations resting upon the agent, such as servicing the Policy and advising Windsor (or Windsor's predecessor) to make premium payments under the Policy. *See* Couch on Insurance 3d § 44.72 ("the insurer may also be required to ***notify the insured of the appointment of a new or substitute agent*** so that the insured may perform obligations resting upon him or her" (emphasis added)).

***Receipt and Retention by Lincoln of Full Amount Due***

41.     By its April 18, 2012, letter, Lincoln stated its position that the Policy lapsed on April 12, 2012. Lincoln admitted that Windsor had "the right to apply for reinstatement of the policy" and that "[o]ne of the features of your policy is the Coverage Protection Guarantee." Lincoln instructed Windsor to complete a short reinstatement questionnaire and return it to Lincoln with a check in the amount of at least $9,085.24 by May 18, 2012. As noted, Windsor had sent to Lincoln the full amount due to Lincoln by check dated April 24, 2012, in the amount of $9,100.00.

42.     Lincoln cashed the check, retained and exercised dominion and control over the full amount of premium, but Lincoln has failed and refused to provide coverage. Only after this lawsuit was filed did Lincoln return to Windsor the premium of $9,100.00 paid by Windsor.

***Immediate Request for Reinstatement***

43.     By letter dated April 20, 2012, Windsor duly requested that Lincoln rescind its determination that the Policy lapsed or reinstate the Policy in full.

44.     In addition to paying the amount due, Windsor provided Lincoln with a duly-completed reinstatement questionnaire from Windsor and an additional reinstatement questionnaire by the Insured. The reinstatement questionnaire from Windsor correctly noted that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

JUDD 164500

1   "as discussed on the Policy application", a "yes" answer was correct for the question "Have you

2   ever had or been told by a licensed medical professional to seek treatment because of [certain

3   specified conditions]" because, at the time of the application, there was an indication that the

4   Insured may be told to seek treatment; however, the reinstatement questionnaire from the Insured

5   correctly answered "no" to this question, because the Insured was correct that the Insured was

6   neither told she "had" any of the specified conditions nor did she "seek treatment" for any of the

7   specified conditions. Lincoln well knew of the ambiguity posed by this question and the obvious

8   explanation for the different answers caused by the passage of time.

9   ***Improper Refusal of Reinstatement by Lincoln***

10       45.    Lincoln failed and refused to reinstate the Policy despite the valid request for

11   reinstatement by Windsor.

12       46.    Lincoln seized on this nonexistent discrepancy with respect to the reinstatement

13   questionnaires as a pretext and subterfuge to deny reinstatement of the Policy.

14       47.    By letter dated May 16, 2012, Lincoln demanded that Windsor complete a more

15   lengthy reinstatement or change application and provide a medical release ("HIPAA") form,

16   despite the fact that Lincoln already had a medical release form signed by the Insured.

17       48.    Windsor completed all forms requested by Lincoln within the time deadlines

18   imposed by Lincoln. Windsor renewed its request for reinstatement of the Policy by letters dated

19   May 18, 21, 25, 30, and June 18, 2012. Windsor further renewed its request for reinstatement of

20   the Policy by having its counsel write a letter dated June 22, 2012, to counsel for Lincoln.

21       49.    Despite the good faith efforts of Windsor to correspond with Lincoln, complete all

22   forms requested by Lincoln, and make all payments to Lincoln within the time periods demanded

23   by Lincoln, Lincoln failed to provide timely and complete responses to Windsor. Lincoln's

24   inadequate and incomplete responses raise the issue as to whether Lincoln was simply

25   incompetent in handling the communications and forms submitted by Windsor, or was

26   intentionally failing and refusing to process the communications and forms in a timely and

27   professional manner.

28

JUDD  164501

1    50.    Lincoln denied reinstatement by letter dated July 10, 2012, from Diane Leonard, a

2    Director of Lincoln.

3    ***Admissions by Lincoln as to Additional Improper Conduct***

4    51.    Prior to denying reinstatement, by letter dated June 5, 2012, Lincoln admitted that

5    the "original agent is no longer with Lincoln" and that "Lincoln does not automatically notify the

6    policy owner that the agent has been terminated . . . ."

7    52.    By letter dated June 28, 2012, Lincoln contended that "Lincoln is not required to

8    inform the policy owner when the agent is terminated."

9    53.    Lincoln further admitted in the June 28, 2012, letter: "No agent was assigned to

10   replace Mr. Castro."

11   54.    Lincoln also admitted in the June 28, 2012, letter: "There is no active servicing

12   agent assigned to this policy."

13   55.    Thus, under Lincoln's admitted practice, in this specific instance and on at least

14   some other occasions, Lincoln terminates an agent and then exposes the policy owner to

15   unknowing deprivation of an agent for servicing the Policy and advising the policy owner to

16   make premium payments – without informing the policy owner that no agent is servicing the

17   policy and acting as agent for the policy.

18   56.    Lincoln further admitted that "Lincoln does not always reassign a servicing agent

19   to the policy." Accordingly, it is Lincoln's admitted practice, in this specific instance and on at

20   least some other occasions, that Lincoln knowingly terminates an agent, leaving a policy without

21   a servicing agent, and then takes no steps to ensure that a new or substitute agent is appointed to

22   service the policy.

23   57.    Lincoln also leaves the policy owner unable to obtain the assistance of an agent

24   because Lincoln does not notify the policy owner that no agent is servicing the policy and acting

25   as agent for the policy even after the policy holder requests that Lincoln appoint an agent, as

26   Windsor requested that Lincoln appoint Mr. Darracq here.

27   58.    These unlawful and unfair business practices – failing and refusing to perform its

28   duty to notify a policy owner that no agent was acting as such for the policy, and failing and

JUDD 164502

1   refusing to appoint a new or substitute agent – are then left to continue for an indefinite period of

2   time until, as in the present case, Lincoln then commits a further unlawful and unfair business

3   practice by improperly insisting upon a forfeiture for nonpayment on the day named, despite

4   never having informed the policy owner that no agent was acting as such for the policy, and no

5   new or substitute agent was appointed for the policy.

6      59.   Lincoln also admitted in its June 5, 2012 letter that it "believes it is the policy

7   owner's responsibility to monitor the policy and increase premiums if need be." By letter dated

8   June 28, 2012, Lincoln stated that the policy owner "should closely monitor the cash value to

9   determine when or if it may become necessary to pay money into the policy to keep it from

10  lapsing." Therefore, Lincoln completely disclaimed the requirement in the Policy that *Lincoln*

11  must "*notify*" the policy owner of the premium due date 30 days before the end of the grace

12  period, and that *Lincoln* must provide to the policy owner a calculation "of the minimum amount

13  due." (Policy at p. 7 (emphasis added)).

14     60.   Contrary to Lincoln's present position as expressed in the June 5 and 28, 2012,

15  letters, the Policy at issue in this lawsuit imposes requirements upon Lincoln that Lincoln has

16  willfully ignored. Prior to the alleged lapse of the Policy, Lincoln never informed Windsor that

17  Lincoln was taking the position – despite the Policy language providing to the contrary – that it

18  was *Windsor's* responsibility to notify itself of the timing of the grace period, and that it was

19  *Windsor's* responsibility to calculate "the minimum amount due." (Policy at p. 7).

20     61.   Thus, Lincoln admittedly conducted this unlawful and unfair business practice of

21  turning on its head the requirements that *Lincoln* was responsible for notifying the policy owner

22  of the timing of the grace period, and that *Lincoln* was responsible for calculating "the minimum

23  amount due" (Policy at p. 7), by unilaterally and secretly requiring *Windsor* to somehow notify

24  itself of the timing of the grace period, and forcing *Windsor* to calculate "the minimum amount

25  due," despite the express provisions of the Policy, which assigns those responsibilities to Lincoln,

26  not Windsor. (Policy at p. 7).

27     62.   Lincoln's business practices and conduct described herein were intended by the

28  President, Vice President, Secretary, and Director of Lincoln identified above to cause injury to

1  Windsor or were despicable conduct carried on by the President, Vice President, Secretary, and

2  Director of Lincoln identified above with a willful and conscious disregard of Windsor's rights,

3  and were intentional misrepresentations, negligent misrepresentations, deceit or concealment of

4  material facts known to Lincoln with the intent to deprive Windsor of property, legal rights, or to

5  otherwise cause injury, such as to constitute malice, oppression or fraud. Alternately, one or more

6  officers, directors or managing agents of Lincoln, including, but not limited to, the President,

7  Vice President, Secretary, and Director of Lincoln identified above, authorized or ratified the

8  wrongful conduct described above with the intent to deprive Windsor of property, legal rights, or

9  to otherwise cause injury, such as to constitute malice, oppression or fraud.

10  ## FIRST CAUSE OF ACTION

11  ### Breach of Contract

12  ### (Against Lincoln)

13  63.    Plaintiff hereby incorporates as though fully restated herein the foregoing

14  paragraphs of this Complaint.

15  64.    The Insured, the Martha G. Garcia Family Trust and Lincoln entered into the

16  Policy.

17  65.    The Insured and the Martha G. Garcia Family Trust assigned to Windsor all legal

18  and beneficial interests in the Policy.

19  66.    Lincoln acknowledged recordation of the assignment to Windsor on Lincoln's

20  books and records.

21  67.    Windsor fully performed its obligations under the Policy.

22  68.    Lincoln has repeatedly and without justification breached its obligations under the

23  Policy by, among other things:

24          (a)    Canceling the Policy without providing any notice of cancellation;

25          (b)    Failing to notify Windsor of the minimum amount due at least 30 days

26                 before the end of the grace period;

27          (c)    Failing to acknowledge or implement a request to change the agent for the

28                 Policy to Mr. Darracq;

JUDD  164504

(d)   Failing to notify the policy holder that no agent was acting as agent for the Policy;

(e)   Failing to appoint a new or substitute agent for the Policy after terminating the agency contract of Mr. Castro;

(f)   Failing to notify Windsor that no agent was acting as agent for the Policy after Windsor became owner of the Policy;

(g)   Preventing servicing from Mr. Castro, Mr. Darracq or any agent by terminating Mr. Castro as the agent for the Policy without taking any steps to ensure that a new or substitute agent for the Policy was appointed;

(h)   Failing to honor the "COVERAGE PROTECTION GUARANTEE REINSTATEMENT PROVISIONS PERIOD" of the Policy, which applies "WITHIN 90 DAYS AFTER THE DATE OF TERMINATION . . .;"

(i)   Insisting upon a forfeiture for nonpayment on a day named without having notified the policy holder that no agent was acting as agent for the Policy;

(j)   Insisting upon a forfeiture for nonpayment on a day named without having appointed a new or substitute agent for the Policy;

(k)   Exercising dominion and control over the premium paid on the Policy in bad faith without providing coverage as required and requiring Windsor to initiate this action before returning the premium to Windsor; and

(l)   Failing to reinstate the Policy despite a valid request for reinstatement.

69.   Windsor is informed and believes and thereon alleges that Lincoln has breached the contract by other acts or omissions of which Windsor is presently unaware.  Windsor will amend this Complaint at such time as it discovers the other acts or omissions of Lincoln constituting further breach of contract.

70.   As a direct, proximate, and foreseeable result of Lincoln's breaches of contract, Windsor suffered monetary loses in an amount to be proven at trial, but exceeding $25,000, exclusive of past and future interest thereon.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

JUDD  164505

1    71.    As a further result of the unwarranted breach of the Policy by Lincoln, Windsor

2   has suffered other foreseeable damages, and Windsor was compelled to retain legal counsel to

3   enforce its rights under the Policy, in a sum to be determined at the time of trial.

4    72.    In addition, as a direct and proximate result of Lincoln's breaches of contract,

5   Lincoln is causing irreparable harm to Windsor's expectations under the Policy and coverage

6   under the Policy.  Windsor is therefore entitled to preliminary and permanent injunctive relief

7   against Lincoln restraining Lincoln from purporting to terminate the Policy or interfering with

8   Windsor's rights under the Policy and granting specific performance of the Policy.

9                        **SECOND CAUSE OF ACTION**

10              **Breach of Covenant of Good Faith and Fair Dealing**

11                              **(Against Lincoln)**

12    73.    Plaintiff hereby incorporates as though fully restated herein the foregoing

13   paragraphs of this Complaint.

14    74.    The Insured, the Martha G. Garcia Family Trust and Lincoln entered into the

15   Policy.

16    75.    The Insured and the Martha G. Garcia Family Trust assigned to Windsor all legal

17   and beneficial interests in the Policy.

18    76.    Lincoln acknowledged recordation of the assignment to Windsor on Lincoln's

19   books and records.

20    77.    Lincoln has unreasonably, unfairly and in bad faith breached the covenant of good

21   faith and fair dealing and interfered with Windsor's right to receive the coverage and benefits of

22   the Policy by, among other things:

23              (a)    Canceling the Policy without providing any notice of cancellation;

24              (b)    Failing to notify Windsor of the minimum amount due at least 30 days

25                     before the end of the grace period;

26              (c)    Exercising dominion and control over the premium paid on the Policy in

27                     bad faith without providing coverage as required;

28

JUDD  164506

(d)   Failing to acknowledge or implement a request to change the agent for the Policy to Mr. Darracq;

(e)   Failing to notify the policy holder that no agent was acting as agent for the Policy;

(f)   Failing to appoint a new or substitute agent for the Policy after terminating the agency contract of Mr. Castro;

(g)   Preventing servicing from Mr. Castro, Mr. Darracq or any agent by terminating Mr. Castro as the agent for the Policy without taking any steps to ensure that a new or substitute agent for the Policy was appointed;

(h)   Failing to honor the "COVERAGE PROTECTION GUARANTEE REINSTATEMENT PROVISIONS PERIOD" of the Policy, which applies "WITHIN 90 DAYS AFTER THE DATE OF TERMINATION . . .;"

(i)   Insisting upon a forfeiture for nonpayment on a day named without having notified the policy holder that no agent was acting as agent for the Policy;

(j)   Insisting upon a forfeiture for nonpayment on a day named without having appointed a new or substitute agent for the Policy; and

(k)   Failing to reinstate the Policy despite a valid request for reinstatement.

78.     Windsor is informed and believes and thereon alleges that Lincoln has breached its duties of good faith and fair dealing owed to Windsor by other acts or omissions of which Windsor is presently unaware. Windsor will amend this Complaint at such time as it discovers the other acts or omissions of Lincoln constituting further breach of the covenant of good faith and fair dealing.

79.     As a direct, proximate, and foreseeable result of aforementioned wrongful conduct of Lincoln, Windsor has suffered, and will continue to suffer in the future, monetary loses in an amount to be proven at trial, but exceeding $25,000, exclusive of past and future interest thereon.

80.     As a further direct, proximate, and foreseeable result of aforementioned wrongful conduct of Lincoln, Windsor has suffered, and will continue to suffer in the future, consequential

JUDD  164507

1    damages and other incidental damages and out-of-pocket expenses, all to Windsor's general

2    damages in a sum to be determined at the time of trial.

3       81.    As a further direct, proximate, and foreseeable result of aforementioned wrongful

4    business practices and conduct of Lincoln, Windsor was compelled to retain legal counsel to

5    obtain the benefits and coverage due under the Policy. Therefore, Lincoln is liable to Windsor for

6    those attorney's fees incurred by Windsor in order to obtain the benefits under the Policy in a sum

7    to be determined at the time of trial.

8       82.    Lincoln's business practices and conduct described herein were intended by

9    Lincoln to cause injury to Windsor or were despicable conduct carried on by Lincoln with a

10   willful and conscious disregard of Windsor's rights, and were intentional misrepresentations,

11   negligent misrepresentations, deceit or concealment of material facts known to Lincoln with the

12   intent to deprive Windsor of property, legal rights, or to otherwise cause injury, such as to

13   constitute malice, oppression or fraud under California Civil Code Section 3294, thereby entitling

14   Windsor to punitive damages in an amount appropriate to punish or set an example of Lincoln.

15                              **THIRD CAUSE OF ACTION**

16                               **Unfair Business Practices**

17                                  **(Against Lincoln)**

18      83.    Plaintiff hereby incorporates as though fully restated herein the foregoing

19   paragraphs of this Complaint.

20      84.    Lincoln has engaged in unfair competition and unfair business practices in

21   violation of California Business and Professions Code Sections 17200 *et seq.* by engaging in

22   activities that are unlawful, unfair, and fraudulent, including but not limited to all of the conduct

23   alleged herein.

24      85.    Lincoln's actions were undertaken with the purpose of harming Windsor in

25   retaliation for the fact that the Policy was lawfully acquired by Windsor – Lincoln opposes the

26   purchase and sale of policies on the secondary market and any financing that may have been

27   obtained by persons or entities purchasing life insurance.

28

ARENT FOX LLP
ATTORNEYS AT LAW
   LOS ANGELES

JUDD  164508

86.     As a direct and proximate result of Lincoln's conduct, Windsor has been harmed in its business as described above. Windsor has thus suffered damage to its business. Unless enjoined, Lincoln will continue to conduct unlawful, unfair and fraudulent business practices, to Windsor's great and irreparable injury.

87.     Windsor is therefore entitled to restitution of all monies obtained by Lincoln as a result of these unlawful, unfair and fraudulent business practices and preliminary and permanent injunctive relief against Lincoln to prevent any further acts of unfair business practices against Windsor.

88.     Windsor is therefore further entitled to an award of attorney's fees pursuant to law, including but not limited to California Code of Civil Procedure Section 1021.5.

## FOURTH CAUSE OF ACTION

### Injunctive Relief/Specific Performance

### (Against Lincoln)

89.     Plaintiff hereby incorporates as though fully restated herein the foregoing paragraphs of this Complaint.

90.     Lincoln has engaged in breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices. As a result of Lincoln's conduct, Windsor is currently left without the coverage on the Policy for which Windsor paid. Money damages alone are inadequate to compensate Windsor for the harm, because Windsor has suffered and continues to suffer immediate and irreparable injury due to inadequacy of legal remedies because Windsor is currently left without coverage on the Policy.

91.     Windsor is therefore entitled to preliminary and permanent injunctive relief, specific performance and other equitable relief to enforce the provisions of the Policy to keep the Policy in full force and effect, or, alternatively, to enforce the provisions of the Policy to reinstate it to full force and effect.

JUDD  164509

## FIFTH CAUSE OF ACTION

### Declaratory Relief

### (Against Lincoln)

92.     Plaintiff hereby incorporates as though fully restated herein the foregoing paragraphs of this Complaint.

93.     An actual controversy has arisen and now exists between Windsor and Lincoln, including but not limited to the following:

(a)   Windsor contends that the Policy remains in full force and effect.  Lincoln contends that the Policy has terminated.

(b)   Windsor contends that Lincoln must process the change of agent to Mr. Darracq.  Lincoln contends that is permitted to refuse to allow Mr. Darracq to serve as the agent for the Policy.

(c)   Windsor contends that Windsor is entitled to have an agent for the Policy. Lincoln contends that, "Lincoln does not always reassign a servicing agent to the policy," and thus Windsor is not entitled to have an agent for the Policy.

(d)   Windsor contends that it is entitled to be notified when Lincoln terminates the agent for the Policy.  Lincoln contends that, "Lincoln is not required to inform the policy owner when the agent is terminated" and that, "Lincoln does not automatically notify the policy owner then the agent has been terminated," and thus Windsor is not entitled to be notified if Lincoln terminates the agent for the Policy.

(e)   Windsor contends that it is entitled to be notified when the agent ceases to perform as agent for the Policy, and that Lincoln breached the Policy when Lincoln terminated Mr. Castro as agent for the Policy but failed to notify the policy holder that no agent was performing as agent for the Policy. Lincoln contends that, "Lincoln is not required to inform the policy owner when the agent is terminated" and that, "Lincoln does not automatically

JUDD  164510

1                        notify the policy owner then the agent has been terminated," and thus

2                        Windsor is not entitled to be notified if the agent ceases to perform as agent

3                        for the Policy, and that Lincoln did not breach the Policy when Lincoln

4                        terminated Mr. Castro as agent for the Policy but failed to notify the policy

5                        holder that no agent was performing as agent for the Policy.

6          (f)     Windsor contends that Lincoln must notify Windsor "of the minimum

7                        amount due at least 30 days before the end of the grace period." Lincoln

8                        contends that "it is the policy owner's responsibility to monitor the policy."

9          (g)    Windsor contends that Lincoln must provide to Windsor a calculation "of

10                      the minimum amount due." Lincoln contends that "it is the policy owner's

11                      responsibility to monitor the policy and increase premiums if need be."

12          (h)    Windsor contends that Lincoln was required to reinstate the Policy.

13                      Lincoln contends that Lincoln was not required to reinstate the Policy.

14     94.     Windsor seeks a judicial declaration as to these issues:

15          (a)    Whether Windsor, as a policy owner, is entitled to be notified by Lincoln if

16                      no agent is acting as agent for the Policy;

17          (b)    Whether Windsor, as a policy owner, is entitled to the servicing of an

18                      agent, including but not limited to receiving communications from the

19                      agent with respect to the Policy;

20          (c)    Whether Lincoln may properly fail to appoint a new or substitute agent

21                      when Lincoln terminates the agent for the Policy;

22          (d)    Whether Lincoln may properly fail to appoint an agent for a Policy upon

23                      the request of Windsor, the policy owner;

24          (e)    Whether Lincoln may insist upon a forfeiture for nonpayment on the day

25                      named, after having terminated an agent for the Policy without notifying

26                      the policy owner that there was no agent acting as agent for the Policy; and

27

28

JUDD 164511

1             (f)     Whether Lincoln may insist upon a forfeiture for nonpayment on the day

2                    named, after having terminated an agent for the Policy without appointing

3                    a new or substitute agent.

4      95.     Windsor therefore seeks a judicial declaration of its rights under the Policy,

5  including but not limited to a judicial declaration that the Policy is, and at all relevant times was,

6  in full force and effect, or, alternatively, that the Policy is reinstated and is in full force and effect.

7                       **PRAYER FOR RELIEF**

8      WHEREFORE, Plaintiff prays for judgment against Defendants for the following relief:

9      (a)     Actual and consequential damages caused by Defendants' wrongful conduct in an

10           amount to be proven at trial, but exceeding $25,000, exclusive of past and future

11           interest thereon;

12      (b)     Restitution;

13      (c)     Punitive damages for Defendants' breaches of their fiduciary duties and other

14           wrongful conduct described herein;

15      (d)     For preliminary and permanent injunctive, specific performance and other

16           equitable relief against Lincoln to enforce the provisions of the Policy to keep the

17           Policy in full force and effect, or, alternatively, to enforce the provisions of the

18           Policy to reinstate the Policy to full force and effect;

19      (e)     An order compelling Lincoln to take all action necessary to restore the Policy in

20           full force and effect, or, alternatively, to reinstate the Policy to full force and

21           effect;

22      (f)     A judicial declaration that the Policy is, and at all relevant times was, in full force

23           and effect, or, alternatively, that the Policy is reinstated and is in full force and

24           effect;

25      (g)     Pre- and post-judgment interest on damages;

26      (h)     Attorney's fees and costs of court as applicable by law; and

27      (i)     Such further relief as the Court deems just and appropriate.

28

JUDD  164512

1    Dated: April 23, 2013                    **ARENT FOX LLP**

2

3                                             By:_____

4                                                MICHAEL S. CRYAN
                                                 Attorneys for Plaintiff
5                                                WINDSOR SECURITIES, LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT

JUDD  164513

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff demands a trial by jury.

3

4 Dated: April 23, 2013            **ARENT FOX LLP**

5

6          By:_____

           MICHAEL S. CRYAN

7            Attorneys for Plaintiff

           WINDSOR SECURITIES, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

COMPLAINT

JUDD 164514