# EXHIBIT "22"

R. Willis Orton (2484)
Shawn T. Richards (11949)
KIRTON & McCONKIE
60 East South Temple, Suite 1800
P.O. Box 45120
Salt lake City, Utah 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
worton@kmclaw.com
srichards@kmclaw.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

| | |
|---|---|
| PHS VARIABLE INSURANCE COMPANY, | : |
| | : **MEMORANDUM IN SUPPORT OF** |
| Plaintiff, | : **MOTION TO DISMISS** |
| | : |
| vs. | : Case No. 2:10cv67 |
| | : |
| THE SHELDON HATHAWAY FAMILY | : Judge Dale A. Kimball |
| INSURANCE TRUST, by and through its trustee, | : |
| DAVID HATHAWAY, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Defendant The Sheldon Hathaway Insurance Trust ("Trust" or "Defendant"), through its

attorneys, Kirton & McConkie, submits this Memorandum in Support of its Motion to Dismiss

the First Amended Complaint For Declaratory Judgment [ECF Doc. No. 15] ("FAC") filed by

PHL Variable Insurance Company's ("PHL").

### PRELIMINARY STATEMENT

The FAC seeks to rescind the subject life insurance policy under each of its two Counts,

the first alleging fraud and material misrepresentations and the second alleging violations of

insurable interest law. The FAC, however, contains no specific factual allegations that support

NYC/496091.1

JUDD 075285

its fraud or insurable interest violation claims. The FAC merely alleges that PHL conducted an investigation (without alleging the dates or details of this so-called investigation), which "did not reveal any basis on which a person could reasonably could conclude that Mr. Hathaway [the insured] had a net worth of $6,250,000 or other annual income of $484,000 on the date of the Application." FAC ¶ 25. The fact that PHL could not verify the financial representations made in the policy's application nearly two years after they were made does not form a justifiable basis under Rules 9(b), 11(b) or Utah's contestability statute to commence an action for rescission. PHL is not permitted to commence this action without a factual basis and assert fraud and insurable interest claims with the hope of using formal discovery after the expiration of the contestability period to justify its allegations.

In addition, PHL seeks to both rescind the policy and retain the premiums paid therefor to compensate it for damages that it has allegedly sustained, including commissions it had paid to its agent in connection with the issuance of the policy. PHL's claim to retain premiums must be dismissed and/or stricken. First, this claim violates the election of remedies doctrine. It is axiomatic that if the policy is rescinded (which it cannot be here), PHL must return the premiums to the policy's owner to return both parties to the status quo.

Second, even if PHL has incurred costs and expenses in connection with the policy, the costs and expenses alleged in the FAC (e.g., underwriting expenses, payment of commissions, administration of the policy, post-issuance investigation and commencement of this action (see FAC ¶ 30)) did not confer a benefit on the trust that owns the policy. Therefore, they cannot be recovered as a form of restitution damages under Utah law. Indeed, the courts have made clear that an insurer has the burden of recovering commissions paid to its agents and cannot offset the same from unearned premiums that must be returned to the policy owner upon cancellation or

NYC/496091.1

2

JUDD 075286

rescission.

## FACTUAL BACKGROUND[1]

On December 10, 2007, the Trust submitted an application (the "Application") to PHL for a life insurance policy on the life of Sheldon Hathaway ("Hathaway"), which represented that Hathaway had a net worth of $6.25 million and other income of $484,000. *Id.* ¶¶ 19-21. hathaway and the Trust affirmed that the statements in the Application were complete and true to the best of their knowledge. *Id.* ¶ 23. On January 31, 2008, PHL issued a $4 million life insurance policy, insuring Hathaway's life and bearing Policy No. 97526533 (the "Policy"), to the Trust. *Id.* ¶ 24. A copy of the Policy is annexed hereto as Exhibit A.[2]

Nearly two years after issuing the Policy, PHL sent letters to Hathaway, the Trust, and its agent (the "PHL Letters"), seeking to verify representations previously made in the Application. *Id.* ¶ 25. A copy of the PHL Letter sent to the trustee of the Trust, dated _____, is annexed hereto as Exhibit B. The PHL Letters received no response. *Id.* On January 28, 2010, 3 days before the expiration of the Policy's two-year contestability period, PHL commenced this action [ECF Doc. No. __]. On June 30, 2010, PHL filed the FAC. The FAC alleges, without any factual support whatsoever, that "[t]he statements made during the application process with respect to Mr. Hathaway's net worth, annual income and source of funding were each materially incorrect and/or fraudulent." FAC ¶ 25. The FAC also alleges (again, without any factual support), that the Policy "was procured from Phoenix in furtherance of a SOLI [stranger

---

[1] The following facts are drawn from the allegations of the FAC, which, for purposes of this motion only, are deemed to be true.

[2] The Court may consider the documents attached to this motion because they are referred to in the FAC and are central to PHL's claims. *See Wright v. Associated Ins. Companies Inc.* 29 F.3d 1244, 1248 (7th Cir. 1994); *see also McCready v. eBay, Inc.* 453 F.3d 882, 891 (7th Cir. 2006). Exh. A has been redacted in accordance with FRCP Rule 5.2.

3

originated (or stranger owned) life insurance] scheme." *Id.* ¶ 6. As a result, PHL seeks to rescind the Policy and, at the same time, retain the premiums paid for the Policy. *Id.* ¶¶ 29, 31.

## ARGUMENT

## I. THE FRAUD CLAIMS IN THE FIRST AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THEY FAIL TO COMPLY WITH RULE 9(b)

Rule 9(b) requires that, "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah,* 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation marks and citation omitted). The complaint must "'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Sikkenga,* 472 F.3d at 727 (quoting *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000)). Moreover, claims of underlying schemes and other wrongful activities that purportedly resulted in the submission of a fraudulent insurance application to an insurer are included in the "circumstances constituting fraud and mistake" that must be pled with particularity under Rule 9(b). *See Sikkenga,* 472 F.3d at 727 ("Underlying schemes and other wrongful activities that result in the submission of fraudulent claims [to the federal government in violation of the False Claims Act] are included in the 'circumstances constituting fraud and mistake' that must be pled with particularity under Rule 9(b).") (internal quotation marks and citation omitted); *see also Principal Life Ins. Co. v. Mosberg,* No. 09-cv-22341, 2010 WL 473042, at *5 (S.D. Fla. Feb. 5, 2010) (holding that plaintiff failed to plead fraudulent STOLI scheme with particularity as required by Rule 9(b)).

### A. The Fraud Claims Lack Any Good Faith Factual Basis

PHL's fraud claims must be dismissed because they fail to allege any facts justifying the

same. Paragraph 25 of the FAC alleges, in relevant part, as follows:

> Contrary to the representations contained in the Application, Mr.
> Hathaway did not have a net worth of $6,250,000 or other annual
> income of $484,000 on the date of the Application. In an effort to
> verify that the financial representations contained in the
> Application were true and correct, Phoenix sent letters requesting
> documents from Mr. Hathaway, the Trustee and the insurance
> agent who sold the Policy that substantiated the financial
> representations that were made during the application process.
> Phoenix did not receive a response to any of these letters prior to
> initiating this litigation. Notwithstanding these requests, Phoenix's
> own independent investigation did not reveal any basis on which a
> person could reasonably conclude that Mr. Hathaway had a net
> worth of $6,250,000 or other annual income of $484,000 on the
> date of the Application. * * *

The FAC fails to allege any facts supporting the contention that the representations in the

Application were false or fraudulent. None of the recipients of the PHL Letters had an

obligation to respond to the same nearly two years after the Policy was issued and the lack of a

response does not mean that the representations in the Application were false. PHL's "own

independent investigation" admittedly failed to discover any facts indicating that the

representations in the Application were false. Indeed, PHL has not alleged any facts that would

support its contention that the representations in the Application were false on the dates that it

was signed by Hathaway and the trustee of the Trust (December 10, 2007). *See* FAC ¶ 23. PHL

has not alleged that it has discovered any documents or other evidence indicating that the

financial representations in the Application were false when made (*e.g.*, "Phoenix has reviewed

Hathaway's income tax returns for the relevant calendar year, which state that his gross income

NYC/496091.1

5

was materially less than represented in the Application"). Rather, PHL fraud allegations are completely baseless.[3]

In addition, to the extent that PHL alleges fraud against the Trust by virtue of a so-called "STOLI scheme" (FAC ¶ 6), the FAC fails to comply with the specificity requirements of Rule 9(b) because it does not specify the role and acts, if any, that Davis Hathaway, the trustee of the Trust, played in the "scheme." *See Mosberg*, 2010 WL 473042, at *5 ("the general allegations that Winer [a producer] executed a scheme, solicited Loshin's participation, facilitated the establishment of the Loshin Trust, and facilitated the transfer of benefits to the Loshin Trust do not explain *how* he did any of this.").

A plaintiff cannot properly allege fraud without alleging facts that affirmatively substantiate the claim. *See Sikkenga*, 472 F.3d at 728 ("The chain of causation required to tie [defendant's] alleged misrepresentations to a possible contract termination is attenuated, and lacks sufficient factual allegations to be anything more than conjecture."); *Koch*, 203 F.3d at 1237 ("paragraph twenty-two [of the complaint] did not state that plaintiff's allegations of fraud were based on information and belief, nor did it set forth any factual basis to support such belief. Instead, paragraph twenty-two broadly alleged that Defendants concealed the true value of KII stock <u>without informing the court or the Defendants of the source for this contention</u>. * * * Therefore, the district court properly precluded plaintiffs from pursuing fraud claims based on the broadly stated allegations of paragraph twenty-two.") (emphasis added); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998) (cited with approval by *Sikkenga* -- "even where  allegations are based on information and belief, the

---

[3] Moreover, PHL's failure to specifically identify "the insurance agent who sold the Policy that substantiated the financial representations that were made during the application process" (FAC ¶ 25) is fatal to its fraud claims. *See Windy City,* 536 F.3d at 668; *see also United States ex rel. Robinson v. Northrop Corp,* 149 F.R.D. 142, 145 (N.D.Ill. 1993) ("it is not enough for plaintiffs to allege that a 'Northrop engineer' or 'Northrop employee' or 'superiors' committed fraudulent acts").

6

JUDD 075290

complaint must set forth a factual basis for such belief. [¶] In his complaint, Thompson provided no factual basis for his belief that defendants submitted claims for medically unnecessary services other than his reference to statistical studies. There is no indication, however, that these studies directly implicate defendants. Thompson's allegations, therefore, amount to nothing more than speculation, and thus fail to satisfy Rule 9(b).") (footnote and citations omitted; emphasis added).

Moreover, a plaintiff must allege a factual basis for its fraud claims even where the information is exclusively in the control of others. *See Sikkenga*, 472 F.3d at 728 (even in circumstances where allegations of fraud may be based on information and belief, because the facts are peculiarly within the opposing party's knowledge, Rule 9(b) continues to require the complaint to "set [ ] forth the factual basis for the plaintiff's belief." *Koch*, 203 F.3d at 1237."). The reason is simple. A failure to properly plead all of the elements of a fraud claim with specificity violates the purpose of the heightened pleading requirements of Rule 9(b) – "protecting defendants from frivolous suits, or spurious charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (citations and internal quotation marks omitted; cited with approval by *Sikkenga*). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them [*sic*] to learn the complaint's bare essentials through discovery and may needlessly harm defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *Clausen*, 290 F.3d at 1313 n.24 (citation omitted). This is precisely the situation here.

Here, PHL seeks to rescind the Policy and keep the premiums, but has been unable to discover any facts disproving the representations made in the Application. It has improperly

7

JUDD 075291

commenced this action, in violation of Rules 9(b), 11(b) and Utah's contestability statute to use the formal discovery process in an effort to confirm its speculative allegations and/or force a settlement with the trust. These tactics are prohibited.

## II.   THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE AN INSURABLE INTEREST VIOLATION

The "no set of facts" standard established by *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), no longer applies. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 562, 563 (2007). As set forth in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation [under FRCP Rule 8] to provide the 'grounds' of his 'entitl[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citations omitted). FRCP Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3 (emphasis added). "[T]he threshold requirement of Rule 8(a)(2) [necessitates] that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Id.* at 557.

A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 556 n.3 (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009) ("Rule 8 does not empower [plaintiff] to plead bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). Moreover, the plaintiff must "nudge [his/her] claims across the line from conceivable to plausible" in order survive a motion to dismiss. *Id.* at 1974 (emphasis added).

8

JUDD 075292

**A.     The First Amended Complaint's Allegations That the Policy Lacks Insurable Interest Do Not Satisfy the Plausibility Standard**

The FAC alleges in paragraph 6 (without any facts alleged in support) that the Policy "was procured from Phoenix in furtherance of a SOLI scheme," and, in paragraph 36 (again, without any specific facts alleged in support), as follows:

> The Policy was purchased with the intent to benefit a third party, which lacked the requisite insurable interest in Mr. Hathaway's life at the time of issuance. The Policy's issuance violates the letter and spirit of Utah law on insurable interest and is inconsistent with the state's public policy of prohibiting the wagering on lives of others. The application for and the purported ownership of the Policy by the Trust is merely a sham transaction intended to circumvent and violate applicable insurable interest laws and public policy.

These conclusory allegations do not make out a claim for an insurable interest violation under Utah law. First, there are no statutes in Illinois codifying its insurable interest rules. Illinois' insurable interest law is defined by common law. The Illinois Supreme Court has made clear that an insured may purchase a life insurance policy for the benefit of anyone he or she chooses, regardless if the beneficiary has an insurable interest in the insured:

> [O]ur courts have repeatedly held that one may insure his own life for the benefit of another having no insurable interest therein. And it has also been held that one who has insured his own life may in good faith, by an assignment of the policy, provide for the payment of the insurance money to an assignee who has no insurable interest in the life insured.

*Colgrove v. Lowe*, 343 Ill. 360, 363, 175 N.E. 569 (1931); *see also Hawley v. Aetna Life Ins. Co.*, 291 Ill. 28, 31, 125 N.E. 707 (1920). Accordingly, there would be no violation of Illinois law if Gelb purchased the Policy "with the intent to benefit a third party" (FAC ¶ 35).

Under Illinois law, an insurable interest violation will occur where a third-party lacking an insurable interest in the insured life causes the insured to purchase a life insurance policy and the insured is nothing more than a straw man. *See Bloomington Mut. Life Ben. Ass'n v. Blue*, 24

9

NYC/496091.1

JUDD 075293

Ill.App. 518, 1886 WL 5900, at \*4 (Ill. App. Ct. 1886), *aff'd*, 120 Ill. 121, 11 N.E. 331 (1887) (quoting *Johnson v. Van Epps*, 14 Ill. App. 201, 1883 WL 10605, at \*10 (Ill. App. Ct. 1883). There are no such allegations in the FAC. Rather, the FAC focuses solely on the intent of the insured or the Trust: "[t]he Policy was purchased with the intent to benefit a third party[.]" FAC ¶ 35. As noted above, even if true, this would not be an insurable interest violation.

Furthermore, to properly allege an insurable interest violation, PHL would have to allege (in good faith) that there was a pre-arranged agreement to transfer the policy or its benefits with a specific third-party who lacked an insurable interest in the insured in advance of the date that the Policy was issued. *See First Penn-Pacific Life Ins. Co. v. Evans*, 313 Fed. Appx. 633 (4th Cir. 2009) ("*Evans*"); *Sun Life Assur. Co. of Canada v. Paulson*, Case No. 07-cv-11719, 2008 WL 451054 (D. Minn. Feb 15, 2008); *Sun Life Assur. Co. of Canada v. Berck*, Case No. 09-cv-0498, 2010 WL 2607247 (D. Del. Jun. 29, 2010). The FAC is bereft of such allegations.

## III. PHL HAS FAILED TO PROPERLY "CONTEST" THE POLICY WITHIN THE MEANING OF ILLINOIS' CONTESTABILITY STATUTE

Illinois law requires, by statute, that every life insurance policy issued or delivered in the state contain a provision stating that the policy cannot be contested more than two years after issuance. *See* 215 ILCS § 5/224(1)(c). The Seventh Circuit has stated that "a principal effect of [incontestability] clauses is to preclude the insurer from attempting to rescind the policy after the requisite contestability period has expired on the ground that the insured made misrepresentations in the application." *Equitable Life Assur. Soc. v. Bell*, 27 F.3d 1274, 1279 (7th Cir. 1994).

Contestability statutes enacted to require life insurers to conduct an investigation and discover facts justifying rescission prior to the end of the two year period if they want to "contest" a policy – the two year period was not intended to simply be a deadline for a life

10

JUDD 075294

insurer to commence an action seeking rescission (without sufficient facts justifying the same),

so that the life insurer could then, after the expiration of the two year contestability period, use

formal discovery to conduct an investigation and see if its hypothesis is correct:

> [Incontestability] clauses are designed to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured. It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured.

*Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1000 (S.D. Ind. 1989) (quoting G.

Couch, 18 *Couch on Insurance* § 72:2 at 283 (1983)) (emphasis added).

> If it doubted defendant's interest, the burden rested on it [*i.e.*, the life insurer] to investigate in a timely manner or ignore the matter at its peril. A failure to enforce the incontestability rule now would result in a forfeiture to defendant (or to the deceased's estate if the policyholder had no insurable interest *[see*, Insurance Law § 3205(b)(3)])[[4]] after decedent's death and an unnecessary advantage to plaintiff by enabling it to avoid a claim it previously accepted. This inequity may be avoided, and the public purpose underlying the insurable interest requirement implemented, by a rule which encourages the insurer to investigate the insurable interest of its policyholders promptly within the two-year period. Such investigations would not only eliminate "wagering" contracts but would do so promptly, thereby furthering the policy behind the provisions to the statute.

*New England Mut. Life Ins. Co. v. Caruso*, 538 N.Y.S.2d 217, 222 (N.Y. 1989) (emphasis

added).

Since PHL has not discovered facts justifying rescission, it has no legal basis to "contest"

the Policy within the meaning of Illinois' contestability statute. The FAC must be dismissed for

this reason.

---

[4] Now subsection (b)(4).

JUDD 075295

## IV.   PHL CANNOT SEEK TO RETAIN THE PREMIUMS PAID FOR THE POLICY

"Generally, rescission means the cancelling of a contract so as to restore the parties to their initial status." *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528, 533 N.E.2d 962, 966 (Ill. App. Ct. 1989) (citation omitted). "[I]nherent in the remedy of rescission is the return of the parties to their proper precontract positions. Rescission is an equitable doctrine, and a party seeking rescission must restore the other party to the status quo existing at the time the contract was made. This rule applies even where the party against whom rescission is sought has committed fraud." *Puskar*, 179 Ill. App. 3d at 528, 533 N.E.2d at 966 (citations omitted). Accordingly, rescission of a life insurance policy requires that the insurer return the premiums it received on the subject policy to restore the status quo. *See Dickerson v. Northwestern Mut. Life Ins. Co.*, 200 Ill. 270, 277, 65 N.E. 694, 697 (1902); *McCurrey v. Metropolitan Life Ins. Co.*, 168 Ill. App. 625, 1912 WL 2107 (Ill. App. Ct. 1912).

Where a party elects to rescind a contract, it cannot, at the same time, seek to recover damages that it alleges it has sustained as a result of the same contract – such violates the election of remedies doctrine. *See Lempa v. Finkel*, 278 Ill. App. 3d 417, 423-24, 663 N.E.2d 158, 163 (Ill. App. Ct. 1996) ("a remedy based on the affirmance of a contract (*e.g.*, damages) is generally inconsistent with one based on disaffirmance of the contract (*e.g.*, rescission). Thus, the election of either remedy is an abandonment of the other.") (citations omitted). The Illinois Supreme Court has held that the election of remedies of doctrine prevents an insurer from both rescinding a policy and retaining the premiums. *Dickerson*, 200 Ill. at 277, 65 N.E. at 697 ("it would be inconsistent to claim that the policy was never in force, and at the same time retain the premiums paid as the consideration for a risk which had never been assumed.") (emphasis added). PHL cannot seek to rescind the Policy and, at the same time (as it is seeking to do here),

JUDD 075296

lay claim on the premiums paid for the policy to compensate it for damages that it contends it has sustained as a result of the Policy.

Under Illinois law, a party who rescinds a contract may recover damages in the form of restitution for any benefit that he has conferred on the other party by way of part performance or reliance. *Puskar*, 179 Ill. App. 3d at 529, 533 N.E.2d at 967 ("Section 376 of the Restatement (Second) of Contracts provides that a party who has avoided a contract on the ground of mistake or misrepresentation is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance. Section 384, however, conditions such restitution on return of any benefits by the party seeking rescission.") (citations omitted); *Lempa*, 278 Ill. App. 3d at 426, 663 N.E.2d at 165 ("Where costs claimed by [the rescinding] party do not represent a benefit conferred on the other party, such costs are properly disallowed as restitution.") (citations omitted).

Here, PHL seeks to retain the premiums paid for the Policy to offset against the following "damages" that it has allegedly sustained: "expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payments of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentations and concealments detailed above, and commencement of this action to enforce its rights." FAC ¶ 30. These "expenses and costs," however, did not result in any benefit conferred on the Trust. Therefore, they are not recoverable by PHL in the form of restitution damages in this case.

Some courts have permitted an insurer to retain premiums paid for a rescinded policy where the insurer had paid a claim under the policy in an amount greater than the premiums received for the policy prior to learning of the grounds for rescission – a situation where (unlike

here) the insurer incurred an expense that conferred a benefit on the insured. *See Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 379 (1st Cir. 1991) ("when an insurer has paid a claim to an insured under a policy which is subsequently rescinded by reason's of the insured's knowingly false application, and the monies paid are in excess of the premiums received, the insurer has a right of offset[.]"); 44 Am Jur. 2d Ins. § 926 ("While there are cases holding that the putative insured cannot recover premium payments if the policy is invalidated by the applicant's fraud, the distinction now followed depends on whether insurance company paid a claim and subsequently discovered that the insured knowingly made a false application."). PHL has not paid any claim under the Policy here; indeed, it is seeking to rescind the Policy, keep the premiums paid and avoid having to pay a death claim in the future (all without any factual basis in support of its claims whatsoever).

Moreover, many courts have specifically held that "an insurance company cannot deduct commissions paid to an agent from the amount of the unearned premiums due the insured [in the case of cancellation or rescission of a policy]." *153 West 33rd Street Corp. v. Reliable Ins. Co.*, 286 N.Y.S.2d 694, 696 (N.Y. Civ. Ct. 1968); *see id.* ("Any rights that the insurance company may have against its agent for money owed by the agent must be pursued by the company. It cannot be converted into the insured's burden. The carrier cannot palm off on the insured claims that the insurance company has against its agent or former agent . . . ."); *see also Ratcheford v. United States Cent. Underwriters Agency, Inc.*, 492 F. Supp. 137, 140 (E.D. Mos. 1980) (upon cancellation of insurance policies, insurer was required to pay the insured their full premiums, including insurer's agents' commissions); *Spilka v. South Am. Managers, Inc.*, 255 A.2d 755, 761 (N.J. 1969) ("upon cancellation of an insurance contract by either party to it, the obligation rests on the insurer to pay the insured the unearned premium called for by the terms of the policy

14

JUDD 075298

. . . . [A]n insurer's agent may not set off against unearned premiums, received from the insurer for transmittal to the insureds, amounts owed to it by a broker with respect to which the insureds or their assignee have no legal connection or responsibility.") (citations omitted).

Accordingly, PHL's claims to retain the premiums paid for the Policy must be dismissed and/or stricken.

## CONCLUSION

Based on the foregoing, the FAC must be dismissed with prejudice.

Dated:   July 26, 2010

Respectfully submitted,

THE SHELDON HATHAWAY FAMILY
INSURANCE TRUST

By:___s:/R. Willis Orton_____
    R. Willis Orton
    Shawn T. Richards
    Attorneys for Defendant

15

NYC/496091.1

JUDD 075299