# EXHIBIT "74"

1  HENNEFER FINLEY & WOOD, LLP
   JOSEPH WOOD [Calif. SBN 103596]
2  275 Battery Street, Suite 200
   San Francisco, California 94111
3  Telephone:  (415) 421-6100
   Facsimile:  (415) 421-1815

4
   Attorneys for Defendant and Cross-Claimant,
5  Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust

6

7               UNITED STATES DISTRICT COURT

8               NORTHERN DISTRICT OF CALIFORNIA

9               SAN FRANCISCO DIVISION

10

11 JOHN HANCOCK LIFE INSURANCE            Civil Action No. 3:14-cv-047651-EDL
   COMPANY (U.S.A.),
12
        Plaintiff,
13
   vs.
14
   MINDY GOSS AS TRUSTEE OF THE
15 JOE E. ACKER FAMILY INSURANCE
   TRUST [incorrectly named herein as the
16 "Joe E. Acker Family Trust"]; and
   WINDSOR SECURITIES, LLC,
17
        Defendants.
18                                            /

19 MINDY GOSS AS TRUSTEE OF THE
   JOE E. ACKER FAMILY INSURANCE
20 TRUST;

21      Cross-Claimant,

22 vs.

23 WINDSOR SECURITIES, LLC,                   EXHIBIT
                                              71
24      Cross-Defendant.
                                            /
25

26        ANSWER AND CROSS-CLAIM OF MINDY GOSS
       AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
27

28

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

JUDD 067975

# ANSWER

Defendant Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust ("Goss as Trustee") responds as follows to the respective numbered paragraphs of the Complaint in Interpleader (the "Interpleader Complaint") filed in this action by plaintiff, John Hancock Life Insurance Company (U.S.A.) ("John Hancock").

1. Admit.

2. Admit.

3. Admit.

4. Admit that Goss as Trustee is an individual residing in Georgia and is the trustee of the Joe E. Acker Family Insurance Trust (the "Trust"). Deny remaining allegations.

5. Admit.

6. Admit.

7. Admit.

8. Admit that a Financing Agreement entered into by Windsor Securities, LLC and the Trust on or about April 10, 2008 included a document entitled "Collateral Assignment," and that the Trust, through its trustee, executed that document, as part of and subject to the terms of the Financing Agreement, on or about that date. Admit that the Trust, through its trustee, executed another, equivalent document also entitled "Collateral Assignment," again as part of and subject to the terms of the April 10, 2008 Financing Agreement, on or about July 21, 2009. Deny remaining allegations, purporting to characterize the nature, contents, and/or legal effect of those documents, on the grounds that the documents must speak for themselves.

9. Admit that the document entitled "Change of Ownership (Absolute Assignment)" attached as Exhibit B to the Interpleader Complaint was executed by Ronald M. Goss, then the trustee of the Trust, on or about March 18, 2010. Deny remaining allegations, purporting to characterize the nature, contents, and/or legal effect of that document, on the grounds that the document must speak for itself.

10. Admit.

11. Admit.

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim
Civil Action No. 3:14-cv-04651-EDL

1

JUDD_067976

12. Lack information or belief sufficient to allow unequivocal answer, and on that basis deny.

13. Admit that Goss as Trustee, on or about July 22, 2014, sent to John Hancock the document attached as Exhibit D to the Interpleader Complaint. Deny remaining allegations, purporting to characterize the nature, contents, and/or legal effect of that document, on the grounds that the document must speak for itself.

14. Admit that John Hancock, on or about July 31, 2014, sent to Windsor Securities, LLC and to Goss as Trustee the document attached as Exhibit E to the Interpleader Complaint. Deny remaining allegations, purporting to characterize the nature, contents, and/or legal effect of that document, on the grounds that the document must speak for itself.

15. Admit that the attorney for Goss as Trustee, on or about September 18, 2014, sent to John Hancock the document attached as Exhibit F to the Interpleader Complaint. Deny remaining allegations, purporting to characterize the nature, contents, and/or legal effect of that document, on the grounds that the document must speak for itself.

Goss as Trustee incorporates and reasserts herein her responses to numbered paragraphs 1-15 of the Interpleader Complaint.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

WHEREFORE, Goss as Trustee prays judgment on the Interpleader Complaint as follows:

1. That John Hancock be granted the relief sought by the Interpleader Complaint.

2. For an award against Windsor Securities, LLC and in favor of Goss as Trustee, of Goss as Trustee's reasonable costs, including attorney's fees according to contract, incurred in this action.

4. For whatever other relief the Court may deem proper.

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

2

JUDD_067977

## CROSS-CLAIM

Pursuant to Federal Rules of Civil Procedure, Rule 13(g), cross-claimant, Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, complains against cross-defendant, Windsor Securities, LLC, and alleges:

## PARTIES

1. Cross-claimant, Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust ("Goss as Trustee"), is a resident of Georgia. The Joe E. Acker Family Insurance Trust (the "Trust") is a Georgia trust.

2. Cross-defendant Windsor Securities, LLC ("Windsor") is a Nevada limited liability company with its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 (complete diversity of citizenship of the parties, with amount in controversy, independent of fees and costs, in excess of $75,000.00) and pursuant to 28 U.S.C. § 2201(a) (declaratory judgment act).

4. This Court has personal jurisdiction over the parties to the present action in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

5. The present action is properly venued in this Court in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

## FIRST COUNT

(Declaratory Relief)

6. Goss as Trustee refers to, and by that reference incorporates and reasserts in the present count, each of the allegations set forth in paragraphs 1 through 5 of this cross-claim.

7. The present action arises out of a written Life Insurance Premium Financing

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

JUDD 067978

3

Agreement among the Trust, Windsor, and others (the "Financing Agreement").

8. John Hancock issued to the Trust its life insurance policy number 937837511 (the "Policy").

9. The present action involves a dispute between the Trust and Windsor over the respective entitlements of the Trust and Windsor in and to the death benefit due under the Policy, all as set forth below.

10. The insured under the Policy was Joe E. Acker (the "Insured"). The owner and beneficiary of the Policy was and is the Trust.

11. The face amount of, and death benefit due under, the Policy is $1,000,000 (the "Death Benefit").

12. The premiums on the Policy were financed by loans from Windsor to the Trust.

13. Those loans were made pursuant to the Financing Agreement. The Financing Agreement expressly provided that it was to be interpreted and controlled by California law.

14. The Financing Agreement comprised nineteen documents which, taken together, were expressly deemed by the parties thereto to comprise a single agreement.

15. One of those documents was entitled "Security Agreement." Another was entitled "Collateral Assignment."

16. Pursuant to the terms of the Security Agreement and to California law governing secured transactions like the one here at issue, upon default by the Trust of its obligation to repay to Windsor all monies loaned by Windsor pursuant to the Financing Agreement plus legal interest (10% per annum) thereon, Windsor was entitled to the following relief: (a) to sell the Policy collateral at a noticed public or private sale, at which sale Windsor, the Trust, the Insured, or any other person or entity could bid in an effort to purchase the Policy; (b) to take from the proceeds of that sale a sum equal to the total of the amounts loaned by Windsor to the Trust, plus legal interest (10% per annum) thereon, plus Windsor's reasonable expenses, if any existed, incurred in enforcing and/or protecting its security interest; (c) to recover from the Trust, with no requirement of first having recourse to the Policy collateral, all monies owed by the Trust by Windsor; and (d) should sale of the Policy collateral not generate proceeds sufficient to pay what was owed by the

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim
Civil Action No. 3:14-cv-04651-EDL

4

JUDD_067979

Trust to Windsor, to recover from the Trust the amount of any such deficiency. Also pursuant to the terms of the Security Agreement and to California law governing secured transactions like the one here at issue, any proceeds of sale in excess of what was owed by the Trust to Windsor were required to be paid to the Trust by Windsor.

17. The Trust, through its trustee, was required by the Security Agreement, following any such default by the Trust, to execute and deliver to Windsor a "Change of Ownership" form and related documents needed by Windsor in order to exercise certain of its rights as a secured lender, *viz.*, to sell the Policy collateral at a public or private sale, as described in paragraph 16 of this cross-claim, above. Neither the terms of the Security Agreement, nor any other portion of the Financing Agreement, provided that execution of those documents by the trustee would make Windsor the outright owner of the Policy. Further, neither the terms of the Security Agreement, nor any other portion of the Financing Agreement, provided that execution of those documents by the trustee would entitle Windsor either to the entirety of the Death Benefit under the Policy or to any other amount in excess of the sum due to Windsor in its capacity as a secured lender, *viz.*, the total of the amounts loaned by Windsor to the Trust, plus legal interest (10% per annum) thereon, plus Windsor's reasonable expenses, if any existed, incurred in enforcing and/or protecting its security interest.

18. Subsequent to Windsor's having loaned to the Trust all of the monies for premium payments that Windsor was required to provide under the Financing Agreement, the Trust informed Windsor that the Trust would not repay the loan when due. The Trust thereby committed an anticipatory breach of, and default under, the Financing Agreement, entitling Windsor, pursuant to the Security Agreement and to California law governing secured transactions like the one here at issue, to the relief set forth in paragraph 16 of this cross-claim, above.

19. Pursuant to the duties of the Trust under the Security Agreement following that default, the trustee executed and delivered to Windsor a "Change of Ownership" form and related documents needed by Windsor in order to exercise certain of its rights as a secured lender, *viz.*, to sell the Policy collateral at a public or private sale as described in paragraph 16 of this cross-

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

5

JUDD_067980

claim, above. As previously noted, neither the terms of the Security Agreement, nor any other portion of the Financing Agreement, provided that execution of those documents by the trustee would make Windsor the outright owner of the Policy or would entitle Windsor either to the entirety of the Death Benefit under the Policy or to any other amount in excess of the amount due to Windsor in its capacity as a secured lender, *viz.*, the total of the amounts loaned by Windsor to the Trust, plus legal interest (10% per annum) thereon, plus Windsor's reasonable expenses, if any existed, incurred in enforcing and/or protecting its security interest. Nor did the trustee, in executing and delivering those documents, intend thereby to make Windsor the outright owner of the Policy or to entitle Windsor either to the entirety of the Death Benefit under the Policy or to any other amount in excess of the sum due to Windsor in its capacity as a secured lender.

20. Windsor was not required, under the Security Agreement and under California law governing secured transactions like the one here at issue, to offer the Policy at a public or private sale unless and until it deemed the market sufficiently favorable to make it likely that Windsor would recover from the proceeds of that sale a sum at least equal to the amount due to Windsor in its capacity as a secured lender, *viz.*, the total of the amounts loaned by Windsor to the Trust, plus legal interest (10% per annum) thereon, plus Windsor's reasonable expenses, if any existed, incurred in enforcing and/or protecting its security interest.

21. Windsor never offered the Policy at a public or private sale.

22. Windsor and the Trust never discussed any possible agreement by which the Trust would or might convey to Windsor outright ownership of the Policy and/or entitlement to the entirety of the Death Benefit in return for Windsor's releasing the Trust from any obligation to repay what was owed by the Trust to Windsor. Nor was any such agreement ever entered into by the parties.

23. The Insured, Joe E. Acker, passed away on April 15, 2014.

24. Pursuant to the terms of the Collateral Assignment and to California law governing secured transactions like the one here at issue, Windsor was entitled, following default by the Trust and the death of the Insured prior to any public or private sale of the Policy collateral, to collect the Death Benefit from John Hancock, provided, however, that Windsor was obligated to

JUDD_067981

1  retain from the collected Death Benefit only those amounts it had loaned to the Trust, plus legal
2  interest thereon, plus its reasonable expenses, if any existed, incurred in collecting or enforcing
3  the Policy collateral, and was further obligated to provide the remainder of the collected Death
4  Benefit to the Trust.

5  25.   Contrary to its abovementioned obligations under the terms of the Collateral
6  Assignment, Windsor has unequivocally asserted – and continues to assert, despite the efforts of
7  the Trust to reach an amicable and informal resolution of this matter – the right to retain the entire
8  Death Benefit for Windsor's own account.

9  26.   The Trust deemed that assertion by Windsor to have comprised an anticipatory
10 breach of the terms of the Collateral Assignment by Windsor, relieving the Trust of any obligation
11 it might otherwise have had to facilitate collection of the Death Benefit by Windsor and freeing
12 the Trust to take whatever legal action might be necessary to safeguard the Trust's rights in and to
13 the portion of the Death Benefit that would remain after Windsor had been paid from the Death
14 Benefit a sum equal to the total of the amounts Windsor had loaned to the Trust, plus legal interest
15 thereon, plus Windsor's reasonable expenses, if any existed, incurred in collecting or enforcing
16 the Policy collateral.

17 27.   The Trust accordingly informed John Hancock: (a) that the Trust contended that
18 the Trust was entitled to receive that portion of the Death Benefit that would remain after Windsor
19 had been paid from the Death Benefit a sum equal to the total of the amounts Windsor had loaned
20 to the Trust, plus legal interest thereon, plus Windsor's reasonable expenses, if any existed,
21 incurred in collecting or enforcing the Policy collateral; (b) that Windsor had improperly denied
22 that contention and was demanding the entire Death Benefit for its own account; (c) that an
23 arbitration panel had ruled in *Barnes v. Windsor Securities, LLC, et al.*, U.S.D.C., N.D. Cal., No.
24 3:13-cv-01878-WHO, AAA Case No. 74-148-000296-13-S1M, a case involving an identical
25 Financing Agreement and almost identical facts, that Windsor was not entitled to the entire Death
26 Benefit therein; and (d) that the Trust therefore believed an interpleader action would be
27 appropriate here.

28 28.   An actual controversy has arisen and now exists between the Trust and Windsor

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

7

JUDD_067982

concerning their respective rights and duties, as set forth below:

(a) Windsor contends that, pursuant to the terms of the Financing Agreement, and, in particular, of the Security Agreement and the Collateral Assignment contained therein, Windsor is the outright owner of the Policy and is entitled to receive and retain the entire Death Benefit for its own account.

(b) Goss as Trustee denies that contention and contends that, pursuant to the terms of the Financing Agreement and, in particular, of the Security Agreement and the Collateral Assignment contained therein, Windsor is a secured lender and is entitled to retain from the Death Benefit only a sum equal to the amounts Windsor has loaned to the Trust, plus legal interest thereon, plus Windsor's reasonable expenses, if any exist, incurred in collecting or enforcing the Policy collateral, and that the Trust is entitled to the portion of the Death Benefit remaining after that sum has been paid.

29. Goss as Trustee desires a judicial determination of the parties' rights and duties concerning the Death Benefit, along with a judicial declaration as to how the Death Benefit should be distributed, in light of the conflicting claims of the Trust and Windsor thereto. On information and belief, John Hancock also desires such a declaration and determination so that distribution may proceed in a manner that is consistent with law and that does not expose John Hancock to any potential liability either to the Trust or to Windsor.

30. Such a determination is necessary and appropriate at this time in that it would clarify the respective rights and duties of the parties under the operative agreements and would obviate the need for additional and costly litigation over whether any of the parties has committed a breach of contract resulting in damages, etc.

WHEREFORE, Goss as Trustee prays judgment as follows:

1. For a judicial determination and declaration that:

(a) Windsor is not the outright owner of the Policy and is not entitled to receive and retain the entire Death Benefit for its own account.

(b) Windsor is a secured lender and is entitled to retain from the Death Benefit only a sum equal to the total of the amounts Windsor loaned to the Trust, plus legal interest

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim*
Civil Action No. 3:14-cv-04651-EDL

JUDD 067983

8

1 thereon, plus Windsor's reasonable expenses, if any exist, incurred in collecting or enforcing the Policy collateral.

(c) The Trust is entitled to the portion of the Death Benefit remaining after that sum has been paid to Windsor.

2. For the Trust's reasonable costs incurred in this action, including reasonable attorney's fees according to contract between the parties.

3. For whatever other relief the Court may deem proper.

DATED: November 7, 2014

HENNEFER FINLEY & WOOD, LLP

/s/ Joseph Wood
Joseph Wood

Attorneys for Defendant and Cross-Claimant, Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST
John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Claim
Civil Action No. 3:14-cv-04651-EDL

9

JUDD_067984

PROOF OF SERVICE

Joseph Wood declares:

1. I am over twenty-one years of age and am not a party to the above-named action. My business address is 275 Battery Street, Suite 200, San Francisco, CA 94111.

2. On November 7, 2014, in San Francisco, California, I served the attached

ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST

on the parties to this action.

3. Service was made by electronically filing that document with the Court to be served by operation of the Court's electronic filing and notice system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true.

DATED:   November 7, 2014

/s/ Joseph Wood
Joseph Wood

JH_DD_067985