**EXHIBIT "96"**

Darin T. Judd (SBN 160475)
darin@twsglaw.com
Eric D. McFarland (SBN 214245)
eric@twsglaw.com
Amy Leung (SBN 280318)
amy@twsglaw.com
THOMPSON, WELCH, SOROKO & GILBERT, LLP
3950 Civic Center Drive, Suite 300
San Rafael, CA 94903
Telephone:    (415) 448-5000
Facsimile:     (415) 448-5010

Attorneys for Plaintiff
WINDSOR SECURITIES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| Windsor Securities, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>The Jane Ann Stamatov Family Insurance Trust; and Larry L. Davidson, as Trustee of the Jane Ann Stamatov Family Insurance Trust,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC** |

Plaintiff Windsor Securities, LLC, a Nevada limited liability company ("**Windsor**"), files this Complaint for Declaratory Relief (the "**Complaint**") in accordance with 28 U.S.C. § 2201(a) (the declaratory judgment act) and alleges as follows:

### I.    PARTIES

1. Windsor is, and at all relevant times has been, a limited liability company organized and existing under the laws of and domiciled in the State of Nevada. None of the members of Windsor are citizens of the State of Illinois.

2. Defendant, The Jane Ann Stamatov Family Insurance Trust (the "**Trust**"), is an Illinois irrevocable trust.

-1-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.

JUDD 072065

3. Defendant Larry L. Davidson, is the original and current Trustee (the "**Trustee**"), of the Trust, and resides and is domiciled in the State of Illinois.

## II. JURISDICTION & VENUE

4. Windsor realleges and incorporates by reference paragraphs 1 through 3 of the Complaint.

5. This Court has diversity jurisdiction under 28 U.S.C. §1332. Complete diversity of citizenship exists between the parties and the amount in controversy (two million dollars plus interest) exceeds $75,000.00.

6. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 (complete diversity of citizenship of the parties, with amount in controversy, independent of fees and costs, in excess of $75,000.00) and pursuant to 28 U.S.C. § 2201(a) (the declaratory judgment act)

7. This Court has personal jurisdiction over the parties to the present action in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

8. The present action is properly venued in this Court in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

## III. STATEMENT OF THE CASE

9. Windsor realleges and incorporates by reference paragraphs 1 through 8 of the Complaint.

10. Upon information and belief, PHL Variable Insurance Company ("**Phoenix**") issued a life insurance policy, bearing Policy No. 97524494 (the "**Policy**") to the Trust. [A true and correct copy of the "**Policy**" is attached hereto as "**Exhibit A**" and incorporated herein by this reference.]

11. Jane Ann Stamatov, who resides and is domiciled in New York, was the grantor of the Trust and the named insured for the Policy ("**Insured**"), and the Trust was the original owner of the Policy.

-2-

12. Upon information and belief, the Policy was placed through E.E.H. Consulting, Inc. Plaintiff is informed and believes, and on that basis alleges, that E.E.H. Consulting, Inc. is a Georgia corporation with its principal place of business being located in Atlanta, Georgia. Plaintiff is further informed and believes, and on that basis alleges that Eugene E. Houchins III acted as President of E.E.H. Consulting, Inc., at the time of the Policy's issuance, and that Eugene E. Houchins, Jr. was the producer of the Policy. Plaintiff is further informed and believes, and on that basis alleges that, E.E.H. Consulting, Inc., through its officers and agents, acted as the servicing agent (the **"Servicing Agent"**) for the Policy.

13. Plaintiff is informed and believes, and on that basis alleges that, representatives of E.E.H. Consulting, Inc. contacted Jane Ann Stamatov in or around late 2007 and solicited her regarding the purchase of the Policy. Plaintiff is further informed and believes, and on that basis alleges that, representatives of E.E.H. Consulting, Inc. assisted Jane Ann Stamatov, the Trust, and the Trustee of the Trust to purchase the Policy and establish the Trust.

14. The Trust and the Trustee, with the assistance of the representatives at E.E.H. Consulting Inc., contacted plaintiff regarding a loan related to financing premiums for the Policy. On or about February 26, 2008, the Trustee and Windsor entered into agreements related to a secured loan (the **"Loan"**) from Windsor to the Trust, which loan was made in the original amount of $94,606 and, by its terms, would increase based on accrued interest and premium payments that Windsor thereafter elected in its sole discretion to make. [A true and correct copy of the **"Financing Agreement Package"** is attached hereto as **"Exhibit B"** and incorporated herein by this reference.] Included in the Financing Agreement Package (and a part of Exhibit B) is an Assignment Of Life Insurance Police As Collateral (the **"Assignment"**), which, among other things, collateralized the Loan with the proceeds of the Policy. (See Document #12 in **Exhibit B,** pages 91-99.)

15. The Assignment gave the Trust the option to offer Windsor transfer of full ownership of the Policy and benefits in satisfaction of the Trust's liabilities if the Trust did want to pay off its debts to Windsor. The Assignment expressly provides:

//

//

-3-

> **DEFAULT SALE RIGHT.** Upon an occurrence of an Event of Default (as defined in the Agreement) that has not been remedied within the time period required in the Agreement, Assignee shall have the right (the "Default Sale Right") but not the obligation to accept, that in consideration of the full and complete satisfaction of the Liabilities (the sufficiency of which consideration is hereby acknowledged) Owner may make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder. Upon the exercise of this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy.

(Document #12 in **Exhibit B,** page 94.) This Assignment vests with the Owner the right to make a "full transfer and assignment of the Insurance Policy . . . ." (*Id.*) Following the exercise of the Default Sale Right, wherein the Owner transfers full ownership of the Policy, the Assignment also vested Windsor as the assignee with the right to notify Phoenix in writing that it was the "sole lawful owner of the Insurance Policy. . . ." (*Id.*)

16. In January of 2010, the Trustee also signed and returned the document provided by the insurance company, Phoenix, entitled "Assignment of Life Insurance Policy As Collateral." [A true and correct copy of the 2010 Phoenix Collateral Assignment is attached hereto as "**Exhibit C**" and incorporated herein by this reference.] The Collateral Assignment expressly reserved to the Owner of the Policy, the Trust, the right to change the beneficiary of the Policy as long as there had been no surrender of the Policy. [Exh. C, page 1 "Policy Owner's Rights, ¶C.2.]

17. In late January 2010, the Servicing Agent contacted Windsor to talk about the upcoming premium payment that was due on the Policy and the status of the Loan. Windsor asked the Servicing Agent to find out whether the Trust intended to pay off the Loan that would be coming due soon and keep the Policy or whether it wanted to surrender the Policy and transfer ownership to Windsor in lieu of paying its financial obligations.

18. The Servicing Agent reported back, after inquiry having been made, that the Trust did not want to pay off the Loan or pay the upcoming premium to keep the Policy and wanted instead to surrender the Policy to Windsor and transfer ownership of the Policy to Windsor. This surrender and

-4-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 072068

transfer of the Policy was to be a full satisfaction of the Trust's liabilities to Windsor. In 2010 Windsor informed the Servicing Agent that this proposed surrender and transfer of Ownership of the Policy to Windsor would be acceptable.

19.  In 2010 therefore and consistent with the Trust's and Windsor's agreement, the Trust through the Trustee, as the Owner of the Policy, surrendered the Policy and signed and delivered the requisite documents to Phoenix that expressly transferred ownership of the Policy to Windsor. [A true and correct copy of the signed Request of Ownership Change, is attached hereto as **"Exhibit D"** and incorporated herein by this reference.]

20.  The document signed and returned by the Trust and Trustee in on February 2010, expressly identifies "Windsor" as the "New Owner" of the Policy. [*Id.*] The insurance company received direction from the Trust and Trustee that directed Phoenix to change the Beneficiary under the Policy from John Stamatov to Windsor as the new beneficiary of the Policy. . [*Id.*] This surrender and transfer of ownership effectuated by the Trust through its Trustee is authorized expressly by the Assignment signed by the Trust that vested with the Owner the right to make a "full transfer and assignment of the Insurance Policy . . . ." [Document #12 in **Exhibit B,** page 94.) Neither the Trust nor the Trustee has ever objected to this change of the owner or the beneficiary of the Policy.

21.  On or about July 28, 2011, Phoenix provided a Statement of Values as written confirmation of the Collateral Assignment in favor of Windsor as Owner/Payor of the Policy, and as primary beneficiary of the Policy. [A true and correct copy of the 2011 Statement of Values is attached hereto as **"Exhibit E"** and incorporated herein by this reference, at page 2.]

22.  Since the February 2008 financing, the Trust and Trustee have failed to make any premium payments related to the Policy. In contrast, Windsor alone has borne the entire financial burden for the required premiums payments for the Policy paying in excess of $210,527 in premiums. Accordingly, Windsor has made all required premium payments, without which the Policy would have lapsed.

23.  The insured Mrs. Stamatov is still living and Windsor continues to make the annual premium payments for the Policy. Neither the Trust nor the Trustee has ever attempted to make any ongoing premium payments. In fact, upon information and belief, neither the Trust nor the Insured has

-5-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 072069

1  had any idea of when premium payments have come due during the last four years.

2  24.  In June of 2014 Windsor contacted The Trust and Trustee by letter. This was the first contact between Windsor and the Trust and Trustee in more than four years. In the June 2014 letter, Windsor explained that it was doing some spring cleaning of its files and was writing to find out if the Trust was still extant and the Insured was still alive. Windsor reminded the Trust that it had no financial obligations due to the Trust's voluntary assignment of the Policy in 2010 in exchange for Windsor's agreement that the assignment would constitute a complete satisfaction and discharge of the Loan and the consequent discharge of the Loan.

25.  The Trustee responded to the June 2014 letter in a letter to Windsor dated November 12, 2014. Five months after Windsor's June 2014 letter, advising that he had contacted an unnamed attorney.

26.  In the November 12, 2014 letter, a true and correct copy of which is attached hereto as "**Exhibit F**," the Trustee claimed for the first time that he disagreed that the Trust had no rights to the Policy or any portion of it, though he did not dispute that the Trust had informed Windsor that it was not willing to repay the Loan (the "Late Objection Letter").

27.  The Late Objection Letter is entirely at odds, however, with the events that happened years earlier. The Late Objection Letter, for example, ignores that in February of 2010, the Trust as owner of the Policy agreed that it preferred to surrender the Policy and transfer ownership of the Policy to Windsor in exchange for being let out of its entire obligations; and it ignores that the Trustee had for five months taken no issue with the statements in the June 2014 letter when Windsor reaffirmed to the Trust and Trustee that transfer of ownership relieved the Trust and Trustee of all financial obligations under the Financing Agreement Package.

## IV. COMPETING CLAIMS FOR POLICY PROCEEDS

28.  Windsor realleges and incorporates by reference paragraphs 1 through 27 of the Complaint.

29.  This is a Complaint for Declaratory Relief in which Windsor and The Trust and Trustee each assert competing claims. Windsor claims an absolute right of ownership of the Policy that includes all death benefit proceeds. The Policy death benefit proceeds total two million dollars ($2,000,000.00).

-6-

The Trust's and Trustee's claim is ambiguous; it ignores the Trust's admissions confirmed by signed and notarized documentation and the express surrender and transfer of ownership by written agreement effectuated by the Trust through its Trustee in 2010.

30. The letter dated November 12, 2014 by the Trustee of the Trust to Windsor indicates an unauthorized intention to make a claim on the Policy death benefit proceeds.

31. Windsor is informed and believes, and on that basis alleges that the Trust and Trustee intend to make a claim on the Policy. This anticipated claim by the Trust and Trustee is contradicted by:

(a) The Trust's voluntary surrender and assignment of the ownership and beneficial interest in the Trust in return for a release of its obligations, as made in February 2010 and as memorialized by fully executed documents authorizing and consenting to the transfer of ownership for the Policy to Windsor in February 2010; and

(b) The lack of objection for more than four years to the release and Change of Ownership.

32. The Trust's and Trustee's indication of the Trustee's intention to make a claim on the Policy is further contradicted by the Trust's complete failure to make any premium payments for the Policy. Windsor has paid all premiums related to the Policy. Had the Trust in fact intended to retain any claim to the Policy or its benefits, the Trust would have paid attention to make sure that premiums continued to be paid on the Policy so the Policy did not lapse. The Trust, however, did not. It transferred ownership of the policy per the agreement of the parties, understanding it would be relieved of its obligations to Windsor, and never looked back until November of 2014, more than 4 years after the Trust and Trustee surrendered the policy, when the Insured (not the Trust or Trustee) raised a late objection.

33. Neither the Trust nor anyone else connected to this action other than Windsor has ever taken any steps to pay the Policy premiums or to repay the loan under the Financing Agreement Package was signed.

34. At no point did the Insured, the Trust, the Trustee, any representative of the Trust, or anyone else connected to this action object to or otherwise attempt to rescind the forms surrendering the Policy and appointing Windsor as the owner and beneficiary of the Policy. Indeed neither of the

-7-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JCDD 072071

1 Defendants, the Insured, nor the original Servicing Agent has had any communication relating to the Policy for more than four years after Windsor became Owner and sent a release to the Insured.

35. The indication of the Trustee's intention to make a claim on the Policy is further contradicted by the Default Sale Right provision of the Assignment (**Exhibit B, at** page 94) and/or the controlling provisions of the California Commercial Code that authorized Windsor to retain the Policy, which had originally been pledged as collateral, in full satisfaction of the debt based on The Trust's and Trustee's offer to Windsor in February, 2010, made through its Servicing Agent, that Windsor take full ownership of the Policy, with the attendant right to change the beneficiary. [Com. Code §§ 9620, *et seq.*; see also, ¶15, *infra.*]

36. At no time prior to November 2014 did the Trust and Trustee object to the full and complete assignment of the Policy to Windsor as Owner or to Windsor's designation as the beneficiary as stated in the Request of Ownership Change signed and transmitted by the Trustee to Windsor in 2010.

37. The late "objection" sent in November 2014 is of no effect due to, *inter alia*, untimeliness. The "objection" by the Insured comes more than 4 years after the Trust informed Windsor that it did not plan to pay back its loan or any premiums going forwards and was willing instead to relinquish Ownership and change the beneficiary to Windsor in February 2010, which Windsor indicated was acceptable, and thereafter the Trustee signed and provided the Ownership Change form sent to Phoenix to effectuate the change. [Exhibit #E.]

38. Contrary to the assertion made in the November 2014 letter, the Financing Agreement Package did not limit Windsor's right to "selling" the Policy. Likewise, the Ownership Change documents signed and transmitted by the Trustee to Windsor in February 2010 imposed no limitation to the transfer of complete ownership of the Policy to Windsor.

39. Windsor in February of 2010 through the current date retained all rights, and assumed and satisfied all payment obligations, under the controlling law, including the right that Windsor take full ownership of the Policy, with the attendant right to change the beneficiary and receive all benefits under the Policy. Windsor alone has made all premium payments for the Policy since 2009.

40. Based on the foregoing competing claims and the possibility of further competing claims, Phoenix could be placed in a position of conflict regarding to whom it should pay the death benefit

-8-

proceeds of the Policy.

41.  These competing claims create the real possibility that Phoenix could face double or multiple liability if it pays the Policy proceeds to Windsor or to any representative of the Trust as the Policy beneficiary at the time of Mrs. Stamatov's death.

## Declaratory Relief

42.  Windsor realleges and incorporates by reference paragraphs 1 through 41 of the Complaint.

43.  By reason of the foregoing, Windsor is entitled to declaratory relief with respect to the Death Benefit Proceeds on the grounds that as between Windsor and the Trust, Windsor has the superior right, title, and interest in and to the Death Benefit Proceeds and that therefore the Death Benefit Proceeds ought to be preserved for and paid over to Windsor.

## PRAYER FOR RELIEF

**WHEREFORE**, Windsor prays for judgment as follows:

1.  A judgment in favor of Windsor on all of its Claims;

2.  A declaration that Windsor is entitled to receive the entirety of the Death Benefit Proceeds plus postmortem interest in this action;

3.  An award to Windsor of its reasonable costs and expenses of litigation, including attorneys' fees and costs; and

4.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6(A), Windsor respectfully demands a jury trial of all issues triable to a jury in this action.

Respectfully submitted:

Dated: January 6, 2014                    THOMPSON, WELCH, SOROKO & GILBERT, LLP


By: /s/ Darin T. Judd
    Darin T. Judd
    Attorneys for Plaintiff
    WINDSOR SECURITIES, LLC

-9-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 072073