**EXHIBIT "97"**

Darin T. Judd (SBN 160475)
darin@twsglaw.com
Eric D. McFarland (SBN 214245)
eric@twsglaw.com
Amy Leung (SBN 280318)
amy@twsglaw.com
THOMPSON, WELCH, SOROKO & GILBERT, LLP
3950 Civic Center Drive, Suite 300
San Rafael, CA 94903
Telephone:   (415) 448-5000
Facsimile:    (415) 448-5010

Attorneys for Plaintiff
WINDSOR SECURITIES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| Windsor Securities, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>The Robert S. Coppock Irrevocable Life Insurance Trust; and Eliza L. Coppock, as Trustee of the Robert S. Coppock Irrevocable Life Insurance Trust – 2008,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC** |

Plaintiff Windsor Securities, LLC, a Nevada limited liability company ("**Windsor**"), files this Complaint for Declaratory Relief (the "**Complaint**") in accordance with 28 U.S.C. § 2201(a) (the declaratory judgment act) and alleges as follows:

## I.   PARTIES

1.   Windsor is, and at all relevant times has been, a limited liability company organized and existing under the laws of and domiciled in the State of Nevada. None of the members of Windsor are citizens of the State of Tennessee or South Carolina.

2.   Defendant, The Robert S. Coppock Irrevocable Life Insurance Trust (the "**Trust**"), is a South Carolina irrevocable trust.

-1-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.

JUDD 071663

3. Defendant Eliza L. Coppock, is the current Trustee (the "**Trustee**"), of the Trust, and resides and is domiciled in the State of Tennessee. Plaintiff is informed and believes that the original trustee of the Trust, Robert Coppock II, resided and was domiciled in the State of South Carolina. Plaintiff is further informed and believes that the original trustee was substituted out at the request and direction of the insured Robert S. Coppock.

## II. JURISDICTION & VENUE

4. Windsor realleges and incorporates by reference paragraphs 1 through 3 of the Complaint.

5. This Court has diversity jurisdiction under 28 U.S.C. §1332. Complete diversity of citizenship exists between the parties and the amount in controversy (two million dollars plus interest) exceeds $75,000.00.

6. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 (complete diversity of citizenship of the parties, with amount in controversy, independent of fees and costs, in excess of $75,000.00) and pursuant to 28 U.S.C. § 2201(a) (the declaratory judgment act)

7. This Court has personal jurisdiction over the parties to the present action in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

8. The present action is properly venued in this Court in that the parties have consented in writing to submit the dispute between them that is encompassed by this action either to the Superior Court of California, County of Sonoma, or to the United States District Court, Northern District of California.

## III. STATEMENT OF THE CASE

9. Windsor realleges and incorporates by reference paragraphs 1 through 8 of the Complaint.

10. Upon information and belief, Pacific Life insurance ("**Pacific Life**") issued a life insurance policy, bearing Policy No VF51701030 (the "**Policy**") to the Trust. [A true and correct copy of the "**Policy**" is attached hereto as "**Exhibit A**" and incorporated herein by this reference.]

-2-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 071664

11. Robert S. Coppock, who resides and is domiciled in Tennessee, was the grantor of the Trust and the named insured for the Policy ("**Insured**"), and the Trust was the original owner of the Policy.

12. Upon information and belief, the Policy was placed through E.E.H. Consulting, Inc. Plaintiff is informed and believes, and on that basis alleges, that E.E.H. Consulting, Inc. is a Georgia corporation with its principal place of business being located in Atlanta, Georgia. Plaintiff is further informed and believes, and on that basis alleges that Eugene E. Houchins III acted as President of E.E.H. Consulting, Inc., at the time of the Policy's issuance, and that Eugene E. Houchins, Jr. or Eugene E. Houchins, III was the producer of the Policy. Plaintiff is further informed and believes, and on that basis alleges that, E.E.H. Consulting, Inc., through its officers and agents, acted as the servicing agent (the "**Servicing Agent**") for the Policy from the date of its issuance through and including March 1, 2010.

13. Plaintiff is informed and believes, and on that basis alleges that, representatives of E.E.H. Consulting, Inc. contacted Robert S. Coppock in or around late 2007 and solicited him regarding the purchase of the Policy. Plaintiff is further informed and believes, and on that basis alleges that, representatives of E.E.H. Consulting, Inc. assisted Robert S. Coppock, the Trust, and the original trustee of the Trust to purchase the Policy and establish the Trust.

14. The Trust and the original trustee of the Trust, with the assistance of the representatives at E.E.H. Consulting Inc., contacted plaintiff regarding a loan related to financing premiums for the Policy. On or about April 14, 2008, the Trustee and Windsor entered into agreements related to a secured loan (the "**Loan**") from Windsor to the Trust, which loan was made in the original amount of $83,770 and, by its terms, would increase based on accrued interest and premium payments that Windsor thereafter elected in its sole discretion to make. [A true and correct copy of the "**Financing Agreement Package**" is attached hereto as "**Exhibit B**" and incorporated herein by this reference.] Included in the Financing Agreement Package (and a part of Exhibit B) is an Assignment Of Life Insurance Police As Collateral (the "**Assignment**"), which, among other things, collateralized the Loan with the proceeds of the Policy. (See Document #15 in **Exhibit B**, pages 127-132.)

15. The Assignment gave the Trust the option to offer Windsor transfer of full ownership of

-3-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 071665

the Policy and benefits in satisfaction of the Trust's liabilities if the Trust did want to pay off its debts to Windsor. The Assignment expressly provides:

> **DEFAULT SALE RIGHT.** Upon an occurrence of an Event of Default (as defined in the Agreement) that has not been remedied within the time period required in the Agreement, Assignee shall have the right (the "Default Sale Right") but not the obligation to accept, that in consideration of the full and complete satisfaction of the Liabilities (the sufficiency of which consideration is hereby acknowledged) Owner may make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder. Upon the exercise of this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy.

(Document #15 in **Exhibit B,** page 130.) This Assignment vests with the Owner the right to make a "full transfer and assignment of the Insurance Policy . . . ." (*Id.*) Following the exercise of the Default Sale Right, wherein the Owner transfers full ownership of the Policy, the Assignment also vested Windsor as the assignee with the right to notify Pacific Life in writing that it was the "sole lawful owner of the Insurance Policy. . . ." (*Id.*)

16. In May of 2008, the original Trustee also signed and returned the document provided by the insurance company, Pacific Life, entitled "Collateral Assignment." [A true and correct copy of the 2008 Pacific Life Collateral Assignment is attached hereto as **"Exhibit C"** and incorporated herein by this reference.] The Collateral Assignment expressly reserved to the Owner of the Policy, the Trust, the right to change the beneficiary of the Policy as long as there had been no surrender of the Policy. [Exh. C, page 2 "Policy Owner's Rights, ¶2.]

17. On or about July 15, 2009, Defendant Eliza L. Coppock and the insured Robert S. Coppock belatedly notified legal counsel for Windsor that Robert Coppock, II, the original trustee, was no longer the Trustee, and that the successor trustee was Defendant Eliza L. Coppock.

18. Pacific Life was notified of this change of trustee and provided its Collateral Assignment form to be executed by the new trustee. The new trustee, Defendant Eliza R. Coppock, executed the Collateral Assignment form in August 2009. [A true and correct copy of the 2009 Collateral Assignment is attached hereto as **"Exhibit D"** and incorporated herein by this reference.] On or about September 23, 2009, Pacific Life provided Defendant Eliza L Coppock with a written

-4-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 071666

1  confirmation of the Collateral Assignment in favor of Windsor. [Exh. D, page 1.]

2  19. In late January 2010, the Servicing Agent contacted Windsor to talk about the upcoming premium payment that was due on the Policy and the status of the Loan. Windsor asked the Servicing Agent to find out whether the Trust intended to pay off the Loan that would be coming due soon and keep the Policy or whether it wanted to surrender the Policy and transfer ownership to Windsor in lieu of paying its financial obligations.

20. The Servicing Agent reported back, after inquiry having been made, that the Trust did not want to pay off the Loan or pay the upcoming premium to keep the Policy and wanted instead to surrender the Policy to Windsor and transfer ownership of the Policy to Windsor. This surrender and transfer of the Policy was to be a full satisfaction of the Trust's liabilities to Windsor. In 2010 Windsor informed the Servicing Agent that this proposed surrender and transfer of Ownership of the Policy to Windsor would be acceptable.

21. On or about February 15, 2010 therefore and consistent with the Trust's and Windsor's agreement, the Trust through the Trustee, as the Owner of the Policy, surrendered the Policy and signed and mailed the requisite Request of Ownership Change that expressly transferred ownership of the Policy to Windsor. [A true and correct copy of the signed Request of Ownership Change, is attached hereto as "**Exhibit E**" and incorporated herein by this reference.]

22. The document signed and returned by the Trust and Trustee on February 15, 2010, expressly identifies "Windsor" as the "New Owner" of the Policy. [Exh. E, at page 1.] The document signed and returned by the Trust through its Trustee also included a change in the Beneficiary under the Policy from Eliza L. Coppock to Windsor as the new beneficiary of the Policy. [Exh. E, at page 2.] This surrender and transfer of ownership effectuated by the Trust through its Trustee is authorized expressly by the Assignment signed by the Trust that vested with the Owner the right to make a "full transfer and assignment of the Insurance Policy . . . ." [Document #15 in **Exhibit B,** page 130.) Neither the Trust nor the Trustee has ever objected to this change of the owner or the beneficiary of the Policy.

23. On February 19, 2010, Windsor sent the signed Request of Ownership Change for the Policy by facsimile to Pacific Life, and on February 25, 2010, Windsor sent the original signed

-5-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO. 071667

1  documents to Pacific Life by Federal Express. [Exh. E, at pp. 4-6.] [*Id.*]

2  24. On or about March 30, 2010, the producer for the Policy communicated to Windsor that the insured, Mr. Coppock, requested that Windsor, as owner of the Policy, provide a release to complete his file.

25. Windsor's executive was out of the country shortly after receipt of this request. On April 23, 2010, Windsor mailed Mr. Coppock a signed release that states: "Please accept this letter as formal notification that pending our ownership of policy #VF5170 1030, *we are releasing you from any future obligations of our financial agreement.*" [Emphasis added.] [A true and correct copy of the request for a release and the release are attached hereto as "**Exhibit F**" and incorporated herein by this reference.]

26. Neither Mr. Coppock nor the Trust or Trustee responded to that letter. Indeed, neither the Trust nor Trustee has had any contact, direct or indirect, verbal or written with Windsor for more than 4 years since the April 23rd letter was sent, a period during which Windsor, as owner, continued to make premium payments.

27. On or about September 2, 2010, Pacific Life provided a written confirmation to the Trust and Trustee, Servicing Agent, and Windsor that the written Request of Ownership Change signed by the Trust and Trustee had been received and processed. [A true and correct copy of the COO confirmation mailed by Pacific Life to Plaintiff and the Trust and Trustee is attached hereto as "**Exhibit G**" and incorporated herein by this reference.]

28. Since the April 2008 financing, the Trust and Trustee have failed to make any premium payments related to the Policy. In contrast, Windsor alone has borne the entire financial burden for the required premiums payments for the Policy paying in excess of $373,000 in premiums. Accordingly, Windsor has made all required premium payments, without which the Policy would have lapsed.

29. The insured Mr. Coppock is still living and Windsor continues to make the annual premium payments for the Policy. Neither the Trust nor the Trustee has ever attempted to make any ongoing premium payments. In fact, upon information and belief, neither the Trust nor the Insured has had any idea of when premium payments have come due during the last four years.

30. On or about June 1, 2014, Windsor contacted The Trust and Trustee by letter. This was

-6-

the first contact between Windsor and the Trust and Trustee in more than four years. [A true and correct copy of the June 1, 2014 letter sent to the Trust and Trustee is attached hereto as "**Exhibit H**" and incorporated herein by this reference.] In the June 2014 letter, Windsor explained that it was doing some spring cleaning of its files and was writing to find out if the Trust was still extant and the Insured was still alive. Windsor reminded the Trust that it had no financial obligations due to the Trust's voluntary assignment of the Policy in 2010 in exchange for Windsor's agreement that the assignment would constitute a complete satisfaction and discharge of the Loan and the consequent discharge of the Loan.

31. Neither the Trust nor the Trustee ever responded to the June 2014 letter nor took issue with any of the statements in Windsor's June 2014 letter. Instead, the Insured, five months after Windsor's June 2014 letter, sent a letter dated November 4, 2014 advising that he had contacted an unnamed attorney.

32. In the November 4, 2014 letter, a true and correct copy of which is attached hereto as "**Exhibit I**," the Insured claimed for the first time that he disagreed that the Trust had no rights to the Policy or any portion of it, though he did not dispute that the Trust had informed Windsor that it was not willing to repay the Loan (the "Late Objection Letter").

33. The Late Objection Letter is entirely at odds, however, with the events that happened years earlier. The Late Objection Letter, for example, ignores that in January and February of 2010, the Trust as owner of the Policy agreed that it preferred to surrender the Policy and transfer ownership of the Policy to Windsor in exchange for being let out of its entire obligations; it ignores that the Insured himself asked for a release to complete his file and that Windsor sent a written release in April 2010 and it ignores that the Trustee and the Insured had for five months taken no issue with the statements in the June 2014 letter when Windsor reaffirmed to the Trust and Trustee that transfer of ownership relieved the Trust and Trustee of all financial obligations under the Financing Agreement Package.

### IV. COMPETING CLAIMS FOR POLICY PROCEEDS

34. Windsor realleges and incorporates by reference paragraphs 1 through 33 of the Complaint.

-7-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 071669

35. This is a Complaint for Declaratory Relief in which Windsor and The Trust and Trustee each assert competing claims. Windsor claims an absolute right of ownership of the Policy that includes all death benefit proceeds. The Policy death benefit proceeds total two million dollars ($2,000,000.00). The Trust's and Trustee's claim is ambiguous; it ignores the Trust's admissions confirmed by signed and notarized documentation and the express surrender and transfer of ownership by written agreement effectuated by the Trust through its Trustee in 2010.

36. The letter dated November 4, 2014 by the Insured to Windsor indicates an unauthorized intention to make a claim on the Policy death benefit proceeds.

37. Windsor is informed and believes, and on that basis alleges that the Trust and Trustee intend to make a claim on the Policy. This anticipated claim by the Trust and Trustee is contradicted by:

(a) The Trust's voluntary surrender and assignment of the ownership and beneficial interest in the Trust in return for a release of its obligations, as made in February 2010 and as memorialized by fully executed documents authorizing and consenting to the transfer of ownership for the Policy to Windsor in February, 2010;

(b) The release requested by the Insured in March 2010; and

(c) The lack of objection for more than four years to the release and Change of Ownership. [See Exh. E, at pp. 1-3.]

38. The Trust's and Trustee's indication of the Trustee's intention to make a claim on the Policy is further contradicted by the Trust's complete failure to make any premium payments for the Policy. Windsor has paid all premiums related to the Policy. Had the Trust in fact intended to retain any claim to the Policy or its benefits, the Trust would have paid attention to make sure that premiums continued to be paid on the Policy so the Policy did not lapse. The Trust, however, did not. It transferred ownership of the policy per the agreement of the parties, understanding it would be relieved of its obligations to Windsor, and never looked back until November of 2014, more than 4 years after the Trust and Trustee surrendered the policy, when the Insured (not the Trust or Trustee) raised a late objection.

39. Neither the Trust nor anyone else connected to this action other than Windsor has ever taken any steps to pay the Policy premiums or to repay the loan under the Financing Agreement Package

-8-

was signed.

40.  At no point did the Insured, the Trust, the Trustee, any representative of the Trust, or anyone else connected to this action object to or otherwise attempt to rescind the forms surrendering the Policy and appointing Windsor as the owner and beneficiary of the Policy. Indeed neither of the Defendants, the Insured, nor the original Servicing Agent has had any communication relating to the Policy for more than four years after Windsor became Owner and sent a release to the Insured.

41.  The indication of the Trustee's intention to make a claim on the Policy is further contradicted by the Default Sale Right provision of the Assignment (Document #15 in **Exhibit B,** page 130) and/or the controlling provisions of the California Commercial Code that authorized Windsor to retain the Policy, which had originally been pledged as collateral, in full satisfaction of the debt based on The Trust's and Trustee's offer to Windsor in February, 2010, made through its Servicing Agent, that Windsor take full ownership of the Policy, with the attendant right to change the beneficiary. [Com. Code §§ 9620, *et seq.*; *see also,* ¶15, *infra.*]

42.  At no time prior to November 2014 did the Trust and Trustee object to the full and complete assignment of the Policy to Windsor or to Windsor's designation as the beneficiary as stated in the Request of Ownership Change signed and transmitted by the Trustee to Windsor in February 2010.

43.  The late "objection" sent in November 2014 is of no effect due to, *inter alia,* untimeliness. An "objection" by the Trust or the Trustee is completely absent. And, the "objection" by the Insured comes more than 4 years after the Trust informed Windsor that it did not plan to pay back its loan or any premiums going forwards and was willing instead to relinquish Ownership and change the beneficiary to Windsor in February 2010, which Windsor indicated was acceptable, and thereafter the Trustee signed and provided the Request of Ownership Change sent to Pacific Life to effectuate the change.

44.  Contrary to the assertion made in the November 2014 letter, the Financing Agreement Package did not limit Windsor's right to "selling" the Policy. Likewise, the Request of Ownership Change signed and transmitted by the Trustee to Windsor in February 2010 imposed no limitation to the transfer of complete ownership of the Policy to Windsor.

45.  Windsor in February of 2010 through the current date retained all rights, and assumed

-9-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JUDD 071671

and satisfied all payment obligations, under the controlling law, including the right that Windsor take full ownership of the Policy, with the attendant right to change the beneficiary and receive all benefits under the Policy. Windsor alone has made all premium payments for the Policy since 2009.

46. Based on the foregoing competing claims and the possibility of further competing claims, Pacific Life could be placed in a position of conflict regarding to whom it should pay the death benefit proceeds of the Policy.

47. These competing claims create the real possibility that Pacific Life could face double or multiple liability if it pays the Policy proceeds to Windsor or to any representative of the Trust as the Policy beneficiary at the time of Mr. Coppock's death.

**Declaratory Relief**

48. Windsor realleges and incorporates by reference paragraphs 1 through 47 of the Complaint.

49. By reason of the foregoing, Windsor is entitled to declaratory relief with respect to the Death Benefit Proceeds on the grounds that as between Windsor and the Trust, Windsor has the superior right, title, and interest in and to the Death Benefit Proceeds and that therefore the Death Benefit Proceeds ought to be preserved for and paid over to Windsor.

**PRAYER FOR RELIEF**

WHEREFORE, Windsor prays for judgment as follows:

1. A judgment in favor of Windsor on all of its Claims;

2. A declaration that Windsor is entitled to receive the entirety of the Death Benefit Proceeds plus postmortem interest in this action;

3. An award to Windsor of its reasonable costs and expenses of litigation, including attorneys' fees and costs; and

4. Such other and further relief as the Court may deem just and proper.

//
//
//
//

-10-
COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC
CASE NO.
JCCP 071672

# DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6(A), Windsor respectfully demands a jury trial of all issues triable to a jury in this action.

Respectfully submitted:

Dated: January 6, 2014   THOMPSON, WELCH, SOROKO & GILBERT, LLP

By: /s/ Darin T. Judd
Darin T. Judd
Attorneys for Plaintiff
WINDSOR SECURITIES, LLC

-11-

COMPLAINT FOR DECLARATORY RELIEF OF WINDSOR SECURITIES, LLC