# EXHIBIT 9

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINDSOR SECURITIES, LLC<br><br>Plaintiff<br><br>vs.<br><br>ARENT FOX, LLP, and<br>JULIUS ROUSSEAU, III,<br>ESQUIRE<br><br>Defendants | Civil Action No. 16-cv-01533 (GBD)<br><br>**DECLARATION OF DARIN T. JUDD IN OPPOSITION TO MOTION SEEKING TO COMPEL DISCOVERY** |

I, Darin T. Judd, declare:

1. I am an attorney licensed to practice law in all of the state courts in California, and in the Federal District Courts for the Northern, Eastern, and Central Districts of the California. I am also admitted to the Supreme Court of the United States of America. I am a partner with Thompson, Welch, Soroko & Gilbert LLP ("TWSG"), and one of the attorneys at TWSG who have acted as legal counsel for Windsor Securities, LLC ("Windsor"). I make this declaration of my own personal knowledge. If called as a witness, I would and could testify under oath to the truth of the facts contained in this declaration.

2. TWSG has acted as legal counsel for Windsor and its members for a number of years in matters dealing with estate tax planning, tax planning, and on a litigation matter in 2004. This litigation matter in 2004 was venued in San Rafael, California, where TWSG maintains an office in Marin County. I represented Windsor in the 2004 matter which was unrelated to any matters that are the subject of the litigation between Windsor and Arent Fox. This case quickly resolved in 2004 through a negotiated settlement.

3. From 2004 through 2010 neither myself nor anyone at TWSG provided any legal services to Windsor that related to any of the matters that are the subject of the litigation between Windsor and Arent Fox. In 2010 Windsor again contacted me to engage TWSG to assist it in collecting

-1-

**DECLARATION OF DARIN T. JUDD**

-2-

monies owed by a Sylvia Riewerts. Again, this matter was unrelated to any matters that are the subject of the litigation between Windsor and Arent Fox. In reviewing the documentation I confirmed that the controlling venue and choice of law provisions designated Pennsylvania as the appropriate location and controlling law. Accordingly, my role and any work by TWSG ended in early 2010.

4.  Neither myself nor anyone else associated with TWSG were contacted by Windsor for any litigation matters generally from 2010-2014, and specifically Windsor did not seek any legal services related to any of the matters that are the subject of the litigation between Windsor and Arent Fox until I received an email and phone call from Steven Prusky of Windsor on April 15, 2014.

5.  On April 15, 2014, Mr. Prusky emailed and called me to advise that Windsor had recently received an Interim Award in a binding arbitration that occurred in California before a panel of three arbitrators. The arbitration matter was: Gregory Barnes as Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC (the "Barnes/Bitter Matter"). Mr. Prusky requested that I read the decision so he could ask some general questions regarding California law and how procedurally it would proceed if the Interim Award became a final judgment. Mr. Prusky also asked if TWSG handled legal malpractice claims as it appeared from the Interim Award in the Barnes/Bitter Matter that a claim for legal malpractice was warranted based on the transactional advice provided to Windsor 2008-2010 relating to its perfection of a security interest in the life policies pledged as collateral for loans extended by Windsor, and the failure to subsequently transfer full ownership of the death benefit for the policies to Windsor in exchange for full satisfaction of the unpaid debts. I advised Mr. Prusky that I would read the Interim Award and be available to answer his questions regarding the procedures associated with a binding arbitration. I also advised Mr. Prusky that TWSG did not handle legal malpractice claims but we did know of some attorneys/firms that we could recommend. In April of 2014 I did review the Interim Award and answer general questions from Mr. Prusky related to arbitration law and procedures under California law. I also provided Mr. Prusky with some recommendations of attorneys in California, and specifically in the Bay Area, that handled legal malpractice claims. I did not bill Windsor for any of the preceding and at the time had no expectation of doing any further work on the Barnes/Bitter matter. At no time did Windsor engage TWSG to be its

-2-

**DECLARATION OF DARIN T. JUDD**

contemporaneous legal counsel with the Arent Fox attorneys related to the Barnes/Bitter Matter. There were no discussions, calls, or other communications between Arent Fox and TWSG prior to the Barnes/Bitter Matter arbitration, TWSG played no role in the arbitration of the Barnes/Bitter Matter, and TWSG only communicated with the Arent Fox attorneys when it was determined our office would be substituting into the Barnes/Bitter Matter to finalize the previously negotiated settlement.

6. From April 15, 2014 until August 19, 2014, neither myself nor anyone else at TWSG provided any legal services to Windsor related to the Barnes/Bitter Matter or on any of the matters that are the subject of the litigation between Windsor and Arent Fox. I did have some communication with Mr. Prusky during this timeframe dealing exclusively with his attempts to contact the law firms I previously recommended as handling legal malpractice claims.

7. On August 19, 2014, Mr. Prusky contacted TWSG regarding retaining TWSG to represent Windsor in the case of Pacific Life Insurance Company v. Maria Ana Gordillo, as Trustee of the Erwin A. Collins Family Insurance Trust-2008 and Windsor Securities, LLC (the "Collins Matter"). This case had been filed in the Federal District Court for the Northern District of California on August 15, 2014. This was the first TWSG was aware of the Collins Matter, having provided no legal services associated with this case prior to this contact by Mr. Prusky in August of 2014. TWSG had no involvement in advising Windsor regarding its handling of the policy of insurance from 2008 through the time the Collins Matter was filed on August 19, 2014.

8. At this same time in August of 2014 Mr. Prusky notified me that another case, similar to the Collins Matter, would likely be filed by John Hancock Life Insurance Company, related to a policy of insurance it issued to the Joe E. Acker Family Trust in March of 2008 (the "Acker Matter"). TWSG had no prior knowledge of the Acker Matter, having provided no legal services associated with this case prior to this contact by Mr. Prusky in August of 2014. TWSG had no involvement in advising Windsor regarding its handling of the policy of insurance at issue in the Acker Matter.

9. Finally, at this same time in August of 2014 Mr. Prusky notified me that he was in the process of trying to resolve the Barnes/Bitter Matter, and that the Arent Fox law firm had negotiated a settlement and drafted a settlement agreement with only the last details to be worked out. Mr. Prusky

-3-

**DECLARATION OF DARIN T. JUDD**

requested that I review the draft settlement agreement and evaluate if TWSG could substitute in as legal counsel for Windsor on the Barnes/Bitter Matter. This was the first time that Windsor requested TWSG to act as legal counsel in the Barnes/Bitter Matter. I did review the draft settlement agreement and participate in a series of short and succinct conference calls with the attorneys at Arent Fox (specifically Jule Rousseau and Michael S. Cryan) to facilitate a transfer of the Barnes/Bitter Matter to TWSG.

10. In the latter part of August 2014 I advised Mr. Prusky, after reviewing the draft settlement agreement and participating in the conference calls with the Arent Fox attorneys, that TWSG would be willing to substitute in as attorneys for Windsor in the Barnes/Bitter Matter. The engagement by Windsor of TWSG in the Barnes/Bitter Matter dealt solely with completing the settlement. Any communications between TWSG and the Arent Fox law firm related exclusively to the issue of finalizing the settlement in the Barnes/Bitter Matter and transferring this matter to TWSG as our firm was engaged to replace Arent Fox. This was the first time myself or anyone else at TWSG had any contact with the attorneys at Arent Fox regarding the Barnes/Bitter Matter. As more fully explained next TWSG had no involvement in advising Windsor regarding its handling of the policy of insurance at issue in the Barnes/Bitter Matter.

11. At no time did anyone at TWSG provided any transactional advice regarding the transfer of ownership or the perfecting of Windsor's security interests in the five life insurance policies that are the subject of the malpractice claims. The legal advice related to the perfecting of Windsor's security interest in the five life insurance policies and the transfer of ownership as to the death benefit for each of these policies all occurred in the time period of 2008-2010. By the time TWSG was engaged the status of perfecting any ownership claims as to death benefits in the Barnes/Bitter Matter, the Acker Matter, and the Collins Matter had passed. The ownership of the death benefit had already been fully litigated in the Barnes/Bitter Matter with the arbitration panel issuing its award on April 11, 2014, the insured had died and a complaint was filed in the Collins Matter on August 15, 2014, and the insured died on April 15, 2014 with the trustee of the life insurance trust raising a claim for the death benefit in the Acker Matter before TWSG was ever contacted to provide any legal representation. Because the

DECLARATION OF DARIN T. JUDD

insureds had already died in these matters TWSG could offer no transactional advice, it was simply too late.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this 6th day of June, 2017, at San Rafael, California.

*/s/ Darin T. Judd*
Darin T. Judd

-5-

**DECLARATION OF DARIN T. JUDD**