# EXHIBIT 14

*WINDSOR SECURITIES, LLC VS.*
*ARENT FOX LLP, et al.*

*LAUREN ANTONINO*
*February 15, 2018*



ELLEN GRAUER
COURT REPORTING CO. LLC

126 East 56th Street, Fifth Floor  New York, New York 10022
P:  212-750-6434   F:  212-750-1097
www.ellengrauer.com

*Original File 116472.TXT*
*Min-U-Script® with Word Index*

```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     -----------------------------------------------------X
 3   WINDSOR SECURITIES, LLC,

 4         Plaintiff,

 5   vs.

 6   ARENT FOX LLP, et al.,

 7         Defendants,

 8   CIVIL ACTION NO. 16-CV-01533 (GBD) (GWG)
     -----------------------------------------------------X
 9
                                    303 Peachtree Street NE
10                                  Atlanta, Georgia
11
                                    February 15, 2018
12                                  11:03 a.m.

13

14        Videotaped deposition of LAUREN ANTONINO, taken

15   on behalf of the Defendants, pursuant to Notice and

16   agreement of counsel, in accordance with the Federal

17   Rules of Civil Procedure, before Maureen S. Kreimer,

18   CCR B-1379, CRR, Notary Public, at the law offices

19   of Hawkins Parnell.

20

21

22

23         ELLEN GRAUER COURT REPORTING CO. LLC
             126 East 56th Street, Fifth Floor
24                New York, New York 10022
                       212.750.6434
25                    REF:  116472
```

```
 1   A P P E A R A N C E S :

 2

 3   Alan L. Frank Law Associates, P.C.

 4   On behalf of the Plaintiff

 5        135 Old York Road

 6        Jenkintown, Pennsylvania 19046

 7   BY:  ALAN L. FRANK, ESQ.

 8        215.935.1000

 9

10   Foley & Lardner, LLP

11   On behalf of the Defendants

12        90 Park Avenue

13        New York, New York 10016

14   BY:  PETER N. WANG, ESQ.

15        ADAM G. PENCE

16        212.682.7474

17

18   Hawkins Parnell Thackston & Young LLP

19   On behalf of the Witness

20        303 Peachtree Street NE

21        Suite 4000

22        Atlanta, Georgia 30308-3243

23   BY:  CHRISTINE L. MAST, ESQ.

24        404.614.7400

25
```

```
 1   A P P E A R A N C E S : (Cont'd)

 2

 3   ALSO PRESENT:

 4         Mr. Henry Stewart, Videographer

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1     ------------------ I N D E X ------------------
 2     WITNESS              EXAMINATION BY              PAGE
 3     LAUREN ANTONINO      MR. WANG                       7
 4
 5
 6     ---------------- E X H I B I T S ---------------
 7     DEFENDANTS'          DESCRIPTION               FOR I.D.
 8     Exhibit 1            Affidavit of Lauren S.         38
 9                          Antonino
10     Exhibit 2            Subpoena to Lauren             48
11                          Antonino to produce
12                          documents
13     Exhibit 3            Billing reports from           69
14                          Antonino firm
15                          Plaintiff-069455 - 9601
16     Exhibit 4            Confidential submission by     80
17                          Windsor Securities LLC via
18                          email to Wayne Thorpe
19                          Antonino-083440 - 3460
20     Exhibit 5            Email string ending           123
21                          8-30-16 Subject Attorney
22                          Invoices; Plaintiff-084552
23                          - 4553
24
25
```

```
 1    ----------- E X H I B I T S (Cont'd) ------------
 2    DEFENDANTS'    DESCRIPTION                    FOR I.D.
 3    Exhibit 6      Tolling Agreement signed          142
 4                   2-13-15 Antonino-016421 -
 5                   6424
 6    Exhibit 7      2-23-16 Letter from Marcus        148
 7                   Law Office to Steve Prusky
 8                   Antonino-016416
 9    Exhibit 8      3-22-17 Mutual Release of         162
10                   Claims Plaintiff-087010
11    Exhibit 9      Eugene Houchins III               164
12                   Affidavit Plaintiff-072806
13                   - 2811
14    Exhibit 10     Email string ending               168
15                   8-29-14 Subject Barnes/
16                   Bitter Policy Revised
17                   Settlement, CONFIDENTIAL
18                   Plaintiff-008243 - 8251
19
20
21              (EXHIBITS TO BE PRODUCED)
22
23
24
25
```

```
 1                      ANTONIO
 2           MS. MAST:  You see what I'm saying?
 3           MR. WANG:  I don't see what you mean.  But
 4      we'll get to the affidavit, and then I'll ask
 5      specific questions in the context of the
 6      affidavit.
 7           MS. MAST:  Okay.
 8           MR. WANG:  Maybe that will help this
 9      along.
10           MS. MAST:  Okay.
11   BY MR. WANG:
12      Q.    Ms. Antonino, had you, prior to your
13   working for Windsor, being retained by Windsor, had
14   you had any experience in premium financing for life
15   insurance policies?
16      A.    No.
17      Q.    Had you had any experience in litigation
18   involving premium financing for life insurance
19   products?
20      A.    I had experience involving insurance
21   coverage disputes, but not specifically life
22   insurance premium financing.
23      Q.    What sorts of insurance coverage disputes
24   had you had experience in?
25      A.    Disputes over who's entitled to the death
```

|   |   |   |
|---|---|---|
| 1 | | ANTONIO |
| 2 | don't know if it was exactly before or after when I |
| 3 | started working with Windsor, but it could been |
| 4 | before.  Yeah, I -- there is one that I'm thinking |
| 5 | of particularly.  So I don't know exactly the |
| 6 | timing. |
| 7 | Q. | So you're thinking of one in particular |
| 8 | that happened fairly recent to the Windsor |
| 9 | experience, either before or after? |
| 10 | A. | I think so. |
| 11 | Q. | Mm-hmm (affirmative). |
| 12 | A. | I hadn't thought about it in a while, but |
| 13 | yes. |
| 14 | Q. | Okay.  And how about life settlement? |
| 15 | The -- you know what the life settlement industry |
| 16 | is, you know what that -- |
| 17 | A. | Yes.  I had not been involved in the life |
| 18 | settlement industry before. |
| 19 | Q. | You had not? |
| 20 | A. | No, sir. |
| 21 | Q. | And I think you said you had not been |
| 22 | involved in any case involving premium financing; |
| 23 | correct? |
| 24 | A. | Yes. |
| 25 | Q. | You know what premium financing is? |

|   |   |
|---|---|
| 1 | ANTONIO |
| 2 | at and give some advice on eventually.  This is way |
| 3 | late in the game. |
| 4 |     Q.    Mm-hmm (affirmative). |
| 5 |     A.    So it depends on how you define "matter". |
| 6 | And there were a variety of things between 2014 |
| 7 | until the -- you know, until now. |
| 8 |     Q.    Okay.  So on each time that you worked on, |
| 9 | whether it was the Utah matter, or the Canada |
| 10 | matter, did you open a different billing matter |
| 11 | number for that? |
| 12 |     A.    No.  It was really general representation. |
| 13 | I was retained to evaluate whether or not there were |
| 14 | claims against Gene Houchins and that group.  And |
| 15 | that was the scope, by definition of my engagement, |
| 16 | specifically in my engagement letter in the outset. |
| 17 | That was the only reason that I was retained. |
| 18 | That's why your client called me. |
| 19 | And in connection with evaluating the |
| 20 | potential claims against Mr. Houchins, I was sent a |
| 21 | whole lot of information about a whole lot of things |
| 22 | so that I could understand what happened. |
| 23 | And then it wasn't until May or June of |
| 24 | 2015 that I was expressly asked to become involved |
| 25 | in, you know, other matters, and so I had a revised |

|    |    |
|----|----|
| 1  | ANTONIO |
| 2  | engagement letter for that.  I think my affidavit |
| 3  | speaks to that, and which had its own limited scope. |
| 4  | And then, you know, after that it was a |
| 5  | relationship and, you know, occasionally I was asked |
| 6  | to look at some other things. |
| 7  | So late in the relationship because the |
| 8  | premium financing cases, you know, the -- were -- |
| 9  | the California cases that Darin were handling were I |
| 10 | think maybe over then -- I'm not sure really, I'd |
| 11 | have to look at my bills -- and we had decided along |
| 12 | the way not to sue Houchins. |
| 13 | When I started doing some other things, I |
| 14 | did at the end start noting what they were, you |
| 15 | know, if they were specific for a specific something |
| 16 | else, like the Canada matter, or you know, what you |
| 17 | guys are doing. |
| 18 | MR. FRANK:  I'm going to move to strike or |
| 19 | limit or somehow address some of the answer -- |
| 20 | I didn't want to interrupt it -- to the extent |
| 21 | that it implicates what we believe to be |
| 22 | attorney-client privileged topics and, in |
| 23 | particular, addressing a decision to sue or not |
| 24 | sue Mr. Houchins.  The Plaintiff most certainly |
| 25 | does not concede his privilege with respect to |

```
 1                        ANTONIO
 2        privilege and violates Judge Gorenstein's
 3        order.  But I'm not criticizing.  I'm just
 4        simply --
 5              THE WITNESS:  No problem.
 6              MR. FRANK:  -- registering on the record
 7        our objection to the content of that question
 8        and the answer.
 9   BY MR. WANG:
10        Q.    Did you meet -- did you ever meet
11   Mr. Houchins?
12        A.    No.
13        Q.    Did you notice his deposition?
14        A.    I know we tried to schedule it.  I don't
15   remember if a notice went out or not, so I'd have to
16   look at the folder, at the file.
17        Q.    And what -- the case settled before you --
18   before that occurred?
19        A.    Yes.
20        Q.    So you were going to be -- take his
21   deposition, but the settlement intervened?
22        A.    I think in the course of the discovery
23   plan there were communications about taking
24   Houchins' deposition.
25        Q.    Okay.  You did review his transcript in
```

```
                  A C K N O W L E D G M E N T


     STATE OF            )

                         ) ss.:

     COUNTY OF           )


                I, LAUREN ANTONINO, hereby

     certify that I have read the transcript of my

     testimony taken under oath in my deposition;

     that the transcript is a true, complete and

     correct record of my testimony, and that the

     answers on the record as given by me are true

     and correct.



                           _____

                                    LAUREN ANTONINO


     Signed and subscribed to before

     me, this _____ day of _____, ____.


     _____

     Notary Public, State of _____
```

```
 1                C E R T I F I C A T E
 2
 3   STATE OF GEORGIA    )
 4                       :
 5   FULTON COUNTY       )
 6
 7        I hereby certify that the foregoing transcript was
 8   taken down, as stated in the caption, and the questions
 9   and answers thereto were reduced to the written page
10   under my direction; that the foregoing pages represent a
11   true and correct transcript of the evidence given.
12        I further certify that I am not of kin
13   or counsel to the parties in the case; am not in the
14   regular employ of counsel for any of said parties; nor am
15   I anywise interested in the result of said case.  The
16   witness did reserve the right to read and sign the
17   transcript.
18        This, 27th day of February, 2018.
19
20
21
22   [signature: Maureen Kreimer]
23   _____
     MAUREEN KREIMER, CCR-B-1379
24   Notary Public in and for the
     State of Georgia.  My Commission
25   Expires August 14, 2020.
```

```
1                    ***ERRATA***

2        ELLEN GRAUER COURT REPORTING  CO. LLC
            126 East 56th Street, Fifth Floor
3                 New York, New York 10022
                       212-750-6434
4

5   NAME OF CASE: WINDSOR SECURITIES VS. ARENT FOX
    DATE OF DEPOSITION: February 15, 2018
6   NAME OF WITNESS: LAUREN ANTONINO

7   PAGE LINE    FROM        TO         REASON

8   ____|____|_____|_____|_____

9   ____|____|_____|_____|_____

10  ____|____|_____|_____|_____

11  ____|____|_____|_____|_____

12  ____|____|_____|_____|_____

13  ____|____|_____|_____|_____

14  ____|____|_____|_____|_____

15  ____|____|_____|_____|_____

16  ____|____|_____|_____|_____

17  ____|____|_____|_____|_____

18  ____|____|_____|_____|_____

19  ____|____|_____|_____|_____

20  ____|____|_____|_____|_____

21                          _____

22  Subscribed and sworn before me

23  this_____day of _____, ____.

24  _____        _____

25  (Notary Public)         My Commission Expires:
```