# EXHIBIT 18

ORIGINAL

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------x

WINDSOR SECURITIES, LLC

                    Plaintiff,       Case No.

          -against-         16-cv-01533

ARENT FOX, LLP and JULIUS     (GBD)

ROUSSEAU, III,

                 Defendants.

-------------------------------------x

                 October 4, 2017

                 9:32 a.m.


       Deposition of DARIN T. JUDD, held at

the offices of Foley & Lardner LLP, 90 Park

Avenue, New York, New York, pursuant to Subpoena,

before Mildred Cassese, a Registered Professional

Reporter and Notary Public of the State of

New York.

**Computer Reporting NYC Inc.**

124 West 72nd Street |New York, NY 10023
(212) 986-1344 Fax (212) 983-9149 office@crinyc.com

A P P E A R A N C E S :

 ALAN L. FRANK LAW ASSOCIATES, P.C.

 Attorneys for Plaintiff

  135 Old York Road

  Jenkintown, Pennsylvania 19046

 BY: ALAN L. FRANK, ESQ.


 FOLEY & LARDNER LLP

 Attorneys for Defendants

  90 Park Avenue

  New York, New York 10016

 BY: PETER N. WANG, ESQ.

  ADAM G. PENCE, ESQ.


 ALSO PRESENT:

  JULE ROUSSEAU, ARENT FOX

  HUNTER T. CARTER, ARENT FOX

  STEVEN PRUSKY

  DMITRY ZVONKOV, VIDEOGRAPHER

**IT IS HEREBY STIPULATED AND AGREED**, by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

**IT IS FURTHER STIPULATED AND AGREED** that all objections, except as to the form of the question, shall be reserved to the time of the trial.

**IT IS FURTHER STIPULATED AND AGREED** that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom the within deposition was taken.

*Judd*

1

2   communication between and my client, so I can't

3   answer.  It's attorney-client privilege.

4        Q.    Well, you earlier said no.  I

5   assume -- whether or not you had -- whether he

6   consulted you from time to time; you said no.

7        A.    I should have said that that was

8   attorney client privilege, because that was a

9   communication between me and my client.

10        Q.    Let's come to the time when Mr. Prusky

11   first contacted you, I think you said it was

12   April 2014 after the interim award was issued,

13   correct, sir?

14        A.    That is correct.

15        Q.    At the time that he had contacted you,

16   had you ever, previous to that, ever been involved

17   this any litigation involving the -- what is known

18   as the life settlement business?

19        A.    No.

20        Q.    You know what life settlement is now,

21   don't you?

22        A.    I do, yes.

23        Q.    Okay.  But you had never had any case

24   involved with that?

25        A.    I had not.

*Judd*

1
2    privilege communication.

3         Q.    Okay.  By the way, just so we're

4    clear, you'll assert privilege whenever you choose

5    to or Mr. Frank chooses to on your behalf --

6    again, I'm not going to argue with you.  We're

7    just trying to make a record here of questions and

8    then your responses to it.

9              So you'll understand from my

10   silence --

11             **MR. WANG:**  And, perhaps, I should

12        address this to Mr. Frank, I don't accede

13        necessarily to the implication of privilege.

14        We're just going to move on to try to make

15        progress.

16        Q.    All right, do you understand that?

17        A.    I do, yes.

18        Q.    Okay.

19              So you had no experience in life

20   settlement.

21              Had you had any experience in premium

22   finance, that is, life insurance premium

23   financing?

24        A.    No.

25        Q.    Had you had any experience of that at

1                          *Judd*

2              I'm not agreeing with your statements

3         on the record, but I don't want to impair

4         this deposition.  I want you to continue

5         with the deposition, please.

6              **MR. WANG:**  Let me show you a document

7         which we will he have marked as the next

8         exhibit, and it's an e-mail from you to

9         Mr. Wood.  There's no Bates stamp on it.

10             These were produced without the Bates

11        stamps -- they were produced --

12             **MR. PENCE:**  Natively, I believe.

13             **MR. WANG:**  -- natively, whatever that

14        means.

15             **(Judd Exhibit 6,** E-mail dated

16        9/26/2014 from Mr. Judd to Mr. Wood, marked

17        for identification, as of this date.)

18   **BY MR. WANG:**

19        Q.    That's a letter that you sent to

20   Mr. Wood on September 26th, correct?

21        A.    Yes.  It's an e-mail.

22        Q.    I think e-mails qualify as letters.

23             And you were, quote, authorized to

24   provide a global settlement offer for Barnes,

25   Bitter, Collins and Acker.

1                          *Judd*

2              Do you see that?

3      A.     I do, yes.

4      Q.     And that was a global settlement of a

5  million five, right, that's what you --

6      A.     Yeah.  Yes.

7      Q.     Now before you sent this letter you

8  made reference to prior phone "discussions,"

9  plural.

10             Do you see that in the third

11  paragraph?

12      A.     I do, yes.

13      Q.     And you see Mr. Wood had apparently

14  told you that he thought he would have a similar

15  result in the Collins and Acker matters, similar

16  to what had happened in the Bitter arbitration,

17  correct?

18      A.     He did say that to me, yes.

19      Q.     You had -- and you disagreed with him?

20      A.     I did.  And so did the California

21  Supreme Court.

22      Q.     Through the Vandenberg case?

23      A.     Yes.

24      Q.     In other words -- so you had -- when

25  you took over this case, one of the things you did

1                         *Judd*

2          Q.    Did you tell him -- did you tell him

3    that the $650,000 separate offer from

4    Barnes/Bitter was on the table -- remained on the

5    table?

6          A.    I made the global settlement offer.

7          Q.    That was instead of the individual

8    offer for Barnes/Bitter, was it not?

9          A.    Had he accepted this, it would have

10   resolved Barnes, Bitter Collins and Acker.

11         Q.    But he didn't accept this?

12         A.    He did not.

13         Q.    In fact, he told you that he couldn't

14   possibly accept a global offer, because that would

15   be unethical.

16         A.    I believe he did say that.

17         Q.    Okay.  Had you considered that before

18   he said that to you; that is, that you couldn't do

19   that?

20   DI          **MR. FRANK:**  Same objection, same

21         direction.

22         Q.    Had you heard from Mr. Rousseau that

23   Mr. Prusky had tried that tack earlier; that is,

24   the idea of a global settlement, but that that was

25   not able -- that was not able to be accomplished?

1                          *Judd*

2    Coppock, you know, from what to what?

3                What was the settlement going to be at

4    the beginning of the time you took over the case

5    versus what you ultimately settled the case for?

6    DI        **MR. FRANK:**  Same objection, same

7              direction.

8                I also object to form, because your

9              predicate is in error.

10       Q.    The $12,000 sum, what had been the

11   demand for Coppock on behalf of Coppock by

12   Mr. Wood?

13       A.    I'd have to go back and look, but it

14   was -- I'd have -- it was well in excess of

15   $12,000.

16       Q.    And how much in excess?

17       A.    I believe that there was an e-mail

18   that he sent to us following the court granting

19   the summary judgment motion in December, and I'd

20   have to look at that number, but it was

21   significantly more.

22               His agreement to go to $12,000 was a

23   fraction of what he was asking for.

24       Q.    Did you understand -- did Mr. Wood

25   indicate, in words or substance, that the fact

1                          *Judd*

2    that you had gone to court on Acker and Collins

3    and lost, now upped the amount that he was seeking

4    on Coppock and Stamatov?

5          A.    He did, until we notified him that we

6    would conduct a public sell for the sell of the

7    policy.

8          Q.    I understand that.  But his position

9    was that whatever he was prepared to settle that

10   earlier, the amount had gone up because of what

11   happened in Collins and Acker?

12         **MR. FRANK:**  Objection as to form.

13         A.    I don't believe that's what he had

14   said.

15         Q.    So your view was that for Mr. Coppock,

16   that the demand was significantly higher than

17   $12,000?

18   DI      **MR. FRANK:**  Objection.

19              Same objection, same direction.

20         Q.    That's your view --

21              **MR. FRANK:**  Objection.

22         A.    He wrote it -- in an e-mail.

23   DI      **MR. FRANK:**  Objection.

24              Same objection, same direction.

25              **MR. WANG:**  Well, let me show you what

1                          *Judd*

2       best of our ability today.

3            **MR. WANG:**  We'll complete the

4       deposition any way, but just so we're'

5       clear, I don't think you have the right to

6       switch the burden of that determination,

7       Mr. Frank, of what should or should not be

8       clawed back.

9            That's your business to do when it was

10      time to do it, which was during the period

11      when you said hold off on the review, we're

12      going to do -- you weren't involved with

13      that, Ms. Milrood was, although you did send

14      an e-mail that said there were no

15      deficiencies in your production.

16           **MR. FRANK:**  There are no deficiencies.

17           You're refusing to identify for us now

18      the additional documents you mentioned in

19      the beginning of your statement.

20           The record reflects that.

21           **MR. WANG:**  Okay.  Let's have the

22      reporter mark an e-mail from Mr. Judd to

23      Mr. Wood, September 15, 2015.

24           **(Judd Exhibit 16,** E-mail dated

25      September 15, 2015 from Mr. Judd to

1                          *Judd*

2          Mr. Wood, marked for identification, as of

3          this date.)

4          Q.    That's a letter you sent to Mr. Wood

5     on or about that date, sir?

6          A.    Yes.

7          Q.    And you made an offer of $40,000 on

8     Stamatov case?

9          A.    Correct.

10         Q.    And ultimately it settled for 50 --

11    I'm sorry, what did it settle for?

12         A.    12.

13         Q.    12.  So you offered 40 and it went

14    down to 12?

15         A.    Correct.

16         Q.    How did that happen?

17         A.    We notified Mr. Wood that we would

18    conduct a public sell of the insurance policy,

19    because the insured was still not -- was still

20    alive, and based on that he accepted the $12,000.

21         Q.    He accepted a lower amount?

22         A.    Yes.

23         Q.    So you were prepared to pay more, but

24    then you reduced it to 12?

25         A.    This was when -- well, yeah, the

1                              *Judd*

2      demand, after we made the determination that we

3      would do a public sell, he accepted 12.

4           Q.    What did he do with the -- you were

5      offering 40?

6           A.    He rejected this.

7           Q.    He rejected it.  And ultimately only

8      got 12.  Is that what you're saying?

9           A.    Correct.

10          Q.    When did you first make the threat of

11     starting the foreclosure sale?

12          A.    The public sale -- uhm -- it wasn't a

13     threat -- we had -- eval -- well, what you are

14     asking for calls for attorney-client work product.

15          Q.    When?

16          A.    Yes.

17          Q.    When did you first tell Mr. Wood that

18     you were going to conduct a public sale?

19          A.    Uhm -- I don't know if it was the

20     first time, but the time that I can recall is

21     after the summary judgment was granted in his

22     favor in December.  We told him after.

23          Q.    December 2015?

24          A.    Correct.

25                We told him after that that we would

1                    *Judd*

2    conduct public sales on the Coppock policy and the

3    Stamatov policy.

4              I don't know if that was the first

5    time that we had that discussion with him directly

6    or not.

7         Q.    Was there anything that would have

8    prevented you from conducting those sales at an

9    earlier point in time?

10        A.    Yeah.

11             Because it's a public sale, the --

12   it's open to the public, and the Houchins group

13   were saying they would purchase the policies, and

14   we would lose our investment.

15        Q.    And what changed -- why was that not a

16   risk after the -- why was that not a risk, that

17   is, that the Houchins group is going to buy them

18   after the Collins and Acker summary judgment

19   opinions?

20   DI        **MR. FRANK:**  Objection.  Same

21        objection, same direction.

22        Q.    You testified that you -- that

23   Mr. Houchins -- you testified that you were

24   concerned that Mr. Houchins was going to buy in to

25   the sale if you conducted it earlier.

1                          *Judd*

2        proceeding.   Total number of disks was

3        three.

4               We're off the record at 2:18.

5

6               (Time Noted:  2:18 p.m.)

7

8                    _____

9                    DARIN T. JUDD

10

11   Subscribed and sworn to before me

12   this _____day of _____, 2017.

13

14   _____       _____

15   (Notary Public)       My Commission Expires:

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

STATE OF NEW YORK     )

              : ss.

COUNTY OF NEW YORK    )

       I, MILDRED CASSESE, a Registered Professional Reporter and a Notary Public within and for the State of New York, do hereby certify that the foregoing deposition of DARIN T. JUDD was taken before me on the 4th day of October 2017;

       That the said witness was duly sworn before the commencement of his testimony; that the said testimony was taken stenographically by me and then transcribed.

       I further certify that I am not related by blood or marriage to any of the parties to this action or interested directly or indirectly in the matter in controversy; nor am I in the employ of any of the counsel in this action.

       IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of November 2017.

MILDRED CASSESE, RPR

October 4, 2017

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---------|----------------|------|
| DARIN T. JUDD | MR. WANG | 5 |

----------------INFORMATION REQUESTS---------------

DIRECTIONS (DI):   41, 43, 44, 49, 49, 50,

51, 51, 52, 52, 52, 53,

58, 59, 61, 61, 62, 62,

76, 79, 79, 86, 87, 87,

88, 90, 91, 92, 92, 93

93, 93, 102, 102, 107,

107, 109, 110, 110, 111,

111, 112, 113, 113, 114,

121, 121, 122, 129, 131,

131, 132, 133, 134, 135,

136, 136, 152, 152, 152,

153, 153, 157, 158, 158,

168, 169, 172, 178, 179

181, 183, 187, 188,188,

188, 188.

INSERT:            28.

```
RULINGS (RL):          None.
REQUESTS (RQ):         35, 94, 116, 164, 189,
                       192, 194.
CERTIFIED (CE):        None.
MOTIONS (MO):          None.
```

E X H I B I T S

JUDD EXHIBITS                    FOR IDENTIFICATION

1, Declaration of Darin T. Judd.................43

2, Portions of a privilege log from

Mr. Frank's office.............................47

3, Combination of e-mails between Mr. Wood and

Mr. Rousseau, Bates AF 0019239 through 241......67

4, Letter from Mr. Wood to Mr. Judd and from Mr.

Judd to Mr. Wood, dated September 16th and

September 17th, Bates Plaintiff 073915..........74

5, E-mail with an attachment from Ms. Antonino

to Mr. Prusky, to Mr. Frank and to Mr. Judd

Antonino, Bates 022548 through 555..............93

6, E-mail dated 9/26/2014 from Mr. Judd

to Mr. Wood...................................100

7, Document entitled Mutual Release of Claims,

Bates Plaintiff 087010 through 14.............113

8, E-mail chain, Bates Antonino 074141,42......116

## E X H I B I T S

JUDD EXHIBITS                    FOR IDENTIFICATION

9, Plaintiffs's Response to Defendants' First

Set of Interrogatories........................122

10, Multiple e-mails, no Bates, starting with

e-mail dated 12/23/2015.......................137

11, Confidential Submission by Windsor

Securities to JAMS............................143

12, Example of bill, Bates 069662 and 63.......156

13, E-mail, Bates Plaintiff 084703............164

14, Series of e-mails, Bates Antonino 055032

through 036...................................167

15, Series of e-mails, Bates Antonino 0551113

through 145...................................171

16, E-mail dated September 15, 2015 from

Mr. Judd to Mr. Wood..........................175

17, Series of e-mails from January 2016,

no Bates.....................................183

18, E-mail stream dated September 18, 2014,

between and among Mr. Judd, Mr. Prusky and Ms.

Antonino, Bates Antonino 055104 through 107....189

19, Series of e-mails, Bates Antonino 056754

through 775...................................191

20, Ms. Canoff's declaration in Acker case.....192

**COMPUTER REPORTING NYC INC.**
124 West 72nd Street
New York, NY 10023
(212) 986-1344

NAME OF CASE: Windsor Securities, LLC v. Arent Fox, LLP
DATE OF DEPOSITION: October 4, 2017
WITNESS: Darin T. Judd

If there are any corrections to your deposition, indicate them on this sheet of paper, give the change, page number, and line number.

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

_____
**Darin T. Judd**

Subscribed and sworn to before me

this _____day of _____, 2017.

_____   _____
(Notary Public)        My Commission Expires: