# EXHIBIT 32

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

WINDSOR SECURITIES, LLC,                                    Civil Action No. 1:16-cv-01533 (GBD)

     Plaintiff,

vs.

ARENT FOX, LLP; and
JULIUS ROUSSEAU, III,

     Defendants.

_____/

**EXPERT WITNESS STATEMENT OF JOSEPH WOOD**



EXHIBIT
Wood 21
6/28/18 PYG
PENGAD 800-631-6989

Joseph Wood respectfully submits, pursuant to Federal Rules of Civil Procedure, Rule 26(a)(2)(B), the following Expert Witness Statement in the above-named action.

## A. SCOPE OF ASSIGNMENT.

I have been asked by plaintiff, Windsor Securities, LLC ["Windsor"]: (1) to investigate and evaluate the conduct of defendants, Arent Fox, LLP and Julius Rousseau, III [collectively, "Mr. Rousseau"], in their representation of Windsor during the period from June 5, 2009 through August, 2014, with specific reference to the analysis and enforcement of certain life insurance premium financing agreements, made under California law, to which Windsor was a party; (2) to provide an expert opinion as to whether Mr. Rousseau's conduct in that regard failed to meet the applicable standard of care; and (3) to provide an expert opinion as to whether, if Mr. Rousseau's conduct in that regard failed to meet the applicable standard of care, that failure was more likely than not the cause of damages to Windsor.

## B. FACTS OR DATA CONSIDERED IN FORMING THE OPINIONS THAT WILL BE EXPRESSED.

In reaching the opinions that will be expressed herein, I have considered the facts and/or data set forth below.

1. In or about 2008, plaintiff, Windsor entered into five life insurance premium financing agreements, *viz.*: the Life Insurance Premium Financing Agreement Among Windsor Securities LLC John Bitter Irrevocable Life Insurance Trust And John L. Bitter, Jr.; the Life Insurance Premium Financing Agreement among Windsor Securities LLC The Erwin A. Collins Family Insurance Trust - 2008 And Erwin A. Collins; the Life Insurance Premium Financing Agreement among Windsor Securities LLC The Joe E. Acker Family Insurance Trust And Joe E.

Acker; the Life Insurance Premium Financing Agreement Among Windsor Securities LLC The Robert S. Coppock Irrevocable Life Insurance Trust And Robert S. Coppock; and the Life Insurance Premium Financing Agreement Among Windsor Securities LLC The Jane Ann Stamatov Family Insurance Trust And Jane Ann Stamatov. The operative documents for each Financing Agreement were essentially identical to those of the others.

2.    Each Financing Agreement was signed or approved not only by the borrower - a life insurance trust [the "Trust"] - but also by the insured [the "Insured"] and by the beneficiary of the trust [the "Beneficiary"].

3.    Each Financing Agreement was made up of nineteen documents, intended by the parties to comprise a single agreement. The nineteen documents included, *inter alia*, the following:

- Life Insurance Premium Financing Agreement, executed by Windsor and by the Trust [the "Agreement"].

- Terms and Conditions for Life Insurance Premium Financing Agreement Among Windsor Securities, LLC, etc., expressly made part of the Financing Agreement [the "Terms and Conditions"].

- Promissory Note executed by the Trust [the "Promissory Note"].

- Irrevocable Trust Agreement executed by the Insured [the "Trust Agreement"].

- Special Power of Attorney executed by the Trust [the "Special Power of Attorney"].

- Security Agreement For Beneficiary Interest In Trust, executed by Windsor, by the Trust, and by the Beneficiary [the "Security Agreement"].

&mdash;   Assignment of Life Insurance Policy as Collateral, executed by Windsor and by the Trust [the "Collateral Assignment"].

&mdash;   Collateral Assignment [on form provided by Insurer], executed by the Trust and by the Insured [the "Collateral Assignment – Insurer Form"].

&mdash;   Receipt of Funds Confirmation executed by the Trust [the "Receipt of Funds"].

4.    Each Financing Agreement provided that all notices from Windsor to the remaining parties to the Financing Agreement were required to be in writing addressed directly to the parties.

5.    Each Financing Agreement provided that Windsor was obligated to loan the Trust a particular amount, covering a loan initiation fee and two years of premiums on the subject life insurance policy [the "Policy"].

6.    Each Financing Agreement provided that the Trust was obligated to repay the amount financed/loaned, plus interest thereon, at the end of approximately twenty-seven months.

7.    Each Financing Agreement provided that the Policy was collateral for the loan.

8.    Each Financing Agreement provided that all aspects of the Financing Agreement were governed by California law. The apparent purpose of that provision was to give the parties the certainty and protection of the Uniform Commercial Code, which allows for the use of a life insurance policy as collateral in a transaction thereunder only in the iterations of that code adopted by California and one other state.

9.    Each Financing Agreement provided that Windsor, in the event of a default by the Trust, had the right to proceed directly against the Trust for repayment of the amounts loaned to the Trust whether or not Windsor chose to proceed against the policy collateral, *i.e.*, that the loan was, in the language of the industry, a "recourse" loan as to the Trust.

4

10. Each Financing Agreement arguably provided that in the event of a default on the loan by the Trust, the Trust was required to execute certain documents that would allow Windsor, subject to Windsor's continuing obligations to the Trust under the Financing Agreement, to take title to, and beneficiary status under, the Policy.

11. Each Financing Agreement provided that, following default by the Trust and execution by the Trust of the above-mentioned documents transferring title and beneficiary status under the Policy, Windsor, subject to Windsor's continuing obligations to the Trust under the Financing Agreement, had the following options:

(a) Windsor could allow the Policy to lapse, in which case neither Windsor nor the Trust would obtain any financial benefit from the Policy and the Trust would remain liable to Windsor for the full amount of the loan plus interest thereon, plus reasonable expenses incurred in connection with the loan.

(b) Assuming the Policy had not been allowed to lapse, Windsor, prior to the death of the insured and pursuant to Windsor's status as secured lender/title holder:

(i) could sell the Policy at a public or private sale, at which sale both Windsor and the Trust would be allowed to bid;

(ii) could take from the proceeds of the sale the amount it had loaned to the Trust, plus interest thereon, plus its reasonable costs incurred in connection with the sale; and

(iii) would be required to provide any excess proceeds to the Trust; or

(iv) should the proceeds be insufficient to cover what Windsor was owed, could proceed directly against the Trust to recover the deficiency.

(c) Again assuming the Policy had not been allowed to lapse, and that no sale

had been held, Windsor, following the death of the insured, and pursuant to Windsor's status as beneficiary:

(i)     could collect the death benefit from the insurance company;

(ii)    could take from the death benefit the amount it had loaned, plus interest thereon, plus its reasonable costs incurred in connection with collecting the death benefit; and

(iii)   unless the parties had exercised the "Default Sale Right," described below, Windsor would be required to provide the remaining portion of the death benefit to the Trust; or

(iv)    if the parties had exercised the "Default Sale Right," the Trust would have no continuing obligation on the loan and Windsor could retain the entirety of the death benefit.

12.     Each Financing Agreement provided that exercise of the Default Sale Right required the following:

> Upon an occurrence of an Event of Default (as defined in the Agreement)
> that has not been remedied within the time period required in the
> Agreement, Assignee shall have the right (the "Default Sale Right") but not
> the obligation to accept, that in consideration of the full and complete
> satisfaction of the Liabilities (the sufficiency of which consideration is
> hereby acknowledged) Owner may make a full transfer and assignment of
> the Insurance Policy to Assignee and thereby forever relinquish any and all
> rights Owner may have thereunder, including without limitation any rights

to cash surrender value and/or death benefit provided thereunder. Upon the

exercise of this Default Sale Right, Assignee shall notify Insurer in writing

and Insurer shall thereafter recognize Assignee as the sole lawful owner of

the Insurance Policy.

13.   The rights and obligations of the parties in the event of a default by the Trust,

summarized above, were expressly set forth in each Financing Agreement, as follows:

Upon the occurrence and during the continuance of an Event of Default, in

addition to any other rights under this Agreement or any other Financing

Documents or otherwise available at law or in equity, the Lender and its assigns

shall have all the rights and remedies of a secured party in default under the laws

of the State of California and other applicable law to enforce the assignments and

security interests contained in the Financing Documents, including the right,

subject to compliance with any mandatory requirements under applicable law, to

sell or apply any rights and other interests assigned or pledged in the Financing

Documents at public or private sale.

(Terms and Conditions, second part, § 6.02, p. 10.)

Upon the occurrence of an Event of Default, Lender (personally or through an

agent or assigns) is hereby authorized and empowered to take the following

actions without a meeting: (i) transfer the Pledged Collateral and register it in

Lender's name or in the name of its nominee; (ii) collect and receive all cash and

other distributions made on or with respect to the Pledged Collateral; (iii) sell the

Pledged Collateral in one or more sales after ten (10) days' notice of the time and

7

place of any public sale or of the time at which a private sale is to take place (which notice Beneficiary and Trustee agree is commercially reasonable); and (iv) otherwise act with respect to the Pledged Collateral as though the Lender was the outright owner thereof.

(Security Agreement, ¶ 6.(a), pp. 3-4.)

Beneficiary and Trustee each hereby irrevocably constitutes and appoints Lender and its assigns as the proxy and attorney-in-fact of Beneficiary and Trustee each, with full power of substitution to do so, and which appointment is coupled with an interest and shall remain in effect until there are no longer any Secured Obligations of Borrower under the Financing Agreement or other Agreement of Lender entered into after the date hereof; provided, however, Lender shall not have any duty to exercise any such right or to preserve the same and shall not be liable for any failure to do so or for any delay in doing so. Any sale shall be made at a public or private sale at Lender's place of business, or at any place to be named in the notice of sale, either for cash or upon credit or for future delivery at such price as Lender may deem fair, and Lender may be the purchaser of the whole or any part of the Pledged Collateral so sold and hold the same thereafter in its own right free and clear from any claim of Beneficiary or Trustee or any right of redemption (any such right being hereby waived or released). The Lender reserves the right to reject any and all bids at such sale which, in its discretion, it shall deem inadequate or unlikely to settle in a prompt and efficient manner. Demands of performance, except as otherwise herein specifically provided for,

8

> notices of sale, advertisements and the presence of property at sale are hereby
> waived by Beneficiary and Trustee each and any sale hereunder may be
> conducted by an auctioneer or any officer or agent of the Lender or its assigns.

(Security Agreement, ¶ 6.(b), p. 4 [emphasis in original].)

> If, at the original time or times appointed for the sale of the whole or any part of
> the Pledged Collateral, the highest bid, if there be but one sale, shall be
> inadequate to discharge in full all the Secured Obligations, or if the Pledged
> Collateral be offered for sale in fractions, if at any of such sales, the highest bid
> for a fraction offered for sale would indicate to Lender, in its discretion, that the
> proceeds of the sale as a whole of the Pledged Collateral would be unlikely to be
> sufficient to discharge all of the Secured Obligations, Lender may, on one or more
> occasions and in its discretion, postpone any of said sales by public
> announcement at the time of sale or the time of previous postponement of sale,
> and no other notice of such postponement or postponements of sale need be given,
> any other notice being hereby waived; provided, however, that any sale or sales
> made after such postponement shall be after ten (10) days' notice to Beneficiary
> and Trustee.

(Security Agreement, ¶ 6.(c), p. 4 [emphasis in original].)

> Beneficiary and Trustee each recognizes that Lender may be unable to effect a
> public sale of any or all of the Pledged Collateral and may be compelled to resort
> to one or more private sales thereof. . . .

(Security Agreement, ¶ 6.(d), p. 4.)

Application of Proceeds. The proceeds of all sales and collection, and any other monies, the application of which is not otherwise provided for, shall be applied as follows:

FIRST, to the payment of the costs and expenses of such sale or sales and collections, and the compensation of Lender, and its counsel;

SECOND, to the payment of the obligations secured hereby in such order and manner as Lender, in its sole discretion, may determine, until such obligations are paid in full; and

THIRD, any surplus remaining shall be paid to Beneficiary or Trust.

(Security Agreement, ¶ 6.(g), p. 5.)

This Assignment includes, without limitation, assignment of the following rights of Owner:

1.    The sole right to collect from Insurer the net proceeds of the Insurance Policy due to the death of the Insured or maturity of the Insurance Policy; . . .

8.    The sole right to sell the Policy, but only upon the failure of the Owner to fulfill obligations to the Lender as specified in any agreements of contracts to which lender and Owner are parties. . .

(Collateral Assignment, p. 1.)

RIGHTS RETAINED. The following rights, so long as the Insurance Policy has not been surrendered or canceled, are reserved and excluded from this Assignment and do not pass by virtue hereof: . . . .

2.     The right to designate and change the beneficiary of the Insurance

Policy, provided that Assignee shall continue to be the primary

assignee of the Insurance Policy; . . .

OBLIGATIONS SECURED.  This assignment is made, and the Insurance Policy

is to be held, as collateral security for any and all liabilities of Owner to Assignee,

either now existing or that may hereafter arise under the Life Insurance Premium

Financing Agreement dated as of April 8, 2008, among Assignee, Owner and

Insured as amended, supplemented, or otherwise modified from time to time (the

"Agreement"), and all liabilities, obligations, covenants, duties, indebtedness,

fees, expenses and other amounts owing by Owner to Assignee under this

Assignment (all of which liabilities of Owner, secured or to become secured, are

herein called "Liabilities").  Subject to the terms of this Assignment, Assignee

may apply any and all money received under the Insurance Policy to pay

Liabilities when due in any order Assignee may choose in its sole discretion.

BENEFITS PAYMENT DIRECTIVE.  Owner hereby authorizes and directs

Insurer to pay Assignee any and all death benefits and other amounts due under or

on account of the Insurance Policy, and Owner shall be considered the Insurance

Policy's primary beneficiary, provided, however, that nothing in the paragraph

entitles Assignee to retain more than the amount of the Liabilities.

(Collateral Assignment, p. 2 [emphasis in original].)

COVENANTS.  Owner and Assignee agree as follows:

1.     That, unless Owner and Assignee have agreed to exercise the

> Default Sale Right (as defined below), any balance of sums
> received hereunder from Insurer remaining after payment of the
> then existing Liabilities, matured or unmatured, shall be paid in
> full by Assignee to the persons entitled thereto under the terms of
> the Insurance Policy had this Assignment not been executed. . . .

TERMINATION. At such time as the Liabilities have been paid and performed
in full, Assignee will promptly terminate this Assignment and the security
interests granted hereunder, and will promptly terminate any UCC financing
statements filed in connection with this Assignment. . . .

(Collateral Assignment, p. 3 [emphasis in original].)

> DEFAULT SALE RIGHT. Upon the occurrence of an Event of Default (as
> defined in the Agreement) that has not been remedied within the time period
> required in the Agreement, Assignee shall have the right (the "Default Sale
> Right") but not the obligation to accept, that in consideration of the full and
> complete satisfaction of the Liabilities (the sufficiency of which consideration is
> hereby acknowledged) Owner may make a full transfer and assignment of the
> Insurance Policy to Assignee and thereby forever relinquish any and all rights
> Owner may have thereunder, including without limitation any rights to cash
> surrender value and/or death benefit provided thereunder. Upon the exercise of
> this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall
> thereafter recognize Assignee as the sole lawful owner of the Insurance Policy. . .

(Collateral Assignment, p. 4 [emphasis in original].)

The Borrower hereby . . . .

      (iii)    agrees that the Lender shall not be required first to institute any suit, or to exhaust his remedies against the undersigned or any person or party hereunder, or against any collateral in order to enforce payment of this Note; . . .

    (d)    <u>No Waiver; Remedies Cumulative</u>.  None of the rights or remedies of the Lender are to be deemed waived or affected by failure to delay to exercise the same.  All remedies conferred upon the lender by this Note or any other instrument or agreement, including without limitation the Financing Agreement, shall be cumulative, no such remedy is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option. . . .

(Promissory Note, ¶ 7, pp. 2-3 [emphasis in original].)

Through this Special Power of Attorney, which Special Power of Attorney is coupled with an interest, the undersigned [the Trust] hereby irrevocably makes and appoints Windsor Securities, LLC, a Nevada LLC, as the undersigned's true and lawful attorney-in-fact for it and in its name, place and stead, an [*sic*] on its behalf, to execute, deliver, endorse and acknowledge any document or instrument concerning or pertaining to all claims, benefits, privileges and rights available upon the death of the insured under the following life insurance policy . . .

(Special Power of Attorney.)

    14.    California contracts must be understood and construed in the larger context of applicable law.  As the California Supreme Court has held:

> "[A]ll applicable laws in existence when an agreement is made, which laws the
> parties are presumed to know and to have had in mind, necessarily enter into the
> contract and form a part of it, without any stipulation to that effect, as if they were
> expressly referred to and incorporated." [Citation omitted.]

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008).

15.     Because each Financing Agreement involved a secured transaction, it was,
pursuant to the rule of *Edwards*, necessarily supplemented and controlled by Division 9 of the
California Commercial Code, which regulates such transactions.

16.     Division 9 expressly allows for, applies to, and controls, secured transactions in
which the security is a policy of insurance. *See* California Commercial Code § 9109, Assembly
Committee Comment 13.

17.     The rights and obligations of the parties in the event of a default by the Trust were
expressly set forth in Division 9 of the California Commercial Code, as follows:

> Except as otherwise provided in Section 9624, to the extent that they give rights
> to a debtor or obligor and impose duties on a secured party, the debtor or obligor
> may not waive or vary the rules stated in the following listed sections: . . . . (11)
> Section 9623, which deals with redemption of collateral.

California Commercial Code § 9602(11).

> (a) A debtor, any secondary obligor, or any other secured party or lienholder may
> redeem collateral.
>
> (b) To redeem collateral, a person shall tender both of the following:
>
>> (1) Fulfillment of all obligations secured by the collateral.

(2)  The reasonable expenses and attorney's fees described in paragraph

(1) of subdivision (a) of Section 9615.

(c)  A redemption may occur at any time before a secured party has done any of

the following:

(1)  Collected collateral under Section 9607.

(2)  Disposed of collateral or entered into a contract for its disposition

under Section 9610.

(3)  Accepted collateral in full or partial satisfaction of the obligation it

secures under Section 9622.

California Commercial Code § 9623.

Except as otherwise provided in Section 9624, to the extent that they give rights

to a debtor or obligor and impose duties on a secured party, the debtor or obligor

may not waive or vary the rules stated in the following listed sections: . . . .  (10)

Section 9620, 9621, and 9622, which deal with acceptance of collateral in

acceptance of obligation.

California Commercial Code § 9602(10).

(a)  Except as otherwise provided in subdivision (g), a secured party may accept

collateral in full or partial satisfaction of the obligation it ensures only if all the

following conditions are satisfied:

(1)  The debtor consents to the acceptance under subdivision (c).  . . . .

(b)  A purported or apparent acceptance of collateral under this section is

ineffective unless both of the following conditions are satisfied:

(1)  The secured party consents to the acceptance in an authenticated

record  or sends a proposal to the debtor.

(2)  The conditions of subdivision (a) are met.

(c)  For purposes of this section both of the following rules apply: . . . .

(2)  A debtor consents to an acceptance of collateral in full satisfaction of

the obligation it secures only if the debtor agrees to the terms of the

acceptance in a record authenticated after default or the secured party does

all of the following:

(A)  Sends to the debtor after default a proposal that is

unconditional or subject only to the condition that collateral not in

possession of the secured party be preserved or maintained.

(B)  In the proposal, proposes to accept collateral in full

satisfaction of the obligation it secures.

(C)  Does not receive a notification authenticated by the debtor

within 20 days after the proposal is sent.  . . . .

California Commercial Code § 9620.

Except as otherwise provided in Section 9624, to the extent that they give rights

to a debtor or obligor and impose duties on a secured party, the debtor or obligor

may not waive or vary the rules stated in the following listed sections: . . . .  (5)

Subdivision (a) of section 9608 and subdivision (d) of Section 9615 to the extent

they require accounting for or payment of surplus proceeds of capital.

California Commercial Code § 9602(5).

(a)  If a security interest or agricultural lien secures payment or performance of an obligation, the following rules apply:

(1)  A secured party shall pay over for application the cash proceeds of collection or enforcement under Section 9607 in the following order to:

(A)  The reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party.

(B)  The satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made. . . . .

(4)  A secured party shall account to and pay a debtor for any surplus, and except as otherwise provided in subdivision (b) of Section 9626, the obligor is liable for any deficiency.

California Commercial Code § 9608.

(a)  A secured party shall apply or pay over for application the cash proceeds of disposition under Section 9610 in the following order to each of the following:

(1)  The reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party.

(2)  The satisfaction of obligations secured by the security interest or

agricultural lien under which the collection or enforcement is made. . . . .

(d) If the security interest under which a disposition is made secures payment or performance of an obligation, after making the payments and applications required by subdivision (a) and permitted by subdivision (c), both of the following apply:

(1) Unless paragraph (4) of subdivision (a) requires the secured party to apply or pay over cash proceeds to a consignor, the secured party shall account to and pay a debtor for any surplus except as provided in Section 701.040 of the Code of Civil Procedure.

(2) Subject to subdivision (b) of Section 9626, the obligor is liable for any deficiency.

California Commercial Code § 9615.

(a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of the collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place on any terms.

(c) A secured party may purchase collateral at either of the following:

(1) At a public disposition.

> (2)  At a private disposition only if the collateral is of a kind that is
>
> customarily sold on a recognized market or the subject of widely
>
> distributed standard price quotations.

California Commercial Code § 9610.

> (a)  In this section, "notification date" means the earlier of the date on which:
>
> > (1)  A secured party sends to the debtor and any secondary obligor an
> >
> > authenticated notice of disposition.
> >
> > (2)  The debtor and any secondary obligor waive the right to notification.
>
> (b)  Except as otherwise provided in subdivision (d), a secured party that disposes
>
> of collateral under Section 9610 shall send to the persons specified in subdivision
>
> (c) a reasonable authenticated notice of disposition.
>
> (c)  To comply with subdivision (b), the secured party shall send an authenticated
>
> notification of disposition to all of the following persons:
>
> > (1)  The debtor.  . . . .
>
> (d)  Subdivision (b) does not apply if the collateral is perishable or threatens to
>
> decline speedily in value or is of a type customarily sold on a recognized market.

California Commercial Code § 9611.

18.     Exercise of the Default Sale Right under each Financing Agreement was
controlled by the above-quoted provisions of California Commercial Code § 9620.

19.     Pursuant to the above-quoted provisions of Commercial Code § 9602(10), the
rights and obligations of the parties created by California Commercial Code § 9620 could not be
waived or varied by agreement of the parties.

20. Each of the Trusts defaulted on its obligation, under the applicable Financing Agreement, to repay the loan when due. The Bitter Trust failed to make timely payment and was declared by Windsor to be in default. The Collins Trust, the Acker Trust, the Coppock Trust, and the Stamatov Trust each fell into default by committing an anticipatory breach, *i.e.*, by informing Windsor prior to the date the loan was due that it did not intend to pay, and by in fact failing to pay thereafter.

21. In or about 2010, following default, the trustee of each of the Trusts surrendered the subject Policy held by the Trust and executed and provided to Windsor an Ownership, Name, Or Beneficiary Change Request, or comparable document or documents, purporting to make Windsor the owner and the beneficiary of the Policy. In each case, the trustee of the Trust took that action in the belief that he or she was required to do so, following default, in order to provide Windsor, subject to Windsor's continuing obligations to the Trust under the Financing Agreement, with title to the Policy and with beneficiary status under the Policy. At no time did any of the trustees of the Trusts believe that by his or her having executed those documents the Trust was giving up either: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any portion of the proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any portion of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).

22. Windsor never suggested to any of the trustees of the Trusts, in any

communication at or around the time the trustees were executing the abovementioned Ownership, Name, Or Beneficiary Change Requests or comparable document or documents, and nothing in those documents stated or suggested, that the trustee was executing those documents in return for an agreement by Windsor to relieve the Trust from any continuing obligation to repay the loan. Nor did Windsor suggest to any of the trustees of the Trusts, in any communication prior to June 2014, that by his or her executing those documents the Trust was giving up either: (a) the right of the Trust, pursuant the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); or (b) the right of the Trust to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).

23.     Windsor never communicated to any of the trustees of the Trusts, and thus, by definition, no trustee ever accepted, either:

(a)     an offer to relieve the Trust from any continuing obligation to repay the loan if the Trust would agree to give Windsor a form of ownership of the Policy unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining from the proceeds of a public or private sale of the Policy after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); or

(b)     an offer to relieve the Trust from any obligation to repay the loan if the Trust would agree to give Windsor a form of beneficiary status under the Policy unfettered by

the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining from the death benefit after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).

24.     None of the trustees of the Trusts ever communicated to Windsor, and thus, by definition, Windsor never accepted, either:

(a)     an offer to give Windsor a form of ownership of the Policy unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining from the proceeds of a public or private sale of the Policy after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale), if Windsor would agree to relieve the Trust from any continuing obligation to repay the loan; or

(b)     an offer to give Windsor a form of beneficiary status under the Policy unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining from the death benefit after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit), if Windsor would agree to relieve the Trust from any continuing obligation to repay the loan.

25.     In short, none of the trustees of the Trusts ever heard of, ever intended to enter into, or ever did enter into, any agreement with Windsor either:

(a)     to give Windsor a form of ownership of the Policy unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining

from the proceeds of a public or private sale of the Policy after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale) in return for Windsor's relieving the Trust from any continuing obligation to repay the loan; or

        (b)     to give Windsor a form of beneficiary status under the Policy unfettered by the obligation, set forth in the Financing Agreement, to provide to the Trust any amounts remaining from the death benefit after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit) in return for Windsor's relieving the Trust from any continuing obligation to repay the loan.

26.     Had Windsor offered, within a reasonable period following defaults by the Trusts, to relieve each Trust of any further liability on its loan in return for Windsor's being granted a form of ownership of the Policy that was (a) unfettered by any obligation to provide to the Trust any amounts remaining from the proceeds of a public or private sale of the Policy and (b) unfettered by any obligation to provide to the Trust any amounts remaining from the death benefit after Windsor had been paid what it was owed on the loan, each Trust would almost certainly have accepted that offer.

27.     Windsor paid all of the premiums on the five subject Policies following default.

28.     Windsor never sought to hold either a public or private sale of any of the five subject Policies.

29.     Had Windsor held, within a reasonable period following defaults by the Trusts, a public or private sale of the subject Policies, the Trusts would almost certainly not have sought to

purchase the Policies and Windsor would in each case have been able to purchase the Policy by means of a credit bid.

30.     John Bitter passed away on December 23, 2012.  Mr. Rousseau then claimed, on Windsor's behalf, that Windsor had properly exercised the Default Sale Right with the Bitter Trust in 2010 and was entitled to the entire $2,000,000 death benefit under the subject Policy. The Bitter Trust claimed that the parties had not exercised the Default Sale Right in 2010, that Windsor was entitled to recover from the death benefit only the amount of the premiums it had loaned, plus legal interest thereon, plus costs attributable to protecting its security interest in the Policy, and that the Trust was entitled to the remainder.  A lawsuit ensued, *viz.*, *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO, subsequently assigned for resolution by arbitration in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

31.     On April 8, 2014, following a three-day hearing in mid-January, 2014, in San Francisco, California, a panel of arbitrators in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M unanimously issued an interim award in favor of the Trust, providing, *inter alia*:

> It is the Panel's finding and decision that the Trust at the time of Mr. Bitter's death retained the ownership of the policy and is entitled to the death benefits of the policy subject to Windsor's rights as a secured creditor to collect

all sums due it by reasons of its payment of the insurance premiums, including principal, interest at the rate of 10% from the date of initial payment to the present and expenses as defined in the loan documents.

32.    That award turned, crucially, on the panel's finding that:

Windsor contends that in the context of the September 8, 2010 and January 4, 2011, letters from Windsor and its counsel, execution of the COO by Barnes constitutes an authenticated record evidencing that Windsor accepted the COO and surrender of the policy in full satisfaction of the Trust's obligations under the financing documents. The record does not support this contention.

There is nothing in either the September 8, 2010 letter or the January 14, 2011 letter that expresses an acceptance by Windsor of the collateral in full satisfaction of the obligation. Both are silent on the point.

Windsor therefore did not satisfy the "strict foreclosure" requirement under § 9620(c)(2).

Just as was discussed above in connection with the Default Sale Right, nothing in the demand letters sent by counsel for Windsor or by Windsor itself contained a proposal stating that Windsor was prepared to accept the policy in full satisfaction of the liability owed to it; thus, the execution of the COO by Barnes also does not satisfy the proposal requirements of § 9620(c)(2) (A)-(C).

33.    The panel left for later determination what sums, if any, Windsor would be entitled to recover for "expenses as defined in the loan documents" and what sums, if any, would be awarded as attorney's fees to the prevailing party.

34.     The arbitration panel in *Gregory P. Barnes, Jr., Trustee of John L. Bitter
Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association
Case No. 74-148-000296-13-S1M was made up an eminent retired federal judge, a San
Francisco attorney with fifty years' experience who was rated one of the top ADR attorneys in
the Bay Area, and a member of the insurance industry.

35.     On April 15, 2014, Joe E. Acker passed away.

36.     On June 19, 2014, Erwin A. Collins passed away.

37.     In or about mid-June, 2014 - four years after the Trusts' defaults on the loans and
following Windsor's receipt of the abovementioned unfavorable ruling in the Bitter case -
Windsor, pursuant to Mr. Rousseau's advice, sent letters to the trustees of the Collins Trust, the
Acker Trust, the Coppock Trust, and the Stamatov Trust incorrectly claiming that the Trusts'
execution of assignment documents in 2010 "was in exchange for Windsor's agreement that the
assignment of the policy would constitute a complete satisfaction and discharge of the loan that
Windsor had made to enable you to purchase the policy." The Trusts responded with letters
denying that claim.

38.     Following the deaths of Erwin A. Collins and Joe E. Acker, Mr. Rousseau
claimed, on Windsor's behalf, that Windsor had properly exercised the Default Sale Right with
the Collins Trust and with the Acker Trust in 2010 and was entitled to the entire $2,000,000
death benefit under the Collins Policy and the entire $1,000,000 death benefit under the Acker
Policy. The Collins Trust and the Acker Trust each claimed that the parties had not exercised the
Default Sale Right in 2010, that Windsor was entitled to recover from the death benefit only the
amount of the premiums it had loaned, plus legal interest thereon, plus costs attributable to

protecting its security interest in the Policy, and that the Trust was entitled to the remainder. Two more lawsuits ensued, *viz.*, *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO, and *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

39.     On January 7, 2015, Windsor filed a complaint for declaratory relief in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO, claiming that Windsor had properly exercised the Default Sale Right with the Coppock Trust in 2010 and was entitled to the entire $1,000,000 death benefit under the Coppock Policy. The Coppock Trust denied that claim.

40.     Also on January 7, 2015, Windsor filed a complaint for declaratory relief in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO, claiming that Windsor had properly exercised the Default Sale Right with the Stamatov Trust in 2010 and was entitled to the entire $1,000,000 death benefit under the Stamatov Policy. The Stamatov Trust denied that claim.

41.     On or about January 16, 2015, with no further hearings or determination of the expenses and attorney's fees issues by the panel in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M, the parties entered into a Settlement Agreement and Release under which Windsor recovered an amount greater that the total of its premium

27

payments plus 10% interest thereon but approximately $1,350,000 less than the total amount of the death benefit.

42.     On December 22, 2015, a federal court granted summary judgment in favor of the Collins Trust in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

43.     Also on December 22, 2015, the same court granted summary judgment in favor of the Acker Trust in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

44.     In both of those cases, judgment turned on the court's finding that:

[T]he Assignment does not establish a legal surrender of the life insurance policy, because the Assignment does not reflect an agreement to accept collateral in full or partial satisfaction of the Trust's obligations under the PGFA, as required by section 9620. . . . . Cal. Com. Code § 9620(a)(1)(c)(2).

45.     The court also rejected Windsor's attempt to avoid summary judgment by having claimed, on the basis of what the court called "a hodgepodge of highly attenuated evidence of . . . [an] alleged oral walk-away agreement" prior to default and thus supposedly not subject to California Commercial Code § 9620, that "there is a genuine dispute of material fact that must be resolved at trial." Thus, the court held: "The dispositive problem with Windsor's reliance on this alleged oral walk away agreement is that Windsor did not plead it." . . . . [citing *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008)]. Having made that determination,

the court did not reach the evidence and arguments of the Trusts to the effect that no pre-default oral walk away agreement could possibly have occurred and that such an agreement would in any event have been unenforceable under applicable law.

46.     In both cases, the court held that the Trust was entitled to the death benefits of the Policy subject to Windsor's right to collect all sums due it by reasons of its payment of the insurance premiums, including principal plus interest at the rate of 10% from the date of initial payment to the present, but left for later determination both the issue of what sums, if any, Windsor would be entitled to recover for "costs of collection" and what sums, if any, would be awarded as attorney's fees to the prevailing party.

47.     On or about March 28, 2016, with no further hearings or determination of the costs of collection and attorney's fees issues by the court, Windsor and the Acker Trust entered into a Settlement Agreement and Release under which Windsor recovered an amount greater that the total of its premium payments plus 10% interest thereon but approximately $250,000 less than the total amount of the death benefit.

48.     In or about early April, 2016, Windsor and the Stamatov Trust entered into a Settlement Agreement and Release under which Windsor obtained unfettered title to the Stamatov Policy, relieved the Stamatov Trust of all liability under the loan, and paid to the Stamatov Trust the sum of $12,000, *i.e.*, approximately what it would have cost Windsor to arrange for a public or private sale at which it could have purchased the Policy by means of a credit bid.

49.     On or about April 15, 2016, with no further hearings or determination of the costs of collection and attorney's fees issues by the court, Windsor and the Collins Trust entered into a

Settlement Agreement and Release under which Windsor recovered an amount greater that the total of its premium payments plus 10% interest thereon but approximately $1,210,000 less than the total amount of the death benefit.

50.     In or about early July, 2016, Windsor and the Coppock Trust entered into a Settlement Agreement and Release under which Windsor obtained unfettered title to the Coppock Policy, relieved the Coppock Trust of all liability under the loan, and paid to the Coppock Trust the sum of $12,000, *i.e.*, approximately what it would have cost Windsor to arrange for a public or private sale at which it could have purchased the Policy by means of a credit bid.

51.     From June 5, 2009 through approximately August, 2014, Mr. Rousseau acted as Windsor's attorney charged with representing and protecting Windsor's interests in connection with, *inter alia*, the Bitter, Collins, Acker, Coppock, and Stamatov Financing Agreements. That representation included responsibility for all aspects of, and all communications concerning, defaults by the Trusts and the rights and obligations of the parties thereafter. It also included acting as Windsor's attorney in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

52.     During that period, Windsor repeatedly charged Mr. Rousseau with the task of making sure that, following defaults by the Trusts, Windsor would obtain an unfettered right to the entirety of the death benefit under each of the subject Policies.

53.     During that period, Mr. Rousseau appears to have incorrectly believed that any litigation involving the rights and obligations of the parties following defaults by the Trusts

30

would be controlled by Georgia law and, despite the plain language of the Financing Agreements, remained either ignorant of, or in unjustifiable denial about, the applicability of California law generally, and of the controlling provisions of Division 9 of the California Commercial Code in particular, to the secured transactions created by the Financing Agreements.

54.     During that period, Mr. Rousseau entirely failed, when seeking, at Windsor's request, to perfect Windsor's entitlement to the entirety of the death benefits under the Bitter, Collins, Acker, Coppock, and Stamatov Policies following defaults by the Trusts, to include in his communications with the Trusts the language required by the provisions of California Commercial Code §§ 9620, 9602, and other relevant sections of that code, for achieving that result.

55.     During that period, Mr. Rousseau entirely failed, when seeking, at Windsor's request, to perfect Windsor's entitlement to the entirety of the death benefits under the Bitter, Collins, Acker, Coppock, and Stamatov Policies following defaults by the Trusts, to inform Windsor that prior to the deaths of the Insureds it could achieve that result, regardless of its failure to have complied with the requirements of California Commercial Code § 9620, by holding a public or private sale of each of the subject Policies and there purchasing the Policies by means of credit bids.

56.     During that period, Mr. Rousseau repeatedly assured Windsor that it had done everything it needed to do to perfect Windsor's entitlement to the entirety of the death benefits under the Bitter, Collins, Acker, Coppock, and Stamatov Policies.

57.     Until receiving, on or about December 20, 2013, the Bitter Trust's opening brief in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor*

*Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M, Mr.
Rousseau had never advised Windsor - and Windsor had never been aware - that the Bitter,
Collins, Acker, Coppock, and Stamatov Financing Agreements were or might be subject to
California law and, more particularly, that they would or might be deemed to incorporate, and to
be controlled by, the provisions of California Commercial Code §§ 9620, 9602, and other
relevant sections of that code.

58.     In preparing Windsor's opening brief in *Gregory P. Barnes, Jr., Trustee of John
L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration
Association Case No. 74-148-000296-13-S1M, Mr. Rousseau, in apparent ignorance of, or
unjustifiable denial about, the fact that California law, and in particular the provisions of
California Commercial Code §§ 9620, 9602, and other relevant sections of that code, controlled
the Financing Agreement there at issue, made no mention whatsoever of that law or those
provisions.

59.     Following the unfavorable determination by the arbitration panel in
*Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust
v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-
S1M - a determination grounded on Windsor's failure to have met the requirements of California
Commercial Code § 9620 - Mr. Rousseau claimed that the panel had ignored the law in order to
provide a windfall to John L. Bitter's widow, continued to insist that Windsor had done
everything it needed to do to perfect Windsor's entitlement to the entirety of the death benefits
under the Bitter, Collins, Acker, Coppock, and Stamatov Policies, advised Windsor, on that
basis, that it should not seek a settlement in regard to the Collins and Acker Policies, and

apparently gave no advice in regard to the Coppock and Stamatov Policies.

60.    Relying on Mr. Rousseau's advice, or the lack thereof: (a) Windsor did not seek

to obtain settlements in regard to either the Collins Policy or the Acker Policy, and as noted

above, two lawsuits against Windsor ensued; and (b) Windsor did not seek to obtain settlements,

or take any other steps, in regard to either the Coppock Policy or the Stamatov Policy, and as

noted above, two lawsuits by Windsor for declaratory relief ensued.

## C.   EXHIBITS THAT WILL BE USED TO SUPPORT THE FACTS OR DATA CONSIDERED IN FORMING THE OPINIONS THAT WILL BE EXPRESSED.

The facts and/or data set forth in Section B. of this Statement, above, are based upon the

contents of the following documentary materials - which comprise, *inter alia*, orders, rulings,

pleadings, memoranda, declarations, exhibits, and recorded testimony - as well as upon my own

personal knowledge gained through acting as the attorney for the plaintiff Trusts in the

underlying actions.

1.    FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, filed May 28, 2013, Docket No. 16, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

2.    NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, filed June 7, 2013, Docket No. 18, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

3.    NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, filed June 7, 2013, Docket No. 19, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

4.      PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS, filed June 21, 2013, Docket No. 23, in *Gregory P. Barnes, Jr., Trustee
of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related
Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

5.      DECLARATION OF JOSEPH WOOD IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS, and any exhibits thereto, filed June 21, 2013,
Docket No. 24, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance
Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No.
3:13-cv-01878 WHO.

6.      DEFENDANT WINDSOR SECURITIES LLC'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS AND OPPOSITION TO OBJECTIONS TO EVIDENCE AND
REQUEST FOR LEAVE TO SUBMIT EXTRINSIC EVIDENCE, filed June 28, 2013, Docket
No. 33, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v.
Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-
01878 WHO.

7.      DEFENDANT WINDSOR SECURITIES LLC'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO
OBJECTIONS TO EVIDENCE AND REQUEST FOR LEAVE TO SUBMIT EXTRINSIC
EVIDENCE, filed June 28, 2013, Docket No. 34, in *Gregory P. Barnes, Jr., Trustee of John L.
Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*,
U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

8.      PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
OBJECTIONS TO PURPORTED EVIDENCE SUBMITTED BY DEFENDANT IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, filed July 3, 2013,
Docket No. 37, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance
Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No.
3:13-cv-01878 WHO.

9.      ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND MOTION FOR JUDGMENT ON THE PLEADINGS ON CROSS-COMPLAINT FOR
INTERPLEADER, filed August 15, 2013, Docket No. 53, in *Gregory P. Barnes, Jr., Trustee of
John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-
Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

10.     ORDER ALLOWING CORRECTION OF ANSWER TO INTERPLEADER
CROSS-CLAIM, filed August 20, 2013, Docket No. 54, in *Gregory P. Barnes, Jr., Trustee of
John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-
Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO.

11.     TRIAL BRIEF [of Windsor], filed on or about December 20, 2013, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

12.     PLAINTIFF'S OPENING BRIEF IN ARBITRATION, filed on or about December 20, 2013, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

13.     FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, filed January 6, 2014, Docket No. 9, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action,* U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

14.     TRANSCRIPT OF [Arbitration] PROCEEDINGS, HEARING DAY 1, January 13, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

15.     TRANSCRIPT OF [Arbitration] PROCEEDINGS, HEARING DAY 2, January 14, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

16.     TRANSCRIPT OF [Arbitration] PROCEEDINGS, HEARING DAY 3, January 15, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC,* American Arbitration Association Case No. 74-148-000296-13-S1M.

17.     DEFENDANT WINDSOR SECURITIES LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, filed January 24, 2014, Docket No. 15, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action,* U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

18.     PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, filed February 7, 2014, Docket No. 16, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action,* U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

19.     DECLARATION OF JOSEPH WOOD IN OPPOSITION TO MOTION TO DISMISS, and any exhibits thereto, filed February 7, 2014, Docket No. 17, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action,* U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

20.     DEFENDANT WINDSOR SECURITIES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN

SUPPORT THEREOF, filed February 14, 2014, Docket No. 18, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

21.     POST-ARBITRATION BRIEF SUBMITTED BY PLAINTIFF, filed on or about February 18, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

22.     POST TRIAL BRIEF [of Windsor Securities, LLC], filed on or about February 18, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

23.     POST-ARBITRATION REPLY BRIEF SUBMITTED BY PLAINTIFF, filed on or about February 25, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

24.     INTERIM AWARD, entered on or about April 8, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

25.     ORDER DENYING DEFENDANT'S MOTION TO DISMISS, filed April 11, 2014, Docket No. 23, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

26.     WINDSOR SECURITIES LLC'S ANSWER AND COUNTERCLAIM, filed May 1, 2014, Docket No. 25, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

27.     ANSWER TO COUNTERCLAIM, filed May 19, 2014, Docket No. 27, in *Carol M. Bitter v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-05022 WHO.

28.     MOTION FOR RECONSIDERATION OF INTERIM AWARD DATED APRIL 8, 2014, filed on or about May 19, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

29.     OPPOSITION TO MOTON FOR RECONSIDERATION, filed on or about June 2, 2014, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

30.   COMPLAINT IN INTERPLEADER, filed August 15, 2014, Docket No. 1, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

31.   PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)'S COMPLAINT IN INTERPLEADER, filed October 17, 2014, Docket No. 1, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

32.   ANSWER AND CROSS-CLAIM OF MARIA ANA GORDILLO AS TRUSTEE OF THE ERWIN A. COLLINS FAMILY INSURANCE TRUST – 2008, filed October 22, 2014, Docket No. 16, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

33.   ANSWER AND CROSS-CLAIM OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST, filed November 7, 2014, Docket No. 9, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

34.   ANSWER OF WINDSOR SECURITIES, LLC TO CROSSCLAIM OF MARIA ANA GORDILLO AS TRUSTEE OF THE ERWIN A. COLLINS FAMILY INSURANCE TRUST – 2008, filed November 18, 2014, Docket No. 21, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

35.   COMPLAINT FOR DECLARATORY RELIEF OF WINDOR SECURITIES, LLC, and any exhibits thereto, filed January 7, 2015, Docket No. 1, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

36.   COMPLAINT FOR DECLARATORY RELIEF OF WINDOR SECURITIES, LLC, and any exhibits thereto, filed January 7, 2015, Docket No. 1, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

37.   JOINT CASE MANAGEMENT STATEMENT, filed January 13, 2015, Docket No. 27, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

38.     SETTLEMENT AGREEMENT AND RELEASE, executed on or about January 16, 2015, in *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC, and Related Cross-Action*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-01878 WHO and *Gregory P. Barnes, Jr., Trustee of John L. Bitter Irrevocable Life Insurance Trust v. Windsor Securities, LLC*, American Arbitration Association Case No. 74-148-000296-13-S1M.

39.     ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL, filed January 23, 2015, Docket No. 18, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

40.     JOINT CASE MANAGEMENT STATEMENT, filed January 27, 2015, Docket No. 19, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

41.     ANSWER OF MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST TO CROSS-CLAIM, filed January 28, 2015, Docket No. 20, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

42.     JOINT CASE MANAGEMENT STATEMENT, filed April 22, 2015, Docket No. 15, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

43.     ANSWER TO COMPLAINT FOR DECLARATORY RELIEF, filed April 22, 2015, Docket No. 16, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

44.     ANSWER TO COMPLAINT FOR DECLARATORY RELIEF, filed April 22, 2015, Docket No. 16, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

45.     JOINT CASE MANAGEMENT STATEMENT, filed April 29, 2015, Docket No. 17, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

46.     FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY

TRIAL, and any exhibits thereto, filed May 18, 2015, Docket No. 19, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

47.　FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL, and any exhibits thereto, filed May 18, 2015, Docket No. 19, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

48.　ANSWER TO FIRST AMENDED COMPLAINT, filed May 31, 2015, Docket No. 20, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

49.　ANSWER TO FIRST AMENDED COMPLAINT, filed May 31, 2015, Docket No. 20, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

50.　AMENDED ANSWER TO FIRST AMENDED COMPLAINT, filed June 1, 2015, Docket No. 21, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WHO.

51.　AMENDED ANSWER TO FIRST AMENDED COMPLAINT, filed June 1, 2015, Docket No. 21, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WHO.

52.　WINDSOR SECURITIES, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed July 8, 2015, Docket No. 31, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

53.　WINDSOR SECURITIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed July 8, 2015, Docket No. 31-1, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

54.　DECLARATION OF STEVEN PRUSKY IN SUPPORT OF WINDSOR SECURITIES, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed July 8, 2015, Docket Nos. 31-2, 31-3, in *Pacific Life Insurance Company v. Maria Ana*

*Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

55.    DECLARATION OF KAREN H. CANOFF IN SUPPORT OF WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed July 8, 2015, Docket Nos. 31-4, 31-5, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

56.    WINDSOR SECURITIES, LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed July 8, 2015, Docket No. 31-6, and any exhibits thereto, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

57.    WINDSOR SECURITIES, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed July 8, 2015, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

58.    WINDSOR SECURITIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed July 8, 2015, Docket No. 30-1, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

59.    DECLARATION OF STEVEN PRUSKY IN SUPPORT OF WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed July 8, 2015, Docket No. 30-2, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

60.    DECLARATION OF KAREN A. CANOFF IN SUPPORT OF WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed July 8, 2015, Docket No. 30-3, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

61.     WINDSOR SECURITIES, LLC'S REQUEST TO TAKE JUDICIAL NOTICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed July 8, 2015, Docket No. 30-4, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

62.     MEMORANDUM [of the Trust] IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, filed July 29, 2015, Docket No. 38, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

63.     DECLARATION OF JOSEPH WOOD IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, and any exhibits thereto, filed July 29, 2015, Docket No. 39, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

64.     MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, filed July 29, 2015, Docket No. 37, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

65.     DECLARATION OF RONALD MARK GOSS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, and any exhibits thereto, filed July 29, 2015, Docket No. 38, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

66.     DECLARATION OF MARIA ANA GORDILLO IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, and any exhibits thereto, filed July 30, 2015, Docket No. 40, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

67.     EXPERT WITNESS DECLARATION OF JAMES H. SINNOTT SUBMITTED IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, and any exhibits thereto, filed July 30, 2015, Docket No. 41, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

68.     DECLARATION OF MINDY GOSS IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT, and any exhibits thereto, filed July 30, 2015, Docket No. 39, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

69.     EXPERT WITNESS DECLARATION OF JAMES H. SINNOTT SUBMITTED
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, and any exhibits thereto, filed July 30, 2015, Docket No. 40, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

70.     DECLARATION OF JOSEPH WOOD IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT, and any exhibits thereto, filed July 30, 2015, Docket No. 41, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

71.     WINDSOR SECURITIES, LLC'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed August 5, 2015, Docket No. 45, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

72.     SUPPLEMENTAL DECLARATION OF DARIN T. JUDD IN REPLY TO
OPPOSITION FILED TO WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed August 5, 2015, Docket No. 45-2, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

73.     WINDSOR SECURITIES, LLC'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed August 5, 2015, Docket No. 45, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

74.     SUPPLEMENTAL DECLARATION OF DARIN T. JUDD IN REPLY TO
OPPOSITION FILED TO WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed August 5, 2015, Docket Nos. 45-2, 45-3, 45-4, 45-5, 45-6, 45-7, 45-8, in

*John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

75.     SUPPLEMENTAL DECLARATION OF DARIN T. JUDD IN REPLY TO OPPOSITION FILED TO WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed August 5, 2015, Docket No. 46, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

76.     MEMORANDUM RE STATUS OF REAL PARTY IN INTEREST AND RIGHT OF TRUST TO PROCEED IN THIS ACTION, filed August 27, 2015, Docket No. 50, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

77.     DECLARATION OF RONALD MARK GOSS, and any exhibits thereto, filed August 27, 2015, Docket No. 51, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

78.     DECLARATION OF MINDY GOSS, and any exhibits thereto, filed August 27, 2015, Docket No. 52, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

79.     WINDSOR SECURITIES, LLC'S SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed August 28, 2015, Docket No. 55, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

80.     WINDSOR SECURITIES, LLC'S SUPPLEMENTAL REQUEST TO TAKE JUDICIAL NOTICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed August 28, 2015, Docket No. 55-1, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

81.     WINDSOR SECURITIES, LLC'S MOTION FOR LEAVE TO FILE SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT, filed August 28, 2015, Docket No. 56, in *John Hancock Life
Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family
Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651
WHO.

82.     OBJECTION TO FILING OF SURREPLY; AND REQUEST, SHOULD THE
COURT ALLOW THAT FILING, FOR OPPORTUNITY TO RESPOND, filed August 31,
2015, Docket No. 57, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as
Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C.,
N.D. Cal., Case No. 3:14-cv-04651 WHO.

83.     ORDER REGARDING REAL PARTY IN INTEREST, filed September 2, 2015,
Docket No. 58, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as
Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C.,
N.D. Cal., Case No. 3:14-cv-04651 WHO.

84.     ORDER GRANTING IN PART AND DENYING IN PART [Windsor's]
MOTION FOR SUMMARY JUDGMENT, filed September 21, 2015, Docket No. 50, in *Pacific
Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life
Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-
cv-03713 WHO.

85.     ORDER SUBSTITUTING REAL PARTY IN INTEREST AS DEFENDANT,
CROSS-CLAIMANT, AND CROSS-DEFENDANT, filed September 21, 2015, Docket No. 67,
in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E.
Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No.
3:14-cv-04651 WHO.

86.     ORDER GRANTING IN PART AND DENYING IN PART [Windsor's]
MOTION FOR SUMMARY JUDGMENT, filed September 21, 2015, Docket No. 68, in *John
Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker
Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-
cv-04651 WHO.

87.     FURTHER JOINT CASE MANAGEMENT STATEMENT, filed September 28,
2015, Docket No. 51, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the
Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*,
U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

88.     STATEMENT OF THE TRUST REGARDING ISSUES REMAINING TO BE
DECIDED, AND PROCEDURES THEREFOR, FOLLOWING THE COURT'S RULING ON
WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT, filed September

28, 2015, Docket No. 52, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

89.     FURTHER JOINT CASE MANAGEMENT STATEMENT, filed September 28, 2015, Docket No. 69, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

90.     FURTHER JOINT CASE MANAGEMENT STATEMENT, filed September 28, 2015, Docket No. 70, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

91.     STATEMENT OF THE TRUST REGARDING ISSUES REMAINING TO BE DECIDED, AND PROCEDURES THEREFOR, FOLLOWING THE COURT'S ORDER ON WINDSOR SECURITIES, LLC'S MOTION FOR SUMMARY JUDGMENT, filed September 28, 2015, Docket No. 71, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

92.     NOTICE OF MOTION AND MOTION [by the Trust] FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT, filed October 27, 2015, Docket No. 54, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

93.     DECLARATION OF MARIA ANA GORDILLO IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 55, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

94.     DECLARATION OF JOSEPH WOOD IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 56, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

95.    DECLARATION OF EUGENE HOUCHINS III SUBMITTED IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 57, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

96.    NOTICE OF MOTION AND MOTION [by the Trust] FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT, filed October 27, 2015, Docket No. 75, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

97.    DECLARATION OF EUGENE HOUCHINS III SUBMITTED IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 77, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

98.    DECLARATION OF JOSEPH WOOD IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 78, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

99.    DECLARATION OF RONALD MARK GOSS IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed October 27, 2015, Docket No. 80, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

100.    DECLARATION OF DARIN JUDD IN SUPPORT OF WINDSOR SECURITIES, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 10, 2015, Docket No. 59, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

101.    DECLARATION OF STEVEN PRUSKY IN SUPPORT OF WINDSOR SECURITIES, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 10, 2015, Docket Nos. 60, 60-1, 60-2, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

102.    WINDSOR SECURITIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, filed November 10, 2015, Docket No. 61, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

103.    DECLARATION OF STEVEN PRUSKY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed November 10, 2015, Docket No. 81, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

104.    DECLARATION OF DARIN T. JUDD IN SUPPORT OF WINDSOR SECURITIES, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 10, 2015, Docket No. 82, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

105.    DECLARATION OF ERIC HARKINS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, filed November 10, 2015, Docket No. 83, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

106.    DECLARATION OF ERIC HARKINS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 12, 2015, Docket No. 63, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

107.    WINDSOR SECURITIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, filed November 12, 2015, Docket

No. 85, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

108.   SUPPLEMENTAL DECLARATION OF JOSEPH WOOD IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 17, 2015, Docket No. 65, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

109.   SUPPLEMENTAL DECLARATION OF EUGENE HOUCHINS III SUBMITTED IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 17, 2015, Docket No. 67, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

110.   REPLY MEMORANDUM IN SUPPORT OF [the Trust's] MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, filed November 17, 2015, Docket No. 68, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

111.   SUPPLEMENTAL DECLARATION OF JOSEPH WOOD IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 17, 2015, Docket No. 89, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

112.   SUPPLEMENTAL DECLARATION OF EUGENE HOUCHINS III SUBMITTED IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, and any exhibits thereto, filed November 17, 2015, Docket No. 91, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

113.   REPLY MEMORANDUM IN SUPPORT OF [the Trust's] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT, filed November 17, 2015, Docket No. 93, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

114.     ORDER ON THE TRUST'S MOTION FOR SUMMARY JUDGMENT, filed December 22, 2015, Docket No. 70, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

115.     ORDER ON THE TRUST'S MOTION FOR SUMMARY JUDGMENT, filed December 22, 2015, Docket No. 95, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

116.     COMPLAINT AND DEMAND FOR JURY TRIAL, and any exhibits thereto, filed February 29, 2016, Docket No. 1, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

117.     SETTLEMENT AGREEMENT AND RELEASE, executed in or about early April, 2016, in *Windsor Securities, LLC v. The Jane Ann Stamatov Family Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00080 WH0.

118.     SETTLEMENT AGEEMENT AND RELEASE, executed on or about March 28, 2016, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

119.     STIPULATION AND ORDER TO RELEASE INTERPLEADER FUNDS, filed April 7, 2016, Docket No. 120, in *John Hancock Life Insurance Company (USA) v. Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-04651 WHO.

120.     SETTLEMENT AGREEMENT AND RELEASE, executed on or about April 15, 2016, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

121.     STIPULATION AND ORDER TO RELEASE INTERPLEADER FUNDS, filed April 15, 2016, Docket No. 93, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

122.     STIPULATION AND ORDER TO RELEASE INTERPLEADER FUNDS, filed April 18, 2016, Docket No. 94, in *Pacific Life Insurance Company v. Maria Ana Gordillo as Trustee of the Erwin A. Collins Family Life Insurance Trust - 2008, et al., and Related Cross-Actions*, U.S.D.C., N.D. Cal., Case No. 3:14-cv-03713 WHO.

123.    DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS, filed May 6, 2016, Docket No. 19, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

124.    PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT ARENT FOX, LLP'S COUNTERCLAIMS, filed May 25, 2016, Docket No. 25, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

125.    SETTLEMENT AGREEMENT AND RELEASE, executed in or about early July, 2016, in *Windsor Securities, LLC v. The Robert S. Coppock Irrevocable Life Insurance Trust, et al.*, U.S.D.C., N.D. Cal., Case No. 3:15-cv-00075 WH0.

126.    TRANSCRIPT OF DEPOSITION OF WINDSOR SECURITIES, BY STEVEN PRUSKY, AND STEVEN PRUSKY INDIVIDUALLY, taken March 6, 2017 and October 4, 2017, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

127.    TRANSCRIPT OF DEPOSITION OF JULIUS ROUSSEAU, taken March 7, 2017, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

128.    AFFIDAVIT OF EUGENE HOUCHINS III, executed March 22, 2017, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

129.    TRANSCRIPT OF DEPOSITION OF DAVID FOX, taken April 5, 2017, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

130.    TRANSCRIPT OF DEPOSITION OF DARIN T. JUDD, taken October 14, 2017, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

131.    TRANSCRIPT OF DEPOSITION OF LAUREN ANTONINO, taken February 15, 2018, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

132.    TRANSCRIPT OF DEPOSITION OF EUGENE HOUCHINS III, taken February 16, 2018, and any exhibits thereto, in *Windsor Securities, LLC v. Arent Fox LLP, et al.*, U.S.D.C., S.D.N.Y., Case No. 1:16-cv-01533 GBD.

**D.     WITNESS'S QUALIFICATIONS.**

My qualifications to provide expert testimony in this matter are set forth below.

1.      Education.

     (a)     B.A., Psychology, University of Minnesota - Twin Cities, 1966.

     (b)     M.A., Buddhist Studies, University of Wisconsin - Madison, 1972.

     (c)     J.D., University of California - Berkeley, 1981.

     (d)     Doctoral candidate in Buddhist Studies, University of California -

Berkeley, current.

2.      Professional Qualifications.

Member of State Bar of California since 1982. Admitted to practice in:  all state courts of California; United States District Court, Northern District of California; United States District Court, Central District of California; United States District Court, Eastern District of California; United States Court of Appeals for the Ninth Circuit. Admitted to practice *pro hac vice* in:  United States District Court, Northern District of Illinois (three times, including currently); United States District Court, Northern District of Georgia (twice, including currently); United States District Court, Eastern District of Tennessee (once).

3.      Relevant Employment History.

     (a)     Dinkelspiel & Dinkelspiel, San Francisco, California, 1981 through 1983. Litigation associate.

     (b)     Cahill & Wood, San Francisco, California, 1983 through 1984. Founding partner.

(c)     Zimmerman & Wood, Oakland, California, 1984 through 1987.  Founding partner.

(d)     Joseph Wood, Attorney at Law, San Francisco, California, 1987 through approximately 1993.  Sole practitioner.

(e)     Lindley & Wood, San Francisco, California, approximately 1993 through approximately 1998.  Founding partner.

(f)     Hennefer & Wood, San Francisco, California, approximately 1998 through approximately 2005.  Founding partner.

(g)     Hennefer Finley & Wood, LLP, San Francisco, California, approximately 2005 through the present.  Founding partner.

4.     Relevant Experience.

I have more than thirty-five years of continuous trial and appellate experience, in both state and federal courts, with emphases on:  (a) complex business litigation, representing both plaintiffs and defendants, in such matters as misappropriation of trade secrets, trademark, business fraud, securities fraud, breach of commercial contracts, secured transactions, and breach of fiduciary duty; (b) employment and employment discrimination, representing both plaintiffs and defendants; (c) attorney malpractice, representing both plaintiffs and defendants; (d) class actions, representing plaintiffs; and (e) in several recent instances, disputes arising out of life insurance premium financing agreements controlled by the Uniform Commercial Code.

While my offices have been located in the San Francisco Bay Area, I have regularly litigated not only in the five California counties (*viz.*, San Francisco, Marin, San Mateo, Alameda, and Contra Costa) that comprise that area but also in Los Angeles, Santa Clara, San

Diego, Santa Barbara, Sacramento, and Shasta Counties, as well as having appeared in the courts of other states on a *pro hac vice* basis. I have achieved success, either at trial, on appeal, or through favorable settlement, in approximately 85% of my cases.

During my career, I have analyzed and/or litigated hundreds of contracts, gaining a body of experience that has made me an expert both in contractual interpretation and in determining how courts are likely to understand and enforce particular contractual provisions. That experience, together with ongoing participation in continuing education programs and regular communications with colleagues, has also exposed me to, and made me aware of, the standards and norms of practice among contract litigators in this and other states.

California law relies heavily on codification, and has, in particular, many statutes governing contractual relations. Further, the California Supreme Court has held that:

> "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." [Citation omitted.]

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008).

This means - as I have repeatedly observed in my practice - that any competent California attorney wishing properly to interpret a contract or to determine how courts are likely to understand and enforce particular contractual provisions must, and does, consult, master, and bring to bear not only the language of the contract itself but also the provisions of all applicable statutes, as well as the case law interpreting those provisions. As I have further observed, doing so is deemed by competent attorneys to be especially crucial where, as often occurs, the

California legislature has provided that certain contractual rights granted by statute - and thus made a part of the affected contracts under the rule of *Edwards* - cannot be waived by the parties. For example, Title 9 of the California Commercial Code - which governs the highly regulated secured transactions that form the subject matter of the underlying action - has not only clarified and supplemented the language of a typical "Default Sale Right" provision like the one at issue herein by statute, *viz.*, California Commercial Code § 9620, but has also rendered a nullity any attempt by the parties to waive, vary, or otherwise avoid the rights created by that statute through agreement. (*See* California Commercial Code § 9602(10), California Commercial Code § 1302(a).)

During my career, I have litigated, in both state and federal courts, many cases involving choice of law provisions in contracts, gaining a body of experience that has made me an expert in determining how courts are likely to understand and enforce such provisions. That experience, together with ongoing participation in continuing education programs and regular communications with colleagues, has also exposed me to, and made me aware of, the standards and norms of practice among litigators in this and other states with regard to such provisions.

I am regularly retained by business clients to carefully review and evaluate the terms of proposed contracts with an eye towards helping those clients avoid future litigation.

As noted in Section C. of this Statement, the present action involves the conduct of the attorney-defendants in providing business advice and related litigation services, during the period 2009-2014, with respect to several financing agreements that were subject to strict regulation under Title 9 of the California Commercial Code. For the reasons set forth above, I am able to provide accurate, relevant, and probative testimony as to the standard of care that prevailed at the

time among competent attorneys handling matters of that kind under California law, testimony

that would not be known to the ordinary person and that would be helpful to the trier of fact.

     5.    Publications.

I have not authored any publications during the previous ten years.

**E.    PRIOR TESTIMONY AS EXPERT WINESS.**

I have not previously testified as an expert witness at trial or by deposition.

**F.    COMPENSATION.**

The attorneys for plaintiff in this action have agreed to compensate me at the rate of

$500.00 per hour for my study and testimony herein. I have no financial stake in the outcome of

the action.

**G.    STATEMENT OF OPINIONS THAT WILL BE EXPRESSED AND THE BASIS
FOR THEM.**

     1.    Mr. Rousseau Failed To Meet The Applicable Standard Of Care.

In determining whether an attorney has exhibited the requisite degree of competence in

handling a client's affairs under California law, the crucial inquiry is whether he or she has used

"such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess

and exercise in the performance of the tasks they undertake." *Lucas v. Hamm*, 56 Cal. 2d 583,

591 (1961). An attorney fails to meet that standard, as a matter of law, where he or she fails to

conduct minimal research and to exert modest efforts that would have revealed the steps that

needed to be taken in order adequately to protect the client's interests. *Smith v. Lewis*, 13 Cal. 3d

349, 360 (1975), *partially overruled on other grounds*, 15 Cal. 3d 838, 851, fn. 14.

Here, Mr. Rousseau had only to review the Financing Agreements in order to learn that

the parties had chosen to be have their secured transactions governed by California law.  He had

only to consult such cases as *Convergys Corporation v. Keener*, 276 Ga. 808, 810 (2003), in

order to learn that the parties' choice of law - which violated no public policy of the state in

which the Trusts were located - would be enforced.  He had only to consult Division 9 of the

California Commercial Code in order to learn that that code contained specific language

governing the rights and obligations of secured lenders and borrowers following default, and that

those rights and obligations could not be waived, varied, or otherwise avoided by agreement of

the parties.  He had only to read the decision of the California Supreme Court in *Edwards v.

Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008), in order to learn that that specific language of

the code would be deemed have been incorporated, verbatim, into the provisions of the

Financing Agreements.  Had he made those minimal and modest efforts, he would have known

that Windsor, in order to assure its entitlement to the death benefits of the Policies, needed to

enter into a post-default agreement with each of the Trusts under which Windsor would relieve

each Trust of any further liability on its loan in return for Windsor's being granted a form of

ownership of the Policy that was (a) unfettered by any obligation to provide to the Trust any

amounts remaining from the proceeds of a public or private sale of the Policy and (b) unfettered

by any obligation to provide to the Trust any amounts remaining from the death benefit after

Windsor had been paid what it was owed on the loan.  But Mr. Rousseau did none of those

things, remained ignorant of, or in unjustifiable denial about, the steps that needed to be taken,

and thus neither took those steps nor advised Windsor that they were necessary.  Incorrectly and

unjustifiably believing, moreover, that Windsor's interests were adequately protected, Mr.

Rousseau failed to advise Windsor of, or recommend, another means by which it might gain an

unfettered right to the death benefit under the subject Policies, *viz.*, public or private sales at which it could purchase the Policies by means of a credit bid. Finally, incorrectly and unjustifiably continuing to believe, even after an unfavorable result in the Bitter arbitration, that Windsor's interests were adequately protected, Mr. Rousseau failed to advise Windsor that it should seek - and indeed appears to have advised Windsor that it should not seek - settlement of the Collins and Acker cases, as well as failing to advise Windsor of what steps it should take in regard to the Coppock and Stamatov Policies.

It is my opinion that Mr. Rousseau's actions and omissions fell below the standard of care as a matter of law under *Smith, supra.* Further, it is my opinion that any competent attorney would have done the minimal and modest review and research described above, would have thereby learned what steps were required in order to assure Windsor's entitlement to the death benefits under the Policies, would have advised and assisted Windsor accordingly, and would have take those steps on Windsor's behalf. Again, Mr. Rousseau, in failing to do what any competent attorney would have done in that situation, fell below the standard of care.

2.    Mr. Rousseau's Having Failed To Meet The Applicable Standard Of Care Caused Damage To Windsor.

It is my opinion that causation of damages in this situation is straightforward. The standard for proving such causation was enunciated in *Viner v. Sweet,* 30 Cal. 4th 1232, 1242-1243 (2003), where the California Supreme Court held:

> In transactional malpractice cases, as in other cases, the plaintiff may use circumstantial evidence to satisfy his burden. . . . . And the plaintiff need not prove causation with absolute certainty. Rather, the plaintiff need only "introduce

> evidence which affords a reasonable basis for the conclusion that it is more likely
>
> than not that the conduct of the defendant was a cause in fact of the result."
>
> [Citation omitted.]

Had Mr. Rousseau met the standard of care, Windsor would more likely than not have entered with the Trusts into post-default agreements meeting the requirements of California Commercial Code § 9620, would thereby have obtained death benefits totaling $7,000,000, and would have incurred minimal attorney's fees in doing so.  In the alternative, had Mr. Rousseau met the standard of care, Windsor would more likely than not have held public or private sales at which it would have purchased the subject Policies by means of credit bids, would thereby have obtained death benefits totaling $7,000,000, and would again have incurred minimal attorney's fees in doing so.  Because Mr. Rousseau repeatedly failed to meet the standard of care, Windsor suffered substantial losses and incurred substantial attorney's fees, neither of which would have occurred but for those failures.  In my opinion, the nature of Mr. Rousseau's failures to meet the standard of care made that result entirely foreseeable and, in those cases - *viz.*, Bitter, Collins, and Acker - where the insureds passed away before Mr. Rousseau was replaced by another attorney, virtually inevitable.

DATED:      April 2, 2018

_____
Joseph Wood