# EXHIBIT 33

*WINDSOR SECURITIES, LLC VS.*
*ARENT FOX LLP, et al.*

*EUGENE HOUCHINS III*
*February 16, 2018*



ELLEN GRAUER
COURT REPORTING CO. LLC

126 East 56th Street, Fifth Floor New York, New York 10022
P: 212-750-6434  F: 212-750-1097
www.ellengrauer.com

*Original File 116473.TXT*
*Min-U-Script® with Word Index*

```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     ------------------------------------------------X
 3   WINDSOR SECURITIES, LLC,

 4         Plaintiff,

 5   vs.

 6   ARENT FOX LLP, et al.,

 7         Defendants,

 8   CIVIL ACTION NO. 16-CV-01533 (GBD) (GWG)
     ------------------------------------------------X
 9
                                  3333 Piedmont Road
10                                Atlanta, Georgia

11
                                  February 16, 2018
12                                10:00 a.m.

13

14         Videotaped deposition of EUGENE HOUCHINS III,

15   taken on behalf of the Defendant, pursuant to Notice

16   and agreement of counsel, in accordance with the

17   Federal Rules of Civil Procedure, before Maureen S.

18   Kreimer, CCR B-1379, CRR, Notary Public.

19

20

21

22

23         ELLEN GRAUER COURT REPORTING CO. LLC
              126 East 56th Street, Fifth Floor
24                 New York, New York 10022
                          212.750.6434
25                     REF:  116473
```

```
 1   A P P E A R A N C E S :

 2

 3   Alan L. Frank Law Associates, P.C.

 4   On behalf of the Plaintiff

 5        135 Old York Road

 6        Jenkintown, Pennsylvania 19046

 7   BY:  ALAN L. FRANK, ESQ.

 8        215.935.1000

 9

10   Foley & Lardner, LLP

11   On behalf of the Defendants

12        90 Park Avenue

13        New York, New York 10016

14   BY:  PETER N. WANG, ESQ.

15        ADAM G. PENCE

16        212.682.7474

17

18   Locke Lord LLP

19   On behalf of the Witness

20        Terminus 200 Suite 1200

21        3333 Piedmont Road

22        Atlanta, Georgia 30305

23   BY:  ELIZABETH J. CAMPBELL, ESQ.

24        404.870.4679

25

              (Continued on next page)
```

```
 1   A P P E A R A N C E S :  (Cont'd)

 2

 3   ALSO PRESENT:

 4        Mr. Henry Stewart, Videographer

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    ----------------- I N D E X -----------------
 2    WITNESS                  EXAMINATION BY           PAGE
 3    EUGENE HOUCHINS III      MR. WANG                    6
 4
 5
 6    --------------- E X H I B I T S ---------------
 7    DEFENDANTS'    DESCRIPTION                        FOR I.D.
 8    Exhibit 1      Transcript of Eugene                  24
 9                   Houchins III in Sun Life
10                   vs Conestoga Trust 8-4-16
11    Exhibit 2      Mutual Release of Claims              52
12                   between Windsor/Houchins,
13                   et al Plaintiff
14                   087010 - 7014
15    Exhibit 3      Agreement and Mutual                  64
16                   Release Barnes/Bonded
17                   Life Plaintiff 081407
18    Exhibit 4      Deposition transcript of              87
19                   Eugene Houchins III
20                   11-15-13 Antonino
21                   052259 - 2309
22
23
24
25
```

```
 1   ---------- E X H I B I T S (Cont'd) ------------
 2   DEFENDANTS'     DESCRIPTION                    FOR I.D.
 3   Exhibit 5       Deposition transcript of          88
 4                   Barnes v. Windsor Hearing
 5                   Day 3 1-15-14
 6                   (Confidential) AF0011199 -
 7                   11296
 8   Exhibit 6       Declaration of Eugene             90
 9                   Houchins III 2-2-15 in
10                   Pacific Life vs. Gordillo,
11                   et al
12   Exhibit 7       11-10-15 Declaration of           94
13                   Steven Prusky in support
14                   of Windsor Securities
15                   JUDD 071107 - 071120
16   Exhibit 8       Life Insurance Premium           105
17                   Financing Agreement among
18                   Windsor, Bitter et al
19                   (Confidential) Plaintiff
20                   017208 - 017346, AF0004070
21   Exhibit 9       3-1-10 Letter from Pacific       113
22                   Life to Windsor Plaintiff
23                   078818
24
25
```

```
 1     ----------- E X H I B I T S (Cont'd) ------------
 2    DEFENDANTS'       DESCRIPTION                  FOR I.D.
 3    Exhibit 10        Email string ending             116
 4                      11-21-13 Subject MyFax
 5                      Delivery from NA Antonino
 6                      047080 - 7083
 7    Exhibit 11        Email string ending             119
 8                      11-21-13 Subject MyFax
 9                      Delivery from NA Antonino
10                      047084-087
11
12
13             (EXHIBITS TO BE PRODUCED)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2      A.    I had many -- I had several attorneys,
 3 yeah.
 4      Q.    God bless you.
 5      A.    Yeah, yeah, yeah.
 6      Q.    On behalf of the profession and --
 7      A.    Yeah.
 8      Q.    -- thank you.  But just focusing now on
 9 Mr. Wood and Mr. Marcus.  So your testimony was
10 Mr. Wood was your attorney from the beginning of the
11 Bitter case, as I think you said --
12            MS. CAMPBELL:  Objection.
13 BY MR. WANG:
14      Q.    -- it was at the beginning of the Bitter
15 case?
16            MS. CAMPBELL:  Mischaracterizes testimony.
17      Yes, you can answer if that's correct.
18      A.    Define the beginning of the Bitter case.
19 Was it when the complaint started, or -- basically
20 Joe became my attorney when a conflict between me
21 and the trustees was resolved.  That's a good way to
22 put it.
23 BY MR. WANG:
24      Q.    When a conflict between -- what conflict
25 was that?
```

 1
 2            MS. CAMPBELL:  Object to the form of the
 3       question.
 4   BY MR. WANG:
 5       Q.    What conflict?
 6       A.    I perceived that there was a conflict
 7   because Prusky, Windsor, was having -- was asking me
 8   to do certain things like sign change of ownership
 9   forms, and sign change of -- or get them signed by
10   the trustees, and I felt as though maybe Prusky was
11   exposing me to liability.  So I wanted that to be
12   resolved first.
13       Q.    What liability were you concerned that you
14   were exposed to?
15            MS. CAMPBELL:  Yeah, object to the form of
16        the question and to the extent it calls for a
17        legal conclusion.  And I'm also going to
18        caution the witness that if the question is
19        calling for information that is advice that you
20        received from counsel, you can assert your
21        privilege that it's privileged information.
22            MR. WANG:  Well, with that -- with that
23        hint, I'm -- Ms. Campbell, Ms. Campbell, wait a
24        minute.  All I did was follow up on the
25        witness's answer and ask the very natural

```
 1
 2        A.    He believes, hum?
 3        Q.    So you --
 4        A.    Okay.
 5        Q.    But so you did not, up until today, you've
 6   never heard that he had or expressed any claims, or
 7   potential claims against you?
 8              MS. CAMPBELL:  Object to the form of the
 9        question.
10        A.    What was the verb you said in that
11   sentence, please?  Can you read that back?  He did
12   not threat- -- I'm sorry.
13   BY MR. WANG:
14        Q.    He did not have claims, or potential --
15        A.    I think --
16        Q.    -- or discuss potential claims against
17   you?
18              MS. CAMPBELL:  Object to the form of the
19        question.
20        A.    Let's answer the first part of that
21   question.  I believe he did have -- he potentially
22   had claims against me.
23   BY MR. WANG:
24        Q.    Oh, you do?
25        A.    Yeah.  That's why it's on --
```

```
 1
 2        Q.    And those were communicated to you, those
 3   claims?
 4        A.    From?
 5        Q.    Somebody.
 6        A.    Yeah, of course.
 7        Q.    And what were those claims?  What was the
 8   nature of those claims?
 9        A.    I believe I got into it a little bit, but
10   Prusky -- I was involved with Prusky and helping him
11   sign change of ownership forms, get HIPAA signed,
12   communicate -- basically, I was the middleman for
13   these people.  So I was making sure that he didn't
14   get me in the middle of a liability issue.
15        Q.    He, meaning Barnes?
16        A.    Prusky.
17        Q.    Prusky?
18        A.    Yes.
19        Q.    This release is the one with Barnes we're
20   looking at?
21        A.    Yes.  But, basically, if Prusky comes to
22   me and asks me to do something, and I go get Barnes
23   to do it and it's the wrong thing to do, there's
24   liability there; right?
25        Q.    Well, I don't know.  I mean...
```

```
 1
 2       Q.    Yeah.  I'm talking about Coppock the
 3  insured?
 4       A.    Yes.  So I don't know what communication
 5  the son had with the father.
 6       Q.    And so your testimony is -- withdrawn.
 7             Had you ever discussed premium financing
 8  with any of your insureds prior to the time that the
 9  applications were submitted to the insurance
10  company?
11       A.    Are we referring to the five cases we're
12  talking about in the subpoena?
13       Q.    Yes.
14       A.    What are those five again?  You named
15  three.
16       Q.    Stamatov, Coppock, Collins, Acker, Bitter?
17       A.    Not that I recall.
18       Q.    You know that the applications indicate in
19  each case that there was no expectation that the
20  policy may be transferred to a third-party as
21  repayment of any premium financing debt?
22             MS. CAMPBELL:  Objection; leading.
23             MR. FRANK:  Objection; leading.
24             MS. CAMPBELL:  Objection; reading from a
25        document that's not in front of the witness.
```

```
 1
 2            MR. WANG:  Let me do this.  Let me do it
 3       this way.  Let's mark the life insurance
 4       premium financing agreement, which is Plaintiff
 5       017208 through 345.  For some reason, there is
 6       an extra document.
 7            MR. FRANK:  It's part of the --
 8            MR. WANG:  Oh, okay.
 9  BY MR. WANG:
10       Q.   And the last page, to make the entire
11  document complete, is AF0004070.  I'll represent to
12  you that makes a complete document, financing
13  agreement.
14            (Defendant's Exhibit 8 marked.)
15            MS. CAMPBELL:  Is there a particular page,
16       Mr. Wang --
17            MR. WANG:  There will be.
18            MS. CAMPBELL:  -- you'd like us to review?
19            MR. WANG:  There will be.  I want to first
20       have the witness see if he can identify the
21       document.  There will be.
22            MR. FRANK:  This is 8, everybody?
23            MR. WANG:  Yeah.
24       A.   Is that a question?
25  BY MR. WANG:
```

1
2     Q.    Yes.
3     A.    Yes, I've seen this.
4     Q.    Okay.  Take a look at pages 017305.
5     A.    Wow.  Say that again.
6     Q.    017305.
7     A.    017305.
8     Q.    So it's about three-quarters of the way.
9     A.    Yeah, mm-hmm.
10    Q.    Okay.  And this is part of the application
11 to Pacific Life.  I'll represent to you you can go
12 back about six pages, you'll see that.
13          You recognize the form, don't you?
14    A.    I recognize the form.
15    Q.    Okay.  And under premium financing, which
16 is the second item on that page, the question is
17 asked:  "Have you entered into or do you have an
18 expectation that you may enter into an agreement to
19 borrow current or future premiums, or both, in
20 connection with this Application for Life
21 Insurance."
22          And the -- it's checkmarked "no".
23          Do you see that?
24    A.    Yes.
25    Q.    Okay.  Now, who -- Mr. Barnes signs this

1
2   document?
3           MR. FRANK:  Objection; leading.
4   BY MR. WANG:
5       Q.   I'm looking at page 017309.
6           MS. CAMPBELL:  We'll stipulate the
7       document says what it says.
8   BY MR. WANG:
9       Q.   Is that Mr. Barnes' hand- -- signature, so
10  far as you know?
11      A.   As far as I --
12          MS. CAMPBELL:  Object to the form of the
13      question.
14  BY MR. WANG:
15      Q.   And that's your -- is that your
16  handwriting at the bottom, or is that your father's?
17      A.   That's my signature.
18      Q.   Okay.  So you've signed this as well as
19  Mr. Barnes; am I right?
20      A.   I definitely signed it.
21      Q.   And who filled out the form?
22          MS. CAMPBELL:  Object to the form of the
23      question.
24      A.   I don't know who filled out the form.
25  That's not my handwriting.

```
 1              A C K N O W L E D G M E N T

 2

 3    STATE OF            )

 4                        ) ss.:

 5    COUNTY OF           )

 6

 7              I, EUGENE HOUCHINS III, hereby

 8    certify that I have read the transcript of my

 9    testimony taken under oath in my deposition;

10    that the transcript is a true, complete and

11    correct record of my testimony, and that the

12    answers on the record as given by me are true

13    and correct.

14

15                      _____

16                           EUGENE HOUCHINS III

17

18    Signed and subscribed to before

19    me, this _____ day of _____, ____.

20

21    _____

22    Notary Public, State of _____

23

24

25
```

```
 1                C E R T I F I C A T E
 2
 3    STATE OF GEORGIA    )
 4                        :
 5    FULTON COUNTY       )
 6
 7         I hereby certify that the foregoing transcript was
 8    taken down, as stated in the caption, and the questions
 9    and answers thereto were reduced to the written page
10    under my direction; that the foregoing pages represent a
11    true and correct transcript of the evidence given.
12         I further certify that I am not of kin
13    or counsel to the parties in the case; am not in the
14    regular employ of counsel for any of said parties; nor am
15    I anywise interested in the result of said case.  The
16    witness did reserve the right to read and sign the
17    transcript.
18         This, 1st day of March, 2018.
19
20
21
22    [signature]
23    _____
      MAUREEN KREIMER, CCR-B-1379
24    Notary Public in and for the
      State of Georgia.  My Commission
25    Expires August 14, 2020.
```

```
 1                      ***ERRATA***

 2        ELLEN GRAUER COURT REPORTING  CO. LLC
             126 East 56th Street, Fifth Floor
 3               New York, New York 10022
                      212-750-6434
 4

 5   NAME OF CASE: WINDSOR SECURITIES VS. ARENT FOX
     DATE OF DEPOSITION: February 16, 2018
 6   NAME OF WITNESS: EUGENE HOUCHINS III

 7   PAGE LINE    FROM         TO         REASON

 8   ____|____|_____|_____|_____

 9   ____|____|_____|_____|_____

10   ____|____|_____|_____|_____

11   ____|____|_____|_____|_____

12   ____|____|_____|_____|_____

13   ____|____|_____|_____|_____

14   ____|____|_____|_____|_____

15   ____|____|_____|_____|_____

16   ____|____|_____|_____|_____

17   ____|____|_____|_____|_____

18   ____|____|_____|_____|_____

19   ____|____|_____|_____|_____

20   ____|____|_____|_____|_____

21                        _____

22   Subscribed and sworn before me

23   this_____day of _____, ____.

24   _____    _____

25   (Notary Public)          My Commission Expires:
```