# EXHIBIT 35

*WINDSOR SECURITIES, LLC VS.*
*ARENT FOX LLP, et al.*

*SANDRA STERN*
*June 25, 2018*



126 East 56th Street, Fifth Floor  New York, New York 10022
P:  212-750-6434   F:  212-750-1097
www.ellengrauer.com

*Original File 117661A.TXT*
*Min-U-Script® with Word Index*

1   UNITED STATES DISTRICT COURT

2   FOR THE SOUTHERN DISTRICT OF NEW YORK
    -------------------------------------------------X
3   WINDSOR SECURITIES, LLC,

4                    Plaintiff,

5        -against-

6   ARENT FOX, LLP and JULIUS ROUSSEAU, III,
    ESQUIRE,
7
                     Defendants.
8
    Civil Action No.: 16-1533
9   -------------------------------------------------X

10

11                              90 Park Avenue
                                New York, New York
12
                                June 25, 2018
13                              9:12 a.m.

14

15        VIDEOTAPED DEPOSITION of SANDRA STERN,

16   taken before Sadie L. Herbert, a Registered

17   Professional Reporter and Notary Public of the

18   States of New York and New Jersey.

19

20

21

22

23        ELLEN GRAUER COURT REPORTING CO. LLC
             126 East 56th Street, Fifth Floor
24                New York, New York 10022
                        212-750-6434
25                      REF: 117661A

```
 1   A P P E A R A N C E S:

 2

 3   ALAN L. FRANK LAW ASSOCIATES, P.C.

 4   ON BEHALF OF PLAINTIFF

 5        135 Old York Road

 6        Jenkintown, Pennsylvania  19046

 7   BY:   ALAN L. FRANK, ESQ.

 8        Phone 215.935.1000

 9        Afrank@alflaw.net

10        SAMANTHA A. MILLROOD, ESQ.

11

12   FOLEY & LARDNER, LLP

13   ON BEHALF OF DEFENDANTS

14        90 Park Avenue

15        New York, New York  10016

16   BY:   PETER WANG, ESQ.

17        Phone 212.682.7474

18        Pwang@foley.com

19        ADAM PENCE, ESQ.

20

21   ALSO PRESENT:

22        STEVEN PRUSKY, Windsor Securities

23        HUNTER CARTER, Arent Fox

24        DANIEL SALEMI, Videographer

25
```

```
1    ------------------ I N D E X ------------------

2    WITNESS                EXAMINATION BY            PAGE

3    SANDRA STERN           MR. WANG                   7

4

5

6    ----------- DIRECTION NOT TO ANSWER -----------

7    PAGE    44  What question was that?

8            74  Did you ever hear from anyone that

9                the plaintiffs in the arbitration,

10               that is, Mr. Wood's clients, had

11               argued that California's -- that

12               9620 did not apply?

13           75  Did you ever hear that -- that there

14               was a dispute about whether or

15               not 9620 applied to the Acker and

16               Collins transactions?

17           76  So that -- when you -- so my saying

18               that to you is the first time

19               you've heard -- you've heard

20               that that was raised in

21               documents?

22

23

24

25
```

```
1   ------- DIRECTION NOT TO ANSWER (Cont'd) --------
2   PAGE    83  So what do you understand from
3                reading his report, you can put
4                aside whatever Mr. Frank or
5                Ms. Millrood said to you, what
6                do you understand from reading
7                his report Mr. Wood's area of
8                expertise is?
9          177  And then were they sent back to you
10               with some suggestions or edits?
11         177  Is the -- is -- is the documents
12               that we were given the -- the first
13               draft of what you prepared?
14         177  How many drafts were there?
15         178  Do you still have copies of -- of
16               whatever drafts you -- you
17               prepared?
18
19
20   --------------- E X H I B I T S ----------------
21   STERN           DESCRIPTION                 FOR I.D.
22   Exhibit 1       Expert Report of Sandra
23                   Stern, Esquire                 30
24   Exhibit 2       Rebuttal Expert Report of
25                   Sandra Stern, Esquire          30
```

```
1    ----------- E X H I B I T S (Cont'd) ------------

2    STERN              DESCRIPTION                FOR I.D.

3    Exhibit 3          Reply Report of Sandra

4                       Stern in Response to the

5                       Rebuttal Report of Edwin

6                       E. Smith                        30

7    Exhibit 4          Order                           52

8    Exhibit 5          Order                           52

9    Exhibit 6          Confidential Submission by

10                      Windsor Securities, LLC,

11                      5/21/15                         72

12   Exhibit 7          Expert Witness Statement

13                      of Joseph Wood                 135

14   Exhibit 8          Rebuttal of Joseph Wood

15                      to Expert Witness

16                      Statements Submitted by

17                      Defendants                     135

18   Exhibit 9          Reply of Joseph Wood to

19                      Rebuttal Expert Report of

20                      James W. Maxson                135

21

22

23              (EXHIBITS TO BE PRODUCED)

24

25
```

```
 1                          STERN
 2       A     May I ask you whether Acker and Collins
 3  were then still living?
 4       Q     Would it make a difference?
 5       A     Yes, it would.
 6       Q     Tell me why.
 7       A     Because if they had died at that point,
 8  it seemed to me that the rights, with respect to
 9  the policies, insuring their lives had ripened.
10       Q     Okay.  So -- so let me ask you the
11  question this way, Ms. Stern, had you -- had --
12  had your advice been sought following the Bitter
13  arbitration award, what would you have told
14  Windsor to do vis-à-vis Acker and Collins?
15                  MR. FRANK:  Objection.
16                  You can answer.
17       Q     Assuming that they were still alive?
18                  MR. FRANK:  Objection.
19                  You can answer.
20       A     Assuming they were still alive, the
21  only practical solution at that point would be
22  to hold a commercially reasonable sale, at
23  which -- at which point, it is likely that
24  nobody would have shown up except for Windsor,
25  not certain, but it's quite possible that nobody
```

1                    STERN

2  would have shown up at the sale except for

3  Windsor and that Windsor would be credit bidding

4  in the -- for the amount of the debt and would

5  there -- thereafter, as provided by the code,

6  come to have complete and unfettered ownership

7  of the policies.

8      Q    So let me ask you the question a

9  slightly different way, Ms. Stern.

10           Is it your opinion that there -- again,

11  assuming that Acker and Collins were alive, that

12  there were remedial actions that could have been

13  taken with respect to Acker and Collins to

14  ameliorate the impact of the Bitter decision?

15     A    Yes.

16     Q    Okay.

17     A    And that would be, as I mentioned a

18  moment ago, to hold a commercially reasonable

19  sale.

20     Q    Yes.

21           And so there were things that could

22  have been done, again, assuming that they were

23  still alive for at least a portion of or some

24  part of the time, there were things that could

25  have been done to ameliorate that impact on

```
 1                          STERN

 2   Acker and Collins?

 3             MR. FRANK:  Objection, asked and

 4        answered.

 5   Q    Right?

 6   A    Yes, as I mentioned a moment ago.

 7   Q    And are you aware that Mr. Prusky and

 8   Windsor engaged other attorneys very shortly

 9   after the issuance of the Bitter award?

10             MR. FRANK:  Objection to your

11        predicate.

12             You can answer.

13             MR. WANG:  Right, I think the

14        objection is to the "are you aware"

15        part; am I right?

16             MR. FRANK:  Yeah, that's right, to

17        form.

18   Q    So I'll take out the "are you aware."

19        Did -- did -- did -- did your review of

20   materials reflect that Windsor had hired

21   different lawyers or other lawyers shortly after

22   the Bitter award was issued?

23   A    I don't recall whether that was evident

24   from the materials I reviewed.

25   Q    Okay.  If you assume that other -- as a
```

STERN

1    hypothetical that other lawyers were hired, do

2    you have some explanation as to why they didn't

3    give the advice that you think should have been

4    given to ameliorate the impact of the Bitter

5    award?

6                MR. FRANK:  Objection.

7                You can answer.

8    A    Since I know nothing about the

9    attorneys who did come to represent Windsor, I

10   don't know how I could answer that.

11   Q    Do you know when it was that

12   Mr. Rousseau and Arent Fox were replaced?

13   A    Sometime between the arbitration award

14   and I would say September, Oct- -- or October,

15   in the event, the fall of -- the fall of 2014.

16   Q    Because by that time, they were back in

17   front of Mr. -- Judge Orrick with other lawyers,

18   is that why you're saying that -- well,

19   withdrawn.

20              What leads you to -- to say that, that

21   is, that it was sometime before the August,

22   September -- or September, October?

23   A    Am I supposed to testify as to any

24   communications with counsel?

STERN

1

2          MR. FRANK:  No.

3     A     Then that's it.

4     Q     Okay.  Have you spoken to any of the

5 subsequent lawyers, that is, either Ms. Antonino

6 or Mr. Judd?

7     A     No, I have not.

8     Q     Did you review Ms. Canoff's expert

9 opinion that was tendered in the Acker, Collins

10 matter?

11    A     I don't believe that I did.

12    Q     Were you aware that -- that Windsor had

13 put forth an expert opinion in the Acker and

14 Collins matter to Judge Orrick?

15    A     No, I was not aware of it until this

16 moment.

17    Q     You didn't see -- didn't you see

18 reference to it in -- in Judge Orrick's

19 decision?

20    A     I don't recall such reference.

21    Q     Okay.  So however many hours you've

22 spent reviewing the materials and reviewing

23 Judge Orrick's decision, you have no

24 recollection of -- of him making reference to

25 expert opinions?

1           STERN

2    during the 2001 revision of Article 9?

3        A    What page are you on?

4        Q    Well, looking, for example, at Page 12,

5    I think -- I think you made -- there was another

6    reference, yes, also on Page 13, about

7    discussions during drafting committee meetings

8    leading to the 2001 revisions of -- of

9    Article 9.

10           Do you remember referring to that?

11       A    I do.

12       Q    Okay.  You -- you don't take

13   Mr. Rousseau to task for not being familiar with

14   what was discussed at drafting committee

15   meetings in 2001, do you?

16       A    Most certainly not.

17       Q    Okay.  Take a look at the bottom of

18   Page 14 of your initial report, and it begins by

19   saying, "Julius Rousseau and Arent Fox never

20   advised Windsor to conduct a public sale or

21   describe the requirements for such a sale."

22           Do you see that?

23       A    Yes, I do.

24       Q    Now, you -- you did see emails that

25   made reference to hiring a Georgia lawyer to --

```
 1                          STERN
 2   to look into a -- a sale of -- of the
 3   collateral?  Did you see that?
 4        A    Are you referring to David Fox's
 5   emails?
 6        Q    I'm referring to emails generally,
 7   whether it was David Fox's email, Mr. Rousseau's
 8   emails to -- to Windsor, you saw reference to
 9   that -- to that, didn't you, that is, that there
10   was consideration given to hiring a Georgia
11   lawyer to effect a sale in Georgia?
12                  MR. FRANK:  Objection as to form.
13                  You can answer.
14        A    My only memory is of that interchange
15   with respect to the Garcia transaction, in which
16   case, yes, there were emails drafted by David
17   Fox.
18        Q    So you don't recall anything about that
19   circumstance, that is, contacting a Georgia
20   lawyer, other than for Garcia?
21        A    I do not recall that.
22        Q    Okay.  Let's turn to Page 18 for a
23   moment, which is your -- part of your discussion
24   about the default sale right.
25                  Is it possible to agree in advance in
```

```
1                           STERN
2      Q     Do you still have copies of -- of
3   whatever drafts you -- you prepared?
4                   MR. FRANK:  Same instruction,
5              please.
6                   MR. WANG:  Oh, okay, yes.
7      Q     Acker, and I'm talking about Acker now,
8   I'm not talking about any case other than the
9   Acker case.
10                  Did you see any releases in the Acker
11  case that the -- the trust in Acker, the -- had
12  actually given releases to Windsor?
13     A     No, I didn't.
14     Q     You didn't.
15                  Would that make a difference to you if
16  they actually signed a release?
17                  MR. FRANK:  Objection.
18                  Can you be time-specific, please.
19                  MR. WANG:  At any time.
20                  MR. FRANK:  Objection.
21                  You can answer.
22     A     No, it wouldn't.
23     Q     It -- it wouldn't make a difference?
24     A     It wouldn't, because if you have a COO
25  that was transferred at one point and then years
```

1        STERN

2    later, you have a release of a -- and I presume

3    what you were saying is a release of all

4    liabilities and obligations.

5        Q    Yeah, a release by -- a release signed

6    by Windsor releasing Acker of the Acker trust of

7    all obligations.

8        A    So under that assumption, you have many

9    years later a release, that does not tell me

10   that at the time the COO was executed, it was in

11   exchange for a release of all liabilities and

12   obligations.  The dates here are very important.

13       Q    And so when would -- when would the

14   release have to be of some -- when would the

15   release have to be dated in order for it to have

16   some significance to you, say, if it's many

17   years later, no good?

18            MR. FRANK:  Objection.

19       Q    Many years after what?

20            THE WITNESS:  May I answer?

21            MR. FRANK:  You can.

22       A    Simultaneous with the execution of the

23   COO and as a bargain for exchange, that release,

24   it seems to me, would have been highly

25   significant.

STERN

1

2      Q    Okay.  But earlier, you said if it was

3  many years after, that's not good.  Would it

4  have to be simultaneous with the COO or could it

5  be reasonably soon thereafter?

6      A    I would say simultaneous.  And as I

7  mentioned a moment ago, as a bargain for

8  exchange.

9      Q    Okay.  Let me show you a document.  I

10  just want to show you a document and see whether

11  or not you've seen it before -- you know what,

12  no.  I -- I promised you that I'd finish by

13  1 o'clock, it's now about five to 1:00, and I

14  think absent any other discussions, we'll --

15  I'll conclude now, Ms. Stern.

16              THE WITNESS:  Okay.

17              MR. WANG:  Thank you.

18              MR. FRANK:  Are we done?

19              MR. WANG:  Yes.

20              THE VIDEOGRAPHER:  This concludes

21          today's deposition of Ms. Sandra Stern.

22          We are now off the record at

23          12:52 p.m., June 25th, 2018.

24              (Time noted:  12:52 p.m.)

25

```
 1              A C K N O W L E D G M E N T

 2

 3   STATE OF                )

 4                           :ss

 5   COUNTY OF               )

 6

 7              I, SANDRA STERN, hereby certify that

 8   I have read the transcript of my testimony taken

 9   under oath in my deposition of June 25, 2018;

10   that the transcript is a true, complete and

11   correct record of my testimony, and that the

12   answers on the record as given by me are true

13   and correct.

14

15

16              _____

17                        SANDRA STERN

18

19   Signed and subscribed to before me

20   this _____ day of _____, ____.

21

22   _____

23   Notary Public

24

25
```

```
1                    C E R T I F I C A T E

2

3   STATE OF NEW YORK       )

4                           ) ss:

5   COUNTY OF NEW YORK      )

6

7              I, SADIE L. HERBERT, a Registered

8   Professional Reporter and Notary Public, do

9   hereby certify:

10             That SANDRA STERN the witness whose

11  deposition is hereinbefore set forth, was duly

12  sworn by me and that such deposition is a true

13  record of the testimony given by such witness.

14             I further certify that I am not

15  related to any of the parties to this action by

16  blood or marriage; and that I am in no way

17  interested in the outcome of this matter.

18             IN WITNESS WHEREOF, I have hereunto

19  set my hand this 6th day of July 2018.

20

21

22

23

24  _____

25  SADIE HERBERT, RPR, CLR
```

```
 1                    ***ERRATA***

 2        ELLEN GRAUER COURT REPORTING  CO. LLC
            126 East 56th Street, Fifth Floor
 3              New York, New York 10022
                    212-750-6434
 4

 5   NAME OF CASE: WINDSOR SECURITIES VS. ARENT FOX
     DATE OF DEPOSITION: June 25, 2018
 6   NAME OF WITNESS: SANDRA STERN

 7   PAGE LINE   FROM       TO        REASON

 8   ____|____|_____|_____|_____

 9   ____|____|_____|_____|_____

10   ____|____|_____|_____|_____

11   ____|____|_____|_____|_____

12   ____|____|_____|_____|_____

13   ____|____|_____|_____|_____

14   ____|____|_____|_____|_____

15   ____|____|_____|_____|_____

16   ____|____|_____|_____|_____

17   ____|____|_____|_____|_____

18   ____|____|_____|_____|_____

19   ____|____|_____|_____|_____

20   ____|____|_____|_____|_____

21                    _____

22   Subscribed and sworn before me

23   this_____day of _____, ____.

24   _____    _____

25   (Notary Public)        My Commission Expires:
```

JUL/17/2018/TUE 11:05 AM   Alan Frank Law Assoc      FAX No. 215-935-1110                    P. 002

181

```
 1            A C K N O W L E D G M E N T
 2
 3     STATE OF New York,
 4                          :ss
 5     COUNTY OF New York
 6
 7              I, SANDRA STERN, hereby certify that
 8     I have read the transcript of my testimony taken
 9     under oath in my deposition of June 25, 2018;
10     that the transcript is a true, complete and
11     correct record of my testimony, and that the
12     answers on the record as given by me are true
13     and correct.
14
15
16                        _____
17                              SANDRA STERN
18
19     Signed and subscribed to before me
20     this 27th day of July, 2018.
21
22     _____
23     Notary Public  Registration No.
24               O2-J06327873
25               My commission Expires
                      7/20/2019
```

103

```
1                    ***ERRATA***
2          ELLEN GRAUER COURT REPORTING   CO. LLC
              126 East 56th Street, Fifth Floor
3                New York, New York 10022
                       212-750-6434
4
5    NAME OF CASE: WINDSOR SECURITIES VS. ARENT FOX
     DATE OF DEPOSITION: June 25, 2018
6    NAME OF WITNESS: SANDRA STERN
7    PAGE LINE    FROM        TO        REASON
8     24   6   Consumer    consumer   error in transcription
                 cagetal
9     24   20   defense    defendants  error in transcription
10    38   14   they're    if you're  error in transcription
11    58   21   file       follow     error in transcription
12     6   15   can        —          error in transcription
13    23   13   time       types      error in transcription
14    24    9   anything   any change error in transcription
                 into
15    30   16   the        any        error in transcription
16    53   20   a day      day-day    error in transcription
                 a day
17    53   23   couple     couple of  error in transcription
18    64   14   would      would .    error in transcription
                 would
19    79   23   bargain    bargained  error in transcription
20    80    7   bargain    bargained  error in transcription
21
22   Subscribed and sworn before me
23   this 27 day of July , 2018 .
24                           No. 02-106327823
25   (Notary Public)         My Commission Expires:
                              7/20/2019
```