# EXHIBIT 38

1 | Darin T. Judd (SBN 160475)
Eric D. McFarland (SBN 214245)
2 | Amy Leung (SBN 280318
THOMPSON, WELCH, SOROKO & GILBERT, LLP
3 | 3950 Civic Center Drive, Suite 300
San Rafael, CA 94903
4 | Telephone:    (415) 448-5000
Facsimile:    (415) 448-5010
5 | Email:         darin@twsglaw.com
                    eric@twsglaw.com
6 |                 amy@twsglaw.com

7 | Attorneys for Defendant, Cross-Defendant, and Cross-Claimant
WINDSOR SECURITIES, LLC
8 |

9 |                **UNITED STATES DISTRICT COURT**

10 |     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11 |

12 | JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.), a Michigan corporation,

Case No.  3:14-cv-04651-WHO

13 |
                    Plaintiff,

**ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL**

14 |
        vs.

15 |
MINDY GOSS, as Trustee of the Joe E. Acker
16 | Family Insurance Trust [incorrectly named
herein as the "Joe E. Acker Family Trust"], a
17 | Georgia resident; and
WINDSOR SECURITIES, LLC, a Nevada
18 | limited liability company [incorrectly named
herein as a "Delaware company"],

19 |
                    Defendants.

20 |

21 | MINDY GOSS, as Trustee of the Joe E. Acker
Family Insurance Trust,

22 |
                Cross-Claimant/Cross-Defendant,

23 |
        vs.

24 |
WINDSOR SECURITIES, LLC, a Nevada
25 | limited liability company,

26 |
                Cross-Defendant/Cross-Claimant.

27 |

28 |

-1-

*ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL*
**CASE NO. 3:14-cv-04651-WHO**

## I. ANSWER TO COMPLAINT IN INTERPLEADER OF
## JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)

Defendant/Cross-Defendant/Cross-Claimant Windsor Securities, LLC, a Nevada limited liability company ("**Windsor**"), answers the Complaint in Interpleader filed on October 17, 2014 ("**Complaint**") by Plaintiff John Hancock Life Insurance Company (U.S.A.), a Michigan corporation ("**JHUSA**"), as follows:

### A. Admissions and Denials

1. Windsor admits that this Court has jurisdiction over this action pursuant to 28 U.S.C. section 1332 in that complete diversity exists between the parties, and the amount in controversy exceeds a sum in the value of $75,000, exclusive of interest and costs, and all other relief the Court deems just and proper. Windsor denies the remaining allegations contained in paragraph 1.

2. Windsor admits that this Court also has jurisdiction over this action because Defendant Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust ("**Trustee**") and Windsor contractually agreed that venue for any dispute between them that is encompassed by this action would lie in either the United States District Court, Northern District of California or the Superior Court of California, County of Sonoma.

3. Windsor admits that JHUSA is a Michigan corporation authorized to transact, and transacting, insurance business within the State of California. Windsor lacks information and belief sufficient to answer the remaining allegations contained in paragraph 3 and therefore denies each and every remaining allegation therein accordingly.

4. Windsor admits the allegations contained in paragraph 4.

5. Windsor admits it is, and at all relevant times has been, a limited liability company organized and existing under the laws of and domiciled in the State of Nevada. Windsor admits that Windsor maintains business operations in Ardmore, Pennsylvania. Windsor denies the remaining allegations contained in paragraph 5.

6. Windsor admits that this Court is the proper venue for this action because Trustee and Windsor contractually agreed that venue for any dispute them that is encompassed by this action would lie in either the United States District Court, Northern District of California or the Superior Court of

-2-

1    California, County of Sonoma.

2        7.    Windsor admits the allegations contained in paragraph 7.  Windsor further admits that

3    the document attached as **<u>Exhibit A</u>** (to the Complaint) speaks for itself and not otherwise.  Windsor

4    denies each and every allegation in paragraph 15 concerning JHUSA's construction and interpretation

5    of the language appearing in Exhibit A.

6        8.    Windsor admits the allegations contained in paragraph 8.

7        9.    Windsor admits the allegations contained in paragraph 9.  Windsor further admits that

8    the document attached as **<u>Exhibit B</u>** (to the Complaint) speaks for itself and not otherwise.  Windsor

9    denies each and every allegation in paragraph 15 concerning JHUSA's construction and interpretation

10   of the language appearing in **<u>Exhibit B</u>**.

11       10.   Windsor admits the allegations contained in paragraph 10.

12       11.   Windsor admits the allegations contained in paragraph 11.

13       12.   Windsor admits the allegations contained in paragraph 12.  Windsor further admits that

14   the document attached as **<u>Exhibit C</u>** (to the Complaint) speaks for itself and not otherwise.

15       13.   Windsor lacks information and belief sufficient to answer the allegations contained in

16   paragraph 13 and therefore denies each and every allegation therein accordingly.  Windsor admits that

17   the document attached as **<u>Exhibit D</u>** (to the Complaint) speaks for itself and not otherwise.  Windsor

18   denies each and every allegation in paragraph 15 concerning JHUSA's construction and interpretation

19   of the language appearing in **<u>Exhibit D</u>**.

20       14.   Windsor admits that on or about July 31, 2014, JHUSA wrote to Ms. Goss and Windsor

21   Securities.  Windsor further admits that the document attached as **<u>Exhibit E</u>** (to the Complaint) speaks

22   for itself and not otherwise.  Windsor denies each and every allegation in paragraph 14 concerning

23   JHUSA's construction and interpretation of the language appearing in **<u>Exhibit E</u>**.

24       15.   Windsor lacks information and belief sufficient to answer the allegations contained in

25   paragraph 15 and therefore denies each and every allegation therein accordingly.  Windsor admits that

26   the document attached as **<u>Exhibit F</u>** (to the Complaint) speaks for itself and not otherwise.  Windsor

27   denies each and every allegation in paragraph 15 concerning JHUSA's construction and interpretation

28   of the language appearing in **<u>Exhibit F</u>**.

-3-

16. Windsor admits the allegations contained in paragraph 16.

17. Windsor denies the allegations contained in paragraph 17.

18. Windsor admits the allegations contained in paragraph 18.

19. Windsor admits the allegations contained in paragraph 19.

20. Windsor admits the allegations contained in paragraph 20.

Paragraphs 1 through 6 on pages 4:14-5:1 of the Complaint set forth the statement of relief requested by JHUSA to which no response is required. Windsor denies that JHUSA is entitled to any relief requested and denies any allegations contained in these paragraphs to which a response is required.

Windsor denies each and every allegation contained in the Complaint not specifically admitted or otherwise responded to above.

**B. Affirmative Defenses**

1. As a separate and further affirmative defense, Windsor alleges that JHUSA has failed to state a claim for which relief can be granted. JHUSA's Complaint fails to state facts sufficient to entitle JHUSA to recover its costs and attorneys' fees incurred in this action.

2. As a separate and further affirmative defense, Windsor alleges that Windsor is the sole beneficiary of the JHUSA life insurance policy, Policy No. 93783751 (the "**Policy**") and is therefore entitled to recover the entirety of the Policy death benefit proceeds plus post mortem interest.

3. As a separate and further affirmative defense, Windsor has not knowingly or voluntarily waived any applicable defenses and reserves the right to assert, and reply upon, such additional defenses to the Complaint as may become available or apparent as discovery commences and progresses in this action.

**II. ANSWER TO CROSS-CLAIM OF**

**MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST**

Defendant/Cross-Defendant/Cross-Claimant Windsor Securities, LLC, a Nevada limited liability company ("**Windsor**"), answers the Cross-Claim filed on November 7, 2014 (the "**Crossc-Claim**") by Defendant/Cross-Claimant/Cross-Defendant Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust ("**Trustee**") as follows:

-4-

**A. Admissions and Denials**

1.   Windsor admits the allegations contained in paragraph 1.

2.   Windsor admits it is, and at all relevant times has been, a limited liability company organized and existing under the laws of and domiciled in the State of Nevada.  Windsor admits that Windsor maintains business operations in Ardmore, Pennsylvania.

3.   Windsor admits the allegations contained in paragraph 3.

4.   Windsor admits the allegations contained in paragraph 4.

5.   Windsor admits the allegations contained in paragraph 5.

6.   Windsor answers paragraph 6, which incorporates by reference paragraphs 1 through 5 of the Cross-Claim, by incorporating herein by reference its corresponding responses to each of those paragraphs.

7.   Windsor admits the allegations contained in paragraph 7.

8.   Windsor denies the allegations contained in paragraph 8.

9.   Windsor admits the allegations contained in paragraph 9.

10.   Windsor admits that the insured under the John Hancock Life Insurance Company (U.S.A.) ("**JHUSA**") life insurance policy, Policy No. 93783751 (the "**Policy**") was John E. Acker (the "**Insured**").  Windsor admits that the initial owner and beneficiary of the Policy was the Trust. Windsor further admits that the predecessor trustee of the Trust, Ronald M. Goss ("**Predecessor Trustee**"), voluntarily executed a Change of Ownership (Absolute Assignment) for the Policy on March 18, 2010, that transferred ownership and the beneficiary designation of the Policy to Windsor. Windsor further admits that JHUSA registered the Change of Ownership (Absolute Assignment) for the Policy on March 25, 2010 and confirmed the Change of Ownership (Absolute Assignment) for the Policy on May 20, 2010.  Windsor denies that the owner and beneficiary of the Policy is the Trust.

11.   Windsor admits the allegations contained in paragraph 11.

12.   Windsor admits the allegations contained in paragraph 12.

13.   Windsor admits the allegations contained in paragraph 13.

14.   Windsor admits the allegations contained in paragraph 14.

15.   Windsor admits that one of those documents was entitled the "Security Agreement for

-5-

*ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL*
**CASE NO. 3:14-cv-04651-WHO**

Beneficiary Interest in Trust".  Windsor admits that another was entitled "Assignment of Life Insurance

Policy as Collateral".

16.     Windsor admits that the Security Agreement, which document, in terms of content and

legal effect, must speak for itself.  Windsor denies all other allegations contained in paragraph 16.

17.     Windsor admits that the Security Agreement, which document, in terms of content and

legal effect, must speak for itself.  Windsor denies the remaining allegations contained in paragraph 17.

18.     Windsor admits that subsequent to Windsor's having loaned to the Trust all of the

monies for premium payments that Windsor was required to provide under the Financing Agreement,

the Trust informed Windsor that the Trust would not repay the loan when due.  Windsor denies the

remaining allegations contained in paragraph 18.

19.     Windsor admits that Predecessor Trustee executed and delivered to Windsor a "Change

of Ownership (Absolute Assignment)" form on or about March 18, 2010.  Windsor denies the

remaining allegations contained in paragraph 19.

20.     Windsor admits that the Security Agreement, which document, in terms of content and

legal effect, must speak for itself.  Windsor denies the allegations contained in paragraph 20.

21.     Windsor admits the allegations contained in paragraph 21.

22.     Windsor denies the allegations contained in paragraph 22.

23.     Windsor admits the allegations contained in paragraph 23.

24.     Windsor admits that the Assignment of Life Insurance Policy as Collateral, which

document, in terms of content and legal effect, must speak for itself.  Windsor denies the remaining

allegations contained in paragraph 24.

25.     Windsor admits that Windsor has unequivocally asserted – and continues to assert,

despite the efforts of the Trust to reach an amicable and informal resolution of this matter – the right to

retain the entire Death Benefit for Windsor's own account.  Windsor denies the remaining allegations

contained in paragraph 25.

26.     Windsor denies the allegations contained in paragraph 26.

27.     Windsor lacks information and belief sufficient to answer the allegations contained in

paragraph 27.  Windsor admits that it advised legal counsel for the Trust that the controlling case of

*ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL*
**CASE NO. 3:14-cv-04651-WHO**

*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828-833, expressly holds that collateral estoppel is not available to a non-party to the arbitration proceeding, even if the arbitration award is later confirmed as a judgment. [*Id.* at 836-37.]

28.     Windsor admits that it is the owner of the Policy due to the Trust's, by and through its Predecessor Trustee, voluntarily execution of a Change of Ownership (Absolute Assignment) for the Policy on March 18, 2010 that transferred ownership and the beneficiary designation of the Policy to Windsor. Windsor further admits that JHUSA registered the Change of Ownership (Absolute Assignment) for the Policy on March 25, 2010 and confirmed the Change of Ownership (Absolute Assignment) for the Policy on May 20, 2010. Windsor denies the remaining allegations contained in paragraph 28.

29.     Windsor admits the allegations contained in paragraph 29.

30.     Windsor admits the allegations contained in paragraph 30.

Paragraphs 1 through 3 on pages 8:23-9:7 of the Cross-Claim set forth the statement of relief requested by Trustee to which no response is required. Windsor denies that Trustee is entitled to any relief requested and denies any allegations contained in the prayer tow which a response is required.

Windsor denies each and every allegation contained in the Cross-Claim not specifically admitted or otherwise responded to above.

**B.      Affirmative Defenses**

1.      As a separate and further affirmative defense, Windsor alleges that Trustee has failed to state a claim for which relief can be granted.

2.      As a separate and further affirmative defense, Windsor alleges that Windsor is the owner and sole beneficiary of the Policy and is therefore entitled to recover the entirety of the Death Benefit plus postmortem interest.

3.      As a separate and further affirmative defense, Windsor alleges that the Trust's Cross-Claim is barred, in whole or in part, by the doctrine of estoppel.

4.      As a separate and further affirmative defense, Windsor alleges that the Trust's Cross-Claim is barred, in whole or in part, by the doctrine of waiver.

-7-

5.      As a separate and further affirmative defense, Windsor alleges that the Trust's Cross-Claim is barred, in whole or in part, by the doctrine of laches.

6.      As a separate and further affirmative defense, Windsor alleges that the Trust's Cross-Claim is barred, in whole or in part, by the doctrine of unclean hands.

7.      As a separate and further affirmative defense, Windsor alleges that the Trust's Cross-Claim is barred, in whole or in part, because Windsor performed all conditions precedent on its part to be performed, except those whose performance has been excused, to be designated as the sole owner and beneficiary of the Policy and is therefore entitled to recover the entirety of the Death Benefit plus postmortem interest.

8.      As a separate and further affirmative defense, Windsor has not knowingly or voluntarily waived any applicable defenses and reserves the right to asset, and rely upon, such additional defenses to the Cross-Claim as may become available or apparent as discovery commences and progresses in this action.

### III.    CROSSCLAIM

Defendant/Cross-Defendant/Cross-Claimant Windsor Securities, LLC, a Nevada limited liability company ("**Windsor**"), by way of Crossclaim against Defendant/Cross-Claimant/Cross-Defendant Mindy Goss as Trustee of the Joe. E. Acker Family Insurance Trust ("**Trustee**"), alleges as follows:

#### The Parties

1.      Joe E. Acker (the "**Insured**"), deceased, was the grantor of the Joe E. Acker Family Insurance Trust (the "**Trust**") and the named insured under the John Hancock Life Insurance Company (U.S.A.) ("**JHUSA**") life insurance policy, Policy No. 93783751 (the "**Policy**").  The Trust was the original beneficiary of the Policy.

2.      Trustee is a resident of the State of Georgia, and the Trust is a Georgia Trust.

3.      Windsor is, and at all relevant times has been, a limited liability company organized and existing under the laws of and domiciled in the State of Nevada.  Windsor is the current owner and beneficiary of the Policy.

**Jurisdiction and Venue**

4. Jurisdiction is based upon 28 U.S.C. section 1332(a)(1), because this Crossclaim is between citizens of different States; 28 U.S.C. section 1367(a), because the Crossclaim is so related to claims in the action that the Crossclaim forms part of the same case or controversy under Article III of the United States Constitution; and 28 U.S.C. section 2201.

5. Venue is based upon 28 U.S.C. section 1391(b) pursuant to the agreements between the parties in which the parties have consented to and specified the United States District Court for the Northern District of California as a venue for disputes arising out of or relating to the agreements.

**Factual Background**

6. The following is based on the following facts alleged on knowledge as to Windsor's own conduct and upon information and belief as to all other matters. This action arises out of a life insurance premium financing transaction between Windsor, the Trust, and the Insured, whereby Windsor made a loan to the Trust for the sole purpose of financing insurance premiums on the Policy, plus related fees, for a specified period, with collateral of all interests in the Policy and related documents and the death benefits payable under the Policy and all proceeds thereof funded by the loan ("**Death Benefit Proceeds**"). Pursuant to the transaction agreement executed with Windsor in 2008, the Trust assigned the Policy to Windsor as collateral security for Windsor's loan to the Trust. The Trust further agreed to the express provision in the Assignment of Life Insurance Policy as Collateral, executed by the trustee of the Trust, that provides:

> **DEFAULT SALE RIGHT**. Upon an occurrence of an Event of Default (as defined in the Agreement) that has not been remedied within the time period required in the Agreement, Assignee shall have the right (the "**Default Sale Right**") but not the obligation to accept, that in consideration of the full and complete satisfaction of the Liabilities (the sufficiency of which consideration is hereby acknowledged) Owner may make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder. Upon the exercise of this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy.

7. The Trust, through its Trustee, was required by the Security Agreement, and the Assignment of Life Insurance Policy as Collateral, following any such default by the Trust, to execute and deliver to Windsor a "Change of Ownership" form and related documents needed by Windsor in

-9-

order to exercise certain of its rights as a secured lender. The Trust agreed under the terms of the Financing Documents, in the event of default on its loan obligations, to make a full transfer and assignment of the Policy to Windsor and to thereby forever relinquish any and all rights the Trust may have to the Policy in consideration of the full and complete satisfaction of its liabilities to Windsor; and covenanted and agreed to take such further action and/or to execute and deliver all further assurances, documents, and/or instruments as may be reasonably requested by Windsor in order to effect, administer, or enforce the transactions contemplated by the transaction agreements. Following the Trust's default under the terms of the transaction agreements, the Trust made a full transfer and assignment of the Policy to Windsor and forever relinquished any and all rights it may have had to the Policy in consideration of the full and complete satisfaction of its liabilities to Windsor. Windsor was substituted in as the sole owner and beneficiary of the Policy. However, in breach of those agreements, the Trust now disputes Windsor's claim on the Policy.

8.     At no time did the Insured, the Trust, Trustee, or anyone else connected to this action object to this transfer and assignment.

9.     Neither the Trust nor anyone else connected to this action other than Windsor has ever taken any steps to pay the Policy premiums or to repay the loan under the financing agreements. Further, at no point did the Insured, the Trust, the Trustee, any representative of the Trust, or anyone else connected to this action object to or otherwise attempt to rescind the form appointing Windsor as the owner and beneficiary of the Policy. As a result, Windsor proceeded to pay all premiums on the Policy and to keep the Policy in force as the outright owner and beneficiary of the Policy.

10.     On April 15, 2014, the Insured passed away.

11.     On or about July 18, 2015, Windsor submitted a Statement of Claim for Death Benefit to JHUSA for the Policy Death Benefit Proceeds. Pursuant to Windsor's designation as owner and beneficiary of the Policy, the Death Benefit Proceeds should have been immediately paid to Windsor.

12.     On or about July 31, 2014, JHUSA wrote to Trustee and Windsor that it had received claim documents from both asserting an entitlement to the Death Benefit Proceeds under the Policy.

13.     Upon the Insured's death, the Trust was obligated to take such further actions and execute any and all further assurances, documents, and instruments to effectuate payment of the Death Benefit Proceeds to Windsor. Instead, the Trust seeks to prevent Windsor from receiving the benefit of

-10-

1   the bargain under the financing agreements.

2   **Count One – Breach of Contract**

3       14.    Windsor repeats and re-alleges each of the foregoing paragraphs 1 through 12 as though

4   fully set forth therein.

5       15.    Upon information and belief, the Trust, acting through Trustee, breached the duties,

6   covenants, terms, representations, and warranties in the financing agreements in numerous ways,

7   including without limitation:

8       a.    interfering, disrupting, and preventing Windsor's receipt of the Death Benefit

9   Proceeds;

10       b.    breaching the covenant of good faith and fair dealing implied in the financing

11   agreements; and

12       c.    failing and refusing to take such further actions and execute any and all further

13   assurances, documents, and instruments to effectuate payment of the Death Benefit Proceeds to

14   Windsor.

15       16.    Upon information and belief, the Trust, through its agents, participated in this conduct to

16   frustrate, delay, and prevent the payment of the Death Benefit Proceeds to Windsor, in violation of the

17   terms of the financing agreements, including without limitation, the covenant of good faith and fair

18   dealing implied in the agreements.

19       17.    As a direct and proximate result of the Trust's breach of the financing agreements,

20   Windsor has suffered injury, damage, loss, and harm in an amount at least $1,000,000.00, representing

21   the full death benefit owed to Windsor as beneficiary of the Policy, plus all additional damages to be

22   proven at trial, that include and are not limited to attorneys' fees, costs, and expenses Windsor incurred

23   and will incur as a result of this action.

24   **Count Two – Declaratory Relief**

25       18.    Windsor repeats and re-alleges each of the foregoing paragraphs 1 through 16 as though

26   fully set forth therein.  By reason of the foregoing, Windsor is entitled to declaratory relief with respect

27   to the Death Benefit Proceeds on the grounds that as between Windsor and the Trust, Windsor has the

28   superior right, title, and interest in and to the Death Benefit Proceeds and that therefore the Death

-11-

1  Benefit Proceeds ought to be preserved for and paid over to Windsor.

2  **Prayer for Relief**

3  **WHEREFORE,** Windsor, having fully responded to JHUSA's Complaint and Trustee's Cross-

4  Claim and asserted its Crossclaims against Trustee, prays for judgment as follows:

5        1.      A judgment in favor of Windsor on all of its Crossclaims;

6        2.      A declaration that Windsor is entitled to receive the entirety of the Death Benefit

7  Proceeds plus postmortem interest interpleaded in this action;

8        3.      An award to Windsor of its damages arising from the Trust's breach of the financing

9  agreements in an amount to be determined at trial;

10        4.      An award to Windsor of its reasonable costs and expenses of litigation, including

11  attorneys' fees and costs; and

12        5.      Such other and further relief as the Court may deem just and proper.

13  **IV.    DEMAND FOR JURY TRIAL**

14      In accordance with Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6(A),

15  Windsor respectfully demands a jury trial of all issues triable to a jury in this action.

16

17                        Respectfully submitted,

18  Dated:  January 23, 2015         THOMPSON, WELCH, SOROKO & GILBERT, LLP

19

20                        By:  /s/ Darin T. Judd
                              Darin T. Judd

21                                Attorneys for Defendant, Cross-Defendant, and
                              Cross-Claimant

22                                WINDSOR SECURITIES, LLC

23

24

25

26

27

28

-12-

*ANSWERS AND CROSSCLAIM OF WINDSOR SECURITIES, LLC; DEMAND FOR JURY TRIAL*
**CASE NO. 3:14-cv-04651-WHO**