# EXHIBIT 44

HENNEFER FINLEY & WOOD, LLP
JOSEPH WOOD  [Calif. SBN 103596]
275 Battery Street, Suite 200
San Francisco, California  94111
Telephone:     (415) 421-6100
Facsimile:      (415) 421-1815
E-Mail:          jwood@hennefer-wood.com; jhcwlaw@yahoo.com

Attorneys for Defendant, Cross-Claimant, and Cross-Defendant,
Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | Civil Action No. 3:14-cv-04651-WHO |
| Plaintiff, | |
| vs. | |
| MINDY GOSS AS TRUSTEE OF THE JOE E. ACKER FAMILY INSURANCE TRUST [incorrectly named herein as the "Joe E. Acker Family Trust"]; and WINDSOR SECURITIES, LLC, | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**

TO THE COURT AND TO THE PARTIES IN THE ABOVE-NAMED ACTION:

PLEASE TAKE NOTICE that at 2:00 pm. on December 2, 2015, in Courtroom 2 of the above-named court, which is located on the 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, defendant, cross-claimant, and cross-defendant, Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust (the "Trust"), will, and hereby does, move the Court for an order granting summary judgment in favor of the Trust, and against defendant and cross-defendant, Windsor Securities, LLC ["Windsor"], on all claims pending by and against the Trust herein. In the alternative, the Trust will, and hereby does, move the Court for an order granting partial summary judgment in favor of the Trust, and against Windsor, on or as to whichever of the following claims, defenses, and/or issues set forth below the Court deems such judgment appropriate: (1) the Trust's claim for declaratory relief brought with reference to the Financing Agreement between the parties; (2) Windsor's claims for declaratory relief and breach of contract brought with reference to the Financing Agreement between the parties; and (3) the newly raised claim of Windsor Securities, LLC that it be granted affirmative relief on the basis of an oral agreement with the Trust allegedly entered into by the parties prior to default.

The motions are brought pursuant to Federal Rules of Civil Procedure, Rule 56(a), on the grounds that, with reference to each motion, there is no genuine dispute as to any material fact and that the Trust is entitled to judgment as a matter of law. The motions are based on this notice, on the memorandum in support attached hereto, on the declarations of Ronald Mark Goss, Joseph Wood, and Eugene Houchins III submitted herewith, on the Court's file in this action, and on such other materials and arguments as may be presented at the hearing on the motions.

DATED: October 27, 2015                          HENNEFER FINLEY & WOOD, LLP


                                                 /s/  Joseph Wood
                                                 Joseph Wood

                                                 Attorneys for Defendant, Cross-
                                                 Claimant, and Cross-Defendant
                                                 Ronald Mark Goss as Trustee of the
                                                 Joe E. Acker Family Insurance Trust

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

**Civil Action No. 3:14-cv-04651-WHO**                                                    1

HENNEFER FINLEY & WOOD, LLP
JOSEPH WOOD  [Calif. SBN 103596]
275 Battery Street, Suite 200
San Francisco, California  94111
Telephone:    (415) 421-6100
Facsimile:     (415) 421-1815
E-Mail:         jwood@hennefer-wood.com; jhcwlaw@yahoo.com

Attorneys for Defendant, Cross-Claimant, and Cross-Defendant,
Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.),

     Plaintiff,

vs.

MINDY GOSS AS TRUSTEE OF THE
JOE E. ACKER FAMILY INSURANCE
TRUST [incorrectly named herein as the
"Joe E. Acker Family Trust"]; and
WINDSOR SECURITIES, LLC,

     Defendants.

_____/

AND RELATED CROSS-ACTIONS.

_____/

Civil Action No. 3:14-cv-04651-WHO

**MEMORANDUM IN SUPPORT OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| I. | RELIANCE UPON PRIOR EVIDENCE AND ORDER | 1 |
| II. | WINDSOR CANNOT NOW DISPUTE THAT THE TRUST DEFAULTED ON THE LOAN AND THAT THE STEPS TAKEN BY WINDSOR TO OBTAIN TITLE TO AND BENEFICIARY STATUS UNDER THE POLICY WERE TAKEN IN RESPONSE TO THAT DEFAULT | 1 |
| III. | IT IS ESTABLISHED THAT THE TRUST'S EXECUTION OF AN ASSIGNMENT DID NOT CONSTITUTE EXERCISE BY THE PARTIES OF THE DEFAULT SALE RIGHT OR OTHERWISE MEET THE REQUIREMENTS OF CALIFORNIA COMMERCIAL CODE § 9620 | 3 |
| IV. | WINDSOR'S PREVIOUSLY UNPLED CLAIM THAT PRIOR TO DEFAULT IT ENTERED INTO AN AGREEMENT WITH THE TRUST WHEREBY THE TRUST WAIVED ALL ITS RIGHTS IN AND TO THE DEATH BENEFIT FAILS AS A MATTER OF LAW | 6 |
| | A. The Alleged Agreement, Were It To Exist, Would Necessarily Be Oral | 7 |
| | B. Rights Created By California Commercial Code § 9620 Cannot Be Waived, And, In Particular, Cannot Be Waived By Oral Agreement | 10 |
| | C. Rights Created By The Financing Agreement Cannot Be Waived By Subsequent Oral Agreement | 11 |
| | D. Windsor, Having Never Spoken With Goss About A "Walkaway" Agreement, Cannot Show The Existence Of An Oral Agreement To That Effect With The Trust | 12 |
| | 1. As A Matter Of Law, Houchins Could Not Have Been Authorized By Goss To Bind The Trust To An Agreement That Would Waive, Abandon, Or Assign The Rights Of The Trust That Had Been Created By The Financing Agreement | 13 |
| | 2. Even If Houchins Could Have Been Authorized By Goss To Bind The Trust To An Agreement That Would Waive, Abandon, Or Assign The Rights Of The Trust That Had Been Created By The Financing Agreement, No Such Authorization Occurred | 13 |

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT

*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                                                      i

**TABLE OF CONTENTS, cont'd**

|  |  |  | Page |
|---|---|---|---|
|  | 3. | Windsor Cannot Show Ostensible Authority | 17 |
|  | E. | Windsor Should Not Be Allowed To Oppose Summary Judgment By Raising For The First Time, In Its Opposition, A Theory Of Recovery Not Found In Its Pleadings | 18 |
| V. |  | THE TRUST IS ENTITLED TO SUMMARY JUDGMENT | 20 |
| VI. |  | THE PARTIES AGREE ON THE AMOUNTS OWED TO WINDSOR FOR REPAYMENT OF MONIES LOANED AND LEGAL INTEREST THEREON | 21 |
| VII. |  | THE CATEGORIES OF COSTS OF COLLECTION FOR WHICH WINDSOR MAY BE ENTITLED TO REIMBURSEMENT PURSUANT TO THE FINANCING AGREEMENT, AND THE AMOUNTS TO WHICH IT MAY BE ENTITLED UNDER EACH SUCH CATEGORY, SHOULD BE DETERMINED BY SUBSEQUENT MOTION | 22 |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*
**Civil Action No. 3:14-cv-04651-WHO**                                                                                                          ii

# TABLE OF AUTHORITIES

Page

**Cases**

*Bank of America, N.A. v. Roberts*
217 Cal. App. 4th 1386 (2013) ..... 13

*Blanken v. Kentucky Highlands Investment Corporation*
2014 Westlaw 800487 (E.D. Kentucky, February 27, 2014) ..... 10

*Chen v. Profit Sharing Plan of Dr. Daniel H. Bohne, D.D.S., P.A.*
216 Ga. App. 878, 456 S.E.2d 237 (1995) ..... 10

*Conroy v. Regents of the University of California*
45 Cal. 4th 1244 (2009) ..... 19

*Davidson, et al. v. ConocoPhillips Company*
2009 WL 2136535 (N.D. Cal., July10, 2009) ..... 12

*Fisher v. Metropolitan Life Insurance Company*
895 F.2d 1073 (5th Cir. 1990) ..... 19, 20

*Gilmour v. Gates, McDonald and Company*
382 F.3d 1312 (11th Cir. 2004) ..... 19

*Gonsalves v. Hodgson*
38 Cal. 2d 91 (1951) ..... 13

*Gulf Insurance Company v. TIG Insurance Company*
85 Cal. App. 4th 422 (2001) ..... 17

*In re Cadiz Properties*
278 B.R. 744 (Bankr., N.D. Tex. 2002) ..... 10

*In re CBGB Holdings, LLC*
439 B.R. 551 (Bankr., S.D.N.Y. 2010) ..... 10

*Isaac v. Waste Management Collection and Recycling, Inc.*
134 Cal. App. 4th 1076 (2005) ..... 11

*Lindsay-Field v. Friendly*
36 Cal. App. 4th 1728 (1995) ..... 17

*Marani v. Jackson*
183 Cal. App. 3d 695 (1986) ..... 12

*People v. Surety Insurance Company*
136 Cal. App. 3d 556 (1982) ..... 18

*Powers v. Ashton*
45 Cal. App. 3d 783 (1975) ..... 13

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*
**Civil Action No. 3:14-cv-04651-WHO** iii

**TABLE OF AUTHORITIES, cont'd**

Page

*Shanahan v. City of Chicago*
   82 .3d 776 (7th Cir. 1996)                                                                19

*Wasco Products, Inc. v. Southwall Technologies, Inc.*
   435 F.3d 989 (9th Cir. 2006)                                                              19

**Statutes**

California Commercial Code § 9602                                                    10, 11, 20

California Commercial Code § 9620                                                 1, 10, 11, 20

Civil Local Rule 56.3                                                                          1

Federal Rules of Civil Procedure, Rule 56(a)                                                  21

Federal Rules of Civil Procedure, Rule 56(g)                                                   1

**Other Authorities**

California Commercial Code § 9620 Uniform
Commercial Code Comment - 2014 Update                                                         10

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

**Civil Action No. 3:14-cv-04651-WHO**                                                         iv

Defendant, cross-complainant, and cross-defendant Ronald Mark Goss ["Goss"], as Trustee of the Joe E. Acker Family Insurance Trust [the "Trust"], respectfully submits the following memorandum in support of the Trust's motion for summary judgment or, in the alternative, for partial summary judgment.

## I. RELIANCE UPON PRIOR EVIDENCE AND ORDER.

In its Minute Order entered September 29, 2015, the Court provided that, with reference to the present motion, "the parties may rely on, but are not limited to, the evidence and Order entered on defendant's motion for summary judgment." (Dkt. No. 72.) The Trust will in this memorandum therefore refer to all such evidence as if it had been filed herewith and to the findings of fact and conclusions of law contained in the Order as having been established. Federal Rules of Civil Procedure, Rule 56(g); Civil Local Rule 56.3.

## II. WINDSOR CANNOT NOW DISPUTE THAT THE TRUST DEFAULTED ON THE LOAN AND THAT THE STEPS TAKEN BY WINDSOR TO OBTAIN TITLE TO AND BENEFICIARY STATUS UNDER THE POLICY WERE TAKEN IN RESPONSE TO THAT DEFAULT.

Perhaps hoping to evade the requirements of California Commercial Code § 9620, Windsor has orally suggested to the Court that Windsor may wish to claim, in opposition to the present motion, that the Trust did not default on the loan and/or that the steps taken by Windsor to obtain title to, and beneficiary status under, the Policy were not taken in response to a default. As the following evidence, argument, and findings already before the Court make clear, any such claim must be rejected out of hand.

> Windsor admits that subsequent to Windsor's having loaned to the Trust all of the monies for premium payments that Windsor was required to provide under the Financing Agreement, the Trust informed Windsor that the Trust would not repay the loan when due.

(Answer And Crossclaim Of Windsor Securities, LLC; Demand For Jury Trial, Dkt. No. 18 [internal pagination ("i.p.") 6:7-9].)

Following the Trust's default under the terms of the transaction agreements, the

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                    1

Trust made a full transfer and assignment of the Policy to Windsor and forever relinquished any and all rights it may have had to the Policy in consideration of the full and complete satisfaction of its liabilities to Windsor.

(Answer And Crossclaim Of Windsor Securities, LLC; Demand For Jury Trial, Dkt. No. 18, p. 10 of 12 [i.p. 10:7-10].)

After Windsor was informed the Insurance Trust would not pay the loan when due, it elected to exercise the Default Sale provision in the Premium Financing Agreement.

(Declaration Of Steven Prusky In Support Of Windsor Securities, LLC's Motion For Summary Judgment, Or, In The Alternative, Partial Summary Judgment, Dkt. No. 30-2, p. 2 of 146 [i.p. 3:4-5].)

  B. Admittedly an Event of Default Occurred Triggering Windsor's Rights Under the DSR.

(Windsor Securities, LLC's Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment, Or, In The Alternative, Partial Summary Judgment, Dkt. No. 30-1, p. 7 of 21 [i.p. 4:9].)

It is indisputable that the Insurance Trust breached and defaulted on its obligation to repay Windsor, triggering Windsor's rights under the DSR.

(Windsor Securities, LLC's Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment, Or, In The Alternative, Partial Summary Judgment, Dkt. No. 30-1, p. 8 of 21 [i.p. 5:2-3].)

The Trust defaulted under the terms of the PFA . . . .  It subsequently entered into an agreement with Windsor in which the Trustee, Ronald Mark Goss, signed an "Absolute/Gift Assignment - Life Insurance" form (the "Assignment") that transferred ownership of the Policy to Windsor.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 3 of 11 [i.p. 3:5-9].)

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*
**Civil Action No. 3:14-cv-04651-WHO**  2

**III. IT IS ESTABLISHED THAT THE TRUST'S EXECUTION OF AN ASSIGNMENT DID NOT CONSTITUTE EXERCISE BY THE PARTIES OF THE DEFAULT SALE RIGHT OR OTHERWISE MEET THE REQUIREMENTS OF CALIFORNIA COMMERCIAL CODE § 9620.**

The Court ruled:

> There are no material facts in dispute. This case turns on whether the Trust executed a valid DSR that assigned Windsor all rights to the death benefits in the insurance policy. The Trust does not dispute that it executed the Assignment, or that it defaulted under the terms of the PFA.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 5 of 11 [i.p. 5:9-11].)

> Windsor moved for summary judgment, claiming that the Assignment constituted an exercise of the DSR and that it was entitled to the full amount of the death benefits.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 4 of 11 [i.p. 4:5-6].)

> It is undisputed that the Assignment itself does not contain any language that the transfer of ownership satisfies the Trust's liabilities under the PFA.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 7 of 11 [i.p. 7:6.5-7.5].)

> Under California law, interpretation of a contract and the determination of whether it is ambiguous "is a question of law that must be decided by the court." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979). The court looks to extrinsic evidence in determining whether the contract is ambiguous, but cannot consider such evidence if "the language of the contract is not reasonably susceptible of interpretation and is unambiguous." *Id.* In such circumstances, the case may be disposed of by summary judgment. *Id.*

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, pp. 4-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                      3

5 of 11 [i.p. 4:22-5:2].)

> In interpreting a contract, the court must look to the mutual intent of the parties, looking at the writing alone if possible. CAL. CIV. CODE § 1639; *see also S. California Rehab. Associates, Inc. v. Nautilus, Inc.*, 782 F. Supp. 2d 1096, 1110 (S.D. Cal. 2011). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." CAL. CIV. CODE § 1638.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 5 of 11 [i.p. 5:3-7].)

> That said, after considering all of the extrinsic evidence offered, I find that the PFA and the Assignment are unambiguous and not reasonably susceptible to multiple interpretations. Their terms are clear and the parties' proffered explanations either contradict those clear terms or are not relevant. Therefore, any extrinsic evidence that contradicts the clear terms of the contract is irrelevant and will not be considered.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 6 of 11 [i.p. 6:3-7].)

> Section 9620 requires an *agreement* "to the terms of the acceptance in a record authenticated after default." An agreement is not simply a transfer. Section 9602 [*sic*] requires that the agreement include the terms of the acceptance "of collateral in full satisfaction of the obligation it secures." Because the Assignment does not reflect any agreement to transfer the collateral in exchange for a satisfaction of the Trust's obligations, the Trust cannot be considered to have consented under section 9620.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 7 of 11 [i.p. 7:17.5-22.5].) [Italics in original.]

> In addition, section 9620 provides that a debtor's consent to acceptance of

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                                    4

collateral must be made in an agreement *after default*. The statute repeatedly uses the language of a "record authenticated after default." This is made clear because an agreement to any terms before default would constitute an improper waiver of the rights in section 9620(b). Thus, any construction of the DSR as requiring the Trust to transfer the policy to Windsor in full satisfaction of its obligations pre-default would violate section 9602. [FN omitted.] By its plain terms, the assignment does not satisfy section 9620.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 8 of 11 [i.p. 8:2-8].) [Italics in original.]

Windsor is also incorrect in asserting that the Assignment was simply an execution of the DSR. The DSR allows Windsor to request, "in consideration of the full and complete satisfaction of the Liabilities . . . [that the Trust] make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder." [Citation omitted.] Again, although the Assignment makes a full assignment of the policy to Windsor, it does not provide that the transfer of title or change in beneficiary was in "consideration of the full and complete satisfaction of the Liabilities." Just as the lack of such language fails to satisfy the requirements of section 9620, it also fails to satisfy the requirements of the DSR as defined in the PSA [*sic*]. Without such language or any reference to the DSR, it is not clear that the document the Trust signed was the DSR. It would contravene the laws of contract interpretation, and common sense, to read the terms of the DSR into the Assignment when neither the DSR nor its terms were mentioned or in any way incorporated in the Assignment.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 8 of 11 [i.p. 8:9-21].)

[E]ven assuming the PFA did not require the Assignment in order for Windsor to foreclose after default, Windsor would not be relieved of its obligation to comply with California law.  That Windsor [*sic*] did not need to execute the Assignment does not change the fundamental fact that the Assignment does not discharge the obligations of the Trust under the PFA.  Windsor's argument contravenes the statute's purpose of protecting both creditors and debtors from strict foreclosure without a clear understanding of the legal consequences.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, pp. 8-9 of 11 [i.p. 8:25-9:6].)

As discussed above, the language of the Assignment is unambiguous.  It is not proper or necessary to consider any extrinsic evidence that shows a contradictory intent.  [Citations omitted.]  Similarly, Windsor's argument that there was a separate offer and acceptance that satisfies section 9620, raised for the first time at the motion hearing, fails because section 9620 requires a writing that contains the terms of acceptance.

(Order Granting In Part And Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 9 of 11 [i.p. 9:9-16].)

## IV. WINDSOR'S PREVIOUSLY UNPLED CLAIM THAT PRIOR TO DEFAULT IT ENTERED INTO AN AGREEMENT WITH THE TRUST WHEREBY THE TRUST WAIVED ALL OF ITS RIGHTS IN AND TO THE DEATH BENEFIT FAILS AS A MATTER OF LAW.

Faced with the Court's ruling that it could not prevail on its theory that the Trust's execution of an assignment document had constituted exercise of the Default Sale Right under the Financing Agreement - *i.e.*, that it could not prevail on the only theory of recovery set forth in its pleadings[1] - Windsor now offers a new theory.  According to Windsor, it entered with the Trust into another agreement, prior to default, under which the Trust, in return for a "walkaway,"

---

[1]  *See* Answer And Crossclaim Of Windsor Securities, LLC; Demand For Jury Trial, Dkt. No. 18, generally.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

voluntarily waived whatever rights it might have in and to the death benefit under the Financing

Agreement.  Thus Windsor has stated to the Court:

> This motion does not address whether the Insurance Trust voluntarily assigned the
> death benefits to Windsor pre-default, but Windsor does not waive that issue.

(Windsor Securities, LLC's Memorandum Of Points And Authorities In Support Of Motion For

Summary Judgment, Or, In The Alternative, Partial Summary Judgment, Dkt. No. 30-1, p. 8 of 21

[i.p. 5:27-28].)

> Fact discovery in the Acker and Collins cases will show that all the trustees were
> told and understood that a mutual walk away was an option that Windsor was okay
> with and agreed to the terms of a mutual walk away, prior to default . . .

(Further Joint Case Management Statement,[2] Dkt. No. 69, p. 6 of 12 [i.p. 5:15-17].)

Windsor's new theory fails as a matter of law, on multiple grounds.

**A.    The Alleged Agreement, Were It To Exist, Would Necessarily Be Oral.**

As the Court is aware, Windsor has not offered a single document even arguably

comprising a written agreement executed by the Trust, either before or after default, under which

the Trust waived all rights in and to the death benefit in return for a forgiveness of the loan by

Windsor.  The reason for that failure is straightforward:  No such document exists.  The Trust

served on Windsor a comprehensive request for documents - including, but not limited to,

requests for all documents comprising or referring to any communications and/or any agreements

between Windsor, on the one hand, and either Goss, the Trust, Mindy Goss, the Insured, the

beneficiary of the Trust, Eugene Houchins III, or any agents of any of those persons or entities, on

the other.  (Declaration Of Joseph Wood In Support Of Motion For Summary Judgment Or, in

The Alternative, For Partial Summary Judgment, filed herewith ["Wood Decl."], 1:6-2:17.) In

response to that request, Windsor produced:

> (a)    no document in which Windsor at any time offered to forgive Windsor's
> loan to the Trust in return for the Trust's agreement to waive, abandon, or assign:

---

[2] Despite the term "Joint" in the title, the document was composed solely by Windsor.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                      7

(i) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit);

(b)    no document in which the Trust, at any time, offered to waive, abandon, or assign:  (i) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit), in return for an agreement by Windsor to forgive the loan.

(c)    no document comprising an agreement under which the Trust would waive, abandon, or assign:  (i) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (ii) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit), in return for Windsor's forgiveness of the loan.

(Wood Decl., 2:18-3:18.)

1   E-mail records in the possession of Eugene Houchins III, comprising communications

2   between Houchins and Windsor, likewise contained no such document.  (Wood Decl., 5:7-6:8.)[3]

3

4       [3]   The Windsor Doc. Prod. does contain a letter from Windsor to Goss dated February 19, 2010,
    which Windsor has claimed is evidence that Goss executed the assignment documents in exchange for

5   forgiveness of the loan but which actually:  (a) makes no mention of any such exchange; and (b) instead
    suggests that Goss signed those documents simply because the Trust, in addition to having defaulted on the

6   loan, was not willing to make any future payments on the policy.  (Windsor Securities, LLC's Surreply
    Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment, Or, In The

7   Alternative, Partial Summary Judgment, Court Doc. 55, page 5 of 7 [i.p. 5:9-19]; Declaration Of Ronald
    Mark Goss In Opposition To Motion For Summary Judgment, Court Doc. No. 38, p. 4 of 143 [i.p. 3:4-14];

8   Exhibit C thereto, p. 137 of 143, Bates. No. GOSS 135.)  Windsor's letter, and Goss's testimony in regard
    thereto, have already been considered by the Court.  (*Id.*)

9
        The Windsor Doc. Prod. also contains a letter sent by Windsor to the Trust in June, <u>2014</u> - four

10  years after the Trust's default on the loan and following Windsor's receipt of an unfavorable ruling from
    the arbitrators in the *Barnes* case - claiming that the Trust's execution of assignment documents in 2010

11  "was in exchange for Windsor's agreement that the assignment of the policy would constitute a complete
    satisfaction and discharge of the loan that Windsor had made to enable you to purchase the policy."  The

12  trust responded with a letter denying that claim.  (Declaration Of Mindy Goss In Opposition To Motion
    For Summary Judgment, Court Doc. No. 39, p. 2 of 12 [internal pagination 1:5-19]; Exhibit A thereto, p. 5

13  of 12, Bates No. GOSS 0267; Exhibit B thereto, pages 7-8 of 12, Bates Nos. GOSS 0128 - GOSS 0129.)
    Windsor's letter, and the Trust's response thereto, have already been considered by the Court.  (*Id.*)

14
        Finally, the Windsor Doc. Prod. also contains an e-mail sent by Windsor to Eugene Houchins III in

15  July, 2014 - again, four years after the Trust's default on the loan and following Windsor's receipt of an
    unfavorable ruling from the arbitrators in the *Barnes* case - claiming that "when the trusts of Acker,

16  Collins, Coppock and Stamatov surrendered the life insurance policies in satisfaction of the premium
    finance loans made by Windsor, Windsor agreed to release the trusts from the loans with no further

17  financial obligation among the parties . . ."  (Declaration Of Eugene Houchins III Submitted In Support Of
    Motion For Summary Judgment Or, In The Alternative, For Partial Summary Judgment ["Houchins

18  Decl."], filed herewith, 3:16-26, and Exhibit A thereto.)  Houchins responded with an e-mail denying that
    claim, as follows:

19
                One thing about your e-mail - I don't think it's correct that "Acker, Collins, Coppock, and

20              Stamatov surrendered the life insurance policies in satisfaction of the premium finance
                loans made by Windsor" or that "Windsor agreed to release the trusts from the loans with

21              no further financial obligations among the parties."  My recollection is that the trusts
                communicated that they weren't willing to pay back the loans, that Windsor took that as a

22              default and demanded signed COO's, and that the trusts complied with that demand.  I
                advised them to comply, just like I did with Barnes, because I thought it was required

23              under the security agreement.  I don't remember any discussion about "surrender" or
                "release."  I've reviewed the correspondence and it seems to confirm my recollection.

24              Maybe I'm missing something.

25  (Houchins Decl., 3:27-4:14, and Exhibit A thereto.)

26
    (Wood Decl., 3:19-5-6.)

27

28  **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
    *John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

    Civil Action No. 3:14-cv-04651-WHO                                                                                   9

1    In summary, the alleged agreement, were it to exist, would necessarily be <u>oral</u>. That fact

2    creates at least three problems for Windsor, each of which is fatal to its claim.

     **B.    Rights Created By California Commercial Code § 9620 Cannot Be Waived, And, In Particular, Cannot Be Waived By Oral Agreement.**

5    As the Court has held, the rights of a debtor created by California Commercial Code §

6    9620 and protected by California Commercial Code § 9602 cannot be waived by an agreement of

7    the parties - whether that agreement is entered into before or after default - except by a <u>writing</u>

8    <u>made after default</u> that either creates or confirms the agreement.  (Order Granting In Part And

9    Denying In Part Motion For Summary Judgment, Dkt. No. 68, p. 8 of 11 [i.p. 8:2-8].)

10   That ruling - amply supported not only by the language of § 9620 but also by authorities

11   interpreting the equivalent section of the UCC[4] - means that Windsor's alleged "pre-default

13   ⁴  *See, e.g.*, *In re Cadiz Properties*, 278 B.R. 744, 748-749 (Bankr. N.D. Tex. 2002) ("Under §
     9.620, Canfina may accept collateral in satisfaction of the debt 'only if' the debtor consents to the
     acceptance under the statutory process.  § 9.620(a).  To consent, the debtor must either agree to the terms
     of the acceptance in a record authenticated 'after default' or the secured creditor must send to the debtor
     'after default' a proposal describing its intention to accept the collateral in satisfaction of the obligation it
     secures."); *In re CBGB Holdings, LLC*, 439 B.R. 551, 554-555 (Bankr., S.D.N.Y. 2010) ("Section 9-620 of
     the Uniform Commercial Code governs strict foreclosure - a procedure through which a secured creditor
     may retain its collateral in full or partial satisfaction of its claim. [Citations.]  The remedy is only
     available if the debtor consents to strict foreclosure *after* it has defaulted.  Thus, for example, the debtor
     cannot consent to strict foreclosure in anticipation of a future default at the time it enters into the
     transaction that creates the debt and the security interest." [italics in original]); *Chen v. Profit Sharing
     Plan of Dr. Donald H. Bohne, D.D.S., P.A.*, 216 Ga. App. 878, 456 S.E.2d 237, 240 (1995) ("[T]he
     condition in the "ADDENDUM" providing for full and complete assignment and transfer of the collateral
     upon default by Chen amounted to nothing more than an unenforceable attempt at predefault waiver of the
     debtor's rights under Article 9 of Georgia's Uniform Commercial Code."); *Blanken v. Kentucky Highlands
     Investment Corporation*, 2014 WL 800487, *7-8 (E.D. Kentucky, February 27, 2014) ("Plaintiff further
     asserts that when LEEP transferred ownership to Blanken, this constituted an acceptance in satisfaction of
     debt (also called strict foreclosure) under section 620.  The court finds this argument unpersuasive. . . . .
     [¶]  [¶]  But Section 620 is only triggered when the debtor offers express consent, and the court could find
     no evidence of LEEP's consent in this case.  For this reason, there is little doubt that the Second Amended
     Lease did not constitute an acceptance in full satisfaction of the debt under Section 620 of New York's
     UCC.")  *See also* Uniform Commercial Code Comment - 2014 Update, which provides:  "**3. Conditions
     to Effective Acceptance**.  Subsection (a) contains the conditions necessary to the effectiveness of an
     acceptance of collateral.  Subsection (a)(1) requires the debtor's consent.  Under subsections (c)(1) and
     (c)(2), the debtor may consent by agreeing to the acceptance in writing after default. . . . .  **5. Secured
     Party's Agreement; No Constructive Strict Foreclosure**. . . . .  A debtor's voluntary surrender of
     collateral to a secured party and the secured party's acceptance of possession of the collateral does not, of
     itself, necessarily raise an implication that the secured party intends or is proposing to accept the collateral

agreement to waive rights under § 9620" - <u>an alleged agreement that Windsor admits was not</u> <u>confirmed in writing after default</u> - would violate California Commercial Code §§ 9602 and 9620 and would therefore be void as a matter of law.

Moreover, <u>Windsor's new theory would fail even if the Court's interpretation of § 9620</u> <u>were to be deemed incorrect</u>, *i.e.*, even if a reviewing court were to hold, as Windsor has repeatedly argued, that a pre-default writing could satisfy § 9620.  This is so because, as noted above, the new alleged "walkway" agreement is necessarily and entirely <u>oral</u>.  And while it might be possible to argue about the <u>timing</u> of the writing required by § 9620, no conceivable interpretation of that statute could allow for the <u>elimination</u> of the writing requirement altogether. *See*, *e.g.*, *Isaac v. Waste Management Collection and Recycling, Inc.*, 134 Cal. App. 4th 1076, 1083 (2005) (words of statute must be given their plain and commonsense meaning and must be construed to accomplish statutory purpose).

### C.  Rights Created By The Financing Agreement Cannot Be Waived By Subsequent Oral Agreement.

Windsor's alleged oral "walkaway" agreement fails, as a matter of law, for another reason. Any such agreement would comprise, by definition, a waiver and/or modification of the rights of the Trust in or to the death benefit under the Financing Agreement.  But the Financing Agreement expressly provides:

> SECTION 7.10.  <u>Amendments.</u>  No amendment, waiver, modification or supplement of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the Lender and the Trust . . . .

(Declaration Of Ronald Mark Goss In Opposition To Motion For Summary Judgment, Dkt. No. 38, p. 32 of 143 [i.p. p. 12, Bates No. GOSS 023]).

It is black-letter law in California that where, as here, a contract expressly requires any waiver or modification of rights thereunder to be in writing, attempts to effect such waiver or

in satisfaction of the secured obligation under this section."

1    modification orally will be deemed a nullity.

2        "A contract in writing may be substantially modified by an oral agreement only if

3        (i) the written contract does not contain an express provision requiring that

4        modification be in writing; and (ii) such oral agreement has been performed by the

5        parties . . ."  [Citation omitted.]

6    *Marani v. Jackson*, 183 Cal. App. 3d 695, 704 (1986).

7        Section 1698(c) allows oral modification of a written contract under two

8        conditions:  first, the oral modification must be supported by new consideration

9        and second, the written agreement must not have a clause that expressly prohibits

10       oral modifications.  *See Conley v. Matthes*, 56 Cal.App.4th 1453, 1464, 66

11       Cal.Rptr.2d 518 (1997) ("Oral modifications of written agreements are precluded

12       only if the written agreement provides for written modification.") (citing *Marani v.*

13       *Jackson*, 183 Cal. App. 3d 695, 704, 228 Cal.Rptr. 518 (1986) (noting that oral

14       modification of a written contract is allowed only if "the written contract does not

15       contain an express provision requiring that modification be in writing")).

16   *Davidson v. ConocoPhillips Company*, 2009 WL 2136536, *4 (N.D. Cal. July 10, 2009).

17       Again, Windsor's "walkaway" theory fails as a matter of law.

18       **D.    Windsor, Having Never Spoken With Goss About A "Walkaway,"
                Cannot Show The Existence Of An Oral Agreement To That Effect**
19       **       With The Trust.**

20       It is undisputed that no one from Windsor ever spoke with Goss about a "walkaway"

21   agreement.  (Declaration Of Ronald Mark Goss In Opposition To Motion For Summary

22   Judgment, Dkt. No. 38, p. 6 of 143 [i.p. 5:2-6:19]; Declaration Of Ronald Mark Goss In Support

23   Of Motion For Summary Judgment Or, In the Alternative, For Partial Summary Judgment, filed

24   herewith ("Goss Decl."], 2:1-10.)  Windsor's theory seems to be that Eugene Houchins III

25   [Houchins"], in telephone conversations with Steven Prusky of Windsor, ostensibly made

26   statements that legally bound the Trust to such an agreement.  That theory fails on both legal and

27   factual grounds.

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

**Civil Action No. 3:14-cv-04651-WHO**                                                              12

1. **As a Matter of Law, Houchins Could Not Have Been Authorized By Goss To Bind The Trust To An Agreement That Would Waive, Abandon, Or Assign The Rights Of The Trust That Had Been Created By The Financing Agreement.**

Because Windsor is now seeking to proceed on the basis of an oral contract not previously mentioned in the action, it bears the burden of proving, among other things, that that contract exists. *Bank of America, N.A, v. Roberts*, 217 Cal. App. 4th 1386, 1392-1393 (2013). Windsor cannot possibly meet that burden because (a) it never spoke to Goss and (b) Houchins could not legally have been authorized to bind the Trust to an agreement that would waive, abandon, or assign the rights of the Trust that had been created by the Financing Agreement. As Windsor argued in its efforts to disqualify Mindy Goss as a party herein, and as the Court found, a trustee cannot delegate his or her powers to another, even by means of a power of attorney. (Order Regarding Real Party In Interest, Dkt. No. 58, p. 2-3 of 4; *see also Gonsalves v. Hodgson*, 38 Cal. 2d 91, 99 (1951) (trustee cannot delegate his powers or duties); *Powers v. Ashton*, 45 Cal. App. 3d 783, 789 (1975) (same rule, to be applied with special force where important property rights are at stake). This means that, as a matter of law, only Goss was empowered to enter into the alleged oral agreement now claimed by Windsor, and any purported oral agreements between Windsor and Houchins simply do not affect the Trust.

2. **Even If Houchins Could Have Been Authorized By Goss To Bind The Trust To An Agreement That Would Waive, Abandon, Or Assign The Rights Of The Trust That Had Been Created By The Financing Agreement, No Such Authorization Occurred.**

Aside from the legal impossibility of Goss's purporting to authorize Houchins to bind the trust to an agreement that would waive, abandon, or assign the rights of the trust that had been created by the Financing Agreement, no facts support the claim that any such purported authorization occured.

Houchins helped to manage the loan and to document the Financing Agreement between Windsor and the Trust. As such, he acted, on an ongoing basis following initiation of the loan, as a kind of middle-man or facilitator between Windsor and the Trust. Thus, for example, he kept

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                 13

track of whether - and reminded Windsor whenever he became aware that - premium payments were at risk of becoming overdue, and assisted Windsor in obtaining documents that it wanted from the Trust and/or the Insured. (Houchins Decl., 1:5-11; Goss Decl., 1:10-20.)

In 2010, shortly before the loan from Windsor to the Trust was due to be repaid, the Trust informed Windsor of the fact that it was not willing to take over premium payments on the Policy and would not repay the loan when due. That fact was communicated to Windsor by Houchins, pursuant to the request of Goss and of the insured, Joe E. Acker [the "Insured"]. Houchins was asked to convey that fact as a matter of convenience, in that he had the kind of ongoing relationship with Windsor described above. (Houchins Decl., 1:12-17; Goss Decl., 1:10-20.)

After - and only after - the fact that the Trust was not willing to take over premium payments on the Policy and would not repay the loan when due had been communicated to Windsor, Windsor began demanding that Goss execute, on behalf of the Trust and pursuant to the terms of the Financing Agreement, the assignment documents that, in Houchins' and Goss's lay understanding, would allow Windsor, subject to its continuing obligations to the Trust under the Financing Agreement, to take title to, and beneficiary status under, the Policy. Houchins assisted Windsor in obtaining those documents from Goss. (Houchins Decl., 1:18-24; Goss Decl., 1:21-27.)

Houchins and Goss are informed and believe that Windsor is now claiming that at some point, either prior to or after the Trust's having informed Windsor that it was not willing to take over premium payments on the Policy and would not repay the loan when due, Houchins - purportedly acting as the agent of the Trust - entered into an oral agreement with Windsor under which the Trust, in return for Windsor's agreement to forgive the loan, would waive, abandon, or assign: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*,

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                                                                              14

premium payments, interest, and reasonable expenses connected with collecting the death benefit). Houchins and Goss both state that any such claim is false. (Houchins Decl., 1:25-2:9; Goss Decl., 2:11-22.)

As noted above, Houchins at all relevant times acted as a kind of middle-man or facilitator between Windsor and the Trust. Goss never said or did anything to suggest to Houchins - and never said or did anything to suggest to Windsor - that Houchins had been authorized to act as an agent of the Trust capable of committing the Trust to an agreement of any kind, much less to one that would waive, abandon, or assign the rights of the Trust that had been created by the Financing Agreement. Nor, so far as Houchins is aware, did Houchins ever say or do anything to suggest to Windsor that he possessed such authority. (Houchins Decl., 2:10-16; Goss Decl., 2:23-3:2.)

Windsor never inquired of Goss whether Houchins had been authorized to act as an agent of the Trust capable of committing the Trust to an agreement of any kind, much less to one that would waive, abandon, or assign the rights of the Trust that had been created by the Financing Agreement. (Goss Decl., 3:2-7.)

Windsor never communicated to Houchins, and Houchins therefore - by definition - never communicated to Goss, that Windsor was offering to forgive the loan if the Trust would waive, abandon, or assign: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit). (Houchins Decl., 2:17-25; Goss Decl., 3:8-15.)

Goss never asked Houchins to communicate to Windsor that, if Windsor would forgive the loan, the Trust would waive, abandon, or assign: (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and

reasonable expenses connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).  (Houchins Decl., 2:26-3:6; Goss Decl., 3:16-23.)

Houchins never communicated to Windsor that the Trust, in return for Windsor's agreement to forgive the loan, would waive, abandon, or assign:  (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit), and never purported to enter into an agreement to that effect on behalf of the Trust.  (Houchins Decl., 3:7-15.)

Houchins never communicated to Goss that he had purported to commit the Trust to an agreement under which the Trust, in return for Windsor's agreement to forgive the loan, would waive, abandon, or assign:  (a) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of a public or private sale of the Policy remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting the death benefit).  (Goss Decl., 3:24-4:5.)

Windsor never communicated to Goss that Houchins had purported to commit the Trust to an agreement under which the Trust, in return for Windsor's agreement to forgive the loan, would waive, abandon, or assign:  (a) the right of the Trust, pursuant to the Financing Agreement, to

receive any proceeds of a public or private sale of the Policy remaining after Windsor had been

paid what it was owed on the loan (*viz.*, premium payments, interest, and reasonable expenses

connected with the sale); and/or (b) the right of the Trust, pursuant to the Financing Agreement, to

receive any proceeds of the death benefit remaining after Windsor had been paid what it was owed

on the loan (*viz.*, premium payments, interest, and reasonable expenses connected with collecting

the death benefit).  (Goss Decl., 4:6-14.)

      In short, there is simply no factual basis upon which Windsor could ground a claim that

Houchins, acting as an agent of the Trust, orally bound the Trust to an agreement of any kind,

much less to one that would waive, abandon, or assign the rights of the Trust that had been created

by the Financing Agreement.

### 3.      Windsor Cannot Show Ostensible Authority.

      Faced with the facts set forth above - facts which effectively preclude Windsor from

establishing that Houchins had actual authority to bind the Trust to the oral "walkaway"

agreement claimed by Windsor - Windsor may claim that Houchins had "ostensible" authority to

do so.  *See Lindsay-Field v. Friendly*, 36 Cal. App. 4th 1728, 1734 (1995) ("In the absence of

showing ostensible authority, persons dealing with an assumed agent are bound at their peril to

ascertain the extent of the agent's authority.")

      Any such claim would, again, fail as a matter of law, for the simple reason that - as the

undisputed facts have shown - <u>Windsor did not speak with Goss</u> about a walkaway.  It necessarily

follows that any notions Windsor may have had about Houchins' ostensible authority in that

regard were grounded entirely on the words or actions of <u>Houchins</u>.  Such grounds simply will not

suffice.  It is well settled in California that:

> To establish ostensible authority in an agent, it must be shown the principal,
> intentionally or by want of ordinary care has caused or allowed a third person to
> believe the agent possesses such authority."  [Citations omitted.] [¶]  [¶]
> <u>Ostensible authority must be established through the acts or declarations of the</u>
> <u>principal and not through the acts or declarations of the agent</u>.  [Citation omitted.]

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

**Civil Action No. 3:14-cv-04651-WHO**            17

*Gulf Insurance Company v. TIG Insurance Company*, 86 Cal. App. 4th 422, 439 (2001). [Emphasis added.]

Equally important, Windsor, as noted above, never bothered to inquire of Goss whether Houchins had been authorized to act as an agent of the Trust capable of committing the Trust to an agreement of any kind, much less to one that would waive, abandon, or assign the rights of the Trust that had been created by the Financing Agreement. (Goss Decl., 3:2-7.) That failure creates yet another bar to any claim of "ostensible authority."

> Moreover, it is well established that before recovery may be had against a principal for the act of an ostensible agent, the third person in relying on the agent's apparent authority must not be guilty of negligence. [Citation omitted.] Here, the Los Angeles County Clerk's office was patently negligent in failing to check its own records when it accepted the appeal bond for filing in 1979. If it had done so, it would have found the 1977 revocation of Jones' authority.

*People v. Surety Insurance Company*, 136 Cal. App. 3d 556, 562 (1982).

Windsor had Goss's contact information. (Declaration Of Ronald Mark Goss In Opposition To Motion For Summary Judgment, Dkt. No. 38, Ex. A, p. 12 of 143 [i.p., p. 3; Bates No. GOSS 0003].) It would have been a simple matter for Windsor to send Goss a letter asking about Houchins' status and authority. Windsor's failure to do so was at least as "patently negligent" as the failure of the clerk's office in *Surety Insurance*, *supra*, to check its records, and Windsor cannot make out a claim of ostensible authority.

**E.  Windsor Should Not Be Allowed To Oppose Summary Judgment By Raising For The First Time In Its Opposition A Theory Of Recovery Not Found In Its Pleadings.**

It is undisputed that Windsor, in its pleadings and in the joint case management statement filed with the Court on January 13, 2015, grounded its claim for recovery herein solely on the theory that the Trust had defaulted on the loan and that the parties had thereafter exercised the Default Sale Right. (Answer And Crossclaim Of Windsor Securities, LLC; Demand For Jury Trial, Dkt. No. 18, generally; Joint Case Management Statement, Dkt. No. 19, generally; p. 4 of

11 [i.p. 4:4-9; p. 7 of 11 [i.p. 7:19-22].)  Its new theory - that Windsor entered with the Trust, pre-default, into an oral agreement whereby the trust waived all of its rights in and to the death benefit is nowhere mentioned in those filings.  (*Id.*)  Under both California and federal law, Windsor should not be allowed to raise that theory in opposition to the present motion for summary judgment.

> [T]he materiality of a disputed fact is measured by the pleadings . . . .  The Regents accordingly had the burden on summary judgement of negating only those " 'theories of liability as alleged in the complaint' " and were not obligated to " ' " 'refute liability on some theoretical possibility not included in the pleadings,' " ' " simply because such a claim was raised in plaintiff's declaration in opposition to the motion for summary judgment.

*Conroy v. Regents of the University of California*, 45 Cal. 4th 1244, 1254 (2009).

> A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.

*Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

> A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. [¶]  [¶]  Accordingly, Gilmour may not raise a contractual claim in opposition to Gates' summary judgment motion.

*Gilmour v. Gates, McDonald and Company*, 382 F.3d 1312, 1315 (11th Cir. 2004).

> As the district court correctly noted, this claim was not raised in Fisher's second amended complaint but, rather, was raised in his response to the defendant's motion for summary judgment and, as such, was not properly before the court.

*Fisher v. Metropolitan Life Insurance Company*, 895 F.2d 1073, 1078 (5th Cir. 1990).

> Wasco therefore may not toll the statute of limitations based on its allegations of civil conspiracy, which appear for the first time in its response to the summary judgment motion.  "[T]he necessary factual averments are required with respect to each material element of the underlying legal theory. . . . .  Simply put, summary

judgment is not a second chance to flesh out inadequate pleadings." [Citation omitted.]

*Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).[5]

## V.     THE TRUST IS ENTITLED TO SUMMARY JUDGMENT.

The pleadings in this case contain three claims:  (a) the Trust's request for a declaratory judgment that, under the Financing Agreement and applicable sections of the California Commercial Code, the Trust is entitled to recover from the death benefit any surplus remaining after Windsor has been paid the amounts it loaned, ten per cent interest thereon, and reasonable costs of collection; (b) Windsor's request for a declaratory judgment that, under the Financing Agreement and applicable sections of the California Commercial Code, Windsor is entitled to the entirety of the death benefit; and (c) Windsor's claim that, under the Financing Agreement and applicable sections of the California Commercial Code, the Trust's efforts to recover from the death benefit any surplus remaining after Windsor has been paid the amounts it loaned, ten per cent interest thereon, and reasonable costs of collection, comprise a breach of the Financing Agreement.  Except for the costs of collection issue - which should be handled by subsequent motion (see Section VII of this memorandum, below), all factual and legal issues  going to those three claims have already been resolved by the Court in the Trust's favor, and summary judgment should be granted.

Windsor's new "pre-default walkaway agreement" theory changes nothing.  Any such agreement, even if it existed, would necessarily be oral, since Windsor has not produced, and cannot produce, a single document evidencing such an agreement.  An oral pre-default walkaway agreement would violate California Commercial Code §§ 9620, 9602.  Further, any such

---

[5]   Windsor is not helped in this regard by having stated in a footnote in its memorandum in support of summary judgment that "[t]his motion does not address whether the Insurance Trust voluntarily assigned the death benefits to Windsor pre-default, but Windsor does not waive that issue." (Windsor Securities, LLC's Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment, Or, In The Alternative, Partial Summary Judgment, Dkt. No. 30-1, p. 8 of 21 [i.p. 5:27-28].)  Because the issue had never been raised in Windsor's pleadings or joint case management statement, and therefore was not properly before the Court (*Fisher*, *supra*, 895 F.2d at 1078), there was nothing for Windsor to waive.

agreement, being oral, would constitute an impermissible waiver or modification of the Financing Agreement.  Again, because any such agreement would necessarily have been based on conversations with Houchins rather than with Goss, and, because Goss, as a matter of law, could not authorize Houchins to contract on the Trust's behalf, no agreement could have been formed. And finally, because Windsor never alleged the existence of any such agreement in its pleadings or in its original case management statement - *i.e.*, because any such agreement comprises an entirely new theory of recovery - Windsor should be barred from raising it in opposition to a motion for summary judgment.  In short, the "pre-default walkaway agreement" theory fails, on numerous grounds, as a matter of law, and the Trust's motion should be granted.  Federal Rules of Civil Procedure, Rule 56(a).

## VI.  THE PARTIES AGREE ON THE AMOUNTS OWED TO WINDSOR FOR REPAYMENT OF MONIES LOANED AND LEGAL INTEREST THEREON.

On October 2, 2015, pursuant to the order of the Court, the Trust's counsel sent an e-mail to counsel for Windsor, seeking to meet and confer as to (a) the principal amount, and interest due, in connection with Windsor's loan to the Trust and (b) the categories of costs of collection to which Windsor claimed entitlement, along with the total amounts claimed for each category. Windsor's counsel responded to that e-mail on October 16, 2015 as follows:

(a)  Loan principal plus interest:

$652,136.36

(b)  Categories of costs of collection to which Windsor claims entitlement:

- Legal fees incurred for filing responsive pleadings and motion for partial summary judgment.

- Expert fees incurred for K. Canoff in support of motion for partial summary judgment.

- Legal fees incurred for written discovery.

- Legal fees incurred for depositions of trustee/putative trustee.

-     Legal fees incurred for resolution of trustee issue.

    (c)    Amounts claimed for each category:

    Not provided.

(Wood Decl., 6:9-27, and Exhibit B thereto.)

    The Trust accepts the accuracy of Windsor's calculation of loan principal plus interest. The Trust does not accept that Windsor is entitled to recover, as costs of collection, all costs allegedly incurred under the categories set forth above. (Wood Decl., 7:1-3.)

## VII. THE CATEGORIES OF COSTS OF COLLECTION FOR WHICH WINDSOR MAY OBTAIN BE ENTITLED TO REIMBURSEMENT PURSUANT TO THE FINANCING AGREEMENT, AND THE AMOUNTS TO WHICH IT MAY BE ENTITLED UNDER EACH SUCH CATEGORY, SHOULD BE DETERMINED BY SUBSEQUENT MOTION.

    In its Minute Order entered September 29, 2015, the Court indicated that it was amenable to determining the categories of costs of collection for which Windsor may be entitled to reimbursement pursuant to the Financing Agreement, and the amounts to which it may be entitled under each such category, by subsequent motion. (Dkt. No. 72.) Because there are factual and legal issues as to the "categories" determination about which the parties strongly disagree, and because Windsor has not yet provided a monetary demand to which the Trust can respond, the Trust respectfully requests that these matters be reserved for determination by the Court in a manner analogous to a post-judgment motion for fees and costs.

DATED:    October 27, 2015        HENNEFER FINLEY & WOOD, LLP

                                /s/  Joseph Wood
                                Joseph Wood

                                Attorneys for Defendant, Cross-Claimant, and Cross-Defendant Ronald Mark Goss as Trustee of the Joe E. Acker Family Insurance Trust

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT
*John Hancock Life Insurance Company (U.S.A.) v. Mindy Goss as Trustee of the Joe E. Acker Family Insurance Trust, et al., and Related Cross-Actions*

Civil Action No. 3:14-cv-04651-WHO                                    22

PROOF OF SERVICE

Joseph Wood declares:

1.   I am over twenty-one years of age and am not a party to the above-named action.

My business address is 275 Battery Street, Suite 200, San Francisco, CA  94111.

2.   On October 27, 2015, in San Francisco, California, I served the attached

NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM IN SUPPORT

on the parties to this action.

3.   Service was made by electronically filing that document with the Court to be

served by operation of the Court's electronic filing and notice system.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true.

DATED:      October 27, 2015


                /s/   Joseph Wood
                   Joseph Wood