# EXHIBIT 57

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC LIFE INSURANCE COMPANY,<br>　　　　　Plaintiff,<br>　　v.<br>MARIA ANA GORDILLO, et al.,<br>　　　　　Defendants. | Case No. 14-cv-03713-WHO<br>**ORDER ON THE TRUST'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 54 |

## INTRODUCTION

This case between cross-defendants Maria Ana Gordillo, acting as Trustee of the Erwin A. Collins Family Insurance Trust ("the Trust"), and Windsor Securities Inc. ("Windsor") involves a dispute over the proceeds of a life insurance policy issued by Pacific Life Insurance Company ("Pacific Life"). The Trust and Windsor entered a premium financing agreement under which Windsor would loan the Trust the amount of money necessary to pay premiums on the policy until a set maturity date, at which point the Trust would repay Windsor the amount of the loan plus interest. The loan was secured by the policy. Shortly before the maturity date, the Trust informed Windsor that it did not intend to repay the loan. When Collins died, this dispute followed.

On September 21, 2015, I denied Windsor's motion for summary judgment, principally on the ground that Windsor had not demonstrated compliance with California Commercial Code § 9620, a California statute governing the disposition of collateral in secured transactions. *See* Dkt. No. 50 ("Prior Order"). Now the Trust moves for summary judgment, arguing that the Prior Order resolved all material factual and legal issues in its favor. Windsor's opposition depends on a theory that Windsor did not plead in its answer to the Trust's crossclaim or in its crossclaim against the Trust, and that contradicts Windsor's position in this case thus far. The law in this circuit is clear that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (internal quotation marks omitted). A party may not "effectively amend its [c]omplaint by raising a new theory . . . in its response to a motion for summary judgment." *La Asociacion de*

*Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). Windsor may not escape summary judgment by reliance on a theory it did not plead. The Trust's motion is GRANTED.[1]

**BACKGROUND**

The basic facts are set out in the Prior Order. I recite them here for ease of reference. Pacific Life issued a life insurance policy on the life of Erwin A. Collins. The policy was owned by the Trust. The Trust entered a Premium Financing Agreement ("PFA") with Windsor. Under the PFA, Windsor agreed to loan the Trust the amount of money necessary to pay premiums on the policy until the "maturity date" approximately 27 months after the date of disbursement of the loan, at which point the Trust would repay Windsor the amount of the loan plus interest. *See* Canoff Decl. ¶ 11 (Dkt. No. 31-4); Prusky Decl. ¶ 4 (Dkt. No. 60).

As part of the PFA, the parties executed an assignment of the policy as collateral. The assignment includes a provision titled "Default Sale Right" ("DSR"), which states as follows:

> DEFAULT SALE RIGHT. Upon an occurrence of an Event of Default (as defined in the Agreement) that has not been remedied within the time period required in the Agreement, Assignee shall have the right (the "Default Sale Right") but not the obligation to accept, that in consideration of the full and complete satisfaction of the Liabilities (the sufficiency of which consideration is hereby acknowledged) Owner may make a full transfer and assignment of the Insurance Policy to Assignee and thereby forever relinquish any and all rights Owner may have thereunder, including without limitation any rights to cash surrender value and/or death benefit provided thereunder. Upon the exercise of this Default Sale Right, Assignee shall notify Insurer in writing and Insurer shall thereafter recognize Assignee as the sole lawful owner of the Insurance Policy.

Gordillo Decl. Ex. A at "Gordillo 0125" (Dkt. No. 40).

Windsor began disbursing funds pursuant to the PFA on April 30, 2008, making the maturity date for the loan July 29, 2010. Prusky Decl. ¶ 5. At some point in early 2010, before the maturity date, the Trust informed Windsor that it did not intend to repay the loan. Gordillo Decl. ¶ 3. The Trust subsequently made no attempt to repay any portion of the loan and did not

---

[1] I am also granting summary judgment against Windsor in *John Hancock (U.S.A.) v. Goss*, No. 14-cv-04651-WHO (N.D. Cal. filed Oct. 17, 2014), a related case involving substantially identical facts, for the same reasons described in this Order.

2

object to Windsor continuing to pay premiums to Pacific Life. On May 11, 2010, Gordillo executed a Pacific Life form titled, "Ownership Name or Beneficiary Change Request" that purported to transfer ownership of the policy to Windsor (the "Assignment"). Prusky Decl. Ex. D (Dkt. No. 60-1).

Windsor continued to pay premiums on the policy. By letter dated June 1, 2014, Windsor wrote to the Trust that the Assignment "was in exchange for Windsor's agreement that the assignment of the policy would constitute a complete satisfaction and discharge of the loan that Windsor had made to enable you to purchase the policy. Accordingly, you no longer have any financial liability to Windsor under that loan." Gordillo Decl. Ex. E. On June 19, 2014, Collins died. By letter dated July 18, 2014, the Trust wrote to Windsor that it was entitled to any excess of the death benefits once Windsor had been paid the amount of the loan plus the interest due. Gordillo Decl. Ex. F.

Windsor and the Trust subsequently both claimed the death benefits due under the policy, prompting Pacific Life to initiate this action by filing a complaint in interpleader pursuant to Federal Rule of Civil Procedure 22. Dkt. No. 1. Windsor moved for summary judgment, claiming that the Assignment constituted an exercise of the DSR and that it was entitled to the full amount of the death benefits. Dkt. No. 31. In the alternative, Windsor sought partial summary judgment establishing that it was entitled at least to the amount of the loan plus interest and reasonable costs of collection. *Id.*

I issued the Prior Order on September 21, 2015. Dkt. No. 50. I held that Windsor had not shown that the purported transfer of ownership of the policy satisfied the requirements of California Commercial Code § 9620. Under section 9620, "a secured party may accept collateral in full or partial satisfaction of the obligation it secures only if [certain] conditions are satisfied," including that "[t]he debtor consents to the acceptance under [section 9620(c)]." Cal. Com. Code § 9620(a)(1). Under section 9620(c)(2),

> (2) [a] debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default or the secured party does all of the following:

3

>    (A) Sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained.
>
>    (B) In the proposal, proposes to accept collateral in full satisfaction of the obligation it secures.
>
>    (C) Does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.

Cal. Com. Code § 9620(c)(2). The rights provided by Cal. Com. Code § 9620 cannot be waived or varied. *See* Cal. Com. Code § 9602 ("[T]o the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in . . . section 9620.").

I held that neither the Assignment itself, nor the Assignment in combination with the DSR, constituted an agreement "to the terms of the acceptance [of the collateral in full satisfaction of the obligation it secures] in a record authenticated after default." Cal. Com. Code § 9620(c)(2). Accordingly, I denied Windsor's motion for summary judgment. Prior Order at 6-9. In light of the Trust's admission in its answer that "Windsor is a secured lender and is entitled to retain from the [policy's death benefits] only a sum equal to the amounts Windsor has loaned to the Trust, plus legal interest thereon, plus Windsor's reasonable expenses," Dkt. No. 16 ¶ 28, I granted partial summary judgment for Windsor on the amount of the loan, plus ten percent interest and reasonable costs of collection. Prior Order at 10.

I thought that the Prior Order would resolve this action, but Windsor disagreed. Following a telephonic case management conference on September 29, 2015, I directed the Trust to file a motion for summary judgment. Dkt. No. 53. I allowed the parties to raise new issues but instructed them to avoid rearguing ones that had already been directly addressed in their prior motions.[2] *Id.*

The Trust filed its motion for summary judgment on October 27, 2015. Dkt. No. 54

---

[2] On September 4, 2015, approximately three weeks after oral argument on Windsor's motion for summary judgment, I denied the parties' stipulation to extend fact and expert discovery and ordered a discovery stay pending issuance of the Prior Order. Dkt. No. 49. I left the discovery stay in place following the telephonic case management conference on September 29, 2015, stating that I would provide direction as to further discovery necessary to resolve any trailing issues not disposed of by the ruling on the Trust's motion for summary judgment. Dkt. No. 53.

4

("Mot."). The motion seeks an order granting summary judgment on "all claims pending by and against [the Trust]," or, in the alternative, an order granting partial summary judgment (1) for the Trust on its claim for declaratory relief, and/or (2) against Windsor on its claim that it is entitled to relief based on an oral agreement entered by the parties before the Trust defaulted on the loan. Mot. at 1.[3] The Trust's basic position is that all material factual and legal issues were resolved in its favor in the Prior Order, entitling it to summary judgment on its declaratory relief cause of action and on the claims pending against it.

Windsor argues that summary judgment cannot be entered because a genuine factual dispute remains over whether the parties entered an oral "walk-away agreement" before default, "as a result of which [Windsor] obtained clean title to the life insurance policy at issue and all benefits thereunder." Opp. at 1 (Dkt. No. 61). Although it is not completely clear when Windsor believes that the parties negotiated and/or entered this agreement, its position appears to be that the agreement was consummated with the Assignment on May 11, 2010. *See, e.g., id.* at 2-3. I heard argument from the parties on December 2, 2015. Dkt. No. 69.[4]

### LEGAL STANDARD

A party is entitled to summary judgment where it shows that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v.*

---

[3] The Trust's crossclaim against Windsor contains a single cause of action for declaratory relief. Specifically, the Trust seeks a judicial determination that: (1) "Windsor is not the outright owner of the Policy and is not entitled to . . . retain the entire Death Benefit." (2) "Windsor is a secured lender and is entitled to retain from the Death Benefit only a sum equal to the total of the amounts Windsor loaned to the Trust, plus legal interest thereon, plus Windsor's reasonable expenses, if any exist, incurred in collecting or enforcing the Policy collateral." (3) "The Trust is entitled to the portion of the Death Benefit remaining after that sum has been paid to Windsor." Dkt. No. 16 at 9. Windsor's crossclaim against the Trust contains one cause of action for breach of contract and another for declaratory relief. Dkt. No. 20 at 7-8. Under the declaratory relief cause of action, Windsor states that it "is entitled to declaratory relief with respect to the Death Benefit Proceeds on the grounds that as between Windsor and the Trust, Windsor has the superior right, title, and interest in and to the Death Benefit Proceeds and that therefore the Death Benefit Proceeds ought to be preserved for and paid over to Windsor." *Id.* at 8.

[4] The Trust makes various evidentiary objections to the materials submitted by Windsor in opposition to the motion for summary judgment. *See* Dkt. No. 64. In light of the rulings in this Order, the objections are OVERRULED AS MOOT.

5

1  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the
2  outcome of the case. *Id.*

3  The moving party has the initial burden of informing the court of the basis for its motion
4  and identifying those portions of the record that demonstrate the absence of a genuine dispute of
5  material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has
6  made this showing, the burden shifts to the nonmoving party to identify specific evidence showing
7  that a material factual issue remains for trial. *Id.* The nonmoving party may not rest on mere
8  allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the
9  record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The
10 nonmoving party need not show that the issue will be conclusively resolved in its favor.
11 *Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to
12 create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties'
13 differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving
14 party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law
15 because the nonmoving party has failed to make a sufficient showing on an essential element of
16 her case." *Celotex*, 477 U.S. at 323.

17 On summary judgment, the court draws all reasonable factual inferences in favor of the
18 nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the
19 evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a
20 judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute and
21 is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594
22 F.2d 730, 738-39 (9th Cir. 1979).

### DISCUSSION

24 The Trust is entitled to summary judgment. Windsor's opposition hinges on the May 10,
25 2011 Assignment, which Windsor now characterizes as the consummation of an oral "walk-away

6

agreement" the parties entered into before default.[5]  In the Prior Order, I held that the Assignment does not establish a legal surrender of the life insurance policy, because the Assignment does not reflect an agreement to accept collateral in full or partial satisfaction of the Trust's obligations under the PFA, as required by section 9620.  *See* Prior Order at 7-9; Cal. Com. Code § 9620(a)(1), (c)(2).  Windsor attempts to evade the Prior Order and section 9620 by arguing that the Trust had not defaulted on the loan at the time of the Assignment, and that section 9620 does not apply to walk-away agreements of the sort alleged here entered into before default.  Windsor then points to a hodgepodge of highly attenuated evidence of the alleged oral walk-away agreement, arguing that there is a genuine dispute of material fact over the existence of the agreement that must be resolved at trial.

The dispositive problem with Windsor's reliance on this alleged oral walk-away agreement is that Windsor did not plead it.  Windsor's crossclaim against the Trust specifically refers to "the Trust's default" under the PFA, alleging that "[f]ollowing the Trust's default under the terms of the [PFA], the Trust made a full transfer and assignment of the [policy] to Windsor and forever relinquished any and all rights it may have had to the policy in consideration of the full and complete satisfaction of its liabilities to Windsor."  Windsor's Crossclaim ¶ 6 (Dkt. No. 20).  That, of course, is the issue Windsor raised in its motion for summary judgment and lost in the Prior Order.  Windsor's crossclaim makes no reference to any pre-default walk-away agreement, oral or otherwise, and "the Trust's default" under the PFA before the date of the Assignment is squarely at odds with Windsor's walk-away agreement theory.

Windsor's answer to the Trust's crossclaim likewise makes no reference to any oral walk-away agreement between the parties.  Windsor emphasizes now that it did not specifically admit in its answer that the Trust defaulted under the PFA.  *See* Opp. at 23-24.  The Trust's crossclaim

---

[5] At certain times during oral argument, Windsor appeared to retreat from the theory that there was an oral agreement preceding the Assignment and to rely instead on the Assignment alone as the alleged pre-default "walk-away agreement" entitling it to policy proceeds.  To the extent that Windsor means to make this argument, it fails.  Windsor did not make the argument in its opposition brief and, in any event, offers no explanation of how the Assignment on its own could be reasonably characterized as an agreement to exchange the Trust's liability under the PFA for the Trust's interest in the policy proceeds.

7

alleges in relevant part:

> 10. The insured under the Policy was [Collins]. The owner and beneficiary of the Policy was and is the Trust.
>
> [ . . . ]
>
> 17. The Trust, through Gordillo as Trustee, was required by the Security Agreement, following any such default by the Trust, to execute and deliver to Windsor a "Change of Ownership" form [ – i.e., the Assignment – ] and related documents needed by Windsor in order to exercise certain of its rights as a secured lender . . . Neither the terms of the Security Agreement, nor any other portion of the [PFA], provided that execution of those documents by Gordillo as Trustee would make Windsor the outright owner of the Policy. Further, neither the terms of the Security Agreement, nor any other portion of the [PFA], provided that execution of those documents by Gordillo as Trustee would entitle Windsor either to the entirety of the Death Benefit under the Policy or to any other amount in excess of the sum due to Windsor in its capacity as a secured lender . . .
>
> 18. Subsequent to Windsor's having loaned to the Trust all of the monies for premium payments that Windsor was required to provide under the [PFA], the Trust informed Windsor that the Trust would not repay the loan when due. The Trust thereby committed an anticipatory breach of, and default under, the [PFA], entitling Windsor, pursuant to the Security Agreement and to California law governing secured transactions like the one here at issue, to [relief].

Trust's Crossclaim ¶¶ 10, 17-18 (Dkt. No. 16). Windsor's answer responds to paragraphs 10, 17, and 18 of the Trust's crossclaim as follows:

> 10. Windsor admits that the insured under the Policy was [Collins]. Windsor admits that the initial owner and beneficiary of the Policy was the Trust. Windsor further admits that the Trustee voluntarily executed an Ownership Change Request for the Policy [– i.e., the Assignment – ] on May 11, 2010 that transferred ownership of the Policy to Windsor. Windsor further admits that Pacific Life confirmed the Ownership Change Request for the Policy through the servicing producer Eugene Houchins on or about May 25, 2010. Windsor further admits that on August 26, 2010, as owner of the Policy, Windsor changed the beneficiary of the Policy to Windsor. Windsor further admits that Pacific Life confirmed the change of beneficiary of the Policy through the servicing producer Eugene Houchins on or about September 1, 2010. Windsor denies that the owner and beneficiary of the Policy is the Trust.
>
> [ . . . ]
>
> 17. Windsor admits that the Security Agreement, which document, in terms of content and legal effect, must speak for itself. Windsor denies the remaining allegations contained in paragraph 17.

8

> 18. Windsor admits that subsequent to Windsor's having loaned to the Trust all of the monies for premium payments that Windsor was required to provide under the [PFA], the Trust informed Windsor that the Trust would not repay the loan when due. Windsor denies the remaining allegations contained in paragraph 18.

Windsor's Answer to Crossclaim ¶¶ 10, 17-18 (Dkt. No. 21).

As Windsor contends, this exchange shows that Windsor did not specifically admit that the Trust defaulted under the PFA. But that is not the same as pleading the alleged oral walk away agreement. The exchange makes no reference to such an agreement and gives no notice that Windsor would be depending on such an agreement as a theory of recovery. Moreover, while Windsor did not specifically admit in its answer that the Trust had defaulted under the PFA, it specifically alleged in its crossclaim that the Trust had done so. *See* Windsor's Crossclaim ¶ 6.[6]

Windsor's complete failure to plead the oral walk-away agreement it now rests its case on is fatal. "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products*, 435 F.3d at 992 (internal quotation marks omitted). A party may not "effectively amend its [c]omplaint by raising a new theory . . . in its response to a motion for summary judgment." *Lake Forest*, 624 F.3d at 1089; *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court.").[7] While an oral agreement "may be pleaded generally as to its effect, because it is rarely possible to allege the exact words," *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 616 (1993); *accord*

---

[6] It is also worth noting that Windsor never raised its walk-away agreement theory in a Joint Case Management Statement, where it was required to describe the facts of the case and the principal factual and legal issues in dispute. To the contrary, the Joint Case Management Conference Statement filed on January 13, 2015 describes Windsor's position as follows: "Windsor contends that, pursuant to the terms of the [PFA], and, in particular, the Security Agreement and the Collateral Assignment contained therein, and based upon the agreements and actions taken by the Trust following default, that Windsor is the outright owner of the Policy and is entitled to receive and retain the entire Death Benefit for its own account." Dkt. No. 27 at 7.

[7] This rule applies with equal force to an inadequately pleaded affirmative defense. *See, e.g., Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1130 (N.D. Cal. 2010); *Samuel, Son & Co. Inc. v. Sierra Stainless, Inc.*, No. 09-cv-00291, 2010 WL 4237993, at *5 (D. Nev. Oct. 19, 2010).

*Scolinos v. Kolts*, 37 Cal. App. 4th 635, 640 (1995), Windsor cites no authority indicating that an oral agreement need not be pleaded at all.

In addition to the walk-away agreement theory, Windsor makes a last-ditch argument that it satisfied the requirements of section 9620 through the letter it sent to the Trust in June 2014. *See* Opp. at 22-23. The letter states in relevant part:

> Pursuant to the [PFA] signed by you and according to our records, on May 11, 2010 you assigned the policy listed above to Windsor. You may recall that this voluntary assignment of the policy was in exchange for Windsor's agreement that the assignment of the policy would constitute a complete satisfaction and discharge of the loan that Windsor had made to enable you to purchase the policy. Accordingly, you no longer have any financial liability to Windsor under that loan.

Gordillo Decl. Ex. E. The trust responded by letter dated July 18, 2014, stating that it was entitled to any excess of the death benefits once Windsor had been paid the amount of the loan plus interest. Gordillo Decl. Ex. F.

A secured party complies with section 9620 when it (A) "[s]ends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;" (B) "[i]n the proposal, proposes to accept collateral in full satisfaction of the obligation it secures; and (C) "[d]oes not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent." Cal. Com. Code § 9620(c)(2)(A)-(C). Windsor contends that because the Trust did not respond to the June 2014 letter within 20 days, these conditions were satisfied. Opp. at 22-23.

This argument is meritless. As the Trust points out, the letter is an obvious attempt to characterize a past event – specifically, the Assignment – not to propose a current transaction. *See* Reply at 8 (Dkt. No. 68). Under section 9620, the secured party must send the debtor a "proposal" that "proposes to accept collateral in full satisfaction of the obligation it secures." Cal. Com. Code § 9620(c)(2)(A)-(B). Written in the past tense with reference to a particular past event, and lacking any language generally associated with a proposal, offer, or the like, the June 2014 letter cannot be reasonably characterized as a "proposal" or as proposing anything at all within the

1 meaning of section 9620. The fact that the Trust did not respond to the letter within 20 days does
2 not mean that section 9620 was satisfied.

## CONCLUSION

The Trust's motion for summary judgment is GRANTED. Judgment will be entered accordingly.

At the end of its opening brief, the Trust notes that the parties dispute the costs of collection to which Windsor is entitled under the Prior Order. Mot. at 21-22. The Trust "respectfully requests that [this issue] be reserved for determination by the Court in a manner analogous to a post judgment motion for fees and costs." *Id.* at 22. Windsor does not address the costs of collection issue in its opposition brief. On or before January 15, 2016, the parties shall meet and confer on this issue and attempt to resolve their differences. If any points of disagreement remain, on or before January 25, 2016, the parties shall submit a joint letter of seven pages or less setting out their respective positions and the specific points on which they require the Court's assistance. Exhibits may be attached to the joint letter if appropriate. After reviewing the joint letter, I will determine whether further briefing or a hearing is necessary.

**IT IS SO ORDERED**.

Dated: December 22, 2015



WILLIAM H. ORRICK
United States District Judge

11