UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINDSOR SECURITIES, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>ARENT FOX, LLP and JULIUS ROUSSEAU, III,<br><br>Defendants. | Case No.  16-cv-01533 (GBD) (GWG)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' COUNTERSTATEMENT TO
PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS
PURSUANT TO LOCAL CIVIL RULE 56.1**

Peter N. Wang
Douglas S. Heffer
Adam G. Pence
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016-1314
Tel:  (212) 682-7474
Fax:  (212) 682-2329

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56 and Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, Defendants Arent Fox, LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau," and, collectively, with Arent Fox, "Defendants") hereby submit the following Counterstatement in response to the Statement of Material Undisputed Facts ("Windsor's 56.1 Statement") of Plaintiff Windsor Securities, LLC ("Windsor" or "Plaintiff") in support of Windsor's Motion for Partial Summary Judgment ("Windsor's Summary Judgment Motion"), filed as ECF No. 124.

Pursuant to FRCP 56, any admission of facts herein is solely for purposes of this motion. Defendants do not concede the relevancy of any asserted fact. Further, Defendants have not responded substantively to certain factual statements as they are not material for purposes of Windsor's Summary Judgment Motion. Defendants reserve the right to contest any and all facts, including with regard to their relevancy.[1]

## Facts Related to the Parties

1.      Windsor has proffered three separate facts in this purported single undisputed fact.[2] Undisputed, but Defendants further respond that the asserted undisputed facts concerning Steven Prusky's role in Windsor and Windsor's principal place of business are not supported by the cited evidence. Defendants further respond that none of these asserted undisputed facts are material to Windsor's Summary Judgment Motion.

---

[1] Defendants incorporate by reference all asserted facts and the defined terms in their Statement of Undisputed Material Facts ("DSOF") in support of their summary judgment motion, filed as ECF No. 128, and Defendants' Statement of Countervailing Evidence in Opposition to Plaintiff's Summary Judgment Motion (hereinafter, "DSCE").

[2] Throughout its 56.1 Statement Windsor proffers long, voluminous paragraphs, often with many facts and lengthy footnotes, rather than "brief, numbered paragraphs," as required by Local Rule 56.1. *See* L. Civ. Rule 56.1 and Committee Note. Windsor's failure to submit a proper Rule 56.1 statement, by itself, is sufficient grounds for this Court to deny Windsor's Summary Judgment Motion. L. Civ. Rule 56.1(a) ("Failure to submit such a statement may constitute grounds for denial of the motion.").

2.      Undisputed.  Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

3.      Disputed.  Defendants do not dispute that Rousseau is an attorney admitted to the New York Bar and is a Partner with Arent Fox, but dispute the assertion that Rousseau "holds himself out as having specialized expertise in the 'life settlement business and premium finance structures." This asserted fact is not supported by the cited evidence: in the cited documents and testimony Mr. Rousseau merely holds himself out as someone with extensive "knowledge" and "experience" in this field.  Transcript of the Deposition of Julius Rousseau, III, March 7, 2017 ("Windsor Rousseau Tr.") 9:20-22, 19:18-20:14, attached as Exhibit 3 to the Declaration of Samantha Millrood ("Millrood Decl."), filed as ECF No. 125; Millrood Decl. Ex. 5; Millrood Decl. Ex. 9 at ¶ 7.  Defendants further respond that this asserted fact is not material to Windsor's Summary Judgment Motion because New York has not adopted a higher standard of care for purported experts or specialists.  15 N.Y. PRAC., NEW YORK LAW OF TORTS § 13.33.  Further, Windsor, in its memorandum of law, concedes that the "relevant standard of care adopted by courts in this state is the 'ordinary and reasonable skill and knowledge commonly possessed by a member of the profession.'"  (ECF No. 123 at 4) (citing *Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428, 430 (1st Dep't 1990)).

### Facts Relating to Windsor's Premium Financing of the Life Insurance Policies At Issue

4.      Undisputed.

5.      Undisputed, but Defendants further respond that many of the asserted undisputed facts are not material to Windsor's Summary Judgment Motion.

6.      Undisputed.

7.     Undisputed, but the cited Wikipedia article includes a specific disclaimer, which is not included in Windsor's exhibit, that the article does not cite any reliable sources. Defendants further respond that many of the asserted undisputed facts are not material to Windsor's Summary Judgment Motion.

8.     Undisputed, but Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

9.     Undisputed.

10.    Undisputed with regard to the text of Paragraph 10, disputed with regard to the footnote associated with Paragraph 10.  Windsor has again proffered multiple separate facts, including a footnote that is nearly 2/3 of a page, in this purported single undisputed fact.  Many of the asserted facts in the footnote are either not supported by the cited evidence or are not followed by a citation to evidence.  Defendants further respond that none of the asserted undisputed facts in the footnote are material to Windsor's Summary Judgment Motion.

11.    Undisputed.

12.    Undisputed.

13.    Undisputed.

14.    Undisputed with regard to the obligations for each of the Premium Finance Loans but disputed with regard to whether California law actually governed the Premium Finance Packages.  Defendants further respond that none of the asserted undisputed facts in the footnote are material to Windsor's Summary Judgment Motion.

15.    Undisputed.

16.    Undisputed, but Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

17.     Undisputed.

18.     Undisputed.

19.     Undisputed with regard to what the "Premium Finance Packages each state," but disputed with regard to whether California law actually governed the Premium Finance Packages.

20.     Undisputed with regard to applicability of Article 9 to insurance policies under California law, but disputed with regard to whether California law actually governed the Premium Finance Packages.  Windsor has also asserted improper legal arguments in this purported single undisputed fact.  Courts in this jurisdiction have held that any legal argument in a Rule 56 statement should be ignored by this Court as a nullity.  *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 509 (S.D.N.Y. 2003) (ignoring defendant's "collection of legal arguments"); *Brown v. City of New York*, No. 16-CV-1919 (ALC), 2018 WL 3821620, at *5 (S.D.N.Y. Aug. 10, 2018) (same).  Defendants further respond that many of the asserted undisputed facts and legal arguments are not material to Windsor's Summary Judgment Motion.

21.     Undisputed with regard to the actual contents of the Premium Finance Packages, but Defendants further respond that many of the cited contractual provisions are not material to Windsor's Summary Judgment Motion.

22.     Undisputed with regard to the actual provisions of the Premium Finance Package, which Windsor does not cite, but disputed with regard to Windsor's argumentative summary of these provisions, including multiple subparts labeled with letters and small roman numerals.  *See supra* ¶ 20.  Defendants further respond that the asserted facts are not supported by specific citations to the cited evidence (the multi-part paragraph instead references, generally, the

Premium Finance Packages that are hundreds of pages each).[3]  Finally, Defendants note that this paragraph is taken, nearly verbatim, from the report of Windsor's expert, Joseph Wood. Millrood Decl. Ex. 30 ¶ 11.  In turn, this section of Wood's report is taken, nearly verbatim, from Wood's memorandum of law in the underlying Acker and Collins Litigations.  Millrood Decl. Ex. 102 at 5-6.

### Facts Relating to Rousseau's Introduction To and Representation of Windsor

23.    Disputed.  Defendants do not dispute that Windsor extended premium finance loans for the five insurance policies at issue in this litigation prior to meeting Mr. Rousseau but dispute Windsor's assertion that Mr. Rousseau held himself out as having "specialized expertise in both the life settlement business and with premium finance structures used in the purchase of life insurance."  This asserted fact is not supported by the cited evidence: in the cited documents and testimony Mr. Rousseau merely holds himself out as someone with extensive "knowledge" and "experience" in this field.  Transcript of the Deposition of Steven Prusky, March 6, 2017 ("Windsor Prusky Tr.") 154:13-16, 171:16-172:7, 177:10-178:4, attached as Exhibit 1 to the Millrood Decl.; Millrood Decl. Ex. 3, Windsor Rousseau Tr. 9:20-22, 19:18-20:14, 23:10-24:6. Defendants further respond that the assertion regarding Mr. Rousseau is not material to Windsor's Summary Judgment Motion.  *See supra* ¶ 3.

24.    Undisputed.

25.    Undisputed.

---

[3] Windsor is required under the local rules to provide specific citations to admissible evidence, and a failure to do so is grounds for this Court to ignore the asserted fact.  *Brown* , 2018 WL 3821620, at *5 (citing *Kastle v. Tompkins*, No. 13-CV-2256 (VB)(PED), 2017 WL 9534741, at *2 (S.D.N.Y. Mar. 13, 2017) (declining to consider citations to transcripts without specific pages or line numbers), report and recommendation adopted in part, rejected in part on other grounds, No. 13-CV-2256 (VB), 2017 WL 3206341 (S.D.N.Y. July 27, 2017)).

26.     Undisputed, but Defendants further respond that none of the asserted undisputed facts in the lengthy footnote are material to Windsor's Summary Judgment Motion.

27.     Disputed.  The cited evidence does not support the assertion that Rousseau and Herrick provided continuous advice and representation to Windsor regarding all the Premium Finance Loans, or even just the five loans at issue in this litigation, from June 5, 2009 through May 2010.  Defendants do not dispute that Rousseau and Herrick provided some legal advice and representation with regard to the loans at issue but note that Rousseau and Herrick, after providing Windsor initial premium finance advice in 2009 performed only limited legal services to Windsor for the remainder of Rousseau's time at Herrick.  Declaration of Julius Rousseau, III in Opposition to Windsor's Summary Judgment Motion, dated September 17, 2018 (the "Rousseau Opp. Decl.") ¶ 7.  Specifically, with regard to the loans at issue, after 2009, Windsor sought only limited legal advice or representation from Rousseau.  Rousseau Opp. Decl. ¶¶ 7-11, 14-21.  Windsor also took many actions with regard to the loans at issue itself and failed to keep Rousseau or anyone else at Herrick (and later Arent Fox) informed about the status of these loans.  Rousseau Opp. Decl. ¶¶ 8-9, 15, 20, Ex. 12. *See also* DSCE ¶¶ 8, 9, 19-21, 27, 42, 43.

28.     Undisputed with regard to the contents of the cited documents, but Defendants further respond that Windsor provides no citation to evidence to support the factual assertions in the footnote and none of the asserted undisputed facts are material to Windsor's Summary Judgment Motion.

29.     Disputed.  The cited evidence does not establish that Fox and Windsor "followed the foregoing procedure to obtain ownership and title to Windsor's Garcia policy."  The Garcia transaction was a voluntary surrender of an insurance policy clearly governed by California law, after default under the transaction documents.  Millrood Decl. Ex. 20 (PLAINTIFF 028710-

28712).  Defendants further dispute the improper legal arguments raised in the footnote (*see supra* ¶ 20) and dispute whether California law actually governed the Premium Finance Packages.  In addition, many of the asserted facts and legal arguments in the footnote are either not supported by the cited evidence or are not followed by a citation to evidence.  Defendants further respond that none of the asserted undisputed facts in the text of the paragraph or the footnote are material to Windsor's Summary Judgment Motion.

30.    Undisputed with regard to the fact that such draft agreements existed but disputed with regard to the circumstances surrounding the draft agreements and the improper legal arguments as to their meaning.  *See supra* ¶ 20.  The asserted facts in the footnote are also not supported by any cited evidence.  Defendants further respond that none of the assertions in the text of the paragraph or the footnote are material to Windsor's Summary Judgment Motion.

31.    Undisputed with regard to the communications between Windsor and the relevant Trusts (through Houchins) in January 2010 but disputed with regard to the characterization that the communications occurred "shortly before" the relevant loans were due to be repaid.  The record establishes that loans with regard to the Acker, Collins, Coppock, and Stamatov Policies were not due until the following dates:

- The Acker Loan was due on August 1, 2010.  Wang Decl. Ex. 1, Compl. ¶ 77.
- The Collins Loan was due on July 30, 2010.  Wang Decl. Ex. 1, Compl. ¶ 107.
- The Coppock Loan was due on July 8, 2010.  Wang Decl. Ex. 1, Compl. ¶ 131.
- The Stamatov Loan was due on June 26, 2010.  Wang Decl. Ex. 1, Compl. ¶ 158.

32.    Disputed.  Rousseau advised Windsor that the Trustees were walking away from the policies prior to any default under the loan agreements, meaning there would be no need for the Trustees to exercise the Default Sale Right ("DSR").  Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3; Transcript of the Deposition of Julius Rousseau, III, March 7, 2017 ("Rousseau Tr.") 217:9-218:5, attached as

Exhibit 1 to the Declaration of Peter N. Wang in Opposition to Windsor's Summary Judgment Motion, dated September 17, 2018 (the "Wang Opp. Decl.").

33.     Disputed.  There is nothing in the cited evidence to establish that Windsor "demanded" anything of the Trustees or that the "demand" was "per Rousseau's specific advice."  Millrood Decl. Ex. 11 at ¶ 8; Millrood Decl. Ex. 12 at ¶ 8.  Further, Windsor took many actions with regard to the loans at issue itself and failed to keep Rousseau or anyone else at Herrick (and later Arent Fox) informed about the status of these loans.  Rousseau Opp. Decl. ¶¶ 8-9, 20.  Prusky started collecting some Change of Ownership Forms prior to consulting Rousseau.  Rousseau Opp. Decl. ¶¶ 8-9; Transcript of the Deposition of Steven Prusky, October 4, 2017 ("Prusky Tr.") 293:25-295:23, attached as Exhibit 2 to Wang Opp. Decl.  Further, Prusky could not recall if he even showed Rousseau some of the Change of Ownership Forms.  Wang Opp. Decl. Ex. 2, Prusky Tr. 294:4-295:23, 298:7-16.  *See also* DSCE ¶¶ 9, 17, 22-25, 28, 38, 39, 41.

34.     Disputed.  The record establishes that this cited evidence was drafted by Houchins in 2014, years after the purported communications in 2010, with the assistance of Joseph Wood, counsel for the various Trusts.  Transcript of the Deposition of Joseph Wood, June 28, 2018 ("Wood Tr.") 189:6-191:9, attached as Exhibit 3 to Wang Opp. Decl.; Wang Opp. Decl. Ex. 4.  Wood testified that he consulted on the wording of the e-mail in 2014 to protect both the Trusts and Houchins.  *Id.*  Further, Houchins' e-mail was actually in response to Prusky asking Houchins to verify Prusky's recollection that Houchins obtained the Change of Ownership Forms pursuant to various discussions related to an oral walkaway agreement, wherein Windsor agreed to release the Trusts from their financial obligations in exchange for the Trusts

surrendering the Policies.  Wang Decl. Ex. 4 (PLA0004415) (conveniently, this page was not included with Windsor's version of this e-mail).

### Facts Relating to Stamatov, Acker, Collins and Coppock Trustees's [sic] Execution of Insurance Company's Change of Ownership Forms

**Stamatov**

35.     Undisputed.

36.     Undisputed.

37.     Undisputed with regard to the actual contents of the cited documents but disputed with regard to Windsor's characterization of the contents and related improper legal arguments. *See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish as a matter of law Windsor's legal arguments.  Rousseau's advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds wanted to walk away and abandon the Policies prior to the date to repay the loans.  Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3. Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts, whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all financial obligations.  *See, e.g.*, Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35.  Defendants further respond that the asserted facts and legal arguments are not material to Windsor's Summary Judgment Motion.  *See also* DSCE ¶¶ 38-43.

38.     Undisputed.

39.     Undisputed, but Defendants note that the cited evidence, an unverified complaint, is not admissible evidence for the truth of its contents.  Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

**Acker**

40.     Undisputed.

41.     Undisputed, but Defendants note that the cited evidence does not support the

assertion regarding the title of the Change of Ownership Form.

42.     Undisputed.

43.     Undisputed with regard to the actual contents of the cited document but disputed

with regard to Windsor's characterization of the contents and related improper legal arguments.

*See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish

as a matter of law Windsor's legal arguments.  Rousseau's advice regarding the Acker, Collins,

Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds

wanted to walk away and abandon the Policies prior to the date to repay the loans.  Wang Decl.

Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3.

Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into

a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts

whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all

financial obligations.  Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-

19, 22-29, 35.  Windsor also provided Acker and the Acker Trustee releases, and the Trustee's

release provided that

> We want to confirm that it is our understanding that you have
> signed the [Change of Ownership Form] because you would rather
> irrevocably surrender ownership and be freed of financial
> obligations past and future, than pay off your loan to Windsor.  We
> also want to confirm that this assignment is effective immediately
> upon its processing by the Insurance Company and is
> irrevocable.  With its processing there will be no more financial
> obligations between Windsor and the Trust, nor between Windsor
> and the insured …

Wang Decl. Ex. 46.  Defendants further respond that the asserted facts and legal arguments are not material to Windsor's Summary Judgment Motion.  *See also* DSCE ¶¶ 38-43.

44.    Undisputed.

45.    Undisputed, but Defendants note that the original cited evidence does not support the asserted undisputed fact.  Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

**Coppock**

46.    Undisputed with regard to the contents of the cited document but Defendants note that two pages are missing from the document.

47.    Undisputed with regard to the actual contents of the cited document but disputed with regard to Windsor's characterization of the contents and related improper legal arguments.  *See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish as a matter of law Windsor's legal arguments.  Rousseau's advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds wanted to walk away and abandon the Policies prior to the date to repay the loans.  Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3. Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all financial obligations.  Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35.  Windsor also provided Coppock a release stating "pending our ownership of [the policy], we are releasing you from any future obligations of our financial agreement."  Millrood

Decl. Ex. 81.  Defendants further respond that the asserted facts and legal arguments are not material to Windsor's Summary Judgment Motion.  *See also* DSCE ¶¶ 38-43.

     48.     Undisputed.

     49.     Undisputed.

     50.     Disputed with regard to the assertion that Windsor acted pursuant to Rousseau's "specific advice."  The cited evidence does not support that assertion.

     51.     Undisputed with regard to the actual contents of the cited document but disputed with regard to the remaining factual assertions.  The cited evidence does not establish that Rousseau "did not advise, or counsel Windsor to provide [the Release] to Coppock or the Coppock Trust/Trustee for execution" or that relevant documents were not provided to Windsor.  Defendants further respond that none of the asserted undisputed facts are material to Windsor's Summary Judgment Motion.

     52.     Disputed.  Defendants do not dispute the actual contents of Millrood Decl. Ex. 81 but dispute Windsor's characterization of the contents and related improper legal arguments.  *See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish as a matter of law Windsor's legal arguments.  Further, Defendants dispute the remaining asserted facts.  Rousseau's advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds wanted to walk away and abandon the Policies prior to the date to repay the loans.  Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3.  Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts, whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all financial obligations.  Wang Opp. Decl. Ex.

9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35.  Windsor also provided

Coppock a release stating "pending our ownership of [the policy], we are releasing you from any

future obligations of our financial agreement."  Millrood Decl. Ex. 81.  Defendants further

respond that the asserted facts and legal arguments are not material to Windsor's Summary

Judgment Motion.  *See also* DSCE ¶¶ 38-43.

      53.    Undisputed, but Defendants note that the cited evidence, an unverified complaint,

is not admissible evidence for the truth of its contents.  Defendants further respond that the

asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

**Collins**

      54.    Undisputed.

      55.    Undisputed with regard to the actual contents of the cited document but disputed

with regard to Windsor's characterization of the contents and related improper legal arguments.

*See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish

as a matter of law Windsor's legal arguments.  Rousseau's advice regarding the Acker, Collins,

Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds

wanted to walk away and abandon the Policies prior to the date to repay the loans.  Wang Decl.

Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3.

Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into

a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts,

whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all

financial obligations.  Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-

19, 22-29, 35.  Windsor also provided Collins and the Collins Trustee releases, and the Trustee's

release provided that

> We want to confirm that it is our understanding that you have
> signed the [Change of Ownership Form] because you would rather
> irrevocably surrender ownership and be freed of financial
> obligations past and future, than pay off your loan to Windsor. We
> also want to confirm that this assignment is effective immediately
> upon its processing by the Insurance Company and is
> irrevocable. With its processing there will be no more financial
> obligations between Windsor and the Trust, nor between Windsor
> and the insured …

Wang Decl. Ex. 56. Defendants further respond that the asserted facts and legal arguments are

not material to Windsor's Summary Judgment Motion. *See also* DSCE ¶¶ 38-43.

    56.    Undisputed.

    57.    Undisputed.

    58.    Undisputed with regard to the actual contents of the cited document but disputed

with regard to Windsor's characterization of the contents and related improper legal arguments.

*See supra* ¶ 20. Regardless, the cited evidence does not provide the factual support to establish

as a matter of law Windsor's legal arguments. Defendants also note that by August 26, 2010,

Windsor was already the recorded owner of the Policy. Millrood Decl. Ex. 90. Rousseau's

advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's

representation that the relevant Insureds wanted to walk away and abandon the Policies prior to

the date to repay the loans. Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang

Decl. Ex. 13, Prusky Tr. 245:25-247:3. Windsor has also previously asserted, under penalty of

perjury, multiple times that it entered into a pre-default walkaway agreement with the Acker,

Collins, Coppock, and Stamatov Trusts, whereby Windsor accepted each Policy in exchange for

releasing the respective Trust of all financial obligations. Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29,

35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35. Windsor also provided Collins and the Collins

Trustee releases, and the Trustee's release provided that

> We want to confirm that it is our understanding that you have signed the [Change of Ownership Form] because you would rather irrevocably surrender ownership and be freed of financial obligations past and future, than pay off your loan to Windsor. We also want to confirm that this assignment is effective immediately upon its processing by the Insurance Company and is irrevocable. With its processing there will be no more financial obligations between Windsor and the Trust, nor between Windsor and the insured …

Wang Decl. Ex. 56. Defendants further respond that the asserted facts and legal arguments are not material to Windsor's Summary Judgment Motion. *See also* DSCE ¶¶ 38-43.

59.    Undisputed.

60.    Undisputed, but Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

### Rousseau and Arent Fox's Assurances Regarding Ownership and Windsor's Entitlement to The Death Benefits Under the Policies

61.    Disputed. Rousseau and Arent Fox never "specifically assured" Windsor that no other documentation was necessary and never counseled Windsor with regard to the DSR or UCC § 9-620 because Rousseau's advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds wanted to walk away and abandon the Policies prior to the date to repay the loans. Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3. Further, Prusky could not recall if he even showed Rousseau some of the Change of Ownership Forms. Wang Opp. Decl. Ex. 2, Prusky Tr. 294:4-295:23, 298:7-16. *See also* DSCE ¶¶ 38-43.

62.    Disputed. Rousseau's advice regarding the Acker, Collins, Coppock, and Stamatov Trusts was based on Windsor's representation that the relevant Insureds wanted to walk away and abandon the Policies prior to the date to repay the loans. Wang Decl. Ex. 1, Compl. ¶¶ 82-86, 112-113, 139-140, 162; Wang Decl. Ex. 13, Prusky Tr. 245:25-247:3. Further,

Prusky could not recall if he even showed Rousseau some of the Change of Ownership Forms. Wang Opp. Decl. Ex. 2, Prusky Tr. 294:4-295:23, 298:7-16. The record in this case is also replete with evidence, including sworn statements from Mr. Prusky, that contradicts the asserted subparts. For example, Windsor has also previously asserted, under penalty of perjury, multiple times that it entered into a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov Trusts, whereby Windsor accepted each Policy in exchange for releasing the respective Trust of all financial obligations. Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35. Windsor also provided Acker and Collins and their Trustees releases, and both Trustees' releases provided that

> We want to confirm that it is our understanding that you have signed the [Change of Ownership Form] because you would rather irrevocably surrender ownership and be freed of financial obligations past and future, than pay off your loan to Windsor. We also want to confirm that this assignment is effective immediately upon its processing by the Insurance Company and is irrevocable. With its processing there will be no more financial obligations between Windsor and the Trust, nor between Windsor and the insured …

Wang Decl. Ex. 46, 56. Windsor also provided Coppock a release stating "pending our ownership of [the policy], we are releasing you from any future obligations of our financial agreement." Millrood Decl. Ex. 81. *See also* Wang Opp. Decl. Exs. 8-11 (Steven Prusky's Declarations in Acker and Collins Litigations providing evidence of Windsor's agreements to release the Acker and Collins Trusts). *See also* DSCE ¶¶ 38-43.

63.    Undisputed, but Defendants note that the cited declarations do not support the asserted undisputed fact and the unverified complaints are not admissible evidence for the truth of their contents. Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

**Bitter**

64.     Undisputed that Houchins indicated to Windsor that Bitter was interested in paying off the Bitter Loan but disputed with regard to whether Bitter ever communicated this sentiment to Houchins in April 2010.  Both Rousseau and Prusky thought the cited April 5, 2010 e-mail may have been a forgery.  Rousseau Decl. Ex. 13 (PLA0002832-2833).

### Facts Relating to Rousseau's Move From Herrick Feinstein to Arent Fox

65.     Disputed.  Mr. Rousseau has never been the head of the Insurance and Reinsurance Group at Arent Fox.  Rousseau Opp. Decl. ¶ 3.

66.     Undisputed.

67.     Disputed.  The cited evidence does not support the assertion that Rousseau's legal representation of Windsor "continued uninterrupted" during his transition from Herrick to Arent Fox.  Defendants do not dispute that Rousseau provided some legal advice and representation with regard to the loans at issue but note that Rousseau and Herrick, after providing Windsor initial premium finance advice in 2009 performed only limited relevant legal services to Windsor in 2010.  Rousseau Opp. Decl. ¶ 7.  Specifically, with regard to the loans at issue, after September 2009 Windsor sought only limited legal advice or representation from Rousseau for the loans at issue.  Rousseau Opp. Decl. ¶¶ 7-10, 14-16, 18-21, Ex. 12.  Windsor also took many actions with regard to the loans at issue itself and failed to keep Rousseau or anyone else at Herrick (and later Arent Fox) informed about the status of these loans.  Rousseau Opp. Decl. ¶¶ 8-9, 20.  As Rousseau testified at his deposition, the scope of his engagement was "whatever we were asked to do by Mr. Prusky," which at the time was very little.  Millrood Decl. Ex. 3, Rousseau Windsor Tr. 38:17-19; Rousseau Opp. Decl. ¶¶ 7-10, 14-16, 18-21.  *See also* DSCE ¶¶ 8, 9, 17, 19-25, 27, 28, 38, 39, 41-43.

68.     Disputed.  The cited evidence does not support the assertion that "Rousseau, while at Defendant Arent Fox, advised and assisted Windsor with each of the Premium Finance Loans and Premium Finance Policies" (emphasis added).  Millrood Decl. Ex. 8; Millrood Decl. Ex. 9 at ¶ 32; Millrood Decl. Ex. 1, Rousseau Windsor Tr. 155:40-14, 159:7-160:16, 162:3-19, 182:9-16.  Further, the cited evidence does not support the assertion that this advice and assistance involved issues "including but not limited to, Windsor's rights under the Finance Agreement Packages, notices and demands to the Premium Finance Trustees, and preparing and obtaining the documentation necessary to ensure that Windsor had unfettered title and ownership to each of the Premium Finance Policies, and all rights thereunder." *See supra*.  After moving to Arent Fox, Rousseau's role with regard to the Premium Finance Loans was limited.  *See supra* ¶ 67.  Finally, by the time Rousseau moved to Arent Fox in June 2010, Windsor had already secured Change of Ownership Forms for Acker (*supra* ¶¶ 40-42), Collins (*supra* ¶ 54), Coppock (*supra* ¶ 46), and Stamatov (*supra* ¶ 36).

69.     Defendants do not dispute that Rousseau provided Windsor an engagement letter on April 7, 2011 but note that Windsor provided only limited advice and services with regard to the loans at issue between June 2010 and April 2011.  In fact, other than for an unrelated matter (the Hathaway matter), Arent Fox submitted to Windsor only three invoices, totaling $3,534.44, for work performed during this time, and none of this work related to the Policies other than Bitter.  Declaration of Julius Rousseau, III, dated August 13, 2018 and filed as ECF No. 131 (the "Rousseau Decl."), Ex. 10 (AF0018442-18443); *see also* Rousseau Opp. Decl. ¶ 21, Ex. 3. Defendants further respond that the asserted undisputed facts are not material to Windsor's Summary Judgment Motion.

19

## Facts Relating to Maturity of Windsor's Premium Finance Loans

70.     Disputed.  The cited evidence does not support the assertion that Defendants "specifically provided advice and representation to Windsor regarding the title to, and ownership and assignment of, the Policies, actions required for transfer thereof and perfection of entitlement to the death benefits thereunder, and compliance with the Finance Agreement Packages." Specifically, citations to the Premium Finance Packages themselves provide no such support for these multiple assertions, and the other cited evidence establishes only that Rousseau, first at Herrick and then at Arent Fox, provided Windsor general advice regarding Windsor's premium finance business, not what specific advice he provided.  Millrood Decl. Ex. 8 ¶¶ 32, 34; Millrood Ex. 9 at ¶¶ 32, 34; Millrood Decl. Ex. 1, Prusky Windsor Tr. 197:16-25.  Further, at the time Windsor was obtaining Change of Ownership Forms from Houchins, Herrick and Arent Fox time records indicate that Rousseau provided Windsor only sporadic and limited advice.  Rousseau Opp. Decl. ¶ 21, Exs. 3, 12.

71.     Disputed.  These multiple asserted facts, for the most part, center around the supposed lack of evidence regarding Windsor's agreements with the Trustees for the Acker, Collins, Coppock, and Stamatov Policies.  Windsor asserts these multiple separate facts with regard to these four Policies but only provides citations to evidence for two of the Policies (Acker and Collins), along with a citation to an expert report.  Further, apart from the expert report, Windsor's cited evidence is all from the underlying Acker and Collins Litigations, which did not involve Defendants.  This purported evidence cannot establish the lack of evidence surrounding Windsor's agreements with any the Acker and Collins Trustees (let alone any other Trustee) because Successor Counsel failed to complete discovery in those cases and failed to proffer key evidence – including comprehensive releases for Acker and Collins – until it was too late.  Wang Decl. Exs. 39, 41, 45 at 1 n.2, 45 at 6 n.8, 49, 51, 55 at 1 n.2, 55 at 6 n.8; *see also*

Wang Decl. Ex. 14, Antonino Tr. 180:10-24. Not only does the cited evidence fail to establish

the four subparts presented in Paragraph 71, the record in this case is replete with evidence,

including sworn statements from Mr. Prusky, that contradicts the four asserted subparts. For

example, Windsor has also previously asserted, under penalty of perjury, multiple times that it

entered into a pre-default walkaway agreement with the Acker, Collins, Coppock, and Stamatov

Trusts. Wang Opp. Decl. Ex. 9 ¶¶ 6-18, 21-29, 35; Wang Opp. Decl. Ex. 11 ¶¶ 6-19, 22-29, 35.

Windsor also provided Acker and Collins and their Trustees releases, and both Trustees' releases

provided that

> We want to confirm that it is our understanding that you have
> signed the [Change of Ownership Form] because you would rather
> irrevocably surrender ownership and be freed of financial
> obligations past and future, than pay off your loan to Windsor. We
> also want to confirm that this assignment is effective immediately
> upon its processing by the Insurance Company and is
> irrevocable. With its processing there will be no more financial
> obligations between Windsor and the Trust, nor between Windsor
> and the insured …

Wang Decl. Ex. 46, 56. Windsor also provided Coppock a release stating "pending our

ownership of [the policy], we are releasing you from any future obligations of our financial

agreement." Millrood Decl. Ex. 81. *See also* Wang Opp. Decl. Exs. 8-11 (Steven Prusky's

Declarations in Acker and Collins Litigations providing evidence of Windsor's agreements to

release the Acker and Collins Trusts). *See also* DSCE ¶¶ 38-45.

    72.    Disputed. The record reflects that the Bitter Loan may have become due July 24,

2010, not on or about July 8, 2010. Millrood Decl. Ex. 25 (AF0010009) (the receipt of funds

confirmation is dated April 25, 2008).

    73.    Undisputed with regard to the asserted fact that the Bitter Loan was not repaid

prior to becoming due, but Defendants note the cited evidence, an arbitration brief, is not

admissible evidence for the truth of its contents and note that the cited evidence does not otherwise support the asserted fact.

74.     Undisputed, but Defendants further respond that none of the asserted undisputed facts are material to Windsor's Summary Judgment Motion.

75.     Undisputed.

76.     Disputed.  The cited evidence does not support the assertion that Windsor consulted with Rousseau or sent the January 14, 2011 letter "in accordance with Rousseau's advice."

77.     Disputed.  The cited evidence does not support the assertion that the Bitter Trustee executed the Change of Ownership Form "as demanded by Rousseau and Arent Fox." The record establishes that the Bitter Trustee executed the Form provided by Windsor in the January 14, 2011 letter.  Wang Opp. Decl. Ex. 1, Rousseau Tr. 157:22-24, 176:20-177:8.

78.     Undisputed with regard to the actual contents of the cited document but disputed with regard to Windsor's characterization of the contents and related improper legal arguments. *See supra* ¶ 20.  Regardless, the cited evidence does not provide the factual support to establish as a matter of law Windsor's legal arguments.

79.     Undisputed, but Defendants further respond that the asserted fact is not material to Windsor's Summary Judgment Motion.  The referenced form naming Windsor as the irrevocable beneficiary, which is the subject of the November 11, 2010 Pacific Life Insurance Company Correspondence (Millrood Decl. Ex. 92), was actually submitted by Windsor pursuant to Windsor's power of attorney under the Premium Finance Package.  Rousseau Opp. Decl. ¶¶ 15-17, Ex. 2.

80.     Disputed.  Windsor has proffered multiple improper legal arguments in this purported single undisputed fact.  *See supra* ¶ 20.  Further, the cited evidence does not support the assertion that Rousseau gave any of the purported advice regarding the Bitter Change of Ownership Form.  In fact, Rousseau never advised Windsor that a Change of Ownership Form alone would be sufficient to convey unfettered ownership for Bitter.  Rousseau Opp. Decl. ¶ 13. The cited evidence also does not provide the factual support to establish as a matter of law Windsor's legal arguments.  *See also* DSCE ¶¶ 14-16

81.     Undisputed.

82.     Undisputed, but Defendants note the cited evidence, an arbitration brief, is not admissible evidence for the truth of its contents and note that the cited evidence does not otherwise support the asserted fact.  Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

### Facts Relating to Litigation as to the Death Benefits Under the Bitter Policy

83.     Undisputed.

84.     Undisputed.

85.     Undisputed.

86.     Undisputed.

87.     Undisputed.

88.     Undisputed.

89.     Undisputed, but Defendants further respond that the asserted undisputed fact is not material to Windsor's Summary Judgment Motion.

90.     Disputed.  The cited evidence does not support the assertions that Rousseau or anyone else at Arent Fox assured Windsor that it had gained ownership to the Bitter Policy or that Windsor had made an "offer" under the DSR and UCC § 9-620.  In fact, Rousseau testified

that Windsor was never the owner of the Bitter Policy but had a potential argument to the death

benefit.  Wang Opp. Decl. Ex. 1, Rousseau Tr. 266:18-267:6.  Further, Rousseau and Prusky

discussed the possibility of losing the arbitration.  Wang Opp. Decl. Ex. 1, Rousseau Tr. 200:21-

201:13.  Finally, Rousseau did not advise Windsor against settling the Bitter dispute during the

arbitration, and Rousseau specifically testified – in the sections of the transcript cited by Windsor

– that there were no substantive settlement discussions at that time, between the parties or

between Windsor and Arent Fox, for Rousseau to advise or not advise settlement.  Millrood

Decl. Ex. 3, Rousseau Tr. 202:7-204:12.  *See also* DSCE ¶¶ 10, 14-16, 19-21, 27-28, 35.

91.     Undisputed.

92.     Undisputed.

93.     Undisputed.

94.     Undisputed.

95.     Undisputed.

96.     Disputed.  The cited evidence (the Bitter Arbitration Award) says nothing about

any purported failures by Defendants or any purported incorrect advice.  Millrood Decl. Ex. 73.

Further, Windsor has proffered multiple legal arguments in this purported single undisputed fact,

and the cited evidence does not provide the factual support to establish as a matter of law

Windsor's improper legal arguments.  *See supra* ¶ 20.  After providing Windsor initial premium

finance advice in 2009, Rousseau performed only limited legal services for Windsor with regard

to the Bitter Policy.  Rousseau Opp. Decl. ¶¶ 7, 11, 14-16, 18-21.  Windsor also took many

actions with regard to the Bitter Loan itself and failed to keep Rousseau or anyone else at Arent

Fox informed about the status of the dispute with Bitter or the relevant Change of Ownership

Form.  Rousseau Opp. Decl. ¶¶ 8-9, 20.  Rousseau explained to Prusky that this demand letter

was merely the first step, and Rousseau never advised Windsor that a Change of Ownership

Form alone would be sufficient to convey unfettered ownership for Bitter.  Rousseau Opp. Decl.

¶ 13.  *See also* DSCE ¶¶ 14-17, 19-28.

97.     Disputed.  The cited evidence (the Bitter Settlement Agreement) does not

establish that Windsor incurred substantial legal fees, that it was "forced to settle the Bitter

Action for a fraction of the full death benefits [sic] under the Bitter Policy," or that Windsor

suffered "Millions in damage [sic]."  Millrood Decl. Ex. 113.  Further, Windsor has proffered

multiple legal arguments in this purported single undisputed fact, and the cited evidence does not

provide the factual support to establish as a matter of law Windsor's improper legal arguments.

*See supra* ¶ 20.

### Facts Relating to Defendants' Actions on the Collins, Acker, Coppock, and Stamatov Policies Following the Bitter Arbitration Award

98.     Disputed.  The cited evidence does not support the assertion that Prusky

"advised" Rousseau about anything associated with the Collins, Acker, Coppock, and Stamatov

Policies.  Instead, the record evidence establishes that, after the Bitter Arbitration Award, Prusky

and Rousseau discussed what steps, if any, that Windsor should take to protect its interests in

these four Policies, and the two eventually agreed to send the June 2014 Letters.  Wang Opp.

Decl. Ex. 1, Rousseau Tr. 239:15-240:18, 251:13-252:24.

99.     Disputed.  The cited evidence does not support the assertion that Defendants

assured Windsor that "Windsor's ownership of those Policies [Collins, Acker, Coppock, and

Stamatov] was absolute."  Instead, the cited evidence (and other record evidence) demonstrates

that Rousseau explained Windsor's case for Acker and Collins was stronger than the Bitter case

because the policies were turned over prior to default, but that there were still real risks for

Windsor, particularly because the insureds or their estates could challenge Windsor's ownership

of the policies on the grounds that Windsor lacked an insurable interest in Acker and Collins. Millrood Decl. Ex. 57; Rousseau Opp. Decl. ¶¶ 32-35, Ex. 9 (PLA0001669), Ex. 10 (PLA0002157), Ex. 11 (PLA0002527-2528); Wang Opp. Decl. Ex. 1, Rousseau Tr. 86:13-88:20, 253:13-254:4. *See also* DSCE ¶ 45.

100.  Undisputed with regard to the fact that Windsor sent the June 2014 Letters but disputed with regard to what Rousseau and Arent Fox had "repeatedly advised Windsor." The cited evidence does not reference any such repeated advice. Millrood Decl. Exs. 54, 60-62. *See also supra* ¶ 99.

101.  Undisputed.

102.  Undisputed.

103.  Undisputed.

**Facts Relating to Windsor's Termination of Defendants Rousseau and Arent Fox and Windsor's Engagement of Replacement Counsel**

104.  Undisputed.

105.  Undisputed.

106.  Undisputed.

107.  Undisputed.

108.  Disputed. The cited evidence does not actually support the assertion that Darin Judd and his firm were retained to represent Windsor in its litigations with Coppock and Stamatov. Millrood Decl. Ex. 17 ¶ 11. Further, the record is clear that Darin Judd and Lauren Antonino advised Windsor beyond litigation issues with regard to these two Policies in particular. *See, e.g.*, Wang Decl. Ex. 18, Judd Tr. 135:24-136:7, 176:13-178:14 (discussing the potential public sale of Coppock and Stamatov Policies as late as December 2015).

109.    Disputed.  Windsor cites only a declaration from Darin Judd for this assertion, and Judd has no personal knowledge of when legal advice relating to the perfecting of Windsor's security interest in the five relevant insurance Policies and transfer of ownership as to the death benefit for each of these Policies actually occurred.  Further, the record is clear that such legal advice continued until the resolution of each of the underlying disputes.  Wang Decl. Ex. 18, Judd Tr. 135:24-136:7, 176:13-178:14.

110.    Undisputed, even though Lauran Antonino's affidavit provides that she was engaged by Windsor to assist Judd with discovery in the Acker and Collins cases in June 2016, not June 2015.  Millrood Decl. Ex. 18 ¶ 2.

111.    Disputed.  Windsor cites only the Darin Judd Declaration and Lauren Antonino Affidavit for this assertion, and they have no personal knowledge as to whether any legal advice or representation was "solely the province and responsibility of the Defendants."  The record is clear that Rousseau and Herrick did not provide any relevant legal services until late April 2009, long after Windsor loaned the funds for the premiums (*see supra* ¶¶ 26-27) and Rousseau did not move to Arent Fox until June 2010 (*see supra* ¶ 65).  The record is also clear that Darin Judd and Lauren Antonino advised Windsor beyond litigation matters, particularly for the Coppock and Stamatov Policies, and the record is clear that such non-litigation legal advice continued until the resolution of each of the underlying disputes.  Wang Decl. Ex. 18, Judd Tr. 135: 24-136:7, 176:13-178:14; Wang Opp. Decl. Ex. 5, Antonino Tr. 179:7-22.

**Facts Relating to the Litigation of the Acker, Collins, Coppock and Stamatov Policies**

**The Acker Action**

112.    Undisputed.

113.    Undisputed.

114.    Undisputed.

115.    Undisputed, but Defendants note that Windsor has selectively included quotations (out of order) from multiple portions of the Cross Claim without specific citation.

116.    Undisputed.

117.    Undisputed.

118.    Undisputed.

119.    Undisputed.

120.    Undisputed.

121.    Disputed.  Defendants do not dispute that the Court in the Acker Litigation granted the Acker Trust's Motion for Summary Judgment and do not dispute the direct quotation from the December 22, 2015 Order, but dispute the remainder of Paragraph 121, which includes impermissible legal arguments regarding Defendants' legal advice.  *See supra* ¶ 20.  While the Acker Court may have denied Windsor's Motion for Summary Judgment and granted the Acker Trust's Motion for Summary Judgment, the court did not determine "as a matter of law" anything regarding the legal advice provided by Defendants.  *See generally* Millrood Decl. Exs. 75, 79.

122.    Disputed.  Other than the direct quotation from the cited material, the asserted facts and improper legal arguments are not supported by the cited evidence.  *See supra* ¶ 20.  The Acker Court and Bitter Arbitration Panel did not determine anything regarding the legal advice provided by Defendants or what language "should have been added to the documents executed by the Trust[s]."  *See generally* Millrood Decl. Exs. 73, 79.

123.    Disputed.  Windsor has proffered multiple improper legal arguments in this purported single undisputed fact.  *See supra* ¶ 20.  Defendants further respond that the asserted facts and legal arguments are not supported by the cited evidence.  Specifically, Windsor cites no

evidence to support the hypothetical proposition that, had Defendants done anything differently, "Windsor would have absolutely and as a matter of law been entitled to **_all_** of the death benefits of the Acker Policy." Millrood Decl. Exs. 20, 30-35, 40, 73, 75. Further, Windsor's citation to various expert opinions cannot establish that a hypothetical situation is an undisputed fact, particularly in light of the fact that Defendants have proffered their own expert reports that call into question the opinions of Windsor's proffered experts. Finally, as established in Defendants' summary judgment motion, Windsor's subsequent counsel served as an intervening and superseding disruption between any of Defendants' alleged conduct and Windsor's purported harm. *See generally* Defendants' Summary Judgment Motion (ECF No. 128).

124.    Disputed. The asserted facts and improper legal arguments are not supported by the cited evidence. *See supra* ¶ 20. Windsor's citation to the Acker settlement agreement alone in no way supports the assertion that it was forced to settle the Acker dispute for "significantly less than the full death benefits [sic] under the Acker Policy, or that the settlement was "[a]s a result of the adverse ruling in the Acker Action." Millrood Decl. Ex. 114. Further, Windsor wholly fails to support or explain the assertion that it "incurred substantial legal fees … [a]s a result of the adverse ruling in the Acker Action." The record is clear that Windsor's alleged harm with regard to the Acker Policy was caused by Windsor's subsequent counsel. *See supra* ¶ 123; *see generally* Defendants' Summary Judgment Motion (ECF No. 128).

**The Collins Litigation**

125.    Undisputed.

126.    Undisputed.

127.    Undisputed.

128.    Undisputed.

129.     Undisputed.

130.     Undisputed.

131.     Undisputed.

132.     Disputed.  Defendants do not dispute that the Court in the Collins Litigation

granted the Collins Trust's Motion for Summary Judgment and do not dispute the direct

quotation from the December 22, 2015 Order, but dispute the remainder of Paragraph 132, which

includes impermissible legal arguments regarding Defendants' legal advice.  *See supra* ¶ 20.

While the Collins Court may have denied Windsor's Motion for Summary Judgment and granted

the Collins Trust's Motion for Summary Judgment, the court did not determine "as a matter of

law" anything regarding the legal advice provided by Defendants.  *See generally* Millrood Decl.

Exs. 77, 78.

133.     Disputed.  Windsor has proffered multiple improper legal arguments in this

purported single undisputed fact.  *See supra* ¶ 20.  Defendants further respond that the asserted

facts and legal arguments are not supported by the cited evidence.  Specifically, Windsor cites no

evidence to support the hypothetical proposition that, had Defendants done anything differently,

"Windsor would have absolutely and as a matter of law been entitled to ***all*** of the death benefits

of the Collins Policy."  Millrood Decl. Exs. 20, 40, 73, 77.  Further, as established in

Defendants' Summary Judgment Motion, Windsor's Subsequent Counsel served as an

intervening and superseding disruption between any of Defendants' alleged conduct and

Windsor's purported harm.  *See generally* Defendants' Summary Judgment Motion (ECF No.

128).

134.     Disputed.  The asserted facts and improper legal arguments are not supported by

the cited evidence.  *See supra* ¶ 20.  Windsor's citation to the Collins settlement agreement alone

in no way supports the assertion that it was forced to settle the Collins dispute for "significantly less than the full death benefits [sic] under the Collins Policy, or that the settlement was "[a]s a result of the adverse ruling in the Collins Action."  Millrood Decl. Ex. 114.  Further, Windsor wholly fails to support or explain the assertion that it "incurred substantial legal fees … [a]s a result of the adverse ruling in the Collins Action."  The record is clear that Windsor's alleged harm with regard to the Collins Policy was caused by Windsor's subsequent counsel.  *See supra* ¶ 133; *see generally* Defendants' Summary Judgment Motion (ECF No. 128).

**The Coppock Litigation**

135.   Undisputed.

136.   Undisputed.

137.   Disputed.  There is nothing in the cited evidence to support the assertion that Windsor incurred "substantial legal fees in the Coppock Action, which was eventually settled for less than the full death benefits under the Coppock Policy."  Defendants further respond that these "substantial legal fees" were related to Successor Counsel's representation, not Defendants' representation.  *See generally* Defendants' Summary Judgment Motion (ECF No. 128).

**The Stamatov Litigation**

138.   Undisputed.

139.   Undisputed.

140.    Disputed.  There is nothing in the cited evidence to support the assertion that Windsor incurred "substantial legal fees in the Stamatov Action, which was eventually settled for less than the full death benefits under the Stamatov Policy."  Defendants further respond that these "substantial legal fees" were related to Successor Counsel's representation, not Defendants' representation.  *See generally* Defendants' Summary Judgment Motion (ECF No. 129).

### Facts Relating to the Institution of this Action Against Rousseau and Arent Fox

141.    Undisputed.

142.    Undisputed.

Dated: New York, New York
September 17, 2018

Respectfully submitted,

FOLEY & LARDNER LLP

By: _____

Peter N. Wang (PW 9216)
Douglas S. Heffer (DH 6082)
Adam G. Pence (AP 8621)
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (212) 687-2329
pwang@foley.com
dheffer@foley.com
apence@foley.com

*Attorneys for Defendants*
*Arent Fox, LLP and Julius Rousseau, III*