UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDSOR SECURITIES, LLC,

    Plaintiff,

-against-

ARENT FOX, LLP and JULIUS ROUSSEAU, III,

    Defendants.

Case No. 16-cv-01533 (GBD) (GWG)

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' STATEMENT OF COUNTERVAILING EVIDENCE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Peter N. Wang
Douglas S. Heffer
Adam G. Pence
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016-1314
Tel: (212) 682-7474
Fax: (212) 682-2329

Defendants Arent Fox, LLP ("Arent Fox") and Julius Rousseau, III ("Rousseau," and, collectively, with Arent Fox, "Defendants") hereby submit the following Statement of Countervailing Evidence, for purposes of the present motion only, which includes facts that support their opposition to the motion for partial summary judgment ("Windsor's Summary Judgment Motion") filed by Plaintiff Windsor Securities, LLC ("Windsor" or "Plaintiff").[1] Defendants reserve the right to offer other (even contrary) evidence at trial.

### Initial Premium Finance Advice

1. In 2009, attorneys working on behalf of Windsor at Herrick Feinstein LLP ("Herrick") researched and analyzed the requirements of Cal. UCC § 9-620. Transcript of the Deposition of Julius Rousseau, III, March 7, 2017 ("Rousseau Tr.") 58:8-22, attached as Exhibit 1 to the Declaration of Peter Wang in Opposition to Windsor's Summary Judgment Motion, dated September 17, 2018 (the "Wang Opp. Decl."); *see also* Exhibit 20 to the Declaration of Samantha Millrood ("Millrood Decl."), filed as ECF No. 125.

2. Rousseau and the other attorneys at Herrick understood that the Premium Finance Packages included a clause providing that California law governed. Wang Opp. Decl. Ex. 1, Rousseau Tr. 63:16-65:9; Declaration of Julius Rousseau, III, dated August 13, 2018 and filed as ECF No. 131 (the "Rousseau Decl."), Ex. 2 (HF WIN 007295).

3. Nevertheless, Rousseau and fellow Herrick attorney, David Fox, believed that, despite the choice of law provision, California law did not apply to all the loans. Wang Opp. Decl. Ex. 1, Rousseau Tr. 63:16-65:9, 143:14-18; Rousseau Decl. Ex. 2 (HF WIN 007295).

4. The basis for their belief was the fact that there was little to no connection to the state of California and the Insureds, the Trustees, and even the broker Houchins resided in other

---

[1] Defendants incorporate by reference all asserted facts and the defined terms in their 56.1 Statement of Undisputed Material Facts in support of their motion for summary judgment (ECF No. 129).

states, such as Georgia. Wang Opp. Decl. Ex. 1, Rousseau Tr. 64:23-66:16, 68:18-69:12, 115:20-116:7; Rousseau Decl. Ex. 2 (HF WIN 007293, HF WIN 007295).

5. In Rousseau's mind, one of the biggest risks to Windsor's investment was from an insurer or insured arguing that the Policies were STOLI and, as such, Windsor lacked an insurable interest in the Insureds. Declaration of Julius Rousseau, III, in Opposition to Windsor's Summary Judgment Motion, dated September 17, 2018 ("Rousseau Opp. Decl.") ¶ 4; Rousseau Decl. ¶ 5; *see also* Rousseau Decl. Ex. 2 (HF WIN 007295-007297).

6. Rousseau always had concerns that the Policies could be deemed to violate various state laws, including, for the Policies involving Georgia residents, the Georgia Life Settlement Law. Wang Opp. Decl. Ex. 1, Rousseau Tr. 87:9-15; *see also* Rousseau Opp. Decl. ¶¶ 4-5, 26-27.

7. Rousseau repeatedly warned Prusky about this risk. Rousseau Opp. Decl. ¶¶ 5, 32, Exs. 1, 9-11; *see also* Rousseau Decl. Ex. 2 (HF WIN 007295-007297); Millrood Decl. Ex. 57 (AF0019637).

### Windsor Enlists Rousseau's and Arent Fox's Services Only Sporadically

8. After Rousseau advised Windsor with regard to filing UCC statements and proffering collateral assignments to the insurers, Windsor enlisted Rousseau's legal services with regard to Bitter and the other Policies much less frequently (starting around October 2009). Rousseau Opp. Decl. ¶¶ 7, 21, Ex. 3 (Bitter time records); Ex. 12 (Herrick time records).

9. In fact, Windsor did not always consult Rousseau before asserting its rights as a lender, including securing some of the Change of Ownership Forms for the Policies. Rousseau Opp. Decl. ¶¶ 8-10, 13-16, Ex. 2.

**Bitter**

10.    From the very beginning and later with regard to Bitter, Rousseau advised Windsor that the cleanest way to take over the Policies was to initiate foreclosure proceedings. Wang Opp. Decl. Ex. 1, Rousseau Tr. 85:14-86:4, 104:11-24; *see also* Rousseau Decl. Ex. 2 (HF WIN 007295).

11.    Windsor elected not to commence such proceedings. Wang Opp. Decl. Ex. 1, Rousseau Tr. 85:14-86:4.

12.    In early September 2010, Rousseau, Prusky, and Houchins had a phone conversation regarding the Bitter Policy after Houchins maintained that Bitter was still considering whether to repay the loan and keep the Policy. Rousseau Opp. Decl. ¶ 12.

13.    After the phone call, Rousseau and Prusky decided to have Rousseau draft and send the September 8, 2010 letter demanding that Gregory Barnes, the Bitter Trustee, sign a Change of Ownership Form. Rousseau Opp. Decl. ¶ 12.

14.    Rousseau explained to Prusky that this demand letter was merely the first step, one that would hopefully pressure Bitter and the Trustee to act. Wang Opp. Decl. Ex. 1, Rousseau Tr. 155:4-14; Rousseau Opp. Decl. ¶ 13.

15.    Windsor's next action would obviously depend on the response to the demand letter. Rousseau Opp. Decl. ¶ 13.

16.    At no point did Rousseau tell Prusky that Windsor only needed to obtain the Bitter Change of Ownership Form. Rousseau Opp. Decl. ¶ 13.

17.    After receiving no response to the September 8, 2010 demand letter, Windsor attempted to change the beneficiary and owner designations for the Bitter Policy with Pacific

4

Life by signing the related forms, using the power of attorney form that was part of the Bitter Premium Finance Package. Rousseau Opp. Decl. ¶¶ 14-15, Ex. 2.

18. Pacific Life refused to change the owner designation but, after speaking with Rousseau in November 2010, did change the beneficiary designation to Windsor. Rousseau Opp. Decl. ¶¶ 16-17.

19. After November 2010, Windsor did not ask Rousseau or another attorney at Arent Fox to contact anyone – Bitter, the Bitter Trustee, Houchins, or Pacific Life – with regard to the Bitter Change of Ownership Form. Rousseau Opp. Decl. ¶ 18.

20. Defendants were never directed by Windsor to follow up with Bitter or the Bitter Trustee. Wang Opp. Decl. Ex. 1, Rousseau Tr. 170:24-171:8, 178:22-179:2; Rousseau Opp. Decl. ¶¶ 18-19.

21. After January 2011, Defendants provided no legal advice or legal work with regard to the Bitter Policy, until the related litigation in 2013. Rousseau Opp. Decl. ¶ 21.

22. Apart from the September 8, 2010 letter, Windsor communicated with Houchins directly regarding the Bitter Policy. Transcript of the Deposition of Steven Prusky, dated March 6, 2017 ("Prusky Tr.") 246:17-247:11, 351:6-9, 359:5-13, attached as Exhibit 2 to the Wang Opp. Decl.; Transcript of the Deposition of Eugene Houchins, III, February 16, 2018 ("Houchins Tr.") 60:7-10, 105:10-13 attached as Exhibit 33 to the Declaration of Peter N. Wang, dated August 13, 2018 and filed as ECF No. 130 (the "Wang Decl."); Millrood Decl. Ex. 10 ¶¶ 8, 10-12, 16-18; *see also* Rousseau Opp. Decl. ¶¶ 18-21.

23. Apart from the September 8, 2010 and January 14, 2011 letters, Windsor relied on Houchins to communicate with Bitter and the Bitter Trustee. Wang Opp. Decl. Ex. 2, Prusky Tr.

5

246:17-247:11, 351:6-9, 359:5-13; Wang Decl. Ex. 33, Houchins Tr. 60:7-10, 105:10-13; Millrood Decl. Ex. 10 ¶¶ 8, 10-12, 16-18; *see also* Rousseau Opp. Decl. ¶¶ 18-21.

24. Windsor relied on Houchins to secure the Bitter Change of Ownership Form. Wang Decl. Ex. 1, Compl. ¶ 50; Transcript of the Deposition of Julius Rousseau, III, March 7, 2017 ("Rousseau Tr.") 214:4-13, attached as Exhibit 12 to the Wang Decl.; Wang Decl. Ex. 31; Wang Decl. Ex. 33, Houchins Tr. 59:18-60:10, 105:9-24.

25. Windsor relied on Houchins to forward the Bitter Change of Ownership Form to Pacific Life. Wang Decl. Ex. 1, Compl. ¶ 50; Wang Decl. Ex. 12, Rousseau Tr. 214:4-13; Wang Decl. Ex. 31; Wang Decl. Ex. 33, Houchins Tr. 59:18-60:10, 105:9-24.

26. Windsor never verified that Pacific Life recorded the Change of Ownership Form signed by the Bitter Trustee. Wang Opp. Decl. Ex. 1, Rousseau Tr. 99:8-100:2; Wang Decl. Ex. 12, Rousseau Tr. 214:4-13; Wang Decl. Ex. 31.

27. Windsor never told Rousseau, or anyone else at Arent Fox, that the Bitter Trustee signed the Change of Ownership Form. Wang Opp. Decl. Ex. 1, Rousseau Tr. 102:24-104:10, 173:21-24, 176:10-14; Rousseau Opp. Decl. ¶ 20.

28. Windsor informed Rousseau, for the first time, during the Bitter Litigation, that Pacific Life had not recorded the Change of Ownership Form. Wang Opp. Decl. Ex. 1, Rousseau Tr. 102:24-104:10, 178:22-179:2, 214:4-215:3.

29. Arent Fox analyzed the choice of law issue and the UCC § 9-620 issue and determined that Windsor had the better argument for the death benefit under California law, even though Georgia's version of UCC § 9-620 did not apply to life insurance policies. Rousseau Opp. Decl. ¶¶ 22-26, Exs. 4-6.

30. Rousseau recommended proceeding under California law, among other reasons, because of his concern that the Policy could be declared void under Georgia law, which disfavored premium financed insurance policies such as this one. Rousseau Opp. Decl. ¶¶ 26-27.

31. Rousseau provided this recommendation, along with his rationale, to Prusky, who agreed with the proposed strategy. Rousseau Opp. Decl. ¶ 28.

32. Before Windsor agreed to proceed under California law, one of the Bitter arbitration panelists spent time reviewing Georgia law, including topics such as life settlement transactions and life settlement broker rules. Rousseau Opp. Decl. ¶ 29, Ex. 7 (AF0012276).

33. At this same time, the panelist also analyzed the "interplay between GA and CA law as between the life policy transaction and the financing documents" and "whether GA or CA law governs the COO transfer." Rousseau Opp. Decl. ¶ 29, Ex. 7 (AF0012279-12280).

34. Even after Windsor submitted its post-arbitration brief (arguing the merits of the case under California law), the same panelist continued to analyze life settlement transactions under Georgia Law. Rousseau Opp. Decl. ¶ 30, Ex. 7 (AF0012284).

35. Rousseau warned Prusky that Windsor could lose the Bitter Arbitration. Wang Opp. Decl. Ex. 1, Rousseau Tr. 200:21-201:13.

36. In fact, both were concerned because one panel member during the Bitter Arbitration even noted that the panel's job was to determine which side would receive a windfall, the Bitter widow or Windsor, the premium finance lender. Wang Opp. Decl. Ex. 1, Rousseau Tr. 200:21-201:13; *see also* Rousseau Tr. 197:11-13.

37. Both Rousseau and Prusky believed that Houchins and the Bitter Trustee presented fraudulent testimony regarding their conversations related to the Trustee signing the Change of Ownership Form. Wang Opp. Decl. Ex. 1, Rousseau Tr. 202:15-21, 205:8-23;

Rousseau Opp. Decl. Exs. 8, 13; Transcript of the Deposition of Steven Prusky, dated March 6, 2017 ("Prusky Tr.") 141:14-20, attached as Exhibit 13 to the Wang Decl.; *see also* Wang Opp. Decl. Ex. 9 ¶¶ 25-28 (Prusky Declaration in the underlying Acker Litigation outlining Houchins' bias and lack of credibility); Wang Opp. Decl. Ex. 11 ¶¶ 25-28 (same testimony in Collins Litigation).

### Acker, Collins, Coppock, and Stamatov

38. Windsor deferred to Houchins to secure Change of Ownership Forms for Acker, Collins, Coppock, and Stamatov. Wang Decl. Ex. 1, Compl. ¶¶ 15, 82-86, 112-113, 139-140, 162; *see also* Wang Opp. Decl. Ex. 1, Rousseau Tr. 159:17-160:16, 177:23-178:4, 179:21-180:2; Wang Opp. Decl. Ex. 2, Prusky Tr. 294:5-24.

39. Windsor, through Houchins, collected these Change of Ownership Forms. Wang Decl. Ex. 1, Compl. ¶¶ 15, 82-86, 112-113, 139-140, 162; *see also* Wang Opp. Decl. Ex. 1, Rousseau Tr. 159:17-160:16, 177:23-178:4, 179:21-180:2; Wang Opp. Decl. Ex. 2, Prusky Tr. 293:25-294:2, 296:24-297:18; Wang Opp. Decl. Ex. 8 ¶ 8; Wang Opp. Decl. Ex. 10 ¶ 8; Wang Opp. Decl. Ex. 9 ¶ 17; Wang Opp. Decl. Ex. 11 ¶ 17.

40. Windsor never verified with the Insureds or Trustees what Houchins told Prusky in late 2009 and early 2010 – i.e., that the Insureds did not want to pay back the loans and were willing to walk away from the Policies. Millrood Decl. Ex. 10 ¶¶ 8, 10-12, 16-18; Wang Opp. Decl. Ex. 2, Prusky Tr. 246:17-247:11.

41. Windsor deferred to Houchins to forward the Change of Ownership Forms to the respective insurers or, occasionally, forwarded the Forms itself. *See, e.g.*, Millrood Decl. Ex. 80; Wang Decl. Ex. 1, Compl. ¶ 50; Wang Decl. Ex. 33, Houchins Tr. 59:18-60:10, 105:9-24; *see*

*also* Wang Decl. Ex. 12, Rousseau Tr. 214:4-13; Wang Opp. Decl. Ex. 8 ¶ 8; Wang Opp. Decl. Ex. 10 ¶ 8.

42. In late 2009 and early 2010, with regard to these four Policies, Prusky did not ask Rousseau to contact anyone, including Houchins, the Insureds, or the Trustees. Rousseau Opp. Decl. ¶ 10.

43. At this time, Prusky did not ask Rousseau to take any action to secure Windsor's ownership in the four Policies, including sending the Change of Ownership Forms to the insurers. Rousseau Opp. Decl. ¶ 10.

44. After the Bitter Arbitration, Rousseau advised Windsor to settle any potential disputes over the related death benefits because of concerns about the nature of the Policies – i.e., a court could determine they were STOLI policies and that Windsor had no insurable interest. Wang Opp. Decl. Ex. 1, Rousseau Tr. 84:19-85:2, 86:13-89:4; *see also* Rousseau Decl. ¶ 9; Wang Decl. Ex. 8 ¶¶ 4-5.

45. Rousseau explained Windsor's case, for Acker and Collins, was stronger than the Bitter case because the policies were turned over prior to default, but that there were still real risks for Windsor, particularly because the Trustees or the estates could challenge Windsor's ownership of the policies on the grounds that Windsor lacked an insurable interest in Acker and Collins. Millrood Decl. Ex. 57; *see also* Rousseau Opp. Decl. ¶¶ 32-35, Ex. 9 (PLA0001669),

Ex. 10 (PLA0002157), Ex. 11 (PLA0002527-2528); Wang Opp. Decl. Ex. 1, Rousseau Tr. 86:13-88:20, 253:13-254:4.

Dated: New York, New York  
September 17, 2018

Respectfully submitted,

FOLEY & LARDNER LLP

By: _____
Peter N. Wang (PW 9216)  
Douglas S. Heffer (DH 6082)  
Adam G. Pence (AP 8621)  
90 Park Avenue  
New York, New York 10016  
Tel: (212) 682-7474  
Fax: (212) 687-2329  
pwang@foley.com  
dheffer@foley.com  
apence@foley.com

*Attorneys for Defendants*  
*Arent Fox, LLP and Julius Rousseau, III*