# EXHIBIT 2

# ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

WINDSOR SECURITIES, LLC,

                    Plaintiff,          Case No.

          -against-                     16-cv-01533

ARENT FOX, LLP and JULIUS               (GBD)

ROUSSEAU, III,

                    Defendants.

------------------------------------x


                    March 6, 2017

                    10:16 a.m.


          Deposition of WINDSOR SECURITIES, LLC

by STEVEN PRUSKY, and STEVEN PRUSKY, individually,

held at the offices of Foley & Lardner LLP, 90

Park Avenue, New York, New York, pursuant to

Notice, before Mildred Cassese, a Registered

Professional Reporter and Notary Public of the

State of New York.

A P P E A R A N C E S:

ALAN L. FRANK LAW ASSOCIATES, P.C.

Attorneys for Plaintiff

    135 Old York Road

    Jenkintown, Pennsylvania 19046

BY:    ALAN L. FRANK, ESQ.


FOLEY & LARDNER LLP

Attorneys for Defendants

    90 Park Avenue

    New York, New York 10016

BY:    PETER N. WANG, ESQ.

       ADAM G. PENCE, ESQ.


ALSO PRESENT:

       JULE ROUSSEAU, ARENT FOX

       HUNTER T. CARTER, ARENT FOX


       JIM SEPULVEDA, VIDEOGRAPHER

**IT IS HEREBY STIPULATED AND AGREED**, by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

**IT IS FURTHER STIPULATED AND AGREED** that all objections, except as to the form of the question, shall be reserved to the time of the trial.

**IT IS FURTHER STIPULATED AND AGREED** that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom the within deposition was taken.

*S. Prusky*

1

2    Q.    Well, tell me with generality.

3          **MR. FRANK:**  I don't want you to reveal

4    any conversation you may have had --

5          **THE WITNESS:**  I understand.

6          **MR. FRANK:**  -- following the

7    termination of Mr. --

8          **THE WITNESS:**  No, I understand.

9          **MR. WANG:**  Rousseau.

10         **MR. FRANK:**  -- Rousseau in September

11    '14.

12         **THE WITNESS:**  Yes.

13         **MR. FRANK:**  You can answer.

14   A.    I can remember, for example, at one

15   point, while the Bitter litigation was going on,

16   Mr. Rousseau discovered that Mr. Barnes and

17   possibly Mr. Houchins had possibly perjured

18   themselves, and I would be surprised if I didn't

19   say to him:  Do we have any recourse against

20   either of them?

21   Q.    Well, you also learned, didn't you,

22   that some of the applicants for the insurance that

23   you invested in, or the policies you invested in,

24   had, at least arguably, misrepresented information

25   on their policy applications; you learned that,

*S. Prusky*

```
1
2    to Mr. Rousseau:  Hey, Mr. Rousseau -- in
3    substance -- I want you to protect me and make
4    sure that I have full ownership of these policies?
5               Did that time come in 2009?
6         A.    I can't tell you whether it was
7    proactive, reactive or joint, but we had that
8    discussion together many times.
9         Q.    Many times?
10        A.    Many times.
11        Q.    When for the first time?
12        A.    Probably as we were approaching
13   payment default, and -- uhm -- we discussed --
14   well, we had discussions about Mr. Pawlick, who
15   was offering to either give me the policy outright
16   or pay off the loan.
17              Aah -- then we discussed that, through
18   Mr. Houchins, most of the insureds were already
19   telling us they were not going to pay off the loan
20   -- most of the insureds were telling us the trust
21   was not going to pay off the loan, and that I
22   could assume ownership.
23              So we discussed about, talked about
24   the transfers then, making sure they were done in
25   proper order.
```

1                    *S. Prusky*

2              So I would guess that would be in the

3    late 2009 or spring of 2010.

4              Then there was a discussion, after the

5    default, that Mr. Bitter, through Mr. Houchins,

6    said he might want to pay off the policy, and Mr.

7    Rousseau and I had a number of discussions about

8    whether I could or should -- whether I was

9    compelled to go along with that if I felt I didn't

10   want to, and, if so, locking down the death

11   benefit to me.

12             Uhm --

13        Q.   And how -- was there some -- just to

14   talk about that for a second.

15        A.   Yes, sir.

16        Q.   So you understand that there came a

17   time when Mr. Bitter suggested he wanted to pay

18   off the loan?

19        A.   After we informed -- the answer to

20   your question is ye -- the answer to your question

21   is probably.

22        Q.   But you're saying you weren't

23   interested in that?

24        A.   There came a point, after Mr. Bitter

25   defaulted, and Jules and I made arrangements to

C E R T I F I C A T E

STATE OF NEW YORK      )

                                  : ss.

COUNTY OF NEW YORK    )

        I, MILDRED CASSESE, a Registered
Professional Reporter and a Notary Public within
and for the State of New York, do hereby certify
that the foregoing deposition of STEVEN PRUSKY was
taken before me on the 6th day of March 2017;

        That the said witness was duly sworn
before the commencement of his testimony; that the
said testimony was taken stenographically by me
and then transcribed.

        I further certify that I am not
related by blood or marriage to any of the parties
to this action or interested directly or
indirectly in the matter in controversy; nor am I
in the employ of any of the counsel in this action.

        IN WITNESS WHEREOF, I have hereunto
set my hand this 24th day of March 2017.

MILDRED CASSESE, RPR

March 6, 2017


I N D E X

WITNESS                    EXAMINATION BY            PAGE

STEVEN PRUSKY              MR. WANG                  5



----------------INFORMATION REQUESTS--------------

DIRECTIONS (DI):     19, 87, 263, 263.

INSERT:              None.

RULINGS (RL):        None.

REQUESTS (RQ):       79, 130.

CERTIFIED (CE):      None.

MOTIONS (MO):        None.



E X H I B I T S

PRUSKY EXHIBITS                    FOR IDENTIFICATION

1, Notice of Rule 30(b)(6) Deposition...........6

2, Copy of the Complaint, without exhibits......33

**COMPUTER REPORTING NYC INC.**
124 West 72nd Street
New York, NY 10023
(212) 986-1344

NAME OF CASE: Windsor Securities, LLC v. Arent Fox, LLP
DATE OF DEPOSITION: October 4, 2017
WITNESS: Steven Prusky

If there are any corrections to your deposition, indicate them on this sheet of paper, give the change, page number, and line number.

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____


_____
**Steven Prusky**


Subscribed and sworn to before me

this _____day of _____, 2017.


_____        _____
(Notary Public)              My Commission Expires:

**COMPUTER REPORTING NYC INC.**
124 West 72nd Street
New York, NY 10023
(212) 986-1344

NAME OF CASE: Windsor Securities, LLC v. Arent Fox, LLP
DATE OF DEPOSITION: October 4, 2017
WITNESS: Steven Prusky

If there are any corrections to your deposition, indicate them on
this sheet of paper, give the change, page number, and line
number.

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

_____
**Steven Prusky**

Subscribed and sworn to before me

this _____ day of _____, 2017.

_____       _____
(Notary Public)                     My Commission Expires:

ORIGINAL

278

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x

WINDSOR SECURITIES, LLC

                        Plaintiff,        Case No.

            -against-                    16-cv-01533

ARENT FOX, LLP and JULIUS                 (GBD)

ROUSSEAU, III,

                        Defendants.

--------------------------------------x


                        October 4, 2017

                        2:40 p.m.


            Continued deposition of WINDSOR

SECURITIES, LLC by STEVEN PRUSKY, and STEVEN

PRUSKY, individually, held at the offices of Foley

& Lardner LLP, 90 Park Avenue, New York, New York,

pursuant to Adjournment, before Mildred Cassese, a

Registered Professional Reporter and Notary Public

of the State of New York.

A P P E A R A N C E S:


ALAN L. FRANK LAW ASSOCIATES, P.C.

Attorneys for Plaintiff

135 Old York Road

Jenkintown, Pennsylvania 19046

BY:   ALAN L. FRANK, ESQ.



FOLEY & LARDNER LLP

Attorneys for Defendants

90 Park Avenue

New York, New York 10016

BY:   PETER N. WANG, ESQ.

ADAM G. PENCE, ESQ.



ALSO PRESENT:

JULE ROUSSEAU, ARENT FOX

HUNTER T. CARTER, ARENT FOX


DMITRY ZVONKOV, VIDEOGRAPHER

**IT IS HEREBY STIPULATED AND AGREED**, by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

**IT IS FURTHER STIPULATED AND AGREED** that all objections, except as to the form of the question, shall be reserved to the time of the trial.

**IT IS FURTHER STIPULATED AND AGREED** that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom the within deposition was taken.

1                          *Prusky*

2      lawyers who were expert in legal malpractice --

3           A.    Yes.

4           Q.    -- cases?

5                 That you contacted a number of

6      different lawyers to that end, correct?

7           A.    Yes, I think we discussed that this in

8      my deposition last time.

9           Q.    We did.

10                Did you do the same after this

11     experience; that is, being confronted with a

12     situation where what the judge was saying, that a

13     failure to plead something was fatal?

14     DI          **MR. FRANK:**  I'm going to direct the

15                witness not to respond based on the same

16                objections that I've been raising most of

17                the day.

18                **MR. WANG:**  And you understand my

19                silence isn't assent.

20                **MR. FRANK:**  Of course not.

21                **MR. WANG:**  It's just welcome silence.

22                **MR. FRANK:**  Right.

23          Q.    So, now, wasn't it Mr. Houchins --

24     withdrawn.

25                You did circulate change of ownership

1                    *Prusky*

2     forms to the various policyholders, correct, back

3     in 2010 or so, correct?

4            A.     I believe that's correct.

5            Q.     And who drafted those -- where did you

6     get those forms from, the change of ownership

7     forms?

8            A.     My recollection is that they were

9     change of ownership forms provided by the

10    insurance companies.

11                  So there would have been as many

12    forms -- at least as many forms as there were

13    insurance companies --

14           Q.     And --

15           A.     -- among the insureds that I had

16    financed.

17           Q.     And you got them through Mr. Houchins,

18    did you not?

19           A.     I don't know that I got all of them

20    from Mr. Houchins.

21                  I seem to recall I got at least one

22    from Mr. Houchins, and others, I'm quite sure, at

23    least one other and maybe more, we got directly

24    from the insurance companies.

25           Q.     Directly from the insurance company?

1                           *Prusky*

2          A.    Yes.

3          Q.    But you didn't get them from Mr.

4     Rousseau?

5          A.    No.  They were circulated with Mr.

6     Rousseau, but he did not provide them to me.  I

7     don't think he provided any to me.

8          Q.    So is it your testimony, sir, that the

9     change of ownership forms were sent to Mr.

10    Rousseau before you sent them to the insureds?

11         A.    They may have been, to make sure that

12    it's the correct form.

13         Q.    And --

14         A.    But I can't tell you with certainty

15    that they were or they were not, not sitting here

16    at the moment.

17         Q.    So you don't recall whether or not Mr.

18    Rousseau was involved in reviewing the change of

19    ownership forms?

20         A.    Not with certainty.  It would have

21    been my practice to have sent them to him, but I

22    cannot tell you that with certainty, sitting here

23    today.

24         Q.    Well, when you say it would have been

25    your "practice," what practice are you referring

1                           *Prusky*

2      to?

3           A.     I'm a careful guy.  And when I'm

4      beyond my area of expertise and I pay people to

5      provide with that expertise, I seek their counsel.

6           Q.     So you believe that you sought

7      someone's counsel, and in this case Mr.

8      Rousseau's, with respect to whether or not those

9      change of ownership forms would do the trick?

10          A.     He is the only --

11          **MR. FRANK:**  Objection as to form.

12                 You can answer.

13          A.     He's the only person whose counsel I

14     would have sought for those circumstances, yes.

15          Q.     Now, you regard Mr. Houchins -- you

16     were still -- how should I say, a novice in this,

17     because you had not been involved with this field

18     before, correct?

19          A.     Prior to entering into these

20     agreements --

21          Q.     Right.

22          A.     -- I was not familiar with this field,

23     that is correct.

24          Q.     You regard that Mr. Houchins was an

25     expert in this field?

1                    *Prusky*

2        A.    Yeah.  I -- I guess he was certainly

3   an expert in certain aspects in the field, and far

4   expert and more experienced than I, yes.

5        Q.    And -- but you don't remember whether

6   or not you were just relying on Mr. Houchins to

7   advise you as to how to get these change of

8   ownership forms drafted, executed, returned?

9        A.    Well, I'm struggling over the term

10  "advise," so -- Mr. Houchins often offered his

11  advice, and certainly made the claim that I was

12  better served working through him, in certain

13  circumstances, than directly with the insureds or

14  perhaps with the trustees.

15            But to say that I sought his advice in

16  how to handle transactions, without at least

17  checking that advice with Mr. Rousseau, would be

18  folly.

19        Q.    Okay.  So if you didn't check with Mr.

20  Rousseau, that would being folly?

21        A.    If I had only checked with

22  Mr. Houchins and taken his words and accepted what

23  he had to offer without checking with Mr.

24  Rousseau, yes.

25        Q.    And that leads you to believe that you

1                          *Prusky*

2    did check with Mr. Rousseau?

3          A.    Depending on the circumstances.  We're

4    speaking now very broadly and vaguely.

5                If you want to ask me about something

6    specific that I might have checked with him, sure.

7          Q.    Well, the change of ownership forms

8    that were sent to the various insureds.

9          A.    Yeah, if we're back on -- if we're

10   still on or back on that topic, yes, I suspect I

11   would have.

12         Q.    You suspected you would have, but you

13   have no recollection of it?

14         A.    I think I testified, sitting here at

15   this moment, I do not have a specific recollection

16   of it.

17         Q.    Now, let's talk about Mr. Houchins for

18   a moment.

19                You did have occasion, then, to see

20   him at the hearing itself, correct, the Bitter

21   hearing?

22         A.    Yes -- I'm sorry, let's just be clear.

23   I saw Mr. Houchins the Third, also known as

24   Junior, I think, at the hearing, among other

25   places, yes.

1                          *Prusky*

2          Q.    That's the Mr. Houchins I'm referring

3    to; Houchins, the younger.

4          A.    The younger, okay.

5                Yes.

6          Q.    He testified?

7          A.    I believe that's correct -- yes, I

8    remember him testifying.

9          Q.    And you reached the conclusion that he

10   was a liar?

11         A.    I think that he was -- not fully

12   truthful at that hearing, correct.

13         Q.    You called him a liar?

14         A.    I may very well have.  I don't recall.

15         Q.    A dirt bag?

16         A.    A dirt bag?  I don't remember that

17   reference.

18         Q.    A perjurer?

19         A.    That could be.

20         Q.    That he perjured himself?

21         A.    If he lied under oath, then he'd be a

22   perjurer.

23         Q.    And you so reflected that that's what

24   he was, correct, sir?

25         A.    I can either take your word for it or

1                          *Prusky*

2     prosecution of claims against Arent Fox?

3          A.    Yes, that is correct.

4          Q.    So that was something that he said:

5     I'll do that for you if I get a release?

6          A.    Yeah.  I'm not sure that that has any

7     value.  I thought that was your question.

8          Q.    Okay.  So you do regard that that had

9     any value?

10         A.    I don't regard it has much value.

11         Q.    That's because you regard him as a

12    perjurer?

13         A.    I certainly referred to him as a

14    perjurer, and I think that might undercut any

15    testimony that he offers, yeah.

16                Of course he has incentive to perjure

17    in one case and not another.

18                **MR. WANG:**  Let's mark the next

19                document.  It's a series of e-mails with an

20                attachment, Plaintiff 045968 through 972.

21                (Discussion off the record.)

22                *(Prusky Exhibit 7 is not marked

23                here.)

24         Q.    When did you first come to the

25    conclusion that, in your opinion, Mr. Houchins was

1                           *Prusky*

2       a liar?

3              A.      It was either during or after the

4       deposition that Mr. Rousseau took of Mr. Houchins

5       in Atlanta.

6                      I -- I don't recall when that was.

7              Q.      Some time in 2014?

8              A.      No, no.  It was prior to the

9       arbitration panel's hearing, because I believe it

10      was in preparation for that case.

11             Q.      Right.  In preparation for the case?

12             A.      And the case, I thought, was in late

13      '13, early '14, so this would have been earlier.

14                     I have a vague feeling it was October,

15      so it could have been October 12 or 13.  I

16      apologize.

17             Q.      Okay.  Of 2013?

18             A.      It could be 2013.

19                     Let's put it this way, Mr. Wang:

20      There was only one deposition of Mr. Houchins in

21      Atlanta, and that's the one I'm referring to.

22             Q.      All right.

23                     And before that time, did you regard

24      that Houchins was a straight shooter?

25             A.      I don't think I formed a particularly

1                              *Prusky*

2      in terms of Mr. Bitter's health?

3           A.    Mr. -- just that there's something not

4      right.  I didn't say the health per se.

5      Mr. Bitter did not call me.

6                Had Mr. Bitter called me, maybe things

7      would have been different.  Maybe if Mr. Barnes

8      had called me, but we had Mr. Houchins, and Mr.

9      Houchins was setting my antenna aquiver.

10          Q.    So if Mr. Bitter or Mr. Barnes had

11     called you, you might have been prepared to give

12     them the same deal you gave Colonel Pawlick?

13          A.    I don't know.  Sitting here at this

14     moment, I don't know.

15               But I can tell you that with Mr.

16     Houchins, my antennae were quivering.

17          Q.    What were they quivering about?

18          A.    I can't tell you.

19          Q.    You just had a general quiver of

20     antenna?

21          A.    Well, call me strange or

22     old-fashioned, but sometimes I get gut feelings or

23     I just get a feel of a situation and -- yes.

24          Q.    But a feel about -- I'm trying to

25     understand --

1                           *Prusky*

2          A.     Correct.

3          Q.     Either e-mail, conversation or both?

4          A.     Yes.

5          Q.     And my question to you was:  As of the

6     time that that September 8th letter got sent, had

7     Houchins said never mind, about -- Bitter's not

8     interested in paying it off any more?

9                 Had that happened?

10         A.     I think not that per se, but that he

11    had said:  If you want to buy it, okay, you can

12    buy it and we'll go along and I -- Mr. Houchins

13    will assist you in whatever you want done.

14         Q.     Well, all right --

15         A.     That's different from saying

16    Mr. Bitter no longer wants this.  I'm not sure

17    that second component, Mr. Bitter no longer wants

18    this, was necessarily there one way or the other.

19                But I am relatively confident that

20    Mr. Houchins said:  Okay, if you're going to take

21    this position and you want to buy it, that's okay,

22    we agree, you have the right to buy it.

23         Q.     So that's your rec --

24         A.     I'm sorry, I don't mean "buy it"; take

25    over its ownership and --

1                          *Prusky*

2     pay it off?

3                But then, as you said -- and I like

4     that term "relented" -- I guess he relented, and

5     he said:  Yes, we will cooperate.

6          Q.   And as --

7          A.   At every point along the way he said

8     he was speaking for someone other than himself.  I

9     forget -- I think it was Mr. Bitter, and not Mr.

10    Barnes.

11         Q.   And, so your view -- and as we've

12    talked about this, does that refresh you that this

13    was a conversation rather than e-mails, or that

14    you're still uncertain about that?

15         A.   I'm not certain.  I -- but the more

16    we've spoken about it, the more I think there was

17    at least one conversation, and I think Jules might

18    have been part of that.

19                I still believe there were e-mails,

20    and I think that the initial discussion, as it

21    were, was by e-mail, and not by phone.

22         Q.   And your recollection is that the way

23    it was left was that Mr. Houchins was no longer

24    urging payoff by Mr. Bitter, but he -- but that

25    you should follow, buy it, we'll cooperate?

*Prusky*

1

2      A.     That Mr. Darracq had been appointed

3  servicing agent on the Acker policy with John

4  Hancock Life Insurance Company.

5      Q.     And what did that mean, that he was

6  the servicing agent, as you understood it?

7      A.     As I understood it, it meant that the

8  premium notices would go to him and to me, and

9  that if I were to interface with the company

10  through an agent, it would be through him rather

11  than the prior servicing agent.

12      Q.     Which was who?

13      A.     I believe Mr. Houchins.

14      Q.     Exactly.  So Mr. Houchins had been the

15  servicing agent, and somehow you came to

16  understand that Mr. Darracq-- well, you came to

17  understand because Mr. Darracq was telling you,

18  that he was the servicing agent, correct?

19      A.     He was confirming to me that the

20  process was complete.

21      Q.     And who appointed him as the servicing

22  agent?

23      A.     Well, technically an appointment is

24  made by the insurance company.

25              But if I see where you're heading

C E R T I F I C A T E

STATE OF NEW YORK      )

                       : ss.

COUNTY OF NEW YORK     )

I, MILDRED CASSESE, a Registered Professional Reporter and a Notary Public within and for the State of New York, do hereby certify that the foregoing deposition of STEVEN PRUSKY was taken before me on the 4th day of October 2017;

That the said witness was duly sworn before the commencement of his testimony; that the said testimony was taken stenographically by me and then transcribed.

I further certify that I am not related by blood or marriage to any of the parties to this action or interested directly or indirectly in the matter in controversy; nor am I in the employ of any of the counsel in this action.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of November 2017.

MILDRED CASSESE, RPR

*COMPUTER REPORTING NYC INC.*
*(212) 986-1344*

October 4, 2017

I N D E X

WITNESS                EXAMINATION BY              PAGE

STEVEN PRUSKY            MR. WANG                   282



----------------INFORMATION REQUESTS--------------

DIRECTIONS (DI):      289, 293, 301, 302, 303,

                      303, 304, 368.

INSERT:               None.

RULINGS (RL):         None.

REQUESTS (RQ):        284, 383, 393.

CERTIFIED (CE):       None.

MOTIONS (MO):         None.



          E X H I B I T S

PRUSKY EXHIBITS               FOR IDENTIFICATION

3, Document, Bates Judd 165175 through 176.....284

4, Document, Bates Judd 165179.................285

5, Judge Orrick's order on the Trust's Motion For

Summary Judgment..............................290

6, E-mail dated April 22, 2014 from Mr. Prusky

to Mr. Rousseau...............................300

E X H I B I T S

PRUSKY EXHIBITS                    FOR IDENTIFICATION

7, Document, Bates AF 0000488

through 492..................................339

8, Series of e-mails from October 14, 2014,

no Bates....................................370

9, E-mail dated May 21, 2014,

Bates Antonino 082172 through 174.............383

P201,L15: Change "rate" to "right"

P207,L8-L9: insert "me" between to and in.

P208,L06: remove "cease and" and insert "or"

P208,L22: Change "said" to "he said"

P263,L05: Change "Preston" to "Prusky"?

P268,L03: Change "him" to "me"

_____

STEVEN PRUSKY

Subscribed and sworn to before me

this ___19ᵀᴴ___ day of ___APRIL_____, 2017.

_____          SEPTEMBER 26, 2020

(Notary Public)                          My Commission Expires:

```
ERIC S HARKINS
Commission # 2336026
Notary Public, State of New Jersey
My Commission Expires
September 26, 2020
```

COMPUTER REPORTING NYC INC.
124 West 72nd Street
New York, NY 10023
(212) 986-1344

NAME OF CASE: Windsor Securities, LLC v. Arent Fox, LLP
DATE OF DEPOSITION: October 4, 2017
WITNESS: Steven Prusky

If there are any corrections to your deposition, indicate them on
this sheet of paper, give the change, page number, and line
number.

PAGE __283__ LINE __6__

CHANGE __internal wars__          TO __award.__

PAGE __318__ LINE __15__

CHANGE it was not a question & should read: I want to amend my last answer.

PAGE __326__ LINE __8__

CHANGE there should be a comma between "was" and "short"        TO

PAGE __374__ LINE __13__

CHANGE __be__                TO __can__
                                    (I hope we can)
PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____

PAGE _____ LINE _____

CHANGE _____ TO _____


_____
          Steven Prusky

Subscribed and sworn to before me

this __11th__ day of __DECEMBER__, 2017.

_____      September 26, 2020
(Notary Public)          My Commission Expires:

ERIC S HARKINS
Commission # 2335026
Notary Public, State of New Jersey
My Commission Expires
September 26, 2020